IN THE US DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

SEVEARL C. BACON )
)
Petitioner )
)
v. )          Civ. Act. No. 06-519-JJF
)
WARDEN CARROLL, etc., )
)
Respondents. )
)

<u>MOTION OF REVIEW</u>

FILED

NOV 22 2006

U.S. DISTRICT COURT
DISTRICT OF DELAWARE
scanned

Pursuant to Rule 4 of the Federal Rules of Civil Procedure, Petitioner MOVE FOR Change of Exhibit's that was originally filed. (Appendix 'Numbered')

Petitioner asserts:

① Petitioner is NOT seeking to add or take away from original Exhibit's, Petitioner "had" to place numbers at the bottom of Appendix pages, and place table of contents to Appendix so all parties will clearly review Appendix. (See Exhibit A original table of contents to Appendix).

② Petitioner is housed in Med. High SHU/MHU lock down and has to "intrust" in-house mail to D.C.C. Staff and "All Legal" Motions to Law Library to have copies made.

1.

③ On November 16, 2006 Petitioner had Notice that thee Appendix was not Aranged in the manner which the Petitioner "Prayed" the Appendix was supposed to be sent to "All" Parties. (It is as if the Appendix was deliberity impaired to be in a "Total Disaray").

④ Petitioner has had problems with Recieving and Sending out Legal Works to the Courts and has issue's filed.

WHEREFORE, it is prayed that this Court grants Petitioner's "Numbered Appendix" And ask that this Court Review the Original filed Appendix to Review if there is a evil at work. Petitioner pray's that the Court And All Parties Numbered Appendix is granted.

Respectfully,

November 20, 2006

Deverel L. Bacon
D. C. C.
Smyrna, Del. 19977

2.

EXHIBIT A

Appendix A (Exhibit #1-3 Expedited Habeas / Motion Trial Transcript / Affidavit's / 1983 Suit).

Appendix B (Exhibit # 4-6 Direct Appeal / State / Superior / Supreme Court Opinion's).

Appendix C (Exhibit #7-14 Post-Conviction Appeals / State / Superior / Supreme — Court's Response + Opinion's)

Appendix D (Post-Conviction To Supreme Court / Decision; Exhibit #15-19).

A-1

## Certificate of Service

I, _SEVEAR/ L. BACON_, hereby certify that I have served a true

and correct cop(ies) of the attached: _Motion of Review/_.

_Exhibit A_ _____ upon the following

parties/person (s):

TO: _ATTORNEY GENERAL_
_820 N. FRENCH ST_
_Wilmington, Del._
_19801_

TO: _WARDEN CARROLL_
_S. CC_
_SmyRNA, Del._
_19977_

TO: _Elizabeth R. McFARlAN_
_Deputy Attorney General_
_820 N. FRENCH St._
_Wilmington, Del._
_19801_

TO: _____
_____
_____
_____
_____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this ___20___ day of ___NOVEMBER___ 2006



I/M Devard C. Bacon
SBI# 00221242  UNIT #21 A-L-3
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977

CLERK of Court
U.S. District Court
Wilmington, DE 19801

EXHIBIT 1

AppEN. A

A - 2

COPY

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
   IN AND FOR NEW CASTLE COUNTY

PUBLIC DEFENDERS OFFICE;
STATE OF DELAWARE,         )
                           )    CRIM. ACTION NO. ID: 0006017660
    V.                     )
                           )
DEVEARL BACON,             )
    DEFENDANT.             )    EXPEDITED MOTION REQUEST

DEFENDANT'S MOTION FOR COPIES OF HIS TRIAL TRANSCRIPTS, FROM THE PUBLIC DEFENDERS OFFICE (FOR POST CONVICTION RELIEF) AND MOTION TO STAY THE ONE-YEAR DEADLINES IMPOSED BY THE FEDERAL HABEAS CORPUS ACT BECAUSE OF THE STATE PUBLIC DEFENDERS ACTIONS OR OMMISSIONS IN FAILING TO PROVIDE DEFENDANTS TRANSCRIPTS TO D.C.C. LEGAL SERVICES ADMINISTRATOR MIKE LITTLE FOR PHOTO-COPYING. AFTER TWO ATTEMPTS VIA NOTARIZED FORM TO DO SO.

      NOW COMES, DEVEARL BACON, Defendant, pro-se, indigent and incarcerated, moves this Honorable Court for an Order directing the Public Defenders Office, and Lawrence Sullivan of that Office in New Castle County to forward all Defendants transcripts to the Delaware Correctional Centers Legal Services Administrator, Mike Little, so they can be photocopied and returned to the Public Defenders Office.
      In support of this motion, Defendant offers the following

- 1 -

1. Defendant is indigent and cannot afford the cost of either transcription or photocopying. The Office of the Public Defender found Defendant to be indigent at trial level, and the Delaware Supreme Court also found Defendant indigent during his direct appeal filed by the Public Defenders Office. Defendant has been incarcerated since his arrest and has had no way to make any money. If there is any doubt to his indigency it must be made a matter of record so the determination by this Court is reviewable, as such a hearing is necessary. _Stacey v State_ Del. Supr. 358 A2d 380.

2. The Delaware Correctional Center has had a long-standing agreement (for decades) that the Public Defenders Office sends the prisoners transcripts to the Legal Administrator of the D.O.C. and the transcripts are copied by the Legal Administrator (after the Direct Appeal has been ruled upon) and then, the transcripts are sent back to the Public Defenders Office.

3. The trial transcripts are necessary for Defendant to proceed with his Postconviction Remedies which are guaranteed by both Delaware and U.S. Constitutions

4. The Federal Habeas Corpus Act has imposed a

One-year deadline on those issues filed in the State Appeals Court. Defendant has a right to gain a meaningful review of all proceedings leading to judgement of conviction Griffin v. Illinois, 351 US 12 (1956) as well as an "open an inquiry into ~~the~~ the intrinsic fairness" of those proceedings. Carter v Illinois, 329 US 173, 175 (1946). See Curran v Wolley, Del Supr. 104 A2d 177, 179 (1962) (applying Carter); Jones v Anderson, Del Supr. 183 A2d 177, 179 (1962) (applying Curran) Defendants Direct Appeal was Affirmed on: July 1, 2002 . (Attached Exhibit B)

5. Defendant has asked the Public Defenders Office by filing a Notarized form (attached EXHIBIT A) on two SEPARATE OCCASSIONS. One was sent in September 2002 and another November 2002. Defendant is being denied the evidence he needs to pursue his postconviction remedies and relief. The Public Defenders Office is aware of the policy to furnish a copy of transcripts to inmates by sending the transcripts to the DCC Legal Administrator who makes a copy and then returns the original transcripts to the Public Defenders Office.

WHEREFORE, the Defendant respectfully requests this Courts indulgence to grant his Motion For Transcripts, or alternatively, order the Public Defenders Office to either furnish a copy of all Defendants Tried transcripts

- 3 -

52

A-5

Opening and Closing statements, sidebar conferences, Jury
Charge and Sentencing transcripts, or, to forward these
transcripts to the Delaware Correctional Centers, Legal
Services Administrator, Mike Little, 1181 Paddock Rd.
Smyrna, Delaware 19977 for him to copy and return
the originals to the Public Defenders Office.

Respectfully Submitted,

Deveard Bacon, pro-se
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: Feb. 13, 2003

- 4 -

A-6

53

TO:    PUBLIC DEFENDERS OFFICE
       530 S. State Street
       Suite 108
       Dover, Delaware 19901

_Legal Administrator :_ Mike Little

I *DEVEARL BACON*_____, do hereby request that the following transcript
be sent to the Legal Services Administrator at the Delaware Correctional Center, 1181
Paddock Rd. Smyrna, Delaware 19977:

Date of Trial or Hearing: *June 19, 2001*

Case No: *I.D. NO. 0006017660*

Date of Birth: *11-27-69*

Date: *Feb. 13, 2003*

Deveart Bacon
Delaware Correctional Center
1181 Paddock Rd
Smyrna, DE 19977

Sworn to and Subscribed before me this *13th* day of
*February*_____, 2003

Timothy J. Mast
_Notary Public_

EXHIBIT A A-7
(54)

## Certificate of Service

I, _Devearl Bacon_, hereby certify that I have served a true

and correct cop(ies) of the attached: _Defendants Motion For Copies Of_

_His Trial Transcripts . . . ._ upon the following

parties/person (s):

TO: _Lawrence Sullivan_

_Office Of Public Defender_

_Carvel State Office Bld-_

_820. N. French St._

_Wilmington, DE 19801_

TO: _Jane Brady DAG_

_(Same address as PD)_

TO: _____

TO: _____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977, postage to be paid by the Dept. Of Corrections.

On this _13_ day of _____ 2003



A-8

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVEARL BACON, | § | |
| | § | No. 369, 2001 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 7, 2002
Decided:  July 1, 2002

Before **HOLLAND**, **BERGER** and **STEELE**, Justices.

### O R D E R

This      /      day of July, 2002, on consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of carjacking and multiple counts of robbery first degree, possession of a deadly weapon by a person prohibited, wearing a disguise during the commission of a felony, aggravated menacing, and possession of a firearm during the commission of a felony. He appeals from one robbery conviction, arguing that the Superior Court erred in allowing that count of the indictment to be amended at the beginning of trial.

$E_{X H I B I T} \ \mathcal{B} \quad A - 9$

2) Bacon was charged with 36 counts of robbery and related offenses arising out of a two-day crime spree. The indictment at issue originally charged that Bacon threatened "the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car...." The State moved to amend the indictment to substitute "United States currency" for "car keys and a car." The Superior Court granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be amended as to matters of form, as long as "no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights."[1] The elements of the crime of robbery are, in relevant part: (1) the use or threatened immediate use of force on a person; (2) while committing the crime of theft; (3) in order to overcome the person's resistance to the taking of the property.[2] The identity of the stolen property is not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge.[3] Since the amendment was

---

[1]*Robinson v. State*, 600 A.2d 356, 359 (Del. 1991).

[2] 11 *Del. C.* §831.

[3] *Roberts v. State*, 1998 WL 231269 (Del. Supr.).

2

$A - 10$

permissible as being one of form only, and since Bacon makes no claim of

prejudice, the trial court's decision granting the motion to amend must be upheld.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior

Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

Carolyn Berger
Justice

3

$A-11$

| Comments | Date: 2/23/01 | Attorney: EMH | **Remarks:** Email to LUGG, DAG re def statement. He believes no statement made confirmed w DSP is checking w WPD |
| | | | NOTE: IND CHARGES:    (PRIOR ROB 1 CONVICTION) carry 54 m/m yrs, plea offer was to 20 yrs s adter 15m/m |
| Comments | Date: 2/27/01 | Attorney: EMH | **Remarks:** Ltr to client advising of advisability of plea offer to 15 years and forwarding copy of prelim transcript. NOTE: DAG LUGG indicates there was no taped statement by def and therefore no tape from either police agency. |
| -Prison Visit | Date: 6/14/01 | Attorney: EMH | **Remarks:** Visit def re latest plea offer, rejected despite my advice. |
| Comments | Date: 6/26/01 | Attorney: EMH | **Remarks:** T/C DEF WIFE, def is please w representation. She will pick up clothes and copy of jury instructions 6/27 at Carvel office. |
| Comments | Date: 7/20/01 | Attorney: EMH | **Remarks:** 34 m/m yrs had to be imposed judge imposed no more. Mark for notice of appeal. |
| Comments | Date: 3/22/01 | Attorney: EMH | **Remarks:** LTR TO CLIENT: re his req for hearing on inaccuracy of prelim transcript, indicate no such motion would be filed and once again advised he consider the plea offer. |

2

$A-12$

EXHIBIT 2

A-13

# SUPERIOR COURT
## of the
## STATE OF DELAWARE

Susan C. Del Pesco
JUDGE

March 31, 2003

NEW CASTLE COUNTY COURTHOUSE

500 North King Street
Suite 10400
Wilmington, DE 19801
Phone: (302) 255-0659
Facsimile: (302) 255-2273

Devearl L. Bacon
S.B.I. 00221242
Delaware Correctional Center
Smyrna Landing Road
Smyrna, DE 19977
**N440**

Re:    *State of Delaware v. Devearl Bacon* - I.D. No. 0006017660

Dear Mr. Bacon:

In response to your motion for copies of your trial transcripts, enclosed please find copies of the following:

1.    Trial transcript, June 19, 2001;

2.    Trial transcript, June 20, 2001; and

3.    Trial transcript, June 21, 2001.

Your request for an extension of time within which to file a Rule 61 Postconviction is DENIED.

SO ORDERED.

Very truly yours,

Susan C. Del Pesco

/msg
Enclosures
xc:    Prothonotary Criminal File
       Investigative Services File

$A - 14$

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    1
                       ( as of  02/07/2006 )
```

```
    ate of Delaware v.  DEVEARL L BACON                    DOB: 11/27/1969
  ..ate's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
  Defense Atty: EDMUND M HILLIS , Esq.            DEVERAL BACON
                                                 DEVEAR L BACON
                                                 DEVIAL L BACON
                                                 MARK WILSON
                                                 LOST BACON
                                                 DAVID JOHNSON
```

Assigned Judge:

Charges:

| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0006017660 | IN00070367 | PFDCF | NOLP | 06/22/2001 |
| 002 | 0006017660 | IN00070368 | ROBBERY 1ST | NOLP | 06/22/2001 |
| 003 | 0006017660 | IN00070369 | AGGR MENACING | NOLP | 06/22/2001 |
| 004 | 0006017660 | IN00070370 | DISGUISE | NOLP | 06/22/2001 |
| 014 | 0006017660 | IN00071665 | PDWBPP | NOLP | 06/22/2001 |
| 015 | 0006017660 | IN00071666R1 | CARJACKING 1ST | TG | 06/22/2001 |
| 016 | 0006017660 | IN00071667R1 | PDWBPP | TG | 06/22/2001 |
| 017 | 0006017660 | IN00071668 | ATT. ROBBERY 1S | TNG | 06/22/2001 |
| 018 | 0006017660 | IN00071669 | PFDCF | TNG | 06/22/2001 |
| 019 | 0006017660 | IN00071670 | PDWBPP | TNG | 06/22/2001 |
| 20 | 0006017660 | IN00071671R1 | PFDCF | TG | 06/22/2001 |
| 021 | 0006017660 | IN00071672R1 | PDWBPP | TG | 06/22/2001 |
| 022 | 0006017660 | IN00071673R1 | DISGUISE | TG | 06/22/2001 |
| 023 | 0006017660 | IN00070347R1 | PFDCF | TG | 06/22/2001 |
| 024 | 0006017660 | IN00070348R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 025 | 0006017660 | IN00070349R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 026 | 0006017660 | IN00070350 | AGGR MENACING | NOLP | 06/22/2001 |
| 027 | 0006017660 | IN00070351R1 | AGGR MENACING | TG | 06/22/2001 |
| 028 | 0006017660 | IN00070352R1 | AGGR MENACING | TG | 06/22/2001 |
| 029 | 0006017660 | N00070353 | CARJACKING 2ND | NOLP | 06/22/2001 |
| 030 | 0006017660 | IN00070354 | DISGUISE | TG | 06/22/2001 |
| 031 | 0006017660 | IN00070355 | PFDCF | NOLP | 06/22/2001 |
| 032 | 0006017660 | IN00070356R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 033 | 0006017660 | IN00070357R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 034 | 0006017660 | IN00070358R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 035 | 0006017660 | IN00070359 | DISGUISE | TNG | 06/22/2001 |
| 036 | 0006017660 | IN00071776 | PDWBPP | TNG | 06/22/2001 |

```
        Event
No.     Date            Event                              Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
  1     07/06/2000
        CASE ACCEPTED IN SUPERIOR COURT.
```

B-1

A-15

SUPERIOR COURT CRIMINAL DOCKET                    Page    2
( as of  02/07/2006 )

ate of Delaware v.  DEVEARL L BACON                    DOB: 11/27/1969
Late's Atty: SEAN P LUGG , Esq.          AKA: DEVEARL BACON
Defense Atty:                            DAVID JOHNSON

       Event
No.   Date          Event                          Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
       ARREST DATE: 06/23/2000
       PRELIMINARY HEARING DATE:
       BAIL:
       HELD ON CASH BAIL                    55000.00 100
       BAIL CONDITIONS:  NO DIRECT OR INDIRECT CONTACT WITH WILLIAM DAVIS,
       GULF SERVICE STATION, SHAH HASSAN GULF SERVICE STATION.
       REPORT TO PROBATION OFFICER.
2      07/14/2000
       MOTION FOR REDUCTION OF BAIL FILED.
       RAYMOND RADULSKI, ESQ.
4      07/17/2000
       INDICTMENT, TRUE BILL FILED. NO 47
       FAST TRACK VOP/CASE REVIEW ON 8/3/00
       WILL CONSOLIDATE WITH 0006017683 WHEN FIXED.
5      07/17/2000
       CASE CONSOLIDATED WITH: 0006017683
3      07/25/2000                          REYNOLDS MICHAEL P.
       MOTION FOR REDUCTION OF BAIL WITHDRAWN.
       BY DEFT.
       08/03/2000                          GEBELEIN RICHARD S.
       FAST TRACK CALENDAR/CASE REVIEW:  SET FOR FAST TRACK FINAL CASE REVIEW
       ON: 102600
6      08/14/2000
       DEFENDANT'S LETTER FILED. TO RAYMOND RADULSKI, ESQ..
       RE: DEF REQUESTING A MOTION FOR DISMISSAL BE FILED.
       * ATTACHED IS A COURTESY COPY OF THE LETTER FOR THE PROTHONOTARY.
7      08/21/2000
       REFERRAL TO COUNSEL MEMORANDUM FILED.
       ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
       AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
       COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
       CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
       DIRECTED TO YOU. RAYMOND RADULSKI, ESQ
       REFERRED BY:  (AMH)
8      09/26/2000
       DEFENDANT'S LETTER FILED TO: RAY RADULSKI.
       RE: WANTS MOTION OF DISCOVERY SENT TO HIM ASAP.
9      10/06/2000
       NOTICE OF SERVICE - DISCOVERY REQUEST.
       TO: JAMES RAMBO  FROM: RAY RADULSKI.
10     11/01/2000
       LETTER FROM: SEAN LUGG  TO:  RAY OTLOWSKI.

B-2                    A-16

SUPERIOR COURT CRIMINAL DOCKET                Page    3
( as of  02/07/2006 )

State of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.                AKA: DEVERAL BACON
Defense Atty:                                        DAVID JOHNSON

        Event
No.    Date            Event                                Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        RE: INFORMING THAT HE HAS TAKING OVER FOR JAMES FREEBERY, AND GIVES
        HIM RESPONSE TO HIS DISCOVERY REQUEST.
11    12/01/2000
        ORDER SCHEDULING TRIAL FILED.
        TRIAL DATE: 6/19/01
        CASE CATEGORY:        1
        ASSIGNED JUDGE (CATEGORY 1 CASES ONLY): DEL PESCO
        UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
        OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
        FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
        CONTINUANCE REQUESTS WILL BE DENIED.
12    12/27/2000
        DEFENDANT'S LETTER FILED.
        TO: ED HILLIS.
        RE: WANTS TRANSCRIPTS FROM PRELIMINARY HEARING, BUT DOESN'T HAVE MONEY
        FOR THEM.
13    03/08/2001
        DEFENDANT'S LETTER TO EDMUND HILLIS, THANKING HIM FOR A COPY OF TRANS-
        CRIPT OF PRELIM AND ASKING HIM TO SEND AN INVESTIGATOR TO THE VICTIMS
        FOR QUESTIONING.
15    03/09/2001
        DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING TRANSCRIPTS OF PRELIM
        & LETTER FROM ATTORNEY BE PLACED IN HIS FILE.
14    03/21/2001
        DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING A COPY OF LETTER TO MR.
        HILLIS BE PLACED IN DEF.'S FILE.
16    03/23/2001
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
        DIRECTED TO YOU.  EDMUND HILLIS, ESQ
        REFERRED BY:  (AMH)
        DEFENDANT REQUEST LETTER SENT TO COUNSEL
17    04/17/2001
        DEFENDANT'S LETTER FILED REQUESTING ALL BRADY V MARYLAND MATERIALS BE
        PLACED ON HIS COURT DOCKET
18    05/01/2001
        DEFENDANT'S LETTER FILED REQUESTING A COPY OF THIS LETTER BE SENT TO
        HIS PUBLIC DEFENDER AND ASKING HIM TO FILE A MOTION TO SEVER & PUT IT
        IN HIS COURT DOCKET

                        B-3            A-17

```
                        SUPERIOR COURT CRIMINAL DOCKET                Page    4
                          ( as of  02/07/2006 )
```

ate of Delaware v.   DEVEARL L BACON                                DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.               AKA: DEVERAL BACON
Defense Atty:                                       DAVID JOHNSON


```
      Event
No.   Date          Event                                    Judge
------------------------------------------------------------------------------------
```

19   05/16/2001
       DEFENDANT'S LETTER FILED. DEFENDANT WANTS A COPY OF HIS LETTER SENT TO
       MR. EDMUND HILLIS OF THE PUBLIC DEFENDERS OFFICE. DEFENDANT ALSO WANTS
       A COPY OF HIS DOCKET SHEET SENT TO HIM.
20   05/18/2001
       LETTER FROM DEVEARL L. BACON TO EDMUND HILLIS OF THE PUBLIC DEFENDERS
       OFFICE. RE: TO SUBPENA "ALL" STATE WITNESS(S), ALONG WITH MY
       WITNESS(S) ON MY BEHALF.
       MR. HILLIS:
       PLEASE SUBPENA ALL STATE WITNESS(S), AND ALSO THE FOLLOWING:
       1. ALBERT WILSON, 2. MANLY WILSON, 3. RUTH WILSON.
       ALL OF 706 TOWNSEND PL., WILMINGTON, DE 19801.
21   06/04/2001
       SUBPOENA(S) MAILED.
27   06/04/2001
       STATE'S WITNESS SUBPOENA ISSUED.
       WILLIAM DAVIS, SHAH HASSAN, DAWN SMITH, AVON MATTHEWS, JACQUELINE JOHN
       SON, JAMIE ROSS, MICHAEL SCOTT, CATHY BARON, ROSHELLE CONKEY,
       STEFFANIE WEST, R LECCIA WPD, BERNADETTE SELBY.
     06/12/2001
       DEFENDANT IS REQUESTING DELAY IN TRAIL
22   06/13/2001
       SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
       SHAH HASSAN,DAWN SMITH.AVON MATTHEWS,JACQUELINE JOHNSON,
       JAMIE ROSS,CATHY BARON,ROSHELLE CONKEY
23   06/14/2001                                  GOLDSTEIN CARL
       TRIAL CALENDER/PLEA HEARING:  PLEA REJECTED/SET FOR TRIAL
24   05/19/2001                                  DEL PESCO SUSAN C.
       TRIAL CALENDAR- WENT TO TRIAL JURY
25   06/22/2001                                  DEL PESCO SUSAN C.
       CHARGE TO THE JURY FILED._FILED JUNE 22, 2001
26   06/22/2001                                  DEL PESCO SUSAN C.
       JURY TRIAL HELD.
       TRIAL HELD 6-19 THROUGH 6-22-2001.  VERDITS WERE GUILTY ON ALL COUNTS
       EXCEPT 10,11,12,13 WHERE THE VERDICT WAS NOT GUILTY.  CLERK WAS G.
       BROOKS AND COURT REPORTER WAS ROFLE EXCEPT FOR 6-22 IT WAS CAHILL
       ALL EXHIBITS WERE RETURNED.  DAG WAS SEAN LUGG AND DEFENSE WAS
       ED HILLIS.  JURY WAS SWORN ON JUNE 19TH.
     07/20/2001                                  DEL PESCO SUSAN C.
       SENTENCING CALENDAR: DEFENDANT SENTENCED.
32   08/03/2001
       DEFENDANT'S LETTER FILED.___            TO MARY ELIZABETH PITCAVAGE.
```

B-4       A-18

ate of Delaware v.  DEVEARL L BACON                              DOB: 11/27/1969
_tate's Atty: SEAN P LUGG , Esq.              AKA: DEVERAL BACON
Defense Atty:                                      DAVID JOHNSON

       Event
No.   Date           Event                              Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
       LETTER FROM DEFENDANT ASKING FOR A LETTER TO MR. HILLIS TO FILE A
       NOTICE OF APPEAL BE PUT IN HIS FILE AND TO BE DOCKETED.
       *SEE FULL LETTER IN FILE WITH A LETTER TO MR. HILLIS TO FILE A NOTICE
       OF APPEAL ATTACHED.
29    08/16/2001
       TRANSCRIPT FILED.
       VERDICT TRANSCRIPT JUNE 22, 2001
       BEFORE JUDGE DEL PESCO.
30    08/17/2001
       LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN
       RE: AMENDED DIRECTIONS TO THE COURT REPORT WERE FILED IN THIS
       COURT ON AUGUST 16, 2001. THE TRANSCRIPT MUST BE FILED WITH THE
       PROTHONOTARY NO LATER THAN SEPTEMBER 15, 2001.
31    08/22/2001
       AMENDED DIRECTIONS TO COURT REPORTER TO PROCEEDINGS BELOW
       TO BE TRANSCRIBED. (COPY)
       FILED BY DEFENDANT IN SUPREME COURT
33    09/14/2001                                DEL PESCO SUSAN C.
       (ERROR/FILED DATE): SENTENCE ORDER SIGNED & FILED 9/17/01.
       ** NOTE ** CORRECT FILED DATE IS 7/20/2001. ***
34    09/14/2001
       TRANSCRIPT FILED.
       SENTENCING ON JULY 20, 2001
       BEFORE JUDGE DELPESCO
35    09/25/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT FOR JUNE 19, 2001
       BEFORE JUDE DEL PESCO
36    09/25/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT JUNE 20, 2001
       BEFORE JUDGE DEL PESCO
37    09/26/2001
       LETTER FROM SUPREME COURT TO MICHELE ROLFE, COURT REPORTER
       RE: THE COURT IS IN RECEIPT OF YOUR LETTER DATED SEPTEMBER 21, 2001.
       REQUESTING AN EXTENSION OF TIME TO FILE THE TRANSCRIPT. PLEASE BE
       ADVISED THAT YOUR REQUEST IS GRANTED. THE TRANSCRIPT IN DUE NO
       LATER THAN OCTOBER 9, 2001.
38    10/09/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT FOR JUNE 21, 2001.
       BEFORE JUDGE DEL PESCO.

$B-5$        $A-19$

SUPERIOR COURT CRIMINAL DOCKET                    Page    6
( as of  02/07/2006 )

ate of Delaware v.  DEVEARL L BACON                          DOB: 11/27/1969
_ate's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
Defense Atty:                                    DAVID JOHNSON

```
     Event
No.  Date          Event                              Judge
------------------------------------------------------------------------
39   10/16/2001
     RECORDS SENT TO SUPREME COURT.
40   10/16/2001
     RECEIPT FROM SUPREME COURT ACKNOWLEDGING THE RECORD.
41   01/25/2002
     TRANSCRIPT FILED.
     ORAL ARGUMENT, JUNE 21, 2001.
     BEFORE JUDGE DEL PESCO.
42   07/19/2002
     MANDATE FILED FROM SUPREME COURT:  SUPERIOR COURT JUDGMENT AFFIRMED.
     SUPREME COURT CASE NO: 369. 2002
     SUBMITTED: MAY 7, 2002
     DECIDED: JULY 1, 2002
     BEFORE HOLLAND, BERGER AND STEELE, JUSTICES.
43   01/24/2003
     DEFENDANT'S LETTER FILED.
     REQUEST FOR P.D. OFFICE TO GIVE TRANSCRIPTS.
45   02/13/2003
     DEFENDANT'S LETTER FILED.
     REQUEST FOR JUDGE TO ORDER P.D. OFFICE TO GIVE TRANSCRIPTS.
44   02/20/2003                               DEL PESCO SUSAN C.
     MOTION FOR TRANSCRIPT FILED PRO-SE.  REFERRED TO JUDGE DEL PESCO FOR
     REVIEW.  ALSO REQUEST FOR EXTENTION OF TIME TO FILE POST CONVICTION
     RELIEF.
46   03/31/2003                               DEL PESCO SUSAN C.
     ORDER:  IN RESPONSE TO YOUR MOTION FOR COPIES OF TRIAL TRANSCRIPTS
     ENCLOSED PLEASE FIND COPIES OF THE FOLLOWIN:
     1. TRIAL TRANSCRIPTS, 6/19/01;
     2. TRIAL TRANSCRIPTS, 6/20/01; AND
     3. TRIAL TRANSCRIPTS, 6/21/01.
     YOUR REQUEST FOR AN EXTENTION OF TIME WITHIN WHICH TO FILE RULE 61
     POSTCONVICTION RELIEF IS DENIED.
     SO ORDERED JUDGE DEL PESCO
47   09/17/2004
     MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE
     REFERRED TO JUDGE DELPESCO
48   09/21/2004
     LETTER FROM A. HAIRSTON, PROTHONOTARY OFFICE   TO SEAN LUGG, DAG
     RE: NOTICE OF PRO SE FILING OF MOTION FOR POSTCONVICTION RELIEF.
     ATTACHED: COPY OF MOTION
49   09/23/2004
     EMAIL FILED TO: SEAN LUGG, DAG & EDMUND HILLIS, ESQ. RE: RULE 61
```

B-6     A-20

SUPERIOR COURT CRIMINAL DOCKET                     Page    7
( as of  02/07/2006 )

State of Delaware v.  DEVEARL L BACON                          DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
Defense Atty:                                   DAVID JOHNSON

| No. | Event Date | Event | Judge |
|-----|-----------|-------|-------|
|     | RE: COUNSEL'S RESPONSES ARE DUE 10/6/04 | | |
| 50  | 10/06/2004 | | |
|     | EMAIL FILED TO: JUDGE DEL PESCO FROM: EDMUND HILLIS, ESQ | | |
|     | RE: STATE'S REQUEST FOR ENLARGEMENT OF TIME IN WHICH TO RESPOND TO | | |
|     | MOTION FOR POSTCONVICTION. MR. HILLIS IS ALSO REQUESTING ENLARGEMENT | | |
|     | OF TIME TO FILE RESPONSE. | | |
|     | * REQUEST GRANTED. RESPONSES DUE 10/22/04 | | |
| 51  | 10/12/2004 | | |
|     | DEFENDANT'S LETTER FILED. REQUESTING CURRENT COURT DOCKET, TO ENSURE | | |
|     | THAT A DECISION HAS NOT BEEN MADE ON RULE 61. | | |
|     | DEFENDANT INDICATES IN LETTER THAT LEGAL MAIL WAS OPENED BY DOC. | | |
|     | SENT DOCKET 10/18/04 AMH | | |
|     | LETTER REFERRED TO JUDGE DEL PESCO. | | |
| 53  | 10/19/2004 | | |
|     | DEFENDANT'S LETTER FILED. | | |
|     | TO: JUDGE DELPESCO | | |
|     | RE: LEGAL MAIL ISSUE AT PRISON | | |
| 52  | 10/22/2004 | | |
|     | STATE'S RESPONSE TO DEFENDANT'S MOTION FOR POST CONVICTION RELIEF. | | |
|     | FILED BY SEAN LUGG, DAG | | |
|     | REFERRED TO JUDGE DELPESCO | | |
| 54  | 11/15/2004 | | |
|     | MOTION FOR EXTENSION OF TIME FILED. PRO SE | | |
|     | REFERRED TO JUDGE DEL PESCO. | | |
| 56  | 11/17/2004 | | |
|     | DEFENDANT'S REQUEST FILED. | | |
|     | TO: JUDGE DEL PESCO | | |
|     | REQUEST TO ORDER WARDEN CARROL TO PAY MOVANT $300 PRIVATE USE PENALTY | | |
|     | FOR OPENING DEFENDANT'S MAIL. | | |
| 55  | 11/19/2004 | | |
|     | DEFENDANT'S LETTER FILED. RE: PRAYED THIS COURT WILL AMEND DOCUMENTS | | |
|     | THAT MOVANT RECEIVED STATE'S RESPONSE ON NOV. 10. 2004 (PRO SE) | | |
|     | REFERRED TO JUDGE DEL PESCO. | | |
| 57  | 12/07/2004 | | |
|     | MOTION FOR EXTENSION OF TIME FILED. PRO SE | | |
|     | REFERRED TO JUDGE DEL PESCO. | | |
| 63  | 12/15/2004 | | |
|     | AFFIDAVIT OF DEVERAL BACON . RULE 61. REFERRED TO JUDGE DELPESCO. | | |
| 64  | 12/16/2004 | | |
|     | DEFENDANT'S RESPONSE FILED. RE: RULE 61 | | |
|     | REFERRED TO JUDGE DELPESCO | | |
| 58  | 12/20/2004 | | |

B-7    A-21

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    8
                       ( as of  02/07/2006 )


  'ate of Delaware v.  DEVEARL L BACON                     DOB: 11/27/1969
  _ate's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
  Defense Atty:                                  DAVID JOHNSON


      Event
  No.  Date           Event                              Judge
  - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        DEFENDANT'S RESPONSE FILED. RE: POSTCONVICTION RELIEF.
        REFERRED TO JUDGE DEL PESCO
  59   12/29/2004
        MOTION FOR ENLARGEMENT OF TIME TO FILE REPLY ( PRO SE) FILED.
        REFERRED TO JUDGE DELPESCO
  60   01/04/2005
        MOTION TO AMEND SUBISSUES OF GROUND ONE (RULE 61) FILED. PRO SE
        REFERRED TO JUDGE DEL PESCO.
  61   01/06/2005
        MOTION FOR ENLARGEMENT OF TIME TO FILE REPLY (PRO SE) FILED.
        REFERRED TO JUDGE DEL PESCO.
  62   01/10/2005
        MOTION TO WITHDRAW DEFENDANT'S REPLY TO STATE'S RESPONSE FILED.
        FILED PRO SE
        REFERRED TO JUDGE DELPESCO
  65   01/19/2005
        DEFENDANT'S LETTER FILED.
        LETTER ASKING TO STRIKE THE FIRST REPLY LETTER TO THE COURT FROM THE
        RECORD.  REFERRED TO JUDGE DEL PESCO.
       02/15/2005
        DEFENDANT'S REQUEST FILED.
        COPY OF JURY INSTRUCTIONS
  67   04/14/2005
        DEFENDANT'S RESPONSE FILED. RE: RULE 61
        REFERRED TO JUDGE DELPESCO
  69   05/17/2005
        MOTION FOR LEAVE TO FILE DEFENDANT'S COMPLETE REPLY FILED.
        PRO SE
        REFERRED TO JUDGE DEL PESCO
  68   05/18/2005
        STATE'S REPLY TO THE DEFENDANT'S MOTION FOR POST-
        CONVICTION RELIEF.
        REFERRED TO JUDGE DELPESCO
  70   06/27/2005
        AFFIDAVIT OF TRIAL COUNSEL IN RESPONSE TO DEFENDANT'S MOTION FOR
        POSTCONVICTION RELIEF PURSUANT TO SUPERIOR  COURT CRIMINAL RULE 61
        FILED BY EDMUND HILLIS, ESQ
        REFERRED TO JUDGE DELPESCO
  71   07/11/2005                               DEL PESCO SUSAN C.
        LETTER/ORDER ISSUED BY JUDGE: DEL PESCO  TO: DEVEARL BACON.
        RE: RULE 61. ENCLOSED WITH THIS LETTER IS A COPY OF MR. HILLIS'
        AFFIDAVIT FILED WITH THE COURT IN RESPONSE TO YOUR MOTION FOR POST-
```

B-8        A-22

ate of Delaware v.  DEVEARL L BACON                              DOB: 11,27/1969
_ate's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL EACON
Defense Atty:                                   DAVID JOHNSON

      Event
No.  Date          Event                              Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
       CONVICTION RELIEF, IN WHICH YOU ALLEGE INEFFECTIVENESS ASSISTANCE OF
       COUNSEL AT YOUR TRIAL FOR ROBBERY AND RELATED CHARGES. MR. HILLIS
       CAUSED A COPY OF HIS AFFIDAVIT TO BE SERVED ON YOU AT D.C.C. AND JUNE
       27, 2005. PURSUANT TO RULE 61(G)(3) YOU NOW HAVE THE OPPORTUNITY TO
       ADMIT OR DENY(THE) CORRECTNESS OF MR. HILLIS' ASSERTIONS. IF YOU
       CHHOSE TO TAKE THIS OPPORTUNITY, YOUR RESPONSE SHALL BE FILED WITH THE
       PROTHONOTARY ON OR BEFORE MONDAY, JULY 25, 2005. IT IS SO ORDERED.
72   07/27/2005
       DEFENDANT'S RESPONSE FILED. PRO SE
       REFERRED TO JUDGE DELPESCO
73   08/05/2005
       DEFENDANT'S LETTER FILED. MR. BACON LETTER ASK IF THE DEFENDANT'S
       RESPONSE FILED IN APRIL 2005 WAS RECEIVED BY THE COURT.
       THE DOCKET INDICATES RESPONSE FILED.
       SENT COPY OF DOCKET
74   08/29/2005                                      DEL PESCO SUSAN C.
       OPINION: UPON CONSIDERATION OF DEFENDANT'S MOTION FOR POSTCONVICTION
       RELIEF: DENIED.
       DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME TO FILE REPLY TO STATE'S
       ANSWER-GRANTED AND DEFENDANT'S MOTION TO FILE AMENDED REPLY TO STATE'S
       ANSWER-GRANTED.
       IT IS SO ORDERED.
75   09/29/2005
       LETTER-FROM SUPREME COURT TO SHARON AGNEW, PROTHONOTARY
       RE:  AN APPEAL WAS FILED ON 9/27/05.
       THIS RECORD IS DUE 10/20/05.
       453, 2005.
76   09/29/2005
       NOTICE OF APPEAL FILED IN SUPREME COURT (COPY).
77   10/19/2005
       RECEIPT FROM SUPREME COURT ACKNOWLEDGING RECORD.
       453, 2005

              *** END OF DOCKET LISTING AS OF  02/07/2006 ***
                  PRINTED BY: JAGVLCM

B-9     A-23

# FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. 1983

## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

DEVEARL L. BACON

(Enter above the full name of the plaintiff in this action)

V.

Edmund M, Hillis ;
Angelo FAlASCA
(Public Defender's)

(Enter above the full name of the defendant(s) in this action)

I.    Previous lawsuits

A. Have you begun other lawsuits in state of federal courts dealing with the same facts involved in this action or otherwise relating to your imprisonment?

YES [ _ ]....          NO [√ ]....

B. If your answer to A is yes, describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same outline).

1.    Parties to this previous lawsuit

Plaintiffs _____

_____

Defendants _____

_____

A-24

2. Court (if federal court, name the district, if state court, name the county)

_____

3. Docket Number_____

4. Name of judge to whom case was assigned

_____

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?)

_____

6. Approximate date of filing lawsuit _____

7. Approximate date of disposition _____

II.    A.    Is there a prisoner grievance procedure in this institution?   YES [✓] NO [ ]

B.    Did you present the facts relating to your complaint in the state prisoner Grievance procedure:   YES [ ]    NO [✓]

C.    If your answer is YES,

1.    What steps did you take? _____

_____

2.    What was the result? _____

_____

D.    If your answer is NO, explain why not _Public Defender's ARE outside of Prison System_

E.    If there is no prison grievance procedure in the institution, did you complain to prison authorities?   YES [ ]    NO [ ]

F.    If your answer is YES,

1.    What steps did you take? _____

_____

2.    What was the result? _____

_____

-2-

A-25

III.   Parties

(In item A below, place your name in the first blank and place your present address in the second blank. Do the same for additional plaintiffs, if any.)

A.   Name of Plaintiff $\underline{DEVEARl\ L.\ BACON}$
     Address $\underline{D.C.C.,\ 1181\ Paddock\ Rd.,\ SmyRNA,\ Del.\ 19977}$

(In item B below, place the full name of the defendant in the first blank, his official position in the second blank, and his place of employment in the third blank. Use item C for the names, positions and place of employment of any additional defendants.)

B.   Defendant $\underline{Edmund\ M.\ Hillis}$ is employed as $\underline{Public\ \textcircled{P}\ Defender}$
     at _____

C.   Additional Defendants $\underline{Angelo\ Falasca\ \ Public}$
     $\underline{Defender\ (Chief\ Deputy)}$
     _____
     _____

IV.   Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates and places. Do not give any legal arguments Or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.)



-3-

A - 26

V.    Relief

(State briefly exactly what you want the courts to do for you. Make no legal arguments. Cite no cases or statutes.)



Signed this _____ day of _____, 20____.


_____
(Signature of Plaintiff)



I declare under penalty of perjury that the foregoing is true and correct.



_____                    _____
       Date                              (Signature of Plaintiff)


-4-

A-27

On June 19, 2001 I Deveard L. Bacon had a Jury Trial, On June 22, 2001 the jury returned a verdicts of Guilty of the Majority of the counts

On About the 2nd week of Aug. 2001 Plaintiff recieved a letter from Edmund M. Hillis (Public Defender) asking the Court Reporter to prepare the trial transcripts. In the months of Sept. and Oct. 2001 the trial transcripts where filed in the Prothonotary. On Jan. 12, 2002 Plaintiff filed for a copy of trial transcripts. Through the months Of June 2002 - Feb 2003 Family members and Girl Friend of Plaintiff made calls, personal visits, and left messages asking that Plaintiff recieve trial transcripts, these transcripts where needed for the One year imposed deadline under Federal Habeas Corpus Act.

On July 1, 2002 Plaintiff Direct Appeal was Affirmed by the Court, Plaintiff recieved this notice in the first week of Aug. 2002 ; Since Recieveing this Notice

I

A-28

: Plaintiff contacted different origins in trying to recieve trial transcripts so that Plaintiff may file Post-Conviction in a timely matter.

On about the 2nd week of April 2003 Plaintiff recieved trial transcripts "from Trial Judge".

On May 24, 2004 Plaintiff was at D.C.C. M.H.U. Law Library, After hearing the 6th Inmate (Plaintiff came across) state they been "time barred" for Habeas Corpus Act Plaintiff notice a grave problem, After talking, Plaintiff found out that Federal Habeas Corpus one-year deadlines dose not stop while Post-Conviction is being filed. Plaintiff asked Inmate "did you have problems with recieving your trial transcripts", this Inmate stated yes, chaos emerged, A great evil is exposed.

A-29

During the early stages of Appeal Plaintiff recieved a well establish contact with Edmund M. Hillis. (see exhibits pg. 1-7)

After trial transcripts where transcribed the contact with Edmund M. Hillis weaken (see exhibits pgs. 8-10). On Jan. 12, 2002 plaintiff asked Edmund M. Hillis for trial transcripts and stated "All is needed for ladder dates". (see exh. pg. 11)

On Jan. 18, 2002 Mr. Edmund M. Hillis filed direct Appeal. On April 8, 2002 The Appeal was scheduled for an oral argument May 7, 2002 (see exh. pg. 12-15).

In the month of June 2002 Plaintiff contacted the Court in asking if the Court could help Plaintiff recieve trial transcripts. (see exh. pg. 17)

On about the 1st week of Aug. 2002 Plaintiff recieved notice that the Supreme Court Affirmed the Direct Appeal (see exh. pgs. 19-23).

A-30

①

: On Aug. 19, 2002 Plaintiff wrote Edmund M. Hillis and filed for a copy of trial transcripts (see exh. pg. 18) At this moment in time Plaintiff Girl friend Ms. Helen D. Spencer Along with family members of Plaintiff where making phone calls And personal visits to the Public Defender's Office trying to help Plaintiff recieve trial transcripts.

Mr. Edmund M. Hillis's Argument on Direct Appeal was a strong ground and was a close argument, "to persever this Argument was critical" (see exh pg. 23), Plaintiff was being denied the Right of Due Process and Access to the Court by not recieving trial transcripts. Mr. Hillis Argument (see exh pg. 24) AND Plaintiff argument (see exh pg. 31-32) Are different.

Plaintiff trial transcripts where needed at this very important stage of Plaintiff's Due

②

A-31

Process Rights -, In the Month of Sept. 2002 Plaintiff wrote the Office of Disciplinary Counsel And filed if they could help Plaintiff recieve trial transcripts. On Exhibit page 34 Ms. Susan Much wrote "your claim is that your attorney has failed to respond to your Numerous requests for your transcripts and other documents Necessary for your application for post conviction relief ". , Ms. Much later States (exh pg. 35), "There fore, by copy of this letter with your complaint to Mr. Hillis, as well as to his supervisor, Angelo Falaca, Esquire, I am asking that they promptly Evaluate your complaint and take any action they deem appropriate, including providing you with copies of any documents to which you are Entitled ". , Mr. Falaca was aware of these Evils.

A-32

③

: All of Plaintiff's "tedious labors" are filed
in the Courts (see exh. pg. 36-44), Mr. Hillis
" denied me access to the Court"., On Jan. 30,
2003 Plaintiff wrote Pres. Judge Hon. DuPont Ridgley
(see exh. pg. 45-46), there was no feedback, Plaintiff
then wrote The Supreme Court Clerk and asked if
the Court could help Plaintiff recieve trial
transcripts (see exh. pg. 47-49), Plaintiff got no response.

The labors in trying to attain Plaintiff's Trial
Transcripts has taken a heavy toll, Plaintiff at that
moment was under a-lot of stress, by the Public
Defender's Office holding these important documents
from the Plaintiff was a "Cruel act".

On Feb-13, 2003 Plaintiff filed a motion for Expentio.
and for Copies of Trial Transcripts (see exh. pg. 50-54).
In this motion Plaintiff "tryed" to expand One Year
Federal Habeas Corpus Act, for Reason of "Public

(4)                          A-33

Defenders Action or Ommissions In failing to Provide Defendants Transcripts"....., Plaintiff Recieved Trial Transcripts from Trial Judge Hon. Judge Susan C. DelPesco on about 2nd week of April 2003 (see Exh-pg. 55). Plaintiffs Motion was denied, Hon. Judge S. DelPesco states:

"Your request for an extension of time within which to file a Rule 61 PostConviction is DENIED".

Plaintiff "tryed" to Exstend the One Year Habeas Corpus Rule.

On About the 4th week of April 2003 Plaintiff recieved letter from Ms. Mary Susan Much that states "I have been advised by Edmund M. Hillis, Esquire, that a copy of your transcripts have been forwarded (..) to you"., Out of Nowhere Mr. Hillis "Appears".

Plaintiff recieved Trial Transcripts on about the

⑤

A-34

SECOND WEEK OF April 2003, Plaintiff Direct Appeal
WAS Affirmed July 1, 2002, Plaintiff Recieved this
information on About the 1st WEEK OF Aug. 2002
(SEE Exh. pg. 19-23)·, With the ONE YEAR Habeas Corpus
Rule the Plaintiff had "less then" 90 days to meet
the deadline·, With Motion for Extention Denied Plaintiff
WAS suffering by the Cross of both The Denied Extention
And the lack of time to PERSEVER Plaintiffs Due Process
Rigths-

ON May 24, 2004 Plaintiff WAS iN M.H.U. law Library,
Plaintiff CAME ACROSS the 6th Inmate who had problems
RECIEVING TRial TRANSCRIPTS, had it NOT BEEN by "HIS
GRACE AND MERCY" Plaintiff would NOT hAVE found out
that day the totality of the Evils BEING RENDERRED:

Inmates hAVE BEEN finding out to late About the
ONE YEAR Habeas Corpus Rule, Plaintiff found out
Inmates Are BEING "time barred", the ONE YEAR

A-35

⑥

Rule dose not  stop while Inmates are in post conviction stages, and that in order for a "time barred" Motion for Federal Habeas Corpus to be "reconsiderred" by The Court Petitioner must reach one of three Requirements by the Court., This means that the State can "delight in any kind of Evil" as long as the Inmate dosen't have the chance to make it out of the State Courts.

The stress that the Plaintiff was under could not be measured. Plaintiff had to seek mental Health counseling to cope with these Evils, and had to take pain killers for headacks.

⑦

A-36

CONCLUSION

It all comes together, the poor INMATES ARE ruthlessly taking ADVANTAGE of, for They lack the skills and moneys to have there case(s) brougth to a "fair Light"., One of the tatics of keeping the INMATES IN the darkness is NOT allowing Him to the Light, the other is to cast a shadow over the INMATE AND KEEP HIM IN A STATE of ignorance until its to Late for this LAYman to do anything.

The Public Defender's AND Court Appointed Attorney's have been with-holding Trial TRANSCRIPTS for years And Now We KNOW ONE of the main Reason's why. Whomever or Whatever is behind these sinister Acts should All bare the consequences, The Public Defender's AND Court Appointed Attorney's have been used as game pieces in these evils and should not be spared, CAN Not be A justifiable Act for

⑧

A-37

Committing these evils, for they have all
"stolen from our measures of creation".

For these acts I ask for Edmund M. Hillis
and Angelo Falaca to pay Plaintiff for the following
Constitution Violation: Due Process Rights, Denying
Plaintiff Access to the Court; and Cruel and Unusual
Punishment;

Edmund M. Hillis to pay the sum for the following
Damages;

① 2 million dollars  mental damages
② 2 million dollars  punitive damages
③ 2 million dollars  compensatory damages.

Angelo Falaca to pay the sum for the following
Damages:

① 1 million dollars  mental damages

A-38

⑨

Edmund M. Hillis

① 2 million dollars    mental damages

② 2 million dollars    punitive damages

③ 2 million dollars    compensatory damages

Angelo Falaca

① 1 million dollars    mental damages

② 1 million dollars    punitive damages

③ 1 million dollars    compensatory damages

Bring the total to 9 million dollars.

Wherefore it is prayed that the Plaintiff is granted a Trial by Jury and Legal Representation

July 1, 2004

Smyrna, Del 19977

A-39

② 1. million dollars punitive damages

③ 1 million dollars compensatory damages.

This brings the total to 9 million dollars for damages.

Wherefor it is prayed that the Plaintiff is granted a Trial by Jury and Legal Representation.

July 1, 2004

D.C.C
Smyrna, Del. 19977

A - 40

# DELAWARE CORRECTIONAL CENTER
## SUPPORT SERVICES OFFICE
### MEMORANDUM

TO: _Deveard Bacon_ SBI#: _221242_

FROM:    Stacy Shane, Support Services Secretary

RE:    **6 Months Account Statement**

DATE:    _May 24, 2004_

Attached are copies of your inmate account statement for the months of
_November 1st 2003_ to _April 30 2004_

The following indicates the average daily balances.

| MONTH | AVERAGE DAILY BALANCE |
|-------|----------------------|
| Nov | 15.74 |
| Dec | 12.55 |
| Jan | 6.47 |
| Feb | 26.38 |
| March | 55.60 |
| April | 16.28 |

Average daily balances/6 months: _22.17_

Attachments
CC:    File

_Stacy Shane_
5/24/04

_signature_ A-41
5/24/04

Exhibit's

A-42



PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

EDMUND M. HIL
ASSISTANT PUBLIC DEFEND

TELEPHO
(302) 577-5

August 9, 2001

Mr. Devearl Bacon, Inmate
SBI No. 00221242
MPCJF Gander Hill 1C 14
1301 E 12th Street
Wilmington, DE 19809

RE: Devearl Bacon vs. State of Delaware
No. 369, 2001

Dear Mr. Bacon:

Enclosed please find a copy of the Notice of Appeal that I filed in your case on August 3, 2001.

You will note that I have also included for your information a copy of the directions to the court reporter. These directions instruct the court reporter to prepare a transcript of all pertinent parts of the trial. That transcript will take some time to be delivered to me. I cannot make copies of that transcript available to you at this time because I will need them to produce the brief.

An appeal unlike a trial does not usually involve strategy or substantive matters where participation by the client is appropriate or useful. Appeal addresses technical legal issues which are not fact driven. The factual record established at trial controls. It is, therefore, not unusual that an attorney would not meet with the client to sit down and review in detail the arguments that the attorney intended to make on appeal.

You can be assured, however, that I will argue those issues, which in my professional judgment, are appropriate. *If I determine

A-43

1

Mr. Devearl Bacon, Inmate
August 9, 2001
Page 2

that there are no meritorious issues to pursue on your appeal, you
will have an opportunity to present issues to the court that you
believe the court should consider in reviewing your convictions.

Once the transcripts are delivered in full by the court
reporter, the court will issue a brief schedule calling for
production of a opening brief within thirty days of the filing of
the last transcript with the court.  It is not unusual for me to
request an extension of time in which to prepare the appeal.  I
will keep you notified of progress in this matter.

Should you have any further questions, please do not hesitate
to contact me.

Very truly yours,

Edmund M. Hillis
Assistant Public Defender

EMH/ef
Enclosure

A-44

IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

DEVERAL BACON,                      )
                                    )
      Defendant Below,              )
      Appellant,                    )
                                    )
      v.                            )     No.  369, 2001
                                    )
STATE OF DELAWARE,                  )
                                    )
      Plaintiff Below,              )
      Appellee.                     )

AMENDED DIRECTIONS TO COURT REPORTER TO PROCEEDINGS
BELOW TO BE TRANSCRIBED PURSUANT TO RULE 9(e)

TO:   Court Reporters
      Superior Court
      Public Building
      11th and King Streets
      Wilmington, DE 19801

          Appellant does hereby direct the proceedings in

State of Delaware vs. Deveral Bacon, Criminal Action Nos.

IN00071666,   IN00071666,   IN00071667,   IN00071671,   IN00071672,

IN00071673,   IN00070347,   IN00070348,   IN00070349,   IN00070351,

IN00070352, IN00070354, IN00070356, IN00070357 and IN00070358 (ID

No. 0006017660) in the Superior Court of the State of Delaware, In

and For New Castle County, to be transcribed as follows:

      1.   The transcripts of Opening Statements, Closing Arguments,

Trial, Side Bars, Office Conferences and Sentencing.

      Trial was held on June 19, 2001. Judge Susan C. Del Pesco



presided.

Sentencing was held on July 20, 2001 before Judge Susan C. Del Pesco.

I hereby certify that transcription of the above-listed portions of the proceedings below is essential to the prosecution of this appeal.

Dated: August 16, 2001

EDMUND M. HILLIS
Assistant Public Defender
State Office Building
820 North French Street
Wilmington, DE 19801

EXHIBIT A

④            A-46



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
### 820 NORTH FRENCH STREET, THIRD FLOOR
### P.O. BOX 8911
### WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

EDMUND M. HILLIS
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5122

August 16, 2001

Mr. Deveral Bacon, Inmate
SBI No. SBI No. 00221242
MPCJF Gander Hill
1301 E 12th Street
Wilmington, DE 19809

     RE:  Deveral Bacon vs. State of Delaware
           No. 369, 2001

Dear Mr. Bacon:

     Please find enclosed a copy of the Amended Directions to the Court Reporter which was filed with the Supreme Court.    Please destroy the previous document and replace it with this one. The one previously sent was inadvertently attached to your Notice of Appeal.

     Thank you.

                        Very truly yours,

                        Elaine Folsom
                        Secretary to Edmund M. Hillis
                        Assistant Public Defender

EF

A-47

IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| DEVERAL BACON, | ) | |
| | ) | |
| Defendant Below, | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | No. 369, 2001 |
| | ) | |
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff Below, | ) | |
| Appellee. | ) | |

## AFFIDAVIT OF MAILING

BE IT REMEMBERED that on this /6<sup>th</sup> day of August, 2001, personally appeared before me, a Notary Public for the State and County aforesaid, Elaine Folsom, a secretary for the Public Defender's Office, who being by me duly sworn did depose and say as follows:

1. That she caused to be delivered by Public Defender's runner, two copies of Appellant's Notice of Appeal and two copies of Directions to Court Reporters to Proceedings Below to be Transcribed Pursuant to Rule 9(e) in the above-captioned matter to Sean Lugg, Esquire, Deputy Attorney General, Department of Justice, State Office Building, 820 North French Street, Wilmington, Delaware 19801.

2. That she caused to be delivered by Public Defender's runner, two copies of Appellant's Directions to the Court Reporter to Proceedings Below to be Transcribed Pursuant to Rule 9(e) in the



⑥        A - 48

above-captioned matter to the Court Reporter for Superior Court,

Public Building, 11th and King Streets, Wilmington, Delaware 19801.

Elaine Folsom

**SWORN TO AND SUBSCRIBED** by me the day and year aforesaid.

ATTORNEY AT LAW

$A$-49

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          No. 369, 2001

v.

DEVEARL BACON,

    Defendant.

BEFORE: HONORABLE SUSAN C. DEL PESCO, J.
and jury

APPEARANCES:

    SEAN LUGG, ESQ.
    Deputy Attorneys General
    for the State

    EDMUND HILLIS, ESQ.
    for the Defendant

- - - - - - - - - - - - - -
    TRIAL TRANSCRIPT
    JUNE 21, 2001
- - - - - - - - - - - - - -

MICHELE L. ROLFE
SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
(302) 577-2400 Ext. 415

23

---

2

1          June 21, 2001
          Courtroom No. 201
2          10:00 a.m.

3     PRESENT:

4          As noted.

5          - - - - -

6          MR. LUGG: The State's ready, Your Honor.
7          THE COURT: Very well. Jury please.
8          (The jury entered the room.)
9          THE COURT: Good morning, ladies and
10    gentlemen.
11          JURORS: Good morning.
12          THE COURT: Mr. Lugg?
13          MR. LUGG: Thank you, Your Honor. The State
14    would like to recall Detective Spillan.
15          (Already sworn in.)
16          REDIRECT EXAMINATION
17    BY MR. LUGG:
18          Q. Detective Spillan, you are still under oath,
19    you understand that?
20          A. Yes.
21          MR. LUGG: If I may approach, Your Honor?
22          THE COURT: Yes.
23          MR. LUGG: Thank you.

---

3

1     BY MR. LUGG:
2          Q. Sir, I'm placing before you what's been
3     marked as State's Exhibit 4. You've testified that
4     you, in fact, went to the Wilmington location on 17th
5     Street the evening of the defendant's arrest; is that
6     correct?
7          A. That is correct.
8          Q. Did you observe the vehicle at that location?
9          A. Yes, I did.
10          Q. And did you observe the interior of this
11    vehicle?
12          A. Yes, I did.
13          Q. Can you explain this picture?
14          A. It's a photograph of the ignition part of the
15    vehicle and the keys in the ignition.
16          Q. And is that an accurate depiction of the
17    interior of the vehicle and the ignition part with the
18    keys as you observed them on the morning of the 23rd
19    of June of last year?
20          A. That is correct.
21          Q. And if I might ask, is that a depiction of
22    the interior of the vehicle with the keys in the
23    ignition on the morning of the 23rd of last year?

---

4

1          A. Yes, it is.
2          Q. Of June, I'm sorry.
3          Next, you've testified that you've worked as
4     a detective for some years now?
5          A. Correct.
6          Q. How many years was that?
7          A. Five years.
8          Q. And that was at Troop 2; is that correct?
9          A. Yes.
10          Q. And are you familiar with the areas of the
11    7-Eleven involved in this robbery?
12          A. Yes, I am.
13          Q. And are you familiar with the area surrounded
14    by the Star Liquors that is involved in this robbery?
15          A. Yes.
16          Q. Are you familiar with the approximate
17    distance between the two locations?
18          A. Yes.
19          Q. Are you familiar with the time it takes to
20    travel between the two locations?
21          A. Yes.
22          Q. Can you indicate to the jury how long it
23    would take from the Star Liquor Store to and from the

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          No. 369, 2001

v.                          0006017660

DEVEARL BACON

Defendant.

BEFORE:  HONORABLE SUSAN C. DEL PESCO, J.
and jury

APPEARANCES:

SEAN LUGG, ESQ.
Deputy Attorneys General
for the State

EDMUND M. HILLIS, ESQ.
for the Defendant

ORIGINAL

- - - - - - - - - - - - - - -
TRIAL TRANSCRIPT
JUNE 19, 2001
- - - - - - - - - - - - - - -

MICHELE L. ROLFE
SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
(302) 577-2400 Ext. 415

---

**Page 2**

1        JUNE 19, 2001
         Courtroom No. 201
2        2:00 p.m.

3   PRESENT:

4       As noted.

5       . . . . .

6       MR. HILLIS: Good afternoon, Your Honor.
7       THE COURT: Wow, that's a large screen. Is
8   everyone ready to begin?
9       MR. HILLIS: Yes, ma'am.
10      THE COURT: Okay. Let's bring in the jury,
11  please.
12      (The jury entered the room.)
13      MR. HILLIS: Your Honor, I had not asked for
14  sequestration formally, but I'll make a formal motion.
15      MR. LUGG: Very well. The State is in
16  agreement of that.
17      THE COURT: Okay. The first thing we have to
18  do is swear in the jury.
19      THE CLERK: Yes.
20      THE COURT: Welcome back ladies and
21  gentlemen. Swear the jury, please.
22      THE CLERK: Yes, Your Honor.
23      (The jury was sworn in.)

---

**Page 3**

1       THE COURT: Is the State ready to proceed?
2       MR. LUGG: Yes, Your Honor. May it please
3   the court.
4       Ladies and gentlemen, good afternoon. I hope
5   you enjoyed your lunch. We're now going to get to the
6   case. This is a time for opening comments and
7   statements by counsel for the State and for the
8   defense.
9       As you now know, and we introduced ourselves,
10  I represent the State of Delaware. I'm a prosecutor,
11  my name is Sean Lugg.
12      I'm going to move this a bit.
13      Seated with me at the counsel table is
14  Detective James Spillan. He's a detective with the
15  Delaware State Police. He was the chief investigating
16  officer. His job was to pull together the evidence
17  for presentation to you over the next few days.
18  You'll hear from him as the trial progresses.
19      Seated at the next table, as you know, is
20  Devearl Bacon, and he's the defendant. His attorney
21  is Mr. Hillis.
22      And as you also know, the judge is
23  Judge Del Pesco, who is seated at the bench. Her job

---

**Page 4**

1   is to make rulings on the evidence and on the cases
2   presented to you. Her job is essentially to act as a
3   referee to make sure both the State and the defense
4   are afforded a fair trial.
5       You are major players in this case too, and
6   I'm going to say that right at this start. You are
7   possibly the most important players in this whole
8   process. Your job is to hear the evidence as it's
9   presented to you at the witness stand, and to take it,
10  and to decide what happened and who's criminally
11  responsible.
12      We'll present names and evidence to you.
13  We'll make arguments to you, but it's your job to
14  decide.
15      Probably one of the most important civic
16  duties that we have as Delawareans is to serve as
17  jurors. And for that, I thank you. That is a very
18  important function. Those are the players in this
19  case, those are the people involved.
20      Now, let's talk about what happened. You
21  heard a little bit at the beginning about what this
22  case is about. It's about some robberies and some
23  weapon offenses and some other things.

A-51

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, .    No. 369, 2001

0006017660

v.

DEVEARL BACON,

Defendant.

BEFORE: HONORABLE SUSAN C. DEL PESCO, J. and jury

APPEARANCES:

SEAN LUGG, ESQ.
Deputy Attorneys General
for the State

EDMUND HILLIS, ESQ.
for the Defendant

ORIGINAL

. . . . . . . . . . . . . .
TRIAL TRANSCRIPT
JUNE 20, 2001
. . . . . . . . . . . . . .

MICHELE L. ROLFE
SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
(302) 577-2400 Ext. 415

---

2

1        JUNE 20, 2001
          Courtroom No. 201
2         10:00 a.m.

3    PRESENT:

4        As noted.

5        . . . . .

6        THE COURT: Ladies and gentlemen, we had a
7    phone call earlier from Juror No. 9, he was having
8    child care difficulties. It's clear that he has not
9    resolved them, so I suggest that we proceed and use
10   first alternate, any objections?
11       MR. HILLIS: Just a moment. I don't think
12   so, Your Honor.
13       MR. LUGG: None from the State at this time,
14   Your Honor.
15       MR. HILLIS: It sounds like a reasonable
16   proposition to me, Your Honor.
17       THE COURT: Okay. Would you ask the first
18   alternate to sit in position No. 9, and bring in the
19   jury.
20       Ready to get started?
21       MR. LUGG: Your Honor, I intend to offer a
22   schedule to the Court, if you would like to know?
23       THE COURT: Okay.

---

3

1        MR. LUGG: As you know, there were a number
2    of alleged robberies. I intent to call two witnesses
3    for the second, which is an attempted robbery. One
4    witness is here, the other is probably walking in the
5    door as we speak. I would ask for a brief recess
6    after that. There are more witnesses, but nobody
7    really works at the same place anymore. There will be
8    7-Eleven witnesses coming in from out of State.
9    Actually, a few of them we initially asked to come in
10   around 10:00 or 10:30. In the 7-Eleven case, we asked
11   them to come in after lunch, but we're moving faster
12   than we expected, so we went downstairs to check and
13   see if they could come up earlier.
14       I'm expecting two witnesses to be here now.
15   I'd just like a chance to go down and see them
16   briefly. I do intent or I would expect that we would
17   be concluded sometime in the area of lunch, maybe
18   before.
19       And we have several law enforcement witnesses
20   who are available and waiting to come in to testify
21   after lunch and that looks like the day today.
22       THE COURT: Okay. You want to take two
23   witnesses and have a brief recess?

---

4

1        MR. LUGG: Yes.
2        THE COURT: Okay.
3        MR. LUGG: I've spoken with the experts, they
4    will be available for tomorrow.
5        MR. HILLIS: That's fine with the defense,
6    Your Honor.
7        THE COURT: Very well.
8        (The jury entered the room.)
9        THE COURT: Good morning ladies and gentlemen
10   of the jury.
11       JURORS: Good morning.
12       THE COURT: Now, you understand why we have
13   alternates.
14       Is the State ready to proceed?
15       MR. LUGG: The State calls Gina Harris as the
16   next witness.
17       GINA HARRIS, having been called on the part
18   and behalf of the State as a witness, being first duly
19   sworn under oath, testified as follows:
20            DIRECT EXAMINATION
21   BY MR. LUGG:
22       Q. Miss Harris, good morning.
23       A. Good morning.

A - 52

Copy

#221242
Gander Hill Prison
No. 369, 2001

Mr. Edmund M. Hillis
Public Defender
Wilmington, Del. 19801

Jan. 12, 2002

Mr. Hillis;

If you decide to file "Direct
Appeal" on my behalf, I need for you to
include everything that has been put on
record., Police reports, Rule 16, Preliminary
Hearing transcripts, Trial transcripts etc.,
All needed for Ladder dates.

Sincerly,

Deveari L Bacon

A-53

IN THE SUPREME COURT OF THE STATE OF DELAWARE

```
DEVEARL BACON,                    )
                                  )
                                  )
            Defendant-Below,      )
            Appellant,            )
                                  )
v.                                )    No. 369, 2001
                                  )
STATE OF DELAWARE,                )
                                  )
            Plaintiff-Below,      )
            Appellee.             )
```

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

APPELLANT'S OPENING BRIEF

EDMUND M. HILLIS [# 2008]
Assistant Public Defender
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-5122

Attorney for Appellant.

DATE: January 18, 2002

(12)         $A-54$



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

EDMUND M. HILLIS
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5122

February 14, 2002

Mr. Deveral Bacon, Inmate
SBI No. 00221242
MPCJF Gander Hill
1301 E 12th Street
Wilmington, DE 19809

    RE:  Deveral Bacon vs. State of Delaware
         No. 369, 2001

Dear Mr. Bacon:

    Please find enclosed copies of the following documents in the
above referenced matter which were filed with the Supreme Court on
your behalf:

    Appellant's Opening Brief and Appendix to Appellant's Opening
Brief.

    Also enclosed is a copy of the State's Answering Brief.

                                    Very truly yours,

                                    Edmund M. Hillis
                                    Assistant Public Defender

EMH/ef
Enclosures

$A$-55

SUPREME COURT OF DELAWARE

RECEIVED
APR 1 0 2002
BY

SUPREME COURT BUILDING
55 THE GREEN
P.O. BOX 476
DOVER, DE 19903
(302) 739-4155

#22

CATHY L. HOWARD
*Clerk*

AUDREY F. BACINO
*Assistant Clerk*

DEBORAH L. WEBB
*Chief Deputy Clerk*

LISA A. SEMANS
*Senior Court Clerk*

April 8, 2002

Edmund M. Hillis, Esquire
Assistant Public Defender
820 N. French Street
Wilmington, DE 19801

William M. Kelleher, Esquire
Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

     RE: *Devearl Bacon v. State,* No. 369, 2001

Dear Counselors:

     The above captioned matter was submitted on March 21, 2002 for consideration on the briefs before a three-Justice panel consisting of Justice Holland, Justice Berger and Justice Steele. The panel has decided that the matter should be scheduled for oral argument before the panel. The above cause has been called for argument on **Tuesday, May 7, 2002 at 1:10 p.m. in Dover.**

     Please complete and return the enclosed oral argument scheduling acknowledgment form within seven days of receipt of this notice. If you have a conflict with the scheduled date of oral argument, please try to arrange for a rescheduling of the conflicting engagement. If exceptional circumstances make it necessary to ask the Court to reschedule the oral argument, please file such application within five days of the date of this letter. The application should fully explain the exceptional circumstances which make a rescheduling necessary.

$A-56$

(14)

In accordance with Supreme Court Rule 10, please serve two copies of the executed scheduling acknowledgment form or application for rescheduling, as appropriate, on all other parties to this appeal. Furthermore, if your respective clients wish to attend the oral argument, please advise them to arrive in a timely fashion.

Very truly yours,

Cathy L. Howard

/clh

Enclosures

$A-57$

(15)



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

EDMUND M. HILLIS
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5122

April 12, 2002

Mr. Deveral Bacon, Inmate
SBI No. 00221242
MPCJF Gander Hill
1301 E 12th Street
Wilmington, DE 19809

      RE:  Deveral Bacon vs. State of Delaware
          No. 369, 2001

Dear Mr. Bacon:

      Please find enclosed copies of the correspondence dated April 8, 2002 from the Clerk of the Supreme Court and the Supreme Court Scheduling Acknowledgment in the above referenced matter.   The Supreme Court has scheduled this matter for Oral Argument.

                        Very truly yours,

                        Edmund M. Hillis
                        Assistant Public Defender

EMH/ef
Enclosures

$A - 58$

SUPREME COURT OF DELAWARE

#32

CATHY L. HOWARD
*Clerk*

AUDREY F. BACINO
*Assistant Clerk*

DEBORAH L. WEBB
*Chief Deputy Clerk*

LISA A. SEMANS
*Senior Court Clerk*

June 21, 2002

SUPREME COURT BUILDING
55 THE GREEN
P.O. BOX 476
DOVER, DE 19903

(302) 739-4155

Edmund M. Hillis, Esquire
Office of the Public Defender
Carvel State Office Building
820 North French Street
Wilmington, DE 19801

RE:    ***Bacon v. State***, No. 369, 2001

Dear Counselor:

Enclosed is a copy of a letter dated June 19, 2002 from Mr. Devearl L. Bacon, in the above-captioned matter. The Court has directed me to provide you with a copy of Mr. Bacon's letter for appropriate disposition. Please contact Mr. Bacon and advise him that all future correspondence to the Court on his behalf should be through you as his attorney.

By copy of this letter, I am informing William Kelleher, Esquire, of the Department of Justice, of the Court's action regarding Mr. Bacon's letter. I am providing Mr. Kelleher with a copy of Mr. Bacon's letter for informational purposes only. The Court will take no further action regarding Mr. Bacon's letter.

Very truly yours,

Lisa A. Semans

Enclosure

/eas

cc:    Mr. Devearl L. Bacon
        (with copy of docket sheet)
        William Kelleher, Esquire
        (with copy of Mr. Bacon's letter)

$A - 59$

(Copy)

#22/242
S C C
Smyrna, Del 19977

Case No. 0006017660

To Mr Edmund N. Hillis
Public Defender
Wilmington, Del. 19801

Aug-19, 2002

Mr Hillis;

Could you please send me a copy
of my Trial transcripts etc-, All is needed
for a Judder date

Cordially,

Deveart C Bacon

(18)        A-60

**LAWRENCE M. SULLIVAN**
PUBLIC DEFENDER OF THE STATE OF DELAWARE
CARVEL STATE OFFICE BUILDING
820 N. FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

15-02-01

"Official Business, Penalty for
Private Use $300."
C500

Mr. Deveral Bacon, Inmate
SBI No. 00221242
Delaware Correctional Center
RD #1 Box 500
Smyrna, DE 19977

**RECEIVED**

AUG - 2 2002

Delaware Correctional Center

N440

A-61



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
### ELBERT N. CARVEL STATE OFFICE BUILDING
### 820 NORTH FRENCH STREET, THIRD FLOOR
### P.O. BOX 8911
### WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

EDMUND M. HILLIS
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5122

July 31, 2002

Mr. Deveral Bacon, Inmate
SBI No. 00221242
Delaware Correctional Center
RD #1 Box 500
Smyrna, DE 19977

    RE:  Deveral Bacon vs. State of Delaware
         No. 369, 2001

Dear Mr. Bacon:

    Please find enclosed a copy of the Supreme Court's decision in
the above referenced matter. The Court has Affirmed the judgment of
the Superior Court.

                              Very truly yours,

                              Edmund M. Hillis
                              Assistant Public Defender

EMH/ef
Enclosure

$A-62$

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVEARL BACON, | § | |
| | § | No. 369, 2001 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 7, 2002
Decided:   July 1, 2002

Before **HOLLAND**, **BERGER** and **STEELE**, Justices.

## O R D E R

This      /      day of July, 2002, on consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of carjacking and multiple counts of robbery first degree, possession of a deadly weapon by a person prohibited, wearing a disguise during the commission of a felony, aggravated menacing, and possession of a firearm during the commission of a felony. He appeals from one robbery conviction, arguing that the Superior Court erred in allowing that count of the indictment to be amended at the beginning of trial.

$EXHIBIT \ B$    $A-63$

2) Bacon was charged with 36 counts of robbery and related offenses arising out of a two-day crime spree. The indictment at issue originally charged that Bacon threatened "the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car...." The State moved to amend the indictment to substitute "United States currency" for "car keys and a car." The Superior Court granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be amended as to matters of form, as long as "no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights."[1] The elements of the crime of robbery are, in relevant part: (1) the use or threatened immediate use of force on a person; (2) while committing the crime of theft; (3) in order to overcome the person's resistance to the taking of the property.[2] The identity of the stolen property is not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge.[3] Since the amendment was

---

[1]*Robinson v. State*, 600 A.2d 356, 359 (Del. 1991).

[2] 11 *Del. C.* §831.

[3] *Roberts v. State*, 1998 WL 231269 (Del. Supr.).

2

$A-64$

permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial court's decision granting the motion to amend must be upheld.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

Carolyn Berger
Justice

3

A-65

The Superior Court erred because, even if the amendment to the indictment may have been permitted under the Robbery statute and did not charge a different or more serious offense, the amendment violated the Defendant's right to indictment by grand jury under Article I, Section 8 of the Delaware Constitution. *Johnson v. State*, Del. Supr., 711 A.2d 18 (1998).

The Grand Jury indicted the Defendant for having committed Robbery by threatening to use force to compel Roshelle Conkey to give up property consisting of "car keys and a car", based upon the evidence presented before it. It did not indict the Defendant for having committed Robbery by threatening the use of force to compel her to give up property consisting of "Unites States Currency." It cannot be assumed that the Grand Jury would have considered the evidence before it sufficient to allege that the Defendant had committed Robbery by using force to compel the delivery of property consisting "United States Currency."

Therefore, permitting the Defendant to be convicted on such an amended indictment violated the Defendant's right

---

[5] Rule 7(e) of the Superior Court Criminal Rules permits an indictment to be amended before verdict if "no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

7

$A-66$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE, )
                   )    C.A. No. _____
            V.     )
                   )    I.D. No. _____
DEVEARL BACON,     )
                   )
         MOVANT.   )

MEMORANDUM OF GROUNDS AND FACTS
FOR POSTCONVICTION RELIEF

A-67

㉕

Ground One: They made a reversible error when the trial court
permitted the joinder of the three (3) counts of Possession of
Deadly Weapon by a Person Prohibited (hereafter known as "PDWPP")
to the other 15 counts. These charges require the disclosure of
a defendant's prior convictions as a necessary element of the
offense. Charges that require disclosure of a defendant's prior
criminal record such as PDWPP or escape after convictions require
separate trials because of "inherent prejudice." Consideration
of judicial economy does not offset prejudicial effect. This was
a prejudicial joinder and it is well-established procedure to
have separate trials regarding these offenses. This is a clear
violation of defendant's Due Process Rights as guaranteed under
the 6ᵗʰ and 14th Amendments to the U.S. Constitution. Trial
counsel was ineffective for failure to move for severance before
trial, object at trial, and identify issue or raise on direct
appeal.

Facts: The PDWPP counts were joined to the other fifteen counts
derived from three separate and distinct sets of charges. The
evidence presented to support the elements of these PDWPPs is
necessary by conveying to the jury the defendant's prior
convictions (or there is no evidence to support a PDWPP charge)
and criminal record and status as a prisoner. Past convictions
of defendant exposed to the jury is "inherently prejudicial."
None of these three charges has a direct relationship to the

-2-

$A-68$

other offenses and can be proven without reference to the remaining offenses. The evidence admissible in these PDWPP counts is clearly not admissible on any of the other counts, and the effect of this evidence prejudiced the jury unfairly. The defendant's right to a fair and impartial trial and proper determination of his guilt or innocence of each crime charged required that they should have tried this set of PDWPP charges separately and apart from the district and independent charges of the other counts. This was a close case to begin with. The evidence of these crimes probably heavily influenced the jurors to imply a general criminal disposition of the defendant, and probably had been a determining factor finding guilt on "most" of the other charges, based also on the "cumulative effect." This was a reversible error.

Ground Two: They made Reversible Error in allowing the State to present a joint trial containing eighteen counts stemming from four separate locations. This permitted the jury to cumulate the evidence and free to infer a general criminal disposition of the defendant. As a result, the defendant was convicted of most of the counts charged. The cumulations of the separate incidents of Star Liquors, (two incidents) the 7-Eleven Store and at a vehicle in Wilmington in which the PDWPP charges stemmed violated defendant's *6th, and 14th Amendments to the U.S. Constitution.* Trial counsel was ineffective for failure to move for severance

-3-

A-69

of these charges, failing to object at trial, failure to identify and raise these claims on direct appeal.

Facts: All eighteen counts levied against defendant were joined in a joint trial.  Defendant was inevitably prejudiced and this prevented him from receiving a fair trial.  The danger arising from the cumulative effect of the evidence of the other charges on the minds of the jurors was too great to tolerate a not guilty finding on all these charges.

There was nothing contained in the indictments from the Star Liquors incident that are in any way connected to the 7-Eleven store incident as part of a common scheme or plan.  Nothing in the 7-Eleven indictments is alleged to be part of a common scheme or plan relating to Star Liquors incident.  Nothing in the three PDWPPs is contained regarding either incident.  Consequently, the defendant has a right to a fair and impartial trial and proper determination of guilt and innocence of each crime charged required that the sets of charges concerning Star Liquors incident including the separate car jacking incident these should have been tried separately and apart from the distinct, and independent charges based on the second Star Liquors attempted robbery, the independent 7-Eleven Store offenses, and the independent three PDWPPs count.  Each set of charges arose out of a separate occurrence.  There was not a positive accurate identification made of the perpetrator(s) at any robbery location.  In fact, the State offered car jacking evidence at the

-4-

$A - 70$

Star Liquors, to prove existence of that (car jacking) crime at
the 7-Eleven store. This was error because it presupposes that
the same perpetrator kept the proceeds of that crime, the car,
and used it in an unrelated crime a day later. This is
cumulative evidence. The witness the state offered had many
different descriptions as to the weight, height and even skin
tone of the perpetrator(s). The crucial factor here to be
considered is whether evidence of one crime would be admissible
in the trial of another. The cumulative effect of all the
evidence offered to prove these eighteen counts had a dramatic
effect upon defendant's guilt or innocence of the 7-Eleven
charges, the Star Liquors charges concerning the first incident
and car jacking. The evidence used for the three PDWPPs must
have had a dramatic influence upon defendant's guilt or innocence
of both 7-Eleven and the Star Liquors incidents.

**ISSUE**

Ground Three: Defense Counsel was ineffective when he failed to
object to State's introduction of evidence of prior bad acts in
violation of *D.R.E. 401 through 404(a) and (b)*. This evidence
caused irreparable injury and prejudiced defendant's case
particularly when defendant purposely choose not to take the
witness stand to keep any prior bad acts, crimes or prior
incarceration from the jury. This violated Defendant's Due
Process right guaranteed under the *14ᵗʰ Amendment to U.S.*

-5-

$A-7/$

*Constitution.*

Facts: State witnesses introduced evidence, either direct or circumstantial evidence that defendant was a convicted prisoner. The first evidence is that of his escape after conviction from the Prison House Plummer Center; the second, the fact he was held as a prisoner at the Plummer Center; the third, the detective described defendant's demeanor as "an attitude" clearly a "bad act," circumstantial evidence of prior experience as a criminal. This would also include the statement regarding the 25-year defendant though he might receive. As this evidence was introduced without any memorial, no other witnesses other than one detective, and the failure to provide defense with the videotape, the best evidence of this interrogation, the closeness of this case, a shadow is cast over the reliability of this evidence. Especially when, if provided to defense, these prior bad acts and crimes could have been kept from the jury pursuant to lawful court procedure rules, and kept the integrity of this evidence intact.

Ground Four: State's witness, Dawn Smith's "in court identification" of Defendant violated his Due Process Rights under the *14th Amendment of the U.S. Constitution.* Failure of trial counsel to raise this on appeal is ineffective assistance of counsel.

Facts: The State's star witness, Dawn Smith's, in court

-6-



$A-7\partial$

identification irreparably prejudiced defendant under all the circumstances. There "was no independent origin" for an in court identification because; (a) this witness had never seen the defendant before the incident; (b) this witness had no opportunity for an accurate identification because the perpetrator was wearing "a mask" the entire time of her observation; the witness "failed to identify the defendant" in a photo array right after the incident in an array of photos that included the defendant; (d) no other witnesses made a positive accurate identification of defendant; (e) there were no finger prints found "at the scene of this incident" of defendant; (f) each witness at the Star Liquors scene gave "different" descriptions of the perpetrator; (g) this case was a close case and depended on an accurate identification of the perpetrator. Reliability is the linchpin in determining the admissibility of identification testimony, the witness receiving descriptions from the investigating detectives are not reliable because it is not an "independent origin."

## AMENDMENT ISSUE

Ground Five: The Amendment of Defendants Indictment of Robbery of "car keys and car" to an (undetermined amount) of "U.S. Currency" effectively altered the substance of one element of the offense, because the defendant was not "fully informed" of the nature of the charges as guaranteed by *Art. 1 sec. 7 of Del. Constitution*

-7-

③

A-73

and the *6th Amendment of U.S. Constitution.* Defense counsel was ineffective for failure to raise this issue on direct appeal. Facts: *Superior Court Criminal Rules 7(c)* requires that the offense charged shall be "precise" and "definite, certain and unambiguous." The nature and description of an instrument taken is an essential element of Robbery I. The prejudice results here because, U.S. Currency was taken from several separate individuals over a period of a couple days. Defendant was charged with an "open" or "general" indictment. The jury was left with the opportunity to convict defendant whether he had "one cent" or "one thousand dollars." There was not even a description of denominations. This is reversible error, because any amount of U.S. Currency found on defendant could be found a fruit of the accusation, even defendants own packet change. This would also allow defendant to be convicted of the proceeds of another robbery in the other remaining counts.

## DISCOVERY ISSUE

Ground Six: The State's failure to disclose the videotape made of defendant's police station statement is a violation of *Superior Court Criminal Rule 16(a)(d)*, and *14th Amendment of U.S. Constitution* Due Process, especially when, defendant made a discovery request. Trial counsel was ineffective for failure to identify this issue and raise it on appeal.

Facts: Detectives videotaped the defendant's oral interview with

-8-

$A - 74$

(32)

arresting officers. Defendant had a right to assume that
everything demanded was under *Rule 16* discovery request. The
videotape is the best evidence of defendant's statement. The
defendant was prejudiced thereby because a detective testified
without any memorial whatsoever as to defendant's "demeanor."
Failure to provide the videotape also allowed testifying
detective to bring in evidence the defendant was just released
from prison house Plummer Center, evidence that under *D.R.E. 401
through 404* et. Seq. Is not relevant, and is highly prejudicial.
A detective made other claims that were highly prejudicial to
defendant including escape after conviction from Plummer Center;
defendant hadn't slept in three days, and he believed he would do
25 years. Specifically, the unreliability of detectives
testimony is at issue considering the complete lack of any
handwritten notes, and there were no other police witnesses that
witnessed these alleged statements made by defendant. When a
discovery violation prejudices substantial rights of a defendant,
his conviction must be reversed. Had the defendant been provided
the videotape he could have had access to the "best evidence" of
his statement and made appropriate pretrial suppressions and
exclusions IN LIMINE of the evidence of prior bad acts, and the
jury would be able to properly weight and balance defendant's
statement in a fair light. This is favorable evidence under
*Brady v. Maryland*.

-9-

A-75

# Office of Disciplinary Counsel

SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

September 26, 2002

## CONFIDENTIAL

Mr. Deveari L. Bacon (#221242)
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

> Re:    ODC File No. C02-9-6
>        (Edmund M. Hillis, Esquire)

Dear Mr. Bacon:

The Office of Disciplinary Counsel has received your complaint about Edmund M. Hillis, Esquire, who previously represented you in your criminal matter.

This Office cannot intervene in a criminal proceeding for any reason. Furthermore, for your general information, this Office has no authority to vacate a plea or a conviction, reduce a sentence, appoint counsel to represent a defendant or grant any other type of substantive relief. We cannot direct the Public Defender's office to remove or assign an attorney to your case. This Office cannot act on your behalf to obtain copies of documents such as plea agreements, police reports, docket sheets and Rule 16 discovery motions. More importantly, this Office does not adjudicate claims of ineffective assistance of counsel.

Your claim is that your attorney has failed to respond to your numerous requests for transcripts and other documents necessary for your application for postconviction relief. —

Generally, this Office sends complaints such as your to the criminal defense attorney for appropriate action. This Office does not conduct a disciplinary evaluation or investigation for complaints such as yours because this Office has no jurisdiction to affect your criminal matter. Pre-trial and postconviction remedies are available to the criminal defendant for that purpose.

$A - 76$

Mr. Devearl L. Bacon
September 26, 2002
Page Two

**CONFIDENTIAL**

Therefore, by copy of this letter with your complaint to Mr. Hillis, as well as to his supervisor, Angelo Falasca, Esquire, I am asking that they promptly evaluate your complaint and take any action they deem appropriate, **including providing you with copies of any documents to which you are entitled.** (However, I am not requesting a written response.) Pursuant to the authority of this Office under Rule 9(a) of the Delaware Lawyers' Rules of Disciplinary Procedure, this matter is now closed.

Very truly yours,

Mary Susan Much

MUCH:mrm

cc:   Edmund M. Hillis, Esquire (w/enc.)
      Angelo Falasca, Esquire (w/enc.)

$A-77$

SUPERIOR COURT CRIMINAL DOCKET                Page    1
( as of  04/04/2003 )

State of Delaware v.  DEVEARL L BACON                              DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.              AKA: DEVERAL BACON
Defense Atty: EDMUND M HILLIS , Esq.               DEVERAL BACON
                                                  DEVEAR L BACON
                                                  DEVIAL L BACON
                                                  MARK WILSON
                                                  LOST BACON
                                                  DAVID JOHNSON


Assigned Judge:

Charges:
| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0006017660 | IN00070367 | PFDCF | NOLP | 06/22/2001 |
| 002 | 0006017660 | IN00070368 | ROBBERY 1ST | NOLP | 06/22/2001 |
| 003 | 0006017660 | IN00070369 | AGGR MENACING | NOLP | 06/22/2001 |
| 004 | 0006017660 | IN00070370 | DISGUISE | NOLP | 06/22/2001 |
| 014 | 0006017660 | IN00071665 | PDWBPP | NOLP | 06/22/2001 |
| 015 | 0006017660 | IN00071666 | CARJACKING 1ST | TG | 06/22/2001 |
| 016 | 0006017660 | IN00071667 | PDWBPP | TG | 06/22/2001 |
| 017 | 0006017660 | IN00071668 | ATT. ROBBERY 1S | TNG | 06/22/2001 |
| 018 | 0006017660 | IN00071669 | PFDCF | TNG | 06/22/2001 |
| 019 | 0006017660 | IN00071670 | PDWBPP | TNG | 06/22/2001 |
| 020 | 0006017660 | IN00071671 | PFDCF | TG | 06/22/2001 |
| 021 | 0006017660 | IN00071672 | PDWBPP | TG | 06/22/2001 |
| 022 | 0006017660 | IN00071673 | DISGUISE | TG | 06/22/2001 |
| 023 | 0006017660 | IN00070347 | PFDCF | TG | 06/22/2001 |
| 024 | 0006017660 | IN00070348 | ROBBERY 1ST | TG | 06/22/2001 |
| 025 | 0006017660 | IN00070349 | ROBBERY 1ST | TG | 06/22/2001 |
| 026 | 0006017660 | IN00070350 | AGGR MENACING | NOLP | 06/22/2001 |
| 027 | 0006017660 | IN00070351 | AGGR MENACING | TG | 06/22/2001 |
| 028 | 0006017660 | IN00070352 | AGGR MENACING | TG | 06/22/2001 |
| 029 | 0006017660 | N00070353 | CARJACKING 2ND | NOLP | 06/22/2001 |
| 030 | 0006017660 | IN00070354 | DISGUISE | TG | 06/22/2001 |
| 031 | 0006017660 | IN00070355 | PFDCF | NOLP | 06/22/2001 |
| 032 | 0006017660 | IN00070356 | ROBBERY 1ST | TG | 06/22/2001 |
| 033 | 0006017660 | IN00070357 | ROBBERY 1ST | TG | 06/22/2001 |
| 034 | 0006017660 | IN00070358 | ROBBERY 1ST | TG | 06/22/2001 |
| 035 | 0006017660 | IN00070359 | DISGUISE | TNG | 06/22/2001 |
| 036 | 0006017660 | IN00071776 | PDWBPP | TNG | 06/22/2001 |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 07/06/2000 | CASE ACCEPTED IN SUPERIOR COURT. | |

36

A - 78

SUPERIOR COURT CRIMINAL DOCKET                Page    2
( as of  04/04/2003 )

State of Delaware v.  DEVEARL L BACON                          DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
Defense Atty:                                    DAVID JOHNSON

        Event
No.   Date          Event                              Judge
----------------------------------------------------------------------------
        ARREST DATE: 06/23/2000
        PRELIMINARY HEARING DATE:
        BAIL:
        HELD ON CASH BAIL                  55000.00 100
        BAIL CONDITIONS:  NO DIRECT OR INDIRECT CONTACT WITH WILLIAM DAVIS,
        GULF SERVICE STATION, SHAH HASSAN GULF SERVICE STATION.
        REPORT TO PROBATION OFFICER.
2      07/14/2000
        MOTION FOR REDUCTION OF BAIL FILED.
        RAYMOND RADULSKI, ESQ.
4      07/17/2000
        INDICTMENT, TRUE BILL FILED. NO 47
        FAST TRACK VOP/CASE REVIEW ON 8/3/00
        WILL CONSOLIDATE WITH 0006017683 WHEN FIXED.
5      07/17/2000
        CASE CONSOLIDATED WITH: 0006017683
3      07/25/2000                              REYNOLDS MICHAEL P.
        MOTION FOR REDUCTION OF BAIL WITHDRAWN.
        BY DEFT.
        08/03/2000                              GEBELEIN RICHARD S.
        FAST TRACK CALENDAR/CASE REVIEW:  SET FOR FAST TRACK FINAL CASE REVIEW
        ON: 102600
6      08/14/2000
        DEFENDANT'S LETTER FILED. TO RAYMOND RADULSKI, ESQ.
        RE: DEF REQUESTING A MOTION FOR DISMISSAL BE FILED.
        * ATTACHED IS A COURTESY COPY OF THE LETTER FOR THE PROTHONOTARY.
7      08/21/2000
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
        DIRECTED TO YOU. RAYMOND RADULSKI, ESQ
        REFERRED BY:   (AMH)
8      09/26/2000
        DEFENDANT'S LETTER FILED TO: RAY RADULSKI.
        RE: WANTS MOTION OF DISCOVERY SENT TO HIM ASAP.
9      10/06/2000
        NOTICE OF SERVICE - DISCOVERY REQUEST.
        TO: JAMES RAMBO  FROM: RAY RADULSKI.
10     11/01/2000
        LETTER FROM: SEAN LUGG  TO:  RAY OTLOWSKI.

$A-79$

SUPERIOR COURT CRIMINAL DOCKET                    Page    3
( as of  04/04/2003 )

State of Delaware v.  DEVEARL L BACON                         DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
Defense Atty:   .                               DAVID JOHNSON

        Event
No.   Date          Event                               Judge
-------------------------------------------------------------------------------
        RE: INFORMING THAT HE HAS TAKING OVER FOR JAMES FREEBERY, AND GIVES
        HIM RESPONSE TO HIS DISCOVERY REQUEST.
11    12/01/2000
        ORDER SCHEDULING TRIAL FILED.
        TRIAL DATE: 6/19/01
        CASE CATEGORY:_____1
        ASSIGNED JUDGE (CATEGORY 1 CASES ONLY): DEL PESCO
        UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
        OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
        FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
        CONTINUANCE REQUESTS WILL BE DENIED.
12    12/27/2000
        DEFENDANT'S LETTER FILED.
        TO: ED HILLIS.
        RE: WANTS TRANSCRIPTS FROM PRELIMINARY HEARING, BUT DOESN'T HAVE MONEY
        FOR THEM.
13    03/08/2001
        DEFENDANT'S LETTER TO EDMUND HILLIS, THANKING HIM FOR A COPY OF TRANS-
        CRIPT OF PRELIM AND ASKING HIM TO SEND AN INVESTIGATOR TO THE VICTIMS
        FOR QUESTIONING.
15    03/09/2001
        DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING TRANSCRIPTS OF PRELIM
        & LETTER FROM ATTORNEY BE PLACED IN HIS FILE.
14    03/21/2001
        DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING A COPY OF LETTER TO MR.
        HILLIS BE PLACED IN DEF.'S FILE.
16    03/23/2001
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
        DIRECTED TO YOU.  EDMUND HILLIS, ESQ
        REFERRED BY:  (AMH)
        DEFENDANT REQUEST LETTER SENT TO COUNSEL
17    04/17/2001
        DEFENDANT'S LETTER FILED REQUESTING ALL BRADY V MARYLAND MATERIALS BE
        PLACED ON HIS COURT DOCKET
18    05/01/2001
        DEFENDANT'S LETTER FILED REQUESTING A COPY OF THIS LETTER BE SENT TO
        HIS PUBLIC DEFENDER AND ASKING HIM TO FILE A MOTION TO SEVER & PUT IT
        IN HIS COURT DOCKET

$A - 80$

SUPERIOR COURT CRIMINAL DOCKET                  Page    4
                    ( as of  04/04/2003 )

State of Delaware v.  DEVEARL L BACON                          DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
Defense Atty:                                   DAVID JOHNSON

        Event
No.   Date            Event                              Judge
------------------------------------------------------------------------------
19   05/18/2001
        DEFENDANT'S LETTER FILED. DEFENDANT WANTS A COPY OF HIS LETTER SENT TO
        MR. EDMUND HILLIS OF THE PUBLIC DEFENDERS OFFICE. DEFENDANT ALSO WANTS
        A COPY OF HIS DOCKET SHEET SENT TO HIM.
20   05/18/2001
        LETTER FROM DEVEARL L. BACON TO EDMUND HILLIS OF THE PUBLIC DEFENDERS
        OFFICE. RE: TO SUBPENA "ALL" STATE WITNESS(S), ALONG WITH MY
        WITNESS(S) ON MY BEHALF.
        MR. HILLIS:
        PLEASE SUBPENA ALL STATE WITNESS(S), AND ALSO THE FOLLOWING:
        1. ALBERT WILSON, 2. MANLY WILSON, 3. RUTH WILSON.
        ALL OF 706 TOWNSEND PL., WILMINGTON, DE 19801.
21   06/04/2001
        SUBPOENA(S) MAILED.
27   06/04/2001
        STATE'S WITNESS SUBPOENA ISSUED.
        WILLIAM DAVIS, SHAH HASSAN, DAWN SMITH, AVON MATTHEWS, JACQUELINE JOHN
        SON, JAMIE ROSS, MICHAEL SCOTT, CATHY BARON, ROSHELLE CONKEY,
        STEFFANIE WEST, R LECCIA WPD, BERNADETTE SELBY.
28   06/12/2001
        DEFENDANT IS REQUESTING DELAY IN TRAIL
22   06/13/2001
        SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
        SHAH HASSAN,DAWN SMITH.AVON MATTHEWS,JACQUELINE JOHNSON,
        JAMIE ROSS,CATHY BARON,ROSHELLE CONKEY
23   06/14/2001                                   GOLDSTEIN CARL
        TRIAL CALENDER/PLEA HEARING:  PLEA REJECTED/SET FOR TRIAL
24   06/19/2001                                  DEL PESCO SUSAN C.
        TRIAL CALENDAR- WENT TO TRIAL JURY
25   06/22/2001                                  DEL PESCO SUSAN C.
        CHARGE TO THE JURY FILED._FILED JUNE 22, 2001
26   06/22/2001                                  DEL PESCO SUSAN C.
        JURY TRIAL HELD.
        TRIAL HELD 6-19 THROUGH 6-22-2001.  VERDITS WERE GUILTY ON ALL COUNTS
        EXCEPT 10,11,12,13 WHERE THE VERDICT WAS NOT GUILTY.  CLERK WAS G.
        BROOKS AND COURT REPORTER WAS ROFLE EXCEPT FOR 6-22 IT WAS CAHILL
        ALL EXHIBITS WERE RETURNED.  DAG WAS SEAN LUGG AND DEFENSE WAS
        ED HILLIS.  JURY WAS SWORN ON JUNE 19TH.
     07/20/2001                                  DEL PESCO SUSAN C.
        SENTENCING CALENDAR: DEFENDANT SENTENCED.
32   08/03/2001
        DEFENDANT'S LETTER FILED.__            TO MARY ELIZABETH PITCAVAGE.

$A-81$

State of Delaware v.  DEVEARL L BACON                          DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
Defense Atty:                                   DAVID JOHNSON

      Event
No.  Date          Event                              Judge
--------------------------------------------------------------------------------
      LETTER FROM DEFENDANT ASKING FOR A LETTER TO MR. HILLIS TO FILE A
      NOTICE OF APPEAL BE PUT IN HIS FILE AND TO BE DOCKETED.
      *SEE FULL LETTER IN FILE WITH A LETTER TO MR. HILLIS TO FILE A NOTICE
      OF APPEAL ATTACHED.
29   08/16/2001
      TRANSCRIPT FILED.
      VERDICT TRANSCRIPT JUNE 22, 2001
      BEFORE JUDGE DEL PESCO.
30   08/17/2001
      LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN
      RE: AMENDED DIRECTIONS TO THE COURT REPORT WERE FILED IN THIS
      COURT ON AUGUST 16, 2001. THE TRANSCRIPT MUST BE FILED WITH THE
      PROTHONOTARY NO LATER THAN SEPTEMBER 25, 2001.
31   08/22/2001
      AMENDED DIRECTIONS TO COURT REPORTER TO PROCEEDINGS BELOW
      TO BE TRANSCRIBED. (COPY)
      FILED BY DEFENDANT IN SUPREME COURT
33   09/14/2001                                    DEL PESCO SUSAN C.
      (ERROR/FILED DATE): SENTENCE ORDER SIGNED & FILED 9/17/01.
      ** NOTE ** CORRECT FILED DATE IS 7/20/2001. ***
34   09/14/2001
      TRANSCRIPT FILED.
      SENTENCING ON JULY 20, 2001
      BEFORE JUDGE DELPESCO
35   09/25/2001
      TRANSCRIPT FILED.
      TRIAL TRANSCRIPT FOR JUNE 19, 2001
      BEFORE JUDE DEL PESCO
36   09/25/2001
      TRANSCRIPT FILED.
      TRIAL TRANSCRIPT JUNE 20, 2001
      BEFORE JUDGE DEL PESCO
37   09/26/2001
      LETTER FROM SUPREME COURT TO MICHELE ROLFE, COURT REPORTER
      RE: THE COURT IS IN RECEIPT OF YOUR LETTER DATED SEPTEMBER 21, 2001.
      REQUESTING AN EXTENSION OF TIME TO FILE THE TRANSCRIPT. PLEASE BE
      ADVISED THAT YOUR REQUEST IS GRANTED. THE TRANSCRIPT IN DUE NO
      LATER THAN OCTOBER 9, 2001.
38   10/09/2001
      TRANSCRIPT FILED.
      TRIAL TRANSCRIPT FOR JUNE 21, 2001.
      BEFORE JUDGE DEL PESCO.

A-82

SUPERIOR COURT CRIMINAL DOCKET                    Page    6
( as of  04/04/2003 )

State of Delaware v.  DEVEARL L BACON                         DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.         AKA: DEVERAL BACON
Defense Atty:   .                             DAVID JOHNSON

      Event
No.   Date          Event                              Judge
-----------------------------------------------------------------------------
39    10/16/2001
      RECORDS SENT TO SUPREME COURT.
40    10/16/2001
      RECEIPT FROM SUPREME COURT ACKNOWLEDGING THE RECORD.
41    01/25/2002
      TRANSCRIPT FILED.
      ORAL ARGUMENT, JUNE 21, 2001.
      BEFORE JUDGE DEL PESCO.
42    07/19/2002
      MANDATE FILED FROM SUPREME COURT:  SUPERIOR COURT JUDGMENT AFFIRMED.
      SUPREME COURT CASE NO: 369. 2002
      SUBMITTED: MAY 7, 2002
      DECIDED: JULY 1, 2002
      BEFORE HOLLAND, BERGER AND STEELE, JUSTICES.
43    01/24/2003
      DEFENDANT'S LETTER FILED.
      REQUEST FOR P.D. OFFICE TO GIVE TRANSCRIPTS.
45    02/13/2003
      DEFENDANT'S LETTER FILED.
      REQUEST FOR JUDGE TO ORDER P.D. OFFICE TO GIVE TRANSCRIPTS.
44    02/20/2003                              DEL PESCO SUSAN C.
      MOTION FOR TRANSCRIPT FILED PRO-SE.  REFERRED TO JUDGE DEL PESCO FOR
      REVIEW.  ALSO REQUEST FOR EXTENTION OF TIME TO FILE POST CONVICTION
      RELIEF.
46    03/31/2003                              DEL PESCO SUSAN C.
      ORDER:  IN RESPONSE TO YOUR MOTION FOR COPIES OF TRIAL TRANSCRIPTS
      ENCLOSED PLEASE FIND COPIES OF THE FOLLOWIN:
      1. TRIAL TRANSCRIPTS, 6/19/01;
      2. TRIAL TRANSCRIPTS, 6/20/01; AND
      3. TRIAL TRANSCRIPTS, 6/21/01.
      YOUR REQUEST FOR AN EXTENTION OF TIME WITHIN WHICH TO FILE RULE 61
      POSTCONVICTION RELIEF IS DENIED.
      SO ORDERED JUDGE DEL PESCO

              *** END OF DOCKET LISTING AS OF  04/04/2003 ***
              PRINTED BY: CSCCCOL

(41)                                      A-83

IN THE SUPREME COURT OF THE STATE OF DELAWARE

369 , 2001

E. M. HILLIS

DEVEARL BACON,
     Defendant below,
     Appellant,
v.

W. M. KELLEHER

STATE OF DELAWARE,
     Plaintiff below,
     Appellee.

DF $ 00.00

2001

| | | | |
|---|---|---|---|
| 1 | Aug | 03 | Notice of appeal from the sentence imposed 7/20/01, in the Superior Court, in and for New Castle County, by Judge DelPesco, in Cr.A. Nos. IN00071666, IN00071667, IN00071671, IN00071672, IN00071673, IN00070347, IN00070348, IN00070349, IN00070351, IN00070352, IN00070354, IN00070356, IN00070357 and IN00070358, with designation of transcript. (served by hand 8/3/01) (amw) |
| 2 | Aug | 03 | Directions to court reporter of proceedings below to be transcribed pursuant to Rule 9(e) by appellant. (service shown on court reporter by hand 8/3/01)(amw) |
| 3 | Aug | 16 | Letter dated 8/16/01 from Chief Deputy Clerk to Kathleen Feldman, transcript is due to be filed by 9/25/01. (dlw) |
| 4 | Aug | 16 | Amended directions to the court reporter of proceedings below to be transcribed pursuant to Rule 9(e) by appellant. (service shown on court reporter by hand 8/16/01)(amw)<br>(no additional transcript ordered) |
| 5 | Sep | 24 | Letter dated 9/21/01 from Michele L. Rolfe to Clerk, requesting an extension to file the transcript. (eas) |
| 6 | Sep | 24 | Letter dated 9/24/01 from Senior Court Clerk to Michele L. Rolfe, granting an extension to file the transcript by 10/9/01. (eas) |
| 7 | Oct | 16 | Record w/ transcript. (ekh) |
| 8 | Oct | 18 | Brief schedule issued. (opening brief due 11-15-01) (clh) |
| 9 | Nov | 14 | Motion under Rule 15(b) by appellant. (served by hand 11/14/01) (ekh) |
| 10 | Nov | 15 | Order dated 12-31-01 by Clerk, appellant's opening brief and appendix are due 12-31-01. (clh) |
| 11 | Nov | 30 | Court reporter's final transcript log entry: |

A-84

Prothonotary received 10/9/01. (eas)

2002

| 12 | Jan | 02 | Motion under Rule 15(b) by appellant (served by hand 01/02/02) (mfm) |
| 13 | Jan | 02 | Order dated 1/2/02 by Steele, J., appellant's opening brief and appendix are due 1/18/02. (eas) |
| 14 | Jan | 15 | Letter dated 1/12/02 from Deverarl Bacon to Clerk, enclosing copy of letter to Edmund M. Hillis, Esq., and requesting that it be placed in his file (eas) (afb). |
| 15 | Jan | 17 | Letter dated 1/17/02 from Senior Court Clerk to Edmund M. Hillis, Esquire, forwarding Mr. Bacon's letter for appropriate disposition. (eas) |
| 16 | Jan | 22 | Motion for Permission to File Brief Out-of-Time by appellant (served by hand 01/22/02) (mfm) |
| 17 | Jan | 23 | Order dated 1/23/02 by Steele, J., appellant's opening brief and appendix are due 1/28/02. (eas) |
| 18 | Feb | 05 | Letter dated 2/3/02 from Devearl L. Bacon to Clerk requesting a copy of the docket sheet (no service shown; docket sheet sent) (afb). |
| 19 | Feb | 13 | Appellant's opening brief and appendix. Original and copies filed 02/14/02 (served by hand 01/18/02) (mfm) |
| 20 | Feb | 13 | Appellee's answering brief. (served by hand 2/13/02) (mfm) (eas) |
| 21 | Mar | 05 | Notice dated 3-5-02 from Clerk to counsel, the case will be submitted for decision on briefs as of 3-21-02. (clh)(RJH,CB,MTS) |
| 22 | Apr | 08 | Notice of oral argument dated 4-8-02 from Clerk to counsel on 5-7-02. (clh) |
| 23 | Apr | 12 | Appellee's acknowledgment of oral argument on 5/7/02 at 1:10 p.m. (service shown) (eas) |
| 24 | Apr | 12 | Appellant's, Devearl Bacon, acknowledgment of oral argument on 05/07/02 at 01:10 p.m. (service shown) (mfm) |
| 25 | Apr | 22 | Letter dated 4-22-02 from Clerk to counsel, changing the time of the oral argument. (clh) |
| 26 | Apr | 25 | Appellee's acknowledgment of oral argument on 5/7/02 at 11:00 a.m. (service shown) (eas) |
| 27 | Apr | 26 | Letter dated 4/25/02 from William M. Kelleher, Esquire to Clerk, enclosing Coffield v. State to refer to at the upcoming oral argument. (eas) |
| 28 | Apr | 26 · | Appellant's acknowledgment of oral argument on |



05/07/02 at 11:00 a.m. (service shown) (mfm)

- 29   May   07   Argument held.  Before Juatice Holland, Justice Berger
                  and Justice Steele.  Argued by:  E. Hillis-W. Kelleher.
                  (dlw)

  30   Jun   13   Letter dated 6/11/02 from Devearl Bacon to Clerk,
                  requesting a docket sheet. (docket sheet sent) (eas)

  31   Jun   21   Letter dated 6/19/02 from Devearl L. Bacon to Clerk,
                  regarding his appeal. (eas)

  32   Jun   21   Letter dated 6/21/02 from Senior Court Clerk to Edmund
                  Hillis, Esquire, forwarding Mr. Bacon's letter for
                  appropriate disposition. (eas)

$A - 86$

Copy

#221
D.C.C.
SmYRNA,
Case No. 0006017660

Hon. Judge H. Dufont Ridgely -
President Judge.
Superior Court (Kent)
38 The Green
Dover, Del- 19901

Jan. 30, 2003

Sir;
It is prayed that when You
receive this letter that You are in Good
Health.

I'm faced with a crisis that
needs Your consideration on the level, my
"heart" is in Flame.

Edmund M. Hillis (assist. public defender)
has been holding my trial, (side bar, etc.

A-87

transcripts (of 2 yr's per phone
calls (of family-member(s))* letters, and
motions requesting that I have them.
Mr Hillis has filed a Direct-Appeal*
which has been Affirmed by the Supreme
Court July 1, 2002. *

Sir, I need, and want to file
a post-conviction appeal pro-se; Mr
Hillis knows this., By Mr Hillis's
overt actions I'm suffering by the cross;
of, both time, and prosecution'. Mr Hilli
#-underminding is demonstrably-repulsive-
and it is prayed that You can get down
to the bottom) of this with tolerable clearne.

A-88                    Cordially)

462

Copy

#22/242
D.C.C.
Smyrna,
Case No. 00060177660

Clerk of Court
Supreme Court
55 The Green
Dover, Del 19901

Feb. 3, 2003

Sir;

It is prayed that when you recieve
this letter that You are in Good Health.

I'm faced with a crisis that needs
Your consideration on the level, my "heart"
is in Flame:

Mr. Edmund M. Hillis (assist. public defender)
has been holding my trial, (side bar, etc.)
transcript for a year after phone

⑰    A-89

Rules (from family members), notices, and motions requesting that I have them.

(Mr. Hillis has filed a Direct Appeal on my behalf Jan. 18, 2002, on July 1, 20. the Court's Affirmed my Appeal. (Case No. 369, 2001)., By me never having the chance to review the transcripts I didn't have the chance to have any input on my Direct Appeal, Mr. Hillis has denied me that "legal opportunity".

After my Direct Appeal was Affirmed July 1, 2002 I knew that I had a little over a year to file post-conviction with the opportunity to argue on Direct Appeal issues, I wrote Mr Hillis and Mr Hillis didn't give me my transcript.

all to wit: was only 1 argument

48

A-90

Counsel (see O.D.C. response to my letter), dated Sep. 26, 2002

Now ~~with~~ ~~I~~ 6 months after my "Affirmed Appeal" I don't have any transcripts with valuable time passing I find myself suffering by the cross, of both time, and prosecution., I need my transcripts and some type of extention

I've been sentence to 34 year for ~~my~~ loving trial., ~~by~~ Mr. Villis's undermending I find demonstrably repulsive, it is prayed with heart felt gratitude that you can get down to the bottom of this with tolerable clearness.

Cordially,

A-91

49

COPY

In The Superior Court Of The State Of Delaware
In And For New Castle County

Public Defenders Office;
State Of Delaware,

V.                                    Crim. Action No. ID: 0006017660

Devearl Bacon,

Defendant.              Expedited Motion Request

Defendant's Motion For Copies Of His Trial Transcripts, From The Public Defenders Office (For Post Conviction Relief) And, Motion To Stay The One-Year Deadlines Imposed By The Federal Habeas Corpus Act Because Of The State Public Defenders Actions Or Ommissions In Failing To Provide Defendants Transcipts To D.C.C. Legal Services Administrator Mike Little For Photo-Copying After Two Attempts Via Notarized Form To Do So.

Now Comes, DEVEARL BACON, Defendant, pro-se, indigent and incarcerated, moves this Honorable Court for an Order directing the Public Defenders Office, and Lawrence Sullivan of that Office in New Castle County to forward all Defendants transcripts to the Delaware Correctional Center's Legal Services Administrator, Mike Little, so they can be photocopied and returned to the Public Defenders Office.

In support of this motion, Defendant offers the following

- 1 -            A-92

(50)

1. Defendant is indigent and cannot afford the cost of either transcription or photocopying. The Office of the Public Defender found Defendant to be indigent at trial level, and the Delaware Supreme Court also found Defendant indigent during his direct appeal filed by the Public Defenders Office. Defendant has been incarcerated since his arrest and has had no way to make any money. If there is any doubt to his indigency it must be made a matter of record so the determination by this Court is reviewable, as such a hearing is necessary. <u>Stacey</u> v <u>State</u> Del. Supr. 358 A2d 380.

2. The Delaware Correctional Center has had a long-standing agreement (for decades) that the Public Defenders Office sends the prisoners transcripts to the Legal Administrator of the D.O.C. and the transcripts are ~~copict~~ copied by the Legal Administrator (after the Direct Appeal has been ruled upon) and then, the transcripts are sent back to the Public Defenders Office.

3. The trial transcripts are necessary for Defendant to proceed with his Postconviction Remedies which are guaranteed by both Delaware and U.S. Constitutions

4. The Federal Habeas Corpus Act has imposed a

-2-

A-93

One-year deadline on those issues filed in the State Appeals Court. Defendant has a right to gain a meaningful review of all proceedings leading to judgement of conviction Griffin v. Illinois, 351 US 12 (1956) as well as an "open an inquiry into the the intrinsic fairness" of those proceedings. Carter v Illinois, 329 US 173, 175 (1946). See Curran v Wolley, Del. Supr. 104 A2d 177, 179 (1962) (applying Carter); Jones v Anderson, Del. Supr. 183 A2d 177, 179 (1962) (applying Curran) Defendants Direct Appeal was Affirmed on: July 1, 2002 . (Attached Exhibit B)

    5. Defendant has asked the Public Defenders Office by filing a Notarized form (attached EXHIBIT A) on two SEPARATE occassions. One was sent in September 2002 and another November 2002. Defendant is being denied the evidence he needs to pursue his postconviction remedies and relief. The Public Defenders Office is aware of the policy to furnish a copy of transcripts to inmates by sending the transcripts to the DCC Legal Administrator who makes a copy and the returns the original transcripts to the Public Defenders Office.


    WHEREFORE, the Defendant respectfully requests this. Courts indulgence to grant his Motion For Transcripts, or alternatively, order the Public Defenders Office to either furnish a copy of all Defendants Tried transcripts

-3-

A-94

(52)

Opening and Closing statements, sidebar conferences, Jury Charge and Sentencing transcripts, or, to forward these transcripts to the Delaware Correctional Centers, Legal Services Administrator, Mike Little, 1181 Paddock Rd. Smyrna, Delaware 19977 for him to copy and return the originals to the Public Defenders Office.

Respectfully Submitted,

Deveart BACON, pro-se
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: Feb. 13, 2003

- 4 -

A-95

(53)

TO:    PUBLIC DEFENDERS OFFICE
       530 S. State Street
       Suite 108
       Dover, Delaware 19901

_Legal Administrator_ : Mike Little

I ̲DEVEARL BACON̲, do hereby request that the following transcript
be sent to the Legal Services Administrator at the Delaware Correctional Center, 1181
Paddock Rd. Smyrna, Delaware 19977:

Date of Trial or Hearing: ̲June 19, 2001̲

Case No: ̲I.D. NO- 0006017660̲

Date of Birth: ̲11-27-69̲

Date: ̲2/r. 13, 2003̲

Deveart Bacon
Delaware Correctional Center
1181 Paddock Rd
Smyrna, DE 19977

Sworn to and Subscribed before me this ̲13th̲ day of
̲February̲, 2003

̲Timothy J. Martin̲
    Notary Public

$A-96$

EXHIBIT A

# SUPERIOR COURT
## of the
## STATE OF DELAWARE

Susan C. Del Pesco
JUDGE

March 31, 2003

NEW CASTLE COUNTY COURTHOUSE
500 North King Street
Suite 10400
Wilmington, DE 19801
Phone: (302) 255-0659
Facsimile: (302) 255-2273

Devearl L. Bacon
S.B.I. 00221242
Delaware Correctional Center
Smyrna Landing Road
Smyrna, DE 19977
**N440**

Re:    *State of Delaware v. Devearl Bacon* - I.D. No. 0006017660

Dear Mr. Bacon:

In response to your motion for copies of your trial transcripts, enclosed please find copies of the following:

1.    Trial transcript, June 19, 2001;

2.    Trial transcript, June 20, 2001; and

3.    Trial transcript, June 21, 2001.

Your request for an extension of time within which to file a Rule 61 Postconviction is DENIED.

SO ORDERED.

Very truly yours,

Susan C. Del Pesco

/msg
Enclosures
xc:    Prothonotary Criminal File
Investigative Services File

$A-97$

SUPREME COURT OF DELAWARE

CATHY L. HOWARD, Clerk
AUDREY F. BACINO, Assistant Clerk
DEBORAH L. WEBB, Chief Deputy Clerk
LISA A. SEMANS, Senior Court Clerk

SUPREME COURT BUILDING
55 THE GREEN
P.O. BOX 476
DOVER, DE 19903
(302) 739-4155

April 4, 2003

Mr. Deveral L. Bacon
SBI #00221242
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

RE: *Deveral Bacon v. State*, No. 369, 2001

Dear Mr. Bacon:

The Supreme Court is in receipt of your letter dated March 24, 2003, requesting a transcript of the oral argument held on May 7, 2002. The retention period for the May 7, 2002 oral argument tape expired on October 17, 2002 at which time the tape was destroyed. The Supreme Court retains oral argument tapes until three months after the case is closed and the mandate is issued. This case was closed on July 17, 2002. A copy of the Supreme Court docket sheet is enclosed for your information. The Court will take no further action with respect to your document regarding this matter as it no longer has jurisdiction.

Very truly yours,

Deborah L. Webb

cc: Edmund M. Hillis, Esquire
(with a copy of Mr. Bacon's letter)

A-98

# Office of Disciplinary Counsel

SUPREME COURT OF THE STATE OF DELAWARE

200 West Ninth Street
Suite 300-A
Wilmington, Delaware 19801
(302) 577-7042
(302) 577-7048 (FAX)

MARY M. JOHNSTON
Chief Counsel

ANDREA L. ROCANELLI
MICHAEL S. McGINNISS
MARY SUSAN MUCH
Disciplinary Counsel

April 24, 2003

**CONFIDENTIAL**

Mr. Devearl L. Bacon (#221242)
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

> Re:   ODC File No. C02-9-6
> **(Edmund M. Hillis, Esquire)**

Dear Mr. Bacon:

I have been advised by Edmund M. Hillis, Esquire, that a copy of your transcripts have been forwarded to you.

Very truly yours,

Mary Susan Much

MUCH:mrm

cc:   Edmund M. Hillis, Esquire

A-99

### PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

RAYMOND M. RADULSKI
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5126

October 4, 2000

James J. Freebery, IV
Deputy Attorney General
Department of Justice
State Office Building
820 North French Street
Wilmington, DE  19801

  RE:  STATE OF DELAWARE v. DEVEARL BACON
    I.D. #0006017660

Dear Jim:

  Pursuant to Rule 16 of the Superior Court Rules of Criminal
Procedure, I am requesting that you provide me with the following
information and materials in connection with the above-captioned
case(s):

  1.  A copy of all written or recorded statements or
confessions made by the defendant(s), or by any juvenile or adult
co-defendant(s), including a copy of all notes recorded by any
police officer or other State agent contemporaneous to any oral
statements or confessions made by the defendant(s) or by any co-
defendant(s);

  2.  A written statement relating to the substance of any oral
statements made by the defendant(s) and not recorded as set forth
in Paragraph 1 above, which the State intends to offer in evidence
which were made by the defendant(s), in response to interrogation
by any person then known to the defendant(s) to be a State agent;

A-100

3.  A copy of all written reports of any scientific analyses conducted in connection with the above captioned case(s), including a listing of any analyses for which a report was not filed; the name(s) of the expert(s) who performed each analysis; and a means of contacting each expert to discuss the analysis;

4.  A copy of all written reports of any physical or psychological examination of the defendant(s) or of any alleged victim(s).

In addition, to the above, I would appreciate it if you would provide the following:

5.  A statement as to the approximate time and location of the alleged offense(s) in the above case(s);

6.  A statement as to the date, approximate time and location of the arrest of the defendant(s); the name(s) of the arresting officer(s) or other State agent(s); and the name of the agency with which he (they) are associated;

7.  A copy of all executed warrants of arrest and all executed search warrants relating to the above-captioned case(s), including all affidavits and warrant returns relating thereto;

8.  A statement as to the involvement of any confidential informant(s) in the above case(s), and of the role he (they) performed in the investigation(s);

9.  The names of the police officers or other State agents involved in the investigation of the above case(s), and the agencies with which they are associated;

10.  A statement as to the date, time and location of any and all line-up, photographic or show-up identifications (or attempted identifications) of the defendant(s) in connection with the above case(s);

11.  An opportunity pursuant to Jencks v. State, 353 U.S. 657 (1957), to review reports and statements, whether oral, written or recorded, made by persons who will testify at trial, regardless of whether the individual used the statement or report to prepare for examination.  I would appreciate it if you could share this information with me prior to trial in order to avoid delay prior to cross-examination;

12.  Disclosure as to the utilization of any electronic or

$A-101$

other mechanical surveillance device;

13.   A listing of and an opportunity to inspect all items which the State intends to offer in evidence, including but not limited to, any documents, photographs, weapons, clothing, diagrams, or similar tangible objects;

14.   A copy of the prior criminal record of the defendant(s);

15.   All information and materials in the possession of the State which fall within the ambit of Brady v. Maryland, 373 U.S. 83 (1963) and its progeny.

Finally, please let me know promptly what plea offer(s) the State is willing to extend to the defendant(s) in the above case(s).   I will then review the offer(s) with the defendant(s), and discuss the possibility of a plea disposition in the case(s).

Thank you for your cooperation with these requests.

Very truly yours,

Raymond M. Radulski
Assistant Public Defender

RMR/ks

cc:  Mr. Devearl Bacon

A - 102

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE                    )
                                     )
                                     )
        v.                           )    IN00-07-0367 et al.
                                     )
                                     )    I.D. #0006017660
DEVEARL L. BACON,                    )
                                     )
        Defendant.                   )

### NOTICE OF SERVICE PURSUANT TO CRIMINAL RULE 16(g)

COMES NOW Raymond M. Radulski, counsel for the defendant in the above-captioned case, and certifies that a request for discovery pursuant to Criminal Rule 16 was served on James J. Freebery, IV, Department of Justice, 820 North French Street, Wilmington, Delaware on or about October 4, 2000, by hand delivery through the Public Defender messenger.

_____
RAYMOND M. RADULSKI
Assistant Public Defender

A-103

CLERK US ...
DISTRICT ...

IN THE UNITED STATES DISTRICT COURT 2006 SEP -8  A:III: 01

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DEVEARL L. BACON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 04-841-JJF |
| | ) |
| EDMUND M. HILLIS and ANGELO | ) |
| FALASCA, | ) |
| | ) |
| Defendants. | ) |

**ORDER**

WHEREAS, the plaintiff is a prisoner incarcerated at
the Delaware Correctional Center in Smyrna, Delaware, and on
July 9, 2004, the plaintiff filed a complaint under 42 U.S.C. §
1983 without certified copy of his prison trust account summary;

WHEREAS, on July 29, 2004, this Court assessed the
plaintiff the $150.00 filing fee and ordered him to submit the
required documents within thirty (30) days from the date the
order was sent (D.I. 4);

WHEREAS, on August 23, 2004, the Court received the
plaintiff's **incomplete** copy of his trust account summary, along
with a letter requesting that the Court determine payment with
the partial information (D.I. 5);

THEREFORE, at Wilmington this ⌐7 day of
_____September_____, 2004, IT IS HEREBY ORDERED that the
plaintiff's request is DENIED. The plaintiff shall file a
complete certified copy of his trust account summary within

$A - 104$

thirty (30) days from the date this order is sent.  If the plaintiff fails to file the required document(s) in the time provided, then the Court shall dismiss the action without prejudice.

United States District Judge

2

A-105

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEVEARL L. BACON,                    :
                                     :
            Plaintiff,               :
                                     :
    v.                               :    Civil Action No. 04-841 JJF
                                     :
EDMUND M. HILLIS and,                :
ANGELO FALASCA,                      :
                                     :
            Defendants.              :

Devearl L. Bacon, Pro Se Plaintiff.

**MEMORANDUM OPINION**

October 25, 2005
Wilmington, Delaware

A - 106

Farnan, District Judge.

The Plaintiff, Devearl L. Bacon, a <u>pro se</u> litigant who is
presently incarcerated, has filed this action pursuant to 42
U.S.C. § 1983. For the reasons discussed, Plaintiff's Complaint
will be dismissed as frivolous pursuant to 28 U.S.C. §§
1915(e)(2)(B) and 1915A(b)(1).

## I. STANDARD OF REVIEW

Reviewing complaints filed pursuant to 28 U.S.C. § 1915 is a
two-step process. First, the Court must determine whether the
plaintiff is eligible for pauper status pursuant to 28 U.S.C. §
1915. In this case, the Court granted Plaintiff leave to proceed
<u>in forma pauperis</u> and assessed an initial partial filing fee of
$7.50. Plaintiff filed the required form authorizing the payment
of fees from his prison account.

Once Plaintiff's eligibility for pauper status has been
determined, the Court must "screen" the Complaint to determine
whether it is frivolous, malicious, fails to state a claim upon
which relief may be granted, or seeks monetary relief from a
defendant immune from such relief pursuant to 28 U.S.C. §§
1915(e)(2)(B) and 1915A(b)(1).[1] If the Court finds Plaintiff's

---

[1]These two statutes work in conjunction. Section
1915(e)(2)(B) authorizes the court to dismiss an <u>in forma
pauperis</u> complaint at any time, if the court finds the complaint
is frivolous, malicious, fails to state a claim upon which relief
may be granted or seeks monetary relief from a defendant immune
from such relief. Section 1915A(a) requires the court to screen

1

$A-107$

Complaint falls under any one of the exclusions listed in the statutes, then the Court must dismiss the Complaint.

When reviewing complaints pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1), the Court must apply the standard of review set forth in Fed. R. Civ. P. 12(b)(6). See Neal v. Pennsylvania Bd. of Prob. & Parole, No. 96-7923, 1997 WL 338838 (E.D. Pa. June 19, 1997)(applying Rule 12(b)(6) standard as the appropriate standard for dismissing claim under § 1915A). Accordingly, the Court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn therefrom." Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Estelle v. Gamble, 429 U.S. 97, 106 (1976)(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

The United States Supreme Court has held that the term "frivolous" as used in Section 1915(e)(2)(B) "embraces not only the inarguable legal conclusion, but also the fanciful factual

---

prisoner in forma pauperis complaints seeking redress from governmental entities, officers, or employees before docketing, if feasible, and to dismiss those complaints falling under the categories listed in § 1915A(b)(1).

2

$A - 108$

allegation." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).[2]
Consequently, a claim is frivolous within the meaning of Section
1915 (e)(2)(B) if it "lacks an arguable basis either in law or in
fact." <u>Id.</u>

## II. DISCUSSION

By his Complaint, Plaintiff alleges that his attorney,
Defendant Edmund M. Hillis ("Hillis"), Assistant Public Defender,
and his attorney's supervisor, Defendant Angelo Falasca
("Falasca"), Chief Deputy Public Defender, violated his
constitutional right to due process by excessive delay in
providing Plaintiff with copies of the transcript of his trial.
Plaintiff also alleges a violation of his constitutional right to
be free from cruel and unusual punishment, though he alleges no
facts in support of that allegation. To compensate him for these
violations, Plaintiff seeks monetary relief in the amount of
$9,000,000 from Hillis and Falasca.

In <u>Black v. Bayer</u>, the Court of Appeals for the Third
Circuit reaffirmed its "longstanding rule" that "public defenders
. . . acting within the scope of their professional duties are
absolutely immune from civil liability under § 1983." 672 F.2d

---

[2]<u>Neitzke</u> applied § 1915(d) prior to the enactment of the
Prisoner Litigation Reform Act of 1995 (PLRA). Section
1915(e)(2)(B) is the re-designation of the former § 1915(d) under
PLRA. Therefore, cases addressing the meaning of frivolous under
the prior section remain applicable. <u>See</u> § 804 of the PLRA,
Pub.L.No. 14-134, 110 Stat. 1321 (April 26, 1996).

3

$A - 109$

309, 320 (3d Cir. 1982). Plaintiff here does not allege that
Hillis and Falasca were acting outside of the scope of their
professional duties.   Thus, they are absolutely immune from the
relief sought by Plaintiff.  The Court concludes that this is an
action brought by a prisoner in forma pauperis, in which the
Plaintiff seeks monetary relief from a defendant who is immune
from such relief.   Under 28 U.S.C. § 1915(e)(2)(B)(iii) and 28
U.S.C. § 1915A(b)(2), the Court must dismiss such actions.

   An appropriate order will be entered.

4

A - 110

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEVEARL L. BACON,                   :
                                    :
        Plaintiff,                  :
                                    :                                    .'
    v.                              :  Civil Action No. 04-841 JJF
                                    :
EDMUND M. HILLIS and,               :
ANGELO FALASCA,                     :
                                    :
        Defendants.                 :

                            O R D E R

        WHEREAS, Plaintiff filed a Motion To Extend Partial

Filing Fee (D.I. 12) contending that he is "exhaustively

indigent";

        WHEREAS, based on an evaluation of Plaintiff's account

information pursuant to 28 U.S.C. § 1915(b)(1), this Court

required Plaintiff to pay an initial partial filing fee of $7.50

(D.I. 11);

        WHEREAS, Plaintiff's Motion offers no factual support

for the contention that he is incapable of paying the initial

partial filing fee;

        NOW THEREFORE, IT IS HEREBY ORDERED that Plaintiff's

Motion To Extend Partial Filing Fee (D.I. 12)is **DENIED**.

October 25, 2005
    DATE

UNITED STATES/DISTRICT JUDGE

$A-111$

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DEVEARL L. BACON,                   :
                                    :
            Plaintiff,              :
                                    :
    v.                              :    Civil Action No. 04-841 JJF
                                    :
EDMUND M. HILLIS and,               :
ANGELO FALASCA,                     :
                                    :
            Defendants.             :

## ORDER

At Wilmington, this $\underline{25}$ day of October 2005, for the reasons
set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that Plaintiff's Complaint is **DISMISSED**
as frivolous pursuant to 28 U.S.C. §§ 1915 (e)(2)(B) and 1915
(b)(1).

UNITED STATES DISTRICT JUDGE

$A - 112$

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### ORDER AMENDING RULE 61
### OF THE
### SUPERIOR COURT RULES OF CRIMINAL PROCEDURE

This 20th day of June, 2005, *IT IS ORDERED* that:

(1) Superior Court Criminal Rule 61 is amended by deleting subparagraphs (i)(1) and by substituting in lieu thereof the following:

(i) *Bars to relief.* (1) Time limitation. A motion for postconviction relief may not be filed more than one year after the judgment of conviction is final or, if it asserts a retroactively applicable right that is newly recognized after the judgment of conviction is final, more than one year after the right is first recognized by the Supreme Court of Delaware or by the United States Supreme Court.

(2) This amendment shall be effective on July 1, 2005 and shall apply to all cases where the judgment of conviction became final after the effective date.

(3) An original of this Order shall be filed with the Prothonotary for each county.

$A-113$

EXHIBIT 3

A-114

State of Delaware          )
                          )    SS.
County of New Castle       )

Affidavit of: _Statement_
Dated: _July 19, 2006_

## AFFIDAVIT

I, _Deveark L. Bacon_ being first duly sworn deposes and says that the foregoing
statement is true and correct observation of what occurred on the above date herein at/in
_Med. High_ located in the Delaware Correctional Center, Smyrna, Delaware, in
that I was a part of or witnessed the incident described herein. I would clearly state under penalty
of perjury of the laws of the State of Delaware.

On July 1, 2004 Petitioner filed 1983 Suit Against
Edmund M. Hillis & Angelo Falasca on Right To Access,
1st And 14th Amendment (Constitutional) Violation, And
"~~maileon~~ Mailed on July 1, 2004 when Petitioner handed
to be mailed to D.C.C. (Smyrna, Del.) Staff."

Affiant:

Signature
_Deveark L. Bacon_
Print Name
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, Delaware 19977

SWORN TO AND SUBSCRIBED before me this _9th_ day of _August_ _____ 2006.

My Commission Expires: _June 14th, 2008_

_Timothy J. Mast_
(Notary Public)

A-115

State of Delaware )
)  SS.
County of New Castle )

Affidavit of: *Statement*
Dated: *July 17, 2006*

**AFFIDAVIT**

I, *Devearl L. Bacon* being first duly sworn deposes and says that the foregoing statement is true and correct observation of what occurred on the above date herein at/in *Med. High* located in the Delaware Correctional Center, Smyrna, Delaware, in that I was a part of or witnessed the incident described herein. I would clearly state under penalty of perjury of the laws of the State of Delaware.

On May 24, 2004 Petitioner found out one-year "Dose Not Stop while Post-Conviction is being filed". (See 1983 Law Suit Bacon v. Edmund M. Hillis, Angelo Falasca Page II). Petitioner filed Suit July 1, 2004 on Public Defenders Office for "Denied Access To The Court".



Affiant:
Signature
*Devearl L. Bacon*
Print Name
Delaware Correctional Center
1181 Paddock Rd.
Smyrna, Delaware 19977

SWORN TO AND SUBSCRIBED before me this *9th* day of *August*, 2006.

My Commission Expires: *June 14, 2008*

*Timothy J. Martin*
(Notary Public)

A-116

EXHIBIT #4

AppEN. B

B - 1

IN THE SUPREME COURT OF THE STATE OF DELAWARE

DEVEARL BACON,                      )
                                    )
                                    )
            Defendant-Below,        )
            Appellant,              )
                                    )
v.                                  )     No. 369, 2001
                                    )
STATE OF DELAWARE,                  )
                                    )
            Plaintiff-Below,        )
            Appellee.               )

ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

APPELLANT'S OPENING BRIEF

EDMUND M. HILLIS [# 2008]
Assistant Public Defender
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-5122

Attorney for Appellant.

DATE: January 18, 2002

$B-2$

## TABLE OF CONTENTS

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . 5

ARGUMENT

    I.   PERMITTING THE PROSECUTION TO AMEND THE
       INDICTMENT VIOLATED THE DEFENDANT'S RIGHT
       TO INDICTMENT BY THE GRAND JURY.. . . . . . . . 6

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . 9

SENTENCING ORDER . . . . . . . . . . . . . . . Exhibit A

TRIAL COURT RULING . . . . . . . . . . . . . . Exhibit B

i

$B-3$

## TABLE OF CITATIONS

Cases

*Johnson v. State*, Del. Supr., 711 A.2d 18 (1998) . . . . 7

Rules

Superior Court Criminal Rule 7(e) . . . . . . . . . . . 7

Constitutional Authority

Delaware Constitution, Art. I, Sec. 8 . . . . . . . . . 7

B- 4

## NATURE AND STAGE OF PROCEEDINGS

The defendant was arrested on June 23, 2000 and indicted on July 12, 2000. The Grand Jury returned a 36 count indictment alleging multiple counts of Robbery First Degree, Possession of a Firearm During the Commission of a Felony, Wearing a Disguise During the Commission of a Felony, Carjacking and Aggravated Menacing. The indictment covered three separate events.

Trial on the indictment commenced on June 19, 2001. Prior to commencement of the trial the State indicated that it intended to enter a *nolle prosequi* with regard to one of the incidents. At the close of evidence on June 22, 2001, the State did in fact enter a *nolle prosequi* was entered with regard to those counts of the Indictment.[1] The State also at that time withdrew a count of the Indictment alleging Aggravated Harassment.

The remainder of the counts of the Indictment went to the Jury. On June 22, 2001 the jury returned verdicts of Guilty to the majority of the counts.[2] The jury found the defendant

_____

[1]  The subject counts are listed in the Superior Docket as Count 1, 2, 3, 4, 14, 26 and 31. These count numbers are different than the count numbers assigned in the original Indictment and the Indictment as submitted to the Jury. There is uniformity however as to their Criminal Action #'s which are respectively IN 00-07-0367, 0368, 0369, 0370, 1665, 0350 and 0355.

1

$B-5$

Not Guilty of the remainder of the Counts submitted to it.[3]
(A- 28,29)

At the outset of the case the State had moved to amend
Count XV of the Indictment, Criminal Action No. IN 00-07-
0357[4].  The Court-below permitted the amendment over the
objection  of the defense.  The jury's verdict as to that
count of the Indictment was Guilty. (A - 28)  The 'defendant
was sentenced on July 20, 2001 to a minimum mandatory term of
four years incarceration at Level V.

_____

[2]    These counts are listed in the Superior Court Docket as
Counts 15, 16, 20, 21,22, 23,24, 25,27,28,30,32,33 and 34 of the
Indictment. These count numbers are different than the count
numbers assigned in the original Indictment and the  Indictment as .
submitted to the Jury.  There is uniformity however as to their
Criminal Action  #'s which are respectively IN 00-07-1666, 1667,
1671, 1672, 1673, 0347, 0348, 0349, 0351, 0352, 0354, 0356, 0357,
and 0358.

[3]    These counts are listed in the Superior Court Docket as
Counts 17, 18, 19, 35 and 36 These count numbers are different than
the count numbers assigned in the original Indictment and the
Indictment as submitted to the Jury. There is uniformity however
as to their Criminal Action  #'s which are respectively Criminal
Action #'s  IN 00-07-1668, 1669, 1670, 0359, and 1776.

[4]    The original Indictment Counts were renumbered before
submission to the Jury, to reflect the deletion of the charges on
which the State had indicated that a nolle prosequi would be
entered. The Count in question in this appeal was the   Count
enumerated as Count XV in the renumbered Indictment submitted to
jury.  The Indictment as returned by the Grand Jury identifies the
subject count as Count XX. It is referred to in the record of the
argument on amendment as Count XV and will be consistently referred
to .as such in this brief.  Copies of both versions of the
Indictment are included in the Appendix at A- 7 -16 and A- 17 -27.

2

$\beta - 6$

A timely Notice of Appeal was filed with this Court. This then is defendant's opening brief in support of that appeal.

$B-7$

## SUMMARY OF ARGUMENT

1.   Permitting   the   prosecution   to   amend   the indictment violated the defendant's right to indictment by the grand jury.

$B$-$\mathcal{P}$

The Superior Court erred because, even if the amendment to the indictment may have been permitted under the Robbery statute and did not charge a different or more serious offense, the amendment violated the Defendant's right to indictment by grand jury under Article I, Section 8 of the Delaware Constitution. *Johnson v. State*, Del. Supr., 711 A.2d 18 (1998).

The Grand Jury indicted the Defendant for having committed Robbery by threatening to use force to compel Roshelle Conkey to give up property consisting of "car keys and a car", based upon the evidence presented before it. It did not indict the Defendant for having committed Robbery by threatening the use of force to compel her to give up property consisting of "Unites States Currency." It cannot be assumed that the Grand Jury would have considered the evidence before it sufficient to allege that the Defendant had committed Robbery by using force to compel the delivery of property consisting "United States Currency."

Therefore, permitting the Defendant to be convicted on such an amended indictment violated the Defendant's right

---

[5] Rule 7(e) of the Superior Court Criminal Rules permits an indictment to be amended before verdict if "no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

7

$B$-9

to indictment by grand jury under the Delaware Constitution. Such an amendment permits the State "power to obtain convictions based on theories or on evidence possibly rejected, or not considered, by the grand jury." *Johnson v. State*, 711 A.2d at 26.

B-10

CONCLUSION

For the reasons and upon the authorities cited herein, the undersigned respectfully submits that the defendant's convictions must be reversed.

Respectfully submitted,

EDMUND M. HILLIS  [# 2008]
Assistant Public Defender
Carvel State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-5122

January 18, 2002

9

B-11

EXHIBIT A

SENTENCING ORDER

$B-12$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE
V.
DEVEARL L BACON

DOB: 11/27/1969
SBI: 00221242

CASE NO. 0006017660
CR.A. NO. IN00070348

CHARGE: ROBBERY 1ST

CHARGE DISP: TRIAL - GUILTY

SENTENCE ORDER

NOW, THIS 20TH DAY OF JULY, 2001, IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE CHARGED.

THE DEFENDANT IS TO PAY THE COST OF PROSECUTION. COSTS ARE HEREBY SUSPENDED.

CONSECUTIVE TO THE SENTENCE NOW SERVING, THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF CORRECTION AT SUPERVISION LEVEL 5    FOR A PERIOD OF 4 YEARS.

THE FIRST 4 YEARS OF THIS SENTENCE IS A MINIMUM STATUTORY SENTENCE PURSUANT TO 11 DEL.C.˜832.

B-13

PAGE 001 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070349, ROBBERY 1ST,
IT IS THE ORDER OF THE COURT THAT:

   THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

   THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 4 YEARS.

   THIS 4 YEARS SENTENCE IS A MININUM STATUTORY SENTENCE.

   THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00070348

$B - 14$

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070347, PFDCF,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 5 YEARS.

THIS 5 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00070349

$B-15$

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070356, ROBBERY 1ST,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 4 YEARS.

THIS 4 YEARS SENTENCE IS A MININUM STATUTORY SENTENCE.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00070347

B-16

PAGE 004 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070357, ROBBERY 1ST,
IT IS THE ORDER OF THE COURT THAT:

    THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

    THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 4 YEARS.

    THIS 4 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

    THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00070356

$B-17$

PAGE 005 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070358, ROBBERY 1ST,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 4 YEARS.

THIS 4 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00070357

$B-18$

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00071671, PFDCF,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 5 YEARS.

THIS 5 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00070358

$B-19$

PAGE 007 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00071666, CARJACKING 1ST,
IT IS THE ORDER OF THE COURT THAT:

    THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

    THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 2 YEARS.

    THIS 2 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

    THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00071671

$B$-20

PAGE 008 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00071667, PDWBPP,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 1 YEAR.

THIS 1 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00071666

$B-2)$

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00071672, PDWBPP,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 1 YEAR.

THIS 1 YEAR SENTENCE IS A MININUM STATUTORY SENTENCE.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00071667

$\beta - 22$

PAGE 010 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070352, AGGR MENACING,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 1 YEAR.

THIS SENTENCE IS SUSPENDED FOR 1 YEAR AT SUPERVISION LEVEL 3.

THIS SENTENCE SHALL BE SERVED CONSECUTIVELY TO THE SENTENCE IN
CR.A. NO. IN00071672

$B-23$

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070351, AGGR MENACING,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 1 YEAR.

THIS SENTENCE IS SUSPENDED FOR 1 YEAR AT SUPERVISION LEVEL 3.

THE NON-INCARCERATIVE PORTION OF THIS SENTENCE SHALL BE SERVED
CONSECUTIVELY TO THE NON-INCARCERATIVE PORTION OF THE SENTENCE
IMPOSED IN CR.A. NO. IN00070352

$B-24$

PAGE 012 OF 16

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00070354, DISGUISE,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 1 YEAR.

THIS SENTENCE IS SUSPENDED FOR 1 YEAR AT SUPERVISION LEVEL 3.

THE NON-INCARCERATIVE PORTION OF THIS SENTENCE SHALL BE SERVED
CONSECUTIVELY TO THE NON-INCARCERATIVE PORTION OF THE SENTENCE
IMPOSED IN CR.A. NO. IN00070351

$B-25$

STATE OF DELAWARE V. DEVEARL L BACON
0006017660

AS TO THE CHARGE OF IN00071673, DISGUISE,
IT IS THE ORDER OF THE COURT THAT:

THE DEFENDANT IS ADJUDGED GUILTY OF THE OFFENSE
CHARGED.

THE DEFENDANT IS PLACED IN THE CUSTODY OF THE DEPARTMENT OF
CORRECTION AT SUPERVISION LEVEL 5 FOR A PERIOD OF 1 YEAR.

THIS SENTENCE IS SUSPENDED FOR 1 YEAR AT SUPERVISION LEVEL 3.

THE NON-INCARCERATIVE PORTION OF THIS SENTENCE SHALL BE SERVED
CONSECUTIVELY TO THE NON-INCARCERATIVE PORTION OF THE SENTENCE
IMPOSED IN CR.A. NO. IN00070354

$B-26$

STATE OF DELAWARE V. DEVEARL L BACON,
0006017660

THE FOLLOWING CONDITIONS SHALL APPLY TO THIS SENTENCE, THE
DEFENDANT SHALL:

PAY FINANCIAL OBLIGATIONS DURING THE PROBATIONARY PERIOD.

HAVE NO CONTACT WITH DAWN SMITH, AVON MATTHEWS, JACQUELINE
JOHNSON, MICHAEL SCOTT CATHY BARON, ROSHELLE CONKEY, STEPHANIE WEST
OR WITH STAR LIQUORS OR ANY 7-11 STORES.

BE EVALUATED FOR SUBSTANCE ABUSE AND FOLLOW ANY DIRECTIONS FOR
COUNSELING, TESTING, OR TREATMENT MADE BY THE PROBATION OFFICER.

BE EVALUATED FOR EMOTIONAL AND/OR PSYCHOLOGICAL PROBLEMS AND
FOLLOW ANY DIRECTIONS FOR TREATMENT OR COUNSELING MADE BY THE
PROBATION OFFICER.

RESTITUTION TO ALL VICTIMS SHOULD BE LEFT OPEN.

FORFEIT WEAPON

_____

JUDGE SUSAN C. DEL PESCO

$B-27$

STATE OF DELAWARE V. DEVEARL L BACON,
0006017660

FINANCIAL OBLIGATIONS ARE IMPOSED ON THE DEFENDANT PURSUANT TO THIS
SENTENCE AS FOLLOWS:

```
TOTAL CDEFA-DIVERSION ORDERED          0.00
TOTAL CIVIL PENALTY ORDERED            0.00
TOTAL COSTS ORDERED                    0.00
TOTAL DRUG SURCHARGE ORDERED           0.00
TOTAL EXTRADITION ORDERED              0.00
TOTAL FINE AMOUNT ORDERED              0.00
TOTAL FORENSIC FINE ORDERED            0.00
TOTAL SHERIFF KENT ORDERED             0.00
TOTAL SHERIFF NCC ORDERED              0.00
TOTAL PUBLIC DEF. FEE ORDERED          0.00
TOTAL RESTITUTION ORDERED              0.00
TOTAL SHERIFF SUSSEX ORDERED           0.00
TOTAL VICTIMS' COMP ORDERED            0.00
TOTAL VIDEO PHONE FEE ORDERED         14.00

TOTAL FINANCIAL ORDER                 14.00
```

B-28

EXHIBIT B

TRIAL COURT RULING

B-29

IN THE SUPREME COURT OF THE STATE OF DELAWARE

DEVERAL L. BACON                )
                                )
        Defendant-Below,        )
        Appellant,              )
                                )
v.                              )       No. 369, 2001
                                )
STATE OF DELAWARE,              )
                                )
        Plaintiff-Below,        )
        Appellee.               )


ON APPEAL FROM THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY


APPENDIX TO APPELLANT'S OPENING BRIEF


EDMUND M. HILLIS [#2008]
Assistant Public Defender
Carvel State Office Bldg.
820 N. French Street
Wilmington, DE  19801

Attorney for Appellant.

(302) 577-5122


Dated:  January 18, 2002

$\beta$-30

## TABLE OF CONTENTS

PAGE

COURT DOCKET . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1 to A-6

INDICTMENT AS RETURNED BY GRAND JURY . . . . . . . . . . . . . . . . . . . . . . . . . A-7 to A-16

AMENDED INDICTMENT AS SUBMITTED TO THE GRAND JURY . . . . . . . A-17 to A-27

JURY VERDICT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-28 to A-30

B-31

## IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DEVEARL BACON, | § |
| | §   No. 369, 2001 |
| Defendant Below, | § |
| Appellant, | §                                    ·' |
| | § |
| v. | §   Court Below: Superior Court |
| | §   of the State of Delaware |
| STATE OF DELAWARE, | §   in and for New Castle County |
| | § |
| Plaintiff Below, | § |
| Appellee. | § |

Submitted: May 7, 2002
Decided:   July 1, 2002

Before **HOLLAND, BERGER** and **STEELE**, Justices.

### O R D E R

This      /      day of July, 2002, on consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of carjacking and multiple counts of robbery first degree, possession of a deadly weapon by a person prohibited, wearing a disguise during the commission of a felony, aggravated menacing, and possession of a firearm during the commission of a felony. He appeals from one robbery conviction, arguing that the Superior Court erred in allowing that count of the indictment to be amended at the beginning of trial.

$E_{X/1,B/T}$ $\beta$   $\beta-32$

2) Bacon was charged with 36 counts of robbery and related offenses arising out of a two-day crime spree. The indictment at issue originally charged that Bacon threatened "the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car...." The State moved to amend the indictment to substitute "United States currency" for "car keys and a car." The Superior Court granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be amended as to matters of form, as long as "no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights."[1] The elements of the crime of robbery are, in relevant part: (1) the use or threatened immediate use of force on a person; (2) while committing the crime of theft; (3) in order to overcome the person's resistance to the taking of the property.[2] The identity of the stolen property is not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge.[3] Since the amendment was

---

[1] *Robinson v. State*, 600 A.2d 356, 359 (Del. 1991).

[2] 11 *Del. C.* §831.

[3] *Roberts v. State*, 1998 WL 231269 (Del. Supr.).

2

$\beta$-33

permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial court's decision granting the motion to amend must be upheld.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

Carolyn Berger
Justice

3

$B$-34

SUPERIOR COURT CRIMINAL DOCKET                Page    1
( as of  01/18/2002 )

State of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.             AKA: DEVERAL BACON
Defense Atty: EDMUND M HILLIS , Esq.              DEVERAL BACON
                                                 DEVEAR L BACON
                                                 DEVIAL L BACON
                                                 MARK WILSON
                                                 LOST BACON
                                                 DAVID JOHNSON

Assigned Judge:

Charges:
| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0006017660 | IN00070367 | PFDCF | NOLP | 06/22/2001 |
| 002 | 0006017660 | IN00070368 | ROBBERY 1ST | NOLP | 06/22/2001 |
| 003 | 0006017660 | IN00070369 | AGGR MENACING | NOLP | 06/22/2001 |
| 004 | 0006017660 | IN00070370 | DISGUISE | NOLP | 06/22/2001 |
| 014 | 0006017660 | IN00071665 | PDWBPP | NOLP | 06/22/2001 |
| 015 | 0006017660 | IN00071666 | CARJACKING 1ST | TG | 06/22/2001 |
| 016 | 0006017660 | IN00071667 | PDWBPP | TG | 06/22/2001 |
| 017 | 0006017660 | IN00071668 | ATT. ROBBERY 1S | TNG | 06/22/2001 |
| 018 | 0006017660 | IN00071669 | PFDCF | TNG | 06/22/2001 |
| 019 | 0006017660 | IN00071670 | PDWBPP | TNG | 06/22/2001 |
| 020 | 0006017660 | IN00071671 | PFDCF | TG | 06/22/2001 |
| 021 | 0006017660 | IN00071672 | PDWBPP | TG | 06/22/2001 |
| 022 | 0006017660 | IN00071673 | DISGUISE | TG | 06/22/2001 |
| 023 | 0006017660 | IN00070347 | PFDCF | TG | 06/22/2001 |
| 024 | 0006017660 | IN00070348 | ROBBERY 1ST | TG | 06/22/2001 |
| 025 | 0006017660 | IN00070349 | ROBBERY 1ST | TG | 06/22/2001 |
| 026 | 0006017660 | IN00070350 | AGGR MENACING | NOLP | 06/22/2001 |
| 027 | 0006017660 | IN00070351 | AGGR MENACING | TG | 06/22/2001 |
| 028 | 0006017660 | IN00070352 | AGGR MENACING | TG | 06/22/2001 |
| 029 | 0006017660 | N00070353 | CARJACKING 2ND | NOLP | 06/22/2001 |
| 030 | 0006017660 | IN00070354 | DISGUISE | TG | 06/22/2001 |
| 031 | 0006017660 | IN00070355 | PFDCF | NOLP | 06/22/2001 |
| 032 | 0006017660 | IN00070356 | ROBBERY 1ST | TG | 06/22/2001 |
| 033 | 0006017660 | IN00070357 | ROBBERY 1ST | TG | 06/22/2001 |
| 034 | 0006017660 | IN00070358 | ROBBERY 1ST | TG | 06/22/2001 |
| 035 | 0006017660 | IN00070359 | DISGUISE | TNG | 06/22/2001 |
| 036 | 0006017660 | IN00071776 | PDWBPP | TNG | 06/22/2001 |

| No. | Event Date | Event | Judge |
|-----|------------|-------|-------|
| 1 | 07/06/2000 | CASE ACCEPTED IN SUPERIOR COURT. | |

$B-35$

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    2
                       ( as of  01/18/2002 )
```

State of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.              AKA: DEVERAL BACON
Defense Atty:                                      DAVID JOHNSON

```
      Event
No.   Date           Event                           Judge
--------------------------------------------------------------------------------
      ARREST DATE: 06/23/2000
      PRELIMINARY HEARING DATE:
      BAIL:
      HELD ON CASH BAIL                    55000.00 100
      BAIL CONDITIONS:  NO DIRECT OR INDIRECT CONTACT WITH WILLIAM DAVIS,
      GULF SERVICE STATION, SHAH HASSAN GULF SERVICE STATION.
      REPORT TO PROBATION OFFICER.
2     07/14/2000
      MOTION FOR REDUCTION OF BAIL FILED.
      RAYMOND RADULSKI, ESQ.
4     07/17/2000
      INDICTMENT, TRUE BILL FILED. NO 47
      FAST TRACK VOP/CASE REVIEW ON 8/3/00
      WILL CONSOLIDATE WITH 0006017683 WHEN FIXED.
5     07/17/2000
      CASE CONSOLIDATED WITH: 0006017683
3     07/25/2000                              REYNOLDS MICHAEL P.
      MOTION FOR REDUCTION OF BAIL WITHDRAWN.
      BY DEFT.
      08/03/2000                              GEBELEIN RICHARD S.
      FAST TRACK CALENDAR/CASE REVIEW:  SET FOR FAST TRACK FINAL CASE REVIEW
      ON: 102600
6     08/14/2000
      DEFENDANT'S LETTER FILED. TO RAYMOND RADULSKI, ESQ.
      RE: DEF REQUESTING A MOTION FOR DISMISSAL BE FILED.
      * ATTACHED IS A COURTESY COPY OF THE LETTER FOR THE PROTHONOTARY.
7     08/21/2000
      REFERRAL TO COUNSEL MEMORANDUM FILED.
      ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
      AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
      COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
      CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
      DIRECTED TO YOU. RAYMOND RADULSKI, ESQ
      REFERRED BY:  (AMH)
8     09/26/2000
      DEFENDANT'S LETTER FILED TO: RAY RADULSKI.
      RE: WANTS MOTION OF DISCOVERY SENT TO HIM ASAP.
9     10/06/2000
      NOTICE OF SERVICE - DISCOVERY REQUEST.
      TO: JAMES RAMBO  FROM: RAY RADULSKI.
10    11/01/2000
      LETTER FROM: SEAN LUGG  TO:  RAY OTLOWSKI.
```

$B$-36

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                        ( as of  01/18/2002 )
```

State of Delaware v.  DEVEARL L BACON                           DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
Defense Atty:                                   DAVID JOHNSON

```
      Event
No.   Date            Event                              Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
```
       RE: INFORMING THAT HE HAS TAKING OVER FOR JAMES FREEBERY, AND GIVES
       HIM RESPONSE TO HIS DISCOVERY REQUEST.
11     12/01/2000
       ORDER SCHEDULING TRIAL FILED.
       TRIAL DATE: 6/19/01
       CASE CATEGORY:_____1
       ASSIGNED JUDGE (CATEGORY 1 CASES ONLY): DEL PESCO
       UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
       OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
       FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
       CONTINUANCE REQUESTS WILL BE DENIED.
12     12/27/2000
       DEFENDANT'S LETTER FILED.
       TO: ED HILLIS.
       RE: WANTS TRANSCRIPTS FROM PRELIMINARY HEARING, BUT DOESN'T HAVE MONEY
       FOR THEM.
13     03/08/2001
       DEFENDANT'S LETTER TO EDMUND HILLIS, THANKING HIM FOR A COPY OF TRANS-
       CRIPT OF PRELIM AND ASKING HIM TO SEND AN INVESTIGATOR TO THE VICTIMS
       FOR QUESTIONING.
15     03/09/2001
       DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING TRANSCRIPTS OF PRELIM
       & LETTER FROM ATTORNEY BE PLACED IN HIS FILE.
14     03/21/2001
       DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING A COPY OF LETTER TO MR.
       HILLIS BE PLACED IN DEF.'S FILE.
16     03/23/2001
       REFERRAL TO COUNSEL MEMORANDUM FILED.
       ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
       AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
       COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
       CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
       DIRECTED TO YOU.  EDMUND HILLIS, ESQ
       REFERRED BY:  (AMH)
       DEFENDANT REQUEST LETTER SENT TO COUNSEL
17     04/17/2001
       DEFENDANT'S LETTER FILED REQUESTING ALL BRADY V MARYLAND MATERIALS BE
       PLACED ON HIS COURT DOCKET
18     05/01/2001
       DEFENDANT'S LETTER FILED REQUESTING A COPY OF THIS LETTER BE SENT TO
       HIS PUBLIC DEFENDER AND ASKING HIM TO FILE A MOTION TO SEVER & PUT IT
       IN HIS COURT DOCKET

B-37

```
  .'      .'
```

SUPERIOR COURT CRIMINAL DOCKET                    Page    4
( as of  01/18/2002 )

State of Delaware v.  DEVEARL L BACON                      DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
Defense Atty:                                   DAVID JOHNSON

       Event
No.   Date          Event                              Judge  '
--------------------------------------------------------------------------------
19   05/18/2001
       DEFENDANT'S LETTER FILED. DEFENDANT WANTS A COPY OF HIS LETTER SENT TO
       MR. EDMUND HILLIS OF THE PUBLIC DEFENDERS OFFICE. DEFENDANT ALSO WANTS
       A COPY OF HIS DOCKET SHEET SENT TO HIM.
20   05/18/2001
       LETTER FROM DEVEARL L. BACON TO EDMUND HILLIS OF THE PUBLIC DEFENDERS
       OFFICE. RE: TO SUBPENA "ALL" STATE WITNESS(S), ALONG WITH MY
       WITNESS(S) ON MY BEHALF.
       MR. HILLIS:
       PLEASE SUBPENA ALL STATE WITNESS(S), AND ALSO THE FOLLOWING:
       1. ALBERT WILSON, 2. MANLY WILSON, 3. RUTH WILSON.
       ALL OF 706 TOWNSEND PL., WILMINGTON, DE 19801.
21   06/04/2001
       SUBPOENA(S) MAILED.
27   06/04/2001
       STATE'S WITNESS SUBPOENA ISSUED.
       WILLIAM DAVIS, SHAH HASSAN, DAWN SMITH, AVON MATTHEWS, JACQUELINE JOHN
       SON, JAMIE ROSS, MICHAEL SCOTT, CATHY BARON, ROSHELLE CONKEY,
       STEFFANIE WEST, R LECCIA WPD, BERNADETTE SELBY.
28  06/12/2001
       DEFENDANT IS REQUESTING DELAY IN TRAIL
22   06/13/2001
       SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
       SHAH HASSAN,DAWN SMITH.AVON MATTHEWS,JACQUELINE JOHNSON,
       JAMIE ROSS,CATHY BARON,ROSHELLE CONKEY
23   06/14/2001                                     GOLDSTEIN CARL
       TRIAL CALENDER/PLEA HEARING:  PLEA REJECTED/SET FOR TRIAL
24   06/19/2001                                     DEL PESCO SUSAN C.
       TRIAL CALENDAR- WENT TO TRIAL JURY
25   06/22/2001                                     DEL PESCO SUSAN C.
       CHARGE TO THE JURY FILED._FILED JUNE 22, 2001
26   06/22/2001                                     DEL PESCO SUSAN C.
       JURY TRIAL HELD.
       TRIAL HELD 6-19 THROUGH 6-22-2001.  VERDITS WERE GUILTY ON ALL COUNTS
       EXCEPT 10,11,12,13 WHERE THE VERDICT WAS NOT GUILTY.  CLERK WAS G.
       BROOKS AND COURT REPORTER WAS ROFLE EXCEPT FOR 6-22 IT WAS CAHILL
       ALL EXHIBITS WERE RETURNED.  DAG WAS SEAN LUGG AND DEFENSE WAS
       ED HILLIS.  JURY WAS SWORN ON JUNE 19TH.
       07/20/2001                                   DEL PESCO SUSAN C.
       SENTENCING CALENDAR: DEFENDANT SENTENCED.
32   08/03/2001
       DEFENDANT'S LETTER FILED.__            TO MARY ELIZABETH PITCAVAGE.
```

$B-38$

                    SUPERIOR COURT CRIMINAL DOCKET                Page    5
                         ( as of  01/18/2002 )

State of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.              AKA: DEVERAL BACON
Defense Atty:                                     DAVID JOHNSON


       Event
No.    Date            Event                          Judge
------------------------------------------------------------------------------
       LETTER FROM DEFENDANT ASKING FOR A LETTER TO MR. HILLIS TO FILE A
       NOTICE OF APPEAL BE PUT IN HIS FILE AND TO BE DOCKETED.
       *SEE FULL LETTER IN FILE WITH A LETTER TO MR. HILLIS TO FILE A NOTICE
       OF APPEAL ATTACHED.
29     08/16/2001
       TRANSCRIPT FILED.
       VERDICT TRANSCRIPT JUNE 22, 2001
       BEFORE JUDGE DEL PESCO.
30     08/17/2001
       LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN
       RE: AMENDED DIRECTIONS TO THE COURT REPORT WERE FILED IN THIS
       COURT ON AUGUST 16, 2001. THE TRANSCRIPT MUST BE FILED WITH THE
       PROTHONOTARY NO LATER THAN SEPTEMBER 25, 2001.
31     08/22/2001
       AMENDED DIRECTIONS TO COURT REPORTER TO PROCEEDINGS BELOW
       TO BE TRANSCRIBED. (COPY)
       FILED BY DEFENDANT IN SUPREME COURT
 3     09/14/2001                              DEL PESCO SUSAN C.
       (ERROR/FILED DATE): SENTENCE ORDER SIGNED & FILED 9/17/01.
       ** NOTE ** CORRECT FILED DATE IS 7/20/2001. ***
34     09/14/2001
       TRANSCRIPT FILED.
       SENTENCING ON JULY 20, 2001
       BEFORE JUDGE DELPESCO
35     09/25/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT FOR JUNE 19, 2001
       BEFORE JUDE DEL PESCO
36     09/25/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT JUNE 20, 2001
       BEFORE JUDGE DEL PESCO
37     09/26/2001
       LETTER FROM SUPREME COURT TO MICHELE ROLFE, COURT REPORTER
       RE: THE COURT IS IN RECEIPT OF YOUR LETTER DATED SEPTEMBER 21, 2001.
       REQUESTING AN EXTENSION OF TIME TO FILE THE TRANSCRIPT. PLEASE BE
       ADVISED THAT YOUR REQUEST IS GRANTED. THE TRANSCRIPT IN DUE NO
       LATER THAN OCTOBER 9, 2001.
38     10/09/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT FOR JUNE 21, 2001.
       BEFORE JUDGE DEL PESCO.


                                    $B-39$

```
                    SUPERIOR COURT CRIMINAL DOCKET          Page    6
                       ( as of   01/18/2002 )

State of Delaware v.  DEVEARL L BACON                    DOB: 11/27/1969
State's Atty: SEAN P LUGG , Esq.         AKA: DEVERAL BACON
Defense Atty:                                 DAVID JOHNSON

       Event
No.   Date          Event                              Judge '
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
39   10/16/2001
        RECORDS SENT TO SUPREME COURT.
40   10/16/2001
        RECEIPT FROM SUPREME COURT ACKNOWLEDGING THE RECORD.

          *** END OF DOCKET LISTING AS OF  01/18/2002 ***
              PRINTED BY: JDEFEMH
```

B-40

A-6

47-2

## RULE 9 SUMMONS

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | : |
| --- | --- |
| | : |
| V. | : INDICTMENT BY THE GRAND JURY |
| | : |
| DEVEARL BACON | : I.D. #0006017660 |
| | :     0006017683 |

The Grand Jury charges DEVEARL BACON with the following offenses:

### COUNT I.  A FELONY

#N

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware

Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New

Castle, State of Delaware, when in the course of committing theft, did threaten the immediate

use of force upon Shah Hassan with intent to compel the said person to deliver up property

consisting of United States currency and when in the course of the commission of the crime, he

displayed what appeared to be a deadly weapon, to wit: a gun.

### COUNT II.  A FELONY

#N

AGGRAVATED MENACING in violation of Title 11, Section 602 of the Delaware

Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New

Castle, State of Delaware, by displaying what appeared to be a deadly weapon, a gun, did

B-41

intentionally place William Davis in fear of imminent physical injury.

## COUNT III.  A FELONY

#N _____

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did possess a gun, a firearm during the commission of Robbery First Degree.

## COUNT IV.  A FELONY

#N _____

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in violation of Title 11, Section 1448 of the Delaware Code of 1974, as amended.

. DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, having pled guilty in Criminal Action Number IN96111412, in the Superior Court of the State of Delaware in and for New Castle County to the charge of Robbery First Degree on December 2, 1997, did knowingly possess, purchase, own or control a gun, a deadly weapon, as set forth in 11 Del.C. Section 222.

## COUNT V.  A FELONY

#N _____

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY in violation of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did wear a hood, mask or other disguise during the commission of

$\beta$-42

Robbery First Degree, a felony as set forth in Count I and/or II of this Indictment incorporated herein by reference

### COUNT VI. A FELONY

#N _____ _____

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Dawn Smith with intent to compel the said person to deliver up property consisting of United States currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

### COUNT VII. A FELONY

#N _____ _____

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Avon Matthews with intent to compel the said person to deliver up property consisting of car keys and a car and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

### COUNT VIII. A FELONY

#N _____ _____

CARJACKING IN THE FIRST DEGREE in violation of Title 11, Section 836 of the

A-9

B-43

Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did knowingly and unlawfully take possession or control of a motor vehicle from Avon Matthews by coercion, duress, or otherwise without permission of the person and while in possession or control of said vehicle did display what appeared to be a gun, a deadly weapon.

## COUNT IX. A FELONY

#N

AGGRAVATED MENACING in violation of Title 11, Section 602 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, by displaying what appeared to be a deadly weapon, a gun, did intentionally place Jacqueline Johnson in fear of imminent physical injury.

## COUNT X. A FELONY

#N

AGGRAVATED MENACING in violation of Title 11, Section 602 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, by displaying what appeared to be a deadly weapon, a gun, did intentionally place Jamie Ross in fear of imminent physical injury.

## COUNT XI. A FELONY

#N

AGGRAVATED MENACING in violation of Title 11, Section 602 of the Delaware

B-44

Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, by displaying what appeared to be a deadly weapon, a gun, did intentionally place Michael Scott in fear of imminent physical injury.

## COUNT XII. A FELONY

#N _____ . _____

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did possess a gun, a firearm during the commission of Robbery First Degree.

## COUNT XIII. A FELONY

#N _____

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in violation of Title 11, Section 1448 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, having pled guilty in Criminal Action Number IN96111412, in the Superior Court of the State of Delaware in and for New Castle County to the charge of Robbery First Degree on December 2, 1997, did knowingly possess, purchase, own or control a gun, a deadly weapon, as set forth in 11 Del.C. Section 222.

## COUNT XIV A FELONY

#N _____

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY in violation

A-11          B-45

of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did wear a hood, mask or other disguise during the commission of Robbery First Degree, a felony as set forth in Counts VI and/or VII and/or VIII and/or IX and/or X and/or XI of this Indictment incorporated herein by reference.

## COUNT XV. A FELONY

#N_____

ATTEMPTED ROBBERY FIRST DEGREE in violation of Title 11, Section 531 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, did, in the course of committing theft, intentionally threaten the use of force against Gina Harris, with the intent to compel her to deliver up property consisting of United States currency, which acts under the circumstances as he believed them to be, constituted a substantial step in a course of conduct planned to culminate in his commission of the crime of Robbery First Degree in violation of Title 11, Section 832, and when in the course of the commission of the crime displayed what appeared to be a deadly weapon: a gun.

## COUNT XVI. A FELONY

#N_____

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, did possess a gun, a firearm during the commission of Attempted Robbery First Degree.

B-46

A-12

## COUNT XVII. A FELONY

#N _____

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in violation of Title 11, Section 1448 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, having pled guilty in Criminal Action Number IN96111412, in the Superior Court of the State of Delaware in and for New Castle County to the charge of Robbery First Degree on December 2, 1997, did knowingly possess, purchase, own or control a gun, a deadly weapon, as set forth in 11 Del.C. Section 222.

## COUNT XVIII. A FELONY

#N _____

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY in violation of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, did wear a hood, mask or other disguise during the commission of Robbery First Degree, a felony as set forth in Count XV of this Indictment incorporated herein by reference.

## COUNT XIX. A FELONY

#N _____

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Cathy Baron with intent to compel the said person to deliver up property

A-13    B-47

consisting of United States currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

### COUNT XX.  A FELONY

#N_____

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

### COUNT XXI.  A FELONY

#N_____

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Steffanie West with intent to compel the said person to deliver up property consisting of United States currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

### COUNT XXII.  A FELONY

#N_____

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in

 B-48

violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New

Castle, State of Delaware, did possess a gun, a firearm during the commission of Robbery

First Degree.

## COUNT XXIII. A FELONY

#N _____

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in violation of

Title 11, Section 1448 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New

Castle, State of Delaware, having pled guilty in Criminal Action Number IN96111412, in the

Superior Court of the State of Delaware in and for New Castle County to the charge of Robbery

First Degree on December 2, 1997, did knowingly possess, purchase, own or control a gun, a

deadly weapon, as set forth in 11 Del.C. Section 222.

## COUNT XIV. A FELONY

#N _____

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY in violation

of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New

Castle, State of Delaware, did wear a hood, mask or other disguise during the commission of

Robbery First Degree, a felony as set forth in Count XIX and/or XX and/or XXI of this

$B$-49

Indictment incorporated herein by reference.

A TRUE BILL

_Robert Jennings Jr._
(FOREPERSON)

_M. Jane Brady_
ATTORNEY GENERAL

DEPUTY ATTORNEY GENERAL

B-50

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| THE STATE OF DELAWARE | : |
| | : |
| v. | :INDICTMENT BY THE GRAND JURY |
| | : |
| DEVEARL BACON | : I.D. #0006017660 |

The Grand Jury charges DEVEARL BACON with the following offenses:

## COUNT I. A FELONY

#IN 00-07-0348

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Dawn Smith with intent to compel the said person to deliver up property consisting of United States currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

8

$B-51$

## COUNT II. A FELONY

#IN 00-07-0349

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Avon Matthews with intent to compel the said person to deliver up property consisting of car keys and a car and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

## COUNT III. A FELONY

IN #00-07-1666

CARJACKING IN THE FIRST DEGREE in violation of Title 11, Section 836 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did knowingly and unlawfully take possession or control of a motor vehicle from Avon Matthews by coercion, duress, or otherwise without permission of the person and while in possession or control of said vehicle did display what appeared to be a gun, a deadly weapon.

9

$A-18$    $B-52$

## COUNT IV. A FELONY

IN #00-07-0352

AGGRAVATED MENACING in violation of Title 11, Section 602 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, by displaying what appeared to be a deadly weapon, a gun, did intentionally place Jacqueline Johnson in fear of imminent physical injury.

## COUNT V. A FELONY

IN #

# WITHDRAWN

10

$A-19$        $B-53$

## COUNT VI. A FELONY

IN #00-07-0351

AGGRAVATED MENACING in violation of Title 11, Section 602 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, by displaying what appeared to be a deadly weapon, a gun, did intentionally place Michael Scott in fear of imminent physical injury.

## COUNT VII. A FELONY

IN #00-07-0347

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did possess a gun, a firearm during the commission of Robbery First Degree as set forth in Counts I and II of this Indictment and incorporated herein by reference.

11

$R$-54

## COUNT VIII. A FELONY

### IN #00-07-1667

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in violation of Title 11, Section 1448 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did knowingly possess, purchase, own or control a gun, a deadly weapon, as set forth in 11 Del. C. Section 222, being a person prohibited by law from doing so.

## COUNT IX. A FELONY

### IN #00-07-0354

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY in violation of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 21st day of June, 2000, in the County of New Castle, State of Delaware, did wear a hood, mask or other disguise during the commission of Robbery First Degree, a felony as set forth in Counts I and II of this Indictment incorporated herein by reference.

## COUNT X. A FELONY

### IN #00-07-1668

12

B-55

A-21

ATTEMPTED ROBBERY FIRST DEGREE in violation of Title 11, Section 531 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, did, in the course of committing theft, intentionally threaten the use of force against Gina Harris, with the intent to compel her to deliver up property consisting of United States currency, which acts under the circumstances as he believed them to be, constituted a substantial step in a course of conduct planned to culminate in his commission of the crime of Robbery First Degree in violation of Title 11, Section 832, and when in the course of the commission of the crime he displayed what appeared to be a deadly weapon: a gun.

## COUNT XI, A FELONY

#IN 00-07-1669

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, did possess a gun, a firearm during the commission of Attempted Robbery First Degree as set forth in Count X of this Indictment incorporated herein by reference.

13

$\beta$-56

$A$- 22

## COUNT XII. A FELONY

#IN 00-07-1776

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in

violation of Title 11, Section 1448 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County

of New Castle, State of Delaware, did knowingly possess, purchase or own or

control a gun, a deadly weapon, being a person prohibited by law to do so.

## COUNT XIII. A FELONY

#IN 00-07-0359

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY

in violation of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County

of New Castle, State of Delaware, did wear a hood, mask or other disguise during

the commission of Attempted Robbery First Degree, a felony as set forth in Count

X of this Indictment incorporated herein by reference.

## COUNT XIV. A FELONY

IN #00-07-0356

14

$A-23$   $\beta-57$

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Cathy Baron with intent to compel the said person to deliver up property consisting of United States currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

## COUNT XV, A FELONY

IN #00-07-0357

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of United States Currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

## COUNT XVI, A FELONY

15

$A-24$    $B-58$

#IN 00-07-0358

ROBBERY FIRST DEGREE in violation of Title 11, Section 832 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Steffanie West with intent to compel the said person to deliver up property consisting of United States currency and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a gun.

## COUNT XVII, A FELONY

#IN 00-07-1671

POSSESSION OF A FIREARM DURING THE COMMISSION OF A FELONY, in violation of Title 11, Section 1447A of the Delaware Code of 1974 as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County of New Castle, State of Delaware, did possess a gun, a firearm during the commission of Robbery First Degree, a felony as set forth in Counts XIV, XV, and XVI, of this Indictment incorporated herein by reference.

## COUNT XVIII, A FELONY

16

$\beta$-59

$A-25$

#IN 00-07-1672

POSSESSION OF A DEADLY WEAPON BY PERSON PROHIBITED in

violation of Title 11, Section 1448 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County

of New Castle, State of Delaware, did knowingly possess, purchase, own or control

a gun, a deadly weapon, being a person prohibited by law to do so.

## COUNT XIX. A FELONY

#IN 00-07-1673

WEARING A DISGUISE DURING THE COMMISSION OF A FELONY

in violation of Title 11, Section 1239 of the Delaware Code of 1974, as amended.

DEVEARL BACON, on or about the 22nd day of June, 2000, in the County

of New Castle, State of Delaware, did wear a hood, mask or other disguise during

the commission of Robbery First Degree, a felony as set forth in Counts XIV, XV,

and XVI, of this Indictment incorporated herein by reference.

A TRUE BILL

/S/

(FOREPERSON)

/S/

17

$\beta - 60$

$A - 26$

ATTORNEY GENERAL


_____ /S/ _____

DEPUTY ATTORNEY GENERAL

B-61

1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,          ID# 0006017650

    Plaintiff,

v.

DEVEARL BACON,

    Defendant.

BEFORE: HONORABLE SUSAN C. DEL PESCO, J.
    and jury

APPEARANCES:

    SEAN LUGG, ESQ.
    Deputy Attorney General
    for the State

    EDMUND M. HILLIS, ESQ.
    for the Defendant

VERDICT TRANSCRIPT
JUNE 22, 2001

JEANNE CAHILL, RMR, CRR
SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
(302) 577-2400 Ext. 413

---

2

June 22, 2001
11:____

PRESENT:

    As noted.

    - - - - -

6    THE COURT: Everyone present?

7    Looks like we're ready for the jury.

8    Mr. Hillis, are you presently involved in

9  another proceeding in another courtroom?

10    MR. HILLIS: No.

11    (Jury enters courtroom at 11:35 a.m.)

12    THE COURT: Take the verdict, please.

13    THE CLERK: Yes, Your Honor.

14    Mr. Foreman, please rise.

15    Has the jury agreed upon their verdicts?

16    THE FOREPERSON: Yes.

17    THE CLERK: How does the jury find the

18  defendant at the bar, Devearl Bacon, as to the charge

19  of Count 1, robbery first degree?

20    THE FOREPERSON: Guilty.

21    THE CLERK: Count II, robbery first degree?

22    THE FOREPERSON: Guilty.

23    THE CLERK: Count III, carjacking in the

---

3

1  first degree?

2    THE FOREPERSON: Guilty.

3    THE CLERK: Count IV, aggravated menacing?

4    THE FOREPERSON: Guilty.

5    THE CLERK: Count VI, aggravated menacing?

6    THE FOREPERSON: Guilty.

7    THE CLERK: Count VII, possession of a

8  firearm during the commission of a felony?

9    THE FOREPERSON: Guilty.

10    THE CLERK: Count VIII, possession of a

11  deadly weapon by a person prohibited?

12    THE FOREPERSON: Guilty.

13    THE CLERK: Count IX, wearing a disguise

14  during the commission of a felony?

15    THE FOREPERSON: Guilty.

16    THE CLERK: Count X, attempted robbery first

17  degree?

18    THE FOREPERSON: Not guilty.

19    THE CLERK: Count XI, possession of a firearm

20  during the commission of a felony?

21    THE FOREPERSON: Not guilty.

22    THE CLERK: Count XII, possession of a deadly

23  weapon by a person prohibited?

---

4

1    THE FOREPERSON: Not guilty.

2    THE CLERK: Count XII, wearing a disguise

3  during the commission of a felony?

4    THE FOREPERSON: Not guilty.

5    THE CLERK: Count XIV, robbery first degree?

6    THE FOREPERSON: Guilty.

7    THE CLERK: Count XV, robbery first degree?

8    THE FOREPERSON: Guilty.

9    THE CLERK: Count XVI, robbery first degree?

10    THE FOREPERSON: Guilty.

11    THE CLERK: Count XVII, possession of a

12  firearm during the commission of a felony?

13    THE FOREPERSON: Guilty.

14    THE CLERK: Count XVIII, possession of a

15  deadly weapon by a person prohibited?

16    THE FOREPERSON: Guilty.

17    THE CLERK: And Count XIX, wearing a disguise

18  during the commission of a felony?

19    THE FOREPERSON: Guilty.

20    THE COURT: Please be seated, Mr. Foreman.

21    Members of the jury, harken to the verdict as

22  the Court has recorded it. Your foreperson says that

23  you have found the defendant at the bar, Devearl

5

1  Bacon, guilty on all charges, except X, XI, XII and
2  XIII, you have found him not guilty.
3        So say you all?
4        (No negative responses.)
5        THE CLERK: Your Honor.
6        THE COURT: Ladies and gentlemen, thank you
7  very much for giving us your assistance in resolving
8  this dispute. We very much appreciate your
9  willingness to be here.
10       You are now excused.
11       (Jury leaves courtroom at 11:40 a.m.)
12       THE COURT: It's my intention to sentence in
13  approximately half an hour. Is that -- Are you
14  available?
15       MR. HILLIS: Well, I guess I can be. I have
16  sentencings at 1:15, and I have some other things I
17  should do, one of which is eat lunch, but --
18       THE COURT: I can defer it to 1:00.
19       MR. HILLIS: Is Mr. Lugg available at 1:00?
20       MR. LUGG: I'm available today. The only
21  concern I have, and this is something I looked into
22  when the Court handed us this information yesterday, I
23  can't tell whether or not the victims would want to be

6

1  here, but I do believe they have a right to that.
2        And there is also information that I think
3  that they were unable to provide during the trial
4  which, as far as impact and things of that sort, which
5  is in the Victim's Bill of Rights.
6        I do understand that we're dealing with a
7  very substantial period of minimum mandatory time, but
8  for the record, I think I would like to have them at
9  least have the opportunity to provide the Court with
10  information as to the impact of his crime.
11       THE COURT: That's a fair point. I hadn't
12  given that any consideration.
13       How much time -- Are you suggesting a full-
14  blown Presentence investigation?
15       MR. LUGG: I don't think it would be
16  inappropriate to do that, Your Honor, but if the Court
17  is not inclined to do that, I could ask the victims to
18  provide statements through me that I can present to
19  the Court. I leave that to the Court's discretion.
20       This is a case, as far as bail or anything of
21  that sort, that there is currently being a sentence
22  served by the defendant, and there is also a detention
23  statute which, based upon this conviction, denies him

7

1  bail, even if there wasn't.
2        But I can work with the Court. If the Court
3  permits the State to provide that information, I can
4  do it with the Presentence investigation.
5        THE COURT: Do you have a preference?
6        MR. HILLIS: The only way I would think a
7  Presentence investigation, frankly, from our point of
8  view would be necessary is if the Court were inclined
9  to impose more than the minimum mandatory time,
10  because frankly, if the inclination is not to do any
11  more than the substantial minimum mandatory time, the
12  Court has no discretion; and therefore, I don't
13  believe can be affected by the Presentence report in
14  favor of the defendant.
15       THE COURT: I hear what you're saying, but on
16  the other hand, we do have a duty that gives the
17  victims certain rights.
18       MR. HILLIS: With regard to the State's
19  concern, I find those under the statute to be valid,
20  and I don't think we have any position or standing to
21  object to that.
22       THE COURT: Then I'll put it on for July 20
23  for sentencing. That will give you -- Let's make it

8

1  11:00 a.m. I have to check my calendar because I
2  didn't think about this when I came down here.
3        I'll target July 20 at 11:00 a.m. If that,
4  for some reason, is not agreeable to either of you or
5  to me when I look at my calendar, then we'll
6  reconsider.
7        In the meantime, I'll let the Presentence
8  Office know that the State is rightfully concerned
9  about giving the victims an opportunity to be heard.
10       Okay. Is there anything else we should
11  address?
12       MR. HILLIS: Not from the defense,
13  Your Honor.
14       THE COURT: Stand in recess.
15       (Court adjourned.)
16
17
18
19
20
21
22
23

B-63

9

STATE OF DELAWARE:

NEW CASTLE COUNTY:


         I, Jeanne Cahill, Official Court Reporter of
the Superior Court, State of Delaware, do hereby
certify that the foregoing is an accurate transcript
of the proceedings had, as reported by me in the
Superior Court of the State of Delaware, in and for
New Castle County, in the case therein stated, as the
same remains of record in the Office of the
Prothonotary at Wilmington, Delaware, and that I am
neither counsel nor kin to any party or participant in
said action nor interested in the outcome thereof.

         WITNESS my hand this 14th day of August,
2001.



                    _____
                    Jeanne Cahill, RMR, CRR

B-64

IN THE SUPREME COURT OF THE STATE OF DELAWARE

DEVEARL BACON,                    )
                                  )
        Defendant-Below,          )
        Appellant                 )
                                  )
    v.                            )    No. 369, 2001
                                  )
STATE OF DELAWARE,                )
                                  )
        Plaintiff-Below,          )
        Appellee                  )


ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY


STATE'S ANSWERING BRIEF


William M. Kelleher
Deputy Attorney General
Department of Justice
State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
I.D. #3961

DATE: February 13, 2002

B-65

## TABLE OF CONTENTS

PAGE

TABLE OF CITATIONS . . . . . . . . . . . . . . . . . . . . ii

NATURE AND STAGE OF THE PROCEEDINGS . . . . . . . . . . . . 1

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 3

ARGUMENT

    I.   BECAUSE THE CHARGE WAS UNCHANGED AND UNFAIR PREJUDICE
        DID NOT RESULT TO THE DEFENDANT, SUPERIOR COURT DID
        NOT ERR IN ALLOWING THE AMENDED INDICTMENT . . . . . 4

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . 8

*Roberts v. State*, 1998 WL 231269
    (Del. Supr. May 1, 1998) . . . . . . . . . . . . . . Ex. A

*Brathwaite v. State*, 1999 WL 1090581 (Del.) . . . . . . . Ex. B

i

$B$-66

## TABLE OF CITATIONS

CASES                                                                    PAGE

*Brathwaite v. State,* 1999 WL 1090581
    (Del.) (order) . . . . . . . . . . . . . . . . . . . . . . . 6

*Claire v. State,* 294 A.2d 836 (Del. 1972) . . . . . . . . . . . 4

*Harley v. State,* 534 A.2d 255 (Del. 1987) . . . . . . . . . . . 5

*Johnson v. State,* 711 A.2d 18 (Del. 1998) . . . . . . . . . 5, 6

*Keller v. State,* 425 A.2d 152 (Del. 1981) . . . . . . . . . . 4-6

*O'Neill v. State,* 691 A.2d 50 (Del. 1997) . . . . . . . . . . . 7

*Roberts v. State,* 1998 WL 231269
    (Del. Supr. May 1, 1998) . . . . . . . . . . . . . . . . . . 6

*Robinson v. State,* 600 A.2d 356 (Del. 1991) . . . . . . . . . . 7

*State v. Blendt,* 120 A.2d 321
    (Del. Super. 1956) . . . . . . . . . . . . . . . . . . . . . 7

*State v. Dennis,* 306 A.2d 729 (Del. 1973) . . . . . . . . . . . 7

STATUTES AND RULES

Super. Ct. Crim. R. 7(e) . . . . . . . . . . . . . . . . . . . 4

OTHER AUTHORITIES

4 WAYNE R. LAFAVE ET AL.,
    CRIMINAL PROCEDURE § 19.5(B) . . . . . . . . . . . . . . . . 6

B-67

## NATURE AND STAGE OF THE PROCEEDINGS

During June 2000, Deveral Bacon engaged in a two-day crime spree for which he was arrested and tried. (A2, 4). On June 22, 2001, a jury found Bacon guilty of five counts of first degree robbery, several felony weapons offenses, and first degree carjacking, *inter alia*. (A4; Ex. A to opening br.). The trial judge sentenced Bacon to the minimum mandatory sentence, 34 years at Level V to be served consecutively. (Ex. A to opening br.). Bacon appealed; this is the State's answering brief.

1

B-68

## SUMMARY OF THE ARGUMENT

I.   Denied.   The trial court properly allowed the State to amend the indictment because the amendment did not result in a new charge or otherwise unfairly prejudice the defendant.

2

$B-69$

## STATEMENT OF FACTS

During June 2000, Deveral Bacon engaged in a two-day crime spree for which he was arrested and tried. (A2, 4). On June 22, 2001, a jury found Bacon guilty of five counts of first degree robbery, several felony weapons offenses, and first degree carjacking, *inter alia*. (A4; Ex. A to opening br.). Before trial, the State moved to amend the indictment language pertaining to one of the first degree robbery counts. (Ex. B to opening br.). Specifically, the State sought to change the language in Count 15, IN 00-07-0357, from "car keys and a car" to "U.S. currency," representing an alteration in what the State believed Bacon had taken from that particular victim. *Id.* The court permitted the amendment because the character "of the property [in a robbery charge] is of no significance . . . [as] it does not change the nature of the offense." *Id.*

3

$\beta$-70

I. BECAUSE THE CHARGE WAS UNCHANGED AND UNFAIR PREJUDICE DID NOT RESULT TO THE DEFENDANT, SUPERIOR COURT DID NOT ERR IN ALLOWING THE AMENDED INDICTMENT.

## Standard and Scope of Review

The standard and scope of review is abuse of discretion. *See* Super. Ct. Crim. R. 7(e); *Claire v. State*, 294 A.2d 836, 838 (Del. 1972) ("[t]he Trial Judge, in his discretion, allowed the amendment and we think he was correct").

## Argument

Prior to trial, the State sought to amend the indictment regarding the property taken in one of the first degree robbery counts. (Ex. B to opening br.). Specifically, the State sought to amend the indictment to reflect that Bacon had taken "U.S. currency" instead of "car keys and a car" from one of his robbery victims. *Id*. The trial court allowed the State to make that amendment. *Id*. Rule 7(e) permits an indictment "to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." In other words, the trial court's power to amend an indictment extends to matters of form but not to matters of substance resulting in additional or different charges or that prejudice the substantial rights of the accused. *Keller v. State*, 425 A.2d 152, 155 (Del. 1981); Super. Ct. Crim. R. 7(e). The reason for prohibiting substantial substantive changes is to guarantee that the accused receives fair notice of the charges so that he can prepare an adequate defense and

4

$B-7I$

prevent his twice being placed in jeopardy for the same offense. *Keller*, 425 A.2d at 155.

Bacon contends that the State should not have been allowed to amend the indictment. He bases his argument on *Johnson v. State*, 711 A.2d 18 (Del. 1998), but *Johnson's* narrow holding is properly limited to instances wherein the State wishes to change the nature of the weapon used when such nature is at the heart of the charge. The State had indicted Johnson for possession of a deadly weapon during the commission of a felony, the deadly weapon being a chair. *Id.* at 21. At trial, the evidence suggested that Johnson more likely used a table as the deadly weapon, and the State, at the close of its case-in-chief, sought to amend the charge to include a table. *Id.* The trial court permitted the amendment, but this Court reversed on appeal. *Id.* at 32. In reversing the trial court, the *Johnson* Court relied heavily on *Harley v. State*, 534 A.2d 255 (Del. 1987), strongly suggesting that the *Johnson* holding was limited to weapons offenses in which the State sought to alter the weapon post-indictment to the prejudice of the accused. In *Harley*, this Court ruled that an indictment amendment changing the deadly weapon at issue from "tire iron" to "jack stand" should not have been permitted because the "nature of the instrument used was at the heart of the deadly weapon charge, [and because] the variance and resulting ambiguity could not be corrected by amending the

5

$\beta - 7\lambda$

indictment." *Id.* at 257.

Unlike in *Johnson*, the amendment in the present case was not at the heart of the charge and did not result in ambiguity. In circumstances similar to Bacon's case, this Court very tellingly affirmed a trial court decision allowing the State to amend a robbery indictment by changing the words "United States currency and/or other valuables" to "property." *Roberts v. State*, 1998 WL 231269, at *1 (Del. Supr. May 1, 1998) (Ex. A). Moreover, unlike in *Johnson*, the State in the present case did not amend the charge during the trial but did so before the trial began. *Cf.* 4 WAYNE R. LAFAVE ET AL., CRIMINAL PROCEDURE § 19.5(B) ("[s]ince continuances during trial (particularly a jury trial) are less likely to be granted, the prosecution faces a much more difficult task in overcoming a defense claim of surprise as to an amendment offered during trial").

As explained in *Keller*, the key factor in determining whether to permit an amendment to an indictment is whether it will unfairly prejudice the accused. Bacon does not claim that he was surprised or otherwise unfairly prejudiced by the amendment. In fact, there can be little doubt that he was afforded full notice even before the amendment as to what the State was alleging he did. As such, his preparation for trial should have been entirely unaffected by the amendment. Because no prejudice resulted to the defendant, the amendment was properly permitted. *See, e.g., Brathwaite v. State,* 1999 WL

6

$\beta - 73$

1090581 (Del.) (order) (Ex. B) (finding trial court did not abuse its discretion in allowing amendment of reindictment adding the words "without her consent" to sex offense charge because there was no additional or different charge and no prejudice to the defense); *O'Neill v. State*, 691 A.2d 50, 55 (Del. 1997)

("information can be amended at any time before verdict so long as no additional or different offense is charged and if substantial rights of accused are not prejudiced"); *Robinson v. State*, 600 A.2d 356, 360 (Del. 1991) (upheld trial court's allowance of amended indictment because it did not result in new or different charge, and because original indictment placed defendant "on notice of the essential elements of the charge so that she could adequately prepare her defense"); *State v. Dennis*, 306 A.2d 729, 731 (Del. 1973) (holding State's application to amend information should not have been denied absent a suggestion by the defendant that he was taken by surprise or would be unduly harmed by the change); *State v. Blendt*, 120 A.2d 321, 324 (Del. Super. 1956) (holding that an amendment as the date of the crime, as long as still within the statute of limitations, was only a matter of form and did not violate the defendant's rights).

7

B-74

## CONCLUSION

For the foregoing reasons, the judgment of the Superior Court should be affirmed.

William M. Kelleher
Deputy Attorney General
Department of Justice
State Office Building
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
I.D. # 3961

Date: February 13, 2002

8

$B-75$

710 A.2d 218 (Table)
**Unpublished Disposition**

(Cite as: 710 A.2d 218, 1998 WL 231269 (Del.Supr.))

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.

Kevin J. ROBERTS, Defendant Below. Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.

No. 327,1997.

Submitted April 16, 1998.
Decided May 1, 1998.

Court Below: Superior Court of the State of Delaware, in and for New Castle County: Cr.A. Nos. IN95-10-0655 thru 0657.

Before VEASEY, Chief Justice, WALSH and HARTNETT, Justices.

### ORDER

**1 This 1st day of May 1998, upon consideration of the briefs of the parties, it appears to the Court that:

1. In this direct appeal, Kevin J. Roberts ("Roberts") appeals his conviction in the Superior Court for robbery in the first degree and possession of a deadly weapon during the commission of a felony. The appeal is without merit.

2. Roberts first claims that the Superior Court erred when it permitted the State to amend the indictment during trial. The grand jury indictment alleged that Roberts committed first degree robbery by stating:

KEVIN ROBERTS, on or about the 27th day of September, 1995, in the County of New Castle, State of Delaware, when in the course of committing theft, did threaten the immediate use of force upon Kenneth Wilson with intent to compel the said Kenneth Wilson to deliver up property consisting of U.S. Currency and/or other valuables and when in the course of the commission of the crime, he displayed what appeared to be a deadly weapon, to wit: a knife.

3. Del.Super. Ct. Cr. R. 7(e) provides that the

"court may permit an indictment or an information to be amended at any time before a verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

4. After the first day of trial the Superior Court granted the State's motion to amend the indictment by changing the words "United States currency and/ or other valuables" to "property". The State claimed that evidence showed that the property taken by Roberts was a cigarette lighter.

5. In this case, no new, additional, or different charge was made when the Superior Court permitted the State to amend the first count of the indictment to allege that "property" (a cigarette lighter), rather than "U.S. currency and/or other valuables", was taken from the victim during the alleged robbery. *Robinson v. State,* Del.Supr., 600 A.2d 356 at 359 (1991). Nor did the amendment affect any substantial rights of Roberts because his defense at the trial was a total denial that the incident ever occurred. The Superior Court, therefore, did not err in permitting the amendment of the indictment to conform to the evidence.

6. Roberts also claims that the Supreme Court committed error when it permitted the introduction of evidence that he used marijuana.

7. The Superior Court did not abuse its discretion when it ruled that the evidence that the robber was smoking a "blunt of marijuana" was admissible for the sole purpose of identifying the accused.

8. The Superior Court properly considered the admissibility of the disputed evidence by conducting an analysis pursuant to *Getz v.. State,* Del.Supr., 538 A.2d 726 (1988).

9. D.R.E. 404(b) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

B-76

710 A.2d 218 (Table)

**Page 2**

**(Cite as: 710 A.2d 218, 1998 WL 231269, \*\*2 (Del.Supr.))**

\*\*2 10. A witness, Jeffrey Williams, testified that the victim told him the robber was smoking a "blunt of marijuana" before the robbery and that Williams had seen Roberts smoking a "blunt" of marijuana the preceding day at the same location where the robbery occurred. This information led to Roberts being included in a photographic lineup of six black males. From the lineup the victim identified Roberts as being the person who robbed him.

11. The fact that the robber was utilizing a "blunt of marijuana" was part of the chain of identification that led to the victim identifying him as the person who robbed him. The evidence was therefore admissible under D.R.E. 404(b) to prove identify. *Duton v. State*, Del.Supr., 452 A.2d 127, 145 (1982); *Hanna v. State*, Del.Supr., 591 A.2d 158, 165 (1991).

12. The Superior Court, after properly conducting a *Getz v. State*, Del.Supr., 538 A.2d 158 (1991) analysis pursuant to D.R.E. 4, concluded that the marijuana evidence was not unfairly prejudicial to Roberts under the circumstances. The attorney for Roberts declined a curative instruction during the trial but such an instruction was given in the final jury charge without any defense objection.

13. The Superior Court, therefore, did not abuse its discretion in its ruling under the facts and circumstances.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

(Cite as: 741 A.2d 1025, 1999 WL 1090581 (Del.Supr.))

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.

Kevin BRATHWAITE, Defendant Below,
Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.

No. 549, 1998.

Submitted Sept. 8, 1999.
Decided Oct. 22, 1999.

Court Below: Superior Court of the State of Delaware, in and for New Castle County: Cr.A. Nos. IN96-05-1275 thru 1277, IN96-11-1970 thru 2000, and Cr.ID.No. 9510007098.

Before VEASEY, Chief Justice, WALSH and HARTNETT, Justices.

ORDER

\*\*1 This 22nd day of October 1999, upon consideration of the briefs of the parties, we conclude that this appeal should be affirmed.

1. On August 28, 1998, Appellant, Kevin Brathwaite, was convicted by a jury in the Superior Court of six counts of Unlawful Sexual Intercourse in the First Degree, seven counts of Unlawful Sexual Intercourse in the Third Degree, one count of Unlawful Sexual Penetration in the Third Degree, two counts of Assault in the Third Degree, and one count of Aggravated Act of Intimidation. The jury acquitted him of one count of unlawful sexual penetration in the first degree and one count of unlawful sexual penetration in the third degree. This is his direct appeal.

2. Brathwaite asserts two reasons his convictions should be overruled. First he asserts: "The trial court abused its discretion, denying defendant's motion to sever." Secondly he asserts: "The trial court erred as a matter of law denying defendant's motion to dismiss Counts IV and V of the indictment, both of which failed to state an essential element of the charged offense."

3. Brathwaite first challenges the Superior Court's denial of his pretrial Motion For Severance of Charges. This claim is without merit and we affirm the Superior Court's denial of the motion to sever for the reasons set forth in the Superior Court's Memorandum Opinion dated December 22, 1997. *State v. Brathwaite,* Del. Super ., I.D. No. 9510007098.

4. Brathwaite, prior to trial, moved to dismiss Counts IV and V of the Indictment on the ground that those two counts failed to contain the words "without her consent" when describing the alleged sexual acts. Counts IV and V of the Indictment each charged Mr. Brathwaite with an act of Unlawful Sexual Intercourse Second Degree and alleged that "Kevin Brathwaite, on or about the 18th day of October, 1995, in the County of New Castle, State of Delaware, did intentionally engage in sexual inter-course with Carmen Rodriguez by placing his penis into her vagina and the defendant inflicted physical injury upon the victim on the occasion of the crime." The critical language, "without her consent", is absent in both counts.

5. The State alleged that the words were omitted because of typographical error and that Brathwaite had not been prejudiced because he had adequate knowledge of the charges. The trial court, prior to trial, permitted the State to amend the indictment to include the omitted words.

6. Delaware Superior Court Criminal Rule 7(e) authorizes the trial court to "permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced." Therefore, the trial court did not abuse its discretion in permitting the amendment of the Reindictment where no additional or different offense was charged and there was no prejudice to the defense. *Malloy v. State,* Del.Supr., 462 A.2d 1088 (1983), Cf. *Johnson v. State,* Del.Supr., 711 A.2d 18 (1998).

\*\*2 NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is,

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

B-78

741 A.2d 1025 (Table)
(Cite as: 741 A.2d 1025, 1999 WL 1090581, **2 (Del.Supr.))

Page 5

AFFIRMED.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

B-79

EXHIBIT 5

B-80

SUPREME COURT OF DELAWARE

RECEIVED
APR 1 0 2002
BY
SUPREME COURT BUILDING
55 THE GREEN
P.O. BOX 476
DOVER, DE 19903
#22
(302) 739-4155

CATHY L. HOWARD
*Clerk*

AUDREY F. BACINO
*Assistant Clerk*

DEBORAH L. WEBB
*Chief Deputy Clerk*

April 8, 2002

LISA A. SEMANS
*Senior Court Clerk*

Edmund M. Hillis, Esquire
Assistant Public Defender
820 N. French Street
Wilmington, DE 19801

William M. Kelleher, Esquire
Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

RE: *Devearl Bacon v. State,* No. 369, 2001

Dear Counselors:

The above captioned matter was submitted on March 21, 2002 for consideration on the briefs before a three-Justice panel consisting of Justice Holland, Justice Berger and Justice Steele. The panel has decided that the matter should be scheduled for oral argument before the panel. The above cause has been called for argument on Tuesday, May 7, 2002 at 1:10 p.m. in Dover.

Please complete and return the enclosed oral argument scheduling acknowledgment form within seven days of receipt of this notice. If you have a conflict with the scheduled date of oral argument, please try to arrange for a rescheduling of the conflicting engagement. If exceptional circumstances make it necessary to ask the Court to reschedule the oral argument, please file such application within five days of the date of this letter. The application should fully explain the exceptional circumstances which make a rescheduling necessary.

$B-81$

In accordance with Supreme Court Rule 10, please serve two copies of the executed scheduling acknowledgment form or application for rescheduling, as appropriate, on all other parties to this appeal. Furthermore, if your respective clients wish to attend the oral argument, please advise them to arrive in a timely fashion.

Very truly yours,

Cathy L. Howard

/clh

Enclosures



$B-82$



### PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

EDMUND M. HILLIS
ASSISTANT PUBLIC DEFENDER

TELEPHONE
(302) 577-5122

April 12, 2002

Mr. Deveral Bacon, Inmate
SBI No. 00221242
MPCJF Gander Hill
1301 E 12th Street
Wilmington, DE 19809

RE: Deveral Bacon vs. State of Delaware
No. 369, 2001

Dear Mr. Bacon:

Please find enclosed copies of the correspondence dated April
8, 2002 from the Clerk of the Supreme Court and the Supreme Court
Scheduling Acknowledgment in the above referenced matter.   The
Supreme Court has scheduled this matter for Oral Argument.

Very truly yours,

Edmund M. Hillis
Assistant Public Defender.

EMH/ef
Enclosures

B-83

EXHIBIT 6

B-84



## PUBLIC DEFENDER OF THE STATE OF DELAWARE
ELBERT N. CARVEL STATE OFFICE BUILDING
820 NORTH FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

LAWRENCE M. SULLIVAN
PUBLIC DEFENDER

EDMUND M. HILLIS
ASSISTANT PUBLIC DEFENDER

ANGELO FALASCA
CHIEF DEPUTY

TELEPHONE
(302) 577-5122

July 31, 2002

Mr. Deveral Bacon, Inmate
SBI No. 00221242
Delaware Correctional Center
RD #1 Box 500
Smyrna, DE 19977

RE:  Deveral Bacon vs. State of Delaware
     No. 369, 2001

Dear Mr. Bacon:

Please find enclosed a copy of the Supreme Court's decision in
the above referenced matter. The Court has Affirmed the judgment of
the Superior Court.

Very truly yours,

Edmund M. Hillis
Assistant Public Defender

EMH/ef
Enclosure

B-85

LAWRENCE M. SULLIVAN

PUBLIC DEFENDER OF THE STATE OF DELAWARE
CARVEL STATE OFFICE BUILDING
820 N. FRENCH STREET, THIRD FLOOR
P.O. BOX 8911
WILMINGTON, DELAWARE 19801

15-02-01

"Official Business, Penalty for
Private Use $300."
C500

Mr. Deveral Bacon, Inmate
SBI No. 0021242
Delaware Correctional Center
RD #1 Box 500
Smyrna, DE 19977

RECEIVED

AUG - 2 2002

Delaware Correctional Center

N440

B-86

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| DEVEARL BACON, | § | |
|---|---|---|
| | § | No. 369, 2001 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | . |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | . |
| Plaintiff Below, | § | . |
| Appellee. | § | |

Submitted: May 7, 2002
Decided: July 1, 2002

Before HOLLAND, BERGER and STEELE, Justices.

## O R D E R

This        /        day of July, 2002, on consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of carjacking and multiple counts of robbery first degree, possession of a deadly weapon by a person prohibited, wearing a disguise during the commission of a felony, aggravated menacing, and possession of a firearm during the commission of a felony. He appeals from one robbery conviction, arguing that the Superior Court erred in allowing that count of the indictment to be amended at the beginning of trial.

$ExHIBIT$ $\mathcal{B}$
(21)

$\beta$-87

2) Bacon was charged with 36 counts of robbery and related offenses arising out of a two-day crime spree. The indictment at issue originally charged that Bacon threatened "the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car...." The State moved to amend the indictment to substitute "United States currency" for "car keys and a car." The Superior Court granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be amended as to matters of form, as long as "no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights."[1] The elements of the crime of robbery are, in relevant part: (1) the use or threatened immediate use of force on a person; (2) while committing the crime of theft; (3) in order to overcome the person's resistance to the taking of the property.[2]   The identity of the stolen property is not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge.[3]   Since the amendment was

---

[1] *Robinson v. State*, 600 A.2d 356, 359 (Del. 1991).

[2] 11 *Del. C.* §831.

[3] *Roberts v. State*, 1998 WL 231269 (Del. Supr.).

2

B-88

permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial court's decision granting the motion to amend must be upheld.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:    .

Carolyn Berger
Justice

3

β-89

Westlaw.

801 A.2d 10 (Table)
801 A.2d 10 (Table), 2002 WL 1472287 (Del.Supr.)
Unpublished Disposition
(Cite as: 801 A.2d 10, 2002 WL 1472287 (Del.Supr.))

Page 1

(The decision of the Court is referenced in the Atlantic Reporter in a 'Table of Decisions Without Published Opinions.')

Supreme Court of Delaware.

Devearl BACON, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.

No. 369,2001.

Submitted May 7, 2002.
Decided July 1, 2002.

Defendant was convicted following jury trial in the Superior Court, New Castle County, of robbery and other offenses. Defendant appealed. The Supreme Court, Berger, J., held that amendment of robbery count at beginning of trial, so as to identify the stolen property as "United States currency" rather than "car keys and a car," was permissible amendment as to a matter of form.

Affirmed.

Indictment and Information ⚖══159(2)
210k159(2) Most Cited Cases

Amendment to robbery count of indictment at beginning of trial, which substituted "United States currency" in place of "car keys and a car" to identity the stolen property, was permissible amendment as to a matter of form; identity of stolen property was not material to charged offense so as to create a new, additional, or different charge, and defendant claimed no resulting prejudice. 11 Del.C. § 831.

Court Below: Superior Court of the State of Delaware in and for New Castle County.

Before HOLLAND, BERGER and STEELE. Justices.

ORDER

**1 This 1st day of July, 2002, on consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of

carjacking and multiple counts of robbery first degree, possession of a deadly weapon by a person prohibited, wearing a disguise during the commission of a felony, aggravated menacing, and possession of a firearm during the commission of a felony. He appeals from one robbery conviction, arguing that the Superior Court erred in allowing that count of the indictment to be amended at the beginning of trial.

2) Bacon was charged with 36 counts of robbery and related offenses arising out of a two-day crime spree. The indictment at issue originally charged that Bacon threatened "the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car...." The State moved to amend the indictment to substitute "United States currency" for "car keys and a car." The Superior Court granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be amended as to matters of form, as long as "no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights." [FN1] The elements of the crime of robbery are, in relevant part: (1) the use or threatened immediate use of force on a person; (2) while committing the crime of theft; (3) in order to overcome the person's resistance to the taking of the property. [FN2] The identity of the stolen property is not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge. [FN3] Since the amendment was permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial court's decision granting the motion to amend must be upheld.

FN1. *Robinson v. State*, 600 A.2d 356, 359 (Del.1991).

FN2. 11 *Del. C.* § 831.

FN3. *Roberts v. State*, 1998 WL 231269 (Del.Supr.).

NOW, THEREFORE, IT IS ORDERED that the judgment

B-90

Westlaw.

801 A.2d 10 (Table)                                                                           Page 2
801 A.2d 10 (Table), 2002 WL 1472287 (Del.Supr.)
**Unpublished Disposition**
**(Cite as: 801 A.2d 10, 2002 WL 1472287 (Del.Supr.))**

of the Superior Court be, and the same hereby is,
AFFIRMED.

801 A.2d 10 (Table), 2002 WL 1472287 (Del.Supr.),
Unpublished Disposition

END OF DOCUMENT

Copr. © 2004 West. No Claim to Orig. U.S. Govt. Works.

$B-91$

EXHIBIT 7

Appen. C

C-1

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

PUBLIC DEFENDERS OFFICE)
STATE OF DELAWARE,                    )
                                      )
    V.                                )    CRIM. ACTION NO. ID:0006017660
                                      )
DEVEARL  BACON,                       )
        DEFENDANT.      )    EXPEDITED MOTION REQUEST

DEFENDANT'S MOTION FOR COPIES OF HIS TRIAL TRANSCRIPTS
FROM THE PUBLIC DEFENDERS OFFICE (FOR POSTCONVICTION
RELIEF) AND MOTION TO STAY THE ONE-YEAR DEADLINES
IMPOSED BY THE FEDERAL HABEAS CORPUS ACT BECAUSE
OF THE STATE PUBLIC DEFENDERS ACTIONS OR OMMISSIONS
IN FAILING TO PROVIDE DEFENDANTS TRANSCIPTS TO D.O.C.
LEGAL SERVICES ADMINISTRATOR MIKE LITTLE FOR PHOTO-
COPYING. AFTER TWO ATTEMPTS VIA NOTARIZED FORM TO DO SO.

        NOW COMES, DEVEARL BACON, Defendant, pro-se,
indigent and incarcerated, moves this Honorable Court
for an Order directing the Public Defenders Office, and
Lawrence Sullivan of that Office in New Castle County
to forward all Defendants transcripts to the Delaware
Correctional Center's Legal Services Administrator, Mike
Little, so they can be photocopied and returned to the
Public Defenders Office.
        In support of this motion, Defendant offers the following

        - 1 -

                              C-2

1. Defendant is indigent and cannot afford the cost of either transcription or photocopying. The Office of the Public Defender found Defendant to be indigent at trial level, and the Delaware Supreme Court also found Defendant indigent during his direct appeal filed by the Public Defenders Office. Defendant has been incarcerated since his arrest and has had no way to make any money. If there is any doubt to his indigency it must be made a matter of record so the determination by this Court is reviewable, as such a hearing is necessary. *Stacey v State* Del. Supr. 353 A2d 380.

2. The Delaware Correctional Center has had a long-standing agreement (for decades) that the Public Defenders Office sends the prisoners transcripts to the Legal Administrator of the D.O.C. and the transcripts are copied by the Legal Administrator (after the Direct Appeal has been ruled upon) and then, the transcripts are sent back to the Public Defenders Office.

3. The trial transcripts are necessary for Defendant to proceed with his Postconviction Remedies which are guaranteed by both Delaware and U.S. Constitutions

4. The Federal Habeas Corpus Act has imposed a

One-year deadline on these issues filed in the State Appeals Court. Defendant has a right to gain a meaningful review of all proceedings leading to judgement of conviction _Griffin v. Illinois_, 351 US 12 (1956) as well as an "open an inquiry into the the intrinsic fairness" of those proceedings. _Carter v Illinois_, 329 US 173, 175 (1946). See _Curran v Wolley_, Del Supr. 104 A2d 177, 179 (1962) (applying _Carter_); _Jones v Anderson_, Del Supr. 183 A2d 177, 179 (1962) (applying _Curran_) Defendant's Direct Appeal was Affirmed on: July 1, 2002 . (Attached Exhibit B)

5. Defendant has asked the Public Defenders Office by filing a Notarized form (attached EXHIBIT A) on two SEPARATE occassions, One was sent in September 2002 and another November 2002. Defendant is being denied the evidence he needs to pursue his postconviction remedies and relief. The Public Defenders Office is aware of the policy to furnish a copy of transcripts to inmates by sending the transcripts to the DCC Legal Administrator who makes a copy and the returns the original transcripts to the Public Defenders Office.

WHEREFORE, the Defendant respectfully requests this Courts indulgence to grant his Motion For Transcripts; or alternatively, order the Public Defenders Office to either furnish a copy of all Defendants Trial transcripts

-3-

C-4

Opening and Closing statements, sidebar conferences, Jury
Charge and Sentencing transcripts, or, to forward these
transcripts to the Delaware Correctional Centers, Legal
Services Administrator, Mike Little, 1181 Paddock Rd.
Smyrna, Delaware 19977 for him to copy and return
the originals to the Public Defenders Office.

Respectfully Submitted,

Deveart Bacon, pro-se
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: Feb. 13, 2005

- 4 -    C - 5

(53)

TO:    PUBLIC DEFENDERS OFFICE
       530 S. State Street
       Suite 108
       Dover, Delaware 19901

_Legal Administrator : Mike Little_

I, DEVEARL BACON, do hereby request that the following transcript be sent to the Legal Services Administrator at the Delaware Correctional Center, 1181 Paddock Rd. Smyrna, Delaware 19977:

Date of Trial or Hearing: _June 19, 2001_

Case No: _I.D. NO. 0006017660_

Date of Birth: _11-27-69_

Date: _2/13, 2003_

Deveart Bacon
Delaware Correctional Center
1191 Paddock Rd
Smyrna DE 19977

Sworn to and Subscribed before me this _13th_ day of _February_, 2003

Timothy J. Martin
Notary Public

EXHIBIT A  C-6

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVEARL BACON, | § | |
| | § | No. 369, 2001 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 7, 2002
Decided: July 1, 2002

Before **HOLLAND, BERGER** and **STEELE**, Justices.

### O R D E R

This    /    day of July, 2002, on consideration of the briefs and arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of carjacking and multiple counts of robbery first degree, possession of a deadly weapon by a person prohibited, wearing a disguise during the commission of a felony, aggravated menacing, and possession of a firearm during the commission of a felony. He appeals from one robbery conviction, arguing that the Superior Court erred in allowing that count of the indictment to be amended at the beginning of trial.

$E_{XHIBIT}$ $\emptyset$ $C-7$

2) Bacon was charged with 36 counts of robbery and related offenses arising out of a two-day crime spree. The indictment at issue originally charged that Bacon threatened "the immediate use of force upon Roshelle Conkey with intent to compel the said person to deliver up property consisting of car keys and a car...." The State moved to amend the indictment to substitute "United States currency" for "car keys and a car." The Superior Court granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be amended as to matters of form, as long as "no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights."[1] The elements of the crime of robbery are, in relevant part: (1) the use or threatened immediate use of force on a person; (2) while committing the crime of theft; (3) in order to overcome the person's resistance to the taking of the property.[2] The identity of the stolen property is not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge.[3] Since the amendment was

---

[1]*Robinson v. State*, 600 A.2d 356, 359 (Del. 1991).

[2] 11 *Del. C.* §831.

[3] *Roberts v. State*, 1998 WL 231269 (Del. Supr.).

2



permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial court's decision granting the motion to amend must be upheld.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

BY THE COURT:

Carolyn Berger
Justice

3

C-9

EXHIBIT 8

C-10

SUPERIOR COURT
OF THE
STATE OF DELAWARE

SHARON D. AGNEW
PROTHONOTARY, NEW CASTLE COUNTY

NEW CASTLE COUNTY COURT HOUSE
500 N. KING STREET
LOWER LEVEL 1, SUITE 500
WILMINGTON, DE 19801-3746
(302) 255-0800

JUDGMENT DEPARTMENT
500 N. KING STREET
1ST FLOOR, SUITE 1500
WILMINGTON, DE 19801-3704
(302) 255-0556

TO:      Sean Lugg
         Department of Justice

FROM:    Angela M. Hairston, Criminal Deputy

DATE:    Septemebr 21, 2004

RE:      State of Delaware v. Devearl L. Bacon
         Case I.D.# 0006017660
            Cr.A.  IN00-07-1666R1, 1667R1, 1668R1, 1671R1, 1672R1
                   1673R1,IN00-07-0347R1, 0348R1, 0349R1, 0351R1
                   0352R1, 0356R1, 0357R1, 0358R1

The enclosed motion for postconviction relief was filed by the defendant in

the above captioned case on September 17, 2004. The State is not required to

file a response unless ordered, pursuant to Super.Ct.Crim.R 61(c)(4) and 61

(f)(1).

Thank you very much.

cc:    file

http://courts.state.de.us/superior    $C-11$



IN THE SUPERIOR COURT OF THE STATE OF DELAWARE    *47*

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,                          )
                                            ) Cr. A. No. ___-_____-_____
            V.                              )
                                            ) I.D. No. *000601766.0*
DEVEARL L. BACON,                           ) *IN 00-07-1666 RI, 1667 RI, 1671 RI, 1672*
                                            ) *1673 RI, 0347 RI, 0348 RI 0349 RI*
            Date of Birth *11/27/69*        ) *0351 4, 0352 RI, 0356 RI 0357 RI*
            SBI Number: 221242              ) *0358 RI*
Movant.                                     )

## MOTION FOR POSTCONVICTION RELIEF

1.  The Court imposed Movant's sentence on the following date: July 20, 2001

2.  The Judge who imposed the sentence was: Hon. Susan C. Del Pesco

3.  Offense(s) for which Movant was sentenced and length of sentence(s):
        Case No.'s
    Robbery 1st - IN00070348 - years 4 level 5
    Robbery 1st - IN00070349 - years 4 level 5
    Robbery 1st - IN00070356 - years 4 level 5
    Robbery 1st - IN00070357 - years 4 level 5
    Robbery 1st - IN00070358 - years 4 level 5
    PFDCF -    IN00070347 - years 5 level 5
    PFDCF -    IN00071671 - years 5 level 5
    Carjacking 1st -  IN00071666 - years 2 level 5
    PDWBPP -  IN00071667 - years 1 level 5
    PDWBPP -  IN00071672 - years 1 level 5
    AGGR. Menacing - IN00070352 - 1 year level 3 probation
    AGGR. Menacing - IN00070351 - 1 year level 3 probation
    Disguise -   IN00070354 - 1 year level 3 probation
    Disguise -   IN00071673 - 1 year level 3 probation

                                    Total: 34 years

1

*C-12*

4.   Do you have any sentence(s) to serve other than the sentence(s) imposed because of the judgments(s) under attack of this motion? Yes (✓) No ( )
     If your answer if "Yes", give the following information:

     VOP _____

     Date sentence(s) imposed: 6-23-2000

     Length of sentence(s): 4 years 3 months Level 5

5.   What was the basis for the judgment(s) of conviction?
     ( ) Plea of guilty
     ( ) Plea of guilty without admission of guilt ("Robinson Plea")
     ( ) Plea of nolo contendere
     (✓) Verdict of jury
     ( ) Finding of Judge (non-jury trial)

6.   Judge who accepted plea or presided at trial: Richard S. Gebelein or Susan Del Pesco

7.   Did you take the witness stand and testify? ( )No Trial   ( )Yes   (✓)No

8.   Did you appeal from the judgment of conviction?   (✓)Yes   ( )No
     If your answer if "Yes", give the following information:
            Case Number of Appeal: No. 369. 2001

            Date of Court's final order or opinion: July 1, 2002

9.   Other than a direct appeal from the judgment(s) of conviction, have you filed any other Motions or Petitions seeking relief from the judgment(s) in state or federal court?
     ( )Yes   (✓)No   How many?_____
     If your answer if "Yes", give the following information as to each:
            Nature of proceeding(s):_____

     _____

     Grounds raised:_____

     _____
     Was there an evidentiary hearing?   ( )Yes   ( )No
     Case Number of proceeding(s)?_____
     Date(s) of court's final order(s) or opinions:_____
     Did you appeal the result(s)?:_____

2

C - 13

10.   Give the name of each attorney who represented you at the following stages of the
      proceedings relating to the judgment(s) under attack in this motion:
      At plea of guilty or trial: Edmund M. Hillis

      On Appeal: Edmund M. Hillis

      In any postconviction proceeding: _____

11.   State every ground on which you claim that your rights were violated. If you fail to set
      forth all grounds in this motion, you may be barred from raising additional grounds at a
      later date. You must state facts in support of the ground(s) which you claim. For your
      information, the following is a list of frequently raised grounds for relief (you may also
      raise grounds that are not listed here): double jeopardy, illegal detention, arrest, or search
      and seizure, coerced confession or guilty plea; uninformed waiver of the right to counsel,
      to remain silent, or to speedy trial, denial of the right to confront witnesses, to subpoena
      witnesses, to testify, to ineffective assistance of counsel, suppression of favorable
      evidence, or unfulfilled pleas agreement.

Ground One: Prejudicial Joinder of (prior crimes evidence) PDWPP Offenses Violated Due

Process, and Caused Irreparable Damage Prejudicing Defendant's Right to a Fair Trial. Defense

Counsel was ineffective for failure to identify this issue: Pre-trial, during Trial and raised on Direct

Appeal. The Trial Court should have split these offenses *sua-sponte*, or at least suggested a

pretrial hearing.

NOTE: A "MEMORANDUM OF GROUNDS AND FACTS FOR POSTCONVICTION

RELIEF" IS ATTACHED FOR ALL 6 GROUNDS.

Ground Two: Prejudicial Joinder of Charges Committed at Four Separate and Distinct Times

and Locations Severely Prejudiced Defendant's Right to a Fair Trial. Defense Counsel was

ineffective for failure to identify this issue: Pre-trial, during Trial and on Direct Appeal. Trial

Counsel *sua-sponte* should have at least suggested a hearing regarding the joinder of all these

offenses, pretrial.

Ground Three: Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts, or

3

$C-14$

Request a Hearing.  This evidence caused irreparable prejudice.

**Ground Four:** In Court Identification of Defendant by State Witness Dawn Smith Violated

Defendant's Right to a Fair Trial, when there was no "independent origin" for this "in court"

identification.  Defense counsel was ineffective for his failure to raise this issue on Direct Appeal.

**Ground Five:** Ineffective Assistance of Counsel For Failure to Raise the Amendment to

Defendants Indictment Counsel Argued Prior to Trial.  Defendant is prejudiced because he would

have had a more favorable review on Direct Appeal.

**Ground Six:** Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify

and Raise this Discovery Violation concerning a videotape made of Defendant's statement at

police station, either during trial or on Direct Appeal.

If any of the grounds listed above were not previously raised, state briefly what grounds were not raised, and give your answer(s) for not doing so: Grounds 1, 2, 3, 4, 5, 6, these Grounds were not raised because Defense Counsel Edmund M. Hillis failed to identify these errors both at pretrial, during trial and failed to identify them on direct appeal after a review of the transcripts.

    Wherefore, Movant asks that the Court grant him all relief to which he may be entitled in this proceeding.

                                                    _____
                                                    Signature of Attorney (if any)

    I declare the truth of the above under penalty of perjury.

September __/__, 2004                          /s/ Devearl L. Bacon
    Date Signed                                Devearl L. Bacon
                                               Pro-Se
                                               (Signature of Movant)

$C-15$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,                )
                                  )     C.A. No. _____
            V.                    )
                                  )     I.D. No. _____
DEVEARL L. BACON,                 )
                                  )
            MOVANT.               )

### MEMORANDUM OF GROUNDS AND FACTS
### FOR POSTCONVICTION RELIEF

**Ground One**: Prejudicial Joinder of (prior crimes evidence) PDWPP Offenses Violated Due Process, and Caused Irreparable Damage Prejudicing Defendant's Right to a Fair Trial.

**Ground Two**: Prejudicial Joinder of Charges Committed at Four Separate and Distinct Times and Locations Severely Prejudiced Defendant's Right to a Fair Trial.

**Ground Three**: Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts, or Request a Hearing (404) under *DeShields v. State. Del. Supr. 706 A.2d 502.*

**Ground Four**: In Court Identification of Defendant by State Witness Dawn Smith Violated Defendant's Right to a Fair Trial, when there was no "independent origin" for this "in court" identification. Defense counsel was ineffective for his failure to raise this issue on Direct Appeal.

**Ground Five**: Ineffective Assistance of Counsel For Failure to Raise the Amendment to Defendants Indictment Counsel Argued Prior to Trial. Defendant is prejudiced because he would have had a more favorable review on Direct Appeal.

**Ground Six**: Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify and Raise this *Super.Ct. Crim.Rule 16(a)(d)* Discovery Violation concerning a videotape made of Defendant's statement at police station, either during trial or on Direct Appeal.

                                        /s/ Devearl L. Bacon
                                        DEVEARL L. BACON
                                        Pro-Se

Dated: September /4/, 2004

-1-

C-16

Ground One: A reversible error was committed by trial court and
defense counsel for not objecting when the trial court permitted
the joinder of the three (3) counts of Possession of Deadly
Weapon by a Person Prohibited (hereafter known as "PDWPP") to the
other 15 counts.  These charges require the disclosure of a
defendant's prior convictions as a necessary element of the
offense.  Charges that require disclosure of a defendant's prior
criminal record such as PDWPP or escape after convictions require
separate trials because of "inherent prejudice."  Consideration
of judicial economy does not offset prejudicial effect.  This was
a prejudicial joinder and it is well-established procedure to
have separate trials regarding these offenses.  This is a clear
violation of defendant's Due Process Rights as guaranteed under
the 6th and 14th Amendments of the U.S. Constitution.  Trial
counsel was ineffective for failure to move for severance before
trial, object at trial, and identify issue or raise on direct
appeal.

Facts: The PDWPP counts were joined to the other fifteen counts
derived from three separate and distinct sets of charges.  The
evidence presented to support the elements of these PDWPPs is
necessary by conveying to the jury the defendant's prior
convictions (or there is no evidence to support a PDWPP charge)
and criminal record and status as a prisoner.  Past convictions
of defendant exposed to the jury is "inherently prejudicial."

C-19

None of these three charges has a direct relationship to the
other offenses and can be proven without reference to the
remaining offenses.  The evidence admissible in these PDWPP
counts is clearly not admissible on any of the other counts, and
the effect of this evidence prejudiced the defendant unfairly.
The defendant's right to a fair and impartial trial, and proper
determination of his guilt or innocence of each crime charged
required that they should have tried this set of PDWPP charges
separately and apart from the distinct and independent charges of
the other counts.  This was a close case to begin with.  The
evidence of these crimes probably heavily influenced the jurors
to imply a general criminal disposition of the defendant, and
probably had been a determining factor finding guilt on "most" of
the other charges, based also on the "cumulative effect."  This
was a reversible error.

Ground Two: A reversible error was committed by trial court and
defense counsel for not objecting in allowing the State to
present a joint trial containing eighteen counts stemming from
four separate locations.  This permitted the jury to cumulate the
evidence, and was free to infer a general criminal disposition of
the defendant.  As a result, the defendant was convicted of most
of the counts charged.  The cumulations of the separate incidents
of Star Liquors, (two incidents) the 7-Eleven Store and at a
vehicle in Wilmington in which the PDWPP charges stemmed violated

-3-

C - 20

defendant's 6ᵗʰ, and 14th Amendments of the U.S. Constitution.
Trial counsel was ineffective for failure to move for severance
of these charges, failing to object at trial, failure to identify
and raise these claims on direct appeal.

Facts: All eighteen counts levied against defendant were joined
in a joint trial. Defendant was inevitably prejudiced and this
prevented him from receiving a fair trial. The danger arising
from the cumulative effect of the evidence of the other charges
on the minds of the jurors was too great to tolerate a not guilty
finding on all these charges.

There was nothing contained in the indictments from the Star
Liquors incident that are in any way connected to the 7-Eleven
store incident as part of a common scheme or plan. Nothing in
the 7-Eleven indictments is alleged to be part of a common scheme
or plan relating to Star Liquors incident. Nothing in the three
PDWPPs is contained regarding either incident. Consequently, the
defendant has a right to a fair and impartial trial and proper
determination of guilt and innocence of each crime charged
required that the sets of charges concerning Star Liquors
incident including the separate car jacking incident. These
should have been tried separately, and apart from the distinct,
and independent charges based on the second Star Liquors
attempted robbery, the independent 7-Eleven Store offenses, and
the independent three PDWPPs counts. Each set of charges arose

-4-

C-21

out of a separate occurrence.  There was not a positive accurate
identification made of the perpetrator(s) at any robbery
location.  In fact, the State offered car jacking evidence at the
Star Liquors, to prove existence of that (car jacking) crime by
using the 7-Eleven store evidence.  This was error because it
presupposes that the same perpetrator kept the proceeds of that
crime, the car, and used it in an unrelated crime a day later.
This is cumulative evidence.  The witness the state offered had
many different descriptions as to the weight, height and even
skin tone of the perpetrator(s).  The crucial factor here to be
considered is whether evidence of one crime would be admissible
in the trial of another.  The cumulative effect of all the
evidence offered to prove these eighteen counts had a dramatic
effect upon defendant's guilt or innocence of the 7-Eleven
charges, the Star Liquors charges concerning the first incident
and car jacking.  The evidence used for the three PDWPPs must
have had a dramatic influence upon defendant's guilt or innocence
of both 7-Eleven and the Star Liquors incidents.
Ground Three: Defense Counsel was ineffective when he failed to
object to State's introduction of evidence of prior bad acts in
violation of *D.R.E. 401 through 404(a) and (b)*.  This evidence
was introduced without DeShields[1] analysis to determine
relevance, to balance the prejudcical effects, and/or any

---

[1] *DeShields v. State, Del. Supr. 706 A.2d 502 (1998)*

C-22

instruction to the jury as to how to use this evidence, and
"which case" to use it in.  This evidence caused irreparable
injury and prejudiced defendant's case particularly when
defendant purposely choose not to take the witness stand to keep
any prior bad acts, crimes or prior incarceration from the jury.
This violated Defendant's Due Process right guaranteed under the
6th and the 14th Amendment of the U.S. Constitution.

Facts: State witnesses introduced evidence, either direct or
circumstantial evidence that defendant was a convicted prisoner.
The first evidence is that of his escape after conviction from
the Prison House Plummer Center; the second, the fact he was held
as a prisoner at the Plummer Center; the third, the detective
described defendant's demeanor as "an attitude" clearly a "bad
act," circumstantial evidence of prior experience as a criminal.
This would also include the statement regarding the 25-year
defendant though he might receive.  As this evidence was
introduced without any memorial, no other witnesses other than
one detective, and the failure to provide defense with the
videotape, legally the best evidence of this interrogation.
Because of the closeness of this case, a shadow is cast over the
reliability of this evidence.  Especially when, if provided to
defense, these prior bad acts and crimes could have been kept
from the jury pursuant to lawful court procedure rules, and kept
the integrity of this evidence intact.

-6-

C-23

Ground Four: State's witness, Dawn Smith's "in court identification" of Defendant violated his Due Process Rights under the 14th Amendment of the U.S. Constitution. Failure of trial counsel to raise this on appeal is ineffective assistance of counsel, in violation of the 6th Amendment of the U.S. Constitution.

Facts: The State's star witness, Dawn Smith's, in court identification irreparably prejudiced defendant under all the circumstances. There "was no independent origin" for an in court identification because; (a) this witness had never seen the defendant before the incident; (b) this witness had no opportunity for an accurate identification because the perpetrator was wearing "a mask" the entire time of her observation; (c) the witness "failed to identify the defendant" in a photo array right after the incident in an array of photos that included the defendant; (d) no other witnesses made a positive accurate identification of defendant; (e) there were no finger prints found "at the scene of this incident[2]" of defendant; (f) each witness at the Star Liquors scene gave "different" descriptions of the perpetrator; (g) this case was a close case and depended on an accurate identification of the perpetrator. Reliability is the linchpin in determining the admissibility of identification testimony, the witness receiving

---

[2]Nor were fingerprints of Defendant found at any of the robbery scenes for that matter.

-7-

C-24

descriptions from the investigating detectives are not reliable
because it is not an "independent origin."

**AMENDMENT ISSUE**

Ground Five: The Amendment of Defendants Indictment of Robbery of
"car keys and car" to an (undetermined amount) of "U.S. Currency"
effectively altered the substance of one element of the offense,
because the defendant was not "fully informed" of the nature of
the charges as guaranteed by *Art. 1 sec. 7 of Del. Constitution*
and the *6th Amendment of the U.S. Constitution*. Defense counsel
was ineffective for failure to raise this issue on direct appeal.
Facts: *Superior Court Criminal Rules 7(c)* requires that the
offense charged shall be "precise" and "definite, certain and
unambiguous." The nature and description of an instrument taken
is an essential element of Robbery I. The prejudice results here
because, U.S. Currency was taken from three separate businesses
and nine individuals over a period of a couple days. Defendant
was charged with an "open" or "general" indictment. The jury was
left with the opportunity to convict defendant whether he had
"one cent" or "one thousand dollars." There was not even a
description of denominations. This is reversible error, because
any amount of U.S. Currency found on defendant could be found a
fruit of the accusation, even if the defendant had his own pocket
change. This would also allow defendant to be convicted of the
proceeds of another robbery in the other remaining counts, and/or

-8-

C-25

defendant's very own pocket change.

Ground Six: The State's failure to disclose the videotape made of defendant's police station statement is a violation of *Superior Court Criminal Rule 16(a)(d)*, and 14th Amendment of the U.S. *Constitution* Due Process, especially when, defendant made a discovery request.  Trial counsel was ineffective for failure to identify this issue and raise it on appeal, this violated his 6th *Amendment to the U.S. Constitution* rights as well.

Facts: Detectives videotaped the defendant's oral interview with arresting officers.  Defendant had a right to assume that everything demanded was under *Rule 16* discovery request.  The videotape is the best evidence of defendant's statement.  The defendant was prejudiced thereby because a detective testified without any memorial or sanctioned whatsoever, as to the defendant's "demeanor."  Failure to provide the videotape also allowed testifying detective to bring in evidence the defendant was just released from prison house Plummer Center, evidence that under *D.R.E. 401 through 404* et. Seq. is not relevant, and is highly prejudicial.  A detective made other claims that were highly prejudicial to defendant including escape after conviction from Plummer Center; defendant hadn't slept in three days, and he believed he would do 25 years.  Specifically, the unreliability of detectives testimony is at issue considering the complete lack of any handwritten notes, and there were no other police

C-26

witnesses that witnessed these alleged statements made by defendant.  When a discovery violation prejudices substantial rights of a defendant, his conviction must be reversed.  Had the defendant been provided the videotape he could have had access to the "best evidence" of his statement and made appropriate pretrial suppressions and exclusions IN LIMINE of the evidence of prior bad acts, and the jury would be able to properly weight and balance defendant's statement in a fair light.  This is favorable evidence under *Brady v. Maryland*.

-10-

C-27

EXHIBIT 9

C-28

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | : |
| | : |
| | : I.D. No. 0006017660 |
| | : |
| DEVEARL BACON, | : |
| | : |
| Defendant. | |

## STATE'S RESPONSE TO DEFENDANT'S MOTION FOR POST CONVICTION RELIEF PURSUANT TO SUPERIOR COURT CRIMINAL RULE 61

By motion dated September 14, 2004, defendant moves this Court for Postconviction Relief. The State respectfully offers this response in opposition to defendant's claim for relief.

### PROCEDURAL HISTORY

_Defendant, Devearl Bacon, was charged by indictment with twenty-four criminal offenses alleging a pattern of criminal behavior committed between June 21, 2000 and June 22, 2000. Counts I through V charged crimes committed at a Gulf Station located within the City of Wilmington on June 21, 2000. Counts VI through XIV charged crimes committed at the Star Liquor Store on New Castle Avenue on June 21, 2000. Counts XV through XVII charged crimes committed at the same Star Liquor Store on June 22, 2000. Finally, Counts XIX through XIV charged crimes committed at the 7-11 on DuPont Highway. Due to the similarity of offenses as well as the fact that the offenses comprised a common scheme or plan occurring over a two day time period, the offenses were joined at indictment and remained joined for trial.[1]

---

[1] Super. Ct. Crim. Rule 8.

$C - 29$

Trial commenced on June 19, 2001. Prior to trial, the State moved to amend Count XX alleging Robbery in the First Degree. After consideration of both parties' positions, the Court granted the State's request and the indictment was amended to allege the theft of United States Currency in lieu of car keys and a car. Additionally, and again prior to trial, the State and defense stipulated to the fact that defendant was prohibited from owning or possessing firearms. Language referring to defendant's prior criminal history was then stricken from the indictment and counsel were directed to refrain from discussing prior convictions in this context. Finally, the State, *via nolle prosequi*, withdrew Counts I through V due to issues involving witnesses and evidence.

On June 22, 2001, following a three day jury trial, Defendant was convicted of five counts of Robbery in the First Degree,[2] one count of Carjacking in the First Degree,[3] two counts of Aggravated Menacing,[4] two counts of Possession of a Firearm During the Commission of a Felony,[5] two counts of Possession of a Firearm by a Prohibited Person,[6] and two counts of Wearing a Disguised During the Commission of a Felony.[7] Defendant was acquitted of one count of Attempted Robbery in the First Degree, one count of Possession of a Firearm During the Commission of a Felony, and one count of Wearing a Disguise During the Commission of a Felony; these offenses related to the June 22, 2000 attempted robbery of the Star Liquor store.

Defendant appealed his conviction of the amended count of Robbery First Degree. By Order dated July 1, 2002, the Delaware Supreme Court Affirmed defendant's conviction. *Devearl Bacon v. State*, No. 369, 2002, Berger, J. (July 1, 2002) (copy attached hereto).

---

[2] 11 *Del. C.* § 832.
[3] 11 *Del. C.* § 836.
[4] 11 *Del. C.* § 602.
[5] 11 *Del. C.* § 1447A.
[6] 11 *Del. C.* § 1448.
[7] 11 *Del. C.* § 1239.

2

$C-30$

Defendant now challenges his conviction by postconviction motion pursuant to Superior Court Criminal Rule 61. For the reasons stated herein, the State respectfully requests that Defendant's motion be denied.

## FACTS

On June 21, 2000, an individual entered the Star Liquor Store on New Castle Avenue wearing a dark jacket with his hood pulled over his head and a bandana covering his face. The perpetrator displayed a handgun and demanded money from the clerk. To emphasize his demand he fired the gun, forcing the customers to dive to the floor and the clerk to relinquish the till. After receiving the money, he demanded car keys from a customer, took the customer's car, and fled the scene of the crime.

Delaware State Police officers responded to investigate. Two shell casings and bullet fragments ("slugs") were recovered from within the store. This evidence was consistent with the firing of a semi-automatic weapon within the store. Additionally, the carjacking victim provided police with a description of his car as well as the license plate number: a silver/gray 1997 Ford Escort bearing Delaware Registration 999159. Witnesses also provided a physical description of the perpetrator as a shorter black male with a slight build.

On June 22, 2000 a second robbery was attempted at the Star Liquor Store. Again, an armed, disguised perpetrator demanded money from the store clerk. This robbery was aborted when the clerk, knowing she was protected by bulletproof glass, refused her assailants demands. In fact, she attempted to secure a Polaroid picture of the defendant; however, he escaped prior to being photographed. No physical evidence was recovered from this incident. The robber fled in a small gray car. This individual, too, was described as a smaller sized black male.

$C-31$

3

On June 22, 2000, at approximately 11:30 p.m., and individual entered the 7-11 located on North DuPont Highway wearing a jacket with the hood pulled over his head and a bandana covering his face. He displayed a gun to the store clerks and demanded money; the clerks complied. This incident was captured on surveillance video. Defendant was then seen fleeing the 7-11 store in a small silver vehicle bearing Delaware Registration 999159. Police responded, processed the scene and secured the store surveillance in evidence. Again, the perpetrator was described as a smaller black male; this description was corroborated by surveillance video.

On June 23, 2000 at approximately 1:55 a.m., probation officers familiar with the above incidents observed a vehicle, bearing Delaware registration 999159, disabled in the vicinity of 17th and Spruce Streets in the city of Wilmington. The three individuals, the defendant, Devearl Bacon, and two others working on the car were detained and the Delaware State Police were contacted. Devearl Bacon was identified as being approximately 5 feet, 7 inches tall weighing 140 pounds. The other individuals were six feet or taller.

The gray/sliver ford escort was processed by the Delaware State Police Evidence Detection Unit. A hooded jacket, money, and a .22 caliber handgun were found within the vehicle. Moreover, fingerprints were found at various locations within the vehicle, including the driver's side compartment and rear view mirror.

The .22 caliber handgun and the ballistics evidence secured from the June 21, 2000 Star Liquor robbery were submitted to the Bureau of Alcohol, Tobacco and Firearms ("ATF") for comparison by a ballistics expert. The expert confirmed that the shots fired during the June 21, 2000 robbery were fired from the gun in defendant's possession during the early morning hours of June 23, 2000.

$\mathcal{C}-32$

4

The fingerprints were also submitted for expert comparison. This analysis revealed that defendant's prints were located within the left side (driver's side) of the driver's compartment and on the rearview mirror.

## ARGUMENT

Defendant, in his pleading, raises six attacks to his conviction. The State submits that defendant's claims are procedurally barred and, therefore, requests that his motion be dismissed. Additionally, within his six specific challenges to the trial proceedings, defendant challenges the effectiveness of his trial counsel; the State submits that counsel's representation far exceeded the minimum Constitutional threshold.

Defendant was tried, convicted and appealed his conviction. Defendant failed to raise grounds one through four and ground six on direct appeal; ground five was raised on direct appeal and this Court's ruling was affirmed. As to the claims not raised at trial or on appeal, Defendant "has failed to show (1) 'some external impediment' which prevented him from raising the claim *and* (2) a 'substantial likelihood' that if the issue had been raised on appeal, the outcome would have been different." *State v. Price*, 2000 WL 303454, Cooch, J. (Feb. 25, 200) (emphasis added) (copy included). For these reasons, the State respectfully requests that defendant's request for relief be summarily dismissed. *Id.*

"Postconviction relief is a collateral remedy which provides an avenue for upsetting judgments that otherwise have become final." *Flamer v. State*, 585 A.2d 736, 745 (Del. 1990). The Court "must apply the rules governing procedural requirements before giving consideration to the underlying claims for postconviction relief." *Id.* Superior Court Criminal Rule 61(i)(3) provides that "[a]ny ground for relief that was not asserted in the proceedings leading to the judgment of conviction, as required by the rules of this court, is thereafter barred, unless the

$C - 33$

movant shows (A) cause for relief from the procedural defaults *and* (B) prejudice from violation of the movant's rights." Super. Ct. Crim. R. 61(i)(3) (emphasis added).

Defendant may attempt to employ Rule 61(i)(5) to circumvent the procedural restrictions set forth in Rule 61(i).[3] However, this Court did possess jurisdiction to entertain defendant's arguments. Super Ct. Crim. R. 61(i)(5). Additionally, Defendant fails to set forth a "miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.* The fundamental fairness exception of Rule 61(i)(5) is extremely narrow and is only applied in limited circumstances such as when the right relied upon has been recognized for the first time after direct appeal. *Maxion v. State,* 686 A.2d 148, 150 (Del. 1996); *Bailey v. State,* 588 A.2d 1121, 1130 (Del. 1991); *Younger v. State,* 580 A.2d 552, 555 (Del. 1990). Defendant's contentions fail to set forth a right which has been recognized for the first time after the conclusion of direct appeal; therefore, there is no basis for the application of the extremely narrow fundamental fairness exception of Rule 61(i)(5). *Id.*.

To raise these claims "for the first time in his present petition for postconviction relief, [defendant] is required to show 'cause' for relief from his failure to present the issue on direct appeal *and* 'actual prejudice' resulting from the alleged error." *Flamer,* 585 A.2d at 747. It is important to note that in performing this analysis, the Court need not consider prejudice if cause is not established. *See id.* at 747-748. If, however, the Court addresses the prejudice "prong," Defendant must establish "that there was a 'substantial likelihood' that, if he had pressed the . . .

---

[3]Rule 61(i)(5) states:

> The bars to relief in paragraphs (1), (2), and (3) of this subdivision shall not apply to a claim that the court lacked jurisdiction or to a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction.

C - 34

claim during his appeal, the outcome would have been different." *Id.* at 748. Defendant must show that "if he had asserted the challenge, 'he might not have been convicted.'" *Id.* at 748 (citing *Reed v. Ross,* 468 U.S. 1, 12 (1984). To be sure, the strength of the State's case is a factor to noteworthy consideration in this assessment.

For the foregoing reasons, the State respectfully requests that defendant's motion be denied as claims one through four and claim six were not raised below and claim five was raised and affirmed on appeal. Defendant has set forth no external impediment which prevented him from raising these claims, and Defendant's claims fail to fall within the extremely narrow fundamental fairness exception to Rule 61 procedural dismissal.

While the State contends that defendant's claims are procedurally barred, the State further submits that, should the Court consider the substance of defendant's claims, the allegations are without merit. Defendant's first claim is that "reversible error was committed by [the] trial court and defense counsel for not objecting when the trial court permitted the joinder of the three (3) counts of Possession of Deadly Weapon by a Person Prohibited . . to the other 15 counts." Defendant supports this claim by arguing that disclosure of his prior record would be required to prove his prohibited status and that the introduction of his prior convictions may cause prejudice.

In asserting this claim, defendant fails to recognize that defense counsel secured a stipulation from the State which precluded the State from discussing defendant's prior convictions. Rather, defendant conceded his status as prohibited to own or possess firearms thereby shielding the jury from his criminal record. Furthermore, the Court appropriately instructed the jury on the permissible use of the proffered stipulation, noting that "in this case the parties have stipulated to certain facts. A stipulation that is in evidence is an agreement by both

C-35

7

sides that those facts giving rise to the stipulation require no further proof. You must accept these facts as true for the purposes of this trial." (Jury Instructions at p. 45).

Moreover, defendant did not object to the joinder of offenses at any point prior to or during the trial. Rather, defendant was satisfied that the stipulation appropriately shielded the jury from his prior convictions. Rule 8 of the Superior Court Criminal Rules provides:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Super. Ct. Crim. R. 8(a). Defendant, by virtue of his prior convictions, achieved the status of a person prohibited from possessing a firearm. As a firearm was used in the commission of the robberies, defendant was charged with Possession of a Firearm by a Person Prohibited. Clearly, the possession of the firearm was part of the same transaction.

The Delaware Supreme Court has approved the joinder of person prohibited to the underlying offenses. *Sexton v. State*, 397 A.2d 540 (Del. 1979) *reversed on other grounds Hughes v. State*, 437 A.2d 559 (Del. 1981) "Joinder of offenses, 'is designed to promote judicial economy and efficiency, provided that the realization of those objectives is consistent with the rights of the accused' . . . . the purposes of judicial economy and efficiency out-weigh defendant's unsubstantiated claims of prejudice. Joinder was proper; therefore, defendant's contention is without merit." *Sexton,* 397 A.2d at 545, *citing Mayer v. State,* 320 A.2d 713, 717 (Del. 1974); *Bates v. State,* 386 A.2d 1139 (Del. 1978). Defendant failed to raise this claim below, and, more importantly, as the stipulation removed any potential prejudice, the State submits that defendant's claim is without merit.

8

C - 36

Defendant next extends his challenge to the indictment, contending that "reversible error was committed by [the] trial court and defense counsel for not objecting in allowing the State to present a joint trial containing eighteen counts stemming from four separate locations." Defendant argues that he was prejudiced by the potential cumulative impact of the charges and further contends that the facts of the various offenses are not supportive of joinder. Again, defendant failed to challenge the joinder prior to or during trial.

As noted above, Superior Court Criminal Rule 8 provides for the joinder of offenses of the same or similar character or offenses constituting parts of a common scheme or plan. Super. Ct. Crim. R. 8(a). In the present case, defendant was charged by single indictment with multiple robberies committed within a two day time period. An individual using a gun, wearing a disguise, matching a consistent physical description, driving the same car stolen from the first offense, committed the robberies. The State submits that the focused time frame and the similarity of offenses and offender descriptions establish the charged crimes as constituting a common scheme or plan. *See generally, Id.*

The Delaware Supreme Court recently considered the joinder of offenses in a similar situation. In *Coffield v. State*, the Court assessed the propriety of joinder of offenses where "[o]n the morning of May 3, 1999, three businesses located in the City of Wilmington were robbed at gunpoint. In each instance, witnesses described the suspect as a stocky black man wearing a dark blue stocking cap, a dark blue hooded sweatshirt, sunglasses, and displaying a small silver handgun." *Coffield v. State*, 794 A.2d 588 at 590-91 (Del. 2002). The Court finding defendant's challenge to the joinder of offenses "without merit," concluded "that where, as is the case here, the offenses are of the same general character, involve a similar course of conduct, and have occurred within a relatively brief span of time, it is proper to try the offenses together.

9                  C-37

Although Rule 14 authorizes the severance of offenses where the joinder will prejudice either party, any decision to sever is within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of actual prejudice by the defendant. Here, [defendant] has offered only unsubstantiated speculation about prejudice. His assertion is clearly insufficient under the standard we articulated in *Bates v. State*." *Id.* at 595 (citations omitted).

To be sure, despite the joinder of offenses, the jury in this case properly considered the evidence in support of each incident. This careful consideration is evidenced by defendant's acquittal of the June 22, 2000 attempted robbery at the Star Liquor store. Thus, defendant's proffered prejudice was not realized in this case. The State submits that, pursuant to Delaware law, joinder was appropriate; moreover, defendant suffered no prejudice. For this reason, the State respectfully requests that this claim be denied.

Defendant's third claim is that "[d]efense counsel was ineffective when he failed to object to [the] State's introduction of evidence of prior bad acts in violation of D.R.E. 401 through 404(a) and (b)." Defendant argues that the jury was presented evidence of his prior status as a prisoner and his escape from custody. To be sure, such evidence was not elicited at trial. Rather, Detective Spence testified that the defendant told him that he had just "gotten out" of the Plummer Center. This fact was offered without any explanation as to the connection of the Plummer Center to the Department of Correction. No testimony was elicited as to the character of the accused nor was any referenced made to "prior bad acts" requiring the Court to engage in an evidentiary assessment. *See generally, Getz v. State*, 538 A.2d 726 (Del. 1988). As no "bad acts" evidence was presented, defendant's proposed analysis was not required.

Defendant next claims that a witness' in court identification violated his due process rights warranting reversal. To be sure, no objection was made at trial to the description and/or

10        C - 38

identification of the defendant by any witness. In fact, counsel for defendant vigorously argued the subtle inconsistencies in witness' descriptions. The in-court identification was not improperly prompted and not based upon prior suggestion. In-court identifications, when based upon a witness recollection of the crime are admissible. *See generally, Parson v. State*, 571 A.2d 787 (Del. 1990). As no timely objection was made and as the witness' recollection was not prompted by improper suggestion, defendant's claim should be denied.

Defendant next challenges the pre-trial amendment of his indictment. As to this issue, defense counsel objected to the State's request for amendment. After consideration of both parties' positions, the Court ultimately granted the State's request over defendant's objection. Defendant, thereafter, timely appealed his conviction of this offense. The Delaware Supreme Court then affirmed defendant's conviction, noting "[i]t is well settled in Delaware that indictments may be amended as to matters of form, as long as 'no new, additional, or different charge is made thereby and the accused will not suffer prejudice to substantial rights.'" *Bacon v. State*, No. 369, 2001 at *2 (Del. 2001) *citing Robinson v. State*, 600 A.2d 356, 359 (Del. 1991). "Since the amendment was permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial Court's granting the motion to amend must be upheld." *Id* at *2-3. Defendant's claim has been ruled upon and is clearly contrary to extant law.

Defendant's final claim is that the State failed to disclose a recorded statement in violation of Superior Court Criminal Rule 16. This claim is without merit. The State provided defense counsel with all discoverable material in a timely fashion. To be sure, the State's initial discovery response indicated the existence of a recorded statement. In fact, Wilmington Police attempted to interview defendant in conjunction with a robbery committed at the Gulf Station (dismissed counts I through V.) A recording of defendant's refusal to give a statement was made

11                    $C-39$

and subsequently taped over by Wilmington Police Detectives. This information, specifically the over-writing of the tape, was communicated to defense counsel.

The subject of defendant's challenge, however, is not his refusal to be interviewed by Wilmington Police, but rather his post *Miranda* statements to Detective Spence during his transport from 17th and Pine Streets. Defendant's comments to Detective Spence were neither audio nor video recorded; Detective Spence did document defendant's communications in a police report. This report was provided to defense counsel pursuant to Superior Court Rule 16

Within his claims, defendant alleges that defense counsel provided ineffective assistance. This "ineffective assistance of counsel contention must be evaluated pursuant to the standard set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984)." *Flamer v. State*, 585 A.2d 736, 753 (Del. 1990). To succeed, Defendant "'must show that counsel's representation fell below an objective standard of reasonableness,' and 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result to the proceeding would have been different.'" *Id.* (citing *Albury v. State*, 551 A.2d 53, 58 (Del. 1988)).

"[R]eview of counsel's representation is subject to a strong presumption that the representation was professionally reasonable." *Flamer*, 585 A.2d 753. If it is found that counsel acted outside the scope of professionally reasonable representation, the deviation must be of such a nature that there is a reasonable probability that the results would have been different. *Id.*

To survive the first prong of the *Strickland* inquiry - whether counsel's performance falls outside the wide range of professionally reasonable conduct - "[Defendant] must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound [] strategy.'" *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 100-101 (1955)); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996); *Flamer*, 585 A.2d at 753-754. While

12          $C - 40$

not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Wright*, 671 A.2d at 1356; *Flamer*, 585 A.2d at 753-754. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689-690. Moreover, evidence of "[i]solated poor strategy, inexperience or bad tactics do[es] not necessarily amount to ineffectiveness of counsel." *Bellmore v. State*, 602 N.E. 2d 111, 123 (Ind. 1992) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Nor does "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it[,] [ ] constitute" ineffective performance. *Murray v. Carrier*, 477 U.S. 478, 486-487 (1986).

In evaluating trial counsel's performance, this Court should "eliminate the distorting effects of hindsight" and "evaluate the conduct from counsel's perspective at the time." *Wright*, 671 A.2d at 1356-1357; *Strickland*, 466 U.S. at 689. A post-conviction court simply "cannot require defense counsel to choose one particular defense strategy over any other strategy that falls within the 'wide range of professional competent assistance.'" *Oliver v. Wainwright*, 795 F.2d 1524, 1531 (11th Cir. 1987) (quoting *Strickland*, 466 U.S. at 688-689). "Choices of trial strategies and tactics are insufficient to establish ineffective representation even though others might have made different choices and such choices may be subject to criticism." *Tyra v. State*, 574 N.E.2d 918, 924 (Ind. Ct. App. 1991) (quoting *Cochran v. State*, 445 N.E.2d 974 (Ind. 1983)). The "effectiveness evaluation" is set forth as follows:

> [A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The

$C-41$

> court must then determine whether, in light of all the
> circumstances, the identified acts or omissions were outside the
> wide range of professionally competent assistance. In making that
> determination, the court should keep in mind that counsel's
> function, as elaborated in prevailing professional norms, is to make
> the adversarial testing process work in the particular case. At the
> same time, the court should recognize that counsel is strongly
> presumed to have rendered adequate assistance and made all
> decisions in the exercise of reasonable professional judgment.

*Strickland*, 466 U.S. at 690.

Furthermore, in the effective assistance analysis it is not always necessary to look at the reasonableness of counsel's actions first. As the defendant must prove all factors in the *Strickland* inquiry, this Court may dispose of a claim by first determining whether there was sufficient prejudice demonstrated even if counsel's actions were deficient." *Whitley v. Bair*, 802 F.2d 1487, 1494 (4th Cir. 1986) *cert. denied,* 480 U.S. 951 (1987). The "prejudice" analysis "requires more than a showing of theoretical possibility that the outcome was affected." *Frey v. Fulcomer*, 974 F.2d 348, 358 (3d Cir. 1992) The defendant must actually show a reasonable probability of a different result but for trial counsel's alleged errors. *Strickland*, 466 U.S. at 694; *Reese v. Fulcomer*, 946 F.2d 247, 256-257 (3d Cir. 1991).

The State submits that counsel's performance far exceeded the minimum standards set forth in *Strickland* and its progeny. Rather, counsel engaged in effective, professional representation of Defendant. In fact, counsel's vigorous representation prompted the State to dismiss several offenses and convinced the jury to acquit the defendant of others. Furthermore, the strength of the State's case must be considered in the Court's assessment of counsel's performance. Defendant was caught with evidence amounting to the proverbial "smoking gun." Ballistics, fingerprints, clothing, surveillance video as well as eyewitness testimony clearly and convincingly established this defendant as the perpetrator of the first Star Liquor robbery as well as the 7-11 robbery. In the second Star Liquor robbery, where the evidence was less strong and the victim less convincing, the jury unanimously acquitted Defendant.

14

$C-42$

WHEREFORE, for the reasons set forth above, the State respectfully requests that

Defendant's motion for post-conviction relief be denied.

Sean P. Lugg, Esquire          #3518
Deputy Attorney General
State of Delaware Department of Justice
Carvel State Office Building, 7th Floor
820 North French Street
Wilmington, Delaware 19801

15

$C - 43$

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DEVEARL BACON, | § | |
| | § | No. 369, 2001 |
| Defendant Below, | § | |
| Appellant, | § | |
| | § | |
| v. | § | Court Below: Superior Court |
| | § | of the State of Delaware |
| STATE OF DELAWARE, | § | in and for New Castle County |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: May 7, 2002
Decided: July 1, 2002

Before **HOLLAND**, **BERGER** and **STEELE**, Justices.

### O R D E R

- This    /    day of July, 2002, on consideration of the briefs and
arguments of the parties, it appears to the Court that:

1) Devearl Bacon was convicted, following a jury trial, of carjacking and
multiple counts of robbery first degree, possession of a deadly weapon by a person
prohibited, wearing a disguise during the commission of a felony, aggravated
menacing, and possession of a firearm during the commission of a felony. He
appeals from one robbery conviction, arguing that the Superior Court erred in
allowing that count of the indictment to be amended at the beginning of trial.

$C - 44$

EXHIBIT *10*

C - 45

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,        )
                          )        C.A. No. 0006017660
         V.               )
                          )        C.A. IN Nos.    00070347 et·seq.
DEVEARL BACON,            )        0007161666 et seq.
                          )
         DEFENDANT.       )

DEFENDANT'S REPLY TO THE STATES RESPONSE TO DEFENDANT'S
MOTION FOR POST-CONVICTION RELIEF UNDER RULE 61

This is the Defendant's reply to the State's Response opposing Defendant's claims. This case has a

complicated history. The claims are both factually and legally complex. While the Defendant understands, the State is

entitled to benefit of all inferences that reasonably may be drawn from proven facts by an orderly and logical deductive

process, where findings of fact are "contrary to the record" are not "facts," as such.

Defendant, having carefully reviewed the record, finds it necessary to shed some light upon the several

misrepresentations and mischaracterizations of material fact State Attorney Lugg has cast upon the facts of this case

regarding its "Procedural History" and "Fact" sections of the State's Response. Some of the States facts are

inaccurate.

The State's case was, as still is weak.[1] Because of this weakness, throughout the pretrial and trial stages, the

Defendant's rights were "watered down," by bad decisions of his counsel and questionable actions by the State

Attorney. The common thread an experienced eye sees throughout the Defendant's case is that of "the ends justify the

means."

PROCEDURAL HISTORY

Defendant was originally indicted on 24 separate and distinct criminal offenses that alleged he violated

---

[1]The first 5 counts of the indictments were dropped for lack of evidence against Defendant and, Counts 15 through 17 were lost at trial for lack of evidence against Defendant.

1

$C - 46$

sections of the Del. Criminal Code between June 21 and June 22, 2000. There were four sets of charges that alleged violations at three different locations in New Castle County. Of these four sets of charges, two sets alleged the same location, but on two separate dates.

Specifically, NONE of these indictments contain any written language alleging, "a pattern of criminal behavior," and also noteworthy, absolutely NO language in any of the 24 indictments that state, or is meant to infer, "that the offenses comprising of a common scheme or plan, occurring over a two-day period, "nothing whatsoever." In fact, the indictments alleging violations of the dependent felonies,[2] being 11 Del.C. §1447-A and 11 Del.C. §1239, Possession of a Firearm During the Commission of a Felony (herein after "PFDCF") AND, Wearing a Disguise During the Commission of a Felony (herein after "WDDCF") respectively.

Look at these two dependant felonies' indictments. These indictments are legally bound to their specific and limited category location set of indictments. Indictments are the charging papers. These charging papers do-not charge the Defendant with a pattern of criminal behavior, and certainly NOT engaging in a common scheme or plan.

The first five indictments were dropped against the Defendant by the State because that evidence was deemed much too weak against Defendant to proceed to trial. In fact, this Gulf Station (Dupont Highway Rt. 13) evidence alleged to have been part of the Video Tape evidence, the Video Tape that stays on the entire time a suspect is held in Wilmington Police Station process and interview area, was allegedly taped over by the detective in charge of this investigation. This Video Tape that contained Miranda's warnings allegedly read to Defendant at 2:30 (Exhibit B) and any of the detective's comments or Defendant's answers from 2:18 a.m. at time of arrival until Defendant was removed and placed in lockup. The State's case is weak, so they admittedly taped over Defendant's silence after receiving his Miranda warning. Notice was given to counsel regarding this tape, (Mr. Hillis failed to see the significance in this evidence and failed to request a Lolly and Dewberry instruction to the jury as well.)

---

[2]Felonies in which it is a necessary element of that offense to have been committed during, or in the process of another underlying felony offense.

2

$C-47$

Defense counsel did, however, discuss before trial that State attorney refrain from eliciting Defendant's release[3] from the (Department of Corrections) Plummer Center. "The Plummer Center" is publicized regularly just about every week in the local area newspaper *The News Journal*, in the center page left-hand column of the Local Section concerning prisoners or inmates[4] who have not returned to the Department of Corrections Plummer Center and will be charged with Escape After Conviction. It is also publicized on Channel 12 and 16 TV news channels.

(Whom are you kidding here?[5] State Attorney Lugg purposely elicited reference to the Plummer Center and Defendant being RELEASED from Plummer Center. Mr. Lugg had a copy of the Police report in his hand when he was examining state witness Corporal Spence that allegedly contained evidence of this particular statement defendant allegedly made to Corp. Spence about him being RELEASED from the Plummer Center (See 6-20-04 T.T. p.110) Mr. Lugg tactically and purposely elicits this harmful evidence anyhow. He knew there were only three statements allegedly made by defendant, and he knew what they were. Lugg asks "Q: What exactly did he tell you? of his witness Corp. Spence. Spence does not say defendant had just "gotten out" [sic], he says "RELEASED."

The Court after a sidebar initiated by defense counsel, for a mistrial, 6-20-01 T.T.p.112-113, counsel states Mr. Hillis: "Based on my conversation with Mr. Lugg prior to this witness, I thought he was not going to mention the statement about him being released from the Plummer Center." When a person is "RELEASED" from somewhere, a common man or woman would, without a doubt, believe that person was being forcibly held against their will.

The Court sidesteps the mistrial motion by pointing out to defense counsel "that the [jury] is going to know he's a person prohibited because he's stipulated to that." Mr. Hillis says, "And so given that fact, if somebody should know what the Plummer Center is, I don't find it prejudicial in the context with a person prohibited"(Emp. Add) ibid. p.113.

---

[3]State Attorney Lugg mischaracterises this "release" as "just gotten out" of the Plummer Center, in an attempt to fool this Court as to its real damage.

[4]Can we be safe to assume that the average juror understands that an inmate is a prisoner or convict?

[5]That the jury wouldn't know what the Plummer Center was. Crazy as this may sound don't you think if they did not know, they would ask somebody.

3

$C-48$

Defendant Bacon swears his counsel, Mr. Hillis, DID NOT EVER EXPLAIN ANYTHING regarding the stipulation

agreement that was made between his counsel and the State Attorney. This attempt to keep out all references to prior

bad acts and crimes was the exact reason Defendant chooses not to testify 6-21-01 T.T. p.54. Defendant has no idea

when this stipulation permitting three charges of Possession of a Deadly Weapon by a Person Prohibited ("P.D.W.P.P.")

was ever presented to him. If it was, it was not explained to him by his counsel. The Defendant believes that if there

was a paper to be signed then it was in a small pile of papers his counsel requested him to sign to represent him at the

trial. That was the extent of counsel's explanation concerning this stipulation. Clearly, given the circumstances,

Defendant was severely prejudiced by this stipulation[6] in more ways that one.

In fact, the State also leaves little doubt that this stipulated charge is about defendant's "status" as a

dangerous person. See his opening 6-19-01 T.T. p.5, 6 and 6-21-01 T.T. p.52-53. "And finally, people for various

reasons are prohibited from possessing a firearm in this state. The Defendant was one of those people. He possessed

a gun and that's a crime." This took away the presumption of innocence the first minute of trial. What was the benefit

to Defendant of this stipulation[7] made by his counsel? The answer, absolutely none! The jury was left a free rein to

speculate the type of crimes or bad act that Defendant had to have committed whereas he was just not allowed to use a

gun or weapon, but even if he had possession, purchase, own or even controls one, he was guilty of not just a violation

of an ordinance, or misdemeanor. He was guilty of a felony for goodness sake. This did not help the Defendant in any

way, shape, or form, particularly when the Defendant did not take the stand in order to keep this type of damaging

evidence from the jury so they would not form an opinion of him as a criminal.

During the trial Defendant was acquitted of the Star Liquor Store robbery attempt o June 22, 2000.

This disposed of Counts XV through XVII, of the State's case. The jury, it should be noted and remembered here, in their

decision to acquit Defendant, found that the person described as 5'6" or 5'8", 135-175 lbs., facial hair, dark blue

---

[6]Defendant has shown this Court a true aspect of what is coined "watering down a defendant's rights."
[7]This stipulation benefitted only the State, the Court and Mr. Hillis so as to economize the time in Court on Defendant's case.

4

C-49

shorts, dark green hooded raincoat, black gun, whitish, grayish car, (6-20-01 T.T. p.10-33) was not the Defendant,

because this evidence was too weak based on those descriptions for a jury of 12 to find Defendant guilty. Similarly, the

evidence for the Rt. 13, Dupont Hwy, (outside the City of Wilmington) Gulf Station, was too weak to bring to a trial.

Because of the effects of prosecutorial misconduct in eliciting not only Defendant's release from the Plummer

Center, but also not telling his witness Dawn Smith that she is not permitted to state things "that detectives told her

later" such as: the defendant's name 6-19-01 T.T. p.25 his facial features p.34-36 and skin complexion p.41.

Defendant was found guilty of Counts VI through XIV the first Star Liquors incident and Counts XIX through XIV from the

7-11 Store on Rt. 13 Dupont Highway,

Counsel appealed only the conviction of the "amended" count of Robbery I and failed to argue the effect of the

"generality" of the indictment; it not being specific, See Superior Court Criminal Rule 7(c)(1): *Nature and Contents*

> In general, the indictment or the information shall be a plain, concise and definite written statements
> of the essential facts constituting the crime charged. . . . (Emphasis added)

Counsel never explained how Defendant was harmed by the general use of just U.S. Currency, so the appeal got denied.

In retrospect Counsel never explained this to this Court either.

## RULE 61 PROCEDURAL STANDARDS

There are no procedural bars to defendant's six grounds. This is his first Post Conviction Motion filed under

Rule 61. This motion was filed within three years of the finalized Order of his direct appeal concerning the Amendment —

to Indictment Count XX. (Recently supplied to defendant via State's Response exhibit.) Since all six of defendant's

claims assert Ineffective Assistance of Counsel they are not subject to the procedural default rule,[8] See Rule 61(i)(3)(A)

in part, because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal

unless the claim is adequately raised in the lower court.[9] This satisfies the "external impediment," as the United States

Supreme Court explained in Murry:[10]

---

[8]Younger v. State, 580 A.2d 552, 556 (Del. 1990)
[9]See Del. Supreme Court Rule 8; Wright v. State, 513 A.2d 1310, 1315 (Del. 1986)
[10]Murry v. Carrier, 477 U.S. 478, 487 (1986)

5

$C-50$

...if the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that responsibility for the default be imputed to the State, which may not conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance. (Emphasis added)

The Supreme Court also made clear that an ineffective assistance of counsel claim "is distinct" from any other underlying claim explained in Kimmelman v. Morrison.[11] In that case the issue was a Fourth Amendment claim of search and seizure. Here, Fourteenth Amendment claims, including the ineffective assistance of counsel at trial and on appeal[12] of the Amendment of Indictment.

Regarding Ground Five, consisting of Counsels ineffectiveness at trial and on direct appeal, while the above standard covers this claim, it also falls under Rule 61 (i)(4) the "interest of justice" exception in 1990, Flamer v. State,[13] held it to be very narrowly construed to only that where subsequent legal developments have revealed that the trial court lacked authority to convict or punish him. (Emphasis added for clarity). In the year 2000, distinguishing Flamer, the Delaware Supreme Court expanded Rule 61(i)(4) in Weeden v. State[14] to also include subsequent factual developments. (Emphasis original in opinion) While the Court did observe that Rule 61(i)(4) was based on "law of the case' doctrine," and went on to point out the expanded scope of the rule.

[i]n determining the scope of the 'interest of justice' exception [Rule 61(i)(4)] we recognize two exceptions to the law of the case doctrin. First, the doctrin does not apply when the previous ruling was clearly in error or there has been an important change in circumstances, 'in particular', the factual basis for the issues previously posed . . . . Second, the equitable concern of preventing injustice may trump the 'law of the case doctrin. (Emphasis supplied, citations omitted)

Relitigation on the Amended Indictment issue in this case is appropriate under the above noted exceptions to Rule 61(i)(4) as well, because the defendant the "important change in circumstances in particular, the factual basis for the issue [] previously posed," is that of fact, that counsel never argued the fact of the "generality" of the amendment, thus not "fully informed" of the nature of the charges against him. In addition, the charge is factual developments

[11] Kimmelman v. Morrison, 477 U.S. 365, 374 (1986)

[12] Evitts v. Lucey, 368 U.S. 387, 397-98 (1985)(State criminal cases)(A defendant in a state criminal case is entitled to effective assistance of counsel on direct appeal)

[13] Flamer v. State, 585 A.2d 736, 746 (Del. 1990)

[14] Weeden v. State, 750 A.2d 521, 527-528 (Del. 2000)

C - 51

reveal that the actual amendment did not take place "prior" to trial, it took place "after" the evidence was entered in this trial. This was a "key fact" in both Harley[15] and Johnson[16] that a requested variance to an indictment is made to conform with the evidence. This was the main thrust of the Johnson court's holding as a close reading of its reasoning will ultimately show. An important factor for this court to consider, although the State may have made a motion prior to trial, for all genuine purposes of integrity, the Indictment still read "keys and a car" June 20, 2001, sometime before lunch when Rashell Conkey testified. The amendment wasn't permitted until June 21, 2001 where counsel "stumbled" over Johnson failing to note that neither a "chair" nor a "table" is considered a dangerous instrument. The idea that different evidence came in during trial was a key point, just as in Harley, where he was accused of using a "tire iron" and evidence during trial showed a four foot long "jack stand" (rod, 2"x1½"x4'). In either case, Johnson is distinguished because neither a chair nor a table is considered a deadly weapon or instrument. In Harley, a tire iron could be used as a weapon just as the jack stand.

In addition to the above Rule 61(i)(3)(A) and Rule 61(i)(4) (for the Amendment issue) Ground one through four and six, assert "a mistaken waiver" of fundamental rights that fall into the narrow miscarriage of justice that undermined the fundamental legality, reliability, integrity or fairness of proceedings, Rule 61(i)(5) exception. Webster.[17] The defendant has claimed that counsel's "failure to identify" issues in Ground One "Pre-trial, during Trial and [failure to] raise [] on Direct Appeal,"[18] effectively states "a mistaken waiver,[19] three of them, on those issues. Ground Two consists of the same three mistaken waivers, (fn 38 & 39) on that set of issues. Ground Three explains "a mistaken waiver"caused by counsel's failure to object to introduction of Prior Bad Acts, and his failure to request a hearing to determine "even if" they were permitted that "a limiting instruction"(fn 39) regarding the relevance[20] of those bad acts be

[15]Harley v. State, 534 A.2d 255 (Del. 1987); See also Williamson v. State. 669 A.2d 95 (Del. 1995)

[16]Johnson v. State, 711 A.2d 18, 26 (Del. 1998)(close reading--this was Appellant Johnson's original argument in his opening brief and reply brief.) .

[17]Webster v. State, 604 A.2d 1364, 1366 (Del. 1992)

[18]DeShields v. State, 706 A.2d 502 (Del. 1998); West v. State, 542 A.2d 1193. 1195. F.N.3 citing "crucial factor" Bates v. State, 386 A.2d 1139, 1142 (Del. 1978)

[19]Caused by Defense Counsel See note 30.

[20]DRE 103; 105; 401, 402. 403, 404(b). Appeal issue See Plain Error DRE 103(d)

7

C-52

given to the jury. Ground Four explains "a mistaken waiver" caused by defendant's counsel in his failure to raise this issue on Direct Appeal, concerning confrontation. (fn 37) Ground Six concerns a Due Process issue, "a mistaken waiver" caused by counsel's failure to develop facts at trial, and raise this issue on Direct Appeal, as Brady material, among others. Rule 61(i)5 provides for post-conviction issues which have not been previously litigated, where the procedural default was not caused by ineffective assistance of counsel.[21]

Whether the defendant has presented a "colorable claim" may be determined on the basis of the post-conviction motion itself, prior to any responses being filed. While "[i]n a post-conviction proceeding the petitioner has the burden of proof and must show he has been deprived of a substantial constitutional right before he is entitled to relief." It should be noted that this "colorable claim" does not necessarily require a conclusive showing of trial error, although "mere" speculation that a different result "might" have obtained does not satisfy this requirement.[22] Finally, the question is whether a petitioner has presented a "colorable claim" is a question of law that is reviewed by the Delaware Supreme Court de nova.[23],[24]

To sum up the Procedural Standards, defendant has presented this Court with "cause" to overcome the procedural bars relating to Rule 61(i)(1)(2)(3)(4) and (5).

More important, defendant requests that this Court take note of "the distinct" ineffective assistance of Counsel claims regarding all the issues, and also apply the less demanding Rule 61(i)(4) review in the "interest of justice," in which the court is to give a presumably more favorable review than the Rule 61(i)(3). Prejudice prong standard of review. This court understanding that the defendant should not have to bear the weight of a higher and stricter standard of review concerning something he had absolutely no control over. To borrow from our civil doctrine, the

---

[21] State v. Rosa, 1992 WL302295 at *7 (Del. Super.)

[22] Baily v. State, 588 A.2d 1121, 1130 (Del. ___)(citing Younger Supra at 555) and State v. Getz, 1994 WL 465543*11 (Del. Super.)

[23] Webster, Supra 604 A.2d at 1366

[24] At this point, the defendant was forced to include a rather lengthy explanation in response to the State's "misstatement" or "mischaracterizations," only this time they are concerning this Courts Procedural Rules. Advocacy is one thing, but to purposely attempt to misled this Court with respect to Rule 61(i)(3)(A) in that he "leaves out" the Ineffective Assistance of Counsel exception and Rule 61(i)(5) exception as explained in Webster, Supra. A respectable attorney would have conceded to this, in a "sincere effort" "to promote judicial economy and efficiency."

8

$C-53$

defendant had clean hands[25] here, concerning his counsel's performance on this Amendment of Indictment Appeal (in fact, counsel never even told defendant he was filing an appeal.) (This explains the basis for Ground Five second part of that issue). Finally, because defendant has raised the issue that "the factual basis" at argument in his post-conviction Ground Five is "an important change in the circumstances" then the issue [ ] previously poised this opens the gate to this procedural bar, notwithstanding the equitable concern of preventing injustice may trump this procedural bar at Rule 61(i)(4) as well.[26] Also, specifically noted is that these factual bases need not be newly discovered as that would legally change this type of claim into a Rule 33 motion for a new trial because of Newly Discovered Evidence. This is not what defendant is stating. Defendant is arguing the change in circumstances concerning the factual basis of that claim, which are different in defendant's present claims.

Concerning Rule 61(i)(5) exception asserted as "a mistaken waiver of fundamental rights" that open the gate to the narrow path that allows defendants entrance to review under a "miscarriage of justice that undermined the fundamental legality, reliability, integrity or fairness of the proceedings." This is specifically for post-conviction issues that have not been previously litigated, and the default was not caused by ineffective assistance of counsel.[27]

Defendant requests that this Court note this distinction concerning the review of his claims that his counsel may have been the cause of these mistaken waivers, because it certainly was not defendant's fault, as he has clean hands,[28] and should not have endured or bear the formably stricter standard of review under Stricklands prejudice prong. This distinction of the different review standard is rarely noted and it is defendant's belief that the Courts of this State tend to gravitate toward the Strickland prong for no other reason than the Rules[29] do not adequately or effectively

---

[25]Compare with this briefs note 30 "...[t]he result of Ineffective Assistance of Counsel...requires that responsibility for the default be imputed to the State" not the defendant.

[26]Weeden, Supra 750 A.2d at 527-528

[27]State v. Rosa, 1992 WL 302295 at *7 (Del. Super.)

[28]See this briefs notes compare 30.

[29]Superior Court Criminal Rule 61 Defendant believes from his review of many of these Rule 61 Post-conviction cases, that most Superior Court judges are at a loss as to the "correct standard" of review and simply toss the case to get it out of their hair, and apply the stricter standard of review, just to be safe and pass the case forward to the Delaware Supreme Court hoping they'll be able to resolve it. This method is not fair to the defendant, because then he has to add more impurities to his claims in the form of abuse of discretion arguments as well as the original claims, which get pushed further into the background.

9

$C-54$

explain the correct standard of the Superior Court's review of a defendant's Rule 61(i)(5) issues.

Having established that defendant is certainly not procedurally barred from presenting his claims, by having established cause,[30] having also established Rule 61(i)(4)'s important change in circumstances, in particular, the factual basis for the issue [I previously posed . . . ,[31] and, having established Rule 61(i)(5)'s a mistaken waiver of fundamental rights exception to the miscarriage of justice.[32]

Apparently the strictest standard here is Rule 61(i)(3) Prejudice Prong, formulated toward Rule 61(i)(3)(A)'s claims of Ineffective Assistance of Counsel, observing closely that defendant must meet, he doesn't have to go beyond, just meet the two prong test set forth in Strickland.[33]  Rather than focus on the fist prong of cause, it is important to note that in this instant case at bar consideration must also be given to the above Rule 61(i)(4) and (5) exceptions as they pertain to defendant's claims, excluding the need to find ineffective assistance of counsel in these instances. Defendant, therefore, proceeds to the prejudicial effect(s) concerning each of his claims.  In asserting prejudice, as the Second Circuit observed in McKee v. United States,[34] "[u]nlike the performance determination, the prejudice analysis may be made with the benefit of hindsight," (quoting inter alia Lockhart v. Fretwell, 506 U.S. 364 at 372 (1993).

The State's case against defendant is weak. Their case hinged on identification, as virtually all these convenience store robberies do. All evidence lawfully[35] submitted to the jury consisted of identification evidence in its different forms, in an attempt to prove the identity of the perpetrator, with the finger being pointed at defendant. The State did not have any of their witness identify the defendant before the trial commenced on June 19, 2001, identifying him as being the person who robbed them. NONE! Not one witness identified defendant, either in a photo lineup or otherwise, before the trial started. Absolutely none.

---

[30]Refer to this brief's notes 28 (cited Rule 61(i)(3)(A); note 29 (Del.Supr.Ct. Rule 8 and Wright supra 513 A.2d at 1315); notes 30, 31, 32 (citations ommitted)

[31]Refer to this brief's note 34, (citing Weeden supra 750 A.2d 527-52S)

[32]Refer,to this brief's note 37 (citing Webster supra 604 A.2d at 1366)

[33]Strickland supra

[34]McKee v. United States, 167 F.3d 103, 106 (2nd Cir. 1999)

[35]Defendant claims irrelevant character evidence was also submitted to the jury in violation of DRE 401, 402, 403, 404 consisting of his prior record prohibiting him from owning or possessing a firearm, and, evidence elicited by State concerning his release from jail—Plummer Center.

10

C-55

The State made a claim that Defendant was caught with evidence amounting to the proverbial smoking gun, then lists all the evidence they submitted being: ballistics, fingerprints, clothing, a surveillance video as well as eyewitness testimony, and, makes a claim that this clearly and convincingly established the defendant as the perpetrator of the first Star Liquor robbery as well as the 7-11 robbery.

The State asserts a conclusionary statement but fails to explain the premises of this fallacy. The fallacy is that the State is telling us that we must infer that the jury relied solely on this evidence that when viewed objectively, is virtually nonexistent to proving the Defendant was the perpetrator when viewed by itself. Defendant was not convicted on this evidence alone. The State purposely elicited[36] irrelevant damaging testimony meant to attack Defendant's character, eroding Defendant's presumption of innocence by introduction of evidence that tends to show a propensity to commit crime.[37] This was done early in the trial thus inflaming the jury's prejudice[38] against the Defendant.

The presumption of innocence is a right defendant has that lawfully tells the jury that when they view the evidence, if there are two equal explanations, one that is favorable and one that is unfavorable, the law is that the jury must view the favorable aspect as regards to the defendant. This is correct? However, once this was taken from Defendant, the Law of Attention interceded. The jury rearranged their attention toward the finding of guilt in, "[the] more evidence one looks for to support a given [] conclusion, [] the more one will find."[39] Views have inertia. The jury was programed to see a pattern or propensity in the defendant to commit crime. The prejudicial effect is overwhelming in this respect. There's no argument here. The jury's prejudice was inflamed, particularly in light of all these counts being tried in the same trial, in front of the same jury.

## FACTS

---

[36]See generally Johnson v. State, 550 A.2d 903, 911, 913 [FN6] (Del. 1988)(The detective was an agent of the State. State had a duty to instruct its witness not to introduce clearly irrelevant highly damaging testimony, particularly when an agreement was indeed already made with Defendant counsel. See June 20, 2001 T.T. p.112

[37]DRE 404(a)

[38]This evidence also exploited the stipulation PFWPP evidence.

[39]The Magicians Companion, Witcumb Axioms pg. 12; DRE 404, A propensity to commit crime, particularly, when no cautionary instruction or limiting instruction was given to them.

11

C-56

On June 20, 2000, at approximately 9:30 p.m., an unidentifiable person walked into a busy Star Liquors Store in the Astro Shopping Center on Route 9, New Castle Avenue, right off I-95 and Route 13. According to eye witness accounts at the scene this person had a gun, was wearing a blue bandana, a blue or dark hooded jacket with the hood pulled up over head, and was wearing either jeans or shorts, either sneakers or like insulated work boots, were anywhere between 18 years old and 25 years old, was either 5 feet tall or 5 feet 11 inches tall, was either thin or medium build and weighted either 105 pounds, or 175 pounds, and had dark skin, dark brown or dark black skin or dark complected, and was also wearing gloves.

This person, whoever it was, ordered everybody in the liquor store to get on the floor, and when they hesitated, he fired a shot in the air, then everyone complied including the two clerks behind the counter that was surrounded by bullet proof glass. The clerk who didn't jump down underneath the counter complied with this person's demand for money, and threw an undetermined amount at the opening hole in the glass where this person was standing.

Right before this, customers Avon Matthews and Michael Scott are standing right at the counter alongside this person. Matthews actually sees this person enter the store a minute after him and walks up next to him in line, and he says this person with the gun was thin and about his height 5 feet 11 inches tall and observing a blue and white bandana, a black hooded jacket with white writing on the left side of it, jeans and sneakers. He also said the person had dark skin. Mr. Matthews testified this was his most accurate description of the person, and he also described the gun as black and it looked like a .22 from his experience. Additionally, he provided a description of the make and model of his car, 1997 Ford Escort with his tag number being 999159, because this unidentified person demanded his keys to the car, after he was finished with his business at the counter.

The other customer, Michael Scott, who because he was literally in shock as a result of all this, told the first officer to arrive on the scene he didn't get a very good description because he had his face to the ground[40] and he was

_____

[40]6-19-01 T.T. p.92

12

$C-57$

scared but he estimated the person to be a medium build, about 160 pounds,[41] 5 foot 8 inches tall, and wore a dark hooded top and possibly shorts if he wasn't mistaken, and a mask, the only thing he could see was his eyes. He lay on his stomach and was not facing him and was afraid, of course, literally in shock after the person fired the gun.

The two clerks, Dawn Smith and her cousin Jacqueline Johnson who were both behind the counter, gave descriptions to the police as well. Ms. Smith believes that she remembers the person as 5 feet tall to 5 foot 2 inches tall, and he had a thin build, dark brown or black[42] male, wearing a blue or dark blue windbreaker, a bandana, shorts, and like insulated workboots.

The other clerk, who jumped under the counter, Jacqueline Johnson, testified that the person was 20 or 25 years old, dark jacket, bandana, skinny and dark complected.

Corporal Robert Jones who patrols Routes 13, Route 9 and I-95 was the first officer to arrive. He testified he received the call 9:35 p.m. and arrived at Star Liquors about 9:40 p.m. Detectives Chapman, Spillan and T.F.C. Butkis also arrived and interviewed the eye witnesses. Detective Spillan was the chief investigating officer so all reports of interviews went to him for investigation. A master report was compiled from eye witness accounts and that description of the person's physical characteristics was as follows: "male, black and non-Hispanic, 18 to 20 years old, 5'0" to 5'2" and is 105 pounds, dark-brown skin tone."[43]

At 11:00 p.m., June 22, 2000, a person walked into the Star Liquors, with a green raincoat with a hood around the face with a white thing on it, dark blue shorts, facial hair, and was about 5 foot 6 inches or 5 foot 8 inches tall and 165 to 175 pounds. This person was unable to get anything because the Clerk Gina Harris refused his demands knowing she was protected by bullet proof glass, and attempted to take a photograph of the person, so this person left in a hurry apparently in a whitish or grayish car.

About 11:15 p.m. June 22, 2000, a person walked into the Route 13, 7-11 Store, North Dupont Hwy., wearing

[41] 6-19-01 T.T. p.85
[42] 6-20-01 T.T. p.182
[43] 6-19-01 T.T. p.91

13

$C-58$

either all black, or a black bandana, or a green scarf, a windbreaker with a hood. This persons physical characteristics were described by these four witnesses being either really black,[44] dark skinned, or not real light skinned, but light brown complected. This person's height was given to be anywhere between 5 feet tall and 5 feet 8 inches tall,[45] and weighed anywhere from 100 pounds to 175 pounds.[46]

Although there was a video camera located in the ceiling of the 7-11 store, and its focus was directed more toward the front door rather than the customer side of the counter. The "camera that actually views down in on the sales counter. It doesn't get part of the view, but it gets more coming through the front doorway." It tapes at a slow pace only when the alarm is hit. The alarm was not hit until after the incident at the counter was over, so the video was of limited use as evidence. For example, because of the angle of the camera from the ceiling it can't accurately show the exact height, or weight of its subject. The video is black and white so there is no color to record. As to physical details, the person was, of course, wearing a highly effective disguise that the grainy video also had difficulty capturing in this case context.

Concerning the denominations in evidence. The 7-11 Field Consultant, Stephanie West testified that before the person entered the store she had just made a money drop consisting of all the bills, all the $1, $5, $10 and $20's. Testimony of the other witnesses reveals that "the till" that the person took with them contained no bills, because of the money drop and on 11 to 7-shift, only one cash register is used, and there is no separate Lottery register. Specifically, although these witnesses testified some coinage was taken with the till, absolutely no record whatsoever of two gold coins, Susan B. Anthony one dollar coins. No one said anything about these indisputably, highly specific coins being taken at any of the crime scenes. The fact of the matter to be remembered is that no description was given of the amount, nor the denomination of these alleged coins taken with the till.

The person leaves the store with the till. Ann Torrance the witness who was outside the 7-11 apparently saw

---

[44]6-20-01 T.T. p.150
[45]6-20-01 T.T. p.164
[46]6-20-01 T.T. p.172

14

$C-59$

the person exiting the 7-11, but was not sure which car he got in (if he got in one at all). Ms. Torrance testified that, "it seemed like he got on the driver's side, I'm not sure," and then testifies, in a doubtful manner, "I think I seen the car he got in." This doubt by Ms. Torrance was attributed to her being unable to actually see the car because there are parking spaces on the side of this building where there is no lighting and that's exactly where the person who left the 7-11 walked in that direction into the unlighted area beside the building, as Stephanie West testified. Ms. West testified first that she only walked to the front door and got a tag number, after "a car" was already leaving, then she went out in front of the store, but she testified that because the car was parked on the side of the building where there was no lighting at all, she only saw a car leaving the parking lot. Nobody actually observed the person clearly enough actually getting into a car in that darkness.[47] The witness testified that a tag number was gotten from a car leaving the store, and witness "believed" the person who had just left the store was in that particular car, and failed to consider the idea that the person could have kept on walking to the alley that goes behind all the buildings in that area, and enters into the adjoining apartment complex that is located within 100 feet of the front of this 7-11 store.[48]

About three hours later, on June 23, 2000, about 1:55 a.m. two probation officers observed a vehicle parked on 17th Street by the probation office. This was the same car that had been seen the day before, June 22, 2000, at about 2:00 p.m. in the area of 9th and Walnut Streets in the City of Wilmington. Upon closer observation, because the car was the only car on that street at the time, revealed it had a flat tire, its tag number was 999159, and it was a car reported stolen and present at the 7-11 earlier. There are three people working on the car. They were all arrested because they were in the process of changing the flat tire on this car.[49] Then the probation officers stop. They have

---

[47]The 7-11 has extremely bright lights on in front of its stores at night, this causes a loss of "night vision", particularly if one is standing in this brilliant light and attempting to peer into the darkness around a corner of a building.

[48]These are some facts that defendant's counsel failed to elicit from these witnesses or the detectives or even he himself could have gathered had he visited the scene and collected rebuttal evidence for defendant. This evidence could have been collected via either a camera or a video camera, at the same time, or night fall. The surrounding area, a map, or even pictures woudl have worked fine.

[49]Let's look at this evidence in perspective. There is a street sweeping ordinance that starts about that time, all the other cards could have been moved leaving this car sitting there with the keys in the ignition. These three guys walk up and notice this car with the window down, keys in the ignition, but a flat tire, so after "leaning on" the car to look inside it, better check and see if its got gas too, and open up the gas cap and smell for gas, yeah its got gas, hell now all we have to do is fix this flat and we got ourselves a ride. There isn't anybody around, no cars or anything, lets fix it.

15

$C-60$

been looking for this obviously "hot" car for a couple days now, and here it is with three people by it. In fact, the "original carjacker" told the car's owner, "Man. I'm not going to hurt your car. I'm not going to crash it or something like that." 6-19-01 T.T.p.64. Backup was called and a search of this car revealed a small cloth type bag with a gun, a clip and bullets (the gun was loaded according to testimony). On top of this bag covering it, was a black-hooded jacket with big REEBOK letters[50] on the back of it. These items were found in the right front passenger seat. Also found, on the driver's seat were "two gold Susan B. Anthony coins, 12 quarters and four dimes. The keys were found in the ignition, on the same big key chain with a bunch of other keys and stuff. However, no blue bandana, no black bandana, no dark blue or dark green jacket found. Specifically, there were no gloves found in the car, no gloves were found on the Defendant either. Only a black jacket with highly distinguishable printing on its back "Reebok." [51]

No fingerprints, in spite of there being no gloves found, no fingerprints were found matching the defendant on the gun, clip, bullets in the car, nor the shell casings found at Star Liquors. No fingerprints of defendants were found on the keys, nor on the many keys and trinkets on this key chain containing other chains and, none on the coins either, that were found in the driver's seat. Let's sit down in the driver's seat your honor, now what would you have to touch, or grasp, to operate this vehicle, the defendant has no gloves here. No fingerprints matching defendants were on for example, the interior driver or passenger side door handles, or latches, or locking buttons, none on the interior window glass, or the windshield, how about the smooth plastic control knobs linker signal level, emergency brake lever, radio tuning knobs, glove box and glove box knobs, horn, the nice smooth steering wheel, yet none of these areas contained evidence of defendant's fingerprints. Candy wrappers, cans, cups, bottles, boxes nothing. Nor was the till found in this car. No fingerprints of the defendant were found.

But, these guys were working on the car? Lenton Smith's fingerprints were found on the passenger side front, interior. In fact, 18 sets of prints were lifted from this car, most were from exterior of the car. This evidence shows that,

---

[50]NONE of the witnesses testified to REEBOK being on the back of the persons jacket. This should be clearly visible and easy to remember.

[51]"Reebok" plain and clear, most visible to all witnesses who observed the suspect leaving the crime scenes, and, NOT ONE witness testified to observing this easily recognized icon brand name as being on their robbers jacket back.

16

$C-6\,/$

Based on the vast array of suspect descriptions given to police, and no conclusive evidence linking defendant to any crimes other than his mere presence near the vehicle that was carjacked[54] and may or may not have been used in the other incidents, defendant's right to the presumption of innocence was not recognized, by the police, nor his defense counsel. Defendant had in his possession, one plastic flashlight (it was dark outside that time of night) and 13 one-dollar bills. Nobody reported any suspect having a flashlight, and no witness reported a specific denomination taken either amount or size. In fact, the earlier 7-11 didn't have any bills taken.

In any event, the police, State Attorney, nor defense counsel brought up the "two-hour-rule" concerning stolen property. This rule maintains that without bonafide proof, that the person actually was the thief, then under this Delaware Law, the person in possession of the property, (possession must also be proven) if it is after two hours, and the person was in possession of the property, and it was not proven he stole it, then, he was charged with receiving stolen property if he was found in possession of the property. Police arrived at this scene at about 2:00 a.m. All three men were taken to Wilmington Police Station. Defendant arrived there at about 2:18 a.m. with Corporal Mark Spence. A video tape was made of this arrival as is normal "standard operating procedure," this tape started[55] at about 2:18 a.m., ran during Corporal Spence's reading of Miranda rights to Defendant at about 2:30 a.m. Defendant chose to exercise these rights and say nothing after they were read to him. Noteworthy, Defendant was informed at the scene he was being arrested on at least 24 felony charges, but his rights were not read until a half-an-hour later.

The police destroyed the video tape[56] because there was nothing on it, although the State gives an unsupported explanation to pigeon hole this evidence as solely the Gulf Station evidence. The first evidence presumable to be recovered would want to be the carjacking to place the car with the defendant.

In any event, the only fingerprints "in" the car, except for the mirror, were all "EXTERIOR,", i.e., defendant's left thumb print was on left rear of right side of gas cap, the left quarter panel in plain terms (specifically no prints of

---

[54]Carjacked two days before.

[55]The presumption that the Wilmington Police Station Standard Operational Procedure protocol was being followed in this high profile case with 24 felony charges.

[56]In a crime with 24 felonies, would experienced detectives really do this? Defendant requests the Courts indulgence on this.

18

$C - 6 \, 2$

defendants were found "ON" the gas cap itself so this is a little misleading here) and on the exterior left rear door frame and glass the left thumb, left middle finger print, left ring finger and left palm prints (all given "separate" numbers 1627, 1647, 1679, 1649 get all in one local area from one touch or contact) this evidence without adequate explanation is misleading as well. The defendant was in the process of changing a flat-tire on this car, so naturally his prints on the exterior trunk are there too, and around the flat tire on the car.[57] Defense counsel failed to clarify this through cross examination.

The State's proof failed in the following respects. First, it seems the State has a difficult time admitting or quoting the actual true facts in this case. The States spin or inference on the evidence is so powerful that it consists of a mischaracterizations and/or misrepresentation of the key facts, or their idea of what they assert to be the key facts of this case.

The State fails to mention, the lack of facts relevant in this case, particularly those needed to link the defendant to these crimes. There are several inferences or presumptions made that were not based on actual facts, i.e., direct evidence or circumstantial evidence. Inferences were based on other inferences and/or presumptions.[58]

The State Response makes assumption that the evidence supporting their case,

[a]mount[ed] to the proverbial smoking gun. Ballistics, fingerprints, clothing, surveillance video as well as eyewitness testimony clearly and convincingly established this defendant as the perpetrator of the first Star Liquors robbery as well as the 7-11 robbery. States Response p.14.

Even allowing for the unlawful accumulation of this evidence as there was not a mandatory DRE 105 instruction regarding the limited use of this evidence as regards to the other crimes' evidence[59] given to the jury. The jury was free to use the evidence from one crime to prove another. The jury was not instructed that they were not to do this, regardless of the presentation we can logically assume they did and this prejudiced the defendant.

First, ballistics concerns themselves with a gun, not the defendant. The ballistics evidence can only be used to

---

[57]Crucial here, the left rear tire being flat.

[58]See generally Wharton's Criminal Evidence, Chapter 4 Presumptions and Inferences §91 operation and effect.

[59]See DRE 404(b); Howard v. State, 549 A.2d 692, 694-95 (Del. 1988); DeShields v. State, 706 A.2d 502, 507 (Del. 1998); See particulary, Wiest v. State, 542 A.2d 1193, 1195 FN.3 (citing Bates v. State, 386 A.2d 1139, 1142 (Del. 1978)(Del. 1988).

19

$C-63$

infer through the circumstances that a certain gun may have been used. Ballistics do not tell us who used the gun. That would be an interference on interference, typically this train of evidence is not permitted to be used or prove a fact. The fingerprints,[60] actually vindicate defendant in this context. None were found at any of the crime scenes that matched defendant. Specifically, there were none of defendant's fingerprints found on the gun; none on the clip; none on the bullets; none on the Star Liquors shell casing. None at 7-11. None of the coins found in the car; none of the car keys in the ignition; none on the steering wheel; none on the interior door handles; none on the emergency brake; none on the gear shift lever; none on the radio tuning knobs; none of the interior car door lock knobs of any door; none on the interior car door windows; none on the windshield; none on the console; none on the gauges and speedometer covering; none on the car horn; none on the glove box or glove box opening knob; none on the seatbelt buckles; none on the interior car trim; none on the headlight switch; (it was dark outside during each robbery) none on the steering column; none that matched the defendant in any way.

The police collected 20 usable "sets of prints" off this car according to evidence submitted at trial. The evidence of these fingerprints proves that defendant was on the exterior of this car all except for one thumb print on the interior rearview mirror.[61] (Out of four prints that were defendants, there are 16 sets that are not defendants.) These exterior sets of defendant's prints, given a presumption of innocence show that defendant may have discovered an abandoned car, leaned on it to view inside the back window to see if anyone was in there. Specifically, not noted were prints on the gas cap. None were on the gas cap just around that area.[62] One cannot infer that defendant put gas in the gas tank if there is no evidence of him actually removing the gas cap and there is no circumstantial evidence of defendant doing so in this case. None. No gas receipts, no witnesses testifying to seeing defendant buy, or, put gas in this or any other car.

---

[60] Fingerprints are not enough to convict when they are exterior prints because you can not tell the time they were left. Prints on an area or property open to the public access have no evidentiary criminal value. Accord. Monroe v. State, 652 A.2d 560,568 (Del.1995).

[61] 6-21-01 T.T. pgs.11-23 (Rodney Hegman, fingerprint analysis expert)

[62] 6-21-01 T.T. pgs.19-20 (latent impression 1633) (right side of gas cap)

20

$C-64$

There are defendant's hand and fingerprints (described as latent print impressions 1627 and 1649),[63]

exterior[64] side, left rear frame window. Impression 1637 was located on the trunk exterior of the car. Impression 1647

of defendant's right thumb was the only print found inside the car, and it was found in neither the driver's compartment,

nor the passenger side. On the rearview mirror, in context, the driver's side window was open. A legitimate explanation

of how defendant's print got there is as follows:

> Defendant comes across abandoned car, easily spotted, being the only car on street at 1:45 a.m. He
> approaches car, sees window open and with a flat tire. It's dark outside, he leans on car by placing
> his hand on top of exterior left rear door to peer in back window to see if anyone is sleeping or
> resting. He doesn't see anybody, leans on front top exterior driver's side, window was open, peers
> inside, sees keys, doesn't touch them or anything else. Backs out of car window and goes to flat tire,
> same side as gas cap, leans down to examine flat tire, bracing himself with his hand on cars quarter
> panel, gas cap is near rear wheel, so prints left there are not unusual in this circumstance. Defendant
> stands up, he is in street, that is how cars are lawfully parked, drivers side toward street as apposed
> to curb. Defendant pulls out his flashlight, shines it in car and finds trunk release to get jack and
> spare tire. Release is cable operated, release usually takes a couple of pulls, defendant has four
> reasons to adjust rearview mirror while leaning in cars driver side window. One, he is in street,        .
> adjusts mirror to reflect any traffic that may proceed up this fairly dark street; two, car obviously is not
> his car, so wants to see if anyone is coming who might not want him fiddling around with this car,
> particularly owner, or police; three, it's quite common practice that one looks in mirror when one pops
> trunk with a trunk release mechanism; or, four, to look at himself.

Wharton's Criminal Evidence, Chapter 4 Presumptions and Inferences §92.

One thumb print on a central neutral zone in a car that is assessable from a public street may be

circumstantial evidence that defendant touched the rearview mirror, but to make an inference from that inference

violates evidentiary procedure. In other words, defendant could be inferred to have touched the mirror, but to further

infer that he was in the car other than reaching through the open window is going too far. Even if this Court permits an

interference that defendant was actually wholly in the car, despite lack of other evidence as noted above, there would

have to be an inference on inference, that, not only was defendant in the car, he drove the car. Then another inference

would have to be made as to when did he drive the car, and another where did he drive the car. At some point it has to

stop. The fingerprint evidence is of very limited use here. The jury legally can infer that defendant was leaning inside

---

[63]6-21-01 T.T. pgs.21-22

[64]5-20-01 T.T. p.147 (lines 21-23)(exterior is where these prints were collected)

21

$C - 65$

the car window when he touched the rearview mirror. Touching the mirror, does not put the keys in defendant's hand and on the steering wheel, or his foot on the gas pedal.

The clothing, the jacket found in the car had a big Reebok insignia on its back. Did any of the witnesses testify to observing Reebok on the jacket? No, they did not. In fact, there were reports of blue and green jackets as well. There were pants, jeans, and of course shorts (it was in the middle of June); a blue bandana, several black bandanas, a green scarf, and, no bandana, light green bandana too. There were work shoes, work boots and sneakers reported. All of these clothing items are accessories to the hi-hop gangsta dress. But, taken each set of clothing description there certainly is evidence to suggest one could fill a small wardrobe closet with the clothing matching these descriptions. Was this evidence helpful in narrowing down to a specific perpetrator? NO. (A specific "class" of perpetrators, maybe.)

The surveillance video, a wonderful piece of evidence if the perpetrator is not wearing a full disguise. Furthermore, the angle of the camera lens from the commercial ceiling height focused downward, and toward the door. It consisted of a tape that is taped over each month, a grainy black and white picture devoid of specific details, that is, in this case, sped up only after the perpetrator is leaving the store so all that is available is a back shot. (Did this tape even reveal a big Reebok insignia on the back of the perpetrator's jacket? The trial evidence does not indicate this.) The angle of the shot did not permit a height reference as it was actually filming downward. Hard to judge a person's weight if you don't have the height, coupled with the gangstra baggy apparel all the urban folks wear both in 2000 and present. There just is not too much useful identification evidence on the surveillance video to identify anybody, let alone the defendant.

Was this surveillance video evidence enough to infer it was indeed the defendant at 7-11? Absolutely not. The eyewitness' testimony kind of covers the clothing descriptions with enough varied descriptions to fill a closet full of students' clothing. The same goes for the eyewitness' physical descriptions. The trial testimony reveals an individual between a flat 5 feet tall to a person standing 5 feet 11 inches tall, wearing an assortment of actually five different color jacket descriptions, with none saying they saw a big Reebok on the back, three different bandana descriptions, one

22

$C-66$

scarf, one no bandana. Several shoe, boot and sneaker types. The perpetrator's weight ranged from a light 100 pounds to a medium heavier 175 pounds. Skin tones from dark black, dark brown, or even light brown complected. The majority choose dark skinned.

Could the jury logically infer from "this" evidence that defendant was the perpetrator? There is no way. These descriptions are all so general and varied.

· Based on the above evidence produced at trial and verified by the record, one is left scratching his head in an attempt to figure out "how in the world" the State could come to a logical conclusion that this evidence, used in a lawful manner (pursuant to Delaware Rules of Evidence) label this evidence as being strong. This evidence is NOT strong, it is some of the weakest evidence ever used to bring charges against a defendant in the State of Delaware, let alone, secure a conviction in a jury trial. Surely, the defendant's rights were watered down in the process to get a conviction. Some of defendant's rights were violated in order to get these convictions and that is the basis of his claims. ·

There certainly was no identification of the defendant all the way up until the trial started. Until Dawn Smith was called to the stand, police told her defendant's name and that he had a beard.[65] The State attempts to clean this up by eliciting he had the same clothes on the night he came to the liquor store.[66] However, witness for some odd reason never attempted to contact police or call 911 to report the robber is back again.

In fact, the State Police evidence collection unit would have been at the store probably for the remaining hours of store operation.

In fact, when Detective Spillan called to tell Dawn Smith he had caught defendant, there is absolutely no evidence that supports this witnesses informed this detective that she observed defendant coming in the store later that evening.

The proverbial smoking gun evidence, the facts do not lie. An objective review of the facts and lawful

---

[65] See 6-19-01 T.T. p.25, 34-35 "Mr. Bacon came into the store." "When the detective called me, I asked then did he have a beard, they said yes, I had gotten a phone call after they caught the suspect."
[66] 6-19-01 T.T. p.39

23

$C-67$

inferences that can be made from those proven facts, do not put a gun, let alone the gun found in the abandoned car on 17th Street, in defendant's hand at the scene of the car, let alone at the scene of any of these crimes.

The State's case is built upon a mass of assumptions, speculations and inferences piled atop each other. There is no direct or circumstantial factual evidence produced in this trial that puts the defendant at either Star Liquors or 7-11. Nobody identified the defendant in a positive manner. No fingerprints placed him there circumstantially, either. ·

Legally, you cannot use one crime evidence to prove another crime. And, particularly, an inference must be based on a proven fact. There are no proven facts proving defendant was at either Star Liquors or 7-11 based on all the evidence given above. That leaves us to the gun evidence. There is no direct or circumstantial evidence that proves defendant possessed the gun legally. To make an inference that he was in the car is the one inference from the circumstantial evidence of the thumb print off the mirror. To further infer is an "inference on an inference," i.e., infer that he was in the car, then infer from that inference that he had control or possession of the gun is stretching the evidence too far.

Furthermore, in consideration of identification issues, defendant raises one concerning the 7-11 incident. Is a long barreled gun unusual?[67] Was the gun found in the car identified by 7-11 witnesses as the actual instrument of that crime? Absolutely not. The Court allowed the jury to speculate that it was the gun, and speculation causes prejudice.[68] Certainly no "limiting instruction" was given concerning the ballistics evidence at Star Liquors and its limited use in this trial, that left the jury free to speculate on that evidence as well.

The doctrine or rule of law concerning circumstantial evidence, i.e., Presumptions and Inferences.[69] The doctrine explains that it is improper to use evidence based on: Interference upon an Interference; Interference from a Presumption, and, a Presumption from a Presumption.

---

[67] See Whitefield v. State, 524 A.2d 13, 18 (Del. 1987)
[68] Accord. Farmer v. State, 698 A.2d 946 (Del. 1997)
[69] Wharton's Criminal Evidence Supra Chapter 4 Presumptions and Inferences §91

24



This is where reliance is placed on circumstantial evidence, the circumstances themselves must be proven and cannot be inferred or presumed from other circumstances.

> The obvious danger of permitting an interference to be based on an interference is that fact B would be inferred from fact A, and fact C would be inferred from fact A. If the law would not permit fact C to be inferred directly from existence of fact A, it is manifestly improper to allow the interference to'be made under the guise of a double inference. The jury may not treat a fact inferred as a fact established which, in turn, can serve as the basis for a further inference into the realm of pure conjecture. Wharton's Criminal Evidence, Chapter 4, §91.

This formula concerns the ballistics evidence at Star Liquors fact B, the gun found in the car, fact A. Fact C equals to a couple things in this case but 7-11 is fact C, relating to the gun evidence.

This formula also applies to the States attempt to prove possession and control of the gun by an inference based on a thumb print on the cars rearview mirror, fact A that defendant was in the car, fact B. Possession or control of the gun would be, fact C.

Remember, there were no fingerprints and not any circumstantial evidence linking defendant to the gun, no fingerprints, no bullets to the gun in his pockets, tote bag was not proven to be defendants either. Nothing, except an inference on an inference. You have to get from the possession or control of this gun (which was not legally proven in this case) to this gun being used at 7-11.

The 7-11 witnesses all agreed the gun used there was a lighter charcoal color.[70] In contrast to the black gun at Star Liquors.[71] While these were circumstantial evidences that could be used to infer the gun in the car was used at Star Liquors by ballistics, a foundation[72] was laid, but the State never had the Star Liquors witnesses actually identify the gun found in the car as it being the specific instrument used.

The Sate may authenticate a gun in two ways an instrument of a crime. (1) have witness identify gun as actual instrument of crime, or (2) establish chain of custody which indirectly establishes the identity and integrity of evidence

---

[70] 6-20-01 T.T. pgs.49, 62
[71] 6-19-01 T.T. pgs.48, 60
[72] See DRE 901 "Requirements of Authentication or Identification"

25

$C - 69$

by tracing its continuous whereabouts.[73]  Neither of these elements was satisfied in this case.

None of the 7-11 witnesses identified the gun as the actual instrument used there. Similarly, in Whitefield no witness particularly identified that gun admitted into evidence as the actual instrumentally used in the Whitefield robbery. And, there were no fragments or shell casings at 7-11, or anything else to establish identity of the gun found in the car to the 7-11 incident.

Both defense counsel and this Court failed to identify this crucial issue. A limiting instruction should have been given concerning the admissibility of the Star Liquors bullet fragment evidence and inferences permitted to be drawn from that evidence to the gun found in the car, and, inferences that this evidence is not to be used regarding the 7-11 incident, as it was irrelevant under DRE 402-403. Failure to do so gave the jury "free rein" to speculate on weight of this evidence and use it to determine guilt in 7-11 incident by cumulation.

While the Court and attorneys know that an inference is not to be made here, the jury was not instructed and left free to draw "unwarranted inferences" from this evidence. Defendant maintains that the joinder of these indictments that the above is one example of prejudice he suffered.

So, concerning the 7-11 incident, legally a nexus was never made to the gun in the car, none. No nexus under the laws of this State.

The next step is probably the most crucial part of the State's case in the context of this case's factual evidence. How is the defendant linked to the gun in the car? There is no evidence to support a link from 7-11 to the gun. This case "smoking gun" evidence boils down to the defendant and two others standing outside the car fixing a flat tire. All these men had shorts on, but two of them (one being the defendant) did not have on shirts. The gun was actually closer to one of the other men, and his fingerprints were found on the gun's side (passenger side) of the car.[74] Defendant's prints were not found on that side of the car. Again, a nexus must be made.

Concerning the one thumb print on the rearview mirror, that was explained earlier. When there are conflicting

[73]Whitefield supra at 18 DRE 901(a)
[74]6-21-01 T.T. p.23

26

$C - 70$

presumptions,[75] a jury instruction must be given explaining: (regards defendant's presumption of innocence right)

> A simple fact situation may arise to two presumptions. They may support the same conclusion, or
> they may conflict, on tending to show defendant's guilt the other his innocence. If there is a conflict, it
> is necessary to examine the theory and purpose of such presumption and then decide which should
> entitle to prevail. Of course, when opposing presumptions are of equal weight, the issue should be
> determined in favor of defendant's innocence. (Emphasis supplied)

Defendant had no gloves on him or around him, and there were no gloves found in the car. So anything

defendant had been touching left fingerprints. The underlying facts from which the main fact to be proven must be

proven by direct evidence. " This rule precludes basing an interference upon 'a fact' the existence of which itself rests

on interference." It should be noted also, no evidence of someone giving a gun to the defendant either.

The evidentiary rules of this court require the State to establish a connection, a nexus between the gun (and

jacket too) and the defendant. The Whitefield Court held:

> [T]angible objects [such as a gun and jacket] become admissible in evidence only when proof of their
> original acquisition and subsequent custody forces their connection with the accused and criminal .
> offense. The prosecution must prove a rational basis from which the jury may conclude that exhibit
> did, in fact, belong to [defendant]. More specifically, (1) the foundation witness must state that the
> instrumentality is at least like the one associated with the crime, and (2) evidence must establish that
> the instrumentality is connected to the defendant and commission of the crime.[76]

While 7-11 witnesses Rashele Conkey and Cathy Baron's testimony may have satisfied the foundational

similarity requirement above (articulated in Melatt v. State, 485 N.E.2d at 884) but, no evidence produced at this trial

satisfied the nexus requirement. For instance, no evidence tended to show that the gun found in the car and that of the

7-11 shared a unique trait. Actually, the witnesses said the gun used at 7-11 was a lighter charcoal color. This might

show a gun that is at least like the one, but this does not establish the nexus requirement. Certainly the circumstances

of the States recovery and preservation of the gun establish no link between it on the 7-11 scene.[77]

None of the 7-11 witnesses identified the gun found in the car to that incident (neither did Star Liquors

witnesses for that matter). This gun offered to be evidence as to the 7-11 or Star Liquors was irrelevant as to DRE

---

[75] Wharton's Criminal Evidence Supra Chapter 4 §92 "Conflicting Presumptions"
[76] Whitefield supra at 16-17
[77] Compare: Whitefield supra at 16-17

27

$C - 71$

402, without an evidentiary identification.

The gun the State offered into evidence is speculative evidence, and thus prejudicial defendant.[78] Similarity is not enough. The nexus requirement must also be satisfied as a predicate to the gun evidence admissibility [FN79].

Evidence that is speculative, however, carries the potential for the jury to draw unwarranted inferences. Where these inferences reflect adversely on the defendant by portraying him as "having a gun available," without establishing that, that gun was probably used in the robbery, admissibility is barred because speculation creates prejudice even apart from the weighing process required by DRE 403.

One of the witnesses testified as to "a little black gun"[79] at Star Liquors. This contrasts with the other Star Liquors gun descriptions "long barrel" but they all said a "black" gun. Whatever the case may be, the gun found in the car was never "identified" as "the gun" used at Star Liquors by witnesses. The gun was improperly entered into evidence. Defense counsel failed to identify this issue, apparently so did the Court. It might be argued that the bullet fragments and shell cases established identity for Star Liquors. This evidence is foundation evidence that the gun is at least like the one associated with the crime.[80] However, there is a second factor of "identity," and a general "black gun" does not satisfy this. It is not a unique trait. One witness says "a little one," and another "a long nosed" gun. This evidence is not of "[e]videntiary value] that must be established is, that the [gun] is connected to the defendant and the commission of the crime."[FN82]

Delaware Rules of Evidence 901 requires that more is required than foundation evidence. The State is relying solely on the circumstantial evidence found at Star Liquors, that only allows them to present the gun as evidence, it is foundation, but a witness at a crime scene must usually identify the actual instrument used at the crime.[FN82] The gun must be positively identified as the gun used, and this was not done, according proper evidentiary procedure. The gun was not permitted to be used as evidence that it was the gun used in these three separate incidents until the gun was

---

[78]Farmer supra
[79]6-19-01 T.T. p.48
[80]See Whitefield surpa DRE 901(a)

28

$C-72$

properly identified as the gun used in that robbery.[81]

The State never put the gun found in the car in the defendant's hand at any of the crime scenes because they never placed that gun at any crime scene legally under the rules of evidence. Particularly at the 7-11 robbery.

This "gun evidence" exploited the joinder of these offenses. The jury was given free rein to speculate that the State had proven that this was the gun used in the robberies.

· The crux of the State's case is linking defendant to the gun, which was not lawfully done, and, linking the gun to the crimes, which, again was not done.

The fact is the State used the gun that was improperly admitted into evidence as only a foundation was laid, and only for Star Liquors. No foundation was laid for 7-11 robbery. No identification was made at trial of the gun in any case. The second, and most important part of the fact-finding process was skipped, left out. This was extremely prejudicial to the defendant because this evidence is the lynch-in of the State's case, and the State cheated. The State did not follow the rules.

What is most important, properly presented, this evidence had it not been identified by the witnesses, the defendant would have probably won his case. Remember, one Star Liquor witness testified "a little black gun," this did not match the gun found in the car. The 7-11 witnesses testified charcoal with virtually no description, but the color does not match the gun found in the car.

To be sure, the State did not prove a nexus between the defendant and the gun in the car. They did not prove a nexus between a gun used at the stores to the gun found in the car. And, the State certainly did not establish a nexus connecting the gun to the defendant and the commission of these crimes.[52]

The State's case is weak so they cheated, by: not following the rules, misrepresenting and mischaracterizing the evidence, and our law, gave out descriptions to eyewitnesses of the defendant after he was arrested. elicited

---

[81]Foundation witnesses "authenticate" the evidence; crime scene witnesses "identify" the evidence as being the "actual evidence used" at that time. In Compare: 6-21-01 T.T. p.47-48 (disagreements between bullet fragment examiners as to whether a match is made or not to a particular gun)

[82]Whitefield supra at 16-17; see also Farmer supra DRE 901

29

C-73

damaging testimony aimed at defendant's character that is not only irrelevant under DRE 402 and 403, but prejudicial as well via DRE 404(a)(b), and by the courts and defense counsel's failure to give both a cautionary instruction and a limiting instruction to the jury to explain how this evidence was to be used.

Turning back to the case at hand, defendant realizes that the State still gets all "reasonable" inferences that can be drawn from the "proven" facts. Since the issue of identity is really the only issue to be proven in this case, and the evidence discussed above certainly has not proven identity, either in cumulation, and surely not if properly used under our Rules of Evidence.

Finally, consideration must be given to the actual facts of the hold-ups themselves.[83] How the clerks were asked for the money and the robbers actions. Were these actions similar enough to support a reasonable probability that they were committed by the same person? The fact dissimilarities are readily available on the trial record. Defendant will compare the Star Liquors robber's actions with those at the 7-11. A fundamental difference between two persons contemplating crimes of this character would be the degree to which each was prepared to use force to achieve his objectives.[84] Thus, the testimony about the use of a gun, the robber demands, and his physical actions need to be accessed. A detailed exposition of facts of each case concerning this character is necessary.

In the Star Liquors robbery, at the first sign of no-compliance to his demands, that robber fired the gun, and when there was even another slight noncompliance, he fired the gun again. He was calm, no nervousness in his voice, and his request was a simple, "I want the money." He also robbed every customer in the store after making everyone get on the floor, as soon as he entered. (See 6-19-01 T.T. pgs. 25-27, 38, 46, 48-49; 55, 60-61, 65-66; 74) This robber also placed the gun barrel end directly to the forehead of the clerk, and, the right side of the temple of a customer.

In the 7-11 robbery, the robber does not attempt to take control at the store, and at the first sign of the noncompliance to his demands no shots are fired. The robber here was nervous, the gun being held sideways, and

---

[83]See Drew v. United States, 331 F.2d 85, 90-93 (D.C. Cir. 1964)(as citing in Wiest v. State, 542 A.2d 1193, 1195 (Del. 1988)
[84]Id. at 92-93

30

$C - 74$

didn't stay still. Also, different was that this robber "didn't directly face [ ] it at us" as testified. This robber's request, (and how many different ways are there really to tell someone "gimme the loot") was different, he says, "give me all the money," and cusses at the clerks. (See 6-20-01 T.T. pgs. 47, 49-52, 60, 63, 70, 81.) And, he didn't rob any customers.

The contrasting facts are clear. The actual use of the gun firing off shots. The ordering of everybody on the floor. Placing the end of the gun barrel and sticking it to each victim's head. A calmness in his demeanor, no nervousness in his voice. The Star Liquors job was pulled-off by a professional bandit. Clearly, the tempo that he was in complete control of that robbery is evident down to the accommodation of a get away car.

Whereas, at 7-11, we have a nervous bandit, hand shaking as he holds the gun, he holds it sideways and never points it directly at any of the clerks despite their boldness in approaching him. He loses his cool, gets angry and cusses the clerks rather than being calm. He did not rob any customers either.

The character of these two robbers is probably about as different as could be if you have a gun and a robber performing a robbery at one of these convenience type stores. Moreover, these types of stores are particularly vulnerable to this kind of crime. They are usually staffed with one or two female clerks, and are natural targets for both professional and non professional bandits. These factors tender less significance, the fact that the crimes were committed against these convenience take-out type stores. These circumstances all fall into an obvious "tactical pattern" that would suggest itself to "almost anyone disposed to commit a depredation of this sort."[85] The [State's] conclusion [is] the result of the 'superficial similarity' of the[se] two crimes and the way which they were committed.[86]

Defendant will now present arguments supporting the prejudicial effects he suffered as a result of the unfairness in his trial.

## ARGUMENTS

Argument For Ground One:

---

[85] Drew supra at 93
[86] ibid.

31

$C - 75$

Defendant was unaware that his trial counsel entered into a "stipulated agreement," for him,[87] with the State[88] regarding defendants prior criminal "status" to be brought in front of his jury. This stipulation undermined defendant's case. Defense counsel acted without defendant's "knowledge" in waiving defendant's rights to a separate trial on the PDWPP counts. It should be noted that as of the time of this writing, Counsel Hillis nor the State has provided defendant with a copy of Mr. Hillis affidavit in his response to this claim. We are left "without a clue" as to Mr. Hillis response to ground one as to whether his affidavit properly states: the date, time and location of Hillis "consultation" with the defendant, or the nature and extent of counsels "explanation" as to what counsel actually "told" defendant or "explained to defendant so defendant could make a "knowingly, voluntarily and intelligently" made choice in this matter.

The introduction of the stipulation was an unreasonable decision made by counsel. It was deficient performance that introduced evidence that had absolutely no strategic or tactical value unless defendant is taking the stand. But, it was already agreed before trial that defendant would not be taking the stand. Refer to: June 21, 2001 T.T. pgs. 53-54.

> Mr Hillis: "I speak with all my clients as I did with mr. Bacon some times in advance ot the beginning of the trial about the decision to testify . . . I did give him my advice. And it's my understanding that based on our decision and his understanding of his rights, he's elected not to testify. That's consistent with the advice I gave him." Id.

The important issue here is not "whether" defendant made this stipulation but "why," on earth was it made? Defendant asserts this stipulation but "why," on earth was it made? Defendant assets this stipulation is a "mistaken . waiver" of his rights. It was not done "knowingly," and it was not done "intelligently" because defendant did not know about it, and it was not "explained" to him in order to make a "voluntary" choice in the matter. Counsel never explained the harmful effects of such a stipulation when defendant does not take the stand. The prejudice asserted is in the record and in the State's Response, which highlights this: "In asserting this claim, the defendant fails to recognize that defense counsel secured a stipulation from the State . . . . You [the jury] must accept these facts as true for the

---

[87] See Affidavit Exhibit A. Before this brief research defendant did not even know "what" a stipulation was. Counsel never explained it to him.

[88] This stipulation was revealed in the States Response to this issue.

32

$C - 76$

purposes of this trial . . . . Defendant, by virtue of his "prior convictions," achieved the "status" of a person prohibited from possessing a firearm.

While a stipulation of this type may have been desirable for a defendant who takes the stand and testified, where an exposure of his prior bad acts and convictions are permitted to be raised in front of the jury, "a choice" to be made by defendant as to whether to testify on his behalf or not, is the distinguishing factor here in this instant case as it was a distinguishing key fact in Sexton v. State.[89] Sexton is not on point on this issue. State v. McKay[50] points out

[t]he presence of two charges in the indictment which create issues of particular prejudice [ ] Escape After Conviction and [ ] Possession of a Deadly Weapon by a Person Prohibited Evidence presented to support these charges conveys to the jury the defendants prior criminal record and status as a prisoner. Neither of these charges has a "direct relationship" to the other offenses and can be proven without reference to the remaining offences. Id. at 262-63 (emphasis supplied)

Counsel knew defendant was not taking the stand unlike Saxton supra who elected to take the stand and be exposed to DRE 607 and 609(a) impeachment by evidence of convictions of a crime. When a defendant "chooses" to testify his convictions for a felony could be brought out for impeachment purposes[91] the difference between a PFDCF and a PDWPP is that while a PFDCF is permitted (it is a "dependent" felony), a PDWPP is required to be severed because it required "evidence" of defendants past convictions to prove this offense element, to come before the jury.

We are left "scratching our heads" here wondering how and most importantly "why" was the stipulation made by defense counsel in this particular case circumstances. "[D]efendant [is] not satisfied that the stipulation appropriately shielded the jury from his prior convictions." The State "downplays" the significance of the "speculation" that this jury (albeit, an uninstructed jury as to the 'limited purpose' of this stipulation) would. and was given "free-rein" to imagine "what" the nature of the prior crimes defendant committed to where it waqs a felony charge to merely "possess" or even "control" a gun through another person. In fact, the State used this evidence as a launching pad" to introduce other highly prejudicial evidence to reel in front of the jury," of other prior irrelevant actions and "bad

[89]Sexton, 397 A.2d 540 of 544 (Del. 1979) Sexton testified at his trial the Court noted this.
[90]McKay, 382 A.2d 260 at 262-63 (Del.Super. 1978)
[91]Accord. State v. Walls, 541 A.2d 591 (Del.Super. 1987); Desmond v. State, 654 A.2d (Del. 1994)

33

C-77

acts,"[92] evidence. Specifically, even this Court recognized that evidence of defendants prior convictions was brought to the attention of this jury during trial. See June 20. 2001. T.T.pgs. 110-113.

> The Court: Okay. The other point I wanted to make is that they [the jury] are going to know he's [the defendant] a person prohibited because he stipulated to that.
> Mr. Hillis: That's absolutely true, Your Honor.
> The Court: And so given that fact, if somebody should know what the Plummer Center is, I don't find it prejudicial in context with a person prohibited. Id. at 113 (emphasis supplied)

And, despite the States contention that "the defendant" was "satisfied" that the jury would "be shielded" from his criminal record is curious since the record does not reflect defendant "knew" or had "knowledge" of this stipulation, therefore, defendant could not be satisfied." In fact, the State deliberately choose to "notify" the jury of defendants "status" within the first five minutes of the trial in the opening statement. See June 19. 2001, T.T.p.6. "And finally, people for various reasons are prohibited from possessing a firearm in this Sate. The defendant was 'one of these people.' He possessed a gun and that's a crime."

A felony charge is a very serious offense. This "shield" was a rather "transparent shield" to be sure. Consider the wording of this stipulation itself.[93] This stipulation allows "speculation" by the jury as to what "evidence that the defendant was a person prohibited by law from owning a firearm, and the jury instructions concerning the "elements" of these charges further emphasis this "status." Particularly, prejudicial because a limiting jury instruction was not given regarding this prior crimes evidence.[94]

The ruling that this Court made supra refusing to grant a mistrial because specifically of this "stipulation" because of the assumed prejudice resulting in the reference by sate witness to defendants prior incarceration as being "released" from the Plummer Center,[95] evidence of defendants prior criminal status. This is similar to the circumstance in Flonnery[96] where the jury was exposed to a remark of "an unspecified felony." Twice, the jury was "left to speculate"

[92]DRE.402, 404(a)(b); See Moorhead v. State. 638 A.2d 52. 56 n.4 (Del. 1994) "Evidence of prior acts is not admissible simply because evidence of other acts has been introduced... unless it is relevant, probative, clear, and not unfairly prejudicial.")
[93]See 6-21-01 T.T.pgs. 52-53
[94]This will be discussed infra.
[95]See 6-20-01 T.T.pgs. 110-113
[96]Flonnery v. State, 778 A.2d 1044, 1056 n.5,6(Del.2001); See also Loper v. State 637 A.2d 827 (Del.1994)

34

C-78

the nature of defendants criminal background without either a "cautionary," or a "limiting" jury instruction given to the jury instructing them to disregard the "release from Plummer Center," and, to "limit" the jury's fact-finding concerning the stipulation evidence, as required to be given by this Court.[97] Prior "crimes" evidence "limiting" instructions are mandatory since 1988. Howard v. State.[98] The distinction between "discretionary" and "mandatory" jury instructions is explained in Wooters v. State[99] as distinguishing mere "bad acts" to "uncharged criminal behavior," as in Howard supra. A further distinguishment is made between "cautionary" instructions and "limiting" instructions. See Major v. State.[100] Defense counsel in order to claim "strategic or tactical waiver," this "waiver" must be present on the trial record. State v. Dorsey[101] even if it is a "cautionary" instruction. Sawyer v. State.[102] These instructions are required to be given sua sponte by the Court as the evidence dictates. Bullock supra (citing Zimmerman v. State).[103]

Additionally, counsel's performance was deficient in his failure to request "cautionary" and "limiting" instructions as required under Getz v. State,[104] DeShields v. State,[105] Allen v. State,[106] Milligan v. State,[107] and Cobb v. State,[108] that the jury should be carefully instructed regarding the "limited purpose" for which this type of bad acts, prior acts, or prior crimes evidence is introduced. Indeed, the Delaware Supreme Court in Major supra explains that, the strategic usage of limiting instructions are so the jury understands that the bad acts given in evidence they obviously heard is given a limited use for their fact finding mission. Id. See Also DRE 105.

There is no evidence in the complete trial record any such instructions were given, or even requested, by counsel, or this Court.

[97] Bullock v. State, 775 A.2d 1043 n.4 (Del. 2001)
[98] Howard .549 A.2d 692, 694-95 (Del. 1988) (after Weber "expanded the scope" to uncharged crimes)
[99] Wooters. 625 A.2d 280[*5] (Del. 1993); O'Conner v State 1990 WL726006(Del.Supr.)
[100] Major. 1995 WL236658 (Del. Supreme)
[101] Dorsey .2001 WL1079013 (Del.Super.) Absence of ruling on record; Holtzman v. State 718 A.2d 526(1998)
[102] Sawyer, 634 A.2d 377 n.4 (Del. 1993)
[103] Zimmerman, 565 A.2d 887, 890 (1990)
[104] Getz, 538 A.2d 726, 734 (Del. 1988) landmark case for Howard supra.
[105] DeShields. 706 A.2d 502, 507 (Del. 1998) explains Getz analysis to be performed.
[106] Allen, 644 A.2d 982, 984-85 (Del. 1984) (relevance)
[107] Milligan 761 A.2d 6 n.6,7 (2000) Court must limit juries consideration of other bad acts by specific instructions.
[108] Cobb, 7.65 A.2d 1252, 1256 (2001)

C - 79

Regarding the State's Response to defendants prejudice claim on this issue, "[c]learly the possession of the firearm was part of the same transaction." is another example of the State's general tenure toward this case. One of unfairness. It's well established in this Courts holding in McKay supra at 262-63, that a PDWPP does not have a direct relationship to the other offenses of this same exact nature, and can be proven "without reference to the remaining offenses. Id. The prejudice the defendant may suffer is cited in Wiest v. State, (citing McKay supra) and has been described in the following terms:

> (1) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; (2) the jury may use the evidence of one of the crimes to infere a general criminal dispostion of the defendant in order to find guilt of the other crime or crimes; and (3) the defendant may be subject to embarrassment or confusion in presenting different and separate defenses to different charges. Id. (emphasis added)

The essence of this ground issue is that defendant's counsel's deficient performance that fell below the objective standard of reasonableness caused this prejudicial error. There was no reasonable tactical or strategical value concerning the circumstances of defendants trial that made this stipulation "sound" trial strategy.[109] This unprofessional error was magnified by counsels (and Courts) failure to provide limiting jury instructions to limit the scope of this evidence to only that of the three PDWPP. Counsel's professional judgment was outside the wide scope of professional reasonable representation falling below an objective standard of reasonableness in the totality of these circumstances[110] knowing defendant was not taking the stand "before" trial. Defense Counsels failure to move for severance of these charges particularly in light of the well established McKay decision that explains the "exception" for these particular charges was unreasonable and unprofessional for failure to investigate this clearly favorable avenue of relief.[111] Defendant was denied a fair trial, a result that was unreliable,[112] and there's a reasonable probability that the outcome of the proceedings would have been different but for counsels unprofessional errors.[113] (As this Court noted in

---

[109] See Berryman v. Morton, 100 F.3d 1089 (3rd Cir. 1996)(unreasonable trial strategy)

[110] Strickland v. Washington 466 US 668, 687-88, 690 (1987)

[111] Wiggins v. Smith, 539 US, 510 (2003); Williams v. Taylor, 529 US 362 (2001)

[112] Strickland, 466 US at 687

[113] See Williams v. Taylor, 529 US at 391-92 (Clarified earlier exceptions explained in Nix and Lockhart cases should be narrowly applied.

36

$C - 80$

denying the motion for a mistrial). To prove prejudice the defendant must establish a reasonable probability that the result of the proceeding would have been different. Strickland at 692. The United States Supreme Court rejected the prepostion that defendant must prove [the higher standard] "more likely than not" that the outcome would have been altered. Id. See also Woodford v. Visciotti.[114]

Had Mr. Hillis not introduced this "stipulation" there is a reasonable probability that this court would have rules favorably on the mistrial motion. More importantly, defendants prior criminal convictions and prior status as a convicted felon would not have been before this jury.

## Argument For Ground Two:

The State's Response to ground two's joinder is conclusionary in that the State does not provide any legal authority explaining Rule 8(a)'s four requirements elements, or definitions of what circumstances constitute, "the same or similar character" of a robbery offense. The character of the Star Liquorers and 7-11 robberies is discussed above in "facts" section supra and is explained in Drew[115] supra at 92-93 n.12. The State does not explain or provide any legal authority defining what "actual circumstances" provide the relevant evidence to constitute parts of "a common scheme or plan." This is explained in Drew at 90 (citing Pointer v. U.S. 151 US 396 (1894)[116] and McElroy v. US 164 US 76 at 79-80 (1896)[117] and O'Conner v. State[118] where our State Supreme Court describes the "common scheme" exception as involving either:

(1) prior acts which are so unusual and distinctive that their relationship may establish identity,[119] or

---

[114]Woodford v. Visciotti, 537 US 19, 22-23 (2002)

[115]Drew v. U.S. 331 F.2d 85 at 92-93 n.12 (a detailed exposition of the facts is necessary review the actual facts of the hold-up-clothing really doesn't go toward "similarity" nor does the fact of vicinity. The "same or similar character" analysis is how the clerks were asked for the money and the robbers actions. A fundamental difference between the persons contemplating crimes of this character would be the degree to which each was prepared to use force to achieve his objective. Thus, the testimony about the use of the pistol in one case where it was shot twice, and the use of the pistol in the other case takes on an "enchanted significance.")

[116]Pointer 151 US 396 (1894) The S.Ct. addressed a joinder involving a defendant with four counts involving murder of two people on same day, at the same place, with the same kind of instrument was not prejudiced by joinder, because the proof of each crime would have been relevant in a separate trial of the other.

[117]McElroy, 164 US 76 at 79-80, 17 S.Ct. 31 at 32 (1896) states the basic three factors, "In a matter of being held out to be a habitual criminal, in the distinction of the jury or otherwise. "[W]e do not think the statute authorizes the joinder of distinct felonies not provable by the same evidence and in no sense resulting from the same services of acts." Ibid.

[118]O'Conner, 577 A.2d 754 (1990)

[119]Drew supra at 89, 90, 92 (a detailed exposition of the facts to the robbery is necessary)

37

$C - 81$

(2) where the other acts form part of the background of the alleged act, to which it is inextricably related and without which a full understanding of the charged offense is gained. Id. (citing Getz supra 538 A.2d at 733. The Getz Court held that the State could not use "common scheme" exception to introduce evidence of fathers prior sex relations with his daughter because prior acts were isolated events in time depicting no common plan other than multiple instances of sexual gratification. ibid.)

The State concludes that the record supports a legal finding of a "focused time frame," a "similarity of offenses" and "offender descriptions" establish the charged crimes as constituting a common scheme or plan. The premises supporting the State's conclusion are fatally flawed in the following respects. The robberies were committed in a two day period at different times of the day. This is not a "focused time frame" the Supreme Court is concerned with. The focused time frame[120] in O'Conner specifies in part two of the formulas are explained in part, "to which [the other acts] [are] inextricably related and without which a full understanding of the charged act is gained." Id. See Getz at 733; Pope v. State.[121] Analyzing the States legal authority being Coffied v. State [122] specifically as to the focused time frame, the Sate does not tell us that Coffield's robberies were committed "all three in the same morning." The relevance of this is that Coffield's case rests its holding on Younger v. State[123] where the focused time factor material to that holding was specifically attributed to rapes that occurred at about the same time of day, in the same neighborhood, but the Court made it clear that because Younger confessed and linked himself,[124] this being a necessary element of the Younger Court's holding just as the "consistent" exquisite detailed descriptions of Coffield by the victims were a key element in Coffield's holding. Younger supra rests on McDonald v. State[125] and McDonald rests on Bantum v. State.[126] And Bates v. State[127] cited in Coffield, circumstances consisted of a murder and attempted murder within minutes, in the

---

[120] In O'Conner, defendant admitted to opening the doors of two other rooms. Other witnesses testified O'Conner fled each time when they opened the door. This was evidence of similar pattern and closely intertwined in time (within minutes). Another key factor in allowing this evidence was consideration given to fact that defendant was not accused of any other crimes, only opening doors, thus it was unlikely that the jury would seek to punish for merely opening doors. FINALLY the Court did give a limiting instruction immediately to jury "limiting" the use of this evidence to only that of evidence showing a common scheme or plan.

[121] Pope, 632 A.2d 73 n.6,7,8 (1993)(explains intertwining evidence circumstances)

[122] Coffield, 794 A.2d 588 (Del. 2002)

[123] Younger, 496 A.2d 546, 550 (1985)(distinguished in that Younger confessed linking himself to these crimes)

[124] A key factor as in O'Conner, supra.

[125] McDonald 307 A.2d 796, 798 (Del. 1973) circumstances of murder of a mothr and the daughter raped a couple hours later, in same house on the same day. The evidence was so inextricably intertwined as to make proof of one crime impossible without the other.

[126] Bantum, 85 A.2d 741 (Del. 1952) circumstances of two victims in the same house, hours apart, on the same day. Accord Pointer v. US 151 US 396 (1894)(same place, same day)

[127] Bates, 386 A.2d 1139 (Del. 1978)

C - 82

same place on the same day . Based on well established legal authority in all cases but one, the crimes occurred within

minutes or house, on the same day, at the same place. The only exception was Younger, but this was still at the same

time of day, in the same neighborhood with the confession as a distinguishing feature, as to the linkage element.

Contrasting this instant case facts, whereas the robbery of the Star Liquors was late afternoon-early evening

and the 7-11 robbery was late night a different time, on a different day, at a different location. The State's conclusion as

to the focused time frame concerning the crimes that defendant got convicted of, is incorrect as a matter of law in their

formulation, considering the relevant factual circumstances in this case. Even if, and attempt is made to "enlarge the

focus" of the time frame element, the first evidentiary gate the State must overcome in the focused "time frame is

RELEVANCE." "Remoteness is not a concern, relevance is," as our State Supreme interpreter of laws authoritatively

scolded this Court and the State in 1994 in Allen v. State.[128] This determination is made by the Court when evidence is

proffed. See DRE 402; Farmer v. State.[129] Evidence must have independent logical relevance to the issue of ultimate

fact in the case-in-chief. DeShields v. State.[130] The Supreme Court ruled that the State cannot prove the charged crime

by proving another crime against the victim because there was no independent relevance. See Taylor v. State

(explaining) and, this DRE 402 relevancy ruling must appear on the record supporting the relevance of the proffered

evidence. State v. Dorsey; Holtzman. (same)

In fact, the same type of crime, on the same night, excluded as not being relevant as to the issue of a suspects

guilt for a present charged crime because the probative value was out weighted by the prejudice effects, in Hoey v.

State. The State's conclusion that the element of a focused time frame that is relevant in this instant case

circumstances is not correct, it is a fatally flawed conclusion.

The State also submits that there is a "similarity of offenses" element with the premises of this conclusion

based on '"offender descriptions" which are not premises for this element just as, driving the same car stolen from the

---

[128] Allen, 644 A.2d 982, 987-88 n.5,8,10 (1994)(Relevance of evidence the question of whether the trial judge properly
formulated and applied legal precepts governing the admissibility of evidence is one of law.)
[129] Farmer, 698 A.2d 949 (1997)(irrelevant evidence)
[130] DeShields, 706 A.2d 502, 507 n.7(1998)

$C - 83$

first offense is not relevant to "this" element. (May be if a car was also carijacked at the later 7-11 robberies this might make that hypothetical evidence more meaningful, but that did not happen.) The O'Conner Court describes this similarity of offenses, as prior acts which are so 'unusual and distinctive' that their relationship to the charged offense may establish identity. Id. "In assessing this [type of] evidence a detailed exposition of the facts of each crime is necessary." Drew supra (as cited in Wiest supra) and "relevancy" must be determined. A Getz analysis must be done. See Weist supra at 1195-96(FN3) regarding independent relevance. DeShields supra at 508, Trial Courts "must" carefully examine offers of proof that acts of other misconduct have independent logical relevance. Ibid. The Weist Court makes it clear that this does apply to Joinder of Offenses as explained, "[e]ven if it is determined that

> the prejudice by [defendant] is not sufficient to "require" severance of separate offenses, a crucial factor to be considered in making a final determination [ ] should be whether evidence of one crime would be admissible in the trial of another crime. Id. at 1195-96 [FN3] [Citing Bates supra at 1142 echoing McElroy supra] Traditionally, the evidence of one crime is inadmissible to prove a general disposition to commit another crime, even if the crime is of the same nature and character as the offense charged. Getz supra at 730. Evidence of other offenses is admissible when it has "independent logical relevance" and its probative value to the State has been balance against the prejudicial effect of the defendant. Weist at 1195-96[FN3]

The record does not support the preposition that evidence of each "set" of robberies[131] would be admissible at separate trials. Generally, relevance is determined by examining the purpose for which the evidence is offered; that purpose in turn, accommodates concepts of materiality, i.e., the evidence must "be consequential" to action and probative value, i.e., the evidence must advance the likelihood of the fact asserted. Farmer supra. In DeShields the state sought to prove Modus Operendi evidence, the Court held this fact had no independent logical relevance to the material issue in dispute. The Hoey supra at 1179-80 court excluded this same "type" of crime evidence, on the same night as not being relevant to the issue of Hoey's guilt for the present crime charges.

---

[131] As a housekeeping matter, Defendant would like to clarify that he is not arguing that all these charges should have been severed under Rule 14. But only the 3 PDWPP offenses as stated in ground one to be separately tried by themselves; the carjacking should be severed from all the rest of these charges; the "sets" of the separate location charges i.e. Defendant is not challenging the properly joined offenses of Poss. Firearm During the Commission of a Felony. (PFDCF) and WDDCF (wearing disguise) and Agg. Menacing and Robbery I set of charges as applied to Star Liquors, and these identical "set" of charges concerning the 7-11 robbery. Defendant is challenging the joinder of these Star Liquor "set" of charges that were joined with the 7-11 store "set" of charges. Defendant is also challenging the 17th Street joinder of charges to the 7-11 charges.

40

C-84

The State offers no evidence to support its conclusion of "a similarity of offenses. [I]n order to accomplish this

a detailed exposition of the facts is necessary. Drew supra at 92. The Drew court in their analysis of United States

Supreme Court rulings in Pointer supra and McElroy supra explains that:

> [a] common scheme or plan embracing the commission of two or more crimes so related to each
> other to proof of one tends to establish the other when for example, the two crimes arise out of a
> continuing transaction, or the same set of events, the evidence would be independently admissible in
> separate trials. Id. At 90. Similarly if the facts surrounding the two or more crimes on trial show
> · there is a reasonable probability that the same person committed both crimes due to the concurrence
> of unusual and distinct facts relating in the matter in which the crimes were committed Id. This device
> used must be so unusual and distinctive as to be like a signature. Drew (citing McCormick Evidence
> §157) [cf. O'Conner supra first factor.] Turning to the case at hand, a detailed exposition of the facts
> is necessary, "the actual facts of the holdup" –the Court pointed out that clothing really doesn't go
> toward "similarity") nor does the fact of vicinity." Id.

The key to the same or similar character" that is relevant evidence is specifically how the clerks at each

location were "asked" for the money. and, the robbers "actions." This evidence is the relevant inquiry concerning the

similarities in the manner in which the offenses were committed to support a reasonable probability that the offenses

were committed by the same person from which the jury could be asked to infer that the person was the defendant.

This conclusion is buttressed by other factors. In the [Drew] "robbery," the assailant, at first sign of non-

compliance, threatened the clerk with a gun" Drew at 92. Similarly, in this instant case, "at first sign of non-compliance"

not only does the suspect threaten the clerk with a gun, his character is "brazen" and "bold", firing his pistol, not once,

but twice, the second his demands are not complied with. This character "takes over" the complete store at Star

Liquors. And. remains "in control" of himself as well, being described as "calm" and collected. Ordered everybody even

the customers on the floor as soon as he entered. He kept his cool, he did not raise his voice, he was not nervous,

"just very demanding that you could hear it in his voice." This character pointed his gun directly at the clerk and

customers heads, he did not hold it sideways, nor did he shake with nervousness, and this character kkept complete

control up to the point of actually taking a car as an escape vehicle and told the owner, "Man, I'm not going to hurt your

car, I'm not going to crash or something like that." (An inference that the fellow who owned the car would be getting it

back in the future when he was done with it.) This robbery no doubt has the ear-mark of a seasoned professional,



based on the testimonal evidence derived from the Star Liquors robbery.

In the "attempted" robbery [in Drew], there was no threat of violence, in fact the dragen seems to have een most reluctant one indeed. This circumstance could raise a significant doubt as to whether [Drew] was involved in both crimes. A fundamental difference between two person contemplating crimes of this character would be the degree to which each [robber] was prepared to use force to achieve his objective. Drew at 92-93.

· Similarly, the contrasting differences between the personality or character of the robber at Star Liquors compared to the suspect at the 7-11 store, using this analysis of "[a] fundamental difference between two people 'contemplating' crimes of this character." It is doubtful that a seasoned robber with the experience of the character at Star Liquors that store does not have a mandatory money drop, contrasts significantly to a 7-11 store which has "advertisements" on the entrance doors, on the service counter, and, other "high visibility" locations that the store "does not carry over fifty-dollars at any time," plus the visible video cameras make a 7-11 store a poor choice for a robber right from the beginning, as these are obvious deterrents.

The contrasting differences continue in this case. In the 7-11 robbery "the dragon" seems to have gotten a lot less ferocious than in Star Liquors. The character here does not have control, he is not calm, he is not collected, and he loses his cool. The robber does not make any attempt to secure, or take control of the store premises. This 7-11 robber is "a nervous robber," the gun "shakes" when he holds it. He has a distinguishing difference in the way he points his gun, he holds his gun "sideways." Also different, this robber did not directly face the gun at the 7-11 clerks, contrasting the Star Liquors robber's actions. This robber also "loses his cool," and calmness, and cusses the clerks. And, he does not rob the customers who were around the store. In fact, this robber lets the clerks walk around and even approach him to within an arms length.

The character and personalities of the Star Liquors robber and the 7-11 robber are probably about as a contrasting character as one could use as a perfect example to illustrate what is not"the same or similar character," as a premises for that element. The testimony about "the use," and, "the handling," of the pistol in these robberies takes on an enchanted significance. The differences in demeanor are totally on opposite sides of the poles. One guy is "cool as

42



a cucumber" at Star Liquors, the 7-11 guy is as"aggravated as a mad rapid dog." In both cases there were problems with handling the money. In fact, the Star Liquors guy had more reason to be nervous and lose his cool because he's got 4 or 5 customers within feet of him, but he does not, even when the clerk drops the money on the floor a couple times, and the money drawer jams as well. When this sort of thing happens at 7-11, even without the 4 or 5 customers around him, that robber goes ballistic and screams curse words at the clerks.

· There are "acts which are so unusual and distinctive in these cases, but their relationship is ultimately at odds." They are "not" the same or similar character based on the correct legal standard used to evaluate this element. The States conclusion is fatally flawed as to these offenses having the same or similar character, or any similarity. These are surely two separate and distinct robberies committed by two different robbers.

The State concludes its conclusions with an "offender descriptions" with premises of "an individual using a gun, wearing a disguise, matching a "consistent" physical description." From the review of all the witness testimony, we already are aware that several descriptions were given as to the gun, from a "long barrel" to "a small one," from "dark black," to a lighter "charcoal" color. That does not really help us here. Most robbers in this area use guns, and disguises which many colors and styles were described by witnesses, common as are the four different colors of bandanas and scarves as well as the several colors of jackets. As for a "consistent" physical description the idea of the "consistency" goes more toward the "consistent different descriptions" each witness gave.

A review of the actual facts of the holdup goes to "similarity" -- clothing or similarity of dress does not offer evidence of similarity" Drew at 92. Had each witness given a consistent" physical description as was given in Coffield at 590-91 being the same descriptions at all three robbery locations, is in "sharp contrast" to the descriptions given by witnesses in this instant case. Consider the same "stocky black man, the same "dark blue stocking cap," the same "dark blue hooded sweatshirt," the same "sunglasses" and the same "small," "silver," handgun. Compare these descriptions to the 7-11 and Star Liquors descriptions by witnesses, one of which the State supplied a witness with information after suspect defendant was arrested. Having clearly distinguished Coffiedl supra as having no precedential value since its factual context was different in material facts and circumstances, it is obvious that the State has not, did

43



not, and can not prove there is evidence in this case to support a lawful joinder of the 7-11 set of offenses, to the Star Liquor set of offenses. Two completely different characters committed these offenses, and they were not the same person.[132]

Prejudice to defendant. The defendant in this instant case did claim and substantiate his claim of prejudice, see Ground Two of Petition in pertinent part.

> This permitted the jury to cumulate the evidence, and was free to infer a general criminal disposition of the defendant. As a result the defendant was convicted of most of the counts charged....

In fact, the State in their Response failed to address defendants claims of prejudice so they are undisputed. The State also "sidestepped" "the cause" of defendants failure to challenge the joinder prior to, or, during trial which is clearly stated in Ground Two of Petition.

> Trial Counsel was ineffective for failure to move for severance of these charges, failure to object at trial, and failure to identify and raise these claims on direct appeal.

The State relies on Bates supra as cited in Coffield at 595, the language the State uses is, "Here, [defendant] has offered only unsubstantiated speculation about prejudice. His assertion is clearly insufficient under the standard we articulated in Bates v. State." State Response page 10. The substantial difference in the Bates case is that Bates moved for a severance of a "dependant" felony, being a PDWDCF. Of course, there is no possible showing of prejudice because on a PDWDCF charge, (as contrasted to a PDWPP, or other "non-dependant" charges that are not linked to that particular crime) all the necessary elements of the "host offense" are relevant and wholly material, thus, fully admissible to prove the elements of that (PDWDCF) offense, Bates other crimes were minutes apart at the same location.

Prejudice can be shown if one crime joined would not be admissible in trial for the other crimes under DRE 404, this is a crucial factor. Bates at 1142 as cited in Wiest supra. The absence of competent evidence of [defendants] guilt is a factor to be considered. Jenkins v. State.[133]

---

[132] The confusion here was probably the result of the superficial similarity of the two crimes and the way they were committed, and the jury probably was not confused or probably did not misuse the evidence Drew supra at 93.
[133] Jenkins, 230 A.2d 262 (1967)

44

C-88

The prejudice which a defendant may suffer from a joinder of this type is presented in defendants Petition

under Ground Two and its authority as substantial prejudice comes from Weist at 1195 (citing McKay at 262 and Drew

at 88.) "The question of whether [defendant] was prejudiced by the possibility that the jury used evidence of one crime

to convict of the other or cumulate the evidence to find guilt under both charges." Drew at 89. In Weist 'and McKay

both describe the prejudice a defendant may suffer in the following terms:

> (1) the jury may accumulate the evidence of the various crimes and find guilt when, if considered
> separately, it would not so find; (2) the jury may use the evidence of one of the crimes to infer a
> general criminal disposition of the defendant in order to find guilt of the other crime or crimes; and
> (3) the defendant may be subject to embarrassment or confusion in presenting different and
> separate defenses to different charges. Weist at 1195. (Citing McKay; Drew)

> In short, we cannot find an absence of prejudice on the ground that the evidence would have been
> admissible in separate trials. [In the States opening they "intertwined" the carjack evidence with all
> four sets of charges] The State strenuously argues that these two sets of crimes were sufficiently
> similar to come within [the same or similar character or offenses constituting a common scheme or
> plan] exception to the other crimes rule. However, once that argument has been rejected, the
> "similarity" point cuts the other way, [causing substantial prejudice]. Every suggestion at the trial
> that the two crimes were closely parallel increases the likelihood that the jury may become confused,
> or misuse the evidence [specifically, when absolutely NO LIMITING INSTRUCTIONS WERE GIVEN
> explaining to the jury the limited usage of each piece of evidence to its specific offence]. The more
> similar the crime, the more careful the Trial Court and State attorney must be, to keep the evidence
> separated. Drew at 89.

This effect is multiplied in a case that is predominately a circumstantial case, exactly as this instant case at bar.

This case is brimming with evidence that the jury was permitted to draw "inferences upon inferences." This is

substantially prejudicial as it effectively lowers the burden of proof. There were no surprises that "popped up in this

trial, regarding the joinder issues. There was a pre-trial hearing where counsel had an opportunity to explore some of

the specifies in these cases. Counsel had access to evidence including the witnesses. In fact, they worked at a public

place, surely not too hard to track down. Due to the array of physical descriptions on the police reports, no fingerprints

at the scenes, no direct evidence against the defendant. This was fertile grounds to expand an investigation beyond the

states proof, and counsel's decision not to fell short of prevailing professional norms. Wiggins v. Smith,[134] Lockyer v.

---

[134]Wiggins, 529 US 510, 123 S.Ct. 2527 (2003)

45

$C-89$

Andrade[135] (citing Williams v. Taylor).[136]

An analysis of this instant case facts reveals that counsel did not "exercise reasonable professional judgment." Wiggins at 2536. (Citing Strickland at 691.) The focus is not "whether" counsel should have moved for a severance, but the focus is whether the investigation supporting counsels decision not to move for severance was itself unreasonable. Ibid. CF Williams at 415; Kimmelman supra [137]

> This is, "[b]ecause that [adversarial] testing process generally will not function properly unless defense counsel has done some investigation in the State's case and into various defense strategies, we noted that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigation unnecessary. Id. (citing Strickland at 691.)

The United States Supreme Court has held that a single serious error such as this may support a claim of deficient performance. Kimmelman supra at 383 n.18, 19 (citing United States v. Chranic;[138] see also Smith v. Murry;[139] Murry v. Carrier.[140] Regardless of whether counsel had crafted sound trial strategy in the trial's entirety. Kimmelman supra. The Strickland court explained that access to counsels skill and knowledge is necessary to accord defendants the ample opportunity to meet the case of the Prosecution to which they are entitled." Id. 688 US at 685. (Quoting Adams v. ex rel Coma[141]) "Counsel has a duty to bring to bear such skill and knowledge as well render the trial a reliable adversarial testing process." Id. at 688. Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecutions case and into defense strategies, we noted that "counsel has a duty to make reasonable investigations [into both the case facts, and, the law] or make a reasonable decision that makes a particular investigation unnecessary" Id. at 691 (citing in Kimmelman at 384)

This instant case trial record reveals defendant's counsel Mr. Hillis, failed to move for a severance not due to strategy considerations but because counsel was unaware of each cases "specific factual character" surrounding the

[135] Lockver, 123 S.Ct. 1166, 1175 (2003)
[136] Williams, 529 US 362, 407 (2001)
[137] Kimmelman, 477 US 365, 384 n.6
[138] Chranic, 466 US 648, 657, n.20 (1984)
[139] Smith. 477 US 527, 535 (1986)
[140] Murry, 477 US at 488 (1986)
[141] Adams, 317 US 269, 275-76 (1942)

46

$C-90$

Star Liquors and 7-11 store robberies. Counsel's failure to investigate was not based on "strategy, but on counsel's mistaken beliefs that there was a single perpetrator in these robberies. In viewing counsel's failure to conduct any investigation from defense perspective at the time, relying solely on evidence supplied by the State, counsel decided to forego that stage of pretrial preparation, and even applying a heavy measure of deference, counsel's decision not to investigate was unreasonable and contrary to prevailing norms. In this case an investigation would have produced the different character evidence.

The failure to move for a severance despite a failure to perform a factual investigation, still considering the totality of circumstances portrays a startling ignorance of the law—or just plain inadequate preparation. See Kimmelman at 385. "Failure to conduct any pretrial investigation generally constitutes a clear instance of ineffective assistance of counsel," United States v. Gray [142]"failure to go to the scene of the [crime] and locate potential witnesses, interview witnesses, constituted ineffective counsel." Id. at 711-12. "For counsel to rest on his errors as strategy or defense theory, first necessitates the existence of one. Berryman v. Morton;[143] Deuca v. Lord[144] (same).

In cases resulting in failure to move for a severance resulting in deficient performance of counsel see United States v. Myers;[145] United States v. Yizar;[146] Williams v. Washington.[147] Passing over clearly inadmissible evidence which is prejudicial to defendant has no strategic value, jurors not likely to remain impartial. Lyons v. Cotter[148] as is counsel failure to request a limiting instruction. Id.

> The standard for "outcome" of the proceedings stated in Strickland is explained more fully in Woodford v. Viscentti.[149] The Woodford court explains the "reasonable probability" standard in the prejudice prong specifically rejecting the preposition that defendant had to prove it" more likely than not that the outcome would have been different. (Citing Strickland at 693.) This standard is based on Agurs cited in Strickland "spoke of evidence which raised a reasonable doubt, although not necessarily of such character as to create a substantial likelihood of acquittal . . ." United States v.

[142]Gray, 878 F.2d 702, 711-12, n.7, 8 (3rd Cir. 1989)
[143]Berryman, 100 F.3d 1089, 1095 (3rd Cir. 1996)
[144]DeLuca, 77 F.3d 528, 583 (2rd Cir. 1996)
[145]Myers, 892 F.2d 642 (7th Cir. 1990) (same)
[146]Yizar, 956 F.2d 230 (11th Cir. 1992) (same)
[147]Williams, 59 F.3d 673 (7th Cir. 1995) (same)
[148]Lyons, 770 F.2d 529 (5th Cir. 1985); White v. McAminch, 235 F.3d 988, 997-98 (6th Cir. 2000)(wholly unreasonable)
[149]Woodford, 537 US 19 (2003)

47

$C-91$

Star Liquors and 7-11 store robberies. Counsel's failure to investigate was not based on "strategy, but on counsel's mistaken beliefs that there was a single perpetrator in these robberies. <u>In viewing counsel's failure to conduct any investigation from defense perspective at the time, relying solely on evidence supplied by the State,</u> counsel decided to forego that stage of pretrial preparation, and even applying a heavy measure of deference, counsel's decision not to investigate was unreasonable and contrary to prevailing norms. In this case an investigation would have produced the different character evidence.

The failure to move for a severance despite a failure to perform a factual investigation, still considering the totality of circumstances portrays a startling ignorance of the law—or just plain inadequate preparation. See <u>Kimmelman</u> at 385. "Failure to conduct any pretrial investigation generally constitutes a clear instance of ineffective assistance of counsel," <u>United States v. Gray</u> [142]"failure to go to the scene of the [crime] and locate potential witnesses, interview witnesses, constituted ineffective counsel." <u>Id.</u> at 711-12. "For counsel to rest on his errors as strategy or defense theory, first necessitates the existence of one. <u>Berryman v. Morton</u>;[143] <u>Deuca v. Lord</u>[144] (same).

In cases resulting in failure to move for a severance resulting in deficient performance of counsel see <u>United States v. Myers</u>;[145] <u>United States v. Yizar</u>;[146] <u>Williams v. Washington</u>.[147] Passing over clearly inadmissible evidence which is prejudicial to defendant has no strategic value, jurors not likely to remain impartial. <u>Lyons v. Cotter</u>[148] as is counsel failure to request a limiting instruction. <u>Id.</u>

> The standard for "outcome" of the proceedings stated in <u>Strickland</u> is explained more fully in <u>Woodford v. Viscentti</u>.[149] The Woodford court explains the "reasonable probability" standard in the prejudice prong <u>specifically rejecting the preposition that defendant had to prove it</u>" more likely than not that the outcome would have been different. (Citing <u>Strickland</u> at 693.) This standard is based on <u>Agurs</u> cited in <u>Strickland</u> "spoke of evidence which raised a reasonable doubt, <u>although</u> not necessarily of such character as to create a substantial likelihood of acquittal . . ." <u>United States v.</u>

[142]<u>Gray</u>, 878 F.2d 702, 711-12, n.7, 8 (3rd Cir. 1989)
[143]<u>Berryman</u>, 100 F.3d 1089, 1095 (3rd Cir. 1996)
[144]<u>DeLuca</u>, 77 F.3d 528, 583 (2rd Cir. 1996)
[145]<u>Myers</u>, 892 F.2d 642 (7th Cir. 1990) (same)
[146]<u>Yizar</u>, 956 F.2d 230 (11th Cir. 1992) (same)
[147]<u>Williams</u>, 59 F.3d 673 (7th Cir. 1995) (same)
[148]<u>Lyons</u>, 770 F.2d 529 (5th Cir. 1985); <u>White v. McAminch</u>, 235 F.3d 988, 997-98 (6th Cir. 2000)(wholly unreasonable)
[149]<u>Woodford</u>, 537 US 19 (2003)

47

C - 92

Star Liquors and 7-11 store robberies. Counsel's failure to investigate was not based on "strategy, but on counsel's mistaken beliefs that there was a single perpetrator in these robberies. In viewing counsel's failure to conduct any investigation from defense perspective at the time, relying solely on evidence supplied by the State, counsel decided to forego that stage of pretrial preparation, and even applying a heavy measure of deference, counsel's decision not to investigate was unreasonable and contrary to prevailing norms. In this case an investigation would have produced the different character evidence.

The failure to move for a severance despite a failure to perform a factual investigation, still considering the totality of circumstances portrays a startling ignorance of the law—or just plain inadequate preparation. See Kimmelman at 385. "Failure to conduct any pretrial investigation generally constitutes a clear instance of ineffective assistance of counsel," United States v. Gray [142]"failure to go to the scene of the [crime] and locate potential witnesses, interview witnesses, constituted ineffective counsel." Id. at 711-12. "For counsel to rest on his errors as strategy or defense theory, first necessitates the existence of one. Berryman v. Morton;[143] Deuca v. Lord[144] (same).

In cases resulting in failure to move for a severance resulting in deficient performance of counsel see United States v. Myers;[145] United States v. Yizar;[146] Williams v. Washington.[147] Passing over clearly inadmissible evidence which is prejudicial to defendant has no strategic value, jurors not likely to remain impartial. Lyons v. Cotter[148] as is counsel failure to request a limiting instruction. Id.

The standard for "outcome" of the proceedings stated in Strickland is explained more fully in Woodford v. Viscentti.[149] The Woodford court explains the "reasonable probability" standard in the prejudice prong specifically rejecting the preposition that defendant had to prove it" more likely than not that the outcome would have been different. (Citing Strickland at 693.) This standard is based on Agurs cited in Strickland "spoke of evidence which raised a reasonable doubt, although not necessarily of such character as to create a substantial likelihood of acquittal . . ." United States v.

[142] Gray, 878 F.2d 702, 711-12, n.7, 8 (3rd Cir. 1989)
[143] Berryman, 100 F.3d 1089, 1095 (3rd Cir. 1996)
[144] DeLuca, 77 F.3d 528, 583 (2rd Cir. 1996)
[145] Myers, 892 F.2d 642 (7th Cir. 1990) (same)
[146] Yizar, 956 F.2d 230 (11th Cir. 1992) (same)
[147] Williams, 59 F.3d 673 (7th Cir. 1995) (same)
[148] Lyons, 770 F.2d 529 (5th Cir. 1985); White v. McAminch, 235 F.3d 988, 997-98 (6th Cir. 2000)(wholly unreasonable)
[149] Woodford, 537 US 19 (2003)

47

C-93

Valenzuela-Bernall.[150] Id. at 22. "Undermin[ing] confidence in the outcome" is exactly Stricklands description of what is meant by the "reasonable probability" standard. A reasonable probability sufficient to undermine confidence in the outcome." Strickland at 694. Ibid. Williams supra[151] at 393 ("probably effected the outcome") Woodford at 24.

Defendant has shown this Honorable Court the specific circumstances complained of, the prejudice Mr. Hillis'

unprofessional errors have caused, these were not "strategic" decisions. Counsel's performance

> is judged in the preparation or failing to properly prepare by failure to investigate both the law and
> · facts known to him and the rules and law and procedure he is held to know as an attorney
> representing defendants in criminal proceedings. Unless a defendant charged with a serious offense
> [in this case 24 of them] has counsel able to invoke the procedural and substantial safeguards that
> distinguish our system of justice, a serious risk of injustice infects the trial itself. Vela v. Estelle.[152]

In summary, this ground is riddled with unprofessional errors each a substantial error in itself. The case law

cited is on point.

The errors that cumulated in this case are "way past the standards" needed to meet the prejudice and

performance prongs if properly and reasonably applied by this Honorable Court.

Some errors were also made by the Court as well. The actual admission of all these charges and more

specifically the failure to provide the jury with the mandatory "limiting" instructions. The cumulative effects of all the

errors outlined above surely intensifies each error in the composite format.

For these reasons and those stated throughout Ground Two and its facts and argument sections defendant

respectfully prays that this Court reverse these convictions and either vacate the sentences or remand for separate

trials.

## Argument For Ground Three:

Defendant incorporates the "Procedural History," the "Facts" sections above, as well as the pertinent facts

and arguments surrounding Counsel's stipulation to defendant's status on the PDWPP counts that this Court relied on in

its determination to deny Defendant's Motion for a Mistrial concerning the State's introduction of evidence that

---

[150]Valenzuela-Bernall, 458 US 858 (1982)
[151]Williams, 529 US 362 (2000)
[152]Vela, 708 F.2d 954 (5ᵗʰ Cir. 1983)

48

$C-94$

defendant had been "released" from the "Plummer Center."[153] See Exhibit D.[154] Defendant also incorporates those arguments in ground one and two concerning both Court and Counsel's errors in not having a Getz analysis nor providing proper limiting instructions to the jury.[155]

The evidence of defendants three sentences was not permitted pursuant to DRE 404(a)(1) and (b), or, DRE 608(a). Detective's testimony elicited from the State was a "responsive answer" to the specific question the State asked, as defendant had been only alleged to have made only three comments.[156] The pertinent part of this question and answer consisted of the following:

Q: And did he continue to make statements to you?

A: Yes. After I asked him if he understood his rights.

Q: What exactly did he tell you?

A: . . . he made several statements.[157] One of which he made a statement that he was "released" from the Plummer Center. A second statement that he made was that he hadn't slept in three days. And a third statement was to the effect he would brief [sic] that do [sic] 25 years.

Q: And if you could explain Mr. Bacon's demeanor as you observed him on the early morning hours of the 23rd?

A: He was calm. It was almost as if it was an attitude.[158]   (Emphasis added)

Counsel could have prevented this highly prejudicial testimonial evidence from being disclosed to the jury simply by filing a motion in limine to exclude specific evidence on testimony, or motion for pre-trial order prohibiting the state from examining state's witness concerning defendants "release" from Plummer Center and being awake for three

---

[153] 6-20-01 T.T. pgs.110-113

[154] Photocopies of Plummer House news listing escapes from Plummer House generally appearing first in the column and at top of page in our local area newspaper *The News Journal.*

[155] The later of course could not have been accurately accessed under Milligan supra and Cobb supra without a Getz analysis.

[156] 6-20-01 T.T. p.110

[157] See Exhibit B and C, Exh. B was supplied with 3 statements, Exh. C Oct. 30, 2000, discovery to counsel specifically #1. See DRE 103(c)

[158] 6-20-01 T.T. p.111

49

C-95

days, that he might do 25 years. See Exhibit E for an example of such a motion counsel should have filed upon receiving discovery. Although some type of oral agreement may have been conceived between Counsel and State. The State certainly did not honor it.[159]

Counsel also "fell asleep at the wheel" when he failed to object to the State's question "and could you explain or describe for us Mr. Bacon's demeanor . . ."[160] Objectionable under DRE 401 as to relevancy; DRE 403 prejudicial effect; DRE 404(a)(1) references to defendants character or demeanor; and DRE 608(b)(2) "specific instances of conduct to support the [Star Liquors] witness[161] credibility through investigating officer's testimony."[162]

The prejudicial effects of this evidence were enormous particularly when buttressed with the joinder of all these sets of crimes, and Counsel's stipulation as to defendants "status" as a convicted criminal. Compounding this prejudice is the fact that without a limiting instruction on either of these pieces of evidence, "the jury was left free to cumulate this evidence" magnifying or intensifying its effect that the defendant was indeed a convicted criminal.

An analysis of the statement evidence leaves the jury free to infer the following: defendants "release" from the Plummer Center focuses attention to defendants immediate past as being in prison, a convicted criminal. The second reference that "he hadn't slept in three days" is specific reference to the conduct of defendant and also inadmissible under DRE 401, 403, 404(a)(1) and 404(b) because defendant having not said anything other than these 3 statements neither admitted nor denied his participation in these crimes. A Getz analysis was never performed to determine relevancy; to balance the probative value against prejudice to effects of the defendant; to determine the limited purpose for such evidence and to give specific instructions to the jury concerning its limited use,[163] Getz at 730-34 and prodigies of that specific conduct. The evidence that "he would brief [sic] the [sic] do 25 years."

This evidence was particularly damaging considering the context in which this evidence was presented, i.e.,

[159] 6-20-01 T.T. p.112
[160] 6-20-01 T.T. p.111
[161] 6-19-01 T.T. pgs.38,65
[162] Scott v. State, 642 A.2d 767, (Del.1994) See also Getz at 730
[163] DRE 401, 402, 403, 404, 105. See also DeShields supra; Taylor supra (independent logical relevance) Morehead at 56 (evidence of prior acts) Gregory v. State, 616 A.2d 1198 (Del.1992), Dorsey supra; Savage supra (failing to balance the probative value against prejudice effects); Milligan supra and Cobb supra (court must give specific limited instructions)

50

C-96

reference that defendant was a convicted criminal, an inference logically concluded from defendants "release" from "Plummer Center," the earlier statement made by the State in its opening, "the defendant was one of these people. He possessed a gun and that's a crime." (Emphasis added) The potential prejudice here is that the jury was free to infer that defendant was "an experienced" criminal, because he was aware of the "time" he believed he would do based on "prior experience" of course stemming from his "release" from Plummer Center and his "status" of a person prohibited from PDWPP and the cumulative joinder of 24 felony charges. A common person would reasonably and objectively infer an "experienced criminal" character evidence from this statement.[164]

The State in their Response "sidesteps," and, "downplays" and attempts to "legitimize" this evidence as follows:

(1) To be sure, such evidence was not elicited at trial.[165]

(2) Rather, Detective Spence testified that defendant told him that he had just gotten out of the Plummer Center.

(3) This fact was offered without any explanation as to the connection of the Plummer Center to the Department of Corrections.[166]

(4) No testimony was elicited as to the character[167] of the accused nor was any reference made to prior bad acts requiring the Court to engage in an evidentiary assessment.

(5) As no bad acts evidence was presented, defendants proposed analysis was not required. States Response p.10 (Emphasis added)

Defendants reply to these five contentions by the State is as follows: Regarding the first, that this evidence was not elicited. The State supplied the police report to defense on October 30, 2000. Exhibit B and C. At the bottom of

---

[164]See Holtzman, 718 A.2d 528 (Statement evidence of defendant)

[165]Compare: Exhibits B and C to 6-20-01 T.T. p.110

[166]Compare: Exhibits E, General Public Knowledge, *The News Journal* local area newspaper

[167]Compare: 6-20-01 T.T. pgs. 110-111 ("...explain or describe mr. Bacon's demeanor")

51

C-97

this report there are only three statements alleged to have been made by the defendant. Referring to the record, "concerning the statements" defendant made to the witness the State asked witness "what exactly did he tell you?" The police report which the State Deputy Attorneys Office supplied to the defense as a response to their first request, only lists three statements that defendant allegedly "told him." A responsive answer to this rather precise question, i.e., what "exactly" . . . , was the only thing that the detective[168] could respond without being "non-responsive." That is the three alleged statements because there was nothing else the defendant allegedly told this detective according to the report. The State misrepresents this fact to this Court eroding the integrity of these proceedings,

The second misrepresentation to this Court is the State's "mischaracterizing" evidence of defendants "release" from Plummer Center to a "downplayed," "that he had just "gotten out." By mischaracterizing this evidence in the way, relieves the core prejudice of this evidence and is not an accurate inference. Specifically, the jury was presented with "released from the Plummer Center,"[169] as opposed to "just gotten out." The States misrepresentation to this Court by this "mischaracterization"of fact adds to the erosion of the integrity of these proceedings and the Court being hoodwinked and detoured away from the truth concerning these instant proceedings.

The third explanation offered by the State on this issue concerns their "downplaying" of the jury's intelligence and common knowledge because the State offered this fact without any connection as to the Plummer Center to the Department of Corrections. The jury is instructed to discuss the case evidence among all 12 jurors when deliberating to share their views on the evidence. It is common knowledge that people in New Castle County, particularly the juror pool composed of voters, presumably keeps up with their City, County and State activities either through the local area newspaper or Channel 12 news, both of which inform the general public as a whole, whenever there is a "walkaway" from the Plummer Center, and that the police and Department of Corrections officials are looking for that person. Upon capture the person is charged with escape [fn202] after conviction.[170] Exhibit D. This Court acknowledged, ". . . , if

---

[168]Compare: Johnson v. State, 550 A.2d 903, 913 F.N.6 (detective is agent of the State)
[169]A person is not "released" from "a voluntary" confinement. They are "released" from jail, "released" from kidnappers, etc.
[170]McKay at 262-63

52

C - 98

somebody should know what the Plummer Center is, . . . ."[171] One out of the 12 New Castle County jurors would have more likely than not known about the Plummer House and it must be presumed that the jury followed their instructions to discuss the evidence.[172] Without a doubt, interest would be generated concerning particularly a defendant's "release" from anyplace. No instruction was given. Defense Counsel should have at minimum requested a "limiting instruction." While tactically it may have been a good idea not to request a "cautionary instruction,"[173] a "limiting instruction" on evidence of prior crimes activity was mandatory and should have been given by this Court when counsel did not request it.[174] This was potentially prejudicial to defendant because it allowed the jury to draw "unwarranted inferences" and speculate[175] about "what crime did defendant commit to end up in jail,"[176] on other crimes evidence, as an example. This reference to the Plummer Center was "downplayed" by the State.

The fourth contention the State makes is another "misrepresentation" of fact to this Court. The State claims, "No testimony was elicited as to the character of the accused nor was any reference made to prior bad acts requiring the Court to engage in an evidentiary assessment." This was dealt with earlier in the discussion where counsel "fell asleep at the wheel," concerning the State "eliciting" evidence of defendant's demeanor.[177] The question was a specific question, i.e., "And if you could explain or describe for us Mr. Bacon's demeanor. . . ." Any other answer to this specific question would have been "non-responsive." Whether one calls evidence of a persons character, "demeanor," does not mean that because they "characterized" this evidence under an analogous term that they can now claim "no reference to the character of the accused." This detective's testimony response was "elicited" by the State, and its purpose was to support [Star Liquors] witnesses' credibility through the officer's testimony. The State asked Star Liquors witness: "And his [defendant's] demeanor, could you describe that for the jury how he acted in the store?" Witness answers: "He was calm" and second Star Liquors was asked the same question and replied: "He was very calm

---

[171] 6-20-01 T.T. p. 113
[172] Accord, Milligan surpa: Cobb suora
[173] Explained: Major v. State, 1995 WL236658 (Del.Apr.20,1995)
[174] Bullock suora; Howard supra; Holtzman suora
[175] E.g., Farmer suora; Dorsey supra; Savage supra; DeShields supra
[176] Compare: Flannory supra (unspecified crime):see also Loper supra
[177] 6-20-01 T.T. pgs. 110-111

53

C-99

about it."[178]

The defendant never disputed this evidence anywhere in the record. The detective's testimony is "rebuttal" evidence. This evidence does not have "independent logical relevance" to the States prima-facia case-in-chief. Such extrinsic evidence of defendants character may only be admissible in rebuttal if defendant raises an "affirmative defense."[179] DRE 404(a)(1) Getz at 731. This also applies to prior acts in general. (This is not limited to just prior bad acts or his general bad character) DRE 404(a)(1)

> Evidence of prior acts is not admissible simply because evidence of other prior acts has been introduced. The Getz analysis is designed to ensure that evidence of prior acts [or character and demeanor] is not admitted unless it is relevant, probative, clear and not unfairly prejudicial. Morehead[180]. (Emphasis added)

Certainly, the elicited evidence of defendants "an attitude" falls into this category as well. These explanations that the State gives, to the extent one can buy into them, the proposition that "such evidence was not elicited at trial," it is still clear, however, that this condition was created by the State nonetheless, it cannot be blamed on defendant Bacon, and this Court is reminded that Counsel's errors and responsibility of counsel's errors rest on the State. In fact, the State does not dispute that trial counsel was ineffective for failure to request a DeShields analysis (citing Getz) as, "professionally unreasonable," they simply state, "[a] no bad acts evidence was presented, defendants proposed analysis was not required." Similarly, the State did not dispute counsel's ineffectiveness for failing to request a "limiting instruction" on this evidence, and "instruction" as to which case to use this evidence in.

Defendant incorporates counsel's ineffectiveness arguments raised in Ground One and Two, fully and attaches them to these issues as well.

Defendant fully asserts that each issue raised is a reversible error based on this Court's evidentiary structure to provide defendant with fair trials. Defendant further incorporates Grounds One and Two arguments concerning each issue prejudicial effect equivalent to reversible error and their composite errors magnifies the prejudicial effects.

---

[178]Compare: Scott v. State, 642 A.2d 767 (Del 1994) and 6-19-01 T.T. pgs. 30,65
[179]Accord Taylor supra; DeShields supra; Allen supra
[180]Morehead at 56 n.4

54

$C - 100$

Argument For Ground Four:

> [T]he issue is whether the witness is identifying the defendant solely on the basis of h[er] memory of events at the time of the crime, or whether [s]he is merely remembering the person['s name given to her after defendant was arrested]. Accordingly, in [this] situation, the relevant inquiry includes factors bearing on the accuracy of the witness' identification including h[er] opportunity to view [the criminal at the time of] the crime. Manson v. Brathwaite, 432 US 96 at 122 (1977)

The Court stated: "[T]he primary evil to be avoided is a very substantial likelihood of irreparable misidentification. It is the likelihood of misidentification which violates a defendant's right to due process." Id. at 124. "[R]eliability is the "linchpin" in determination [of "in-court"] identification testimony[.] The determination depends on the "totality of the circumstances." Ibid. "Under the 'totality of the circumstances' in this [instant] case, there exists "a very substantial likelihood of irreparable identification." Id. at 99 (citation omitted)

Dawn Smith did not have a sufficient opportunity to view the suspect at the time of the crime, she did not

accurately describe him before defendant was arrested, and her level of certainty was low.[181]

> It was too great a danger that the [defendant] was convicted because he was a man [Smith] had previously observed near the scene, was thought to be [the] likely offender, [] rather than because [Smith] "really remembered him as the [robber]." Id. at 118 (citation omitted)

Identification evidence is so convincing to the jury that sweeping exclusionary rules are required. Fairness of the trial is threatened by suggestive confrontation evidence, and, thus, it is said an exclusionary rule has established a constitutional predicate. Id. at 111. There are, of course, several interests to be considered and taken in account. The driving force behind [citations omitted] the Court's concern with problems of eyewitness identification. Usually the witness must testify about an encounter with total strangers under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by actions of police. Id. at 112.

The United States Supreme Court in Bruthwaite supra; accord. Walis v. State,[182] "[h]eld that reliability is the 'linchpin' in determining the admissibility of [in-court] identification testimony for confrontations. [T]he determination depends on the "totality of the circumstances." The factors to be weighted against the corrupting effect of suggestive [in-court] identification procedures in assessing reliability are those set out in Niel v. Bioqers[183] and include the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Id. at 114 (citing Biggers supra); Walls supra (emphasis added) [T]urn[ing] then, to the facts of this [instant] case and apply this analysis.

---

[181]See 6-19-01 T.T. pgs.42-43
[182]Walls, 560 A.2d 1038 (Del. 1989)
[183]Biggers, 409 US 188, 199-200

55

$C - 10$

1. The opportunity to view the criminal at the time of the crime:[184] Dawn Smith testified that she works behind a counter encased in glass, suspect shot out an overhead light, on customer side of the glass, ordered everybody on the floor, she got on the floor, counter base was solid material, then suspect approached opening in glass, had the gun in her face pointed at her head, obstructing her view of suspects face covered with a bandana up to the eyes and the hood from the jacket pulled down to right above the eyes. She removed bills from the end table and was busy picking up dropped bills off the floor, where she was ordered to stay. Finally suspect turned his back to her and left.

2. The degree of attention: [185]Smith testified she tried to get the drawer out of the table that contained the money. She focused on trying to lift the table, and couldn't, so she struggled with the drawer to get that out, she couldn't do that, so she took the money out and threw it at him, some money fell on the floor so she already being on the floor, picked that up and threw it up on the counter at suspect. When she finally did look up at hole in the glass, all she saw was this gun pointed at her, so she planned an escape. Her attention was drawn to the end of the gun barrel, she could not describe color or type of the gun, only it had a long barrel. Detective Spillan interviewed Smith at the scene, for probably a much longer time than it took the suspect to rob the Star Liquors, and under less stressful conditions.

3. The accuracy of prior descriptions: Smith's description was given to Spillan within minutes after the robbery. It included a clothing description, work shoes or boots, shorts, bandana covering his face to this eyes and a blue windbreaker with a hood covering his head down to the top of his eyes, the gun only a long barrel, no color or type. Weight and build was given as skinny, height as a flat 5 feet to 5 feet 2 inches, no facial descriptions, no eye descriptions, no hair descriptions as to color or shape of hair. Specifically, no description of a beard and that the suspect was dark black or brown.

At trial, this witness altered her testimony to reflect the suspect as having a beard, and being light complected, and his name Mr. Bacon. When asked about when detective asked her to described the face of the individual when she

---

[184]6-19-01 T.T. pgs.24-31, 34-36, 39, 41-43
[185]6-19-01 T.T. pgs.24-31, 34-36, 39, 41-43

56

$C-102$

spoke to him the evening of the robbery she didn't mention anything about a beard, she answers because he had a bandana on his face.[186] And Spillan testified that this witness told him minutes after the robbery that the suspect was dark black or brown.[187]

Curiously, this witness could not even identify detective Spillan who interviewed her without pointing a gun in her face and wearing a disguise and under less stressful conditions.[188] Specifically, even more interesting is that this witness was never shown a photo lineup, nor was defendant taken to her to view as to positively identify him as the suspect. Defendant was never identified by this witness, or any witness as the suspect in this robbery before the trial either in a photo lineup or show up.

4. The witnesses level of certainty demonstrated at the confrontation. There is no dispute the suspect was disguised, no dispute that none of the witnesses picked him out of photo arrays. No dispute that this witness was ever shown a picture of defendant, or viewed him before trial. This witness could not describe suspects facial features.[189] When asked to describe the face of the suspect witness could not. Her level of certainty was low. Witness brought up questioning the detective, eliciting a physical description of suspect after he was arrested about—did he have a beard.

Although witness claims to have seen the defendant again that night when talking to the detective, this is not brought to his attention. She did not call him and when he called her she failed to mention this alleged encounter because her level of certainty was very low.

5. The time between the crime and confrontation. Dawn Smith's description of the suspect was given to detective Spillan within minutes of the robbery. The in-court identification by the witness took place almost a full year later. We have the passage of approximately 12 months between the circumstances surrounding this event filled robbery in which the witness was occupied for the most part—defendant holding a gun between his face with a disguise and her face, the focus being on the gun as testified.

---

[186]6-19-01 T.T. pgs.24-31, 35-36
[187]6-20-01 T.T. p.182
[188]6-19-01 T.T. p.36
[189]6-19-01 T.T. pgs.25,28,34-36,39,41

57

$C - 103$

These indicators of [Smiths] [in]ability to make an accurate identification[, in conjunction with] the corrupting effect of th[is] [particular type] of [courtroom] identification itself[,] [the] reliability of this [in-court] identification if [also] undermined by the facts that the [defendant] was arrested [3 days later, in a different part of New Castle County, no physical evidence such as fingerprints, or proceeds from the Star Liquors "robbery" were attributed to the defendant. Surely, we can [] say that under the circumstances of this [instant] case there is "a very substantial likelihood of irreparable misidentification." Id. at 116 (citations omitted)

Of course, {] had [detective Spillan] presented [Smith] with a photographic array[190] including so far as practical . . . a reasonable number of persons similar to any person then suspected whose likeness is in the array, [] the use of that procedure would have [legalized the use] of the identification at trial [if this witness did in fact, choose defendant's photo as being that of the suspect] voiding the risk that the evidence would be unreliable. Id. at 117.

The errors made by counsel are clearly apparent on the face of the record. Counsel should have made an oral motion to strike answer of this witness, or, a oral motion to strike a portion of answer of witness upon the grounds of a non-responsive answer,[191] or we move to strike so much as the answer given to the last question as states that "when Mr. Bacon came into the store," upon the grounds that this was a "non-responsive" answer.[192]

In reviewing every case in the Delaware legal digest on this issue, not one case supports a circumstance of "in-court" identification, without as an element the witness identifying the suspect "before trial," either by photo array, lineup, or show up, or specifically identifying the suspect in a clear unobstructed view with lighting, at a close distance, and without a disguise, and must include a descriptive identification to police. There is absolutely no case authority to support a witness identification of a "disguised person" where a witness could not identify the suspect at the time of the crime, and then later post-crime where a witness then claims to have seen the suspect and makes an identification, as in this instant case scenario. No authority to support these specific circumstances. Particularly interesting in Dawn Smith's testimony regarding her post-crime identification is that: (1) she did not call the police when this suspect allegedly came into her store later that night[193]– this would surely be expected since the police were obviously looking

---

[190] Apparently this was supposed to have been planned, but for some reason it was never done. See 6-19-01 T.T. pgs. 34.36. Instead it appears that this witness inquired of the detective the arrested suspect's physical description.

[191] See U.S. v. Willis, 759 F.2d 1486 (11ᵗʰ Cir. 1985) Cert. denied; 474 US 849. (Absent motion by defense counsel to strike testimony, Court and State are not under any duty to strike it)

[192] See Gilbert v. U.S., 388 US 263 at 271 (1967)43

[193] 6-19-01 T.T. pgs. 34,37-39

58

C – 104

to arrest the suspect; (2) even after the police called the witness back this identification is still not mentioned to the police. Clearly her "level of certainty" was very low, as to whether the second individual was the suspected robber.

Even more remarkable, an evidentiary fact that establishes the nexus, is that, this nexus is so incomplete it is as if Moses parted the Red Sea, water on each side but none in the middle to connect or line up the whole Red Sea. Dawn Smith did not testify or offer any descriptive evidence of the "second" in store identification other than saying, "he had on the same shorts and boots." No facial description,[194] no skin complexion, no hair color, no hair shape, no hair style, no cheekbone structure, no chin or jaw structure, did he have sideburns or not, eye color was not mentioned, this should not "be assumed." Was he still wearing gloves? She said he had a beard she thought, no description as to beard length, style, color, was it well trimmed or shaggy, was there a mustache too? In other words, he had a different disguise on, he was wearing his unobstructed face, that she could not describe.

There is a comparative case, although the facts are opposite in that a store clerk had seen a defendant in the store several times "before" the robbery, this guy did not wear a disguise either. Because there was an independent origin of identification, the witness could lawfully make an in-court identification[195] even without viewing a photo array, or even a show up identification. Certainly not the key facts in this case at bar. In Mills,[196] witness saw defendant two times during robbery, a clear close unobstructed view of his face. Witness was positively certain based on views of defendant. The in-court identification had independent origin and not rendered by impermissible out-of-court evidence.

In another case involving prior in store identifications, (these are only admissible if witness makes a positive ID of suspect before the crime, and no disguise is worn) where witness had opportunity to perceive defendant's identification by looking directly into defendants face, no disguise covering it. Witness recognized defendant from two prior (to the robbery) occasions, and picked him out of a photo array. An in-court identification was permitted based on independent origin.[197]

---

[194] 6-19-01 T.T. pgs.35-36
[195] Jenkins v. State, 281 A.2d 148 (Del. 1971)
[196] Mills v. State, 287 Aa.2d 656 (Del. 1972)
[197] Baker v. State, 344 A.2d 240 (Del. 1975)

$C - 105$

In Goodyear,[198] one of the very few cases with a mug shot array identification, the witness saw perpetrator's undisguised face at least 30 seconds, two times, (thus the opportunity to perceive) although no identification from mug shots, but identification of defendant in-court prior to trial. Additional factors included witness' positive identification of defendant even through a long-series of cross-examination, and, specifically, witness had the opportunity to clearly perceive defendants identification two times, unobstructed view of defendants face at crime scene, thus had an independent origin for identification.

All these case cites distinguish defendant circumstances as not having "an independent origin" for witness Dawn Smith's "in-court" identification.

The State contends in their Response that counsel made "no objection" at trial "to the description and/or the identification of defendant by any witness." Defendant's reply is that he raised the "specific objection" counsel should have made regarding this evidence. As far as "to the description and/or the identification of the defendant" by any witness, (emphasis added) defendant's claim is not about "any witness" it is specifically directed toward Dawn Smith's "in-court" identification. Defendant has already raised the legally significant aspects of this issue. As far as the States contention that "counsel vigorously argued the subtle inconsistences in witness descriptions, the record reveals counsel's failure to develop the facts on this second coming of the suspect into the Star Liquors, in as far as "descriptive evidence," of this "second appearance." We do not even know if this was the defendant, let alone the masked bandit. However, counsel did properly use Jencks material to correct Dawn Smith's contrasting descriptive inconsistences of "skin tone color" and testimony concerning "a beard."

State says "the in-court identification was not improperly prompted and not based upon prior suggestion." Defendant did not raise this claim so this is "non-responsive" and irrelevant to this issue. The State relies on Parsons v. State,[199] which is decided in a factual context totally alien to this present case, therefore it has no precedential value and little bearing on the resolution of this case since its context was "based upon a witness' recollection of the crime."

---

[198] Goodyear v. State, 348 A.2d 174, 177 (Del.1975)
[199] Parsens v. State, 571 A.2d 787 (Del.1990)

C-106

(Emphasis supplied)

The State has no legal authority to support this Ground Four. "Cause" for "no timely objection" has been made in the "Procedural Standards," "Facts" sections as well as previously listed Grounds One, Two and Three, as "ineffective assistance of counsel, and trial structural error of evidentiary importance fully described in detail in this argument and fully embedded in the trial record as to supporting facts. There was a good basis for an Oral Motion for a Mistrial had counsel not been "sleeping at the wheel." Counsel failed to raise this issue on direct appeal even giving counsel an allowance in the possibility of facts developing at trial that were not provided to counsel via Rule 16 discovery and Jencks material.[200] At this stage of the proceedings a Motion for Mistrial under the grounds of "no independent origin" should have been made, or, to minimize the damage, a Motion to Strike as described above, and a Cautionary Instruction instructing the jury to "disregard the in-court identification made by witness Dawn Smith regarding her statement that 'Mr. Bacon came into the store.'"[201]

This identification evidence was particularly and extraordinarily prejudicial to defendant because: the Star Liquors case was the States "foundation case" that they built the 7-11 case facts on, specifically the car related evidence, and, the lack of an accurate suspect identification at any of the crime scenes. Counsel should have raised this as a "plain error" in any event on the direct appeal as it goes in fact to "the heartland of information" needed to start the ball rolling in the State's case-in-chief proving the identity of the suspect. Ineffective Counsel for failure to object at trial and failure to raise a meritorious issue on direct appeal has already been addressed, and will be addressed in more detail at the end of this brief.

## Argument For Ground Five:

The first issue of ineffective assistance of counsel concerns counsels deficient performance for failing to move to dismiss Count 15 indictment on its face that the determination of the Grand Jury that there were not sufficient facts to believe an offense was committed, and, that he was the perpetrator. Because of this fatal defect, the Grand Jury did not

---

[200]Although a quick review of Jencks by a professionally competent attorney would have recognized this "no independent origin" evidence even before cross-examination.

[201]Explained Maior supra (1995 WL236658)

61

$C - 107$

have sufficient information to indict him on Count 15.[202]

The second issue of counsels deficient performance concerns counsel's failure to argue the "prejudicial effect"

of the amendment which is where the argument counsel failed to develop, actually lies, but counsel "dropped the ball."

Superior Court Crim. Rule 7(e) is not veiled with complicity. It reads as follows:

> The Court may permit an indictment or an information to be amended at any time before verdict or
> finding if no additional or different offense is charged and if substantial rights of the defendant are not
> prejudiced. Id.

The record reflects that the proposed amendment,[203] did not mean to change the offense. Counsel's reliance

on Johnson,[204] a case cite that contains a detailed analysis of the prejudicial aspects of the amendment in that case,

hence the reason for the prohibition of amendments that go to substance or the elements of an offense. Counsel's lack

of understanding of this crucial issue presumably from his lack of research of that case is evident in his oral argument

before this Court. In this hearing counsel undermines defendant's position by his deficient performance.

> I could see at first blush it appears that the difference between car keys and a car and U.S. currency
> is not as severe as the instrumentality of the assault because I think it's a cosmetic difference.
> Because what Robert Johnson v. State [supra] really touched upon was the Delaware Supreme Court
> and the Grand Jury's decision that were considered, the facts put before it, to determine whether or
> not an individual ought to stand trial. Exhibit F: Oral Argument June 21, 2001, p.4; See also.Exhibit G
> Bacon v. State, No. 369, 2001, Appellants Opening Brief pg.7.

> The Superior Court erred because, even if the amendment to the indictment may have been permitted
> under the Robbery statute and did not charge a different or more serious offense, the amendment
> violated the Defendants' right to indictment by grand jury under Article 1, Section 8 of the Delaware
> Constitution, Johnson [supra] Id.

These are not supporting arguments. They go to show counsel's incompetent lack of understanding of

Johnson.

The State offers Roberts,[205] the record of the Oral Argument reflects counsel at least had possession of this

---

[202]Accord: Williamson v. State, 669 A.2d 95 (Del.1995); Mallory v. State, 462 A.2d 1088 (1983); See also, State v. Minnick, 168 A.2d 93, 98 (1960)(Each count of an indictment must normally be considered as an individual unit, as though it were a separate indictment standing by itself.)

[203]Although proposed pretrial, the granting of this amendment did not happen until post-trial.

[204]Johnson v. State, 711 A.2d 18 (1998)

[205]Roberts v. State, 1998 WL231269 (Del.)

62

$C - 108$

case for a time. Exhibit F pg.5. As the State explained at the Oral Argument, Roberts request was a change from a general property allegation of U.S. currency and valuables, which was probably considered in a gray area of non-descriptive property for one element of, theft, an element in a Robbery I. The amendment from a general to a specific, being cigarettes in Roberts case is in complete opposition to this instant cases amendment, i.e., from a specific property description definite to that of U.S. non-definite currency and being general. Counsel dropped the ball on this. Roberts runs in the opposite direction of this instant case's Count 15 amendment relevant circumstances.

Similarly, counsel does not point out the prejudice as significant, in fact, that ball is in his court, and he drops the ball again, i.e., defendant suffered significant prejudice because he was precluded from pursuing his original defense strategy[206] that of the 7-11 robbery, and he was arrested standing near the car on 17ᵗʰ Street, which according to discovery evidence was not the same car, because at the 17ᵗʰ Street car was deemed that of the Star Liquors robbery, while a different car was alleged to have been jacked at 7-11 from Conkey, these are the essential facts regarding the amendment issue. Essential facts are those that will clearly inform the defendant of the precise charge so he may prepare his defense. Green[207]

The preceding fact is one also to be considered in the joinder of indictments issue.

Defendant's original defense was substantially prejudiced by this amendment because he relied on the facts from discovery that were keys and car reported stolen from Conkey. And there were no charges alleging "US currency" being taken from Conkey. The potential for prejudice arises in the nexus between the lack of a charge regarding the "US currency" in the car on 17ᵗʰ Street, and, the fact that another car was alleged to have been used at the 7-11 robberies. By amending the indictment post-trial, or, even the move pre-trial amounted to a change in the State's theory of the case on this count,[208] and altered the evidence concerning the rest of the 7-11 counts as well, that now concerned the car on 17ᵗʰ Street as potential evidence.

---

[206] Accord, O Neil v. State, 691 A.2d 50, 55 (Del.1997); State v. Deedon, 189 A.2d 660 (1963)(explains, but distinguishable from defendants case)

[207] State v. Green, 376 A.2d 424 (1977)

[208] Explained, Johnson v. United States, 613 A.2d 1381, 1387 (D.C.App.1982)

63

$C - 109$

Because theft of property is a necessary element in a Robbery I, another issue of potential prejudice arises. US currency from other sources could be used to prove this crime because no definition of the property was given[209] other than US currency which given the context of a Robbery charge is pretty general, and to argue otherwise just does not follow a well reasoned logical path. When a person says "I was robbed," it is generally believed to be US currency.

Defendant was left with no way of defending against this general property element in a trial with seven other victims claiming they too were robbed of US currency.

This amendment, in this instant case went way above a cosmetic difference in terms of the context of defendants defense. The State made a big deal about the change found in the car and the loose bills and "change" found on defendant.[210] (That was actually the envelope of the change found in the car. This was a misrepresentation of material fact by the State as well.)

This testimony came immediately after the 7-11 evidence highlighting this change evidence. This is evidence of substantial potential prejudice to the defendant.

Counsel on direct appeal, "drops the ball" once again, and does not argue the potential prejudice in any way, shape, or form. The case law cited by the Delaware Supreme Court, Robinson,[211] undoubtably supplied by the State in their Response Answer, concerns a factual context totally alien to this instant case facts and specifically Robinson's holding was a very narrow holding considering the adding of an element of "knowledge" through an amendment when the action alleged in the indictment contained enough information[212] that compelled the inference that [Robinson] acted knowingly . Robinson has little bearing on the resolution of the present case.

Counsel was professionally deficient in his performance for failing to argue the potential prejudicial effects of this amendment. This is where the issue lies in Rule 7(e) amendments of this sort. It was particularly harmful in this

---

[209] See generally State v. Minnick, supra ("a crime"); Johnson v. State, supra (citing Harlev v. State, 534 A.2d 255 (Del.1987))(Deadly Weapon element "Instrument" must be defined or described)

[210] 6-20-01 T.T. pgs.60,109,143

[211] Robinson v. State, 600 A.2d 356 (1991)

[212] "Specifically that Robinson emotionally abused the patient by ridiculing demeaning and making derogatory remarks directed toward the patient" One could not do that without acting knowingly.

64

$C - 110$

instant case. Under the circumstances, i.e., counsel had several chances to get the issue right. A professionally competent counsel would have no doubt. Under these circumstances defendant was not afforded genuine effective legal representation. There is a reasonable degree of probability the outcome in the Oral Argument would have come out different, but for counsel's errors in this respect. Counsels errors in this proceeding were so serious that defendant was deprived of a fair hearing and the result unreliable, because it was undermined by counsel's errors. The material point of any amendment issue rests on its prejudicial effects. Hence, the street rules on amending the substance of an indictment. When amendment goes to form, the issue of inherent prejudice shifts to that of potential prejudice which must be shown by the defendant on a case-by-case basis totality of the circumstances.

This instant case should be reversed based on counsel's errors in his failure to move to dismiss Count 15 indictment for the reasons set forth at the beginning of Ground five, i.e., the first issue . . . .

Case reversal is also requested by on counsel's professional errors of deficient performance concerning his failure to argue the prejudicial effect at this court's oral argument.

Defendant's case should be reversed on ineffective assistance of counsel regarding his unprofessional errors in failing to raise this issue on direct appeal.

If the court does not find a separate reversible error regarding each of these three separate errors, then the combined effect of counsels errors should meet the standard.

A separate and more lenient review should be granted to the separate prejudicial effect caused by this amendment. It is not defendant's fault the State supplied him with professionally deficient counsel and for this court to cause the defendant to meet the higher Strickland—Fretwell standard of review, well it just is not fair, and defendant respectfully requests a de-nova review on the prejudice issue.

## Argument For Ground Six

First and foremost the State fails to support their argument with any legal authority. The State misrepresents and also misstates the material facts that are the heartland of this Grounds issues.

Defendant incorporates Ground Three's factual and legal arguments regarding the prejudicial effects of the

65

$C - III$

evidence concerning the three statements, references to defendants prior acts and demeanor. Also, incorporated is defendants several assertions of ineffective assistance of counsel in their varying descriptions. The relevance as to the video tape concerning these statements stems from evidence at trial that is contradictive to the States assertion in their Response concerning the location of these statements and the timing of the Miranda warnings. The record reflects the following on June 20, 2001, T.T. pg.110.

Q: After you arrived at the Wilmington Police Station, what occurred next?
A: Mr. Bacon began making statements to where I felt it was necessary to read him his Miranda rights. (Emphasis added to show that statements were made before Miranda warnings.)

The central issue to Ground Six claim revolves around: The States failure to disclose the video tape made of defendants police station statement in a violation of [] Rule 16(a)(d) [] especially when, defendant made a discovery request. Trial Counsel was ineffective for failure to identify this issue and raise it on appeal.

The State in their October 30, 2000, response[213] to Defendants Rule 16 Discovery Request, did indeed state "see enclosed. Your client gave a statement which was video taped and will be made available to you," as their response to defendants first request regarding any statements either written or oral made by defendant that are in possession and control of the State or their agents.

The specific reason for this Discovery Rule is so defendant received all evidence of any written or oral statements he may have made, and the context surrounding them. Defense counsel was ineffective for his failure to develop facts on the record either pre-trial or at trial regarding the State's "failure to deliver," on their discovery response. Although the State claims "[t]his information, specifically the overwriting of the tape was communicated to defense counsel." There are two problems with this statement. (1) Specifically, on 10/30/00, there is not any reference to this "over-writing" of this video tape; and (2) if counsel received this information at a later date, (as the State does not tell us when this information of the over-writing was given to counsel), counsel did not relay it to the defendant at anytime. In fact, counsel misled the defendant up until the evidence of the three statements came into evidence that a video tape existed because he did not tell defendant that it did not exist. Defendant depended on this

---

[213]Exhibits B and C

66

$C-112$

video taped evidence as his defense against the three statements on the police report via discovery. However, it is defendant's assertion that there is a relevant connection among the three statements and the video tape evidence, and what the video tape evidence would prove: that these three statements were in fact ore Miranda replies to earlier comments made by the original arresting officers at the scene, Officer Spillan, or, comments made by one of the two officers in the police car as defendant was being transported from 17ᵗʰ St. to the police station. The chief investigating officer is Detective Spillan and he knew about the Star Liquors carjacking and robbery, the second attempted robbery, the 7-11 robberies. In a collogue with the defendant at the 17ᵗʰ St. arrest site, Spillan acquired defendant's pedigree information.²¹⁴ Usually a suspect is informed after the cuffs are put on that he was arrested for whatever crimes he was charged with. This information being given to the defendant and specifically no evidence of a Miranda warning being given at this 1:56 a.m. to 2:00 a.m. encounter²¹⁵ of initial arrest. Defendant may have made response comments to this charge information in the police car during transport just as the State tells us in their Response. However, as officer Spence testified to defendant making statements to where he felt it was necessary to read 0defendant Miranda rights were not done in the police car, it was not done as soon as defendant arrived at the police station at about 2:18 a.m.,²¹⁶ it was finally allegedlly done at about 2:30 a.m.. A full ½ hour after defendants arrest on 17ᵗʰ St.

Concerning his evidence, Counsel failed to develop facts surrounding the Wilmington Police Stations Standard Operational Procedure ("SOP") pertinent to suspect processing or booking the explicit usage of video tape footage to observe a newly arrested suspect, the exact location of camera lenses and microphones in relation to the defendants detention in booking and receiving area. Had counsel explored these facts, he may have discovered that a video tape was made of defendant from the exact time he entered this area of the police station and any and all statements, comments by police, Miranda warnings. etc.. were caught on not just one video tape but more than one video tape. One tape in the actual processing area where new arrivals are held handcuffed on a bench and processed, fingerprints, mugshots, etc., and another video tape is made in each and every interview room when occupied.

---

²¹⁴6-20-01 T.T. pgs.166,170,183-184 (pedigree information)
²¹⁵6-20-01 T.T. pgs.102,114
²¹⁶6-20-01 T.T. pgs.114

67

$C - 113$

This video tape or video tapes, is the "best evidence" under our Rules of Evidence that defendant refused to be interviewed by the Police concerning all these robberies.[217] This video tape was a crucial piece of defense evidence. It is Brady material for the reasons explained above and below. The lack of handwritten notes goes far to suggest the "unreliability" of the "time line" of defendants alleged response comments. With everything going on during an arrest, other suspects, details fade from the mind particularly where other information has to be remembered. See DRE 803(6)(8). The video tape evidence wholly contradicts Detective Spence's version that after he read the defendant his Miranda rights, "[he] just sat there and the defendant made these three statements [post-Miranda]." Then he is given Miranda rights by Spillan where it can actually be proven and the defendant tells the detective, "I'm not making a statement and I do not want to be interviewed." Defendant did not qualify his observance of the Miranda warnings to the Gulf Station offenses either, he said, "I'm not giving a statement." This contradicts officer Spence's account of his giving the defendant Miranda warnings and defendants "observance of his right clearly covered all the charges," because the State did not produce any statements concerning any of the other charged robberies at different locations either. Specifically and categorically, defendant, once he was aware of his right to remain silent so nothing he said could and would be used against him, refused to speak to police. This evidence is contained on a video tape which was still in existence on 10/30/00.

As the Delaware Supreme Court explains in Johnson:[218]

> The State did not follow the procedure mandated by Rule 16(d). Not only did the State fail to mention that it was not providing complete discovery, but it compounded this error by representing that it [would]. The failure of the State to abide by Rule 16(d) cannot be blamed upon the [defendant]. [reference to FN 6] Id. at 922. The detective[s] [are] agent[s] of the State. The State had a duty to find out about the [video tape] before it responded to the discovery demand. Id. at 913 (FN6) (Emphasis added)

Defendant had a right to this evidence, and under the Johnson ruling we should believe this evidence did in fact exist on

---

[217]Curiously, the State attempts "to limit" this video tape to that of the dismissed Gulf Station offenses, when in fact, there is no evidence of statements made regarding, the carjacking, the robberies, and attempted robbery at Star Liquors, or 7-11 store. There is no clear and convincing evidence that this video tape was "limited" to only that of the Gulf Station offenses, or in fact, had anything to do with the Gulf Station offense.

[218]Johnson v. State, 550 A.2d 903 A.2d 903 at 911 (Del. 1988)("when the State provides a casual reply to a specific defense demand [Rule 16], the State is to be held accountable for any inaccuracies in its general reply.")

$C - 114$

10/30/00, but after Mr. Lugg, "took over" this case this evidence gets destroyed by getting "overwritten." The

prejudice to defendant and the State's duty to defendant is explained in Johnson.

> Pretrial discovery of oral statements serves significantly to protect the defendants right to a fair trial.
> The State was under a duty to supply the substance of the oral statements (as reflected in the [video
> tape]) without regard to its use or non-use of the [video tape] at trial because the State intended to
> "offer other evidence at the trial" of the statements which had been made by the defendant."
> Johnson at 914.[219] (Emphasis added)

. The video tape evidence made of defendants specific refusal to give a statement or be interviewed by police is

Brady material and satisfies Rule 16(a) six factors criteria explained in Johnson at 912. The relevant facts of

defendant's circumstance are given below paralleling these six factors.

> Rule 16(a) contains a six-part description of an oral statement which is subject to a discovery
> demand. The rule states that the defendant must have made (1) an oral statement (2) which the
> state intents to offer into evidence at the trial (3) made by the defendant whether before or after
> arrest (4) in response to interrogation (5) by any person than known to be a state agent (6) which is
> known to the Attorney General to be within the possession, custody, or control of the State. Superior
> Court Criminal Rule 16(a). Id. at 912

It's undisputed that the video tape evidence of defendant's statement satisfied these criteria as it contained an

oral statement made by defendant, evidence of oral statements was offered into evidence, the statement was made

before or after arrest, in response to an interrogation after the "Miranda warnings" were administered and then asked

to make a statement or be asked a couple of questions, defendant told police he did not want to make a statement nor

answer a couple of questions for an interview by a known state agent, the police. The video tape of this evidence was

known to be in the possession, custody and control the State and Wilmington Police.

There is another aspect of this case concerning the chain-of-custody of this video tape. This was a State Police

investigation, not a Wilmington Police investigation. Investigatory evidentiary procedure concerning evidence tells us,

and had counsel explored this either at a pre-trial hearing or at trial (for direct appeal purposes) that this video tape

would be removed from the Wilmington Police Station by State Police detectives and kept with all the rest of the State

---

[219] Johnson, 550 A.2d at 914 (citing United States v. McElray, 697 F.2d 459, 463 (2nd Cir. 1982)

C - 115

<u>Police evidence against the defendant. All these robberies were under the State Police jurisdiction.</u>[220] considering the seriousness of these charges and the sheer quantity, one would have to <u>be naive</u> to believe that the State Police did not keep the video tape evidence in this case with their other evidence collected. This evidence is usually stored in an evidence locker and must be checked-in or checked-out by an officer's signature. The chain-of-custody of evidence is established this way. <u>Counsel was deficient in his performance in failing to explore this area as well.</u> Did the tape make it into the State Police evidence locker? If so, then it was "taken-out" of evidence and intentionally destroyed by the State. A clear <u>Brady</u> violation. Defendant moves to expand the record to discover the State Police evidence log concerning the numbers the State Police assigned to the evidence of this instant case.

The State cannot avoid discovery duty by withholding or destroying defense material (by overwriting it). There is no valid reason for refusing disclosure of a defendant's statement. Otherwise, discoverable under <u>Rule</u> 16 on the ground that the rule only applies to evidence offered in the State's case-in-chief either. <u>Johnson</u> <u>supra</u> at 912. See also: <u>DeShields</u> <u>supra</u> at 644 (enbanc). This legal authority is focused toward the States Response in their unsupported attempt to narrow down the video tape recording of defendant's response to the <u>Miranda</u>[221] warnings that he chooses to exercise those rights, that defendant somehow "qualified" his refusal to only that of the Gulf Station charges. Did defendant answer any other questions re any of the other four sets of charges, or give a statement in regards to these other four sets of charges? No, he did not! The State misrepresented this fact.

The States first part of the second paragraph in response to Ground Six states as follows:

> The subject of defendants challenges, however, is not his refusal to be interviewed by Wilmington Police, but rather his past Miranda statements to detective Spence during his transport from 17th and Pine [sic] Streets.

This was previously addressed forthwith, defendant was arrested, searched, asked for his pedigree information at the scene on 17th St. between 1:56 a.m. and 2:00 a.m.. From 2:00 a.m. defendant was in transport to Wilmington

---

[220]Vis-a-vis: Corporal Jones, State Police (SP) Troop 6; Detective Mulvena SP Troop 2; Corporal Spence, SP Troop 2; Detective Chapman, SP evidence detection; Corporal Spillan, SP Robbery Squad Invest.; Officer Hegnan, SP Fingerprint Examiner.

[221]Without getting into a Miranda analysis, this Court should be familiar that a Miranda Warning covers an entire arrest and not just one charge.

70

$C - 116$

Police Station arriving there about 2:17 a.m., and as Corporal Spence testified, "Mr. Bacon began making statements to where I felt it was necessary to read him his Miranda rights." These Miranda rights alleged to have been read to defendant at 2:30 a.m. after arriving at Police Station; the evidence shows "pre Miranda" statements.

Defendant is not disputing that these three statements were made during transport, he is not disputing that they were neither audio nor video recorded, as they were made in the police car during transport. Obviously they were placed in a police report given to counsel. Exhibit C.

Although this issue concerns the video tape, it is also relevant to these three statements and most importantly defendant's character or demeanor which Corp. Spence testified to observing. If these three statements were "post Miranda" then it is pretty likely the Police Station video tape caught the reading of the Miranda warnings to defendant and then after these warnings were given, Corp. Spence just sat there and defendant told him these three statements. That is not what happened. The State Attorney knows what happened as he obviously interviewed Corp. Spence and at some point the details that defendant made the comments during police car transport. "Pre-Miranda." And, based on the circumstances that the Chief Investigating Officer of the Robbery Squad Corp. Spillan was the actual arresting officer of the defendant at 17th St., and actually did speak with defendant prior to Corp. Spence's arrival, concerning "Pedigree Information,"[222] we can be almost certain that defendant was told he was under arrest for a series of robberies in some manner,[223] whether it was an answer to one of the other two suspects' questions, or even that of defendant himself. Corp. Spillan more than likely did what all police do when they arrest someone, they tell them why they are under arrest so as to gain some type of cooperation from the suspect, so he will not resist and believe he is being kidnaped, Counsel was ineffective for his failure to develop the facts regarding this information on the record, and the prior evidence log book information as well from the State Police evidence storage unit.

Corporal Spence testified he arrived at 17th St. after defendant had already been arrested and taken into custody,[224] so he did not know what Corp. Spillan told defendant. A reasonable probability exists that defendant's

---

[222]6-20-01 T.T. pgs.106,183-84

[223]Probably in a general way, without reciting each specific charge.

[224]6-20-01 T.T. pgs.106,115

71

$C - 117$

comments made in the police car during transport and at the police station were defendant's responses to the arresting officer's comments and they were "pre-Miranda."[225]

Certainly Corp. Spence was privy to at least the carjacking and robberies at Star Liquors and 7-11 robberies because his assigned partner [226]is Detective Mulvena who was given information to "be on the look-out" for a silver Ford Escort, plate 999159 because it was involved in a series of robberies in the area. In fact, he was ordered to look for this car and suspect. [227]

The idea that we could buy into this illogical conclusion that from the time defendant was arrested, taken into custody a little before 2:00 a.m. "pedigree information" taken from him (except his height) was withheld by officers who knew why he was arrested for a whole half-an-hour without this suspect in this case being told why he was arrested fly in the face of reason. Something is "fishy" about this missing evidence of the video tape and the events surrounding these three statements where they were made, and under what circumstances. Corp. Spence claims that there were statements made before the Miranda.[228] Are these three statements those statements? The State Attorney tells us these statements were made "during transport from 17th St."

Contrasting with a possibly fabricated testimony of Corp. Spence is, the video tape, the best evidence to prove that once defendant received his Miranda warning informing him that anything he says can and will be used against him, he tells the police "I am not making a statement and I'm not answering any questions." Contrasting Corp. Spence's testimony.

Counsel's performance was professionally deficient in failing to request a Dewberry instruction concerning the loss of favorable evidence to defense.

Counsel's performance was deficient with the Second Circuit terms a "Rosario" claim for State's failure to disclose the video tape. See Mayo v. Henderson 13 A.2d 528 (2nd Cir.1994) (This case presents a clear evaluation of

[225]6-20-01 T.T. pgs.106,114
[226]6-20-01 T.T. p.105
[227]6-20-01 T.T. p.100
[228]6-20-01 T.T. p.110 lines 5 and 6

72

$C-118$

the prejudice prong in Strickland)

Counsel's unprofessional errors cannot be excused for his failure to develop facts at trial surrounding the issues of this discovery violation being that of: the ambiguous response in the State's Rule 16 response; see Johnson 550 A.2d 903, 911, 913; the SOP's of Wilmington Police Station concerning the taping of suspects; the specific location and placement of video tape lens and microphones at Wilmington Police Station; the chain-of-custody of this video tape clearly State Police evidence and not that of Wilmington Police so the tape would have been removed to State Police evidence; the procedure of logging chain-of-custody at State Police evidence storage, and discovery of the defendant's evidence logbook entries.

This was a case of 24 felony charges against his client. Counsel "dropped the ball" over and over here. . Defendant asserts that each one of the above errors is a reversible error in itself, and, in their compound form clearly call for a finding of ineffective assistance of counsel and the prejudice as well.

Defendant also requests a separate de nova standard of review based on the prejudicial aspects that they not be held to a plain error standard of review, because it is not defendant's fault he was supplied with ineffective counsel by the State.

Finally, none of the above unprofessional errors could be categorized as either tactical or strategical for the defense. Counsel acted outside the scope of professional reasonable representation and there is a reasonable probability that the outcome of these proceedings would have come out differently and counsel's errors were probably sufficient to undermine confidence in the outcome. Counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is unreliable.

Lockhart v. Fretwell, suora explains that the Strickland outcome determination test for prejudice is not the exclusive standard for prejudice clarifying that the primary focus of the prejudice prong of that test under the 6th Amendment is the reliability of the result and the fairness of trial Id. at 368-370. More specifically the Court held the prejudice component of Strickland tests " . . . focuses on the question whether Counsels deficient performance renders the result of the trial unreliable or proceeding fundamentally unfair." Id. at 372

73

$C - 119$

Defendant's reply to the State's opinion that Counsel "far exceeded the minimum standards set forth in Strickland [] rather Counsel engaged in effective, professional representation of Defendant." First, the evidence against defendant is substantially weak to begin with. The first five indictments were dismissed because of this substantial weakness. The acquitted charge of attempted robbery showed that evidence was also substantially weak as physical descriptions of "a mole on his right cheek" no disguise, no identification of defendant in a photo-array. That case should have been dismissed pre-trial by a competent counsel.

## CONCLUSION

The legal presumption for "stolen property" where the possessor may be charged with the actual "theft" is two-hours. After that its "receiving stolen property" unless there is reliable evidence to prove otherwise. The States cases "linchpin" in this case is circumstantial evidence of the defendant's single thumb print on the cars interior rearview mirror. The driver side car window was open, no other defendant's prints were found in this car and the defendant was standing right beside the car. Nobody identified the defendant positively at any of the crime-scenes, and certainly not in this car. The thumb print is circumstantial evidence that defendant touched the mirror.

Circumstantial evidence is derived from the direct evidence of the thumb print, it is inferred that because evidence of defendant's thumb print was on the mirror that he was in, or leaning in the car when he touched it. That is one inference from this evidence. To draw an additional inference from this inference we run into evidentiary problems discussed forthwith. Without more, we cannot also infer that defendant also drove this car because there is no evidence to support an inference of that based on a single thumb print. We can infer he moved the mirror. We also cannot infer that defendant knowingly possessed or had control of the gun in a bag, under a coat, in the passenger side of a car, in the middle of the night with it obviously being dark inside the car as well. The nexus is not present. We need another piece of evidence, here, at the car scene and there is none.

The Star Liquors robbery was the day before earlier much earlier in the day, but two full hours have passed. The presumption that the defendant stole the car, was the theft or robber has passed without more evidence coming from the opposite direction presumptions are not available for us here. A time limit has run out. Nobody positively identifies the defendant either at the robberies, and specifically not driving the car.

74

$C-120$

The car, one like it for evidentiary purposes was identified and a tag number given that matched the tag number on the car. This is not direct evidence that the car was the car, it is circumstantial or an inference made from the tag number description that matches the tag that is on the car. We still do not have a driver. We have an inference from the robbery that the car was at the store, but the occupant or occupants have not been identified, and cannot be inferred from the inference.

On the other opposite side of this car evidence we have a thumb print on the tear view mirror, nothing else, placing the defendant inside the car. With this evidence we may infer that the defendant may have been in the car to touch the mirror but we are without sufficient evidence to draw an additional inference that he drove this car, and, another inference that drove this car from another location. There is not enough evidence to give this car a driver <u>from either side</u> of the circumstantial evidence of the car. (That is through lawful evidentiary findings.) It would take a third and fourth inference, drawn from the direct evidence and this is not permitted. An inference or circumstantial evidence may be drawn from a direct fact, but an inference may not be drawn from circumstantial evidence, as this is the <u>forbidden</u> "inference on an inference violation.

<u>The missing nexus</u>. Defense Counsel should have guarded his client's case concerning any evidence the State tried to offer which would unlawfully "bridge" this nexus they needed to prove their case.

One very potent illegal piece of evidence cam in the State's Opening, caused by counsel's stipulation that changed the jury's attitude to "want to convict" the defendant, all they needed was "a hook" to establish even a "subtle link" for the jury to hang the case on. The State opened up with the defendants "status," "he owned a gun and that's a crime," the presumption of innocence is now out the window. The next very damaging evidence concerning this "linkage" or "nexus" came through the State's first witness who made an unreliable "in-court" identification, based primarily on detectives descriptions of defendant after he was arrested. That was the "little hook" the State needed to put the other evidence to work. The nexus link has been "subtly formed," the jury is now eager to put this puzzle together now. Some may have been a little wary yet. So the State offers the "exact" evidence again. They put a "positive definition" on defendants "status" now with evidence of defendant being "release' from the Plummer Center. Under ordinary circumstances this may have slipped by, but the jury was already "primed" to "look" for "more stuff"

75

$C-121$

concerning this "unexplained status" of defendant. This put a "frame" on the status picture "as to defendants criminal background as a convicted criminal. In order to "spotlight" this status and "magnify" its significance, the State offers character evidence of defendant's "attitude," he was really "calm" like it was "an attitude" to be in a position like this. Placing the focus that not only was the defendant a convicted criminal, but he was a "professional" or "experienced" criminal to boot.

Defendant did not have the benefit of a fair trial at this point. The nexus was never proven, because the jury wanted to convict based on defendant's character.

WHEREFORE, for the reasons set forth above in Grounds One through Six, considered each issue first individually, then each ground as a whole and then, all the grounds together, defendant respectfully asserts he has met the standards, and respectfully requests that this Court consider the named standards of review cited herein as the true and correct standards for relief such as *de novo* review in certain issues, and planetary review as to others and only uses the higher threshold of Strickland-Fretwell review where absolutely necessary.

Defendant prays that this Honorable Court grants his Rule 61 Post-conviction Petition and Reverse this case and make a determination as to where to proceed from there.

Respectfully submitted,

/s/ Devearl Bacon
Devearl Bacon
SBI#221242 Unit 21-C-U-6
1181 Paddock Road
Smyrna DE 19977

Dated: January 10, 2005

76

$C-122$

EXHIBIT A

C-123

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,           )
                             )    C.A. No. _____
          V.                 )
                             )    I.D. No. 0006017660
DEVEARL BACON,               )
                             )
          DEFENDANT.         )

State of Delaware    )
                     ) ss:
County of New Castle )

AFFIDAVIT OF DEVEARL BACON CONCERNING HIS COUNSEL'S LACK OF
COMMUNICATION AND FAILURE TO CONSULT WITH HIM REGARDING A
STIPULATION ALLOWING THE STATE TO PRESENT HIS STATUS AS A
PERSON BY VIRTUE OF HIS PRIOR CONVICTIONS IS A PERSON PROHIBITED
FROM POSSESSING OR CONTROL OF A DEADLY WEAPON DURING HIS TRIAL
COMMENCING ON JUNE 19, 2001 AND ENDING ON JUNE 21, 2001

I, Devearl Bacon, being first duly sworn deposes and says that the foregoing statement is
true and correct observation of what did or did not occur from the time of my arrest until June 20,
2001, at any place whether in the Multi-Purpose Correctional Justice Facility, or, at a holding cell
area either in the prison or courthouse, or, in the Courtroom itself, located in New Castle County,
Delaware. I would clearly state under penalty of perjury of the laws of the State of Delaware, I
swear the following is true and correct.

1.    My name is Devearl Bacon, I was arrested on June 23, 2000, and charged with

      several crimes, among those are Possession of a Deadly Weapon by Person

      Prohibited (PDWPP). 11 Del.C. §222

2.    My appointed Counsel was Edmund Hillis, Jr. who was my trial counsel.

3.    Mr. Hillis only met with me briefly (about 15 minutes) at the prison before trial on

      one occasion.

4.    During this brief visit, Mr. Hillis never once explained, or said anything whatsoever

1

$C-124$

concerning a stipulation of any type, particularly not ever mentioning stipulating to three PDWPP.

5.  We did discuss that I would <u>not</u> take the witness stand because of my prior convictions, and this would be put in front of the jury. Mr. Hillis told me that if I didn't take the stand then none of my priors would come into the trial, and this would be better. He did <u>not</u> mention <u>anything at all about</u> the three PDWPP's.

6.  During jury selection, prior to or after, Mr. Hillis never said anything about a stipulation regarding the PDWPP charges.

7.  Up until the "stipulation" was offered in the trial, I was never "informed" about it--<u>in fact at that time I didn't even understand what a stipulation was.</u> Nobody explained it to me--<u>I had no idea what they were talking about when it was brought up in trial.</u>

Affiant

Devearl Bacon
Delaware Correction Center
1181 Paddock Road
Smyrna, DE 19977

SWORN TO AND SUBSCRIBED before me this  6th day of January  2005~~2004~~.

My Commission Expires:  June 17, 2006

Notary Public:

2

C-125

EXHIBIT B

C - 126

06/22/2000          Troop 2 State Police                    06/04/0000 00

## Supplemental Report - #2

| Original Occurrence Dates and Times: | | Grid | Sector |
|---|---|---|---|
| THU 06/22/2000 2320 thru THU 06/22/2000 2321 | | 106-350 | 30 |

Location:
N N DUPONT HWY   New Castle, DE 19720

### Original Victim Information

| Victim Number | Name | | | | | |
|---|---|---|---|---|---|---|
| 001 | ▓▓▓▓▓▓▓▓ | | | | | |

| SSN | Sex | Race | | Ethnic Group | Age | D.O.B. |
|---|---|---|---|---|---|---|
| ▓▓▓▓ | ▓▓▓▓ | ▓▓▓▓ | | ▓▓▓▓ | ▓▓▓ | ▓▓▓▓ |

| Address | Resident Status | Home Telephone | Employer/School | Work Telephone |
|---|---|---|---|---|
| ▓▓▓▓ | ▓▓▓▓ | | | |

| Reporting Person? | Victim Injured? | Victim Deceased? | Officer Comments |
|---|---|---|---|
| ☐Yes ☒No | ☐Yes ☒No | ☐Yes ☒No | |

### Original Suspect/Defendant Information

| Sequence | Type | SBI Number | Name | | Nick Name |
|---|---|---|---|---|---|
| 001 | Defendant | | BACON, DEVEARL | | ZIGGY |

| Sex | Race | Ethnic Origin | Age | D.O.B. | Height | Weight | Skin Tone | Eye Color |
|---|---|---|---|---|---|---|---|---|
| Male | Black | Non-Hispanic | 30 | 11/27/1969 | 5'6"7" | 140 | Dark Brown | Brown |

| Hair Color | Hair Length | Hair Style | Facial Hair | Voice Speech | Teeth | Build | Glasses |
|---|---|---|---|---|---|---|---|
| Black | Collar | | Needs a Shave | Average | | Thin | |

| Address | Home Telephone | Employer/School | Work Telephone |
|---|---|---|---|
| 1311 DUNBAR CT Wilmington, DE 19801 | (302) 655-0007 | | |

| Arrest Number | Arrest Type | Suspect's Clothing Description |
|---|---|---|
| 54600 | Warrant | |

### Original Crime and Associated Information

| Victim Number | Crime Seq | Statute | Crime Description |
|---|---|---|---|
| 001 | 001 | DE:11:0832:00A2:F:B | Robbery First Degree Displays What Appears to be a Deadly Weapon |

| Location Type | Status | Involvement | General Offense |
|---|---|---|---|
| Convenience Store | Adult Arrest 06/23/2000 | ☐Alcohol ☐Drugs ☐Computer | |

| Suspected Hate/Bias | Crime Code |
|---|---|
| ☐Yes ☒No - N/A | 12213G - Robbery/Gen Miscellaneous |

| y Force Involved |
|---|
| ☐No |

### Investigative Narrative

Original report by Det. J. Spillan Troop 2.

Supplement by Det. William Chapman 4712.

Subject: Robbery 7/11 Rt. 13 and Memorial Dr. NC,DE.

Witness: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓

On Thursday, June   22,2000 at approximately 2332 hrs. I responded to the 7/11 convenience
store located on U.S. Rt. 13 at Memorial Dr. New Castle, Delaware 19720 in reference to a
robbery investigation. My purpose was to processed the scene for physical evidence
however, the volume of complaints being dispatched limited the number of patrol Troopers
available to respond to the robbery to one. The number of potential witnesses at the scene
dictated that I assist in interviewing a witnesses and delay the    crime scene processing. I
then contacted the witness Ann M. Torrence ▓▓▓▓▓ who stated that she parked her vehicle in the
third parking space from the left side of the parking lot facing the building. She had just
exited her vehicle and stepped    onto the side walk when she observed a black male exit the
business. The witness described the black male as follows: approximately (5-2 to 5-3) and
really black, dark skinned, wearing a black bandana over his head and face and young
approximately in his earlier twenties. The witness added that the black male entered what she
might was the drivers seat of a silver vehicle that was parked on the side of the building in
the handicap spot. The witness stated that she did not see the person's hands. The witness
added that she thought she could identify the suspect if she saw him again.

| Reporting Officer | Supervisor Approval |
|---|---|
| TPLC CHAPMAN  PSPT717 | SCOTT M GALBREATH PSPT656 Date 07/03/2000 2025 |

C-127

Statement of Witness 001 - GARY DODD - Continued

FORDESCORT, LIGHT IN COLOR.  W1 ADVISED AS FAR AS HE COULD DETERMINE THE VEHICLE ONLY HAD Q OCCUPANTS.

1 PROVIDED THE FOLLOWING DESCRIPTIONS OF THE TWO INDIVIDUALS HE OBSERVED.

ROBBERY SUSPECT WAS 5'00' TO 5'05' SKINNY BUILD AND                    APPROXIMATEL100LBS.

HE SUSPECT WAS WEARING DARK CLOTHING WHICH W1 COULD NOT PROVIDE ANY DETAILS ABOUT.  W1 ADDED E HEAD OF THE SUSPECT WAS COMPLETELY COVERED SO HE DID NOT SEE A FACE.  W1 ADDED THE GUN THE SPECT WAS HOLDING WAS LONG BARREL    HANDGUN.  THE  SUBJECT STANDING NEXT TO THE SUSPECT HICLE WAS A BLACK MALE 25 YEARS OLD, 5'10' AND 700LBS, MEDIUM BUILD.  HE HAD A ROUND FACE WAS EAN CUT WITH A CLOSE CROP HAIR CUT.  W1 BELIEVED THE SUBJECT HAD A MUSTACHE.

1 COULD PROVIDE NO  FURTHER              INFORMATION ABOUT EITHER SUSPECT OR THE ROBBERY.

1 HAD NOTHING FURTHER TO ADD AT THIS TIME.

---

Statement of Witness 002 - ANN TORRENCE

REFER TO SUPPLEMENT SUBMITTED BY DETECTIVE CHAPMAN FOR STATEMENT.

81

| porting Officer | | Supervisor Approval | | | |
|---|---|---|---|---|---|
| ST SPILLANE-PSPT649 | | STEVEN P LAWRENCE PSPT154  Date 07/05/2000 0856 | | | |
| ...ility Factors | ☐Witness | ☐M. O. | ☐Trace Stolen Property | ☐Suspect Named | Status |

C - 17.8

EXHIBIT C



M. JANE BRADY
ATTORNEY GENERAL

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630

KENT COUNTY
Sykes Building
45 The Green
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369

PLEASE REPLY TO:

October 30, 2000

New Castle County

Raymond Otlowski
Assistant Public Defender
Office of the Public Defender
820 N. French Street
Wilmington, Delaware 19801

   Re: State v. Devearl Bacon
     I.D. No. 0006017660

Dear Ray:

  As you know, I have assumed responsibility for Jim Freebery's case load due to his departure from this office. I have reviewed your October 4, 2000 request for information and offer you the following response:

1. See enclosed. Your client gave a statement which was videotaped and will be made available to you.

2. See response to #1 above.

3. Expert reports will be provided to you when received by the State.

4. None known.

5. Please refer to indictment.

6. Defendant was arrested on June 23, 2000 by Delaware State Police and the Wilmington Police Department.

7. The Court file is the most accurate source of this information.

$\Lambda - /\partial q$    2

offoff

8.      None known.

9.      Several officers from several agencies were involved in this investigation. Please contact me if you wish to discuss this further.

10.     June 23, 2000, at the Wilmington Police Station.

11.     Jencks statements will be provided as required by law.

12.     None known.

13.     Please contact me to schedule a mutually convenient time for such review.

14.     Enclosed.

15.     This response constitutes the State's response based on information presently known and/or in my possession. This response will be supplemented should additional information be acquired.

Please be advised that this response, together with any acknowledgments of information to be supplied when received, constitute the State's entire response to its discovery obligations under Rule 16 and/or any written request filed by the defendant. If, prior to or during trial additional evidence or material is discovered which is subject to discovery, it shall be disclosed immediately. Further discovery - except to the extent referred to herein - is objected to as being outside the scope of the State's obligation under Rule 16. Should you wish to pursue the matter further, please file a motion to compel further response as provided by Rule 16.

State's Reciprocal Discovery Request:

    Pursuant to Superior Court Criminal Rule 16(b), please provide me with the following:

1.      An opportunity to inspect and copy or photograph any books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody or control of the defendant. which the defendant intends to introduce as evidence in chief at the trial.

2.      An opportunity to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to that witness' testimony.

$C-130$

3.    Disclosure of any evidence the defendant may present at
trial under Rules 702, 703 or 705 of the Delaware Uniform Rules of Evidence,
including the identity of the witness and the substance of the opinions to be
expressed.

Please be advised that your failure to respond will be presumed to mean that you have no
materials discoverable under Rule 16(b) and that the State will rely upon that presumption.

Sincerely yours,

Sean Lugg
Deputy Attorney General

$C - 131$

EXHIBIT D

C-132

*Plummer
Center
References*

The News Journal, Wilmington
www.delawareonline.com

The News Journal, Wilmington
www.delawareonline.com

## POLICE & FIRE

### New Castle County

**WORK RELEASE ESCAPEE FOUND:**
The Department of Correction announced
Friday that a woman on work release who
escaped the Plummer Community Correc-
tions Center in **Wilmington** has been
caught. Officials said Michelle Y. Brown,
who did not return to the center Tuesday
after being allowed to leave to look for a
job, was arrested Thursday. She was
charged with escape after conviction and
drug possession and was committed to
Baylor Women's Correctional Institution.

The News Journal, Wilmington
www.delawareonline.com

## CRIME STOPPERS

Anyone with information about a
Delaware crime can make an
anonymous call to Crime Stop-
pers. In Delaware, call (800) TIP-
3333 (847-3333) or from a cell
phone, call *TIPS. From other
states, call (302) 739-5927.

## POLICE & FIRE

### Wilmington

**ESCAPEE SOUGHT:** A man sentenced
to six months of work release for carrying
a weapon is missing from the Plummer
Community Corrections Center. Deshawn
Drumgo, 23, of Wilmington, failed to re-
turn to the center Thursday after looking
for a job, according to Beth Welch,
spokeswoman for the Department of Cor-
rection. Anyone with information should
call (800) 542-9524 or the nearest police
department. Welch said.

## POLICE & FIRE

### New Castle County

**WALKAWAY SOUGHT:** The Department
of Correction announced that a work re-
lease offender escaped from the Plummer
Community Corrections Center in **Wilm-
ington.** Michelle Y. Brown, 35, was last
seen Tuesday. Brown is 5 feet 9 inches
tall, 285 pounds with a scar on her upper
lip. She also goes by the names Michelle
Johnson, Michelle Waters and Karen
Miller. Anyone with information is asked to
call (800) 542-9524 or local police.

C-133 *Exhibit D (page)*

EXHIBIT E

C-134

**DRAFT**

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | C.A. No.     0006017660 · |
| V. | ) | |
| | ) | C.A. IN Nos. 00070347 et seq. |
| DEVEARL BACON, | ) | 0007161666 et seq. |
| | ) | |
| DEFENDANT. | ) | |

## DEFENDANT'S MOTION IN LIMINE OR FOR PRE-TRIAL ORDER
## TO EXCLUDE SPECIFIC EVIDENCE OR TESTIMONY
## PURSUANT TO DRE 404(a) AND 608(b) PROHIBITIONS

Defendant moves this Court for an order instructing the Deputy State Attorney to absolutely

refrain from making any direct or indirect reference whatsoever in person, by counsel, or through

witness, to the specified evidence concerning defendant's release from the Plummer Center;

reference to defendant being awake for 3 days; reference to defendant's "attitude" or "calmness,"

concern in his character, and reference to "the 25 years" on the following grounds:

1. Case is now set for trial.

2. According to the indictments, the trial will involve a determination of these basic issues:

the elements of Robbery 1st and other indictment elements [set forth issues]

3. The defendant is informed, believes and alleges that at trial the State will attempt to

introduce evidence, make reference to, or otherwise leave the jury with the impression that defendant

is a convicted criminal who just got released from prison, thus an "experienced" seasoned

professional, "calm" with "an attitude" who calculated his risks "at 25 years," from prior criminal

experience. '

Exhibit E (2 pages)

1

$C - 135$

**DRAFT**

4. It is immaterial and unnecessary to the disposal of this case and contrary to the rules of evidence 404(a)(1) and (b) and 608(b) recognized by law in this state to permit such evidence in reference and further, the admission of such evidence would be highly prejudicial to the defendant in the minds of the jury in that they would be free to infer a general criminal disposition of defendant as to a propensity to commit crime.

5. An ordinary objection during the course of trial, even if sustained with proper instructions to the jury, will not remove such effect in view of actually drawing the jury's attention to this evidence of defendant's prior criminal status as being a newly "released" prisoner, and "his experience" in committing crimes, and their penalities.

WHEREFORE, Defendant prays that this Honorable Court exercises its discretion and makes an Order absolutely prohibiting said offer or reference thereto.

Respectfully submitted,

[counsel of record]

Dated:

Exhibit E (2 pages)

2

$C - 136$

EXHIBIT F

C-137

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,            No. 369, 2001

v.

DEVEARL BACON,

Defendant.

BEFORE:   HONORABLE SUSAN C. DEL PESCO, J.

APPEARANCES:

SEAN LUGG, ESQ.
Deputy Attorneys General
for the State

EDMOND HILLIS, ESQ.
for the Defendant

- - - - - - - - - - - - -
ORAL ARGUMENT
JUNE 21, 2001
- - - - - - - - - - - - -

MICHELE L. ROLFE
SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
(302) 577-2400 Ext. 415

2

JUNE 21, 2001
Courtroom No. 201
10:00 a.m.

PRESENT:

As noted.

- - - - -

THE COURT: Okay. I have received e-mails from counsel, and we're making some of the adjustments. The State has indicated it intends to nolle pros Count V of the indictment, in addition to the ones that were previously nolle prossed. I'm asking Mr. Lugg to include all the paperwork that's necessary so that it's in order.

There was an issue with regards to amending one count of the indictment, which one was that?

MR. LUGG: It's Count 15.

THE COURT: Fifteen?

MR. LUGG: Yes, Your Honor, on page 15.

THE COURT: The issue was amending the count to change the words "car keys and car" to "U.S. currency."

Mr. Hillis, you had previously cited a case, and I'll let you make your record.

---

1 defense objects to the amendment of the indictment.
2 And if you'll bear with me -- which count is that on
3 the new numbering system?
4     THE COURT: Count 15, on page 15.
5     MR. HILLIS: Yes, Your Honor, thank you.
6 That's the count that alleges a robbery with Roshell
7 Conkey as the alleged victim.
8     The defense's position is that Johnson V.
9 State, which is Robert Johnson V. State, a 1998
10 decision of the Delaware Supreme Court, which is 711
11 Atlantic 2d., page 18. It stands for the proposition
12 that the Delaware Constitution guarantees the
13 defendant's right to have indictments returned by the
14 Grand Jury, and whenever there is a substantive change
15 in an indictment that can only be accomplished by way
16 of the Grand Jury. And the Supreme Court under its
17 rules does not have the legal authority to rule
18 because that violates the provision that I have just
19 cited.
20     And it seems to me that this is more than an
21 administrative change. And in Johnson, in which there
22 was an assault charged, and the alleged assault in the
23 count in the indictment was originally listed as a

---

1 chair, and the evidence that came in during the trial
2 was really that a table has been used, and the Judge
3 of the Supreme Court permitted the State to amend the
4 indictment to allege a chair or a table.
5     The Delaware Supreme Court reversed that
6 conviction because -- I'm sorry, the State said the
7 instrumentality was important, and the Court couldn't
8 change that because it would violate the Grand Jury's
9 decision.
10     I could see that at first blush it appears
11 that the difference between car keys and a car and US
12 currency is not as severe as the instrumentality of
13 the assault because I think it's a cosmetic
14 difference. Because what Robert Johnson V. State
15 really touched upon was the Delaware Supreme Court and
16 the Grand Jury's decision that was considered, the
17 facts put before it, to determine whether or not an
18 individual ought to stand trial.
19     In this particular case, there was, in fact,
20 a carjacking. There is evidence that the Grand Jury
21 heard that there was not three separate incidents
22 covering money of multiple-type sum.

C - 138

5

1  decided. We know they decided that Roshell Conkey was
2  the victim of a robbery, or at least there was
3  sufficient evidence before them to return an
4  indictment alleging that she was a victim of a robbery
5  based on car keys and a car. We don't know how they
6  would have ruled if there was U. S. Currency taken
7  from Roshell Conkey, whether or not there was
8  sufficient evidence for that Grand Jury to have
9  determined that United States currency was taken from
10 her with force, which it was, and that is what the
11 robbery statute requires.
12        Given that, we think the distinction was more
13 than a clear account, and we object to Robert Johnson
14 versus State. And we would preclude the motion to
15 amend that count of the indictment.
16        THE COURT: Thank you, Mr. Lugg.
17        MR. HILLIS: Your Honor, I will be just a
18 moment. In fairness to Mr. Lugg, he provided me with
19 a case he relied upon, and I didn't give it back to
20 him.
21        MR. LUGG: Your Honor, I previously cited on
22 the record, and I apologize, I do not have a copy with
23 me, I thought I did. What we're dealing with is

7

1        That property was described in that
2  indictment as being car keys, and the State merely
3  asks it to be amended in the count to U. S. Currency
4        The case, which was a 1997 Supreme Court
5  case, I believe it was Rogers, and I apologize for n
6  having the case name, dealt specifically with that
7  issue. And I believe there is a relative distinctic
8  -- pardon me -- made between this case and Roberts
9  if that's the name of the case -- and the Johnson ca
10 based upon what I laid out to this Court.
11        In that case, there was a request made by th
12 State to change the allegation of property, which was
13 cigarettes, rather than United States currency or
14 rather than valuables.
15        In this case, it is the request of the State
16 to make the distinction of the property changed from
17 car keys and the car to U. S. Currency. I believe th
18 distinction between the Roberts case and the Johnson
19 case will be sufficient to permit the State to amend
20 the indictment pursuant to Rule 7(a).
21        Finally, Your Honor, I believe, for the
22 record, for what it's worth, that Rule 7(e) may permi
23 an indictment or information to be amended at any tim

FROM NOTH-... .    6

1  Mr. Hillis will correct the State's request for
2  amendment of an indictment, and I would submit to the
3  Court that Rule 7(e) applies clearly. And I would
4  argue that it permits the amendment of the indictment
5  of this case, and the distinction to be made from
6  Johnson is somewhat clear in this case. And I think
7  the best way to view it is, as Mr. Hillis stated,
8  Johnson deals with the instrumentality of the offense
9  in the context of an assault case.
10        In that type of case there must be an
11 allegation of either serious physical injury or injury
12 caused by a dangerous instrument, a deadly weapon.
13        In that case, it was actually the
14 instrumentality of the crime, which was sought to be
15 modified. Rather, in this case, there is no request
16 to change any instrumentality of the crimes nor
17 elements of the crimes, but, rather, simply a
18 distinction of property alleged to have been taken.
19        In this case, a robbery case, there must be
20 an allegation that property was attempted to have been
21 taken by means of force or some type of coercion. And
22 for robbery first, in this case, it is alleged that a

8

1  before the verdict or another finding if no additional
2  evidence or different offer is charged, and if the
3  substantial rights of the defendant are not
4  prejudiced.
5        In this case, additional or no different
6  offer is charged, and I would submit there is no
7  substantial rights of the defendant prejudiced. It is
8  merely offered as to what the property will be rather
9  than what the instrumentality of the offer was.
10        Your Honor, I would ask the Court to permit
11 the State to amend the indictment as to Count 15 to
12 include the term "United States currency" as opposed
13 to "car keys and a car."
14        MR. HILLIS: Your Honor, brief rebuttal, if I
15 may. I would just like to point out to the Court
16 these two things about the Roberts decision that is
17 significant: One is that it predates Johnson versus
18 State. It is a 1997 decision. Johnson versus State
19 is from 1998. It is also different in that it is a
20 Supreme Court unpublished opinion as opposed to
21 Roberts is a full opinion of the Court.
22        And the final thing I would like to point out

C-139

9

1  own rule, the substantial right of opinion is very
2  important to put in context as to what Johnson stands
3  for. There is a substantial right, and Justice
4  Holland, gave a detailed history of that right from
5  England to colonial times, and Delaware law on
6  constitutions points out that it is a time-honored and
7  important right under Delaware law. Thank you.
8      THE COURT: Thank you, very much. I have
9  reviewed the cases that you have supplied me, and I
10 agree for an amendment that implicates a specific
11 element, which is an element of offer, would control.
12     Here we have a different situation because in
13 order for there to be a robbery there simply needs to
14 be property, and the character of the property is of
15 no significance.
16     Whether it's United States Currency or car
17 keys or any other form of property it doesn't change
18 the nature of the offense and, therefore, under these
19 circumstances, I will grant the State's motion and
20 amend the indictment.
21     MR. HILLIS: Thank you, Your Honor.
22     THE COURT: Now, is there anything else we
23 need to take up before the jury comes in?

10

1      MR. LUGG: Your Honor, we mentioned that we
2  would afford Mr. Hillis time to review, and we're
3  going to get into that next, in the hopes of
4  streamlining the process for the jury.
5      THE COURT: How much time would you like?
6      MR. LUGG: I think we can do it in 10
7  minutes. I have both experts here, and any questions
8  we can deal with can simply go to the experts.
9      THE COURT: My preference would be to do
10 this: to get started on somebody, only because I hate
11 to have the jury sitting. If that's not the sequence
12 in which you need to present the evidence, then I'll
13 take a recess. Is there any way we can go ahead and
14 then break between the witnesses?
15     MR. LUGG: I think Mr. Hillis may have a few
16 questions for him that might take 10 minutes, so can
17 we take a brief break to look at this stuff very
18 quickly or as quickly as possible?
19     THE COURT: I really was wondering if one of
20 the experts didn't require the interruption. Do they
21 both require the interruption?
22     MR. LUGG: Your Honor, frankly, to afford

1  address the issues with respect to reach a stipulation
2  or agreement to their qualifications, it will cut
3  their testimony in half.
4      THE COURT: I see, I see. Okay. Well, then
5  Mr. Hillis --
6      MR. HILLIS: Let me talk with my client.
7      THE COURT: Yes.
8      MR. HILLIS: Your Honor, I'm prepared based
9  on the curriculum vitae -- and Mr. Lugg shared with me
10 this morning my personal experience from the
11 Delaware's fingerprint analysis -- I'm not going to
12 raise any challenge to their qualifications, and I'm
13 not going to make any motion of any kind, so I think
14 if the State's ready, we can proceed.
15     MR. LUGG: Very well.
16     MR. HILLIS: I appreciate Mr. Lugg's courtesy
17 to try to offer that in advance.
18     THE COURT: All right, then.
19     (End of argument.)
20
21
22
23

1  STATE OF DELAWARE:
2
3  NEW CASTLE COUNTY:
4
5
6      I, Michele L. Rolfe, Official Court Reporter
   of the Superior Court, State of Delaware, do hereby
   certify that the foregoing is an accurate transcript
7  of the proceedings had, as reported by me in the
   Superior Court of the State of Delaware, and
8  supervised by Kathleen D. Feldman, Chief Court
   Reporter, RPR, in and for New Castle County, in the
9  case therein stated, as the same remains of record in
   the Office of the Prothonotary at Wilmington,
10 Delaware, and that I am neither counsel nor kin to any
   party or participant in said action nor interested in
11 the outcome thereof.

12     WITNESS my hand this _____ day of
   _____, 2001.
13

14          MICHELE L. ROLFE
            SUPERIOR COURT REPORTER
15
16
17
18
19
20
21

C-140

5

1    What is that about? Well, there are
2    essentially six charges by way of an 13-count
3    indictment alleged to have been committed by the
4    defendant, Devearl Bacon.
5        The indictment is nothing more than a
6    charging document. It is the sketch of the State's
7    case, nothing more, nothing less. It charges the
8    defendant with robbery in the first degree,
9    carjacking, aggravating menacing, possession of a
10   firearm during the commission of a felony, possession
11   of a deadly weapon by a person prohibited and wearing
12   a disguise during the commission of the felony.
13       I'll explain these briefly in these
14   instructions, and more will be explained throughout
15   the trial; And most importantly, at the conclusion of
16   the case, you'll be instructed on what the law is.
17   But in a nutshell, to help you view the evidence of
18   robbery in the first degree, the defendant is guilty
19   of robbery in the first degree when in the course of
20   committing theft, he did threaten immediate use of
21   force to another person. And during the commission of
22   this crime, he displayed a deadly weapon. And
23   throughout this case, that deadly weapon is a gun.

7

1    in. one door out, same door, there was a glass divider
2    where you pay for your purchase and you leave. As
3    these people are standing in this store, the
4    defendant, Devearl Bacon. the person seated over
5    there, was wearing a hood and a dark jacket and shorts
6    with a bandanna over his face. He walks in with a gun
7    and says, Give me your money. And the people in the
8    store look at him and they say, Are you kidding me?
9        Devearl Bacon is about 5'5, a slender guy.
10   They don't listen. You know what he does? He fires a
11   round into the ceiling. They are listening now, they
12   hit the deck. He goes to the clerk and says, Give me
13   the money, and the clerk opens the drawer. He flees
14   with it. That's aggravated menacing. He imposes fear
15   of death as he fired the gun and he robbed the clerk.
16       On his way out, he sees Avon Matthews, and
17   here is a man who has keys to a car. He says to Avon
18   Matthews, Which one is your car? Give me the keys,
19   tell me where it is. Avon is scared, he's got the gun
20   against his head. Avon reaches in his pocket and
21   hands him the keys.
22       THE DEFENDANT: Your Honor, I object. He's
23   adding in parts --

6

1    Carjacking, the defendant Devearl Bacon is
2    alleged to have taken a car from Avon Matthews without
3    the permission of that person and while in the
4    possession of that vehicle he displayed a gun, the
5    same gun.
6        Aggravated menacing, that is by displaying
7    that gun he placed another person or other people in
8    fear of imminent physical injury.
9        The possession of a firearm during the
10   commission of a felony is exactly what it says. He
11   displayed a gun during the commission of a felony and
12   that is a crime.
13       Wearing a disguise is a felony during the
14   commission of a crime. Pulling a hood up over your
15   head. that is a crime.
16       And, finally, people for various reasons are
17   prohibited from possessing a firearm in this state.
18   The defendant was one of those people. He possessed a
19   gun and that's a crime.
20       Now, what exactly happened? With that in
21   mind, on Wednesday June 21, 2000. a year ago almost
22   today, a couple of people were in Star Liquors getting
23   some beverages. And in Star Liquors there is one door

8

1        MR. HILLIS: Excuse me, Your Honor, may I
2    have a moment?
3        THE COURT: Excuse me -- Mr. Hillis, it may
4    be appropriate -- shall I send the jury out?
5        MR. HILLIS: Perhaps.
6        THE COURT: Ladies and gentlemen, we'll ask
7    you to step out for a moment.
8        {The jury left the room.}
9        THE COURT: Would you like a recess?
10       MR. HILLIS: Yes, thank you, Your Honor. I
11   think that would be appropriate.
12       THE CLERK: All rise.
13       (A brief recess was taken.)
14       THE COURT: Mr. Bacon, I don't know what your
15   attorney told you and it's none of my business what he
16   said to you, and what you say to him is privileged,
17   but I want you to understand from me that it is in
18   your best interest not to say anything.
19       THE DEFENDANT: Yes, Your Honor.
20       THE COURT: You run the risk of making the
21   jury angry and you don't want to be there.
22       THE DEFENDANT: Yes, Your Honor.
23       MR. HILLIS: Your Honor, so the record is

25

1    A. Exactly.
2    Q. And --
3    A. On that side, where the pictures and things
4    are, that's where the customers are.
5    Q. Okay. Now, taking this back to the 21st of
6    June, you say you were working that night, correct?
7    A. Yes.
8    Q. Did something occur in this store as you were
9    working?
10   A. Yes.
11   Q. Can you tell us what happened?
12   A. Exactly what happened?
13   Q. Please.
14   A. I was waiting on my customers -- I was
15   waiting on my customers when Mr. Bacon came into the
16   store.
17   Q. Okay.
18   A. When he came to the store he had a gun. And
19   he had a bandanna over his face, and he told everybody
20   to get on the floor. And we all looked at him as if
21   he was crazy.
22   Q. Why is that?
23   A. Because I didn't take him serious.

26

1    Q. Why didn't you take him serious?
2    A. I don't know. It didn't hit me until he
3    stuck the gun up in the air. Because his exact words
4    was, Everybody get on the floor.
5    Q. All right?
6    A. And we wouldn't get on the floor, so he said,
7    Do you think I'm playing? Do you think I'm playing?
8    And he repeated himself twice.
9        And then he took the gun and shot it up in
10   the air and that's when the light fell.
11   Q. He discharged the gun into the air?
12   A. That's when everybody got on the floor.
13   Q. What happened after he discharged the gun
14   into the air?
15   A. That's when we all got on the floor.
16   Q. What happened next?
17   A. He came over to the window and when he came
18   over to the window, he told me he wanted the money.
19   Q. Okay.
20   A. And there was no cash register in the store.
21   It was like was an end table. So what I was trying to
22   do was give him the whole table just so he could take

27

1    Q. Okay.
2    A. Because all I seen was this gun pointed at me
3    and he had it pointed at my head at that time.
4    Q. Where was he standing at this point in time?
5    A. He was standing right at the window.
6    Q. At the window?
7    A. Unh-huh.
8    Q. And you were down on the ground?
9    A. I was down on the ground.
10   Q. What did you do next?
11   A. So I told him I could not give him the table.
12   I couldn't lift it or I couldn't get it, so I threw
13   the money at his through the window. I tried to get
14   the drawer out. I told him I couldn't get the drawer
15   out, so he said I want the money. So what I did was I
16   took the money -- there was moneys in sections of the
17   drawer, it was like an end table that goes to the
18   coffee table and it had sections in it -- so I took
19   the cash out in each one of these sections and I threw
20   it at him.
21   Q. Okay.
22   A. And by that time some money had fell on the
23   floor and I had picked the money up. It was like a

28

1    couple of one dollar bills on the floor. I asked him
2    did he want them too but I was just scared. I picked
3    up the one-dollar bills and I threw them at him.
4        He had like a windbreaker on with a sports
5    pocket inside the jacket and he was stuffing the money
6    in there.
7    Q. And if I could talk to you a second about
8    the windbreaker, what do you recall about this
9    windbreaker looking like?
10   A. It was a blue windbreaker he had a hood over
11   his head.
12   Q. Okay.
13   A. And a bandana across his face.
14   Q. And do you recall anything else about his
15   description --
16   A. He had on shorts.
17   Q. Okay.
18   A. And he had on, I'd say, like work shoes.
19   Like the insulated boots or something.
20   Q. Okay. Was there anybody else in the store
21   with you that you knew that evening?
22   A. Yes.

37

1    A. Yes, I do.

2    Q. And where do you see that person?

3    A. Sitting over there.

4    Q. You said you saw that person later that

5    evening on the 21st or 22nd, how can you explain how

6    that was the same person in your store that night?

7    A. He had on the same clothes the night he came

8    to the liquor store.

9    Q. By the same clothes, are you referring to

10   the windbreaker?

11   A. Unh-huh.  He had on the same shorts and the

12   work boots or whatever, yup.

13   Q. And you also gave and general description to

14   the police; is that correct?

15   A. Unh-huh.

16   Q. How would you describe his demeanor in this

17   courtroom?

18   A. He was short.

19   Q. About how tall would you have estimated?

20   A. I'd say 5'0 to 5'2.  I'm tall.  I'm six foot.

21   I knew he was shorter than I was.

22   Q. And --

23   A. And he had a thin build.

38

1    Q. Did you say he was wearing shorts?  Did you

2    notice anything about his legs?

3    A. He had skinny legs.

4    Q. And his demeanor, could you describe that for

5    the jury how he acted while he was in the store?

6    A. He was calm.

7    Q. Did he raise his voice at all.

8    A. No, he was just demanding.  You could hear it

9    in his voice.  He was very demanding, he -- it was

10   like he knew what he was doing and this wasn't his

11   first time.

12        MR. HILLIS:  Objection.

13        THE WITNESS:  You couldn't hear that he was

14   nervous in his voice.

15   BY MR. LUGG:

16   Q. And he discharged one round into the ceiling,

17   correct?

18   A. You got it.

19   Q. Was the gun out any other time?

20   A. Yes.  After I got away from the window, I ran

21   to the back of the store, I heard a gun go off again.

22   By that time, I was on the phone with my

23   cousin -- my cousin was on the phone with the police.

39

1    I took the phone from my cousin to give the address.

2    Q. Have you ever spoken to this gentleman before

3    about the case?

4    A. No.

5    Q. Did you speak to more than one officer?

6    A. I just spoke to one detective.  It's

7    Detective Spillan.  You're not Detective Spillan, are

8    you?  I'm sorry it was Detective Spillan.  It's not

9    him -- or I could be wrong.

10        MR. LUGG:  If I could have just one moment.

11   BY MR. LUGG:

12   Q. You said that you had contact with other

13   officers after the case about the description of this

14   person you saw afterwards.  You said you saw the

15   defendant afterwards?

16   A. The same detective interviewed me, is the

17   same detective I kept in touch with.

18   Q. What police agency was that in; do you

19   recall?

20   A. The State Police on Troop 6.

21   Q. Okay.

22        MR. LUGG:  I have nothing further.  Thank

23   you.

40

1         THE COURT:  Mr. Hillis.

2           RECROSS EXAMINATION

3    BY MR. HILLIS:

4    Q. Ma'am, you're not too good with heights, but

5    you know you're six foot, right?

6    A. Yes.

7    Q. And you told whoever the detective was that

8    you talked to that night, that the person that you saw

9    was 5'0 to 5'2, correct?

10   A. Correct.

11   Q. So that's a foot shorter than you?

12   A. I'm six foot.

13   Q. Yes; so that's a foot to ten inches shorter

14   than you, correct?  There's twelve inches in a foot.

15   A. Well, you know better than I do.

16   Q. Well, the point is that you thought when you

17   tried to tell the detective as best you could --

18   A. I know he was --

19   Q. Ma'am, please --

20        MR. HILLIS:  Your Honor, please instruct the

21   witness to wait until I finish the question before she

22   tries to answer it.

23        THE COURT:  She's waiting.

109

1  person -- if you could assist us in opening the bag to
2  determine what's in there, that would be fine?
3      A. If, I could.
4      Q. Please.
5      A. Yes, these are the items.
6      Q. And if you could describe for us what the
7  items are within that envelope that you removed from
8  the defendant, Mr. Bacon?
9      A. There was a brown paper bag that had the
10  contents of change.
11      Q. Okay.
12      A. There was a small plastic flashlight and 13,
13  one dollar bills were on his person.
14      Q. Did you total the money?
15      A. The change, I did not.
16      Q. What about the ones?
17      A. I counted them.
18      MR. LUGG: May I approach, Your Honor. At
19  this point I would like State's Identification I to be
20  moved in as State's Exhibit 9.
21      MR. HILLIS: That's without objection.
22      THE CLERK: Marked as State's Exhibit 9.
23      (State's Exhibit 9 was marked for

110

1  identification.)
2  BY MR. LUGG:
3      Q. After you arrived at the Wilmington Police
4  Station, what occurred next?
5      A. Mr. Bacon began making statements to were I
6  felt it was necessary to read him his Miranda rights.
7      Q. Did you in fact issue a Miranda warning to
8  him?
9      A. Yes, I did.
10      Q. And did he continue to make statements to
11  you?
12      A. Yes. After I asked him if he understood his
13  rights.
14      Q. What exactly did he tell you?
15      A. I didn't question him concerning the
16  investigation. I just merely read him his rights and
17  sat there while he made several statements. One of
18  which he made a statement that he was released from
19  the Plummer Center. A second statement that he made
20  was that he hadn't slept in three days. And the third
21  statement was to the effect that he would brief that
22  do 25 years.
23      Q. And if you could explain or describe for us

111

1  Mr. Bacon's demeanor as you observed him on the early
2  morning hours of the 23rd?
3      A. He was cooperative. He was calm. It was
4  almost as if it was an attitude, not a real big deal
5  to be in this position.
6      Q. Did he raise his voice or was he excitable at
7  all with you?
8      A. No, sir.
9      Q. And did he resist any of the demands that you
10  made upon him as far as transporting him to the
11  Wilmington Police Station?
12      A. No, sir.
13      Q. While you were at the police station, was
14  anyone else with you while he was making these
15  statements?
16      A. No, sir.
17      Q. After the statements were made, was the case
18  transferred to another officer?
19      A. I actually remained with Mr. Bacon until
20  Detective Spillan arrived.
21      Q. And did Detective Spillan arrive at the
22  Wilmington Police Station?
23      A. Yes, sir, he did.

112

1      Q. And at that point was he transferred to
2  Detective Spillan?
3      A. Yes, sir.
4      Q. Why is that?
5      A. He was the investigating officer.
6      MR. LUGG: No further questions of this
7  witness, Your Honor.
8      MR. HILLIS: Your Honor may we approach?
9      THE COURT: Yes.
10      (A side bar was recorded.)
11      MR. HILLIS: Based on my conversation with
12  Mr. Lugg prior to this witness, I thought he was not
13  going to mention the statement about him being
14  released from the Plummer Center. I think that was
15  the impression he had too and I frankly didn't
16  objection because I don't want to highlight it, but I
17  think we're in a position that's brief that
18  inappropriate. I didn't think it was coming.
19      THE COURT: Well, you have to make a motion.
20      MR. HILLIS: Okay.
21      THE COURT: Let me just say that, yeah, I was
22  a little surprised to hear that to. On the other
23  hand, we all work in law enforcement, and we know what

$\int - 144$

113

1  it is, but I'm not sure everybody else in the world
2  does.
3      MR. HILLIS: That's true. That's one of the
4  reasons why I didn't object. To set the record
5  straight, I will make an application for a mistrial.
6  If the court is not going to give me the mistrial, I
7  don't want a hearing on this, judge.
8      THE COURT: Okay. The other point I wanted
9  to make is that they are going to know he's a person
10  prohibited because he stipulated to that.
11      MR. HILLIS: That's absolutely true, Your
12  Honor.
13      THE COURT: And so given that fact, if
14  somebody should know what the Plummer Center is, I
15  don't find it prejudicial in context with a person
16  prohibited.
17      Therefore, I'm going to deny your application
18  for a mistrial.
19      MR. HILLIS: Okay. Thank you.
20      (Side bar ended.)
21             CROSS-EXAMINATION
22      MR. HILLIS: May I cross, Your Honor?
23      THE COURT: Yes, you may.

115

1      Q. Anything may be used against him in the court
2  of law. Those are the rights you read to him?
3      A. Yes, sir.
4      Q. When he made those statements to you he was
5  aware of all that?
6      A. Yes.
7      Q. Now, when you arrived at the scene before
8  transporting Mr. Bacon back to the Criminal
9  Investigation Unit of the Wilmington Police
10  Department, who was on the scene as you remember? Was
11  Detective Spillan there?
12      A. At that time, I believe, Detective Spillan
13  had arrived just before I got to the scene.
14      Q. Okay.
15      MR. HILLIS: No further questions, thank you,
16  Corporal.
17      MR. LUGG: Prompts nothing from the State,
18  Your Honor.
19      THE COURT: Very well, you may step down.
20  You're excused.
21      MR. LUGG: The State next calls Detective
22  Chapman, Your Honor.
23      DETECTIVE WILLIAM CHAPMAN, having been called

114

1      MR. HILLIS: Thank you.
2  BY MR. HILLIS:
3      Q. Corporal, I just have a few questions for
4  you. What time did you arrive if you recall to the
5  Wilmington Police Station?
6      A. Based on my report, I put in an approximate
7  time of 18 minutes after 2:00 in the morning.
8      Q. Okay. And do you recall how long that was
9  after you actually arrived at the scene of the arrest?
10      A. Approximately, I arrived at the scene at
11  approximately 2:00 in the morning.
12      Q. Okay. And do you recall when it was that you
13  read Mr. Bacon his Miranda rights?
14      A. At approximately 2:30 in the morning.
15      Q. Now, just -- to clear things up, those
16  Miranda rights we're talking about are the rights he
17  has pursuant to the law in this country. I he wants
18  to talk he can, but if he doesn't want to talk then he
19  doesn't have to talk?
20      A. Yes, sir.
21      Q. That he can be afforded the right to a lawyer
22  or one will be appointed to him?
23      A. Yes, sir.

116

1  on the part and behalf of the State as a witness,
2  being first duly sworn under oath, testified as
3  follows:
4             DIRECT EXAMINATION
5  BY MR. LUGG:
6      Q. Detective Chapman, good afternoon.
7      A. Good afternoon.
8      Q. How are you, sir?
9      A. Good.
10      Q. By whom are you employed?
11      A. Delaware State Police.
12      Q. How long have you been so employed?
13      A. Since September of 1988.
14      Q. And what is your current assignment?
15      A. I'm an evidence detective of the criminal
16  investigations unit.
17      Q. And how long have you been working in the
18  Criminal Investigation Unit as an evidence detective?
19      A. December of 1995.
20      Q. Okay. And were you working as an evidence
21  detective in that unit on the days of June 21, 22nd
22  and 23, of the year 2000?
23      A. Yes. /  / / /

Spillan - cross                                                    21

they were helping him with repairing the flat to the tire.

    Q.    And how did you determine they were not suspects?

    A.    In the Star Liquors on the 21st, he was the sole person to the robbery. On the 22nd, there was another person that was a passenger in the vehicle. The person that was described to me by the witness did not match at all, height, physical description or anything. Plus, those two witnesses that, the two persons that were picked up with Mr. Bacon said that they were hired by him to use a jack. They both received five dollars each to help him repair the car tire.

    Q.    Did my client make any statements to you at that point?

    A.    No.

    Q.    All right. And initially you said that there was only one person involved in the Star Liquors --

    A.    Yes, ma'am.

    Q.    -- incident? Okay. I don't understand, though, how you determined that was my client as opposed to the other two people?

    A.    Physical description.

    Q.    Based on the description --

    A.    Yes.

Spillan - cross                                22

Q.     – the witnesses gave?

A.     Yes, and, and the clothing item and, and the type of gun that was displayed.

Q.     What did the other two people look like, and what were they wearing?

A.     There was one gentleman that was, probably works out every day at Gold's Gym. He had, pardon me, I don't know what they call it, the extremely long hair with, all clumped together.

Q.     Dreads?

A.     Dreadlocks. And the other person that was with him, he had no shirt on. He just had black, black pants on. He was working on a full beard and mustache. And his height, he's probably 6'1" or 6'2". And witness describing the person that got, that got into the passenger car of the vehicle with Mr. Bacon was only described as about 5'10".

Q.     Okay. With regard to – it's Star Liquors and the 7-11, that's the place –

A.     Yes.

Q.     – the second place? Okay. Did any, any of the witnesses pick my client out of a photo lineup?

C-147

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,                    No. 269, 2001

v.

DEVEARL BACON,

    Defendant.

BEFORE:    HONORABLE SUSAN C. DEL PESCO, J.

APPEARANCES:

    SEAN LUGG, ESQ.
    Deputy Attorneys General
      for the State

    EDMOND HILLIS, ESQ.
      for the Defendant

- - - - - - - - - - - - -
ORAL ARGUMENT
JUNE 21, 2001
- - - - - - - - - - - - -

MICHELE L. ROLFE
SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
(302) 577-2400 Ext. 415

22
23

---

                                            2

1                JUNE 21, 2001
                Courtroom No. 201

2                10:00 a.m.

3  PRESENT:

4      As noted.

5           - - - -

6        THE COURT: Okay. I have received e-mails

7  from counsel, and we're making some of the

8  adjustments. The State has indicated it intends to

9  nolle pros Count V of the indictment, in addition to

10  the ones that were previously nolle pressed. I'm

11  asking Mr. Lugg to include all the paperwork that's

12  necessary so that it's in order.

13        There was an issue with regards to amending

14  one count of the indictment, which one was that?

15        MR. LUGG: It's Count 15.

16        THE COURT: Fifteen?

17        MR. LUGG: Yes, Your Honor, on page 15.

        THE COURT: The issue was amending the count

to change the words "car keys and car" to "U.S.

currency."

        Mr. Hillis, you had previously cited a case,

and I'll let you make your record.

---

1  defense objects to the amendment of the indictment.

2  And if you'll bear with me -- which count is that on

3  the new numbering system?

4        THE COURT: Count 15, on page 15.

5        MR. HILLIS: Yes, Your Honor, thank you.

6  That's the count that alleges a robbery with Roshell

7  Conkey as the alleged victim.

8        The defense's position is that Johnson V.

9  State, which is Robert Johnson V. State, a 1998

10  decision of the Delaware Supreme Court, which is 711

11  Atlantic 2d., page 18. It stands for the proposition

12  that the Delaware Constitution guarantees the

13  defendant's right to have indictments returned by the

14  Grand Jury, and whenever there is a substantive change

15  in an indictment that can only be accomplished by way

16  of the Grand Jury. And the Supreme Court under its

17  rules does not have the legal authority to rule

18  because that violates the provision that I have just

19  cited.

20        And it seems to me that this is more than an

21  administrative change. And in Johnson, in which there

22  was an assault charged, and the alleged assault in the

23  count in the indictment was originally listed as a

---

1  chair, and the evidence that came in during the trial

2  was really that a table has been used, and the Judge

3  of the Supreme Court permitted the State to amend the

4  indictment to allege a chair or a table.

5        The Delaware Supreme Court reversed that

6  conviction because -- I'm sorry, the State said the

7  instrumentality was important, and the Court couldn't

8  change that because it would violate the Grand Jury's

9  decision.

10        I could see that at first blush it appears

11  that the difference between car keys and a car and US

12  currency is not as severe as the instrumentality of

13  the assault because I think it's a cosmetic

14  difference. Because what Robert Johnson V. State

15  really touched upon was the Delaware Supreme Court and

16  the Grand Jury's decision that was considered, the

17  facts put before it, to determine whether or not an

18  individual ought to stand trial.

19        In this particular case, there was, in fact,

20  a carjacking. There is evidence that the Grand Jury

21  heard that there was not three separate incidents

22  covering money of multiple-type sum.

C - 148

5

1  decided. We know they decided that Roshell Conkey was
2  the victim of a robbery, or at least there was
3  sufficient evidence before them to return an
4  indictment alleging that she was a victim of a robbery
5  based on car keys and a car. We don't know how they
6  would have ruled if there was U. S. Currency taken
7  from Roshell Conkey, whether or not there was
8  sufficient evidence for that Grand Jury to have
9  determined that United States currency was taken from
10  her with force, which it was, and that is what the
11  robbery statute requires.
12      Given that, we think the distinction was more
13  than a clear account, and we object to Robert Johnson
14  versus State. And we would preclude the motion to
15  amend that count of the indictment.
16      THE COURT: Thank you, Mr. Lugg.
17      MR. HILLIS: Your Honor, I will be just a
18  moment. In fairness to Mr. Lugg, he provided me with
19  a case he relied upon, and I didn't give it back to
20  him.
21      MR. LUGG: Your Honor, I previously cited on
22  the record, and I apologize, I do not have a copy with
23  me, I thought I did. What we're dealing with is

6

1  Mr. Hillis will correct the State's request for
2  amendment of an indictment, and I would submit to the
3  Court that Rule 7(e) applies clearly. And I would
4  argue that it permits the amendment of the indictment
5  of this case, and the distinction to be made from
6  Johnson is somewhat clear in this case. And I think
7  the best way to view it is, as Mr. Hillis stated,
8  Johnson deals with the instrumentality of the offense
9  in the context of an assault case.
10      In that type of case there must be an
11  allegation of either serious physical injury or injury
12  caused by a dangerous instrument, a deadly weapon.
13      In that case, it was actually the
14  instrumentality of the crime, which was sought to be
15  modified. Rather, in this case, there is no request
16  to change any instrumentality of the crimes nor
17  elements of the crimes, but, rather, simply a
18  distinction of property alleged to have been taken.
19      In this case, a robbery case, there must be
20  an allegation that property was attempted to have been
21  taken by means of force or some type of coercion. And
22  for robbery first, in this case, it is alleged that a

7

1      That property was described in that
2  indictment as being car keys, and the State merely
3  asks it to be amended in the count to U. S. Currency
4      The case, which was a 1997 Supreme Court
5  case, I believe it was Rogers, and I apologize for
6  having the case name, dealt specifically with that
7  issue. And I believe there is a relative distinctio
8  -- pardon me -- made between this case and Roberts
9  if that's the name of the case -- and the Johnson ca.
10  based upon what I laid out to this Court.
11      In that case, there was a request made by th
12  State to change the allegation of property, which was
13  cigarettes, rather than United States currency or
14  rather than valuables.
15      In this case, it is the request of the State
16  to make the distinction of the property changed from
17  car keys and the car to U. S. Currency. I believe th
18  distinction between the Roberts case and the Johnson
19  case will be sufficient to permit the State to amend
20  the indictment pursuant to Rule 7(s).
21      Finally, Your Honor, I believe, for the
22  record, for what it's worth, that Rule 7(e) may permi
23  an indictment or information to be amended at any tim

8

1  before the verdict or another finding if no additional
2  evidence or different offer is charged, and if the
3  substantial rights of the defendant are not
4  prejudiced.
5      In this case, additional or no different
6  offer is charged, and I would submit there is no
7  substantial rights of the defendant prejudiced. It is
8  merely offered as to what the property will be rather
9  than what the instrumentality of the offer was.
10      Your Honor, I would ask the Court to permit
11  the State to amend the indictment as to Count 15 to
12  include the term "United States currency" as opposed
13  to "car keys and a car."
14      MR. HILLIS: Your Honor, brief rebuttal, if I
15  may. I would just like to point out to the Court
16  these two things about the Roberts decision that is
17  significant: One is that it predates Johnson versus
18  State. It is a 1997 decision. Johnson versus State
19  is from 1998. It is also different in that it is a
20  Supreme Court unpublished opinion as opposed to
21  Roberts is a full opinion of the Court.
22      And the final thing I would like to point out

C-149

9

1   own rule, the substantial right of opinion is very
2   important to put in context as to what Johnson stands
3   for. There is a substantial right, and Justice
4   Holland, gave a detailed history of that right from
5   England to colonial times, and Delaware law on
6   constitutions points out that it is a time-honored and
7   important right under Delaware law. Thank you.
8          THE COURT: Thank you, very much. I have
9   reviewed the cases that you have supplied me, and I
10  agree for an amendment that implicates a specific
11  element, which is an element of offer, would control.
12         Here we have a different situation because in
13  order for there to be a robbery there simply needs to
14  be property, and the character of the property is of
15  no significance.
16         Whether it's United States Currency or car
17  keys or any other form of property it doesn't change
18  the nature of the offense and, therefore, under these
19  circumstances, I will grant the State's motion and
20  amend the indictment.
21         MR. HILLIS: Thank you, Your Honor.
22         THE COURT: Now, is there anything else we
23  need to take up before the jury comes in?

1   address the issues with respect to reach a stipulati
2   or agreement to their qualifications, it will cut
3   their testimony in half.
4          THE COURT: I see, I see. Okay. Well, the
5   Mr. Hillis --
6          MR. HILLIS: Let me talk with my client.
7          THE COURT: Yes.
8          MR. HILLIS: Your Honor, I'm prepared based
9   on the curriculum vitae -- and Mr. Lugg shared with m
10  this morning my personal experience from the
11  Delaware's fingerprint analysis -- I'm not going to
12  raise any challenge to their qualifications, and I'm
13  not going to make any motion of any kind, so I think
14  if the State's ready, we can proceed.
15         MR. LUGG: Very well.
16         MR. HILLIS: I appreciate Mr. Lugg's courtes
17  to try to offer that in advance.
18         THE COURT: All right, then.
19         (End of argument.)

10

1          MR. LUGG: Your Honor, we mentioned that we
2   would afford Mr. Hillis time to review, and we're
3   going to get into that next, in the hopes of
4   streamlining the process for the jury.
5          THE COURT: How much time would you like?
6          MR. LUGG: I think we can do it in 10
7   minutes. I have both experts here, and any questions
8   we can deal with can simply go to the experts.
9          THE COURT: My preference would be to do
10  this: to get started on somebody, only because I hate
11  to have the jury sitting. If that's not the sequence
12  in which you need to present the evidence, then I'll
13  take a recess. Is there any way we can go ahead and
14  then break between the witnesses?
15         MR. LUGG: I think Mr. Hillis may have a few
16  questions for him that might take 10 minutes, so can
17  we take a brief break to look at this stuff very
18  quickly or as quickly as possible?
19         THE COURT: I really was wondering if one of
20  the experts didn't require the interruption. Do they
21  both require the interruption?
22         MR. LUGG: Your Honor, frankly, to afford

1   STATE OF DELAWARE:
2
3   NEW CASTLE COUNTY:
4
5
6          I, Michele L. Rolfe, Official Court Reporter
    of the Superior Court, State of Delaware, do hereby
7   certify that the foregoing is an accurate transcript
    of the proceedings had, as reported by me in the
8   Superior Court of the State of Delaware, and
    supervised by Kathleen D. Feldman, Chief Court
9   Reporter, RPR, in and for New Castle County, in the
    case therein stated, as the same remains of record in
10  the Office of the Prothonotary at Wilmington,
    Delaware, and that I am neither counsel nor kin to any
11  party or participant in said action nor interested in
    the outcome thereof.
12         WITNESS my hand this _____ day of
    _____, 2001.
13
14         MICHELE L. ROLFE
           SUPERIOR COURT REPORTER

C-150

5

1    What is that about? Well, there are
2    essentially six charges by way of an 18-count
3    indictment alleged to have been committed by the
4    defendant, Devearl Bacon.
5        The indictment is nothing more than a
6    charging document. It is the sketch of the State's
7    case, nothing more, nothing less. It charges the
8    defendant with robbery in the first degree.
9    carjacking, aggravating menacing, possession of a
10   firearm during the commission of a felony, possession
11   of a deadly weapon by a person prohibited and wearing
12   a disguise during the commission of the felony.
13       I'll explain these briefly in these
14   instructions, and more will be explained throughout
15   the trial; And most importantly, at the conclusion of
16   the case, you'll be instructed on what the law is.
17   But in a nutshell, to help you view the evidence of
18   robbery in the first degree, the defendant is guilty
19   of robbery in the first degree when in the course of
20   committing theft, he did threaten immediate use of
21   force to another person. And during the commission of
22   this crime, he displayed a deadly weapon. And
23   throughout this case, that deadly weapon is a gun.

6

1    Carjacking, the defendant Devearl Bacon is
2    alleged to have taken a car from Avon Matthews without
3    the permission of that person and while in the
4    possession of that vehicle he displayed a gun, the
5    same gun.
6        Aggravated menacing, that is by displaying
7    that gun he placed another person or other people in
8    fear of imminent physical injury.
9        The possession of a firearm during the
10   commission of a felony is exactly what it says. He
11   displayed a gun during the commission of a felony and
12   that is a crime.
13       Wearing a disguise is a felony during the
14   commission of a crime. Pulling a hood up over your
15   head, that is a crime.
16       And, finally, people for various reasons are
17   prohibited from possessing a firearm in this state.
18   The defendant was one of those people. He possessed a
19   gun and that's a crime.
20       Now, what exactly happened? With that in
21   mind, on Wednesday June 21, 2000, a year ago almost
22   today. a couple of people were in Star Liquors getting
23   some beverages. And in Star Liquors there is one door

7

1    in, one door out, same door, there was a glass divider
2    where you pay for your purchase and you leave. As
3    these people are standing in this store, the
4    defendant. Devearl Bacon. the person seated over
5    there, was wearing a hood and a dark jacket and shorts
6    with a bandanna over his face. He walks in with a gun
7    and says, Give me your money. And the people in the
8    store look at him and they say. Are you kidding me?
9        Devearl Bacon is about 5'5, a slender guy.
10   They don't listen. You know what he does? He fires a
11   round into the ceiling. They are listening now, they
12   hit the deck. He goes to the clerk and says, Give me
13   the money, and the clerk opens the drawer. He flees
14   with it. That's aggravated menacing. He imposes fear
15   of death as he fired the gun and he robbed the clerk.
16       On his way out, he sees Avon Matthews, and
17   here is a man who has keys to a car. He says to Avon
18   Matthews, Which one is your car? Give me the keys,
19   tell me where it is. Avon is scared, he's got the gun
20   against his head. Avon reaches in his pocket and
21   hands him the keys.
22       THE DEFENDANT: Your Honor, I object. He's
23   adding in parts --

8

1        MR. HILLIS: Excuse me, Your Honor, may I
2    have a moment?
3        THE COURT: Excuse me -- Mr. Hillis, it may
4    be appropriate -- shall I send the jury out?
5        MR. HILLIS: Perhaps.
6        THE COURT: Ladies and gentlemen, we'll ask
7    you to step out for a moment.
8        (The jury left the room.)
9        THE COURT: Would you like a recess?
10       MR. HILLIS: Yes. thank you, Your Honor. I
11   think that would be appropriate.
12       THE CLERK: All rise.
13       (A brief recess was taken.)
14       THE COURT: Mr. Bacon, I don't know what your
15   attorney told you and it's none of my business what he
16   said to you, and what you say to him is privileged.
17   but I want you to understand from me that it is in
18   your best interest not to say anything.
19       THE DEFENDANT: Yes, Your Honor.
20       THE COURT: You run the risk of making the
21   jury angry and you don't want to be there.
22       THE DEFENDANT: Yes. Your Honor.
23       MR. HILLIS: Your Honor. so the record is

25

1    A. Exactly.
2    Q. And --
3    A. On that side, where the pictures and things
4    are. that's where the customers are.
5    Q. Okay. Now, taking this back to the 21st of
6    June, you say you were working that night. correct?
7    A. Yes.
8    Q. Did something occur in this store as you were
9    working?
10   A. Yes.
11   Q. Can you tell us what happened?
12   A. Exactly what happened?
13   Q. Please.
14   A. I was waiting on my customers -- I was
15   waiting on my customers when Mr. Bacon came into the
16   store.
17   Q. Okay.
18   A. When he came to the store he had a gun. And
19   he had a bandanna over his face, and he told everybody
20   to get on the floor. And we all looked at him as if
21   he was crazy.
22   Q. Why is that?
23   A. Because I didn't take him serious.

26

1    Q. Why didn't you take him serious?
2    A. I don't know. It didn't hit me until he
3    stuck the gun up in the air. Because his exact words
4    was, Everybody get on the floor.
5    Q. All right?
6    A. And we wouldn't get on the floor, so he said,
7    Do you think I'm playing? Do you think I'm playing?
8    And he repeated himself twice.
9    And then he took the gun and shot it up in
10   the air and that's when the light fell.
11   Q. He discharged the gun into the air?
12   A. That's when everybody got on the floor.
13   Q. What happened after he discharged the gun
14   into the air?
15   A. That's when we all got on the floor.
16   Q. What happened next?
17   A. He came over to the window and when he came
18   over to the window, he told me he wanted the money.
19   Q. Okay.
20   A. And there was no cash register in the store.
21   It was like was an end table. So what I was trying to
22   do was give him the whole table just so he could take
23   all the money.

27

1    Q. Okay.
2    A. Because all I seen was this gun pointed at me
3    and he had it pointed at my head at that time.
4    Q. Where was he standing at this point in time?
5    A. He was standing right at the window.
6    Q. At the window?
7    A. Unh-huh.
8    Q. And you were down on the ground?
9    A. I was down on the ground.
10   Q. What did you do next?
11   A. So I told him I could not give him the table.
12   I couldn't lift it or I couldn't get it, so I threw
13   the money at his through the window. I tried to get
14   the drawer out. I told him I couldn't get the drawer
15   out. so he said I want the money. So what I did was I
16   took the money -- there was moneys in sections of the
17   drawer, it was like an end table that goes to the
18   coffee table and it had sections in it -- so I took
19   the cash out in each one of these sections and I threw
20   it at him.
21   Q. Okay.
22   A. And by that time some money had fell on the
23   floor and I had picked the money up. It was like a

28

1    couple of one dollar bills on the floor. I asked him
2    did he want them too but I was just scared. I picked
3    up the one-dollar bills and I threw them at him.
4    He had like a windbreaker on with a sports
5    pocket inside the jacket and he was stuffing the money
6    in there.
7    Q. And if I could talk to you a second about
8    the windbreaker, what do you recall about this
9    windbreaker looking like?
10   A. It was a blue windbreaker he had a hood over
11   his head.
12   Q. Okay.
13   A. And a bandana across his face.
14   Q. And do you recall anything else about his
15   description --
16   A. He had on shorts.
17   Q. Okay.
18   A. And he had on, I'd say, like work shoes.
19   Like the insulated boots or something.
20   Q. Okay. Was there anybody else in the store
21   with you that you knew that evening?
22   A. Yes.
23   Q. Who was with you? ( - 152

37

1   A. Yes, I do.
2   Q. And where do you see that person?
3   A. Sitting over there.
4   Q. You said you saw that person later that
5   evening on the 21st or 22nd, how can you explain how
6   that was the same person in your store that night?
7   A. He had on the same clothes the night he came
8   to the liquor store.
9   Q. By the same clothes, are you referring to
10  the windbreaker?
11  A. Unh-huh. He had on the same shorts and the
12  work boots or whatever, yup.
13  Q. And you also gave and general description to
14  the police; is that correct?
15  A. Unh-huh.
16  Q. How would you describe his demeanor in this
17  courtroom?
18  A. He was short.
19  Q. About how tall would you have estimated?
20  A. I'd say 5'0 to 5'2. I'm tall. I'm six foot.
21  I knew he was shorter than I was.
22  Q. And --
23  A. And he had a thin build.

38

1   Q. Did you say he was wearing shorts? Did you
2   notice anything about his legs?
3   A. He had skinny legs.
4   Q. And his demeanor, could you describe that for
5   the jury how he acted while he was in the store?
6   A. He was calm.
7   Q. Did he raise his voice at all.
8   A. No, he was just demanding. You could hear it
9   in his voice. He was very demanding, he -- it was
10  like he knew what he was doing and this wasn't his
11  first time.
12     MR. HILLIS: Objection.
13     THE WITNESS: You couldn't hear that he was
14  nervous in his voice.
15  BY MR. LUGG:
16  Q. And he discharged one round into the ceiling,
17  correct?
18  A. You got it.
19  Q. Was the gun out any other time?
20  A. Yes. After I got away from the window, I ran
21  to the back of the store, I heard a gun go off again.
22     By that time, I was on the phone with my
23  cousin -- my cousin was on the phone with the police.

39

1   I took the phone from my cousin to give the address.
2   Q. Have you ever spoken to this gentleman before
3   about the case?
4   A. No.
5   Q. Did you speak to more than one officer?
6   A. I just spoke to one detective. It's
7   Detective Spillan. You're not Detective Spillan, are
8   you? I'm sorry it was Detective Spillan. It's not
9   him -- or I could be wrong.
10     MR. LUGG: If I could have just one moment.
11  BY MR. LUGG:
12  Q. You said that you had contact with other
13  officers after the case about the description of this
14  person you saw afterwards. You said you saw the
15  defendant afterwards?
16  A. The same detective interviewed me, is the
17  same detective I kept in touch with.
18  Q. What police agency was that in; do you
19  recall?
20  A. The State Police on Troop 6.
21  Q. Okay.
22     MR. LUGG: I have nothing further. Thank
23  you.

40

1      THE COURT: Mr. Hillis.
2         RECROSS EXAMINATION
3   BY MR. HILLIS:
4   Q. Ma'am, you're not too good with heights, but
5   you know you're six foot, right?
6   A. Yes.
7   Q. And you told whoever the detective was that
8   you talked to that night, that the person that you saw
9   was 5'0 to 5'2, correct?
10  A. Correct.
11  Q. So that's a foot shorter than you?
12  A. I'm six foot.
13  Q. Yes; so that's a foot to ten inches shorter
14  than you, correct? There's twelve inches in a foot.
15  A. Well, you know better than I do.
16  Q. Well, the point is that you thought when you
17  tried to tell the detective as best you could --
18  A. I know he was --
19  Q. Ma'am, please --
20     MR. HILLIS: Your Honor, please instruct the
21  witness to wait until I finish the question before she
22  tries to answer it.
23     THE COURT: She's waiting.

$C - 153$

109

1  person -- if you could assist us in opening the bag to
2  determine what's in there, that would be fine?
3      A. If, I could.
4      Q. Please.
5      A. Yes, these are the items.
6      Q. And if you could describe for us what the
7  items are within that envelope that you removed from
8  the defendant, Mr. Bacon?
9      A. There was a brown paper bag that had the
10  contents of change.
11      Q. Okay.
12      A. There was a small plastic flashlight and 13,
13  one dollar bills were on his person.
14      Q. Did you total the money?
15      A. The change, I did not.
16      Q. What about the ones?
17      A. I counted them.
18      MR. LUGG: May I approach, Your Honor. At
19  this point I would like State's Identification I to be
20  moved in as State's Exhibit 9.
21      MR. HILLIS: That's without objection.
22      THE CLERK: Marked as State's Exhibit 9.
23      (State's Exhibit 9 was marked for

110

1  identification.)
2  BY MR. LUGG:
3      Q. After you arrived at the Wilmington Police
4  Station, what occurred next?
5      A. Mr. Bacon began making statements to were I
6  felt it was necessary to read him his Miranda rights.
7      Q. Did you in fact issue a Miranda warning to
8  him?
9      A. Yes, I did.
10      Q. And did he continue to make statements to
11  you?
12      A. Yes. After I asked him if he understood his
13  rights.
14      Q. What exactly did he tell you?
15      A. I didn't question him concerning the
16  investigation. I just merely read him his rights and
17  sat there while he made several statements. One of
18  which he made a statement that he was released from
19  the Plummer Center. A second statement that he made
20  was that he hadn't slept in three days. And the third
21  statement was to the effect that he would brief that
22  do 25 years.
23      Q. And if you could explain or describe for us

111

1  Mr. Bacon's demeanor as you observed him on the early
2  morning hours of the 23rd?
3      A. He was cooperative. He was calm. It was
4  almost as if it was an attitude, not a real big deal
5  to be in this position.
6      Q. Did he raise his voice or was he excitable at
7  all with you?
8      A. No, sir.
9      Q. And did he resist any of the demands that you
10  made upon him as far as transporting him to the
11  Wilmington Police Station?
12      A. No, sir.
13      Q. While you were at the police station, was
14  anyone else with you while he was making these
15  statements?
16      A. No, sir.
17      Q. After the statements were made, was the case
18  transferred to another officer?
19      A. I actually remained with Mr. Bacon until
20  Detective Spillan arrived.
21      Q. And did Detective Spillan arrive at the
22  Wilmington Police Station?
23      A. Yes, sir, he did.

112

1      Q. And at that point was he transferred to
2  Detective Spillan?
3      A. Yes, sir.
4      Q. Why is that?
5      A. He was the investigating officer.
6      MR. LUGG: No further questions of this
7  witness, Your Honor.
8      MR. HILLIS: Your Honor may we approach?
9      THE COURT: Yes.
10      (A side bar was recorded.)
11      MR. HILLIS: Based on my conversation with
12  Mr. Lugg prior to this witness, I thought he was not
13  going to mention the statement about him being
14  released from the Plummer Center. I think that was
15  the impression he had too and I frankly didn't
16  objection because I don't want to highlight it, but I
17  think we're in a position that's brief that
18  inappropriate. I didn't think it was coming.
19      THE COURT: Well, you have to make a motion.
20      MR. HILLIS: Okay.
21      THE COURT: Let me just say that, yeah, I was
22  a little surprised to hear that to. On the other
23  hand, we all work in law enforcement, and we know what

113

1   it is, but I'm not sure everybody else in the world
2   does.
3        MR. HILLIS: That's true. That's one of the
4   reasons why I didn't object. To set the record
5   straight, I will make an application for a mistrial.
6   If the court is not going to give me the mistrial, I
7   don't want a hearing on this, judge.
8        THE COURT: Okay. The other point I wanted
9   to make is that they are going to know he's a person
10  prohibited because he stipulated to that.
11       MR. HILLIS: That's absolutely true, Your
12  Honor.
13       THE COURT: And so given that fact, if
14  somebody should know what the Plummer Center is, I
15  don't find it prejudicial in context with a person
16  prohibited.
17       Therefore, I'm going to deny your application
18  for a mistrial.
19       MR. HILLIS: Okay. Thank you.
20       (Side bar ended.)
21            CROSS-EXAMINATION
22       MR. HILLIS: May I cross, Your Honor?
23       THE COURT: Yes, you may.

114

1        MR. HILLIS: Thank you.
2   BY MR. HILLIS:
3        Q. Corporal, I just have a few questions for
4   you. What time did you arrive if you recall to the
5   Wilmington Police Station?
6        A. Based on my report, I put in an approximate
7   time of 18 minutes after 2:00 in the morning.
8        Q. Okay. And do you recall how long that was
9   after you actually arrived at the scene of the arrest?
10       A. Approximately, I arrived at the scene at
11  approximately 2:00 in the morning.
12       Q. Okay. And do you recall when it was that you
13  read Mr. Bacon his Miranda rights?
14       A. At approximately 2:30 in the morning.
15       Q. Now, just -- to clear things up, those
16  Miranda rights we're talking about are the rights he
17  has pursuant to the law in this country. I he wants
18  to talk he can, but if he doesn't want to talk then he
19  doesn't have to talk?
20       A. Yes, sir.
21       Q. That he can be afforded the right to a lawyer
22  or one will be appointed to him?
23       A. Yes, sir.

115

1        Q. Anything may be used against him in the court
2   of law. Those are the rights you read to him?
3        A. Yes, sir.
4        Q. When he made those statements to you he was
5   aware of all that?
6        A. Yes.
7        Q. Now, when you arrived at the scene before
8   transporting Mr. Bacon back to the Criminal
9   Investigation Unit of the Wilmington Police
10  Department, who was on the scene as you remember? Was
11  Detective Spillan there?
12       A. At that time, I believe, Detective Spillan
13  had arrived just before I got to the scene.
14       Q. Okay.
15       MR. HILLIS: No further questions, thank you.
16  Corporal.
17       MR. LUGG: Prompts nothing from the State,
18  Your Honor.
19       THE COURT: Very well, you may step down.
20  You're excused.
21       MR. LUGG: The State next calls Detective
22  Chapman, Your Honor.
23       DETECTIVE WILLIAM CHAPMAN, having been called

116

1   on the part and behalf of the State as a witness,
2   being first duly sworn under oath, testified as
3   follows:
4            DIRECT EXAMINATION
5   BY MR. LUGG:
6        Q. Detective Chapman, good afternoon.
7        A. Good afternoon.
8        Q. How are you, sir?
9        A. Good.
10       Q. By whom are you employed?
11       A. Delaware State Police.
12       Q. How long have you been so employed?
13       A. Since September of 1988.
14       Q. And what is your current assignment?
15       A. I'm an evidence detective of the criminal
16  investigations unit.
17       Q. And how long have you been working in the
18  Criminal Investigation Unit as an evidence detective?
19       A. December of 1995.
20       Q. Okay. And were you working as an evidence
21  detective in that unit on the days of June 21, 22nd
22  and 23, of the year 2000?
23       A. Yes.    p - 155

Spillan - cross                                            21

they were helping him with repairing the flat to the tire.

Q.    And how did you determine they were not suspects?

A.    In the Star Liquors on the 21st, he was the sole person to the robbery. On the 22nd, there was another person that was a passenger in the vehicle. The person that was described to me by the witness did not match at all, height, physical description or anything. Plus, those two witnesses that, the two persons that were picked up with Mr. Bacon said that they were hired by him to use a jack. They both received five dollars each to help him repair the car tire.

Q.    Did my client make any statements to you at that point?

A.    No.

Q.    All right. And initially you said that there was only one person involved in the Star Liquors --

A.    Yes, ma'am.

Q.    -- incident? Okay. I don't understand, though, how you determined that was my client as opposed to the other two people?

A.    Physical description.

Q.    Based on the description --

A.    Yes.

Spillan - cross                                    22

Q.    — the witnesses gave?

A.    Yes, and, and the clothing item and, and the type of gun that
was displayed.

Q.    What did the other two people look like, and what were they
wearing?

A.    There was one gentleman that was, probably works out every
day at Gold's Gym. He had, pardon me, I don't know what they call it, the
extremely long hair with, all clumped together.

Q.    Dreads?

A.    Dreadlocks. And the other person that was with him, he had
no shirt on. He just had black, black pants on. He was working on a full
beard and mustache. And his height, he's probably 6'1" or 6'2". And
witness describing the person that got, that got into the passenger-car of
the vehicle with Mr. Bacon was only described as about 5'10".

Q.    Okay. With regard to — it's Star Liquors and the 7-11, that's
the place —

A.    Yes.

Q.    — the second place? Okay. Did any, any of the witnesses pick
my client out of a photo lineup?

C - 157

The Superior Court erred because, even if the amendment to the indictment may have been permitted under the Robbery statute and did not charge a different or more serious offense, the amendment violated the Defendant's right to indictment by grand jury under Article I, Section 8 of the Delaware Constitution. *Johnson v. State*, Del. Supr., 711 A.2d 18 (1998).

The Grand Jury indicted the Defendant for having committed Robbery by threatening to use force to compel Roshelle Conkey to give up property consisting of "car keys and a car", based upon the evidence presented before it. It did not indict the Defendant for having committed Robbery by threatening the use of force to compel her to give up property consisting of "Unites States Currency." It cannot be assumed that the Grand Jury would have considered the evidence before it sufficient to allege that the Defendant had committed Robbery by using force to compel the delivery of property consisting "United States Currency."

Therefore, permitting the Defendant to be convicted on such an amended indictment violated the Defendant's right

---

[5] Rule 7(e) of the Superior Court Criminal Rules permits an indictment to be amended before verdict if "no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

$\Lambda - 158$

## CERTIFICATE OF SERVICE

I Devearl Bacon hereby certify that on May _____, 2005, one copy of:

DEFENDANT'S REPLY TO THE STATES RESPONSE TO DEFENDANT'S
MOTION FOR POST-CONVICTION RELIEF UNDER RULE 61

*were served my first class mail upon the following:*

Edmund M. Hillis, Esquire
Assistant Public Defender
Carvel State Office Building, 3rd Fl
820 North French Street
Wilmington, DE 19801

Sean P. Lugg
Deputy Attorney General
State of Delaware, Dept. of Justice
Carvel State Office Building, 7th Floor
820 North French Street
Wilmington, DE 19801

/s/ Devearl Bacon

Devearl Bacon
SBI#221242 Unit 21
1181 Paddock Road
Smyrna DE 19977

/ - 159

EXHIBIT //

C— 160

SUPERIOR COURT
OF THE
STATE OF DELAWARE

SUSAN C. DEL PESCO
*JUDGE*

NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DELAWARE 19801-3733
TELEPHONE (302) 255-0659

July 11, 2005

Devearl L. Bacon
Delaware Correctional Center
1811 Paddock Rd.
P.O. Box 500
Smyrna, DE 19977
            N440

Re:    *State v. Bacon,*Criminal I.D. No. 0006017660

Dear Mr. Bacon:

Enclosed with this letter is a copy of Mr. Hillis' affidavit filed with the Court in response. to your motion for postconviction relief, in which you allege ineffective assistance of counsel at your trial for robbery and related charges. Mr. Hillis caused a copy of his affidavit to be served on you at D.C.C. on June 27, 2005.

Pursuant to Rule 61(g)(3), you now have the opportunity "to admit or deny [the] correctness" of Mr. Hillis' assertions. If you choose to take this opportunity, your response shall be filed with the Prothonotary on or before Monday, July 25, 2005.

IT IS SO ORDERED.

Very truly yours,

Susan C. Del Pesco

Original to Prothonotary
xc:    Edward Hillis, Esquire

$C - 161$

$\cancel{ }$ $\eta \mathbb{D}$

# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | : | |
| --- | --- | --- |
| v. | : | ID No. 0006017660 |
| DEVEARL BACON, | : | |
| Defendant. | : | |

## TRIAL COUNSEL'S AFFIDAVIT IN RESPONSE TO DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF PURSUANT TO SUPERIOR COURT CRIMINAL RULE 61

I, Edmund M. Hillis, Assistant Public Defender, do hereby swear and affirm the following:

I am admitted to practice in the Courts of this State by the Delaware Supreme Court. I am and have been so, in good standing, since my admission in December, 1980. The Court has ordered that I respond to specific allegations of ineffective assistance of counsel alleged by the defendant, Devearl Bacon, in filings with the Court dated September 14, 2004 and January 6, 2005. This then is counsel's response thereto:

### I. PRELIMINARY MATTERS

1. As a result of a change of assignments in the Office of the Public Defender (OPD) in late 2000, Raymond Radulski, Esq. and I switched positions. I undertook assignment of his entire caseload, which included representation of Devearl Bacon as defendant in a criminal action, State v. Devearl Bacon, ID # 0006017660. Mr. Radulski had originally been assigned the case, his appearance was entered on July 5, 2000. I substituted my appearance on December 18, 2000. Mr. Bacon was advised by letter of the change in assignment. I continued to represent Mr. Bacon through and including trial of the matter and subsequent direct appeal of his

$C - 162$

convictions to the Delaware Supreme Court.

2. My initial review of Mr. Radulski's files resulting in prioritizing items for review with

priority given to matters assigned trial dates (this case had been assigned a trial date of June 19,

2000. I reviewed the file in this matter on February 22, 2001 (See Exhibit "A", OPD "Case

Notes and Prison Visits, Devearl Bacon, PD# 2100099, ID# 0006017660, 2/22/01)

3. Pursuant to my review of the file I communicated with the assigned prosecutor Sean

Lugg, DAG and Mr. Bacon as necessary.

## II. COUNSEL'S RESPONSE TO SEPTEMBER 14, 2004 FILING

I will respond to the claims of ineffective assistance of counsel *seriatim*.

1. " Prejudicial joinder (prior Crimes evidence) PDWPP Offenses... Defense Counsel
was ineffective for failure to identify this issue: Pre-trial, during Trial and raised on Direct
Appeal."

Counsel did not take any action pretrial to sever the Possession of Deadly Weapon by

Person Prohibited (PDWPP) charges. The time for such pretrial motions had passed when

Counsel was assigned the file. Counsel nonetheless considered filing such a motion, however his

understanding of the law, then and now, is that there is no *per se* requirement that such charges

be severed for trial; and, further it is the prevailing practice in the Superior Court that such

severance is not made. Counsel attempted to protect the defendant from the jury learning of the

nature of the predicate convictions through stipulation to the defendant's status as a "person

prohibited".

2. "Prejudicial Joinder of Charges Committed at Four Separate and Distinct
Times...Defense Counsel was ineffective for failure to identify this issue: Pre-trial, during Trial
and raised on Direct Appeal."

No action was taken with regard to requesting severance of the charges. While, as in the

$C - 163$

previous case, time for filing such a motion had passed by the time trial counsel was assigned to the case, this was not a determining factor on this issue. Counsel carefully reviewed the indictment and discovery materials. ( See Exhibit "B", "INDICTMENT CHART") Based on review of case law in the area of severance of offense counsel made a professional judgement that there was insufficient merit in such a motion to make a good faith argument to the Court on the issue.

3. "Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts."

Having read the allegation and "MEMORANDUM OF GROUNDS AND FACTS" counsel is unable to determine with any particularity exactly what "Prior Bad Acts" evidence is the basis of this claim. Counsel is very familiar with the law of introduction of prior acts of a defendant and his recollection is that he made objections he believed were appropriate from a legal and factual point of view.

4. "In Court Identification of Defendant by State Witness, Dawn Smith..."

Defendant's claims here are not supported by the facts as Counsel recalls them and in any case are not supported by the law.

5. " Ineffective Assistance of Counsel For Failure to Raise the Amendment to Defendant's Indictment Counsel Argued Prior to Trial."

Counsel could not have raised the issue prior to trial as the issue did arise until the day of trial. Counsel did object, argue the objection, and appealed the trial court's overruling of his objection in that regard.

6. Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify and Raise this Discovery Violation concerning a video tape made of Defendant's statement at the police station, either during trial or on Direct Appeal.

$C-164$

STATE v. BACON                                    TRIAL COUNSEL'S AFFIDAVIT
ID# 0006017660                                                         PAGE    4

On initial review of file Counsel did note that a blank tape had been provided to the State

for purposes of making a copy of defendant's video taped statement. Counsel communicated

with the prosecutor concerning same on the day after his initial review of the file on February 22,

2001.. Counsel was informed by the prosecutor that he believed that no such statement had been

made and that he had confirmed that belief with the police. (See Exhibit "A", OPD "Case Notes

and Prison Visits, Devearl Bacon, PD# 2100099, ID# 0006017660, 2/22/2001 and 2/23/2001)

### III.    COUNSEL'S RESPONSE TO JANUARY 6, 2005 AFFIDAVIT

I will respond to defendant's factual claims *seriatim*.

1. Admitted.

2. Admitted.

3. Admitted as to the number of times met in the prison ( See, Exhibit "A", OPD "Case

Notes and Prison Visits, Devearl Bacon, PD# 2100099, ID# 0006017660, 6/14/01). Counsel

has no present recollection as to the length of the visit.

4. Admitted.

5. Admitted.

6. Denied.

7. Denied. The defense strategy employed here with regard to the PDWPP charge is not

unusual for me, I do not however as a matter of practice ever enter into a fact stipulation without

discussing the substance of the stipulation with them.

Dated: June 15, 2005

EDMUND M. HILLIS

$C - 165$

EDMUND M. HILLIS, affiant, personally know to me to be same, did appear before,

swear to and subscribe the foregoing "AFFIDAVIT OF TRIAL COUNSEL" on June 15, 2005 at

Georgetown, Sussex County, State of Delaware.

STEPHANIE TSANTES
ATTORNEY AT LAW

C - 166

STATE v. BACON                                    TRIAL COUNSEL'S AFFIDAVIT
ID# 0006017660                                              EXHIBIT A

OPD CASE NOTES AND PRISON VISITS
DEVEARL BACON
PD# 2100099
ID# 0006017660

C-167

EXHIBIT "A"

# PUBLIC DEFENDER OF THE STATE OF DELAWARE

## Case Notes and Prison Visits

Case #: 2100099    County: N    DUC #: 0006017660    Client's Name:    DEVEARL BACON

**Comments**

Date: 7/20/01    Attorney:    Remarks:
CARJACK 1: 2 y V M/M; PDWPPB, 1yVnnn; PFDCF: 5yV nnn; PDWBPP: 1 y V nnn: DISGUISE: 1 y V s 1 y III; PFDCF:5 y V; ROB 1:4 y V; ROB 1 4 y V; AGG MEN: 1 y V s 1 y III; AGG MEN: 1 y V s 1 y III; DISGUISE: 1 y V s 1 y III;ROB 1:4 y V;ROB 1:4 y V;ROB 1:

**Comments**

Date: 6/5/01    Attorney: EMH    Remarks:
T/C LUGG, DAG: Rec'd word today from WPD that there was an attempt to interview def on 6/23 after arrest, police claim he was unooperative and no statement was actually taken. That encounter had been taped but the tape is unavailable because it was subsequently taped over. There is a surveillance camera tape from 7/11 robbery, he will make a copy for me which I can get tomorrow morning.

**Comments**

Date: 6/6/01    Attorney: EMH    Remarks:
Rec'd and Rev'd video tape of 7/11 robbery. Face is not indentifiable but clearly can see black hooded jacket, bandanana, and stature of person. Also on tape is person stating lic # of auto which matches lic# of auto hijacked in Star Liq. Robbery.

**Comments**

Date: 6/19/01    Attorney: EMH    Remarks:
T/T - JURY SELECTED TRIAL COMMENCES Stact nol prosse Counts 1, 2, 3, 14,15 (DEF REJECTS NEW OFFER OF 30 YRS S AFTER 15 M/M)

**Comments**

Date: 6/21/01    Attorney: PDO    Remarks:
T/T - TRIAL CONT'S, CASE TO JURY cnt 26 DOES NOT GO TO JURY, NP (VIC'TIM AVAILABILITY)

**Comments**

Date: 6/20/01    Attorney: EMH    Remarks:
T/T - TRIAL CONT'S

**Comments**

Date: 6/22/01    Attorney: EMH    Remarks:
T/T - VERDICT.
THROUGH 6-22-2001   VERDITS WERE GUILTY ON ALL COUNTS_3__  2  TRIAL HELD 6-19
THE VERDICT WAS NOT GUILTY. CLERK WAS G,_____4  BROOKS AND COURT REPORTER

**Comments**

Date: 2/22/01    Attorney: EMH    Remarks:
Rev and org file. Need to check on existence of video/ audio tape of def statement.



C-168

| | | | |
|---|---|---|---|
| **Comments** | **Date:** 2/23/01 | **Attorney:** EMH | **Remarks:** Email to LUGG, DAG re def statement. He believes no statement made confirmed w DSP is checking w WPD |
| | | | NOTE: IND CHARGES: (PRIOR ROB 1 CONVICTION) carry 54 m/m yrs, plea offer was to 20 yrs s adter 15m/m |
| **Comments** | **Date:** 2/27/01 | **Attorney:** EMH | **Remarks:** Ltr to client advising of advisability of plea offer to 15 years and forwarding copy of prelim transcript. NOTE: DAG LUGG indicates there was no taped statement by def and therefore no tape from either police agency. |
| **Prison Visit** | **Date:** 6/14/01 | **Attorney:** EMH | **Remarks:** Visit def re latest plea offer, rejected despite my advice. |
| **Comments** | **Date:** 6/26/01 | **Attorney:** EMH | **Remarks:** T/C DEF WIFE, def is please w representation. She will pick up clothes and copy of jury instructions 6/27 at Carvel office. |
| **Comments** | **Date:** 7/20/01 | **Attorney:** EMH | **Remarks:** 34 m/m yrs had to be imposed judge imposed no more. Mark for notice of appeal. |
| **Comments** | **Date:** 3/22/01 | **Attorney:** EMH | **Remarks:** LTR TO CLIENT: re his req for hearing on inaccuracy of prelim transcript, indicate no such motion would be filed and once again advised he consider the plea offer. |

C-169

2

BACON, DEVEARL
0006017760
PD 21 00099
EMH

INDICTMENT CHART          PAGE 2

| CNT | CHARGE | DATE | LOCATION | VICTIM | EVIDENCE |
|---|---|---|---|---|---|
| III | PFDCF | 6-21-00 | Gulf Service Station 201 S. Heald St. | | |
| IV | PDWBPP | 6-21-00 | Gulf Service Station 201 S. Heald St. | | |
| V | DISGUISE | | Gulf Service Station 201 S. Heald St. | | |
| ***** | *********** | *********** | ********************** | ********************** | ************************************* |
| | | | | | |
| | | | | | |

C-170

BACON, DEVEARL
00060017760
PD 21 00099
EMH

INDICTMENT CHART                    PAGE 3

| CNT | CHARGE | DATE | LOCATION | VICTIM | EVIDENCE |
|-----|--------|------|----------|--------|----------|
| VI | ROB I | 6-21-00 | Star Liquors 3125 New Castle Ave | Dawn Smith | Vehicle stolen in this robbery is vehicle def is in possession of when arrested. Physical description and clothing description match other robberies and clothing in possession of def on arrest. |
| VII | ROB I | 6-21-00 | Star Liquors | Avon Matthews | |
| VIII | CARJK | 6-21-00 | Star Liquors | Avon Matthews | |
| IX | AGG MN | 6-21-00 | Star Liquors | Jacqueline Johnson | |
| X | AGG MN | 6-21-00 | Star Liquors | Jamie Ross | |
| XI | AGG MN | 6-21-00 | Star Liquors | Michael Scott | |
| XII | PFDCF | 6-21-00 | Star Liquors 3125 New Castle Ave | | |

C - 171

BACON, DEVEARL
0006017760
PD 21 00099
EMH

## INDICTMENT CHART        PAGE 4

| CNT | CHARGE | DATE | LOCATION | VICTIM | EVIDENCE |
|---|---|---|---|---|---|
| XIII | PDWBPP | 6-21-00 | Star Liquors 3125 New Castle Ave | | |
| XIV | DISG | 6-21-00 | Star Liquors 3125 New Castle Ave | | |
| ***** | ************ | ********* | ***************************** | ***************************** | ***************************** |
| XV | AtROB I | 6-22-00 | Star Liquors 3125 New Castle Ave | Gina Harris | This is an attempt to Rob this location a second time, clerk recognizes def from previous night. |
| XVI | PFDCF | 6-22-00 | Star Liquors 3125 New Castle Ave | | |
| XVII | PDWBPP | 6-22-00 | Star Liquors 3125 New Castle Ave | | |
| XVIII | DISG | 6-22-00 | Star Liquors 3125 New Castle Ave | | |
| ***** | ************ | ********* | ***************************** | ***************************** | ***************************** |

C-172

BACON, DEVEARL
0006017760
PD 21 00099
EMH

INDICTMENT CHART                    PAGE 5

| CNT | CHARGE | DATE | LOCATION | VICTIM | EVIDENCE |
|---|---|---|---|---|---|
| XIX | ROB I | 6-22-00 | 7-11 Store 3900 N. duPont Hwy | Cathy Baron | Perp in this case matched physical and clothing description of perp in others and def. Witness sees perp enter motor vehicle stolen in Star Liquor robbery which is also vehicle def is in possession of when arrested. |
| XX | ROB I | 6-22-00 | 7-11 Store | Rochelle Conkey | There is a surveillance tape of robbery; defendant and described clothing can be seen. |
| XXI | ROB I | 6-22-00 | 7-11 Store | Steffanie West | |
| XXII | PFDCF | 6-22-00 | 7-11 Store | | |
| XXIII | PDWBPP | 6-22-00 | 7-11 Store | | |
| XXIV | DISG | 6-22-00 | 7-11 Store | | |

C - 173

IN THE SUPERIOR COURT OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| STATE OF DELAWARE | ) |
| | ) |
| v. | ) ID No. 0006017660 |
| | ) |
| DEVERAL BACON, | ) |
| | ) |
| Defendant. | ) |

## CERTIFICATE OF SERVICE

COMES NOW, Elaine Folsom, Secretary to Edmund M. Hillis, Esquire, Attorney for the Defendant, Deveral Bacon, in the above captioned matter and certifies that a copy of Trial Counsel's Affidavit in Response to Defendant's Motion for Post-Conviction Relief Pursuant to Superior Court Criminal Rule 61 was served on Sean P. Lugg, Deputy Attorney General, by hand delivery on this the 27th day of June, 2005 and a copy was served upon the defendant at Delaware Correctional Center by State Mail on this the 27th day of June, 2005.

Elaine Folsom, Secretary to
Edmund M. Hillis
Assistant Public Defender
Office of the Public Defender
State Office Building
820 N. French Street
Wilmington, DE 19801

Date: 6-27-05

P — 174

EXHIBIT 12

C-175

IN THE SUPERIOR COURT OF DELAWARE

FOR NEW CASTLE COUNTY

STATE OF DELAWARE       )
                        )
                        )
                        )
V.                      )    ID. NO. 0006017660
                        )
                        )
DEVEARL L. BACON,       )
                        )
DEFENDANT.              )
                        )

Defendant's Reply To Trial Counsel's
Response To Defendant's Post-Conviction
Relief Pursuant to Rule 61

Defendant in Pursuant to Rule 61(g)(3)
And Assert the following:

   I. As To Counsel's Response To
     September 14, 2004 FILING

1. PDWPP Offenses Violated Due Process,
And caused Irreparable Damage,

           ①    C-176

Defense Counsel was ineffective for failure to identify this issue. This was a Prejudicial Joinder.

2. Charges Committed At Four Separate And Distinct Times And Locations Severely Prejudiced Defendant's Right to A Fair Trial. Defense Counsel was ineffective for failure to identify this issue. This was A Prejudicial Joinder.

3. Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts, or Request A Hearing. This evidence caused Irreparable Prejudice.

4. In Court Identification of Defendant by State Witness Dawn Smith Violated Defendant's Right to A Fair Trial, when there was No "independent origin" for this "in court" identification. Defense Counsel was ineffective for His to raise this issue

②      C-177

: ON Direct Appeal.

5. Ineffective Assistance of Counsel For Failure to Raise the Amendment to Defendants Indictment Counsel Argued Prior to Trial. Defendant is prejudiced because He would have had a more favorable Review on Direct Appeal.

6. Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify And Raise this Discovery Violation concerning A videotape made of Defendant's statement At Police station, either during trial or on Direct Appeal.

II. As To Counsel's Response To
    January 6, 2005 AFFIDAVIT
    Defendant's Reply.

1. Admitted.

2. Admitted.

3. Admitted.

③        C-178

4. Admitted.

5. Admitted.

6. Denied. During jury selection, prior to or after, Mr. Hillis never said anything about a stipulation regarding the PDWPP charges.

7. Denied. Up until the "stipulation" was offered in the trial, I was never "informed" about it - in fact at the time I didn't even understand what a stipulation was. Nobody explained it to me - I had no ideal what they were talking about when it was brought up in trial, nor was "stated" on record that I understood what a stipulation was.

July 20, 2005

Deveal L. Bacon

④

C-179

EXHIBIT *13*

YOUR FILE COPY

Devearl Bacon
221242  DCC
1181 Paddock Road
Smyrna DE 19977

July  $\mathcal{Z}/$ , 2005
        [date]

PROTHONOTARY
Criminal Division
Superior Court
500 N. King Street
Wilmington, DE 19801

                    Re:    Response Requested

Dear Sir:

        Did the Prothonotary's office receive the Defendant's Reply to the States
Response to Defendant's Motion for Post-Conviction Relief Under Rule 61 that I filed in
**April 2005** and **was it accepted by the Court**? I have not heard anything and I would
appreciate knowing.

        Enclosed is a self-addressed stamped envelope for your reply.

        Thanking you in advance for your time and response in this matter.

                                    Yours-truly,

                                    /s/
                                    Devearl Bacon
                                    Pro-se

Enclosure

$C - 181$

EXHIBIT *14*

C-182

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | : | IN 00-07-1666-1667R1, |
| | : | 1671-1673-R1; and |
| v. | : | IN 00-07-0347-0349-R1 |
| | : | 0351-0352-R1, 0356-0358-R1 |
| DEVEARL L. BACON. | : | 0358-R1 – ID 0006017660 |
| | : | |
| Defendant. | : | |

# OPINION

*Upon Consideration of:*
*Defendant's Motion for Postconviction Relief* - DENIED;

*Defendant's Motion for Enlargement of Time*
*to File Reply to State's Answer* - GRANTED; *and*

*Defendant's Motion to File Amended Reply to State's Answer* - GRANTED.

Submitted: July 27, 2005
Decided: August 29, 2005

C - 183

This is the Court's opinion on Defendant Devearl Bacon's motion for postconviction relief, filed pursuant to Super. Ct. Crim. R. 61("Rule 61"). As explained below, Defendant has not presented adequate grounds for relief from his convictions or sentence, and his motion for postconviction relief is therefore denied. His motion to amend his reply to the State's answer and his motion to extend the time for filing his reply are granted.

## POSTURE

Defendant was indicted for numerous crimes stemming from three robberies and one attempted robbery, all of which occurred on June 21 and 22, 2000. Prior to trial in June 2001, this Court granted the State's motion to amend one of the robbery charges to allege theft of United States currency rather than car keys and a car. The parties stipulated that Defendant was prohibited from owning or possessing firearms because of prior felony convictions. As a result of the stipulation, language referring to Defendant's criminal history was stricken from the indictment, and the Court directed the attorneys to refrain from discussing or referring to Defendant's criminal record in the presence of the jury. The State entered a *nolle prosequi* on the charges related to one of the robberies.

Following a three-day trial, the jury returned guilty verdicts on the charges related to the two robberies and verdicts of not guilty of the charges related to the attempted robbery. Defendant was convicted of five counts of Robbery First Degree, one count of Carjacking First Degree, two counts of Aggravated Menacing, two counts of Possession of a Firearm During the Commission of a Felony, two counts of Possession of a Deadly Weapon by a Person Prohibited (PDWPP), and two counts of Wearing a Disguise During the Commission of a Felony. Defendant was sentenced to 34 years of imprisonment to be followed by 12 years of probation. His convictions and sentence were affirmed

1

C-184.

on appeal.[1]

Defendant has filed a motion for postconviction relief, alleging six instances of ineffective assistance of counsel. The Court has received an affidavit from defense counsel, as well as Defendant's response to that affidavit.[2] The Court has also received the State's answer to the motion.[3] Defendant initially filed a handwritten reply, which he subsequently moved to withdraw and substitute with a so-called "Complete Reply." The Court hereby grants that motion.

<div align="center">FACTS</div>

At trial, the evidence showed the following facts. On June 21, 2000, a man wearing a dark, hooded sweatshirt and a bandana over his face and carrying a gun entered the Star Liquor Store on New Castle Avenue. He told everyone in the store to get down onto the floor and when they did not, he fired two shots. Everyone got down. The man then held the gun to the clerk's head and demanded money. The clerk gave him the cash, and, as he turned to leave the store, he also took a customer's car keys. He drove away in the stolen car.

When police officers arrived to investigate, they found two shell casings and bullet fragments in the store. The victim of the car-jacking described his car as a silver or gray 1997 Ford Escort with Delaware tag number 999159. Witnesses described the robber as a somewhat short black man with a slight build.

Another robbery was attempted at the Star Liquor Store on the next day, June 22, 2000. A man in a hooded coat entered the store and with gun in hand demanded money from the clerk (a

---

[1] *Bacon v. State*, 2001 WL 1472237 (Del. Supr.).

[2] Rule (g)(2).

[3] Rule 61(f)(1).

<div align="center">2</div>

C-185

different individual than the clerk who had been threatened in the prior robbery). The clerk picked up a Polaroid camera to take the man's picture. She refused to give him any money and told him his best bet was to leave. He took her advice and left the store, got into a grayish-colored car and drove away. The clerk did not get his picture on the Polaroid, but she described the man to the police as being 5' 6" or 5' 8" tall, approximately 165 or 175 pounds, with facial hair and dark clothes. The police recovered no physical evidence from this incident.

Later that night, a man with a hood and bandana covering his face entered the Seven-Eleven Store on North Du Pont Highway. The store's surveillance camera captured images of the man pointing his gun at the two clerks and taking money from them. The robber fled the store and drove away in a small silver car with Delaware registration number 999159. The clerks' description of the robber as a black man with a slight build was confirmed by the surveillance video.

On June 23, 2000, probation officers saw three men working on a gray Ford Escort parked near 17th and Spruce Streets in Wilmington. The car had a Delaware license plate with the number 999159. The men were detained and the police were called. Two of the men were six feet or more. The third man, who was later arrested for the robberies, was 5'7" tall and weighed approximately 140 pounds.

Inside the Ford Escort, police found a hooded jacket, money, and a .22 caliber handgun. A comparison of the handgun and the ballistics evidence from the Star Liquor Store robbery showed that the shots fired during that robbery were fired from the gun found in the Escort.

As stated previously, Defendant was found guilty of the charges relating to the two robberies and not guilty of the charges relating to the attempted robbery.

C - 186

## DISCUSSION

Defendant raises six grounds for relief, and asserts that the claims were not previously raised because of defense counsel's constitutionally ineffective representation. Defendant argues first that defense counsel was ineffective for not timely objecting to an amendment to the indictment just prior to trial. He also argues that counsel was ineffective for not objecting to joinder of the PDWPP charges with the other charges. Third, he asserts that counsel should have moved to sever the charges stemming from the three separate incidents. Fourth, he claims that he was prejudiced by defense counsel's failure to object to the introduction of evidence of his prior bad acts. Fifth, he contends that defense counsel should have objected to a witness' in-court identification of him as the robber. Finally, he argues that he was prejudiced by defense counsel's failure to object to the State's withholding of exculpatory evidence.

To prevail on any of these claims, Defendant must meet the two-part test set forth in *Strickland v. Washington.*[4] To show that defense counsel was constitutionally ineffective, a defendant must show first that counsel's representation fell below an objective standard of reasonableness.[5] Even a professionally unreasonable error does not warrant setting aside the judgment if the error had no effect on the judgment.[6] Thus a defendant must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine

---

[4] 466 U.S. 668 (1984).

[5] *Id.* at 688.

[6] *Id.* at 691.

4

C-187

confidence in the outcome.[7] In applying this test, the Court may reject a defendant's claim if he fails to meet either prong.[8]

Amended indictment. One of the Robbery counts alleged that Defendant sought to take "car keys and a car" from a victim, and the State moved to delete that phrase and substitute the phrase "United States currency." After hearing argument from both sides, this Court granted the motion over defense counsel's objection. Defense counsel raised this issue of direct appeal, and the Delaware Supreme Court affirmed the ruling because the change was one of form only.[9]

Ordinarily, this claim would be barred pursuant to Rule 61(i)(4), which provides that any ground for relief that was formerly adjudicated is thereafter barred unless reconsideration is warranted in the interest of justice. Defendant has not attempted to make this showing, but argues instead that defense counsel should have raised this issue prior to trial so that Defendant would have had a "more favorable review on Direct Appeal."[10] As a factual matter, this assertion is inaccurate. The State made its motion on the day of trial, and this Court granted the motion over defense counsel's objection. Defense counsel acted reasonably in objecting to the motion at the time it was made, and Defendant cannot show any prejudice resulting from counsel's conduct. Defense counsel also raised this issue on appeal and lost. Defendant has not met either prong of the *Strickland* test, and the Court concludes that this ground for relief has no merit.

---

[7] *Id.* at 694.

[8] *Id.* at 697(stating that "[t]here is no reason for a court . . . to address both components of the inquiry if the defendant makes an insufficient showing on one. . . . If it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, which we expect will often be so, that course should be followed").

[9] *Bacon v. State*, 2001 WL 1472287 at * 2 (citation omitted).

[10] Motion for Postconviction Relief at 4.

5

C-188

The other five claims which Defendant raises are issues not previously addressed and would ordinarily be subject to procedural default pursuant to Rule 61(i) (3). Defendant asserts that these issues were not addressed because of counsel's ineffective representation. Ironically, the requirements for overcoming the procedural default are analogous to the standard for showing ineffective assistance of counsel, and a defendant who cannot show attorney ineffectiveness also fails to overcome the default rule.[11] The former requires a defendant first to show cause, that is, to explain his reasons for not raising the issue earlier.[12] A defendant who makes this showing must then show a "substantial likelihood" that the outcome of the proceedings would have been different if the issue had been raised.[13] Under the *Strickland* test for attorney ineffectiveness, a defendant must show that counsel's representation fell below an objective professional standard of conduct and that this conduct caused the defendant to suffer actual prejudice during the proceedings.[14]

Joinder of PDWPP with other charges. Defendant argues that defense counsel was ineffective for not objecting to the joinder of the PDWPP charges with the charges related to the robberies. He claims that he was prejudiced by the stipulation which established his status as a "person prohibited" and that it was irrelevant to the robbery charges. Defense counsel asserts in his affidavit that the stipulation protected Defendant by preventing the jury from learning the details of his prior criminal convictions. This assertion is correct. The Delaware Supreme Court has approved

---

[11] *Shelton v. State*, 744 A.2d 465 (Del.), *cert. denied*, 530 U. S. 1218 (2000). *See also Gattis v. State*, 697 A.2d 1174 (Del. 1997), *cert. denied*, 533 U.S. 1124 (1998).

[12] *Rodriguez v. State*, 2004 WL 1656506 at ** 1 (Del.Supr.).

[13] *Flamer v. State*, 585 A.2d 736, 748 (1990).

[14] *Strickland v. Washington*, 466 U.S. at 663.

6

C-189

such joinder,[15] and Defendant therefore cannot fault defense counsel's conduct or show that Defendant was prejudiced by the stipulation. This argument has no merit.

Joinder of charges from three incidents. Defendant argues that he was prejudiced by defense counsel's failure to object to the indictment's inclusion of charges from all four incidents and by joinder of three incidents at trial. Defense counsel avers that he saw no basis for severance and therefore did not move to sever.

Pursuant to Super. Ct. Crim. R. 8, multiple counts may be joined if they are of the "same or similar character or are based on the same act or transaction. . . ." In this case, three robberies and one attempted robbery were committed in two days, by a man using a gun, wearing a disguise, and of the same general description. On similar facts, the Delaware Supreme Court has stated that where "the offenses are of the same general character, involve a similar course of conduct, and have occurred within a relatively brief span of time, it is proper to try the offenses together."[16] Thus even if defense counsel had moved to sever, the motion would no doubt have been denied, and Defendant cannot support his assertion that he was prejudiced by counsel's conduct. The Court finds that Defendant has not meet either prong of the Strickland test and concludes that this claim must fail.

Evidence of prior bad acts. Defendant further contends that defense counsel was ineffective for failing to object to what he loosely refers to as his "prior bad acts." He objects to the admission of testimonial evidence of his status as a prisoner and his escape from custody. As a threshold matter, the Court notes that the record contains no testimony or other evidence regarding Defendant's escape from custody, although there is a reference to the Plummer Center. Corporal

---

[15] Sexton v. State, 397 A.2d 540, 545 (Del. 1979).

[16] Coffield v. State, 794 A.2d 588, 590-91 (Del. 2002).

7

C - 190

Mark Spence testified that after Defendant had been taken to the Wilmington Police Station following the robbery at the Seven Eleven, he voluntarily started to talk about the incidents, and Corporal Spence read him his *Miranda* rights even though he was not being interrogated. As Defendant continued to talk, he referred to having been "released from the Plummer Center."[17] The testimony included no further reference to this topic, and no questions were asked or objections entered.

At sidebar, defense counsel moved for a mistrial and explained that he had not objected to Det. Spence's statement because he did want to draw the jury's attention to Defendant's detention at the Plummer Center. This Court denied the motion because the general public, including the jury, is not necessarily aware that the Plummer Center is a correctional facility and even if jurors had been aware of that fact, it would not have been prejudicial to Defendant in light of the stipulation that Defendant is a Person Prohibited.[18]

Cpl. Spence's statement was not affirmative evidence in the State's case, as demonstrated by the record of the sidebar which followed on its heels. Rather, it was a brief reference made while the officer was chronicling the evening's events. In *Muto v. State*, another case where a witness inadvertently referred to a defendant's arguably bad acts without objection from defense counsel, the Delaware Supreme Court reviewed the issue for plain error, that is, whether the allegedly prejudicial statement violated the defendant's "substantial rights."[19] Prejudice is also determinative of the question of ineffective representation. Here, as in *Muto*, the statement was unsolicited, vague, and

---

[17] Transcript of the Trial (6/20/01) at 110 (hereinafter "Tr. (date) at ___)."

[18] Tr. (6/20/01) at 113.

[19] 2004 WL 300441 at **5 (Del. Supr.) (quoting *Capano v. State*, 781 A.2d 556, 556 (Del. 2001)).

8

C - 191

brief, and was not pursued by the prosecutor. As stated previously, even if any juror knew that the Plummer Center is a detention facility, no prejudice could result because all jurors were informed that Defendant is a convicted felon via the stipulation. Defendant has not shown that counsel was ineffective, and this claim must also fail.

In-court identification. Defendant argues that Dawn Smith's in-court identification of him as the man who held a gun to her head and robbed the Star Liquor Store violated his due process rights and that defense counsel was ineffective for failing to object.

At trial, Ms. Shaw provided numerous details about the robber's appearance on the night of the robbery. She stated that the robber was a short, thin, light-complected African-American male with "skinny" legs, which were visible because he wore shorts. She further testified that he wore a dark blue, hooded jacket with white lettering on it, work boots and black gloves. His face was covered from the nose down by a bandana and the hood was on his head, leaving his eyes visible. When Ms. Shaw saw Defendant again later in the evening, she recognized him as the man who had held a gun to her head and robbed the liquor store.[20] After providing this information, Ms. Shaw was asked by the prosecutor if she saw the robber in the courtroom, and she identified Defendant.

Defendant argues that this identification violated his right to a fair trial because it had no independent origin. The question of whether there has been an independent basis for an in-court identification arises when an unnecessarily suggestive out-of-court identification potentially taints an in-court identification.[21] Defendant incorrectly asserts that Ms. Shaw was unable to identify him

---

[20]*Tr.* (6/19/01) at 30; 33-39; 40-43.

[21]*Gillis v. State*, 1987 WL 38068 (Del. Supr.) (stating that admission of in-court identification violates due process if preceded by unnecessarily suggestive out-of-court identification which raises a substantial likelihood of misidentification, unless voir dire shows that the in-court identification has independent origin (citing *Manson v. Brathwaite*, 432 U.S. 98, 116 (1977)).

9

C-192

in a photo line-up. Ms. Shaw testified that she was never shown any photographs,[22] and, in fact, the witness who had not been able to pick Defendant out of a photo array was Gina Harris, the clerk who refused Defendant's demand for cash when he attempted to rob the same liquor store on June 22, 2000.[23] The independent origin for Ms. Shaw's in-court identification of Defendant was the evening of June 21, 2000, when Defendant entered the Star Liquor Store and ordered everyone to the floor, fired his gun in the air, demanded that the clerk give him the store's money, stole a customer's car keys and fled the Star Liquor Store. Defense counsel had no reason to object to the identification, and he aggressively cross-examined Ms. Shaw on the details of her description of the robber.[24] The Court concludes that defense counsel was not ineffective for choosing not to object to Ms. Shaw's identification of Defendant as the robber of the Star Liquor Store. This claim has no merit.

**Exculpatory evidence.** Finally, Defendant argues that the State failed to turn over to the defense a videotape of a statement Defendant allegedly made to Det. Spence at the Wilmington Police Station. Defendant asserts that the videotape included exculpatory material and that defense counsel was ineffective for not identifying this issue and raising it on appeal. In his affidavit, defense counsel states that his file notes show that he asked the prosecutor about a tape of Defendant's statement. He further states that the prosecutor said that he believed that Defendant had not given a statement after arriving at the Police Station and that the prosecutor had confirmed this fact with the police.[25] In its answer, the State reiterates that Defendant did not give a formal

---

[22]Tr. (6/19/01) at 34, 36.

[23]Tr. 6/20/01) at 35-36.

[24]Tr. (6/19/01) at 31-36, 40-42.

[25]Defense Counsel's Affidavit at 4, Exh. A, entries for 2/22/01, 2/23/01.

10

statement while at the police station and that his comments to Det. Spence were not recorded.

At trial, Det. Spence testified that Defendant made certain unsolicited remarks and that he was read his *Miranda* rights but not interrogated. Det. Spence included Defendant's verbal statements in a written report, which was provided to the defense. There is nothing in the record to support Defendant's assertion that a statement was videotaped or that the prosecution failed to provide such a tape to the defense. This claim has no factual basis and does not provide grounds for postconviction relief.

## CONCLUSION

Defendant Devearl Bacon's Motion for Enlargement of Time to File a Reply to the State's Answer and Motion to File Amended Reply are hereby GRANTED. Defendant Bacon's motion for postconviction relief is hereby DENIED.

IT IS SO ORDERED.

Judge Susan C. Del Pesco

Original to Prothonotary
xc:    Sean Lugg, Esquire
       Devearl Bacon, Delaware Correctional Center
       Edmund M. Hillis, Esquire

11

C-194

EXHIBIT *15*

APPEN. D

$\delta - 1$

SUPERIOR COURT OF THE STATE OF DELAWARE
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
020310

OFFICIAL BUSINESS, PENALTY FOR PRIVATE USE $300

RECEIVED
SEP 06 2005
JUDGE DELPESCO'S OFFICE

Devean L. Bacon, ID 00060017660
Delaware Correctional Center
1811 Paddock Rd

RTS
RETURN TO SENDER

CARRIER

☐ INSUFFICIENT ADDRESS
☐ ATTEMPTED NOT KNOWN
☐ NO SUCH NUMBER/STREET
☐ NOT DELIVERABLE AS ADDRESSED
☐ UNABLE TO FORWARD

19801-3733 12

STATE MAIL

SUPERIOR COURT OF THE STATE OF DELAWARE
NEW CASTLE COUNTY COURTHOUSE
500 NORTH KING STREET, SUITE 10400
WILMINGTON, DE 19801-3733
020310

OFFICIAL BUSINESS, PENALTY FOR PRIVATE USE $300

PAID

Devean L. Bacon, ID 00060017660
Delaware Correctional Center
1811 Paddock Rd
P.O. Box 500
Smyrna, DE

Screened by:
Delaware Capitol
Police

RECEIVED
SEP 13 2005
JUDGE DELPESCO'S OFFICE

EXHIBIT *16*

$\lambda - 3$

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DEVEARL L. BACON<br>APPELLANT/DEFENDANT | )<br>)<br>) |
| BELOW | )  No. 453, 2005<br>) |
| v. | )<br>) |
| STATE OF DELAWARE<br>APPELLEE/PLAINTIFF | )  COURT BELOW: SUPERIOR COURT<br>)  OF THE STATE OF DELAWARE IN<br>)  AND FOR NEW CASTLE COUNTY |
| BELOW | ) |

ON APPEAL FROM THE SUPERIOR COURT OF
THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

APPELLANT'S OPENING BRIEF

Loren C. Meyers, Esquire
Department of Justice
820 N. French Street
Wilmington, DE 19801

Devearl L. Bacon
221242
1181 Paddock Road
Smyrna, DE 19977

Date: /- 20 - 6

8 - 4

## TABLE OF CONTENTS

Pages

Table of Authorities ................................................................. ii-iii

Nature and Stages. ....................................................................... 1-3

Statement of Facts ........................................................................ 4

Arguments:

   I.   Prejudicial Joinder of PDWPP (Prior Crime Evidence) Offenses Violated Due Process,
      and Caused Irreparable Damage Prejudicing Defendant's Right to a Fair Trial .............. 6-11

   II.  Prejudicial Joinder of Charges Committed at Four Separate and Distinct Time and
      Locations Severely Prejudiced Defendant's Right to a Fair Trial ....................... 11-21

   III. Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts, on
      Request a Hearing (404) under DeShields v. State, Del. Supr. 706 A.2d 502 ............. 21-27

   IV. In-court Identification of Defendant by State Witness Dawn Smith Violated
      Defendant's Right to a Fair Trial, When There Was No "Independent Origin for
      this "In-Court Identification. Defense Counsel Was Ineffective for His Failure to
      Raise this Issue on Direct Appeal ................................................ 28-33

   V.  Ineffective Assistance of Counsel for Failure to Raise the Amendment to Defendant's
      Indictment Counsel Argues Prior to Trial. Defendant Is Prejudiced Because He Would
      Have Had More Favorable Review on Direct Appeal. .................................. 33-37

   VI. Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify
      and Raise this Super. Ct. Crim. Rule 16(A)(d) Discovery Violation Concerning a
      Videotape Made of Defendant's Statement at Police Station, Either During Trial
      or on Direct Appeal. ........................................................... 37-43

Conclusion ........................................................................... 44-45

* Note: All Endnotes and Exhibits Are in Accord.

-i-

$-5$

## TABLE OF AUTHORITIES

Allen v. State, 644 Aa.2d 982 (Del. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13.27
Bacon v. State, No. 369, 2001 (Del.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Bantum v. State, 85 A.2d 741 (Del. 1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Bates v. State, 386 A.2d 1139 (Del. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12,18
Berryman v. Morton, 100 F.3d 1089 (3rd Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,19
Bullock v. State, 775 A.2d 1043 N. 4 (Del. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,26
Cobb v. State, 7, 65 A.2d 1252 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,26
Coffield v. State, 794 A.2d 588 (Del. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12,17,18
DeLuca v. Lord, 77 F.3d 528 (2nd Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
DeShields v. State, 706 A.2d 502 (Del. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,13,14,26,27,42
Drew v. US, 331 F.2d 85 N.12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,14,15,16,17
Farmer v. State, 698 A.2d 949 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13,26
Flonnery v. State, 778 A.2d 1044 (Del. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8, 26
Getz v. State, 538 A.2d 726 (Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 14,23,27
Gilbert v. US, 388 US 263 (1967). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
Harley v. State, 534 A.2d 255 (Del. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .36
Hoev v. State, 689 A.2d 1177 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
Holtzman, 718 A.2d 528 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .24,26
Howard v. State, 549 A.2d 692 (Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,26
Jenkins v. State, 230 A.2d 262 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
Johnson v. State, 550 A.2d 903. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *24,40,41,42
Johnson v. US, 613 A.2d 1381 (D.C. App.1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Johnson v. State, 711 A.2d 18 (1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34,36
Lyons v. Cotter, 770 F.2d 529 (5th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
Major v. State, 1995 WL 236658 (Del. Supreme) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,26,33
Mallory v. State, 462 A.2d 1088 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Manson v. Brathwaite, 432 US 96 at 122 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
McDonald v. State, 307 A.2d 796 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
McElroy v. US, 164 US 76 (1896). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,15
Milligan v. State, 761 A.2d 6 N. 6,7 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,26
Niel v. Biggers, 409 US 188 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .28
O'Conner v. State, 577 A.2d 754 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11,12,14
O'Neal v. State, 691 A.2d 50 (Del.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .35
Pointer v. US, 151 US 396 (1894). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
Pope v. State, 632 A.2d 73 N. 6, 7, 8 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Roberts v. State, 1998 WL 231269 (Del.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .34,35
Robinson v. State, 600 A.2d 356 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
Sawver v. State, 634 A.2d 377 N.41 (Del. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Scott v. State, 642 A.2d 767 (Del. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
Sexton v. State, 397 A.2d 540 (Del. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
State v. Dorsey, 2001 WL 1079013 (Del. Super.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9,26
State v. Green, 376 A.2d 424 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
State v. Walls, 541 A.2d 591 (Del. Super. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
State v. McKay, 382 A.2d 260 (Del. Super. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7, 25

$\delta - 6$

State v. Minnick, 168 A.2d 93 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34,36
State v. Deedon, 189 A.2d 660 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35
Strickland v. Washington, 466 U.S. 668 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,21
US v. Yizar, 956 F.2d 230 (11th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
US v. Willis, 759 F.2d 1486 (11th Cir. 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
US v. Valenzuela-Bernall, 458 US 858 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
US v. Gray, 878 F.2d 702 (3rd Cir. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
US v. Myers, 892 F.2d 642 (7th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Vela v. Estelle, 708 F.2d 954 (5th Cir. 1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
Walls v. State, 560 A.2d 1038 (Del. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
Wiest v. State, 542 A.2d 1193 (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,14
Wiggins v. Smith, 539 US 510 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
Williams v. Washington, 59 F.3d 673 (7th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
Williams v. Taylor, 529, US 391 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,21
Williamson v. State, 668 A.2d 95 (Del. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Woodford v. Visciotti, 537 U.S. 19 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,19.21
Wooters v. State, 625 A.2d 280[*5] (Del. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
Younger v. State, 496 A.2d 546 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
Zimmerman v. State, 565 A.2d 887 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

CONSTITUTION AUTHORITIES
Article 1, Section 8 (Del.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

STATUTES AND RULES
Super. Ct. Crim. Rule 7(E). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
Superior Court Crim. Rule 16(A)(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40,41,42

DRE
401; 403; 608(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
402, 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
404 (A)(1) and (B); 608 (A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22,23,27
803(6) (8). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

$\Delta - 7$

## NATURE AND STAGE

Defendant was originally indicted on 24 separate and distinct criminal offenses that alleged he violated sections of the Del. Criminal Code between June 21 and June 22, 2000. There were four sets of charges that alleged violations at three different locations in New Castle County. Of these four sets of charges, two sets alleged the same location, but on two separate dates.

·· Specifically, NONE of these indictments contain any written language alleging, "a pattern of criminal behavior," and also noteworthy, absolutely NO language in any of the 24 indictments that state, or is meant to infer, "that the offenses comprising of a common scheme or plan, occurring over a two-day period, "nothing whatsoever.""

The first five indictments were dropped against the Defendant by the State because the evidence was deemed much too weak against Defendant to proceed to trial. In fact, this Gulf Station (Dupont Highway Rt. 13) evidence alleged to have been part of the video tape evidence, the video tape that stays on the entire time a suspect is held in Wilmington Police Station process and interview area, was allegedly taped over by the detective in charge of this investigation. This video tape that contained Miranda's warnings allegedly read to Defendant at 2:30 (Exhibit B) and any of the Detective's comments on Defendant's answers from 2:18 a.m. at time of arrival until Defendant was removed and placed in lockup. Defense Counsel did, however, discuss before trial that State Attorney refrain from eliciting Defendant's release from the (Department of Corrections) Plummer Center. Mr. Lugg tactically and purposely elicits this harmful evidence anyhow. Defendant swears his counsel, Mr. Hillis, DID NOT EVER EXPLAIN ANYTHING regarding the Stipulation Agreement that was made between his counsel and the State Attorney.

## RULE 61 PROCEDURAL STANDARDS

There are no procedural bars to defendant's six grounds. This is his first Post Conviction Motion filed under Rule 61. This motion was filed within three years of the finalized Order of his direct appeal concerning the Amendment to Indictment Count XX. (Recently supplied to defendant via State's Response exhibit.) Since all six of defendant's

1

$\delta - 8$

claims assert Ineffective Assistance of Counsel they are <u>not subject</u> to the procedural default rule, See <u>Rule</u> 61(i)(3)(A) in part, because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal unless the claim is adequately raised in the lower court. This satisfies the "external impediment," as the United States Supreme Court explained in <u>Murry v. Carrier</u>, 677 U.S. 478, 487 (1986).

In addition to the above Rule 61(i)(3)(A) and Rule 61(i)(4) (for the Amendment Issue) Ground One through Four and Six, assert "a mistaken waiver" of fundamental rights that fall into the narrow miscarriage of justice that undermined the fundamental legality, reliability, integrity or fairness of proceedings, Rule 61(i)(5) exception (<u>Webster v. State</u>, 604 A.2d 1364 Del. 1992). The Defendant has claimed that counsel's "failure to identify" issues in <u>Ground One</u> "Pre-trial, during Trial and [failure to] raise on Direct Appeal, effectively states "a mistaken waiver, three of them, on those issues. <u>Ground Two</u> consists of the same three mistaken waivers, on the set of issues. <u>Ground Three</u> explains "a mistaken waiver" caused by counsel's failure to object to introduction of Prior Bad Acts, and his failure to request a hearing to determine "even if" they were permitted that "a limiting instruction regarding the relevance of those bad acts be given to the jury. <u>Ground Four</u> explains "a mistaken waiver" caused by Defendant's counsel in his failure to raise this issue on Direct Appeal, concerning confrontation. <u>Ground Six</u> concerns a Due Process issue, "a mistaken waiver" caused by Counsel's failure to develop facts at trial, and raise this issue on Direct Appeal, as Brady material, among others. Rule 61(i)(5) provides for post-conviction issues which have <u>not</u> been previously litigated, where the procedural default was <u>not caused by ineffective assistance of counsel</u>. Finally, because defendant has raised the issue that "the factual basis" at argument in his post-conviction <u>Ground Five</u> is "an important change in the circumstances" then the issue previously poised this opens the gate to this procedural bar, notwithstanding the equitable concern of preventing injustice may trump this procedural bar at Rule 61(i)(4) as well.

Defendant requests that this Court note this distinction concerning the review of his claims that his counsel may have been the cause of these mistaken waivers, because it certainly was not defendant's fault, as he has clean hands, and should not have endured or bear the formably stricter standard of review under <u>Stricklands</u> prejudice

2

$\Delta - 9$

prong. This distinction of the different review standard is rarely noted and it is defendant's belief that the Courts of
this State tend to gravitate toward the Strickland prong for no other reason than the Rules do not adequately or
effectively explain the correct standard of the Superior Court's review of a defendant's Rule 61(i)(5) issues.
Apparently the strictest standard here is Rule 61(i)(3) Prejudice Prong, formulated toward Rule 61(i)(3)(A)'s claims
of Ineffective Assistance of Counsel, observing closely that defendant must meet, he doesn't have to go beyond, just
meet the two prong test set forth in Strictland.

3

$\Lambda - 10$

## STATEMENT OF ACTS

On June 20, 2000, at approximately 9:30 p.m., an unidentifiable person walked into a busy Star Liquors Store in the Astro Shopping Center on Route 9, New Castle Avenue, right off I-95 and Route 13. According to eye witness accounts at the scene this person had a gun, was wearing a blue bandana, a blue or dark hooded jacket with the hood pulled up over head, and was wearing either jeans or shorts, either sneakers or like insulated work boots, were anywhere between 18 years old and 25 years old, was either 5 feet tall or 5 feet 11 inches tall, was either thin or medium build and weighted either 105 pounds, or 175 pounds, and had dark skin, dark brown or dark black skin or dark complected, and was also wearing gloves.

At 11:00 p.m., June 22, 2000, a person walked into the Star Liquors, with a green raincoat with a hood around the face with a white thing on it, dark blue shorts, facial hair, and was about 5 foot 6 inches or 5 foot 8 inches tall and 165 to 175 pounds. This person was unable to get anything because the Clerk Gina Harris refused his demands.

About 11:15 p.m. June 22, 2000, a person walked into the Route 13, 7-11 Store, North Dupont Hwy., wearing either all black, or a black bandana, or a green scarf, a windbreaker with a hood. This persons physical characteristics were described by these four witnesses being either really black, dark skinned, or not real light skinned, but light brown complected. This person's height was given to be anywhere between 5 feet tall and 5 feet 8 inches tall, and weighed anywhere from 100 pounds to 175 pounds. *Defendant will show that the suspects in each of these robberies are different. *There certainly was no identification of Defendant all the way up until the trial started, until Dawn Smith was called to the stand.

Legally, you cannot use one crime evidence to prove another crime. And, particularly, an inference must be based on a proven fact. There are no proven facts proving Defendant was at either Star Liquors or 7-11. There is no direct or circumstantial evidence that proves defendant possessed the gun legally.

Defendant will now present arguments supporting the prejudicial effects he suffered as a result of the unfairness in his trial.

4

$\triangle - //$

## ARGUMENTS I AND II

<u>Argument I</u> (Pages 6-11)

Prejudicial Joinder of PDWPP (Prior Crime Evidence) Offenses Violated Due Process, and Caused

Irreparable Damage Prejudicing Defendant's Right to a Fair Trial.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court Abused it's discretion in it's denial of Appellant's Argument I, the Court

stated "Defense Counsel asserts in his affidavit that the stipulation protected Defendant by

preventing the jury from learning the details of his prior criminal convictions. "This assertion is correct."

(Decision pg. 6)

<u>Argument II</u> (Pages 11-21)

Prejudicial Joinder of Charges Committed at Four Separate and Distinct Time and Locations Severely

Prejudiced Defendant's Right to a Fair Trial.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court Abused it's discretion in it's denial of Appellant's Argument II, the Court stated

"Thus even if Defense Counsel had move to sever, the Motion would no doubt have been denied.

(Decision pg. 7)

Appellant will now present Arguments 1 and 2:

5

$\triangle - /2$

Defendant was unaware that his trial counsel entered into a "stipulated agreement," for him,[57] with the State's regarding defendants prior criminal "status" to be brought in front of his jury. This stipulation undermined defendant's case. Defense counsel acted without defendant's "knowledge" in waiving defendant's rights to a separate trial on the PDWPP counts. It should be noted that as of the time of this writing, Counsel Hillis nor the State has provided defendant with a copy of Mr. Hillis affidavit in his response to this claim. We are left "without a clue" as to Mr. Hillis response to ground one as to whether his affidavit property states: the date, time and location of Hillis "consultation" with the defendant, or the nature and extent of counsels "explanation" as to what counsel actually "told" defendant or "explained to defendant so defendant could make a "knowingly, voluntarily and intelligently" made choice in this matter.

The introduction of the stipulation was an unreasonable decision made by counsel. It was deficient performance that introduced evidence that had absolutely no strategic or tactical value unless defendant is taking the stand. But, it was already agreed before trial that defendant would not be taking the stand. Refer to: June 21, 2001 T.T. pgs. 53-54.

> Mr Hillis: "I speak with all my clients as I did with mr. Bacon some times in advance of the beginning of the trial about the decision to testify . . . I did give him my advice. And it's my understanding that based on our decision and his understanding of his rights, he's elected not to testify. That's consistent with the advice I gave him." Id.

The important issue here is not "whether" defendant made this stipulation but "why,'" on earth was it made? Defendant asserts this stipulation but "why," on earth was it made? Defendant assets this stipulation is a "mistaken waiver" of his rights. It was not done "knowingly," and it was not done "intelligently" because defendant did not know about it, and it was not "explained" to him in order to make a "voluntary" choice in the matter. Counsel never explained the harmful effects of such a stipulation when defendant does not take the stand. The prejudice asserted is in the record and in the State's Response, which highlights this: "In asserting this claim, the defendant fails to recognize that defense counsel secured a stipulation from the State . . . . You [the jury] must accept these facts as true for the

---

[57] See Affidavit Exhibit A. Before this brief research defendant did not even know "what" a stipulation was. Counsel never explained it to him.
[58] This stipulation was revealed in the States Response to this issue.

$\Delta$-13

purposes of this trial . . . . Defendant, by virtue of his "prior convictions," achieved the "status" of a person prohibited from possessing a firearm.

While a stipulation of this type may have been desirable for a defendant who takes the stand and testified, where an exposure of his prior bad acts and convictions are permitted to be raised in front of the jury, "a choice" to be made by defendant as to whether to testify on his behalf or not, is the distinguishing factor here in this instant case as it was a distinguishing key fact in Sexton v. State.[89]  Sexton is not on point on this issue.  State v. McKay[90] points out

> [t]he presence of two charges in the indictment which create issues of particular prejudice [ ] Escape After Conviction and [ ] Possession of a Deadly Weapon by a Person Prohibited Evidence presented to support these charges conveys to the jury the defendants prior criminal record and status as a prisoner. Neither of these charges has a "direct relationship" to the other offenses and can be proven without reference to the remaining offences. Id. at 262-63 (emphasis supplied)

Counsel knew defendant was not taking the stand unlike Sexton supra who elected to take the stand and be exposed to DRE 607 and 609(a) impeachment by evidence of convictions of a crime. When a defendant "chooses" to testify his convictions for a felony could be brought out for impeachment purposes[91] the difference between a PFDCF and a PDWPP is that a PFDCF is permitted (it is a "dependent" felony), a PDWPP is required to be severed because it required "evidence" of defendants past convictions to prove this offense element, to come before the jury.

We are left "scratching our heads" here wondering how and most importantly "why" was the stipulation made by defense counsel in this particular case circumstances. "[D]efendant [is] not satisfied that the stipulation appropriately shielded the jury from his prior convictions.".  The State "downplays" the significance of the "speculation" that this jury (albeit, an uninstructed jury as to the 'limited purpose" of this stipulation) would, and was given "free-rein" to imagine "what" the nature of the prior crimes defendant committed to where it wags a felony charge to merely "possess" or even "control" a gun through another person.  In fact, the State used this evidence as a launching pad" to introduce other highly prejudicial evidence to reel in front of the jury," of other prior irrelevant actions and "bad

---

[89] Sexton, 397 A.2d 540 of 544 (Del. 1979) Sexton testified at his trial the Court noted this.
[90] McKay, 382 A.2d 260 at 262-63 (Del.Super. 1978)
[91] Accord. State v. Walls, 541 A.2d 591 (Del.Super. 1987); Desmond v. State, 654 A.2d (Del. 1994)

7

$\lambda - 14$

acts,"[92] evidence. Specifically, even this Court recognized that evidence of defendants prior convictions was brought to

the attention of this jury during trial. See June 20, 2001, T.T.pgs. 110-113.

> The Court: Okay. The other point I wanted to make is that they [the jury] are going to know he's [the
> defendant] a person prohibited because he stipulated to that.
> Mr. Hillis: That's absolutely true, Your Honor.
> The Court: And so given that fact, if somebody should know what the Plummer Center is, I don't find it
> prejudicial in context with a person prohibited. Id. at 113 (emphasis supplied)

And, despite the States contention that "the defendant" was "satisfied" that the jury would "be shielded" from

his criminal record is curious since the record does not reflect defendant "knew" or had "knowledge" of this stipulation,

therefore, defendant could not be satisfied." In fact, the State deliberately choose to "notify" the jury of defendants

"status" within the first five minutes of the trial in the opening statement. See June 19, 2001. T.T.p.6. "And finally,

people for various reasons are prohibited from possessing a firearm in this Sate. The defendant was 'one of these

people.' He possessed a gun and that's a crime."

A felony charge is a very serious offense. This "shield" was a rather "transparent shield" to be sure. Consider

the wording of this stipulation itself.[93] This stipulation allows "speculation" by the jury as to what "evidence that the

defendant was a person prohibited by law from owning a firearm, and the jury instructions concerning the "elements" of

these charges further emphasis this "status." Particularly, prejudicial because a limiting jury instruction was not given

regarding this prior crimes evidence.[94]

... The ruling that this Court made supra refusing to grant a mistrial because specifically of this "stipulation"

because of the assumed prejudice resulting in the reference by sate witness to defendants prior incarceration as being

"released" from the Plummer Center,[95] evidence of defendants prior criminal status. This is similar to the circumstance

in Flonnery[96] where the jury was exposed to a remark of "an unspecified felony." Twice, the jury was "left to speculate"

---

[92] DRE 402, 404(a)(b); See Moorhead v. State. 638 A.2d 52, 56 n.4 (Del. 1994) "Evidence of prior acts is not admissible simply
because evidence of other acts has been introduced... unless it is relevant, probative, clear, and not unfairly prejudicial.")

[93] See 6-21-01 T.T.pgs. 52-53

[94] This will be discussed infra.

[95] See 6-20-01 T.T.pgs. 110-113

[96] Flonnery v. State, 778 A.2d 1044, 1056 n.5,6(Del.2001); See also Loper v. State 637 A.2d 827 (Del.1994)

the nature of defendants criminal background without either a "cautionary," or a "limiting" jury instruction given to the jury instructing them to disregard the release from Plummer Center," and, to "limit" the jury's fact-finding concerning the stipulation evidence, as required to be given by this Court.[97] Prior "crimes" evidence "limiting" instructions are mandatory since 1988. Howard v. State.[98] The distinction between "discretionary" and "mandatory" jury instructions is explained in Wooters v. State[99] as distinguishing mere "bad acts" to "uncharged criminal behavior," as in Howard supra. A further distinguishment is made between "cautionary" instructions and "limiting" instructions. See Major v. State.[100] Defense counsel in order to claim "strategic or tactical waiver," this "waiver" must be present on the trial record. State v. Dorsey[101] even if it is a "cautionary" instruction. Sawyer v. State.[102] These instructions are required to be given sua sponte by the Court as the evidence dictates. Bullock supra (citing Zimmerman v. State).[103]

Additionally, counsel's performance was deficient in his failure to request "cautionary" and "limiting" instructions as required under Getz v. State,[104] DeShields v. State,[105] Allen v. State,[106] Milligan v. State,[107] and Cobb v. State,[108] that the jury should be carefully instructed regarding the "limited purpose" for which this type of bad acts, prior acts, or prior crimes evidence is introduced. Indeed, the Delaware Supreme Court in Major supra explains that, the strategic usage of limiting instructions are so the jury understands that the bad acts given in evidence they obviously heard is given a limited use for their fact finding mission. Id. See Also DRE 105.

There is no evidence in the complete trial record any such instructions were given, or even requested, by counsel, or this Court.

---

[97] Bullock v. State, 775 A.2d 1043 n.4(Del.2001)

[98] Howard ,549 A.2d 692, 694-95 (Del.1988)(after Weber "expanded the scope" to uncharged crimes)

[99] Wooters, 625 A.2d 280(*5) (Del. 1993); O'Conner v State 1990 WL726006(Del.Supr.)

[100] Major, 1995 WL236658 (Del. Supreme)

[101] Dorsey ,2001 WL1079013 (Del.Super.) Absence of ruling on record; Holtzman v. State 718 A.2d 528(1998)

[102] Sawyer, 634 A.2d 377 n.4 (Del. 1993)

[103] Zimmerman, 565 A.2d 887, 890 (1990)

[104] Getz, 538 A.2d 726, 734 (Del. 1988) landmark case for Howard supra.

[105] DeShields, 706 A.2d 502, 507 (Del. 1998) explains Getz analysis to be performed.

[106] Allen, 644 A.2d 982, 984-85 (Del. 1994) (relevance)

[107] Milligan 761 A.2d 6 n.6,7 (2000) Court must limit juries consideration of other bad acts by specific instructions.

[108] Cobb, 765 A.2d 1252, 1256 (2001)

8-16

Regarding the State's Response to defendants prejudice claim on this issue, "[c]learly the possession of the firearm was part of the same transaction," is another example of the State's general tenure toward this case. One of unfairness. It's well established in this Courts holding in McKay supra at 262-63, that a PDWPP does not have a direct relationship to the other offenses of this same exact nature, and can be proven "without reference to the remaining offenses. Id. The prejudice the defendant may suffer is cited in Wiest v. State, (citing McKay supra) and has been described in the following terms:

> (1) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find; (2) the jury may use the evidence of one of the crimes to infere a general criminal disposition of the defendant in order to find guilt of the other crime or crimes; and (3) the defendant may be subject to embarrassment or confusion in presenting different and separate defenses to different charges. Id. (emphasis added)

The essence of this ground issue is that defendant's counsel's deficient performance that fell below the objective standard of reasonableness caused this prejudicial error. There was no reasonable tactical or strategical value concerning the circumstances of defendants trial that made this stipulation "sound" trial strategy.[109] This unprofessional error was magnified by counsels (and Courts) failure to provide limiting jury instructions to limit the scope of this evidence to only that of the three PDWPP. Counsel's professional judgment was outside the wide scope of professional reasonable representation falling below an objective standard of reasonableness in the totality of these circumstances[110] knowing defendant was not taking the stand "before" trial. Defense Counsels failure to move for severance of these charges particularly in light of the well established McKay decision that explains the "exception" for these particular charges was unreasonable and unprofessional for failure to investigate this clearly favorable avenue of relief.[111] Defendant was denied a fair trial, a result that was unreliable,[112] and there's a reasonable probability that the outcome of the proceedings would have been different but for counsels unprofessional errors.[113] (As this Court noted in

---

[109] See Berryman v. Morton, 100 F.3d 1089 (3rd Cir. 1996)(unreasonable trial strategy)

[110] Strickland v. Washington 466 US 668, 687-88, 690 (1987)

[111] Wiggins v. Smith, 539 US, 510 (2003); Williams v. Taylor, 529 US 362 (2001)

[112] Strickland, 466 US at 687

[113] See Williams v. Taylor, 529 US at 391-92 (Clarified earlier exceptions explained in Nix and Lockhart cases should be narrowly applied.

denying the motion for a mistrial). To prove prejudice the defendant must establish a reasonable probability that the result of the proceeding would have been different. Strickland at 692. The United States Supreme Court rejected the proposition that defendant must prove [the higher standard] "more likely than not" that the outcome would have been altered. Id. See also Woodford v. Visciotti.[114]

Had Mr. Hill's not introduced this "stipulation" there is a reasonable probability that this court would have ruled favorably on the mistrial motion. More importantly, defendants prior criminal convictions and prior status as a convicted felon would not have been before this jury.

## Argument For Ground Two:

The State's Response to ground two's joinder is conclusionary in that the State does not provide any legal authority explaining Rule 8(a)'s four requirements elements, or definitions of what circumstances constitute, "the same or similar character" of a robbery offense. The character of the Star Liquorers and 7-11 robberies is discussed above in "facts" section supra and is explained in Drew[115] supra at 92-93 n.12. The State does not explain or provide any legal authority defining what "actual circumstances" provide the relevant evidence to constitute parts of "a common scheme or plan." This is explained in Drew at 90 (citing Pointer v. U.S. 151 US 396 (1894)[116] and McElroy v. US 164 US 76 at 79-80 (1896)[117] and O'Conner v. State[118] where our State Supreme Court describes the "common scheme" exception as involving either:

(1) prior acts which are so unusual and distinctive that their relationship may establish identity,[119] or

---

[114] Woodford v. Visciotti, 537 US 19, 22-23 (2002)

[115] Drew v. U.S. 331 F.2d 85 at 92-93 n.12 (a detailed exposition of the facts is necessary review the actual facts of the hold-up-clothing really doesn't go toward "similarity" nor does the fact of vicinity. The "same or similar character" analysis is how the clerks were asked for the money and the robbers actions. A fundamental difference between the persons contemplating crimes of this character would be the degree to which each was prepared to use force to achieve his objective. Thus, the testimony about the use of the pistol in one case where it was shot twice, and the use of the pistol in the other case takes on an "enchanted significance.")

[116] Pointer 151 US 396 (1894) The S.Ct. addressed a joinder involving a defendant with four counts involving murder of two people on same day, at the same place, with the same kind of instrument was not prejudiced by joinder, because the proof of each crime would have been relevant in a separate trial of the other.

[117] McElroy, 164 US 76 at 79-80, 17 S.Ct. 31 at 32 (1896) states the basic three factors, "In a matter of being held out to be a habitual criminal, in the distinction of the jury or otherwise. "[W]e do not think the statute authorizes the joinder of distinct felonies not provable by the same evidence and in no sense resulting from the same services of acts." Ibid.

[118] O'Conner, 577 A.2d 754 (1990)

[119] Drew supra at 89, 90, 92 (a detailed exposition of the facts to the robbery is necessary)

Δ-18

(2) where the other acts form part of the background of the alleged act, to which it is inextricably related and without which a full understanding of the charged offense is gained. Id. (citing Getz supra 538 A.2d at 733. The Getz Court held that the State could not use "common scheme" exception to introduce evidence of fathers prior sex relations with his daughter because prior acts were isolated events in time depicting no common plan other than multiple instances of sexual gratification. (Id.)

The State concludes that the record supports a "legal finding of a "focused time frame," a "similarity of offenses" and "offender descriptions" establish the charged crimes as constituting a common scheme or plan. The premises supporting the State's conclusion are fatally flawed in the following respects. The robberies were committed in a two day period at different times of the day. This is not a "focused time frame" the Supreme Court is concerned with. The focused time frame[120] in O'Conner specifies in part two of the formulas are explained in part, "to which [the other acts] [are] inextricably related and without which a full understanding of the charged act is gained." Id. See Getz at 733; Pope v. State.[121] Analyzing the States legal authority being Coffied v. State [122]specifically as to the focused time frame, the Sate does not tell us that Coffield's robberies were committed"all three in the same morning." The relevance of this is that Coffield's case rests its holding on Younger v. State[123] where the focused time factor material to that holding was specifically attributed to rapes that occurred at about the same time of day, in the same neighborhood, but the Court made it clear that because Younger confessed and linked himself,[124] this being a necessary element of the Younger Court's holding just as the "consistent" exquisite detailed descriptions of Coffield by the victims were a key element in Coffield's holding. Younger supra rests on McDonald v. State[125] and McDonald rests on Bantum v. State.[126] And Bates v. State[127] cited in Coffield, circumstances consisted of a murder and attempted murder within minutes, in the

---

[120] In O'Conner, defendant admitted to opening the doors of two other rooms. Other witnesses testified O'Conner lied each time when they opened the door. This was evidence of similar pattern and closely intertwined in time (within minutes). Another key factor in allowing this evidence was consideration given to fact that defendant was not accused of any other crimes, only opening doors, thus it was unlikely that the jury would seek to punish for merely opening doors. FINALLY the Court did give a limiting instruction immediately to jury "limiting" the use of this evidence to only that of evidence showing a common scheme or plan.

[121] Pope, 632 A.2d 73 n.6,7,8 (1993)(explains intertwining evidence circumstances)

[122] Coffield, 794 A.2d 588 (Del. 2002)

[123] Younger, 496 A.2d 546, 550 (1985)(distinguished in that Younger confessed linking himself to these crimes)

[124] A key factor as in O'Conner, supra.

[125] McDonald 307 A.2d 796, 798 (Del. 1973) circumstances of murder of a mother and the daughter raped a couple hours later, in same house on the same day. The evidence was so inextricably intertwined as to make proof of one crime impossible without the other.

[126] Bantum, 85 A.2d 741 (Del. 1952) circumstances of two victims in the same house, hours apart, on the same day. Accord Pointer v. US 151 US 396 (1894)(same place, same day)

[127] Bates, 386 A.2d 1139 (Del. 1978)

$\delta$-19

same place on the same day. Based on well established legal authority in all cases but one, the crimes occurred within minutes or hours, on the same day at the same place. The only exception was Younger, but this was still at the same time of day, in the same neighborhood, with the confession as a distinguishing feature, as to the linkage element.

Contrasting this instant case facts, whereas the robbery of the Star Liquors was late afternoon-early evening and the 7-11 robbery was late night a different time, on a different day, at a different location. The State's conclusion as to the focused time frame concerning the crimes that defendant got convicted of, is incorrect as a matter of law in their formulation, considering the relevant factual circumstances in this case. Even if, and attempt is made to "enlarge the focus" of the time frame element, the first evidentiary gate the State must overcome in the focused "time frame is RELEVANCE." "Remoteness is not a concern, relevance is," as our State Supreme interpreter of laws authoritatively scolded this Court and the State in 1994 in Allen v. State.[128] This determination is made by the Court when evidence is proffed. See DRE 402; Farmer v. State.[129] Evidence must have independent logical relevance to the issue of ultimate fact in the case-in-chief. DeShields v. State.[130] The Supreme Court ruled that the State cannot prove the charged crime by proving another crime against the victim because there was no independent relevance. See Taylor v. State (explaining) and, this DRE 402 relevancy ruling must appear on the record supporting the relevance of the proffered evidence. "State v. Dorsey; Holtzman. (same)

In fact, the same type of crime, on the same night, excluded as not being relevant as to the issue of a suspects guilt for a present-charged crime because the probative value was out weighted by the prejudice effects, in Hoey v. State. The State's conclusion that the element of a focused time frame that is relevant in this instant case circumstances is not correct, it is a fatally flawed conclusion.

The State also submits that there is a "similarity of offenses" element with the premises of this conclusion based on "'offender descriptions" which are not premises for this element just as, driving the same car stolen from the

---

[128] Allen, 644 A.2d 982, 987-93 n.5,8,10 (1994)(Relevance of evidence the question of whether the trial judge properly formulated and applied legal precepts governing the admissibility of evidence is one of law.)

[129] Farmer, 698 A.2d 949 (1997)(irrelevant evidence)

[130] DeShields, 706 A.2d 502, 507 n.7(1998)

13.

$\lambda - 20$

first offense is not relevant to "this" argument. (May be if a car was also carjacked at the later 7-11 robberies this might make that hypothetical evidence a un..t as original, but that did not happen.) The O'Connor Court describes this similarity of offenses, as prior acts which are so 'unusual and distinctive' that their relationship to the charged offense may establish identity. Id. "In assessing this [type of] evidence a detailed exposition of the facts of each crime is necessary." Drew supra (as cited in Weist supra) and "relevancy" must be determined. A Getz analysis must be done. See Weist supra at 1195-96(FN3) regarding independent relevance. DeShields supra at 508, Trial Courts "must" carefully examine offers of proof that acts of other misconduct have independent logical relevance. Ibid. The Weist Court makes it clear that this does apply to Joinder of Offenses as explained, "[e]ven if it is determined that

> the prejudice by [defendant] is not sufficient to "require" severance of separate offenses, a crucial factor to be considered in making a final determination [ ] should be whether evidence of one crime would be admissible in the trial of another crime. Id. at 1195-96 [FN3] (Citing Bates supra at 1142 echoing McElroy supra] Traditionally, the evidence of one crime is inadmissible to prove a general disposition to commit another crime, even if the crime is of the same nature and character as the offense charged. Getz supra at 730. Evidence of other offenses is admissible when it has "independent logical relevance" and its probative value to the State has been balance against the prejudicial effect of the defendant. Weist at 1195-96[FN3]

The record does not support the preposition that evidence of each "set" of robberies[131] would be admissible at separate trials. Generally, relevance is determined by examining the purpose for which the evidence is offered; that purpose in turn, accommodates concepts of materiality, i.e., the evidence must "be consequential" to action and probative value, i.e., the evidence must advance the likelihood of the fact asserted. Farmer supra. In DeShields the state sought to prove Modus Operendi evidence, the Court held this fact had no independent logical relevance to the material issue in dispute. The Hoey supra at 1179-80 court excluded this same "type" of crime evidence, on the same night as not being relevant to the issue of Hoey's guilt for the present crime charges.

---

[131] As a housekeeping matter, Defendant would like to clarify that he is not arguing that all these charges should have been severed under Rule 14. But only the 3 PDWPP offenses as stated in ground one to be separately tried by themselves: the carjacking should be severed from all the rest of these charges; the "sets" of the separate location charges i.e. Defendant is not challenging the properly joined offenses of Poss. Firearm During the Commission of a Felony. (PFDCF) and WDDCF (wearing disguise) and Agg. Menacing and Robbery I set of charges as applied to Star Liquors, and these identical "set" of charges concerning the 7-11 robbery. Defendant is challenging the joinder of these Star Liquor "set" of charges that were joined with the 7-11 store "set" of charges. Defendant is also challenging the 17th Street joinder of charges to the 7-11 charges.

The State offers no evidence to support its conclusion of "a similarity of offenses. [I]n order to accomplish this a detailed exposition of the facts is necessary. Drew supra at 92. The Drew court in their analysis of United States Supreme Court rulings in Pointer supra and McElroy supra explains that:

> [a] common scheme or plan embracing the commission of two or more crimes so related to each other to proof of one tends to establish the other when for example, the two crimes arise out of a continuing transaction, or the same set of events, the evidence would be independently admissible in separate trials. Id. At 90. Similarly if the facts surrounding the two or more crimes on trial show there is a reasonable probability that the same person committed both crimes due to the concurrence of unusual and distinct facts relating in the matter in which the crimes were committed Id. This device used must be so unusual and distinctive as to be like a signature. Drew (citing McCormick Evidence §157)[cf. O'Conner supra first factor.] Turning to the case at hand, a detailed exposition of the facts is necessary, "the actual facts of the holdup" —the Court pointed out that clothing really doesn't go toward "similarity") nor does the fact of vicinity." Id.

The key to the same or similar character" that is relevant evidence is specifically how the clerks at each location were "asked" for the money, and, the robbers "actions." This evidence is the relevant inquiry concerning the similarities in the manner in which the offenses were committed to support a reasonable probability that the offenses were committed by the same person from which the jury could be asked to infer that the person was the defendant.

This conclusion is buttressed by other factors. In the [Drew] "robbery," the assailant, at first sign of non-compliance, threatened the clerk with a gun" Drew at 92. Similarly, in this instant case, "at first sign of non-compliance" not only does the suspect threaten the clerk with a gun, his character is "brazen" and "bold", firing his pistol, not once, but twice, the second his demands are not complied with. This character "takes over" the complete store at Star Liquors. And, remains "in control" of himself as well, being described as "calm" and collected. Ordered everybody even the customers on the floor as soon as he entered. He kept his cool, he did not raise his voice, he was not nervous, "just very demanding that you could hear it in his voice." This character pointed his gun directly at the clerk and customers heads, he did not hold it sideways, nor did he shake with nervousness, and this character kkept complete control up to the point of actually taking a car as an escape vehicle and told the owner, "Man, I'm not going to hurt your car, I'm not going to crash or something like that." (An inference that the fellow who owned the car would be getting it back in the future when he was done with it.) This robbery no doubt has the ear-mark of a seasoned professional,

A-22

based on the testimonal evidence derived from the Star Liquors robbery.

In the "attempted" robbery [in Drew], there was no threat of violence. In fact the dragon seems to have een most reluctant one indeed. This circumstance could raise a significant doubt as to whether [Drew] was involved in both crimes. A fundamental difference between two person contemplating crimes of this character would be the degree to which each [robber] was prepared to use force to achieve his objective. Drew at 92-93.

Similarly, the contrasting differences between the personality or character of the robber at Star Liquors compared to the suspect at the 7-11 store, using this analysis of "[a] fundamental difference between two people 'contemplating' crimes of this character." It is doubtful that a seasoned robber with the experience of the character at Star Liquors that store does not have a mandatory money drop, contrasts significantly to a 7-11 store which has "advertisements" on the entrance doors, on the service counter, and, other "high visibility" locations that the store "does not carry over fifty-dollars at any time," plus the visible video cameras make a 7-11 store a poor choice for a robber right from the beginning, as these are obvious deterrents.

The contrasting differences continue in this case. In the 7-11 robbery "the dragon" seems to have gotten a lot less ferocious than in Star Liquors. The character here does not have control, he is not calm, he is not collected, and he loses his cool. The robber does not make any attempt to secure, or take control of the store premises. This 7-11 robber is "a nervous robber," the gun "shakes" when he holds it. He has a distinguishing difference in the way he points his gun, he holds his gun "sideways." Also different, this robber did not directly face the gun at the 7-11 clerks, contrasting the Star Liquors robber's actions. This robber also "loses his cool," and calmness, and cusses the clerks. And, he does not rob the customers who were around the store. In fact, this robber lets the clerks walk around and even approach him to within an arms length.

The character and personalities of the Star Liquors robber and the 7-11 robber are probably about as a contrasting character as one could use as a perfect example to illustrate what is not"the same or similar character," as a premises for that element. The testimony about "the use," and, "the handling," of the pistol in these robberies takes on an enchanted significance. The differences in demeanor are totally on opposite sides of the poles. One guy is "cool as

16.

8-23

a cucumber" at Star Liquors, the 7-11 guy is as"aggravated as a mad rapid dog." In both cases there were problems with handling the money. In fact, the Star Liquors guy had more reason to be nervous and lose his cool because he's got 4 or 5 customers within feet of him, but he does not, even when the clerk drops the money on the floor a couple times and the money drawer jams as well. When this sort of thing happens at 7-11, even without the 4 or 5 customers around him, that robber goes ballistic and screams curse words at the clerks.

There are "acts which are so unusual and distinctive in these cases, but their relationship is ultimately at odds." They are "not" the same or similar character based on the correct legal standard used to evaluate this element. The States conclusion is fatally flawed as to these offenses having the same or similar character, or any similarity. These are surely two separate and distinct robberies committed by two different robbers.

The State concludes its conclusions with an "offender descriptions" with premises of "an individual using a gun, wearing a disguise, matching a "consistent" physical description." From the review of all the witness testimony, we already are aware that several descriptions were given as to the gun, from a "long barrel" to "a small one," from "dark black," to a lighter "charcoal" color. That does not really help us here. Most robbers in this area use guns, and disguises which many colors and styles were described by witnesses, common as are the four different colors of bandanas and scarves as well as the several colors of jackets. As for a "consistent" physical description the idea of the "consistency" goes more toward the "consistent different descriptions" each witness gave.

A review of the actual facts of the holdup goes to "similarity" – clothing or similarity of dress does not offer evidence of similarity" Drew at 92. Had each witness given a consistent" physical description as was given in Coffield at 590-91 being the same descriptions at all three robbery locations, is in "sharp contrast" to the descriptions given by witnesses in this instant case. Consider the same "stocky black man," the same "dark blue stocking cap," the same "dark blue hooded sweatshirt," the same "sunglasses" and the same "small," "silver," handgun. Compare these descriptions to the 7-11 and Star Liquors descriptions by witnesses, one of which the State supplied a witness with information after suspect defendant was arrested. Having clearly distinguished Coffied supra as having no precedential value since its factual context was different in material facts and circumstances, it is obvious that the State has not, did

17.

A - 24

not, and can not prove there is evidence in this case to support a lawful joinder of the 7-11 set of offenses, to the Star

Liquor set of offenses. Two completely different characters committed these offenses, and they were not the same

person.[131]

Prejudice to defendant. The defendant in this instant case did claim and substantiate his claim of prejudice.

see Ground Two of Petition in pertinent part.

This permitted the jury to cumulate the evidence, and was free to infer a general criminal disposition
-- of the defendant. As a result the defendant was convicted of most of the counts charged....

In fact, the State in their Response failed to address defendants claims of prejudice so they are undisputed.

The State also "sidestepped" "the cause" of defendants failure to challenge the joinder prior to, or, during trial which is

clearly stated in Ground Two of Petition.

Trial Counsel was ineffective for failure to move for severance of these charges, failure to object at
trial, and failure to identify and raise these claims on direct appeal.

The State relies on Bates supra as cited in Coffield at 595, the language the State uses is, "Here, [defendant]

has offered only unsubstantiated speculation about prejudice. His assertion is clearly insufficient under the standard we

articulated in Bates v. State." State Response page 10. The substantial difference in the Bates case is that Bates

moved for a severance of a "dependant" felony, being a PDWDCF. Of course, there is no possible showing of prejudice

because on a PDWDCF charge, (as contrasted to a PDWPP, or other "non-dependant" charges that are not linked to

that particular crime) all the necessary elements of the "host offense" are relevant and wholly material, thus, fully

admissible to prove the elements of that (PDWDCF) offense, Bates other crimes were minutes apart at the same

location.

Prejudice can be shown if one crime joined would not be admissible in trial for the other crimes under DRE

404, this is a crucial factor. Bates at 1142 as cited in Wiest supra. The absence of competent evidence of

[defendants] guilt is a factor to be considered. Jenkins v. State.[133]

---

-    [132] The confusion here was probably the result of the superficial similarity of the two crimes and the way they were committed, and
the jury probably was not confused or probably did not misuse the evidence Drew supra at 93.
    [133] Jenkins, 230 A.2d 262 (1967)

/3.

$\delta - 25$

The failure to move for a severance despite a failure to perform a factual investigation, still considering the totality of circumstances portrays a startling ignorance of the law—or just plain inadequate preparation. See Kimmelman at 385. "Failure to conduct any pretrial investigation generally constitutes a clear instance of ineffective assistance of counsel," United States v. Gray [142]"failure to go to the scene of the [crime] and locate potential witnesses, interview witnesses, constituted ineffective counsel." Id. at 711-12. "For counsel to rest on his errors as strategy or defense theory, first necessitates the existence of one. Berryman v. Morton;[143] Deuca v. Lord[144] (same).

In cases resulting in failure to move for a severance resulting in deficient performance of counsel see United States v. Myers;[145] United States v. Yizar;[146] Williams v. Washington.[147] Passing over clearly inadmissible evidence which is prejudicial to defendant has no strategic value, jurors not likely to remain impartial. Lyons v. Cotter[148] as is counsel failure to request a limiting instruction. Id.

> The standard for "outcome" of the proceedings stated in Strickland is explained more fully in Woodford v. Viscentti.[149] The Woodford court explains the "reasonable probability" standard in the prejudice prong specifically rejecting the preposition that defendant had to prove it" more likely than not that the outcome would have been different. (Citing Strickland at 693.) This standard is based on Agurs cited in Strickland "spoke of evidence which raised a reasonable doubt, although not necessarily of such character as to create a substantial likelihood of acquittal . . ." United States v.

CONTINUAE
ON
PAGE 431

---

[142]Gray, 878 F.2d 702, 711-12, n.7, 8 (3rd Cir. 1989)
[143]Berryman, 100 F.3d 1089, 1095 (3rd Cir. 1996)
[144]DeLuca, 77 F.3d 528, 583 (2nd Cir. 1996)
[145]Myers, 892 F.2d 642 (7th Cir. 1990) (same)
[146]Yizar, 956 F.2d 230 (11th Cir. 1992) (same)
[147]Williams, 59 F.3d 673 (7th Cir. 1995) (same)
[148]Lyons, 770 F.2d 529 (5th Cir. 1985); White v. McIntrinch, 235 F.3d 988, 997-98 (6th Cir. 2000)(wholly unreasonable)
[149]Woodford, 537 US 19 (2002)

## ARGUMENTS III AND IV

Argument III (Pages 21-27)

Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts, on Request a Hearing (404)

under DeShields v. State, Del. Supr. 706 A.2d 502.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court abused it's discretion in it's denial of Appellant's Argument III, the Court stated

"even if any juror knew that the Plummer Center is a detention facility, no prejudice could result

because all jurors were informed that defendant is a convicted felon via the stipulation." (Decision pg. 9)

Argument IV (Pages 28-33)

In-Court Identification of Defendant by State Witness Dawn Smith Violated Defendant's Right to a

Fair Trial, When There Was No "Independent Origin for this "In-Court Identification. Defense

Counsel Was Ineffective for His Failure to Raise this Issue on Direct Appeal.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court Abused it's discretion in it's denial of Appellant's Argument IV, the Court

stated "Defense counsel had no reason to object to the identification"... (Decision pg. 10)

Appellant will now present Arguments 3 and 4:

20

$\lambda - 27.$

Valenzuela-Bernal,[151] id. at 22. "Undermin[ing] confidence in the outcome" is exactly Stricklands description of what is meant by the "reasonable probability" standard. A reasonable probability sufficient to undermine confidence in the outcome." Strickland at 694. Ibid. Williams supra[151] at 393 ("probably effected the outcome") Woodford at 24.

Defendant has shown this Honorable Court the specific circumstances complained of, the prejudice Mr. Hills' unprofessional errors have caused, these were not "strategic" decisions. Counsel's performance

is judged in the preparation or failing to properly prepare by failure to investigate both the law and facts known to him and the rules and law and procedure he is held to know as an attorney representing defendants in criminal proceedings. Unless a defendant charged with a serious offense [in this case 24 of them] has counsel able to invoke the procedural and substantial safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself. Vela v. Estelle.[152]

In summary, this ground is riddled with unprofessional errors each a substantial error in itself. The case law cited is on point.

The errors that cumulated in this case are "way past the standards" needed to meet the prejudice and performance prongs if properly and reasonably applied by this Honorable Court.

Some errors were also made by the Court as well. The actual admission of all these charges and more specifically the failure to provide the jury with the mandatory "limiting" instructions. The cumulative effects of all the errors outlined above surely intensifies each error in the composite format.

For these reasons and those stated throughout Ground Two and its facts and argument sections defendant respectfully prays that this Court reverse these convictions and either vacate the sentences or remand for separate trials.

Argument For Ground Three:

Defendant incorporates the "Procedural History," the "Facts" sections above, as well as the pertinent facts and arguments surrounding Counsel's stipulation to defendant's status on the PDW/PP counts that this Court relied on in its determination to deny Defendant's Motion for a Mistrial concerning the State's introduction of evidence that

[150]Valenzuela-Bernall, 458 US 858 (1982)
[151]Williams, 529 US 362 (2000)
[152]Vela, 708 F.2d 954 (5th Cir. 1983)

$\left\{ -28\right.$

defendant had been "released" from the "Plummer Center."[153]  See Exhibit D.[154]  Defendant also incorporates those

arguments in ground one and two concerning both Court and Counsel's errors in not having a Getz analysis nor

providing proper limiting instructions to the jury.[1]

The evidence of defendants three sentenced was not permitted pursuant to DRE 404(a)(1) and (b), or, DRE

608(a).  Detective's testimony elicited from the State was a "responsive answer" to the specific question the State

asked, as defendant had been only alleged to have made only three comments.[156]  The pertinent part of this question

and answer consisted of the following:

Q: And did he continue to make statements to you?

A: Yes. After I asked him if he understood his rights.

Q: What exactly did he tell you?

A: . . . he made several statements.[157]  One of which he made a statement that he was  "released" from the

Plummer Center.  A second statement that he made was that he hadn't slept in three days.  And a third statement was

to the effect he would brief [sic] that do [sic] 25 years.

Q: And if you could explain Mr. Bacon's demeanor as you observed him on the early morning hours of the

23rd?

A: He was calm. It was almost as if it was an attitude.[158]  (Emphasis added)

. Counsel could have prevented this highly prejudicial testimonial evidence from being disclosed to the jury

simply by filing a motion in limine to exclude specific evidence on testimony, or motion for pre-trial order prohibiting the

state from examining state's witness concerning defendants "release" from Plummer Center and being awake for three

---

[153]5-20-01 T.T. pgs.110-113

[154]Photocopies of Plummer House news listing escapes from Plummer House generally appearing first in the column and at top of page in our local area newspaper *The News Journal.*

    [155]The later of course could not have been accurately accessed under Milligan supra and Cobb suora without a Getz analysis.
[156]6-20-01 T.T. p.110

  -  [157]See Exhibit B and C, Exh. 9  was supplied with 3 statements. Exh. C Oct. 30, 2000, discovery to counsel specifically #1.  See DRE 103(c)

    [158]6-20-01 T.T. p.111

$\Delta$-29

days, that he might do 25 years. See Exhibit G for an example of such a motion counsel should have filed upon receiving discovery. Although some type of oral agreement may have been conceived between Counsel and State. The State certainly did not honor it.[159]

Counsel also "fell asleep at the wheel" when he failed to object to the State's question "and could you explain or describe for us Mr. Bacon's demeanor . . . "[160] Objectionable under DRE 401 as to relevancy; DRE 403 prejudicial effect; DRE 404(a)(1) references to defendants character or demeanor; and DRE 608(b)(2) "specific instances of conduct to support the [Star Liquors] witness[a]" credibility through investigating officer's testimony."[161]

The prejudicial effects of this evidence were enormous particularly when buttressed with the joinder of all these sets of crimes, and Counsel's stipulation as to defendants "status" as a convicted criminal. Compounding this prejudice is the fact that without a limiting instruction on either of these pieces of evidence, "the jury was left free to cumulate this evidence" magnifying or intensifying its effect that the defendant was indeed a convicted criminal.

An analysis of the statement evidence leaves the jury free to infer the following: defendants "release" from the Plummer Center focuses attention to defendants immediate past as being in prison, a convicted criminal. The second reference that "he hadn't slept in three days" is specific reference to the conduct of defendant and also inadmissible under DRE 401, 403, 404(a)(1) and 404(b) because defendant having not said anything other than these 3 statements neither admitted nor denied his participation in these crimes. A Getz analysis was never performed to determine relevancy; to balance the probative value against prejudice to effects of the defendant; to determine the limited purpose for such evidence and to give specific instructions to the jury concerning its limited use,[162] Getz at 730-34 and prodigies of that specific conduct. The evidence that "he would brief [sic] the [sic] do 25 years."

This evidence was particularly damaging considering the context in which this evidence was presented, i.e.,

[159] 6-20-01 T.T. p.112
[160] 6-20-01 T.T. p.111
[161] 6-19-01 T.T. pgs.36,55
[162] Scott v. State, 642 A.2d 767, (Del. 1994), See also Getz at 730
[163] DRE 401, 402, 403, 404, 105. See also DeShields supra; Taylor supra (independent logical relevancy) Morehead at 56 (evidence of prior acts) Gregory v. State, 616 A.2d 1198 (Del. 1992), Dorsey supra; Savage supra (failing to balance the probative value against prejudice effects): Milligan supra and Cabb supra (court must give specific limited instructions)

$\chi - 30$

reference that defendant was a convicted criminal, an inference logically concluded from defendants "release" from "Plummer Center," the earlier statement made by the State in its opening, "the defendant was one of these people. He possessed a gun and that's a crime." (Emphasis added) The potential prejudice here is that the jury was free to infer that defendant was "an experienced" criminal, because he was aware of the "time" he believed he would do based on "prior experience" of course stemming from his "release" from Plummer Center and his "status" of a person prohibited from PDWPP and the cumulative joinder of 2-4 felony charges. A common person would reasonably and objectively infer an "experienced criminal" character evidence from this statement.[164]

The State in their Response "sidesteps," and, "downplays" and attempts to "legitimize" this evidence as follows:

(1) To be sure, such evidence was not elicited at trial.[165]

(2) Rather, Detective Spence testified that defendant told him that he had just gotten out of the Plummer Center.

(3) This fact was offered without any explanation as to the connection of the Plummer Center to the Department of Corrections.[166]

(4) No testimony was elicited as to the character[167] of the accused nor was any reference made to prior bad acts requiring the Court to engage in an evidentiary assessment.

(5) As no bad acts evidence was presented, defendants proposed analysis was not required. States Response p.10 (Emphasis added)

Defendants reply to these five contentions by the State is as follows: Regarding the first, that this evidence was not elicited. The State supplied the police report to defense on October 30, 2000. Exhibit B and C. At the bottom of

---

[164] See Holtzman, 718 A.2d 528 (Statement evidence of defendant)

[165] Compare: Exhibits B and C to 6-20-01 T.T. p.110

[166] Compare: Exhibits E, General Public Knowledge, *The News Journal*/local area newspaper

[167] Compare: 6-20-01 T.T. pgs. 110-111 ("...explain or describe mr. Bacon's demeanor")

94.                        S-31

this report there are only three statements alleged to have been made by the defendant. Referring to the record, "concerning the statements" defendant made to the witness the State asked witness "what exactly did he tell you?" The police report which the State Deputy Attorneys Office supplied to the defense as a response to their first request, only lists three statements that defendant allegedly "told him." A responsive answer to this rather precise question, i.e., what "exactly" . . . , was the only thing that the detective[168] could respond without being "non-responsive." That is the three alleged statements because there was nothing else the defendant allegedly told this detective according to the report. The State misrepresents this fact to this Court eroding the integrity of these proceedings.

The second misrepresentation to this Court is the State's "mischaracterizing" evidence of defendants "release" from Plummer Center to a "downplayed," "that he had just "gotten out." By mischaracterizing this evidence in the way, relieves the core prejudice of this evidence and is not an accurate inference. Specifically, the jury was presented with "released from the Plummer Center,"[169] as opposed to "just gotten out." The States misrepresentation to this Court by this "mischaracterization"of fact adds to the erosion of the integrity of these proceedings and the Court being hoodwinked and detoured away from the truth concerning these instant proceedings.

The third explanation offered by the State on this issue concerns their "downplaying" of the jury's intelligence and common knowledge because the State offered this fact without any connection as to the Plummer Center to the Department of Corrections. The jury is instructed to discuss the case evidence among all 12 jurors when deliberating to share their views on the evidence. It is common knowledge that people in New Castle County, particularly the juror pool composed of voters, presumably keeps up with their City, County and State activities either through the local area newspaper or Channel 12 news, both of which inform the general public as a whole, whenever there is a "walkaway" from the Plummer Center, and that the police and Department of Corrections officials are looking for that person. Upon capture the person is charged with escape (in202) after conviction.[170] Exhibit D. This Court acknowledged, ". . . . if

---

[168]Compare: Johnson v. State, 550 A.2d 903, 913 F.N.6 (detective is agent of the State)
[169]A person is not "released" from "a voluntary" confinement. They are "released" from jail, "released" from kidnappers, etc.
[170]McKay at 262-63

§-32

somebody should know what the Plummer Center is. . . . . [171] One out of the 12 New Castle County jurors would have more likely than not known about the Plummer House and it must be presumed that the jury followed their instructions to discuss the evidence.[172] Without a doubt, interest would be generated concerning particularly a defendant's "release" from any place. No instruction was given. Distonue counsel should have at minimum requested a "limiting instruction." While tactically it may have been a good idea not to request a "cautionary instruction,"[173] a "limiting instruction" on evidence of prior crimes activity was mandatory and should have been given by this Court when counsel did not request it.[174] This was potentially prejudicial to defendant because it allowed the jury to draw "unwarranted inferences" and speculate[175] about "what crime did defendant commit to end up in jail,"[176] on other crimes evidence, as an example. This reference to the Plummer Center was "downplayed" by the State.

The fourth contention the State makes is another "misrepresentation" of fact to this Court. The State claims, "No testimony was elicited as to the character of the accused nor was any reference made to prior bad acts requiring the Court to engage in an evidentiary assessment." This was dealt with earlier in the discussion where counsel "fell asleep at the wheel," concerning the State "eliciting" evidence of defendant's demeanor.[177] The question was a specific question, i.e., "And if you could explain or describe for us Mr. Bacon's demeanor. . . ." Any other answer to this specific question would have been "non-responsive." Whether one calls evidence of a persons character, "demeanor," does not mean that because they "characterized" this evidence under an analogous term that they can now claim "no reference to the character of the accused." This detective's testimony response was "elicited" by the State, and its purpose was to support [Star Liquors] witnesses' credibility through the officer's testimony. The State asked Star Liquors witness: "And his [defendant's] demeanor, could you describe that for the jury how he acted in the store?" Witness answers: "He was calm" and second Star Liquors was asked the same question and replied: "He was very calm

[171] 6-20-01 T.T. p. 113
[172] Accord, Millican supra: Cobb supra
[173] Explained: Major v. State, 1995 WL236655 (Del.Apr.20,1995)
[174] Bullock supra; Howard supra; Holtzman supra
[175] E.g., Farmer supra; Dorsey supra; Savage supra; DeShields supra
[176] Compare: Flannery supra (unspecified crime);see also Loper supra
[177] 6-20-01 T.T. pgs. 110-111

§ - 33

about it."[174]

The defendant never disputed this evidence anywhere in the record. The detective's testimony is "rebuttal" evidence. This evidence does not have "independent logical relevance" to the States prima-facia case-in-chief. Such extrinsic evidence of defendants character may only be admissible in rebuttal if defendant raises an "affirmative defense."[179] DRE 404(a)(1) Getz at 731. This also applies to prior acts in general. (This is not limited to just prior bad acts or his general bad character) DRE 404(a)(1)

> Evidence of prior acts is not admissible simply because evidence of other prior acts has been introduced. The Getz analysis is designed to ensure that evidence of prior acts [or character and demeanor] is not admitted unless it is relevant, probative, clear and not unfairly prejudicial. Morehead[180]. (Emphasis added)

Certainly, the elicited evidence of defendants "an attitude" falls into this category as well. These explanations that the State gives, to the extent one can buy into them, the proposition that "such evidence was not elicited at trial," it is still clear, however, that this condition was created by the State nonetheless, it cannot be blamed on defendant Bacon, and this Court is reminded that Counsel's errors and responsibility of counsel's errors rest on the State. In fact, the State does not dispute that trial counsel was ineffective for failure to request a DeShields analysis (citing Getz) as, "professionally unreasonable," they simply state, "[a] no bad acts evidence was presented, defendants proposed analysis was not required." Similarly, the State did not dispute counsel's ineffectiveness for failing to request a "limiting instruction" on this evidence, and "instruction" as to which case to use this evidence in.

Defendant incorporates counsel's ineffectiveness arguments raised in Ground One and Two, fully and attaches them to these issues as well.

Defendant fully asserts that each issue raised is a reversible error based on this Court's evidentiary structure to provide defendant with fair trials. Defendant further incorporates Grounds One and Two arguments concerning each issue prejudicial effect equivalent to reversible error and their composite errors magnifies the prejudicial effects.

[178]Compare: Scott v. State, 642 A.2d 767 (Del 1994) and 6-19-01 T.T. pgs. 30,55
[179]Accord Taylor supra; DeShields supra; Allen supra
[180]Morehead at 56 n.4

S-34

Argument For Ground Four:

> [T]he issue is whether the witness is identifying the defendant solely on the basis of h[er] memory of events at the time of the crime, or whether [s]he is merely remembering the person['s name given to her after defendant was arrested]. Accordingly, in [this] situation, the relevant inquiry includes factors bearing on the accuracy of the witness' identification including h[er] opportunity to view [the criminal at the time of] the crime. Manson v. Brathwaite, 430 US 98 at 120 (1977)

The Court stated: "[T]he primary evil to be avoided is a very substantial likelihood of irreparable misidentification. It is the likelihood of misidentification which violates a defendant's right to due process." Id. at 124. "[R]eliability is the "linchpin" in determination [of "in-court"] identification testimony[.] The determination depends on the "totality of the circumstances." Ibid. "Under the 'totality of the circumstances' in this [instant] case, there exists "a very substantial likelihood of irreparable identification." Id. at 99 (citation omitted)

Dawn Smith did not have a sufficient opportunity to view the suspect at the time of the crime. she did not

accurately describe him before defendant was arrested, and her level of certainty was low.[181]

> It was too great a danger that the [defendant] was convicted because he was a man [Smith] had previously observed near the scene, was thought to be [the] likely offender, [] rather than because [Smith] "really remembered him as the [robber]." Id. at 118 (citation omitted)

Identification evidence is so convincing to the jury that sweeping exclusionary rules are required. Fairness of the trial is threatened by suggestive confrontation evidence, and, thus, it is said an exclusionary rule has established a constitutional predicate. Id. at 111. There are, of course, several interests to be considered and taken in account. The driving force behind [citations omitted] the Court's concern with problems of eyewitness identification. Usually the witness must testify about an encounter with total strangers under circumstances of emergency or emotional stress. The witness' recollection of the stranger can be distorted easily by the circumstances or by actions of police. Id. at 112.

The United States Supreme Court in Bruthwaite supra; accord, Wails v. State;[182] "[h]eld that reliability is the 'linchpin' in determining the admissibility of [in-court] identification testimony for confrontations. [T]he determination depends on the "totality of the circumstances." The factors to be weighted against the corrupting effect of suggestive [in-court] identification procedures in assessing reliability are those set out in Niel v. Biggers[183] and include the opportunity to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Id. at 114 (citing Biggers supra); Walls supra (emphasis added) [T]um[ing] then, to the facts of this [instant] case and apply this analysis.

---

[181] See 6-19-01 T.T. pgs.42-43
[182] Walls, 560 A.2d 1038 (Del. 1989)
[183] Biggers, 409 US 188, 199-200

$\int -35$

1. The opportunity to view the criminal at the time of the crime.[184] Dawn Smith testified that she works behind a counter encased in glass, suspect shot out an overhead light, on customer side of the glass, ordered everybody on the floor, she got on the floor, counter base was solid material, then suspect approached opening in glass, had the gun in her face pointed at her head, obstructing her view of suspect's face covered with a bandana up to the eyes and the hood from the jacket pulled down to right above the eyes. She removed bills from the end table and was busy picking up dropped bills off the floor, where she was ordered to stay. Finally suspect turned his back to her and left.

2. The degree of attention: [185]Smith testified she tried to get the drawer out of the table that contained the money. She focused on trying to lift the table, and couldn't, so she struggled with the drawer to get that out, she couldn't do that, so she took the money out and threw it at him, some money fell on the floor so she already being on the floor, picked that up and threw it up on the counter at suspect. When she finally did look up at hole in the glass, all she saw was this gun pointed at her, so she planned an escape. Her attention was drawn to the end of the gun barrel, she could not describe color or type of the gun, only it had a long barrel. Detective Spillan interviewed Smith at the scene, for probably a much longer time than it took the suspect to rob the Star Liquors, and under less stressful conditions.

3. The accuracy of prior descriptions: Smith's description was given to Spillan within minutes after the robbery. It included a clothing description, work shoes or boots, shorts, bandana covering his face to this eyes and a blue windbreaker with a hood covering his head down to the top of his eyes, the gun only a long barrel, no color or type. Weight and build was given as skinny, height as a flat 5 feet to 5 feet 2 inches, no facial descriptions, no eye descriptions, no hair descriptions as to color or shape of hair. Specifically, no description of a beard and that the suspect was dark black or brown.

At trial, this witness altered her testimony to reflect the suspect as having a beard, and being light complected, and his name Mr. Bacon. When asked about when detective asked her to described the face of the individual when she

---

[184]6-19-01 T.T. pgs.24-31, 34-36, 39, 41-43
[185]6-19-01 T.T. pgs.24-31, 34-36, 39, 41-43

$\mathcal{P}\mathcal{9}$.

$\delta - 36$

spoke to him the evening of the robbery she didn't mention anything about a beard, she answered he had "a black bandana on his face.[186] And Spillan testified that the witness told him minutes after the robbery that the suspect was dark black or brown.[187]

Curiously, this witness could not even identify detective Spillan who interviewed her without pointing a gun in her face and wearing a disguise and under less stressful conditions.[188] Specifically, even more interesting is that this witness was never shown a photo lineup, nor was defendant taken to her to view as to positively identify him as the suspect. Defendant was never identified by this witness, or any witness as the suspect in this robbery before the trial either in a photo lineup or show up.

4. The witnesses level of certainty demonstrated at the confrontation. There is no dispute the suspect was disguised, no dispute that none of the witnesses picked him out of photo arrays. No dispute that this witness was ever shown a picture of defendant, or viewed him before trial. This witness could not describe suspects facial features.[189] When asked to describe the face of the suspect witness could not. Her level of certainty was low. Witness brought up questioning the detective, eliciting a physical description of suspect after he was arrested about—did he have a beard.

Although witness claims to have seen the defendant again that night when talking to the detective, this is not brought to his attention. She did not call him and when he called her she failed to mention this alleged encounter because her level of certainty was very low.

5. The time between the crime and confrontation. Dawn Smith's description of the suspect was given to detective Spillan within minutes of the robbery. The in-court identification by the witness took place almost a full year later. We have the passage of approximately 12 months between the circumstances surrounding this event filled robbery in which the witness was occupied for the most part—defendant holding a gun between his face with a disguise and her face, the focus being on the gun as testified.

---

[186] 6-19-01 T.T. pgs.24-31, 35-36
[187] 6-20-01 T.T. p.182
[188] 6-19-01 T.T. p.36
[189] 6-19-01 T.T. pgs.25,26,34-36,39,41

30.

$\Lambda$-37

These indicators of [Smiths][n]ability to make an accurate identification[, in conjunction with] the corrupting effect of th[is] [particular type] of [courtroom] identification [testi[,] [the] reliability of this [in-court] identification if [also] undermined by the facts that the [defendant] was arrested [3 days later, in a different part of New Castle County, no physical evidence such as fingerprints, or proceeds from the Star Liquors "robbery" were attributed to the defendant. Surely, we can [] say that under the circumstances of this [instant] case there is 'a very substantial likelihood of irreparable misidentification." Id. at 116 (citations omitted)

Of course, [] had [detective Soltan] presented [Smith] with a photographic array[190] including so far as practical . . . a reasonable number of persons similar to any person then suspected whose likeness is in the array, [] the use of that procedure would have [legalized the use] of the identification at trial [if this witness did in fact, choose defendant's photo as being that of the suspect] voicing the risk that the evidence would be unreliable. Id. at 117.

The errors made by counsel are clearly apparent on the face of the record. Counsel should have made an oral motion to strike answer of this witness, or, a oral motion to strike a portion of answer of witness upon the grounds of a non-responsive answer,[191] or we move to strike so much as the answer given to the last question as states that "when Mr. Bacon came into the store," upon the grounds that this was a "non-responsive" answer.[192]

In reviewing every case in the Delaware legal digest on this issue, not one case supports a circumstance of "in-court" identification, without as an element the witness identifying the suspect "before trial," either by photo array, lineup, or show up, or specifically identifying the suspect in a clear unobstructed view with lighting, at a close distance, and without a disguise, and must include a descriptive identification to police. There is absolutely no case authority to support a witness identification of a "disguised person" where a witness could not identify the suspect at the time of the crime, and then later post-crime where a witness then claims to have seen the suspect and makes an identification, as in this instant case scenario. No authority to support these specific circumstances.

_The identification evidence was extraordinarily prejudicial because the Star Liquors case was the States "foundation case" that they built the T-II case on, specifically the case related evidence. Counsel should have raised this as objection at trial, in the case at issue on direct appeal._

---

[190]Apparently this was supposed to have been planned, but for some reason it was never done. See 6-19-01 T.T. pgs.34,36. CONTINUING- Instead it appears that this witness inquired of the detective the arrested suspect's physical description.

[191]See U.S. v. Willis, 759 F.2d 1486 (11th Cir. 1985)Cert. denied: 474 US 849. (Absent motion by defense counsel to strike testimony, Court and State are not under any duty to strike it)

[192]See Gilbert v. U.S., 368 US 263 at 271 (1957)-13

[193]6-19-01 T.T. pgs. 34,37-39

Page 33

$\delta$-38

## ARGUMENTS V AND VI

Argument V (Pages 33-37)

Ineffective Assistance of Counsel for Failure to Raise the Amendment to Defendant's Indictment

Counsel Argues Prior to Trial. Defendant Is Prejudiced Because He Would Have Had More

Favorable Review on Direct Appeal.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court abused it's discretion in it's denial of Appellant's Argument III, the Court

stated "Defendant cannot show any prejudice resulting from counsel's conduct." (Decision pg. 5)

Argument VI (Pages 37-43)

Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify  and Raise this

Super. Ct. Crim. Rule 16(A)(d) Discovery Violation Concerning a Videotape Made of Defendant's

Statement at Police Station, Either During Trial or on Direct Appeal.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court Abused it's discretion in it's denial of Appellant's Argument VI, the Court

stated "There is nothing in the record to support Defendant's assertion that a statement videotaped

or that the prosecution failed to provide such tape to the defense." (Decision pg. 11)

Appellant will now present Arguments 5 and 6:

32

$\delta$-39

(Emphasis supplied)

The State has no legal authority to support this Ground Four. "Cause" for "no timely objection" has been made in the "Procedural Standards " "Facts" sections as well as previously listed Grounds One, Two and Three, on "ineffective assistance of counsel, and trial structural error of a libertiary importance fully described in detail in this argument and fully embedded in the trial record as to supporting facts. There was a good basis for an Oral Motion for a Mistrial had counsel not been "sleeping at the wheel." Counsel failed to raise this issue on direct appeal even giving counsel an allowance in the possibility of facts developing at trial that were no. provided to counsel via Rule 16 discovery and Jencks material.[200] At this stage of the proceedings a Motion for Mistrial under the grounds of "no independent origin" should have been made, or, to minimize the damage, a Motion to Strike as described above, and a Cautionary Instruction instructing the jury to "disregard the in-court identification made by witness Dawn Smith regarding her statement that 'Mr. Bacon came into the store.'"[201]

This identification evidence was particularly and extraordinarily prejudicial to defendant because: the Star Liquors case was the States "foundation case" that they built the 7-11 case facts on, specifically the car related evidence, and, the lack of an accurate suspect identification at any of the crime scenes. Counsel should have raised this as a "plain error" in any event on the direct appeal as it goes in fact to "the heartland of information" needed to start the ball rolling in the State's case-in-chief proving the identity of the suspect. Ineffective Counsel for failure to object at trial and failure to raise a meritorious issue on direct appeal has already been addressed, and will be addressed in more detail at the end of this brief.

Argument For Ground Five:

The first issue of ineffective assistance of counsel concerns counsels deficient performance for failing to move to dismiss Count 15 indictment on its face that the determination of the Grand Jury that there were not sufficient facts to believe an offense was committed, and, that he was the perpetrator. Because of this fatal defect, the Grand Jury did not

_____

[200] Although a quick review of Jencks by a professionally competent attorney would have recognized this "no independent origin" evidence even before cross-examination.
[201] Explained Major supra (1995 WL236656)

have sufficient information to indict him on Count 15.[202]

The second issue of counsels deficient performance contains counsel's failure to argue the "prejudicial effect" of the amendment which is where the argument counsel failed to develop, actually has, but counsel "dropped the ball." Superior Court Crim. Rule 7(e) is not voided with complicity. It reads as follows:

The Court may permit an indictment or an information to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced. Id.

The record reflects that the proposed amendment,[203] did not mean to change the offense. Counsel's reliance

on Johnson,[204] a case cite that contains a detailed analysis of the prejudicial aspects of the amendment in that case,

hence the reason for the prohibition of amendments that go to substance or the elements of an offense. Counsel's lack

of understanding of this crucial issue presumably from his lack of research of that case is evident in his oral argument

before this Court. In this hearing counsel undermines defendant's position by his deficient performance.

I could see at first blush it appears that the difference between car keys and a car and U.S. currency is not as severe as the instrumentality of the assault because I think it's a cosmetic difference. Because what Robert Johnson v. State [supra] really touched upon was the Delaware Supreme Court and the Grand Jury's decision that were considered, the facts put before it, to determine whether or not an individual ought to stand trial. Exhibit F: Oral Argument June 21, 2001, p.4; See also Exhibit G Bacon v. State, No. 369, 2001, Appellants Opening Brief pg.7.

The Superior Court erred because, even if the amendment to the indictment may have been permitted under the Robbery statute and did not charge a different or more serious offense, the amendment violated the Defendants' right to indictment by grand jury under Article 1, Section 8 of the Delaware Constitution, Johnson [supra] Id.

These are not supporting arguments. They go to show counsel's incompetent lack of understanding of

Johnson.

The State offers Roberts,[205] the record of the Oral Argument reflects counsel at least had possession of this

---

[202] Accord: Williamson v. State, 669 A.2d 95 (Del. 1995); Mallory v. State, 462 A.2d 1088 (1983); See also, State v. Minnick, 168 A.2d 93, 96 (1968)(Each count of an indictment must normally be considered as an individual unit, as though it were a separate indictment standing by itself.)

[203] Although proposed pretrial, the granting of this amendment did not happen until post-trial.

[204] Johnson v. State, 711 A.2d 18 (1998)

[205] Roberts v. State, 1998 WL 231263 (Del.)

34

$\delta - 41$

case for a time. Exhibit F pg.5. As the State explained at the final argument, Roberts required was a change from a general property allegation of U.S. currency and valuables, which was probably considered in a gray area of non-descriptive property for one element of theft, an element in a Robbery I. The amendment from a general to a specific, being cigarettes in Roberts case is in complete opposition to this instant cases amendment, i.e., from a specific property description definite to that of U.S. non-definite currency and being general. Counsel dropped the ball on this. Roberts runs in the opposite direction of this instant case's Count 15 amendment relevant circumstances.

Similarly, counsel does not point out the prejudice as significant, in fact, that ball is in his court, and he drops the ball again, i.e.. defendant suffered significant prejudice because he was precluded from pursuing his original defense strategy[206] that of the 7-11 robbery, and he was arrested standing near the car on 17th Street, which according to discovery evidence was not the same car, because at the 17th Street car was deemed that of the Star Liquors robbery, while a different car was alleged to have been jacked at 7-11 from Conkey, these are the essential facts regarding the amendment issue. Essential facts are those that will clearly inform the defendant of the precise charge so he may prepare his defense. Green[207]

The preceding fact is one also to be considered in the joinder of indictments issue.

Defendant's original defense was substantially prejudiced by this amendment because he relied on the facts from discovery that were keys and car reported stolen from Conkey. And there were no charges alleging "US currency" being taken from Conkey. The potential for prejudice arises in the nexus between the lack of a charge regarding the "US currency" in the car on 17th Street, and, the fact that another car was alleged to have been used at the 7-11 robberies. By amending the indictment post-trial, or, even the move pre-trial amounted to a change in the State's theory of the case on this count,[208] and altered the evidence concerning the rest of the 7-11 counts as well, that now concerned the car on 17th Street as potential evidence.

---

[206]Accord, O.Neil v. State, 691 A.2d 50, 55 (Del.1997); State v. Deedon, 189 A.2d 660 (1963)(explains, but distinguishable from defendants case)
[207]State v. Green, 376 A.2d 424 (1977)
[208]Explained, Johnson v. United States, 613 A.2d 1381, 1387 (D.C.App.1982)

$\text{S} - 47$

Because theft of property is a necessary element in a Robbery I, another issue of potential prejudice arises, US currency from other sources could be used to prove this crime because no definition of the property was given other than US currency which given the context of a Robbery charge is pretty general, and to argue otherwise just does not follow a well reasoned logical path. When a person says "I was robbed." it is generally believed to be US currency.

Defendant was left with no way of defending against this general property element in a trial with seven other victims claiming they too were robbed of US currency.

This amendment, in this instant case went way above a cosmetic difference in terms of the context of defendants defense. The State made a big deal about the change found in the car and the loose bills and "change" found on defendant.[210] (That was actually the envelope of the change found in the car. This was a misrepresentation of material fact by the State as well.)

This testimony came immediately after the 7-11 evidence highlighting this change evidence. This is evidence of substantial potential prejudice to the defendant.

Counsel on direct appeal, "drops the ball" once again, and does not argue the potential prejudice in any way, shape, or form. The case law cited by the Delaware Supreme Court, Robinson,[211] undoubtably supplied by the State in their Response Answer, concerns a factual context totally alien to this instant case facts and specifically Robinson's holding was a very narrow holding considering the adding of an element of "knowledge" through an amendment when the action alleged in the indictment contained enough information[212] that compelled the inference that [Robinson] acted knowingly. Robinson has little bearing on the resolution of the present case.

Counsel was professionally deficient in his performance for failing to argue the potential prejudicial effects of this amendment. This is where the issue lies in Rule 7(e) amendments of this sort. It was particularly harmful in this

[209] See generally State v. Minnick, supra ("a crime"); Johnson v. State, supra (citing Harley v. State, 534 A.2d 255 (Del. 1957)(Deadly Weapon element "instrument" must be defined or described)
[210] 6-20-01 T.T. pgs.60,109,143
[211] Robinson v. State, 600 A.2d 356 (1991)
[212] "Specifically that Robinson emotionally abused the patient by ridiculing demeaning and making derogatory remarks directed toward the patient" One could not do that without acting knowingly.

A-43

instant case. Under the circumstances, i.e., counsel had several chances to get the issue right. A professionally competent counsel would have no doubt. Under these circumstances defendant was not afforded genuine effective legal representation. There is a reasonable degree of probability the outcome in the Oral Argument would have come out different, but for counsel's errors in this respect. Counsels errors in this proceeding were so serious that defendant was deprived of a fair hearing and the result unreliable, because it was undermined by counsel's errors. The material point of any amendment issue rests on its prejudicial effects. Hence, the street rules on amending the substance of an indictment. When amendment goes to form, the issue of inherent prejudice shifts to that of potential prejudice which must be shown by the defendant on a case-by-case basis totality of the circumstances.

This instant case should be reversed based on counsel's errors in his failure to move to dismiss Count 15 indictment for the reasons set forth at the beginning of Ground five, i.e., the first issue . . . .

Case reversal is also requested by on counsel's professional errors of deficient performance concerning his failure to argue the prejudicial effect at this court's oral argument.

Defendant's case should be reversed on ineffective assistance of counsel regarding his unprofessional errors in failing to raise this issue on direct appeal.

If the court does not find a separate reversible error regarding each of these three separate errors, then the combined effect of counsels errors should meet the standard.

A separate and more lenient review should be granted to the separate prejudicial effect caused by this amendment. It is not defendant's fault the State supplied him with professionally deficient counsel and for this court to cause the defendant to meet the higher Strickland—Fretwell standard of review, well it just is not fair, and defendant respectfully requests a de-nova review on the prejudice issue.

Argument For Ground Six

First and foremost the State fails to support their argument with any legal authority. The State misrepresents and also misstates the material facts that are the heartland of this Grounds issues.

Defendant incorporates Ground Three's factual and legal arguments regarding the prejudicial effects of the

$\delta - 44$

evidence concerning the three statuts. [...] defendants several assertions of ineffective assistance of counsel in their varying descriptions. The relevance as to the video tape concerning these statements are not from evidence at trial that is contradictive to the States assertion in their Response concerning the location of these statements and the timing of the Miranda warnings. The record reflects the following on June 20, 2001, T.T. pg.110.

    •   Q: After you arrived at the Wilmington Police Station, what occurred next?
    A: Mr. Bacon began making statements to where I felt it was necessary to read him his Miranda rights.
(Emphasis added to show that statements were made before Miranda warnings.)

    The central issue to Ground Six claim revolves around: The States failure to disclose the video tape made of defendants police station statement in a violation of [] Rule 16(a)(d) [] especially when, defendant made a discovery request. Trial Counsel was ineffective for failure to identify this issue and raise it on appeal.

    The State in their October 30, 2000, response[213] to Defendants Rule 16 Discovery Request, did indeed state "see enclosed. Your client gave a statement which was video taped and will be made available to you," as their response to defendants first request regarding any statements either written or oral made by defendant that are in possession and control of the State or their agents.

    The specific reason for this Discovery Rule is so defendant received all evidence of any written or oral statements he may have made, and the context surrounding them. Defense counsel was ineffective for his failure to develop facts on the record either pre-trial or at trial regarding the State's "failure to deliver," on their discovery response. Although the State claims "[t]his information, specifically the overwriting of the tape was communicated to defense counsel." There are two problems with this statement. (1) Specifically, on 10/30/00, there is not any reference to this "over-writing" of this video tape; and (2) if counsel received this information at a later date, (as the State does not tell us when this information of the over-writing was given to counsel), counsel did not relay it to the defendant at anytime. In fact, counsel misled the defendant up until the evidence of the three statements came into evidence that a video tape existed because he did not tell defendant that it did not exist. Defendant depended on this

---

[213]Exhibits B and C

$\delta - 45$

video taped evidence as his defense against the three statements on the police report via discovery. However, it is defendant's assertion that there is a relevant connection among the three statements and the video tape evidence, and what the video tape evidence would prove that these three statements were in fact are Miranda replies to earlier comments made by the original arresting officers at the scene, Officer Spillan, or, comments made by one of the two officers in the police car as defendant was being transported from 17th St. to the police station. The chief investigating officer is Detective Spillan and he knew about the Star Liquors carjacking and robbery, the second attempted robbery, the 7-11 robberies. In a collogue with the defendant at the 17th St. arrest site, Spillan acquired defendant's pedigree information.[214] Usually a suspect is informed after the cuffs are put on that he was arrested for whatever crimes he was charged with. This information being given to the defendant and specifically no evidence of a Miranda warning being given at this 1:56 a.m. to 2:00 a.m. encounter[215] of initial arrest. Defendant may have made response comments to this charge information in the police car during transport just as the State tells us in their Response. However, as officer Spence testified to defendant making statements to where he felt it was necessary to read Odefendant Miranda rights were not done in the police car, it was not done as soon as defendant arrived at the police station at about 2:18 a.m.,[216] it was finally allegedly done at about 2:30 a.m.. A full ½ hour after defendants arrest on 17th St.

Concerning his evidence, Counsel failed to develop facts surrounding the Wilmington Police Stations Standard Operational Procedure ("SOP") pertinent to suspect processing or booking the explicit usage of video tape footage to observe a newly arrested suspect, the exact location of camera lenses and microphones in relation to the defendants detention in booking and receiving area. Had counsel explored these facts, he may have discovered that a video tape was made of defendant from the exact time he entered this area of the police station and any and all statements, comments by police, Miranda warnings, etc., were caught on not just one video tape but more than one video tape. One tape in the actual processing area where new arrivals are held handcuffed on a bench and processed, fingerprints, mugshots, etc., and another video tape is made in each and every interview room when occupied.

[214]6-20-01 T.T. pgs.166,170,183-184 (pedigree information)
[215]6-20-01 T.T. pgs.102,114
[216]6-20-01 T.T. pgs.114

$\delta - 46$

This video tape or video tapes, is the "best evidence" under our Rules of Evidence that defendant refused to be interviewed by the Police concerning all these robberies.[217] This video tape was a crucial piece of defense evidence. It is Brady material for the reasons explained above and below. The lack of handwritten notes goes far to suggest the "unreliability" of the "time line" of defendants alleged response comments. With everything going on during an arrest, other suspects, details fade from the mind particularly where other information has to be remembered. See DRE 803(6)(8). The video tape evidence wholly contradicts Detective Spence's version that after he read the defendant his Miranda rights, "[he] just sat there and the defendant made these three statements [post-Miranda]." Then he is given Miranda rights by Spillan where it can actually be proven and the defendant tells the detective, "I'm not making a statement and I do not want to be interviewed." Defendant did not qualify his observance of the Miranda warnings to the Gulf Station offenses either, he said, "I'm not giving a statement." This contradicts officer Spence's account of his giving the defendant Miranda warnings and defendants "observance of his right clearly covered all the charges," because the State did not produce any statements concerning any of the other charged robberies at different locations either. Specifically and categorically, defendant, once he was aware of his right to remain silent so nothing he said could and would be used against him, refused to speak to police. This evidence is contained on a video tape which was still in existence on 10/30/00.

As the Delaware Supreme Court explains in Johnson:[218]

The State did not follow the procedure mandated by Rule 16(d). Not only did the State fail to mention that it was not providing complete discovery, but it compounded this error by representing that it [would]. [reference to FN 6] Id. at 922. The detective[s] [are] agent[s] of the State. The State had a duty to find out about the [video tape] before it responded to the discovery demand. Id. at 913 (FN6) (Emphasis added)

Defendant had a right to this evidence, and under the Johnson ruling we should believe this evidence did in fact exist on

---

[217]Curiously, the State attempts "to limit" this video tape to that of the dismissed Gulf Station offenses, when in fact, there is no evidence of statements made regarding, the carjacking, the robberies, and attempted robbery at Star Liquors, or 7-11 store. There is no clear and convincing evidence that this video tape was "limited" to only that of the Gulf Station offenses, or in fact, had anything to do with the Gulf Station offense.

[218]Johnson v. State, 550 A.2d 903 A.2d 903 at 911 (Del.1988)("when the State provides a casual reply to a specific defense demand [Rule 16], the State is to be held accountable for any inaccuracies in its general reply.")

$\Delta - 47$

the prejudice prong in Strickland)

Counsel's unprofessional errors cannot be excused for his failure to develop facts at trial surrounding the issues of this discovery violation being that of: the ambiguous response in the State's Rule 16 response; see Johnson 550 A.2d 903, 911, 913; the SOP's of Wilmington Police Station concerning the taping of suspects; the specific location and placement of video tape lens and microphones at Wilmington Police Station; the chain-of-custody of this video tape clearly State Police evidence and not that of Wilmington Police so the tape would have been removed to State Police evidence; the procedure of logging chain-of-custody at State Police evidence storage, and discovery of the defendant's evidence logbook entries.

This was a case of 24 felony charges against his client. Counsel "dropped the ball" over and over here. Defendant asserts that each one of the above errors is a reversible error in itself, and, in their compound form clearly call for a finding of ineffective assistance of counsel and the prejudice as well.

Defendant also requests a separate de nova standard of review based on the prejudicial aspects that they not be held to a plain error standard of review, because it is not defendant's fault he was supplied with ineffective counsel by the State.

Finally, none of the above unprofessional errors could be categorized as either tactical or strategical for the defense. Counsel acted outside the scope of professional reasonable representation and there is a reasonable probability that the outcome of these proceedings would have come out differently and counsel's errors were probably sufficient to undermine confidence in the outcome. Counsel's errors were so serious as to deprive the defendant a fair trial, a trial whose result is unreliable.

Lockhart v. Fretwell, supra explains that the Strickland outcome determination test for prejudice is not the exclusive standard for prejudice clarifying that the primary focus of the prejudice prong of that test under the 6th Amendment is the reliability of the result and the fairness of trial Id. at 368-370. More specifically the Court held the prejudice component of Strickland tests " . . . focuses on the question whether Counsels deficient performance renders the result of the trial unreliable or proceeding fundamentally unfair." Id. at 372

$\delta - 48$

## CONCLUSION

The legal presumption for "stolen property" where the possessor may be charged with the actual "theft" is two-hours. After that its "receiving stolen property" unless there is reliable evidence to prove otherwise. The States cases "linchpin" in this case is circumstantial evidence of the defendant's single thumb print on the cars interior rearview mirror. Nobody identified the defendant positively at any of the crime scenes, and certainly not in this car. The thumb print is circumstantial evidence that defendant touched the mirror.

The Star Liquors robbery was the day before earlier much earlier in the day, but two full hours have passed. The presumption that the defendant stole the car, was the theft or robber has passed without more evidence coming from the opposite direction presumptions are not available for us here. A time limit has run out. Nobody positively identifies the defendant either at the robberies, and specifically not driving the car.

The car, one like it for evidentiary purposes was identified and a tag number given that matched the tag number on the car. This is not direct evidence that the car was the car, it is circumstantial or an inference made from the tag number description that matches the tag that is on the car. We still do not have a driver. We have an inference from the robbery that the car was at the store, but the occupant or occupants have not been identified, and cannot be inferred from the inference.

The missing nexus. Defense Counsel should have guarded his client's case concerning any evidence the State tried to offer which would unlawfully "bridge" this nexus they needed to prove their case.

One very potent illegal piece of evidence cam in the State's Opening, caused by counsel's stipulation that changed the jury's attitude to "want to convict" the defendant, all they needed was "a hook" to establish even a "subtle link" for the jury to hang the case on. The State opened up with the defendants "status," "he owned a gun and that's a crime," the presumption of innocence is now out the window. The next very damaging evidence concerning this "linkage" or "nexus" came through the State's first witness who made an unreliable "in-court" identification, based primarily on detectives descriptions of defendant after he was arrested. That was the "little

44

$-49$

## Certificate of Service

I, _____, hereby certify that I have served a true

and correct cop(ies) of the attached: _____

_____ upon the following

parties/person (s):

TO: _____      TO: _____

_____            _____

_____            _____

_____

_____            _____

TO: _____ TO: _____

_____

_____

_____

_____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this _____ day of _____ 2007

$\delta$-50

# EXHIBITS

# TO

# OPENING BRIEF

$\int -5/$

EXHIBIT A

$\wedge$-52

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | C.A. No. _____ |
| V. | ). | |
| | ) | I.D. No. 0006017660 |
| DEVEARL BACON, | ) | |
| | ) | |
| DEFENDANT. | ) | |

State of Delaware      )
                                    ) ss:
County of New Castle )

AFFIDAVIT OF DEVEARL BACON CONCERNING HIS COUNSEL'S LACK OF
COMMUNICATION AND FAILURE TO CONSULT WITH HIM REGARDING A
STIPULATION ALLOWING THE STATE TO PRESENT HIS STATUS AS A
PERSON BY VIRTUE OF HIS PRIOR CONVICTIONS IS A PERSON PROHIBITED
FROM POSSESSING OR CONTROL OF A DEADLY WEAPON DURING HIS TRIAL
COMMENCING ON JUNE 19, 2001 AND ENDING ON JUNE 21, 2001  -

I, Devearl Bacon, being first duly sworn deposes and says that the foregoing statement is
true and correct observation of what did or did not occur from the time of my arrest until June 20,
2001, at any place whether in the Multi-Purpose Correctional Justice Facility, or, at a holding cell
area either in the prison or courthouse, or, in the Courtroom itself, located in New Castle County,
Delaware. I would clearly state under penalty of perjury of the laws of the State of Delaware, I
swear the following is true and correct.

1.    My name is Devearl Bacon. I was arrested on June 23, 2000, and charged with

several crimes, among those are Possession of a Deadly Weapon by Person

Prohibited (PDWPP). 11 Del.C. §222

2.    My appointed Counsel was Edmund Hillis, Jr. who was my trial counsel.

3.    Mr. Hillis only met with me briefly (about 15 minutes) at the prison before trial on

one occasion.

- 4.    During this brief visit, Mr. Hillis never once explained, or said anything whatsoever

1

$\Delta$ - 53

concerning a stipulation of any type, particularly not ever mentioning stipulating to three PDWPP.

5.   We did discuss that I would not take the witness stand because of my prior convictions, and this would be put in front of the jury. Mr. Hillis told me that if I didn't take the stand then none of my priors would come into the trial, and this would be better. He did not mention anything at all about the three PDWPP's.

6.   During jury selection, prior to or after, Mr. Hillis never said anything about a stipulation regarding the PDWPP charges.

7.   Up until the "stipulation" was offered in the trial, I was never "informed" about it–in fact at that time I didn't even understand what a stipulation was. Nobody explained it to me–I had no idea what they were talking about when it was brought up in trial.

Affiant
Deveari Bacon
Delaware Correction Center
1181 Paddock Road
Smyrna, DE 19977

SWORN TO AND SUBSCRIBED before me this  6th  day of  January  2005.

My Commission Expires:   June 17, 2006

Notary Public:

$-54

EXHIBIT B

$\int -55$

Supplemental Report - #1

## Original Victim Information

## Original Suspect/Defendant Information

| Sequence | Type | FBI Number | Name | | | | Nick Name | |
|---|---|---|---|---|---|---|---|---|
| 001 | Unknown | | | | | | | |
| Sex | Race | | Ethnic Origin | Age | D.O.B. | Height | Weight | Skin Tone | Eye Color |
| Male | Black | | Non-Hispanic | 18 to 20 | | 5' 00" to 5' 03" | 125 | Dark Brown | Brown |
| Hair Color | | Hair Length | Hair Style | Facial Hair | | Voice Speech | Teeth | Build | Glasses |
| | | | | | | Average | | Thin | |
| Address | | | | Home Telephone | Employer/School | | | | Work Telephone |
| Arrest Number | Suspect's Clothing Description | | | | | | | | |

## Original Crime and Associated Information

| Crime Number | Crime Seq | Statute | Crime Description | | | |
|---|---|---|---|---|---|---|
| 001 | 001 | DE:11:0832:00A2:F:S | Robbery First Degree Displays What Appears to be a Deadly Weapon | | | |
| Location Type | | | Status | | Involvement | General Offense |
| Liquor Store | | | Pending-Active | | ☐ Alcohol ☐ Drugs ☐ Computer | |
| Suspected Hate/Bias | Crime Code | | | | | |
| ☐ Yes - N/A | 12213G - Robbery/Gun Miscellaneous | | | | | |
| ☐ Force Involved | | | | | | |
| ☐ Yes ☐ No | | | | | | |

## Investigative Narrative

Original Complaint Handled By DET. J. Spillen #4649 on Friday 06/3300 at approximately 0200hrs., arrived with SGT. W. Thomas Ford #2097 to the area of East 17th. Street and Spruce Street in Wilmington, in order to assist CPL/2 S. Mulvena #4691 and S/O J. Lingafelt with the prehension of a robbery suspect. However, I arrived to the scene after the suspect had been taken into custody. The individual was identified as subject Bacon, Devearl L. SMN30 112769. I then assisted OFC. V. Disabatinoswith transporting the robbery suspect to The Wilmington Police apartment.

We arrived at The Wilmington Police Department at approximately 0218hrs. and the suspect was shou to an office within the Criminal Investigations Unit.

I later read the      suspect his miranda rights at approximately 0220hrs. at which time he stated that he understood his rights.

While located within the office of the Criminal Investigations Unit with the suspect, I recovered that he had thirteen one dollar bills in    is front left pocket along with a brown paper bag containing an unknown amount of change.

Located within his front right pocket was a small flashlight.  I did not question the suspect concerning the investigation however, he made several voluntary statements in my presence.

The suspect had stated that he was recently released from the Plummer Center.

H     stated that he had not slept in three days. He made a statement to the officer that he was going to probably do twenty-five years. He had   also stated that he was arrested in the past for a robbery   where a gun was fired in a convenience store. He made a statement to the effect that he did not do the prior robbery and that he had taken the fall for it. No further

$\sum$ -

$\lambda - 56$

Investigative Narrative - Continued

statements were            obtained.

I remained with the suspect until DEP. J. Spillan #4649 arrived at which time the suspect was turned over to his custody.

28

8-57

EXHIBIT C

A-58



M. JANE BRADY
ATTORNEY GENERAL

STATE OF DELAWARE
DEPARTMENT OF JUSTICE

NEW CASTLE COUNTY
Carvel State Building
820 N. French Street
Wilmington, DE 19801
Criminal Division (302) 577-8500
Fax: (302) 577-2496
Civil Division (302) 577-8400
Fax: (302) 577-6630

KENT COUNTY
Sykes Building
45 The Green
Dover, DE 19901
Criminal Division (302) 739-4211
Fax: (302) 739-6727
Civil Division (302) 739-7641
Fax: (302) 739-7652

SUSSEX COUNTY
114 E. Market Street
Georgetown, DE 19947
(302) 856-5352
Fax: (302) 856-5369

PLEASE REPLY TO:

October 30, 2000

New Castle County

Raymond Otlowski
Assistant Public Defender
Office of the Public Defender
820 N. French Street
Wilmington, Delaware 19801

Re:    State v. Devearl Bacon
       I.D. No. 0006017660

Dear Ray:

As you know, I have assumed responsibility for Jim Freebery's case load due to his departure from this office. I have reviewed your October 4, 2000 request for information and offer you the following response:

1.    See enclosed. Your client gave a statement which was videotaped and will be made available to you.

2.    See response to #1 above.

3.    Expert reports will be provided to you when received by the State.

4.    None known.

5.    Please refer to indictment.

6.    Defendant was arrested on June 23, 2000 by Delaware State Police and the Wilmington Police Department.

7.    The Court file is the most accurate source of this information.

$\Delta$-59

2

8. None known.

9. Several officers from several agencies were involved in this investigation. Please contact me if you wish to discuss this further.

10. June 23, 2000, at the Wilmington Police Station.

11. Jencks statements will be provided as required by law.

12. None known.

13. Please contact me to schedule a mutually convenient time for such review.

14. Enclosed.

15. This response constitutes the State's response based on information presently known and/or in my possession. This response will be supplemented should additional information be acquired.

Please be advised that this response, together with any acknowledgments of information to be supplied when received, constitute the State's entire response to its discovery obligations under Rule 16 and/or any written request filed by the defendant. If, prior to or during trial additional evidence or material is discovered which is subject to discovery, it shall be disclosed immediately. Further discovery - except to the extent referred to herein - is objected to as being outside the scope of the State's obligation under Rule 16. Should you wish to pursue the matter further, please file a motion to compel further response as provided by Rule 16.

State's Reciprocal Discovery Request:

Pursuant to Superior Court Criminal Rule 16(b), please provide me with the following:

1. An opportunity to inspect and copy or photograph any books, papers, documents, photographs, tangible objects, or copies or portions thereof, which are within the possession, custody or control of the defendant. which the defendant intends to introduce as evidence in chief at the trial.

2. An opportunity to inspect and copy or photograph any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with the particular case, or copies thereof within the possession or control of the defendant, which the defendant intends to introduce as evidence in chief at trial or which were prepared by a witness whom the defendant intends to call at trial when the results or reports relate to that witness' testimony.

$\int - 60$

3.  Disclosure of any evidence the defendant may present at
    trial under Rules 702, 703 or 705 of the Delaware Uniform Rules of Evidence,
    including the identity of the witness and the substance of the opinions to be
    expressed.

Please be advised that your failure to respond will be presumed to mean that you have no
materials discoverable under Rule 16(b) and that the State will rely upon that presumption.

Sincerely yours,

Sean Lugg
Deputy Attorney General

$\delta - 6/$

EXHIBIT D

$\int - 62$

*Plummer*
*Center*
*References*

The News Journal, Wilmington
www.delawareonline.com

## POLICE & FIRE

### New Castle County

WORK RELEASE ESCAPEE FOUND:
The Department of Correction announced
Friday that a woman on work release who
escaped the Plummer Community Correc-
tions Center in **Wilmington** has been
caught. Officials said Michelle Y. Brown,
who did not return to the center Tuesday
after being allowed to leave to look for a
job, was arrested Thursday. She was
charged with escape after conviction and
drug possession and was committed to
Baylor Women's Correctional Institution.

The News Journal, Wilmington
www.delawareonline.com

The News Journal, Wilmington
www.delawareonline.com

## CRIME STOPPERS

Anyone with information about a
Delaware crime can make an
anonymous call to Crime Stop-
pers. In Delaware, call (800) TIP-
3333 (847-3333) or from a cell
phone, call *TIPS. From other
states, call (302) 739-5927.

## POLICE & FIRE

### Wilmington

ESCAPEE SOUGHT: A man sentenced
to six months of work release for carrying
a weapon is missing from the Plummer
Community Corrections Center. Deshawn
Drumgo, 23, of Wilmington, failed to re-
turn to the center Thursday after looking
for a job, according to Beth Welch,
spokeswoman for the Department of Cor-
rection. Anyone with information should
call (800) 542-9524 or the nearest police
department, Welch said.

## POLICE & FIRE

### New Castle County

WALKAWAY SOUGHT: The Department
of Correction announced that a work re-
lease offender escaped from the Plummer
Community Corrections Center in Wilm-
ington. Michelle Y. Brown, 35, was last
seen Tuesday. Brown is 5 feet 9 inches
tall, 265 pounds with a scar on her upper
lip. She also goes by the names Michele
Johnson, Michelle Waters and Karen
Miller. Anyone with information is asked to
call (800) 542-9524 or local police.

$\delta$-63  *Exhibit D (1 page)*

EXHIBIT E

$-64

DRAFT

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE
### IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,           )
                             )          C.A. No.      0006017660 .
        V.                   )
                             )          C.A. IN Nos. 00070347 et seq.
DEVEARL BACON,               )          0007161666 et seq.
                             )
        DEFENDANT.           )

### DEFENDANT'S MOTION IN LIMINE OR FOR PRE-TRIAL ORDER
### TO EXCLUDE SPECIFIC EVIDENCE OR TESTIMONY
### PURSUANT TO DRE 404(a) AND 608(b) PROHIBITIONS

Defendant moves this Court for an order instructing the Deputy State Attorney to absolutely

refrain from making any direct or indirect reference whatsoever in person, by counsel, or through

witness, to the specified evidence concerning defendant's release from the Plummer Center;

reference to defendant being awake for 3 days; reference to defendant's "attitude" or "calmness,"

concern in his character, and reference to "the 25 years" on the following grounds:

1. Case is now set for trial.

2. According to the indictments, the trial will involve a determination of these basic issues:

the elements of Robbery 1st and other indictment elements [set forth issues]

3. The defendant is informed, believes and alleges that at trial the State will attempt to

introduce evidence, make reference to, or otherwise leave the jury with the impression that defendant

is a convicted criminal who just got released from prison, thus an "experienced" seasoned

professional, "calm" with "an attitude" who calculated his risks "at 25 years," from prior criminal

experience.

Exhibit E (2 pages)

$\int -65$

DRAFT

4. It is immaterial and unnecessary to the disposal of this case and contrary to the rules of evidence 404(a)(1) and (b) and 608(b) recognized by law in this state to permit such evidence in reference and further, the admission of such evidence would be highly prejudicial to the defendant in the minds of the jury in that they would be free to infer a general criminal disposition of defendant as to a propensity to commit crime.

5. An ordinary objection during the course of trial, even if sustained with proper instructions to the jury, will not remove such effect in view of actually drawing the jury's attention to this evidence of defendant's prior criminal status as being a newly "released" prisoner, and "his experience" in committing crimes, and their penalities.

WHEREFORE, Defendant prays that this Honorable Court exercises its discretion and makes an Order absolutely prohibiting said offer or reference thereto.

Respectfully submitted,

[counsel of record]

Dated:

Exhibit E (2 pages)

2

$\triangle - 66$

EXHIBIT F

$\delta - 67$

IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE,                    No. 149, 2001

v.

DEVEARL BACON,

        Defendant.

BEFORE:   HONORABLE SUSAN C. DEL PESCO, J.

APPEARANCES:

        SEAN LUGG, ESQ.
        Deputy Attorneys General
            for the State

        EDMUND HILLIS, ESQ.
            for the Defendant

        - - - - - - - - - - - -
            ORAL ARGUMENT
            JUNE 21, 2001
        - - - - - - - - - - - -

        MICHELE L. ROLFE
    SUPERIOR COURT OFFICIAL REPORTERS
1020 King Street - Wilmington, Delaware 19801
        (302) 577-2400 Ext. 415

---

1 defense objects to the amendment of the indictment.
2 And if you'll bear with me -- which count is that on
3 the new numbering system?
4           THE COURT: Count 15, on page 15.
5           MR. HILLIS: Yes, Your Honor, thank you.
6 That's the count that alleges a robbery with Roshell
7 Conkey as the alleged victim.
8           The defense's position is that Johnson v.
9 State, which is Robert Johnson v. State, a 1998
10 decision of the Delaware Supreme Court, which is 711
11 Atlantic 2d., page 18. It stands for the proposition
12 that the Delaware Constitution guarantees the
13 defendant's right to have indictments returned by the
14 Grand Jury, and whenever there is a substantive change
15 in an indictment that can only be accomplished by way
16 of the Grand Jury. And the Supreme Court under its
17 rules does not have the legal authority to rule
18 because that violates the provision that I have just
19 cited.
20           And it seems to me that this is more than an
21 administrative change. And in Johnson, in which there
22 was an assault charged, and the alleged assault in the
23 count in the indictment was originally listed as a

---

                                    2

                    JUNE 21, 2001
                    Courtroom No. 201
                    10:00 a.m.

PRESENT:

        As noted.

        - - - - -

        THE COURT: Okay. I have received e-mails
from counsel, and we're making some of the
adjustments. The State has indicated it intends to
nolle pros Count V of the indictment, in addition to
the ones that were previously nolle prossed. I'm
asking Mr. Lugg to include all the paperwork that's
necessary so that it's in order.
        There was an issue with regards to amending
one count of the indictment, which one was that?
        MR. LUGG: It's Count 15.
        THE COURT: Fifteen?
        MR. LUGG: Yes, Your Honor, on page 15.
        THE COURT: The issue was amending the count
to change the words "car keys and" to "U.S.
currency."
        Mr. Hillis, you had previously cited a case,
and I'll let you make your record.

---

1 chair, and the evidence that came in during the trial
2 was really that a table has been used, and the Judge
3 of the Supreme Court permitted the State to amend the
4 indictment to allege a chair or a table.
5           The Delaware Supreme Court reversed that
6 conviction because -- I'm sorry, the State said the
7 instrumentality was important, and the Court couldn't
8 change that because it would violate the Grand Jury's
9 decision.
10           I could see that at first blush it appears
11 that the difference between car keys and a car and US
12 currency is not as severe as the instrumentality of
13 the assault because I think it's a cosmetic
14 difference. Because what Robert Johnson v. State
15 really touched upon was the Delaware Supreme Court and
16 the Grand Jury's decision that was considered, the
17 facts put before it, to determine whether or not an
18 individual ought to stand trial.
19           In this particular case, there was, in fact,
20 a carjacking. There is evidence that the Grand Jury
21 heard that there was not three separate incidents
22 covering money of multiple-type sum.

∂-68

decided. We know they decided that Roshell Conley was
the victim of a robbery, or at least there was
sufficient evidence before them to return an
indictment alleging that she was a victim of a robbery
based on car keys and a car. We don't know how they
would have ruled if there was U. S. Currency taken
from Rosnell Conley, whether or not there was
sufficient evidence for that Grand Jury to have
determined that United States currency was taken from
her with force, which it was, and that is what the
robbery statute requires.

Given that, we think the distinction was more
than a clear account, and we object to Robert Johnson
versus State. And we would preclude the motion to
amend that count of the indictment.

THE COURT: Thank you, Mr. Lugg.

MR. HILLIS: Your Honor, I will be just a
moment. In fairness to Mr. Lugg, he provided me with
a case he relied upon, and I didn't give it back to
him.

MR. LUGG: Your Honor, I previously cited on
the record, and I apologize, I do not have a copy with
me, I thought I did. What we're dealing with is

That property was described in that
indictment as being car keys, and the State merely
asks to be amended in the count to U. S. Currency

The case, which was a 1997 Supreme Court
case, I believe it was Rogers, and I apologize for a
having the case name, dealt specifically with that
issue. And I believe there is a relative distinction
-- pardon me -- made between this case and Roberts
if that's the name of the case -- and the Johnson case
based upon what I laid out to this Court.

In that case, there was a request made by the
State to change the allegation of property, which was
cigarettes, rather than United States currency or
rather than valuables.

In this case, it is the request of the State
to make the distinction of the property changed from
car keys and the car to U. S. Currency. I believe the
distinction between the Roberts case and the Johnson
case will be sufficient to permit the State to amend
the indictment pursuant to Rule 7(e).

Finally, Your Honor, I believe, for the
record, for what it's worth, that Rule 7(e) may permit
an indictment or information to be amended at any time

Mr. Hillis will correct the State's request for
amendment of an indictment, and I would submit to the
Court that Rule 7(e) applies clearly. And I would
argue that it permits the amendment of the indictment
of this case, and the distinction to be made from
Johnson is somewhat clear in this case. And I think
the best way to view it is, as Mr. Hillis stated,
Johnson deals with the instrumentality of the offense
in the context of an assault case.

In that type of case there must be an
allegation of either serious physical injury or injury
caused by a dangerous instrument, a deadly weapon.

In that case, it was actually the
instrumentality of the crime, which was sought to be
modified. Rather, in this case there is no request
to charge any instrumentality of the crime nor
elements of the crime, but, rather, simply a
distinction of property alleged to have been taken.

In this case, a robbery case, there must be
an allegation that property was attempted to have been
taken by means of force or some type of coercion. And
in robbery first, in this case, it is alleged that a

before the verdict or another finding if no additional
evidence or different offer is charged, and if the
substantial rights of the defendant are not
prejudiced.

In this case, additional or no different
offer is charged, and I would submit there is no
substantial rights of the defendant prejudiced. It is
merely offered as to what the property will be rather
than what the instrumentality of the offer was.

Your Honor, I would ask the Court to permit
the State to amend the indictment as to Count 13 to
include the term "United States currency" as opposed
to "car keys and a car."

MR. HILLIS: Your Honor, brief rebuttal, if I
may. I would just like to point out to the Court
there was again about the Roberts decision that is
significant. One is that it predates Johnson versus
State. It is a 1997 decision. Johnson versus State
is from 1999. It is also different in that it is a
Supreme Court unpublished opinion as opposed to
Roberts is a full opinion of the Court.

And the final thing I would like to point out

9

1  own rule, the substantial right of opinion is very
2  important to put in context as to what Johnson stands
3  for. There is a substantial right, and Justice
4  Holland, gave a detailed history of that right from
5  England to colonial times, and Delaware law on
6  constitutions points out that it is a time-honored and
7  important right under Delaware law. Thank you.
8       THE COURT: Thank you, very much. I have
9  reviewed the cases that you have supplied me, and I
10 agree for an amendment that implicates a specific
11 element, which is an element of offer, would control.
12 Here we have a different situation because in
13 order for there to be a robbery there simply needs to
14 be property, and the character of the property is of
15 no significance.
16      Whether it's United States Currency or car
17 keys or any other form of property it doesn't change
18 the nature of the offense and, therefore, under these
19 circumstances, I will grant the State's motion and
20 amend the indictment.
21      MR. HILLIS: Thank you, Your Honor.
22      THE COURT: Now, is there anything else we
23 need to take up before the jury comes in?

1  address the issues with respect to reach a stipulati
2  or agreement to their qualifications, it will cut
3  their testimony in half.
4       THE COURT: I see, I see. Okay. Well, the
5  Mr. Hillis --
6       MR. HILLIS: Let me talk with my client.
7       THE COURT: Yes.
8       MR. HILLIS: Your Honor, I'm prepared based
9  on the curriculum vitae -- and Mr. Lugg shared with
10 this morning my personal experience from the
11 Delaware's fingerprint analysis -- I'm not going to
12 raise any challenge to their qualifications, and I'm
13 not going to make any motion of any kind, so I think
14 if the State's ready, we can proceed.
15      MR. LUGG: Very well.
16      MR. HILLIS: I appreciate Mr. Lugg's courtes
17 to try to offer that in advance.
18      THE COURT: All right, then.
19      (End of argument.)
20
21
22
23

10

1       MR. LUGG: Your Honor, we mentioned that we
2  would afford Mr. Hillis time to review, and we're
3  going to get into that next, in the hopes of
4  streamlining the process for the jury.
5       THE COURT: How much time would you like?
6       MR. LUGG: I think we can do it in 10
7  minutes. I have both experts here, and any questions
8  we can deal with can simply go to the experts.
9       THE COURT: My preference would be to do
10 this: to get started on somebody, only because I hate
11 to have the jury sitting. If that's not the sequence
12 in which you need to present the evidence, then I'll
13 take a recess. Is there any way we can go ahead and
14 that break between the witnesses?
15      MR. LUGG: I think Mr. Hillis may have a few
16 questions for him that might take 10 minutes, so can
17 we take a brief break to look at this stuff very
18 quickly or as quickly as possible?
19      THE COURT: I really was wondering if one of
20 the experts didn't require the interruption. Do they
21 both require the interruption?
22      MR. LUGG: Your Honor, frankly, to afford

1  STATE OF DELAWARE:
2
3  NEW CASTLE COUNTY:
4
5
6       I, Michele L. Rolfe, Official Court Reporter
   of the Superior Court, State of Delaware, do hereby
7  certify that the foregoing is an accurate transcript
   of the proceedings had, as reported by me in the
8  Superior Court of the State of Delaware, and
   supervised by Kathleen D. Feldman, Chief Court
9  Reporter, RPR, in and for New Castle County, in the
   case therein stated, as the same remains of record in
10 the Office of the Prothonotary at Wilmington,
   Delaware, and that I am neither counsel nor kin to any
11 party or participant in said action nor interested in
   the outcome thereof.
12      WITNESS my hand this _____ day of
   _____, 2001.
13
14      _____
        MICHELE L. ROLFE
15      SUPERIOR COURT REPORTER
16
17
18
19
20
21

$\delta$-70

25

1    A. Exactly.
2    Q. And --
3    A. On that side, where the pictures and things
4    are, that's where the customers are.
5    Q. Okay. Now, taking this back to the 21st of
6    June, you say you were working that night, correct?
7    A. Yes.
8    Q. Did something occur in this store as you were
9    working?
10   A. Yes.
11   Q. Can you tell us what happened?
12   A. Exactly what happened?
13   Q. Please.
14   A. I was waiting on my customers -- I was
15   waiting on my customers when Mr. Bacon came into the
16   store.
17   Q. Okay.
18   A. When he came to the store he had a gun. And
19   he had a bandanna over his face, and he told everybody
20   to get on the floor. And we all looked at him as if
21   he was crazy.
22   Q. Why is that?
23   A. Because I didn't take him serious.

27

1    Q. Okay.
2    A. Because all I seen was this gun pointed at me
3    and he had it pointed at my head at that time.
4    Q. Where was he standing at this point in time?
5    A. He was standing right at the window.
6    Q. At the window?
7    A. Unh-huh.
8    Q. And you were down on the ground?
9    A. I was down on the ground.
10   Q. What did you do next?
11   A. So I told him I could not give him the table.
12   I couldn't lift it or I couldn't get it, so I threw
13   the money at his through the window. I tried to get
14   the drawer out. I told him I couldn't get the drawer
15   out, so he said I want the money. So what I did was I
16   took the money -- there was moneys in sections of the
17   drawer, it was like an end table that goes to the
18   coffee table and it had sections in it -- so I took
19   the cash out in each one of these sections and I threw
20   it at him.
21   Q. Okay.
22   A. And by that time some money had fell on the
23   floor and I had picked the money up. It was like a

26

1    Q. Why didn't you take him serious?
2    A. I don't know. It didn't hit me until he
3    stuck the gun up in the air. Because his exact words
4    was, Everybody get on the floor.
5    Q. All right?
6    A. And we wouldn't get on the floor, so he said,
7    Do you think I'm playing? Do you think I'm playing?
8    And he repeated himself twice.
9         And then he took the gun and shot it up in
10   the air and that's when the light fell.
11   Q. He discharged the gun into the air?
12   A. That's when everybody got on the floor.
13   Q. What happened after he discharged the gun
14   into the air?
15   A. That's when we all got on the floor.
16   Q. What happened next?
17   A. He came over to the window and when he came
18   over to the window, he told me he wanted the money.
19   Q. Okay.
20   A. And there was no cash register in the store.
21   It was like was an end table. So what I was trying to
22   do was give him the whole table just so he could take
23   all the money.

28

1    couple of one dollar bills on the floor. I asked him
2    did he want them too but I was just scared. I picked
3    up the one-dollar bills and I threw them at him.
4         He had like a windbreaker on with a sports
5    pocket inside the jacket and he was stuffing the money
6    in there.
7    Q. And if I could talk to you a second about
8    the windbreaker, what do you recall about this
9    windbreaker looking like?
10   A. It was a blue windbreaker he had a hood over
11   his head.
12   Q. Okay.
13   A. And a bandana across his face.
14   Q. And do you recall anything else about his
15   description --
16   A. He had on shorts.
17   Q. Okay.
18   A. And he had on, I'd say, like work shoes.
19   Like the insulated boots or something.
20   Q. Okay. Was there anybody else in the store
21   with you that you knew that evening?
22   A. Yes.
23   Q. Who was with you?

J-71

89

1  who is the evidence person and advanced technician for
2  the Delaware State Police.
3      Q. Did you make any observations at the entry of
4  Star Liquor Store as it related to the crime?
5      A. I know there was at least two gunshots from
6  the witnesses statements. And when we were
7  interviewing them, we went in to take a look to find
8  any evidence from those gunshots.
9      Q. Is that how you came across this slug?
10     A. Yes, sir.
11     Q. Okay. After you completed your interviewing
12  and you found the location of this slug, what did you
13  then do?
14     A. I give the information in reference to all
15  the interviews and all my investigations to Detective
16  Spillan for his investigation.
17     Q. Was he the chief investigating officer?
18     A. Yes, sir.
19     Q. Did that conclude your investigation of this
20  case?
21     A. Yes.
22        MR. LUGG: No further questions.
23        THE COURT: Cross-examination

91

1      Q. Where would you have gotten the information
2  to complete that section of your report?
3      A. To be honest with you, I'm not sure I filled
4  that section out.
5      Q. Okay.
6      A. What happens is, with the master report,
7  whoever is in charge basically the information carries
8  over.
9      Q. The computer fills that part in?
10     A. Yes, sir.
11     Q. So based on that, whoever prepared your
12  report, be it someone else or another police officer,
13  they could have a description that matches that; is
14  that correct?
15     A. Probably someone who was there that evening,
16  yes.
17     Q. Okay. And that description is it, is it not,
18  that it was a male, black and nonHispanic, 18 to 20
19  years old, 5'0 to 5'2 and is 105 pounds, dark brown
20  skin tone; is that accurate?
21     A. Yes, sir that's what it states.
22     Q. The only other thing I want to ask you,
23  trooper, is do you recall the statement that Mr. Scott

90

1              CROSS-EXAMINATION
2  BY MR. HILLIS:
3      Q. Corporal, you were on patrol when you got
4  the call?
5      A. I was actually on my way home, sir. Just
6  completing my shift.
7      Q. And when you received the call, was there a
8  description of a suspect broadcasted; if you recall?
9      A. To be honest with you, I can't remember the
10  call at this time.
11     Q. You have during your direct testimony,
12  haven't you, referred to a document you have in front
13  of you?
14     A. Yes, sir.
15     Q. And that would be a copy of a supplemental
16  report that you prepared?
17     A. Yes, sir.
18     Q. I'm going to ask you if you will refer to the
19  first page of that report. And I'll call your
20  attention to a section of the original suspect
21  defendant information and ask you to take a look at
22  that for a moment?
23     A. Okay.

92

1  gave, that the fact of the matter was that he told you
2  he didn't get a very good description because he had
3  his face on the ground and he was scared; isn't that
4  true?
5      A. That's what he said.
6         MR. HILLIS: Thank you, no further questions.
7         THE COURT: Mr. Lugg.
8         MR. LUGG: Just a few questions, thank you.
9  BY MR. LUGG:
10     Q. Officer, you mentioned some of the
11  information you referred to in the police report,
12  correct?
13     A. Correct.
14     Q. And you indicated that you don't control all
15  of this information; is that correct?
16     A. Correct.
17     Q. Why is that?
18     A. On the original, whoever puts in the original
19  information is just going to carry over from report to
20  report.
21     Q. Okay. Is this a computer type system?
22     A. Yes, sir.
23     Q. And is much of the information controlled by

Σ-72

109

1  person -- if you could assist us in opening the bag to
2  determine what's in there, that would be fine?
3      A. If, I could.
4      Q. Please.
5      A. Yes, these are the items.
6      Q. And if you could describe for us what the
7  items are within that envelope that you removed from
8  the defendant, Mr. Bacon?
9      A. There was a brown paper bag that had the
10  contents of change.
11      Q. Okay.
12      A. There was a small plastic flashlight and 13,
13  one dollar bills were on his person.
14      Q. Did you total the money?
15      A. The change, I did not.
16      Q. What about the ones?
17      A. I counted them.
18      MR. LUGG: May I approach, Your Honor. At
19  this point I would like State's Identification I to be
20  moved in as State's Exhibit 9.
21      MR. HILLIS: That's without objection.
22      THE CLERK: Marked as State's Exhibit 9.
23      (State's Exhibit 9 was marked for

110

1  identification.)
2  BY MR. LUGG:
3      Q. After you arrived at the Wilmington Police
4  Station, what occurred next?
5      A. Mr. Bacon began making statements to were I
6  felt it was necessary to read him his Miranda rights.
7      Q. Did you in fact issue a Miranda warning to
8  him?
9      A. Yes, I did.
10      Q. And did he continue to make statements to
11  you?
12      A. Yes. After I asked him if he understood his
13  rights.
14      Q. What exactly did he tell you?
15      A. I didn't question him concerning the
16  investigation. I just merely read him his rights and
17  sat there while he made several statements. One of
18  which he made a statement that he was released from
19  the Plummer Center. A second statement, that he made
20  was that he hadn't slept in three days. And the third
21  statement was to the effect that he would brief that
22  do 25 years.
23      Q. And if you could explain or describe for us

111

1      Mr. Bacon's demeanor as you observed him on the early
2  morning hours of the 23rd?
3      A. He was cooperative. he was calm. It was
4  almost as if it was an attitude, not a real big deal
5  to be in this position.
6      Q. Did he raise his voice or was he excitable at
7  all with you?
8      A. No, sir.
9      Q. And did he resist any of the demands that you
10  made upon him as far as transporting him to the
11  Wilmington Police Station?
12      A. No, sir.
13      Q. While you were at the police station, was
14  anyone else with you while he was making these
15  statements?
16      A. No, sir.
17      Q. After the statements were made, was the case
18  transferred to another officer?
19      A. I actually remained with Mr. Bacon until
20  Detective Spillan arrived.
21      Q. And did Detective Spillan arrive at the
22  Wilmington Police Station?
23      A. Yes, sir, he did.

112

1      Q. And at that point was he transferred to
2  Detective Spillan?
3      A. Yes, sir.
4      Q. Why is that?
5      A. He was the investigating officer.
6      MR. LUGG: No further questions of this
7  witness, Your Honor.
8      MR. HILLIS: Your Honor may we approach?
9      THE COURT: Yes.
10      (A side bar was recorded.)
11      MR. HILLIS: Based on my conversation with
12  Mr. Lugg prior to this witness. I thought he was not
13  going to mention the statement about him being
14  released from the Plummer Center. I think that was
15  the impression he had too and I frankly didn't
16  object because I don't want to highlight it, but I
17  think we're in a position that's brief that
18  inappropriate. I didn't think it was coming.
19      THE COURT: Well, you have to make a motion.
20      MR. HILLIS: Okay.
21      THE COURT: Let me just say that. yeah, I was
22  a little surprised to hear that to. On the other
23  hand, we all work in law enforcement, and we know what

Δ-73

1 it is, but I'm not sure everybody else in the world
2 does.
3    MR. HILLIS: That's true. That's one of the
4 reasons why I didn't object. To set the record
5 straight, I will make an application for a mistrial.
6 If the court is not going to give me the mistrial, I
7 don't want a hearing on this, judge.
8    THE COURT: Okay. The other point I wanted
9 to make is that they are going to know he's a person
10 prohibited because he stipulated to that.
11    MR. HILLIS: That's absolutely true, Your
12 Honor.
13    THE COURT: And so given that fact, if
14 somebody should know what the Plummer Center is. I
15 don't find it prejudicial in context with a person
16 prohibited.
17    Therefore, I'm going to deny your application
18 for a mistrial.
19    MR. HILLIS: Okay. Thank you.
20    (Side bar ended.)
21            CROSS-EXAMINATION
22    MR. HILLIS: May I cross, Your Honor?
23    THE COURT: Yes, you may.

1    MR. HILLIS: Thank you.
2 BY MR. HILLIS:
3    Q. Corporal, I just have a few questions for
4 you. What time did you arrive if you recall to the
5 Wilmington Police Station?
5    A. Based on my report, I put in an approximate
7 time of 18 minutes after 2:00 in the morning.
8    Q. Okay. And do you recall how long that was
9 after you actually arrived at the scene of the arrest?
10    A. Approximately, I arrived at the scene at
11 approximately 2:00 in the morning.
12    Q. Okay. And do you recall when it was that you
13 read Mr. Bacon his Miranda rights?
14    A. At approximately 2:30 in the morning.
15    Q. Now, just -- to clear things up, those
16 Miranda rights we're talking about are the rights he
17 has pursuant to the law in this country. The wants
18 to talk he can, but if he doesn't want to talk then he
19 doesn't have to talk?
20    A. Yes, sir.
21    Q. That he can be afforded the right to a lawyer
22 or one will be appointed to him?
23    A. Yes, sir.

1    Q. Anything may be used against him in the court
2 of law. Those are the rights you read to him?
3    A. Yes, sir.
4    Q. When he made those statements to you he was
5 aware of all that?
6    A. Yes.
7    Q. Now, when you arrived at the scene before
8 transporting Mr. Bacon back to the Criminal
9 Investigation Unit of the Wilmington Police
10 Department, who was on the scene as you remember? Was
11 Detective Spillan there?
12    A. At that time, I believe, Detective Spillan
13 had arrived just before I got to the scene.
14    Q. Okay.
15    MR. HILLIS: No further questions, thank you,
16 Corporal.
17    MR. LUGG: Prompts nothing from the State,
18 Your Honor.
19    THE COURT: Very well, you may step down.
20 You're excused.
21    MR. LUGG: The State next calls Detective
22 Chapman, Your Honor.
23    DETECTIVE WILLIAM CHAPMAN, having been called

1 on the part and behalf of the State as a witness,
2 being first duly sworn under oath, testified as
3 follows:
4            DIRECT EXAMINATION
5 BY MR. LUGG:
6    Q. Detective Chapman, good afternoon.
7    A. Good afternoon.
8    Q. How are you, sir?
9    A. Good.
10    Q. By whom are you employed?
11    A. Delaware State Police.
12    Q. How long have you been so employed?
13    A. Since September of 1988.
14    Q. And what is your current assignment?
15    A. I'm an evidence detective of the criminal
16 investigations unit.
17    Q. And how long have you been working in the
18 Criminal Investigation Unit as an evidence detective?
19    A. December of 1995.
20    Q. Okay. And were you working as an evidence
21 detective in that unit on the days of June 21, 22nd
22 and 23, of the year 2000?
23    A. Yes.

$\triangle - 74$

172

1 that was observed leaving the 7-Eleven by the young
2 women who was the trainee, the manager that was there
3 in a trainee capacity, and she said that she saw two
4 people in that car; do you recall that?
5 A. They were two people that -- I did not do the
6 interview, but I recall the testimony.
7 Q. Okay. Did you interview anybody who else
8 said they saw two people in that car? And I refer
9 you to the same section of your report.
10 A. I'll have to refer to that just to refresh my
11 memory.
12 Q. Sure. Did you find that, sir?
13 A. Yes, I did.
14 Q. And did you become aware that there was at
15 least another person that reported that they saw two
16 people in the car?
17 A. Yes, there's another individual.
18 Q. Okay. Now, you indicated that the two
19 individuals that were with the vehicle the night that
20 you arrested my client, Lenten Smith, and Anthony
21 Stanford, you described them in the area of 5'0 to
22 6'1, and 200 to 220 pounds, correct?
23 A. Yes, sir.

173

1 First, tell me if you recall --
2 A. I now had only one description consistent
3 and I was looking at the one part that you referred me
4 to the two occupants, but I don't recall a second
5 description.
6 Q. Well, do you want to look at that part again
7 to see if it helps refresh your recollection as to
8 whether or not you got a description?
9 A. Okay.
10 Q. Did you get a description?
11 A. Yes; that description was provided that that
12 individual was standing next to the car.
13 Q. Okay.
14 MR. HILLIS: Your Honor, I think at this
15 point the prosecutor is anticipating my next question.
16 I think in fairness to the State we ought to ask you
17 first at side bar.
18 (A side bar was reported.)
19 MR. HILLIS: Your Honor, I don't think the
20 State is going to call -- and I don't have any way of
21 knowing where they are -- that the person he saw by
22 the car was about 5'10 and who weighed -- and I have
23 the exact amount back there-- 200 or 220. I want to

174

1 Q. Now, during the course of the investigation,
2 you did receive some information, didn't you, at some
3 point in time that there was a second individual that
4 would have come closer to that description than the
5 description of the perpetrator -- are you following my
6 question, sir?
7 A. I follow your question, but I don't know what
8 you're looking for.
9 Q. Okay. If I take your testimony today
10 correctly -- let's start there -- and you tell me if
11 I'm unfairly interpreting what you said.
12 One of the reasons that you didn't prosecuted
13 either Lenten Smith or Anthony Stanford was because
14 thier physical stature was 6'0 to 6'1, and 200 to 220
15 pounds. And the perpetrator was not in those ranges,
16 which at the outside at least weight-wise was still a
17 25-pound difference?
18 A. We're talking about 175 pounds.
19 Q. Well, first is 200 to 220, right?
20 A. Right.
21 Q. My question is: Didn't you receive a
22 description about a second party being in one of the
23 automobiles or in the automobile?

175

1 ask him that, but I'm not offering proof, this officer
2 went into some detail about these guys not matching
3 any descriptions that he had. And there was a person,
4 Gary Todd, that was supposedly seen leaving the scene
5 of the robberies and he did have a description.
6 THE COURT: So Gary Todd is a witness?
7 MR. HILLIS: Yes.
8 THE COURT: And did he speak to this officer?
9 MR. HILLIS: Yes.
10 THE COURT: And did he say this?
11 MR. HILLIS: He said he saw another
12 individual standing by the car, the perpetrator, who
13 had a physical description that I have mentioned to
14 you.
15 MR. LUGG: Your Honor, I guess there is some
16 leadway for objecting myself, because I think it is a
17 hearsay statement. The witness is not testifying and
18 I don't intend to call him.
19 THE COURT: Well, if it is a statement that
20 he took and that seemed to me -- this is credibility
21 because you're saying that he had a description.
22 MR. HILLIS: Yes.
23 THE COURT: And he testified a minute ago

S-75

1 that none of the descriptions were as large as the
2 other gentleman.
3     MR. LUGG: But the description here. Your
4 Honor, is that it was not a description of the person
5 who committed any of these crimes. It was a
6 description of a person outside the store, so it's
7 just the description of another person who was nearby,
8 possibly. I think where counsel intends to go is to
9 the passenger of the car or somehow --
10     MR. HILLIS: It's clear that the person whose
11 description I'm talking about will describe the
12 witness as having been in the passenger's side of the
13 car, not the perpetrator.
14     THE COURT: At the liquor store?
15     MR. LUGG: At the 7-Eleven.
16     THE COURT: There's no testimony -- the only
17 testimony we have was to the second person who was --
18 yeah, okay, that was at the 7-Eleven.
19     MR. HILLIS: Yes.
20     THE COURT: Yeah.
21     MR. HILLIS: The point I'm trying to make is,
22 it's not so much that this description is accurate as
23 that I think -- he started talking about why he

1 not credible because it has to do with the other
2 individual.
3     MR. LUGG: Correct.
4     THE COURT: You didn't testify about what he
5 said that he arrested this defendant against what was
6 consistent with the duration of the perpetrator.
7     MR. HILLIS: Well, actually he said that
8 had --
9     MR. LUGG: And the description of the
10 individual -- and it varies between the -- I never
11 asked him to say that he was in the Plummer Center,
12 but rather the jury will be the one to draw the
13 conclusion but not the detective.
14     THE COURT: I think there is some cross
15 that's come out.
16     MR. LUGG: Yeah. There has on cross.
17     THE COURT: Okay. I've changed my mind. I
18 don't think given the fact regarding the perpetrator,
19 and given the fact the only thing you can say is that
20 you think there is a description of another man, but
21 so what.
22     MR. HILLIS: Well, Your Honor, there's three
23 people found with this car. Two of them are not my

178
1 decided these two aren't suspects, but that's a
2 description much closer than the person at the scene.
3     THE COURT: And it that part of his report?
4     MR. HILLIS: Yes, it is.
5     MR. LUGG: The objection would be hearsay.
6 It's a description given by another witness as to
7 somebody standing on the outside. I just don't see --
8     THE COURT: I agree it's not. The truth of
9 the matter is it was given for the credibility of his
10 testimony at this point.
11     MR. LUGG: I think that it's going to be
12 opening a larger door for me to deal with it, which if
13 counsel wants to do that I'll be happy to go there.
14     MR. HILLIS: I'm not going to agree. I have
15 no idea what you're talking about.
16     MR. LUGG: Well, this is a description of a
17 person who is not ever implicated as being involved in
18 the crime, not the person he describes, but the
19 description of this person, the perpetrator standing
20 outside. There is a videotape of 7-Eleven fixing the
21 description that has been offered by just about every
22 person.
23     THE COURT: So you're just saying that it's

180
1 client. There's at least some evidence that at one of
2 these robberies, which are all supposed to be
3 committed by the same person, two people are present.
4 One of those two people did not get charged who were
5 found with the vehicle.
6     MR. LUGG: They took them all but they were
7 never charged.
8     MR. HILLIS: I mean we heard testimony today
9 about the reason they don't fit the description of the
10 perpetrator --
11     THE COURT: Yeah, but the point is the only
12 thing you've got is a description of the person, not
13 the perpetrator.
14     MR. HILLIS: Well, Your Honor, let's put it
15 like this. If they knew who that second person or
16 though they knew of an accomplish driving somebody
17 from the scene, or accompanying the scene of a
18 robbery, then aren't they involved in the robbery?
19     THE COURT: What does that have to do with
20 the guilt or innocence of your client?
21     MR. HILLIS: My client is in the predicament
22 of having been found with the vehicle. We have a
23 scenario where one of these robberies may have been

$\Delta-76$

## Certificate of Service

I, _Severa C. Brown_ , hereby certify that I have served a true

and correct cop(ies) of the attached: _Reply to And Exhibit_

_to Post-Conviction_ upon the following

parties/person (s):

TO: _Loren C. Meyer_       TO: _T. R. Meyer_
_Dept. of Justice_         _119 E. Del Canal Ct._
_820 N. French St._        _Middletown, Del._
_Wilmington, Del._
_19801_                    _19709_

TO: _Hon. Judge Susan C. Del Pesco_  TO: _____
_Superior Court_           _____
_500 N. King St._          _____
_Wilmington, Del._         _____
_19801_                    _____

BY PLACING SAME IN A SEALED ENVELOPE and depositing same in the United
States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE
19977.

On this _29_ day of _January_ 200_5_

$-77$

EXHIBIT /7

$-78

IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| DEVEARL BACON, | ) |
| | ) |
| Defendant-Below, | ) |
| Appellant | ) |
| | ) |
| v. | ) No. 453, 2005 |
| | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Plaintiff-Below, | ) |
| Appellee | ) |

ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

**STATE'S ANSWERING BRIEF**

Timothy J. Donovan, Jr.
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE  19801
(302) 577-8500
I.D. #2603

DATE:     February 27, 2006

$-79

**TABLE OF CONTENTS**

TABLE OF CITATIONS ..........................................ii

NATURE AND STAGE OF THE PROCEEDINGS............................1

SUMMARY OF THE ARGUMENT........................................2

STATEMENT OF FACTS.............................................3

ARGUMENT

        I.   SUPERIOR COURT PROPERLY DENIED THE DEFENDANT'S
            MOTION FOR POSTCONVICTIONS RELIEF.................5

CONCLUSION....................................................8

Bacon V. State, 2002 WL 1472287 (Del.)......................Ex. A

State V. Bacon, 2005 WL 2303810 (Del. Super.)...............Ex. B

$\delta - 80$

**TABLE OF CITATIONS**

Cases                                                                Page

Bacon v. State, 2002 WL 1472287(Del.).........................1, 7

Coffield v. State, 794 A.2d 588(Del. 2002)......................6

Duross v. State, 494 A.2d 1265(Del. 1985)......................5

Flamer v. State, 585 A.2d 736(Del. 1990)........................5

Horne v. State, 887 A.2d 973 (Del. 2005.........................5

Manson v. Brathwaite, 432 U.S. 98 (1977).......................7

Sexton v. State, 397 A.2d 540(Del. 1979).......................6

Shockley v. State, 565 A.2d 1373(Del. 1989)....................5

State v. Bacon, 2005 WL 2303810 (Del. Super.).............1, 4, 8

Strickland v. Washington, 466 U.S. 668(1984)...................5


Rules

Super. Ct. Crim. R. 61....................................passim

$\Delta - 81$

## NATURE AND STAGE OF THE PROCEEDINGS

In July 2000, Devearl Bacon was charged in a 35 count indictment with a variety of crimes stemming from three robberies and one attempted robbery occurring on June 21 and 22, 2000. Following a Superior Court jury trial, he was convicted of charges related to two of the robberies and found not guilty to charges related to the attempted robbery. Charges related to the third robbery were dropped by the State. On appeal, his convictions were affirmed. Bacon v. State, 2002 WL 1472287 (Del.) (Ex. A). The defendant then returned to Superior Court, petitioning, pro se, for postconviction relief. After receiving the State's answer to the petition, defense counsel's affidavit[1] and defendant's response to the affidavit, Superior Court denied relief. State v. Bacon, 2005 WL 2303810 (Del. Super.) (Ex. B). The defendant then appealed. This is the State's answering brief.

---

[1] See Horne v. State, 867 A.2d 973 (Del. 2005).

1

$-82$

## SUMMARY OF THE ARGUMENT

1.    Defendant's arguments I through VI are denied.   The
defendant's various claims of error justifying postconviction
relief lack a basis in fact, lack a basis in law or were formerly
adjudicated.

2

$\Lambda - 83$

## STATEMENT OF FACTS

The facts of this case are set forth in Superior Court's
denial of postconviction relief.

> At trial, the evidence showed the following
> facts.  On June 21, 2000, a man wearing a
> dark, hooded sweatshirt and a bandana over
> his face and carrying a gun entered the Star
> Liquor Store on New Castle Avenue.  He told
> everyone in the store to get down onto the
> floor and when they did not, he fired two
> shots.  Everyone got down.  The man then held
> the gun to the clerk's head and demanded
> money.  The clerk gave him the cash, and, as
> he turned to leave the store, he also took a
> customer's car keys.  He drove away in the
> stolen car.
>
> When police officers arrived to investigate,
> they found two shell casings and bullet
> fragments in the store.  The victim of the
> car-jacking described his car as a silver or
> gray 1997 Ford Escort with Delaware tag
> number 999159.  Witnesses described the
> robber as a somewhat short black man with a
> slight build.
>
> Another robbery was attempted at the Star
> Liquor Store on the next day, June 22, 2000.
> A man in a hooded coat entered the store and
> with gun in hand demanded money from the
> clerk (a different individual than the clerk
> who had been threatened in the prior
> robbery).  The clerk picked up a Polaroid
> camera to take the man's picture.  She
> refused to give him any money and told him
> his best bet was to leave.  He took her
> advice and left the store, got into a
> grayish-colored car and drove away.  The
> clerk did not get his picture on the
> Polaroid, but she described the man to the
> police as being 5' 6" or 5' 8" tall,
> approximately 165 or 175 pounds, with facial
> hair and dark clothes.  The police recovered
> no physical evidence from this incident.
>
> Later that night, a man with a hood and
> bandana covering his face entered the Seven-
> Eleven Store on North Du Pont Highway.  The
> store's surveillance camera captured images
> of the man pointing his gun at the two clerks
> and taking money from them.  The robber fled

3

$\int -84$

> the store and drove away in a small silver
> car with Delaware registration number 999159.
> The clerk's description of the robber as a
> black man with a slight build was confirmed
> by the surveillance video.
>
> On June 23, 2000, probation officers saw
> three men working on a gray Ford Escort
> parked near 17th and Spruce Streets in
> Wilmington. The car had a Delaware license
> plate with the number 999159. The men were
> detained and the police were called. Two of
> the men were six feet or more. The third
> man, who was later arrested for the
> robberies, was 5' 7" tall and weighed
> approximately 140 pounds.
>
> Inside the Ford Escort, police found a hooded
> jacket, money, and a .22 caliber handgun. A
> comparison of the handgun and the ballistics
> evidence from the Star Liquor Store robbery
> showed that the shots fired during that
> robbery were fired from the gun found in the
> Escort.

State v. Bacon, 2005 WL 2303810 at *1 - *2.

4

$\int -85$

## I.   SUPERIOR COURT PROPERLY DENIED THE DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF.

### Standard and Scope of Review

The standard and scope of review applicable to this issue is whether Superior Court abused its broad discretion in denying the defendant's motion for postconviction relief. Shockley v. State, 565 A.2d 1373, 1377 (Del. 1989).

### Argument[2]

On appeal, the defendant continues to argue that his attorney was incompetent and that as a consequence he was wrongfully convicted.

It is well established that a defendant's first and best opportunity to raise an ineffective assistance of counsel claim is in a motion for postconviction relief, as was done here. Horne v. State, 887 A.2d 973, 974-75 (Del. 2005); Duross v. State, 494 A.2d 1265, 1267 (Del. 1985). Consequently, to the extent the defendant's claims of error truly are claims of ineffective assistance of counsel, the procedural bars of Criminal Rule 61(i) do not apply. To succeed on a claim of ineffective assistance of counsel, however, a defendant must show that his attorney's representation fell below an objective standard of reasonableness and that, but for counsel's unprofessional errors, there is a reasonable probability that the outcome of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Although not insurmountable, the Strickland test is highly demanding and leads to a "strong presumption that the representation was

---

[2] This answers the defendant's arguments I through VI.

5

$\delta - 86$

professionally reasonable." <u>Flamer v. State</u>, 585 A.2d 736, 753 (Del. 1990).

In his first two arguments, the defendant claims that his attorney was ineffective because he failed to move (1) to sever the person prohibited charges from the remaining charges and (2) to sever the charges related to each incident. As to the first claim of error, defense counsel, in his affidavit, stated that he protected the defendant from the danger of unfair prejudice by stipulating that he was a "person prohibited" under the statute, thus preventing the jury from learning the details of his criminal history. As to the second claim, counsel states that after reviewing the facts of the case and the law on the subject, he concluded that any motion to sever would have been wholly without merit. (B 11-12).

Here, there was no professional impropriety. As Superior Court noted in denying the defendant's motion for postconviction relief, this Court has found joinder of person prohibited charges with other charges to be proper. <u>Sexton v. State</u>, 397 A.2d 540, 545 (Del. 1979). Furthermore, counsel's stipulation to the defendant's status was a professionally reasonable precaution to ensure that the defendant received a fair trial.

As to the second severance claim, defense counsel's estimation of the merits of a motion to sever was obviously correct. Under Superior Court Criminal Rule 8, the charges were properly joined since the incidents were of a similar nature and occurred over a brief, two day span. <u>See</u> <u>Coffield v. State</u>, 794 A.2d 588, 590-91 (Del. 2002) (approving similar joinder).

6

$\delta - 87$

Consequently, as Superior Court ruled, counsel's decisions as to these claims of error were professionally reasonable, and the defendant's claim fails both prongs of the Strickland test.

Following his arrest, the defendant made several unsolicited statements to the police, including that he had been released from the Plummer Center. (Trans. June 20, 2001 at 110). When a police officer witness testified to this fact, defense counsel objected and asked for a mistrial. (Trans. June 20, 2001 at 112-13). The trial judge denied the motion, ruling that the single reference to the Plummer Center presented such a slight risk of prejudice, that a mistrial was not warranted. To further minimize any risks of prejudice, no curative instruction was requested or given.

To the extent that the defendant now argues that this ruling was an abuse of discretion, the claim is barred by Superior Court Criminal Rule 61(i)(4) as formerly adjudicated. To the extent that the defendant faults his attorney for not presenting a better objection, this claim fails the Strickland test. As the trial judge recognized at the time and again in denying postconviction relief, the potential for prejudice stemming from the officer's testimony regarding the defendant's statements was slight, and defense counsel's response was professionally reasonable. Hence, this claim too fails both prongs of the Strickland test.

Defendant next complains that robbery victim Dawn Smith's in-court identification of him as the perpetrator was somehow tainted and that defense counsel was ineffective for failing to

7

$\Delta - 88$

object. In his affidavit, defense counsel states that this allegation is "not supported by the facts as Counsel recalls them and in any case [is] not supported by the law." (B 12). Counsel is correct. An in-court identification may be excluded if tainted by unnecessarily suggestive out-of-court identification procedures, such as a physical or photographic line-up. Manson v. Brathwaite, 432 U.S. 98 (1977). Here, there were no out-of-court identification procedures, suggestive or otherwise. Hence, the claim fails on the facts.

Defendant's fifth claim is that defense counsel failed to object before trial to the prosecutor's motion to amend the indictment. In his affidavit, defense counsel notes that the motion was not made until the day of trial and that the Superior Court granted the motion over defense counsel's objection. This ruling was affirmed on direct appeal. Bacon v. State, 2002 WL 1472287 (Del.) (Ex. B). Hence, the claim fails on its facts as well as under both prongs of the Strickland standard. Furthermore, relitigation of the underlying claim is barred by the provisions of Criminal Rule 61(i)(4) as formerly adjudicated.

In his sixth and final argument, the defendant argues that the State committed a discovery violation by failing to provide the defense with a copy of the defendant's videotaped statement to the police. Defense counsel was ineffective for failing to litigate the discovery violation at trial or on appeal. This claim fails on its facts. The defendant refused to be interrogated regarding the charged crimes. Any statements he made to the Delaware State Police while being transported were

8

$\delta$-89

not taped.  Random, spontaneous statements he made at the
Wilmington Police stations were videotaped in the normal course,
but the tape was regarded as lacking in evidentiary value and was
reused.  As Superior Court concluded in denying postconviction
relief:  "This claim has no factual basis and does not provide
grounds for postconviction relief." State v. Bacon, supra at *6.

     In sum, Superior Court properly exercised its broad
discretion in denying the defendant's motion for postconviction
relief.

$8-90$

## CONCLUSION

The judgment of the Superior Court should be affirmed.

Timothy J. Donovan
Deputy Attorney General
Department of Justice
State Office Building
820 N. French Street
Wilmington, DE   19801
(302) 577-8500
I.D. #2063

DATE:      February 27, 2006

Westlaw.

801 A.2d 10                                                                                  Page 1

801 A.2d 10, 2002 WL 1472287 (Del.Supr.)
(Cite as: 801 A.2d 10)

**H**

(The decision of the Court is referenced in the
Atlantic Reporter in a 'Table of Decisions Without
Published Opinions.')

Supreme Court of Delaware.
Devearl BACON, Defendant Below, Appellant,
v.
STATE of Delaware, Plaintiff Below, Appellee.
No. 369,2001.

Submitted May 7, 2002.
Decided July 1, 2002.

Defendant was convicted following jury trial in the
Superior Court, New Castle County, of robbery and
other offenses. Defendant appealed. The Supreme
Court, Berger, J., held that amendment of robbery
count at beginning of trial, so as to identify the
stolen property as "United States currency" rather
than "car keys and a car," was permissible
amendment as to a matter of form.

Affirmed.

West Headnotes

**Indictment and Information 210 ☞159(2)**

210 Indictment and Information
 210XI Amendment
  210k158 Indictment
   210k159 In General
    210k159(2) k. Accusation in General.
Most Cited Cases
Amendment to robbery count of indictment at
beginning of trial, which substituted "United States
currency" in place of "car keys and a car" to
identity the stolen property, was permissible
amendment as to a matter of form: identity of stolen
property was not material to charged offense so as
to create a new, additional, or different charge, and
defendant claimed no resulting prejudice. 11 Del.C.
§ 831.

Court Below: Superior Court of the State of
Delaware in and for New Castle County.

Before HOLLAND, BERGER and STEELE,
Justices.

ORDER

**\*1** This 1st day of July, 2002, on consideration of
the briefs and arguments of the parties, it appears to
the Court that:

1) Devearl Bacon was convicted, following a jury
trial, of carjacking and multiple counts of robbery
first degree, possession of a deadly weapon by a
person prohibited, wearing a disguise during the
commission of a felony, aggravated menacing, and
possession of a firearm during the commission of a
felony. He appeals from one robbery conviction,
arguing that the Superior Court erred in allowing
that count of the indictment to be amended at the
beginning of trial.

2) Bacon was charged with 36 counts of robbery
and related offenses arising out of a two-day crime
spree. The indictment at issue originally charged
that Bacon threatened "the immediate use of force
upon Roshelle Conkey with intent to compel the
said person to deliver up property consisting of car
keys and a car...." The State moved to amend the
indictment to substitute "United States currency"
for "car keys and a car." The Superior Court
granted the State's motion over Bacon's objection.

3) It is settled in Delaware that indictments may be
amended as to matters of form, as long as "no new,
additional, or different charge is made thereby and
the accused will not suffer prejudice to substantial
rights." [FN1] The elements of the crime of robbery
are, in relevant part: (1) the use or threatened
immediate use of force on a person; (2) while
committing the crime of theft; (3) in order to
overcome the person's resistance to the taking of the
property. [FN2] The identity of the stolen property is

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. A                                                           §-92

801 A.2d 10

Page 2

801 A.2d 10, 2002 WL 1472287 (Del.Supr.)
(Cite as: 801 A.2d 10)

not material to the offense of robbery. Thus, an amendment that changes the property from "car keys and a car" to "United States currency" does not create a new, additional or different charge. [FN3] Since the amendment was permissible as being one of form only, and since Bacon makes no claim of prejudice, the trial court's decision granting the motion to amend must be upheld.

> FN1. *Robinson v. State,* 600 A.2d 356, 359 (Del.1991).

> FN2. 11 *Del.* C. § 831.

> FN3. *Roberts v. State,* 1998 WL 231269 (Del.Supr.).

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be, and the same hereby is, AFFIRMED.

Del.Supr.,2002.
Bacon v. State
801 A.2d 10, 2002 WL 1472287 (Del.Supr.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$\delta - 93$

## Westlaw.

Not Reported in A.2d

Not Reported in A.2d, 2005 WL 2303810 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 1

**H**

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT
RULES BEFORE CITING.

Superior Court of Delaware.
STATE of Delaware,
v.
**Devearl L. BACON, Defendant.**
**No. IN 00-07-1666-1667R1, 1671-1673-R1, IN**
**00-7-0349-R1, 0351-0352-R1, 0356-0358-R1,**
**0358-R1.**

Submitted July 27, 2005.
Decided Aug. 29, 2005.

Upon Consideration of: Defendant's Motion for
Postconviction Relief-Denied.

Defendant's Motion for Enlargement of Time to File
Reply to State's Answer-Granted.

Defendant's Motion to File Amended Reply to
State's Answer-Granted.

**Devearl Bacon,** Delaware Correctional Center. pro
se.

### OPINION

DEL PESCO; J.

*1 This is the Court's opinion on Defendant **Devearl**
Bacon's motion for postconviction relief, filed
pursuant to Super. Ct.Crim. R. 61 ("Rule 61"). As
explained below, Defendant has not presented
adequate grounds for relief from his convictions or
sentence, and his motion for postconviction relief is
therefore denied. His motion to amend his reply to
the State's answer and his motion to extend the time
for filing his reply are granted.

### POSTURE

Defendant was indicted for numerous crimes
stemming from three robberies and one attempted

robbery, all of which occurred on June 21 and 22,
2000. Prior to trial in June 2001, this Court granted
the State's motion to amend one of the robbery
charges to allege theft of United States currency
rather than car keys and a car. The parties stipulated
that Defendant was prohibited from owning or
possessing firearms because of prior felony
convictions. As a result of the stipulation, language
referring to Defendant's criminal history was
stricken from the indictment, and the Court directed
the attorneys to refrain from discussing or referring
to Defendant's criminal record in the presence of the
jury. The State entered a *nolle prosequi* on the
charges related to one of the robberies.

Following a three-day trial, the jury returned guilty
verdicts on the charges related to the two robberies
and verdicts of not guilty of the charges related to
the attempted robbery. Defendant was convicted of
five counts of Robbery First Degree, one count of
Carjacking First Degree, two counts of Aggravated
Menacing, two counts of Possession of a Firearm
During the Commission of a Felony, two counts of
Possession of a Deadly Weapon by a Person
Prohibited (PDWPP), and two counts of Wearing a
Disguise During the Commission of a Felony.
Defendant was sentenced to 34 years of
imprisonment to be followed by 12 years of
probation. His convictions and sentence were
affirmed on appeal. [FN1]

> FN1. *Bacon v. State,* 2001 WL 1472287
> (Del.Supr.).

Defendant has filed a motion for postconviction
relief, alleging six instances of ineffective assistance
of counsel. The Court has received an affidavit from
defense counsel, as well as Defendant's response to
that affidavit. [FN2] The Court has also received the
State's answer to the motion. [FN3] Defendant
initially filed a handwritten reply, which he
subsequently moved to withdraw and substitute with
a so-called "Complete Reply." The Court hereby

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Ex. 13

$-94

Not Reported in A.2d

Not Reported in A.2d, 2005 WL 2303810 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 3

exculpatory evidence.

\*3 To prevail on any of these claims, Defendant must meet the two-part test set forth in *Strickland v. Washington.* [FN4] To show that defense counsel was constitutionally ineffective, a defendant must show first that counsel's representation fell below an objective standard of reasonableness. [FN5] Even a professionally unreasonable error does not warrant setting aside the judgment if the error had no effect on the judgment. [FN6] Thus a defendant must also show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; a reasonable probability is a probability sufficient to undermine confidence in the outcome. [FN7] In applying this test, the Court may reject a defendant's claim if he fails to meet either prong. [FN8]

> FN4. 466 U.S. 668 (1984).
>
> FN5. *Id.* at 688.
>
> FN6. *Id.* at 691.
>
> FN7. *Id.* at 694.
>
> FN8. *Id.* at 697 (stating that "[t]here is no reason for a court ... to address both components of the inquiry if the defendant makes an insufficient showing on one.... If it is easier to dispose of an ineffectiveness claim on the grounds of lack of sufficient prejudice, which we expect will often be so, that course should be followed").

Amended indictment. One of the Robbery counts alleged that Defendant sought to take "car keys and a car" from a victim, and the State moved to delete that phrase and substitute the phrase "United States currency." After hearing argument from both sides, this Court granted the motion over defense counsel's objection. Defense counsel raised this issue of direct appeal, and the Delaware Supreme Court affirmed the ruling because the change was one of form only. [FN9]

> FN9. *Bacon v. State*, 2001 WL 1472287 at \*2 (citation omitted).

Ordinarily, this claim would be barred pursuant to Rule 61(i)(4), which provides that any ground for relief that was formerly adjudicated is thereafter barred unless reconsideration is warranted in the interest of justice. Defendant has not attempted to make this showing, but argues instead that defense counsel should have raised this issue prior to trial so that Defendant would have had a "more favorable review on Direct Appeal." [FN10] As a factual matter, this assertion is inaccurate. The State made its motion on the day of trial, and this Court granted the motion over defense counsel's objection. Defense counsel acted reasonably in objecting to the motion at the time it was made, and Defendant cannot show any prejudice resulting from counsel's conduct. Defense counsel also raised this issue on appeal and lost. Defendant has not met either prong of the *Strickland* test, and the Court concludes that this ground for relief has no merit.

> FN10. Motion for Postconviction Relief at 4.

The other five claims which Defendant raises are issues not previously addressed and would ordinarily be subject to procedural default pursuant to Rule 61(i)(3). Defendant asserts that these issues were not addressed because of counsel's ineffective representation. Ironically, the requirements for overcoming the procedural default are analogous to the standard for showing ineffective assistance of counsel, and a defendant who cannot show attorney ineffectiveness also fails to overcome the default rule. [FN11] The former requires a defendant first to show cause, that is, to explain his reasons for not raising the issue earlier. [FN12] A defendant who makes this showing must then show a "substantial likelihood" that the outcome of the proceedings would have been different if the issue had been raised. [FN13] Under the *Strickland* test for attorney ineffectiveness, a defendant must show that counsel's representation fell below an objective professional standard of conduct and that this conduct caused the defendant to suffer actual prejudice during the proceedings. [FN14]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

$\delta$-95

Not Reported in A.2d

Not Reported in A.2d, 2005 WL 2303810 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 5

necessarily aware that the Plummer Center is a correctional facility and even if jurors had been aware of that fact, it would not have been prejudicial to Defendant in light of the stipulation that Defendant is a Person Prohibited. FN18

FN18. Tr. (6/20/01) at 113.

*5 Cpl. Spence's statement was not affirmative evidence in the State's case, as demonstrated by the record of the sidebar which followed on its heels. Rather, it was a brief reference made while the officer was chronicling the evening's events. In *Muto v. State*, another case where a witness inadvertently referred to a defendant's arguably bad acts without objection from defense counsel, the Delaware Supreme Court reviewed the issue for plain error, that is, whether the allegedly prejudicial statement violated the defendant's "substantial rights." FN19 Prejudice is also determinative of the question of ineffective representation. Here, as in *Muto*, the statement was unsolicited, vague. and brief, and was not pursued by the prosecutor. As stated previously, even if any juror knew that the Plummer Center is a detention facility, no prejudice could result because all jurors were informed that Defendant is a convicted felon via the stipulation. Defendant has not shown that counsel was ineffective, and this claim must also fail.

FN19. 2004 WL 300441 at * *3 (Del.Supr.) (quoting *Capano v. State,* 781 A.2d 556, 586 (Del.2001)).

In-court identification. Defendant argues that Dawn Smith's in-court identification of him as the man who held a gun to her head and robbed the Star Liquor Store violated his due process rights and that defense counsel was ineffective for failing to object.

At trial, Ms. Shaw provided numerous details about the robber's appearance on the night of the robbery. She stated that the robber was a short. thin. light-complected African-American male with " skinny" legs;'which were visible because he wore shorts. She further testified that he wore a dark blue, hooded jacket with white lettering on it. work boots

and black gloves. His face was covered from the nose down by a bandana and the hood was on his head. leaving his eyes visible. When Ms. Shaw saw Defendant again later in the evening. she recognized him as the man who had held a gun to her head and robbed the liquor store. FN20 After providing this information, Ms. Shaw was asked by the prosecutor if she saw the robber in the courtroom, and she identified Defendant.

FN20. Tr. (6/19/01) at 30; 33-39; 40-43.

Defendant argues that this identification violated his right to a fair trial because it had no independent origin. The question of whether there has been an independent basis for an in-court identification arises when an unnecessarily suggestive out-of-court identification potentially taints an in-court identification. FN21 Defendant incorrectly asserts that Ms. Shaw was unable to identify him in a photo line-up. Ms. Shaw testified that she was never shown any photographs, FN22 and, in fact, the witness who had not been able to pick Defendant out of a photo array was Gina Harris, the clerk who refused Defendant's demand for cash when he attempted to rob the same liquor store on June 22. 2000. FN23 The independent origin for Ms. Shaw's in-court identification of Defendant was the evening of June 21, 2000, when Defendant entered the Star Liquor Store and ordered everyone to the floor, fired his gun in the air, demanded that the clerk give him the store's money, stole a customer's car keys and fled the Star Liquor Store. Defense counsel had no reason to object to the identification, and he aggressively cross-examined Ms. Shaw on the details of her description of the robber. FN24 The Court concludes that defense counsel was not ineffective for choosing not to object to Ms. Shaw's identification of Defendant as the robber of the Star Liquor Store. This claim has no merit.

FN21. *Gillis v. State,* 1987 WL 38068 (Del.Supr.) (stating that admission of in-court identification violates due process if preceded by unnecessarily suggestive out-of-court identification which raises a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d

Not Reported in A.2d, 2005 WL 2303810 (Del.Super.)
(Cite as: Not Reported in A.2d)

Page 6

substantial likelihood of misidentification, unless voir dire shows that the in-court identification has independent origin (citing *Manson v. Braithwaite,* 432 U.S. 98, 116 (1977)).

FN22. Tr. (6/19/01) at 34, 36.

FN23. Tr. 6/20/01) at 35-36.

FN24. Tr. (6/19/01) at 31-36, 40-42.

*6 Exculpatory evidence. Finally, Defendant argues that the State failed to turn over to the defense a videotape of a statement Defendant allegedly made to Det. Spence at the Wilmington Police Station. Defendant asserts that the videotape included exculpatory material and that defense counsel was ineffective for not identifying this issue and raising it on appeal. In his affidavit, defense counsel states that his file notes show that he asked the prosecutor about a tape of Defendant's statement. He further states that the prosecutor said that he believed that Defendant had not given a statement after arriving at the Police Station and that the prosecutor had confirmed this fact with the police. FN25 In its answer, the State reiterates that Defendant did not give a formal statement while at the police station and that his comments to Det. Spence were not recorded.

FN25. Defense Counsel's Affidavit at 4, Exh. A, entries for 2/22/01, 2/23/01.

At trial, Det. Spence testified that Defendant made certain unsolicited remarks and that he was read his *Miranda* rights but not interrogated. Det. Spence included Defendant's verbal statements in a written report, which was provided to the defense. There is nothing in the record to support Defendant's assertion that a statement was videotaped or that the prosecution failed to provide such a tape to the defense. This claim has no factual basis and does not provide grounds for postconviction relief.

CONCLUSION

Defendant **Devearl** Bacon's Motion for Enlargement of Time to File a Reply to the State's Answer and Motion to File Amended Reply are hereby GRANTED. Defendant Bacon's motion for postconviction relief is hereby DENIED.

IT IS SO ORDERED.

Del.Super.,2005.
State v. Bacon
Not Reported in A.2d, 2005 WL 2303810 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

δ-97

## AFFIDAVIT OF MAILING

The undersigned, being a member of the Bar of this State, hereby certifies that on February 27, 2006, he caused to be mailed by first class U.S. Mail two copies of the within document· to:

                    Devearl Bacon
                    SBI #221242
                    Delaware Correctional Center
                    1181 Paddock road
                    Smyrna, DE 19977

                                        Timothy J. Donovan Jr.
                                        Deputy Attorney General
                                        I.D. # 2063

$-98$

IN THE SUPREME COURT OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| DEVEARL BACON, | ) |
| | ) |
| Defendant-Below, | ) |
| Appellant | ) |
| | ) |
| v. | ) No. 453, 2005 |
| | ) |
| STATE OF DELAWARE, | ) |
| | ) |
| Plaintiff-Below, | ) |
| Appellee | ) |

ON APPEAL FROM THE SUPERIOR COURT
OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

**APPENDIX TO
STATE'S ANSWERING BRIEF**

Timothy J. Donovan, Jr.
Deputy Attorney General
Department of Justice
Carvel State Office Building
820 N. French Street
Wilmington, DE   19801
(302) 577-8500
I.D. #2603

DATE:    February 27, 2006

$A-99$

## TABLE OF CONTENTS

SUPERIOR COURT DOCKET .........................................B-1

AFFIDAVIT OF COUNSEL..........................................B-10

$\chi - 100$

SUPERIOR COURT CRIMINAL DOCKET                Page    1
( as of  02/07/2006 )

ate of Delaware v.   DEVEARL L BACON                    DOB: 11/27/1969
otate's Atty: SEAN P LUGG , Esq.        AKA: DEVERAL BACON
Defense Atty: EDMUND M HILLIS , Esq.         DEVERAL BACON
                                             DEVEAR L BACON
                                             DEVIAL L BACON
                                             MARK WILSON
                                             LOST BACON
                                             DAVID JOHNSON


Assigned Judge:

Charges:
| Count | DUC# | Crim.Action# | Description | Dispo. | Dispo. Date |
|-------|------|--------------|-------------|--------|-------------|
| 001 | 0006017660 | IN00070367 | PFDCF | NOLP | 06/22/2001 |
| 002 | 0006017660 | IN00070368 | ROBBERY 1ST | NOLP | 06/22/2001 |
| 003 | 0006017660 | IN00070369 | AGGR MENACING | NOLP | 06/22/2001 |
| 004 | 0006017660 | IN00070370 | DISGUISE | NOLP | 06/22/2001 |
| 014 | 0006017660 | IN00071665 | PDWBPP | NOLP | 06/22/2001 |
| 015 | 0006017660 | IN00071666R1 | CARJACKING 1ST | TG | 06/22/2001 |
| 016 | 0006017660 | IN00071667R1 | PDWBPP | TG | 06/22/2001 |
| 017 | 0006017660 | IN00071668 | ATT. ROBBERY 1S | TNG | 06/22/2001 |
| 018 | 0006017660 | IN00071669 | PFDCF | TNG | 06/22/2001 |
| 019 | 0006017660 | IN00071670 | PDWBPP | TNG | 06/22/2001 |
| 20 | 0006017660 | IN00071671R1 | PFDCF | TG | 06/22/2001 |
| 021 | 0006017660 | IN00071672R1 | PDWBPP | TG | 06/22/2001 |
| 022 | 0006017660 | IN00071673R1 | DISGUISE | TG | 06/22/2001 |
| 023 | 0006017660 | IN00070347R1 | PFDCF | TG | 06/22/2001 |
| 024 | 0006017660 | IN00070348R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 025 | 0006017660 | IN00070349R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 026 | 0006017660 | IN00070350 | AGGR MENACING | NOLP | 06/22/2001 |
| 027 | 0006017660 | IN00070351R1 | AGGR MENACING | TG | 06/22/2001 |
| 028 | 0006017660 | IN00070352R1 | AGGR MENACING | TG | 06/22/2001 |
| 029 | 0006017660 | N00070353 | CARJACKING 2ND | NOLP | 06/22/2001 |
| 030 | 0006017660 | IN00070354 | DISGUISE | TG | 06/22/2001 |
| 031 | 0006017660 | IN00070355 | PFDCF | NOLP | 06/22/2001 |
| 032 | 0006017660 | IN00070356R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 033 | 0006017660 | IN00070357R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 034 | 0006017660 | IN00070358R1 | ROBBERY 1ST | TG | 06/22/2001 |
| 035 | 0006017660 | IN00070359 | DISGUISE | TNG | 06/22/2001 |
| 036 | 0006017660 | IN00071776 | PDWBPP | TNG | 06/22/2001 |

|     | Event |       |       |
|-----|-------|-------|-------|
| No. | Date  | Event | Judge |
| 1   | 07/06/2000 | | |

CASE ACCEPTED IN SUPERIOR COURT.

$B-1$

$\delta - 100$

SUPERIOR COURT CRIMINAL DOCKET                Page    2
( as of  02/07/2006 )

ate of Delaware v.  DEVEARL L BACON                      DOB: 11/27/1969
ucate's Atty: SEAN P LUGG , Esq.          AKA: DEVERAL BACON
Defense Atty:                                  DAVID JOHNSON

       Event
No.   Date          Event                              Judge
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
      ARREST DATE: 06/23/2000
      PRELIMINARY HEARING DATE:
      BAIL:
      HELD ON CASH BAIL                   55000.00 100
      BAIL CONDITIONS:  NO DIRECT OR INDIRECT CONTACT WITH WILLIAM DAVIS,
      GULF SERVICE STATION, SHAH HASSAN GULF SERVICE STATION.
      REPORT TO PROBATION OFFICER.
2     07/14/2000
      MOTION FOR REDUCTION OF BAIL FILED.
      RAYMOND RADULSKI, ESQ.
4     07/17/2000
      INDICTMENT, TRUE BILL FILED. NO 47
      FAST TRACK VOP/CASE REVIEW ON 8/3/00
      WILL CONSOLIDATE WITH 0006017683 WHEN FIXED.
5     07/17/2000
      CASE CONSOLIDATED WITH: 0006017683
3     07/25/2000                          REYNOLDS MICHAEL P.
      MOTION FOR REDUCTION OF BAIL WITHDRAWN.
      BY DEFT.
      08/03/2000                          GEBELEIN RICHARD S.
      FAST TRACK CALENDAR/CASE REVIEW:  SET FOR FAST TRACK FINAL CASE REVIEW
      ON: 102600
6     08/14/2000
      DEFENDANT'S LETTER FILED. TO RAYMOND RADULSKI, ESQ.
      RE: DEF REQUESTING A MOTION FOR DISMISSAL BE FILED.
      * ATTACHED IS A COURTESY COPY OF THE LETTER FOR THE PROTHONOTARY.
7     08/21/2000
      REFERRAL TO COUNSEL MEMORANDUM FILED.
      ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
      AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
      COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
      CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
      DIRECTED TO YOU. RAYMOND RADULSKI, ESQ
      REFERRED BY:  (AMH)
8     09/26/2000
      DEFENDANT'S LETTER FILED TO: RAY RADULSKI.
      RE: WANTS MOTION OF DISCOVERY SENT TO HIM ASAP.
9     10/06/2000
      NOTICE OF SERVICE - DISCOVERY REQUEST.
      TO: JAMES RAMBO  FROM: RAY RADULSKI.
10    11/01/2000
      LETTER FROM: SEAN LUGG  TO:  RAY OTLOWSKI.

B-2        S - 102

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    3
                         ( as of  02/07/2006 )

   ate of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
  ..ate's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
  Defense Atty:                                   DAVID JOHNSON


        Event
  No.   Date           Event                             Judge
  -----------------------------------------------------------------------------
        RE: INFORMING THAT HE HAS TAKING OVER FOR JAMES FREEBERY, AND GIVES
        HIM RESPONSE TO HIS DISCOVERY REQUEST.
  11    12/01/2000
        ORDER SCHEDULING TRIAL FILED.
        TRIAL DATE: 6/19/01
        CASE CATEGORY: _____ 1
        ASSIGNED JUDGE (CATEGORY 1 CASES ONLY): DEL PESCO
        UNLESS THE COURT IS ADVISED WITHIN 2 WEEKS OF THE UNAVAILABILITY
        OF NECESSARY WITNESSES, THE COURT WILL CONSIDER THE MATTER READY
        FOR TRIAL.  ABSENT EXCEPTIONAL CIRCUMSTANCES, RESCHEDULING OR
        CONTINUANCE REQUESTS WILL BE DENIED.
  12    12/27/2000
        DEFENDANT'S LETTER FILED.
        TO: ED HILLIS.
        RE: WANTS TRANSCRIPTS FROM PRELIMINARY HEARING, BUT DOESN'T HAVE MONEY
        FOR THEM.
  13    03/08/2001
        DEFENDANT'S LETTER TO EDMUND HILLIS, THANKING HIM FOR A COPY OF TRANS-
        CRIPT OF PRELIM AND ASKING HIM TO SEND AN INVESTIGATOR TO THE VICTIMS
        FOR QUESTIONING.
  15    03/09/2001
        DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING TRANSCRIPTS OF PRELIM
        & LETTER FROM ATTORNEY BE PLACED IN HIS FILE.
  14    03/21/2001
        DEFENDANT'S LETTER TO PROTHONOTARY REQUESTING A COPY OF LETTER TO MR.
        HILLIS BE PLACED IN DEF.'S FILE.
  16    03/23/2001
        REFERRAL TO COUNSEL MEMORANDUM FILED.
        ATTACHING LETTER/DOCUMENT FROM DEFENDANT.  REFERRED TO DEFENSE COUNSEL
        AS ATTORNEY OF RECORD.  COPY OF DEFENDANT'S LETTER NOT REVIEWED BY THE
        COURT AND NOT RETAINED WITH THE COURT'S FILE.  PLEASE ADVISE YOUR
        CLIENT THAT FURTHER COMMUNICATIONS REGARDING THIS CASE SHOULD BE
        DIRECTED TO YOU.  EDMUND HILLIS, ESQ
        REFERRED BY:  (AMH)
        DEFENDANT REQUEST LETTER SENT TO COUNSEL
  17    04/17/2001
        DEFENDANT'S LETTER FILED REQUESTING ALL BRADY V MARYLAND MATERIALS BE
        PLACED ON HIS COURT DOCKET
  18    05/01/2001
        DEFENDANT'S LETTER FILED REQUESTING A COPY OF THIS LETTER BE SENT TO
        HIS PUBLIC DEFENDER AND ASKING HIM TO FILE A MOTION TO SEVER & PUT IT
        IN HIS COURT DOCKET
```

B-3                    $-103

```
SUPERIOR COURT CRIMINAL DOCKET                    Page    4
                ( as of  02/07/2006 )
```

ate of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
_cate's Atty: SEAN P LUGG , Esq.          AKA: DEVERAL BACON
Defense Atty:                                  DAVID JOHNSON

```
     Event
No.  Date            Event                              Judge .
-------------------------------------------------------------------------------
```

19   05/18/2001
     DEFENDANT'S LETTER FILED. DEFENDANT WANTS A COPY OF HIS LETTER SENT TO
     MR. EDMUND HILLIS OF THE PUBLIC DEFENDERS OFFICE. DEFENDANT ALSO WANTS
     A COPY OF HIS DOCKET SHEET SENT TO HIM.
20   05/18/2001
     LETTER FROM DEVEARL L. BACON TO EDMUND HILLIS OF THE-PUBLIC DEFENDERS
     OFFICE. RE: TO SUBPENA "ALL" STATE WITNESS(S), ALONG WITH MY
     WITNESS(S) ON MY BEHALF.
     MR. HILLIS:
     PLEASE SUBPENA ALL STATE WITNESS(S), AND ALSO THE FOLLOWING:
     1. ALBERT WILSON, 2. MANLY WILSON, 3. RUTH WILSON.
     ALL OF 706 TOWNSEND PL., WILMINGTON, DE 19801.
21   06/04/2001
     SUBPOENA(S) MAILED.
27   06/04/2001                                                    .
     STATE'S WITNESS SUBPOENA ISSUED.
     WILLIAM DAVIS, SHAH HASSAN, DAWN SMITH, AVON MATTHEWS, JACQUELINE JOHN
     SON, JAMIE ROSS, MICHAEL SCOTT, CATHY BARON, ROSHELLE CONKEY,        .
     STEFFANIE WEST, R LECCIA WPD, BERNADETTE SELBY.
     06/12/2001
     DEFENDANT IS REQUESTING DELAY IN TRAIL
22   06/13/2001
     SHERIFF'S COSTS FOR SUBPOENAS DELIVERED.
     SHAH HASSAN,DAWN SMITH.AVON MATTHEWS,JACQUELINE JOHNSON,
     JAMIE ROSS,CATHY BARON,ROSHELLE CONKEY
23   06/14/2001                              GOLDSTEIN CARL
     TRIAL CALENDER/PLEA HEARING:  PLEA REJECTED/SET FOR TRIAL
24   06/19/2001      --                      DEL PESCO SUSAN C.
     TRIAL CALENDAR- WENT TO TRIAL JURY
25   06/22/2001                              DEL PESCO SUSAN C.
     CHARGE TO THE JURY FILED._FILED JUNE 22, 2001
26   06/22/2001                              DEL PESCO SUSAN C.
     JURY TRIAL HELD.
     TRIAL HELD 6-19 THROUGH 6-22-2001.  VERDITS WERE GUILTY ON ALL COUNTS
     EXCEPT 10,11,12,13 WHERE THE VERDICT WAS NOT GUILTY.  CLERK WAS G.
     BROOKS AND COURT REPORTER WAS ROFLE EXCEPT FOR 6-22 IT WAS CAHILL
     ALL EXHIBITS WERE RETURNED.  DAG WAS SEAN LUGG AND DEFENSE WAS
     ED HILLIS.  JURY WAS SWORN ON JUNE 19TH.
     07/20/2001                              DEL PESCO SUSAN C.
     SENTENCING CALENDAR: DEFENDANT SENTENCED.
32   08/03/2001
     DEFENDANT'S LETTER FILED.__          TO MARY ELIZABETH PITCAVAGE.
```

$B-4$        $\partial - /04$

```
                    SUPERIOR COURT CRIMINAL DOCKET              Page    5
                         ( as of  02/07/2006 )

  ate of Delaware v.  DEVEARL L BACON                        DOB: 11/27/1969
  _ate's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
  Defense Atty:                                  DAVID JOHNSON

       Event
  No.  Date         Event                                  Judge
  ------------------------------------------------------------------------
       LETTER FROM DEFENDANT ASKING FOR A LETTER TO MR. HILLIS TO FILE A
       NOTICE OF APPEAL BE PUT IN HIS FILE AND TO BE DOCKETED.
       *SEE FULL LETTER IN FILE WITH A LETTER TO MR. HILLIS TO FILE A NOTICE
       OF APPEAL ATTACHED.
  29   08/16/2001
       TRANSCRIPT FILED.
       VERDICT TRANSCRIPT JUNE 22, 2001
       BEFORE JUDGE DEL PESCO.
  30   08/17/2001
       LETTER FROM SUPREME COURT TO KATHLEEN FELDMAN
       RE: AMENDED DIRECTIONS TO THE COURT REPORT WERE FILED IN THIS
       COURT ON AUGUST 16, 2001. THE TRANSCRIPT MUST BE FILED WITH THE
       PROTHONOTARY NO LATER THAN SEPTEMBER 25, 2001.
  31   08/22/2001
       AMENDED DIRECTIONS TO COURT REPORTER TO PROCEEDINGS BELOW
       TO BE TRANSCRIBED. (COPY)
       FILED BY DEFENDANT IN SUPREME COURT
  33   09/14/2001                                    DEL PESCO SUSAN C.
       (ERROR/FILED DATE): SENTENCE ORDER SIGNED & FILED 9/17/01.
       ** NOTE ** CORRECT FILED DATE IS 7/20/2001. ***
  34   09/14/2001
       TRANSCRIPT FILED.
       SENTENCING ON JULY 20, 2001
       BEFORE JUDGE DELPESCO
  35   09/25/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT FOR JUNE 19, 2001
       - BEFORE JUDE DEL PESCO
  36   09/25/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT JUNE 20, 2001
       BEFORE JUDGE DEL PESCO
  37   09/26/2001
       LETTER FROM SUPREME COURT TO MICHELE ROLFE, COURT REPORTER
       RE: THE COURT IS IN RECEIPT OF YOUR LETTER DATED SEPTEMBER 21, 2001.
       REQUESTING AN EXTENSION OF TIME TO FILE THE TRANSCRIPT. PLEASE BE
       ADVISED THAT YOUR REQUEST IS GRANTED. THE TRANSCRIPT IN DUE NO
       LATER THAN OCTOBER 9, 2001.
  38   10/09/2001
       TRANSCRIPT FILED.
       TRIAL TRANSCRIPT FOR JUNE 21, 2001.
       BEFORE JUDGE DEL PESCO.
```

$B-5$          $8-105$

SUPERIOR COURT CRIMINAL DOCKET                  Page    6
( as of  02/07/2006 )

ate of Delaware v.  DEVEARL L BACON                          DOB: 11/27/1969
uate's Atty: SEAN P LUGG , Esq.            AKA: DEVERAL BACON
Defense Atty:                                   DAVID JOHNSON

      Event
No.   Date            Event                              Judge
--------------------------------------------------------------------------
39   10/16/2001
      RECORDS SENT TO SUPREME COURT.
40   10/16/2001
      RECEIPT FROM SUPREME COURT ACKNOWLEDGING THE RECORD.
41   01/25/2002
      TRANSCRIPT FILED.
      ORAL ARGUMENT, JUNE 21, 2001.
      BEFORE JUDGE DEL PESCO.
42   07/19/2002
      MANDATE FILED FROM SUPREME COURT:  SUPERIOR COURT JUDGMENT AFFIRMED.
      SUPREME COURT CASE NO: 369. 2002
      SUBMITTED: MAY 7, 2002
      DECIDED: JULY 1, 2002
      BEFORE HOLLAND, BERGER AND STEELE, JUSTICES.
43   01/24/2003
      DEFENDANT'S LETTER FILED.
      REQUEST FOR P.D. OFFICE TO GIVE TRANSCRIPTS.
45   02/13/2003
      DEFENDANT'S LETTER FILED.
      REQUEST FOR JUDGE TO ORDER P.D. OFFICE TO GIVE TRANSCRIPTS.
44   02/20/2003                                    DEL PESCO SUSAN C.
      MOTION FOR TRANSCRIPT FILED PRO-SE.  REFERRED TO JUDGE DEL PESCO FOR
      REVIEW.  ALSO REQUEST FOR EXTENTION OF TIME TO FILE POST CONVICTION
      RELIEF.
46   03/31/2003                                    DEL PESCO SUSAN C.
      ORDER:  IN RESPONSE TO YOUR MOTION FOR COPIES OF TRIAL TRANSCRIPTS
      ENCLOSED PLEASE FIND COPIES OF THE FOLLOWIN:
      1. TRIAL TRANSCRIPTS, 6/19/01;
      2. TRIAL TRANSCRIPTS, 6/20/01; AND
      3. TRIAL TRANSCRIPTS, 6/21/01.
      YOUR REQUEST FOR AN EXTENTION OF TIME WITHIN WHICH TO FILE RULE 61
      POSTCONVICTION RELIEF IS DENIED.
      SO ORDERED JUDGE DEL PESCO
47   09/17/2004
      MOTION FOR POSTCONVICTION RELIEF FILED. PRO SE
      REFERRED TO JUDGE DELPESCO
48   09/21/2004
      LETTER FROM A. HAIRSTON, PROTHONOTARY OFFICE   TO SEAN LUGG, DAG
      RE: NOTICE OF PRO SE FILING OF MOTION FOR POSTCONVICTION RELIEF.
      ATTACHED: COPY OF MOTION
49   09/23/2004
      EMAIL FILED TO: SEAN LUGG, DAG & EDMUND HILLIS, ESQ. RE: RULE 61

$B-6$          $A-106$

```
      . `           . `
   .`    `       .`
```

   ate of Delaware v.   DEVEARL L BACON                                DOB: 11/27/1969
   ᵥᵤate's Atty: SEAN P LUGG , Esq.             AKA: DEVERAL BACON
   Defense Atty:                                     DAVID JOHNSON

        Event
No.   Date            Event                                        Judge   ‚
-------------------------------------------------------------------------------------
        RE: COUNSEL'S RESPONSES ARE DUE 10/6/04
50    10/06/2004
        EMAIL FILED TO: JUDGE DEL PESCO FROM: EDMUND HILLIS, ESQ
        RE: STATE'S REQUEST FOR ENLARGEMENT OF TIME IN WHICH TO RESPOND TO
        MOTION FOR POSTCONVICTION. MR. HILLIS IS ALSO REQUESTING ENLARGEMENT
        OF TIME TO FILE RESPONSE.
        * REQUEST GRANTED. RESPONSES DUE 10/22/04
51    10/12/2004
        DEFENDANT'S LETTER FILED. REQUESTING CURRENT COURT DOCKET, TO ENSURE
        THAT A DECISION HAS NOT BEEN MADE ON RULE 61.
        DEFENDANT INDICATES IN LETTER THAT LEGAL MAIL WAS OPENED BY DOC.
        SENT DOCKET 10/18/04 AMH
        LETTER REFERRED TO JUDGE DEL PESCO.
53    10/19/2004
        DEFENDANT'S LETTER FILED.
        TO: JUDGE DELPESCO
        RE: LEGAL MAIL ISSUE AT PRISON
52    10/22/2004
        STATE'S RESPONSE TO DEFENDANT'S MOTION FOR POST CONVICTION RELIEF.
        FILED BY SEAN LUGG, DAG
        REFERRED TO JUDGE DELPESCO
54    11/15/2004
        MOTION FOR EXTENSION OF TIME FILED. PRO SE
        REFERRED TO JUDGE DEL PESCO.
56    11/17/2004
        DEFENDANT'S REQUEST FILED.
        TO: JUDGE DEL PESCO
        REQUEST TO ORDER WARDEN CARROL TO PAY MOVANT $300 PRIVATE USE PENALTY
        FOR OPENING DEFENDANT'S MAIL.
55    11/19/2004
        DEFENDANT'S LETTER FILED. RE: PRAYED THIS COURT WILL AMEND DOCUMENTS
        THAT MOVANT RECEIVED STATE'S RESPONSE ON NOV. 10. 2004 (PRO SE)
        REFERRED TO JUDGE DEL PESCO.
57    12/07/2004
        MOTION FOR EXTENSION OF TIME FILED. PRO SE
        REFERRED TO JUDGE DEL PESCO.
63    12/18/2004
        AFFIDAVIT OF DEVERAL BACON . RULE 61. REFERRED TO JUDGE DELPESCO.
64    12/18/2004
        DEFENDANT'S RESPONSE FILED. RE: RULE 61
        REFERRED TO JUDGE DELPESCO
58    12/20/2004
```

$$B-2 \qquad \backslash -107$$

SUPERIOR COURT CRIMINAL DOCKET                    Page    8
( as of  02/07/2006 )

ate of Delaware v.  DEVEARL L BACON                       DOB: 11/27/1969
ᴜᴜate's Atty: SEAN P LUGG , Esq.          AKA: DEVERAL BACON
Defense Atty:                                  DAVID JOHNSON

        Event
No.   Date           Event                           Judge .
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
        DEFENDANT'S RESPONSE FILED. RE: POSTCONVICTION RELIEF.
        REFERRED TO JUDGE DEL PESCO
59    12/29/2004
        MOTION FOR ENLARGEMENT OF TIME TO FILE REPLY ( PRO SE) FILED.
        REFERRED TO JUDGE DELPESCO
60    01/04/2005
        MOTION TO AMEND SUBISSUES OF GROUND ONE (RULE 61) FILED. PRO SE
        REFERRED TO JUDGE DEL PESCO.
61    01/06/2005
        MOTION FOR ENLARGEMENT OF TIME TO FILE REPLY (PRO SE) FILED.
        REFERRED TO JUDGE DEL PESCO.
62    01/10/2005
        MOTION TO WITHDRAW DEFENDANT'S REPLY TO STATE'S RESPONSE FILED.
        FILED PRO SE
        REFERRED TO JUDGE DELPESCO
65    01/19/2005
        DEFENDANT'S LETTER FILED.
        LETTER ASKING TO STRIKE THE FIRST REPLY LETTER TO THE COURT FROM THE
        RECORD.  REFERRED TO JUDGE DEL PESCO.
      02/15/2005
        DEFENDANT'S REQUEST FILED.
        COPY OF JURY INSTRUCTIONS
67    04/14/2005
        DEFENDANT'S RESPONSE FILED. RE: RULE 61
        REFERRED TO JUDGE DELPESCO
69    05/17/2005
        MOTION FOR LEAVE TO FILE DEFENDANT'S COMPLETE REPLY FILED.
        PRO SE
        REFERRED TO JUDGE DEL PESCO
68    05/18/2005
        STATE'S REPLY TO THE DEFENDANT'S MOTION FOR POST-
        CONVICTION RELIEF.
        REFERRED TO JUDGE DELPESCO
70    06/27/2005
        AFFIDAVIT OF TRIAL COUNSEL IN RESPONSE TO DEFENDANT'S MOTION FOR
        POSTCONVICTION RELIEF PURSUANT TO SUPERIOR  COURT CRIMINAL RULE 61
        FILED BY EDMUND HILLIS, ESQ
        REFERRED TO JUDGE DELPESCO
71    07/11/2005                              DEL PESCO SUSAN C.
        LETTER/ÒRDER ISSUED BY JUDGE: DEL PESCO  TO: DEVEARL BACON.
        RE: RULE 61. ENCLOSED WITH THIS LETTER IS A COPY OF MR. HILLIS'
        AFFIDAVIT FILED WITH THE COURT IN RESPONSE TO YOUR MOTION FOR POST-

$B-8$                    $\Lambda - 108$

SUPERIOR COURT CRIMINAL DOCKET                  Page    9
( as of  02/07/2006 )

  ate of Delaware v.  DEVEARL L BACON                             DOB: 11/27/1969
  _ate's Atty: SEAN P LUGG , Esq.           AKA: DEVERAL BACON
  Defense Atty:                                  DAVID JOHNSON

      Event
No.   Date           Event                                     Judge
-----------------------------------------------------------------------------
      CONVICTION RELIEF, IN WHICH YOU ALLEGE INEFFECTIVENESS ASSISTANCE OF
      COUNSEL AT YOUR TRIAL FOR ROBBERY AND RELATED CHARGES. MR. HILLIS
      CAUSED A COPY OF HIS AFFIDAVIT TO BE SERVED ON YOU AT D.C.C. AND JUNE
      27, 2005. PURSUANT TO RULE 61(G)(3) YOU NOW HAVE THE OPPORTUNITY TO
      ADMIT OR DENY(THE) CORRECTNESS OF MR. HILLIS' ASSERTIONS. IF YOU
      CHHOSE TO TAKE THIS OPPORTUNITY, YOUR RESPONSE SHALL BE FILED WITH THE
      PROTHONOTARY ON OR BEFORE MONDAY, JULY 25, 2005. IT IS SO ORDERED.
72    07/27/2005
      DEFENDANT'S RESPONSE FILED. PRO SE
      REFERRED TO JUDGE DELPESCO
73    08/05/2005
      DEFENDANT'S LETTER FILED. MR. BACON LETTER ASK IF THE DEFENDANT'S
      RESPONSE FILED IN APRIL 2005 WAS RECEIVED BY THE COURT.
      THE DOCKET INDICATES RESPONSE FILED.
      SENT COPY OF DOCKET
74    08/29/2005                                  DEL PESCO SUSÀN C.
      OPINION: UPON CONSIDERATION OF DEFENDANT'S MOTION FOR POSTCONVICTION
      RELIEF: DENIED.
      DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME TO FILE REPLY TO STATE'S
      ANSWER-GRANTED AND DEFENDANT'S MOTION TO FILE AMENDED REPLY TO STATE'S
      ANSWER-GRANTED.
      IT IS SO ORDERED.
75    09/29/2005
      LETTER FROM SUPREME COURT TO SHARON AGNEW, PROTHONOTARY
      RE:  AN APPEAL WAS FILED ON 9/27/05.
      THIS RECORD IS DUE 10/20/05.
      453, 2005.
76    09/29/2005
      NOTICE OF APPEAL FILED IN SUPREME COURT (COPY).
77    10/19/2005
      RECEIPT FROM SUPREME COURT ACKNOWLEDGING RECORD.
      453, 2005

            *** END OF DOCKET LISTING AS OF  02/07/2006 ***
            PRINTED BY: JAGVLCM

B-9          δ-/09

$\cancel{\phantom{X}}$ 10

## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

### IN AND FOR NEW CASTLE COUNTY

| STATE OF DELAWARE | : | |
|---|---|---|
| v. | : | ID No. 0006017660 |
| DEVEARL BACON, | : | |
| Defendant. | : | |

## TRIAL COUNSEL'S AFFIDAVIT IN RESPONSE TO DEFENDANT'S MOTION FOR POST-CONVICTION RELIEF PURSUANT TO SUPERIOR COURT CRIMINAL RULE 61

I, Edmund M. Hillis, Assistant Public Defender, do hereby swear and affirm the following:

I am admitted to practice in the Courts of this State by the Delaware Supreme Court. I am and have been so, in good standing, since my admission in December, 1980. The Court has ordered that I respond to specific allegations of ineffective assistance of counsel alleged by the defendant, Devearl Bacon, in filings with the Court dated September 14, 2004 and January 6, 2005. This then is counsel's response thereto:

### I. PRELIMINARY MATTERS

1. As a result of a change of assignments in the Office of the Public Defender (OPD) in late 2000, Raymond Radulski, Esq. and I switched positions. I undertook assignment of his entire caseload, which included representation of Devearl Bacon as defendant in a criminal action, State v. Devearl Bacon, ID # 0006017660. Mr. Radulski had originally been assigned the case, his appearance was entered on July 5, 2000. I substituted my appearance on December 18, 2000. Mr. Bacon was advised by letter of the change in assignment. I continued to represent Mr. Bacon through and including trial of the matter and subsequent direct appeal of his

$\text{B}-10$

$\text{A}- 110$

STATE v. BACON                                    TRIAL COUNSEL'S AFFIDAVIT
ID# 0006017660                                                    PAGE    2

convictions to the Delaware Supreme Court.

2. My initial review of Mr. Radulski's files resulting in prioritizing items for review with

priority given to matters assigned trial dates (this case had been assigned a trial date of June 19,

2000. I reviewed the file in this matter on February 22, 2001 (See Exhibit "A", OPD "Case

Notes and Prison Visits, Devearl Bacon, PD# 2100099, ID# 0006017660, 2/22/01)

3. Pursuant to my review of the file I communicated with the assigned prosecutor Sean

Lugg, DAG and Mr. Bacon as necessary.

## II. COUNSEL'S RESPONSE TO SEPTEMBER 14, 2004 FILING

I will respond to the claims of ineffective assistance of counsel *seriatim*.

1. " Prejudicial joinder (prior Crimes evidence) PDWPP Offenses... Defense Counsel
was ineffective for failure to identify this issue: Pre-trial, during Trial and raised on Direct
Appeal."
Counsel did not take any action pretrial to sever the Possession of Deadly Weapon by

Person Prohibited (PDWPP) charges. The time for such pretrial motions had passed when

Counsel was assigned the file. Counsel nonetheless considered filing such a motion, however his

understanding of the law, then and now, is that there is no *per se* requirement that such charges

be severed for trial; and, further it is the prevailing practice in the Superior Court that such

severance is not made. Counsel attempted to protect the defendant from the jury learning of the

nature of the predicate convictions through stipulation to the defendant's status as a "person

prohibited".

2. "Prejudicial Joinder of Charges Committed at Four Separate and Distinct
Times...Defense Counsel was ineffective for failure to identify this issue: Pre-trial, during Trial
and raised on Direct Appeal."

No action was taken with regard to requesting severance of the charges. While, as in the

$B-11$                    $\delta - 110$

previous case, time for filing such a motion had passed by the time trial counsel was assigned to the case, this was not a determining factor on this issue. Counsel carefully reviewed the indictment and discovery materials. ( See Exhibit "B", "INDICTMENT CHART") Based on review of case law in the area of severance of offense counsel made a professional judgement that there was insufficient merit in such a motion to make a good faith argument to the Court on the issue.

3. "Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts."

Having read the allegation and "MEMORANDUM OF GROUNDS AND FACTS" counsel is unable to determine with any particularity exactly what "Prior Bad Acts" evidence is the basis of this claim. Counsel is very familiar with the law of introduction of prior acts of a defendant and his recollection is that he made objections he believed were appropriate from a legal and factual point of view.

4. "In Court Identification of Defendant by State Witness, Dawn Smith..."

Defendant's claims here are not supported by the facts as Counsel recalls them and in any case are not supported by the law.

5. " Ineffective Assistance of Counsel For Failure to Raise the Amendment to Defendant's Indictment Counsel Argued Prior to Trial."

Counsel could not have raised the issue prior to trial as the issue did arise until the day of trial. Counsel did object, argue the objection, and appealed the trial court's overruling of his objection in that regard.

6. Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify and Raise this Discovery Violation concerning a video tape made of Defendant's statement at the police station, either during trial or on Direct Appeal.

$B-12$      $\{-112$

| STATE v. BACON | TRIAL COUNSEL'S AFFIDAVIT |
|---|---|
| ID# 0006017660 | PAGE    4 |

On initial review of file Counsel did note that a blank tape had been provided to the State for purposes of making a copy of defendant's video taped statement. Counsel communicated with the prosecutor concerning same on the day after his initial review of the file on February 22, 2001. Counsel was informed by the prosecutor that he believed that no such statement had been made and that he had confirmed that belief with the police. (See Exhibit "A", OPD "Case Notes and Prison Visits, Devearl Bacon, PD# 2100099, ID# 0006017660, 2/22/2001 and 2/23/2001)

### III.   COUNSEL'S RESPONSE TO JANUARY 6, 2005 AFFIDAVIT

I will respond to defendant's factual claims *seriatim*.

1. Admitted.

2. Admitted.

3. Admitted as to the number of times met in the prison ( See, Exhibit "A", OPD "Case Notes and Prison Visits, Devearl Bacon, PD# 2100099, ID# 0006017660, 6/14/01). Counsel has no present recollection as to the length of the visit.

4. Admitted.

5. Admitted.

6. Denied.

7. Denied. The defense strategy employed here with regard to the PDWPP charge is not unusual for me, I do not however as a matter of practice ever enter into a fact stipulation without discussing the substance of the stipulation with them.

Dated:  June 15, 2005

EDMUND M. HILLIS

$B$-$13$        $\delta$ - $113$

EDMUND M. HILLIS, affiant, personally know to me to be same, did appear before,

swear to and subscribe the foregoing "AFFIDAVIT OF TRIAL COUNSEL" on June 15, 2005 at

Georgetown, Sussex County, State of Delaware.

STEPHANIE TSANTES
ATTORNEY AT LAW

$\beta - 14$          $\delta - 114$

## **AFFIDAVIT OF MAILING**

The undersigned, being a member of the Bar of this State, hereby certifies that on February 27, 2006, he caused to be mailed by first class U.S. Mail two copies of the within document to:

> Devearl Bacon
> SBI #221242
> Delaware Correctional Center
> 1181 Paddock road
> Smyrna, DE 19977

Timothy J. Donovan, Jr.
Deputy Attorney General
I.D. # 2063

$\delta$-115

EXHIBIT *18*

8-116

IN THE SUPREME COURT OF DELAWARE

DEVEARL L. BACON                       )
APPELLANT/DEFENDANT                    )
BELOW                                  )
      v.                               )      No. 453, 2005
STATE OF DELAWARE                      )      Court Below: Superior Court
APPELLEE/PLAINTIFF                     )      of the State of Delaware in
BELOW                                  )      and for New Castle County


ON APPEAL FROM SUPERIOR COURT OF
THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY


APPELLANT'S REPLY BRIEF


Timothy J. Donovan, Jr.                         Devearl L. Bacon
Deputy Attorney General                         SBI #221242
820 N. French Street                            Delaware Correctional Center
Wilmington, DE 19801                            1181 Paddock Road
                                                Smyrna, DE 19977


Date: March 31, 2006


$-117

## TABLE OF CONTENTS

PAGES

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Nature and Stage of the Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Arguments:

VI    Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to
      Identify and Raise This Super Ct. Crim. Rule 16(A)(d) Discovery Violation
      Concerning a Videotape Made of Defendant's Statement at Police Station,
      Either During Trial or on Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I     Prejudicial Joinder of PDWPP (Prior Crime Evidence) Offenses Violated
      Due Process, and Caused Irreparable Damage Prejudicing Defendant's
      Right to a Fair Trial . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II    Prejudicial Joinder of Charges Committed at Four Separate and Distinct
      Time and Locations Severely Prejudiced Defendant's Right to a Fair Trial . . . . . 7

III   Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts,
      or Request a Hearing (404) under DeShields v. State,
      Del. Supr. 706 A.2d 502 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV    In-Court Identification of Defendant by State Witness Dawn Smith Violated
      Defendant's Right to a Fair Trial, When There Was NO "Independent Origin
      for This "In-Court Identification. Defense Counsel Was Ineffective for His
      Failure to Raise This Issue on Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V     Ineffective Assistance of Counsel for Failure to Raise the Amendment to Defendant's
      Indictment Counsel Argues Prior to Trial. Defendant is
      Prejudiced Because He Would Have Had More Favorable Review on
      Direct Appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

$\int - 118$

## TABLE OF AUTHORITIES

                                                                              Pages

Brady v Maryland, 375 US 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,5

DeShields v. State, Del. Supr. 706 A.2d 502 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

Flamer v. State, 585 A.2d 736, 746 (Del. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Johnson v. State, 550 A.2d 903 (Del. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Mayo v. Henderson, 13 A.2d 528 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

State v. Rosa, 1992 WL302295 at *7 (Del. Super.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,5

Weeden v. State, 750 A.2d 521, 527-528 (Del. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## STATUTES AND RULES

Del. Super. Ct. Crim. R. 7(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,13

Del. Super. Ct. Crim. R. 16(A)(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Del. Super. Ct. Crim. R. 61(i)(1)(2)(3)(4)&(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Del. Super. Ct. Crim. R. 61(i)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Del. Super. Ct. Crim. R. 61(i)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2,5

Del. Prof. Con. Rule DR 1-102 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Del. Prof. Con. Rule DR 7-103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

DRE 103(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : 9

DRE 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

DRE 401 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8,9

DRE 402 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8,9

DRE 403 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4,8,9

DRE 404 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2,4,8

DRE 404(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1,8

DRE 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

Supreme Court Rule 19(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5

§ - 119

## NATURE AND STAGE OF THE PROCEEDINGS

This is the Appellant's Reply to the State's Answer opposing Defendant's claims. This case has a complicated history. The claims are both factually and legally complex. While the Defendant understands, the State is entitled to benefit to all inferences that reasonably may be drawn from proven facts by an orderly and logical deductive process, where findings of fact are "contrary to the record" are not "facts," as such.

Defendant, having carefully reviewed the record, finds it necessary to shed some light upon the several misrepresentations and mischaracterizations of material fact State Attorney has cast upon the facts of this case regarding its "Procedural History" and "Fact" sections of the State's Answer. Some of the State's facts are inaccurate.

The State's case was, and still is weak.[1] Because of this weakness, throughout the pretrial and trial stages, the Defendant's rights were "watered down" by bad decisions of this Counsel and questionable actions by the State Attorney. The common thread an experienced eye sees throughout the Defendant's case is that of "the ends justify the means."

## SUMMARY OF THE ARGUMENT

The State purposely elicited[2] irrelevant damaging testimony meant to attack Defendant's character, eroding Defendant's presumption of innocence by introduction of evidence that tends to show a propensity to commit crime.[3] This was done early in the trial thus inflaming the jury's prejudice against the Defendant.[4]

The presumption of innocence is a right Defendant has that lawfully tells the jury that

---

[1] The first 5 counts of indictment were dropped for lack of evidence against Defendant, and Counts 15 through 17 were lost at trial for lack of evidence against Defendant.

[2] Johnson v. State, 550 A.2d 903 (Del. 1988) (State had a duty to instruct its witness not introduce highly damaging testimony)

[3] DRE 404(A)

[4] This evidence also exploited the stipulation PFWPP evidence.

1

$\delta - 120$

when they view the evidence, if there are two equal explanations, one that is favorable and one that is unfavorable, the law is that the jury must view the favorable aspect as regards to the Defendant. This is correct? However, once this was taken from Defendant, the Law of Attention interceded. The jury rearranged their attention toward the finding of guilt in "the more evidence one looks for to support a given conclusion, the more one will find.[5] Views have inertia. The jury was programmed to see a pattern or propensity in the Defendant to commit crime. The prejudicial effect is overwhelming in this respect. There's no argument here. The jury's prejudice was inflamed, particularly in light of all these counts being tried in the same trial, in front of the same jury.

Concerning Rule 61(i)(5) exception asserted as "a mistaken waiver of fundamental rights" that open the gate to narrow path that allows Defendants entrance to review under a "miscarriage of justice that undermined the fundamental legality, reliability, integrity or fairness of the proceedings." This is specifically for post-conviction issues that have not been previously litigated, and the default was not caused by ineffective assistance of Counsel.[6]

## ARGUMENT VI

Prosecutorial Misconduct; Ineffective Assistance of Counsel for Failure to Identify and Raise this Super. Ct. Crim. Rule 16(A)(d) Discovery Violation Concerning a Videotape Made of Defendant's Statement at Police Station, Either During Trial or on Direct Appeal.

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court Abused it's discretion in it's denial of Appellant's Argument VI, the Court stated "There is nothing in the record to support Defendant's assertion that a statement videotaped or that the prosecution failed to provide such tape to the defense." (Decision pg. 11)

---

[5] The Magicians Companion, Witcumb Axioms pg 12; DRE 404, propensity to commit crime, particularly when no cautionary instruction or limiting instruction was given to them.
[6] State v. Rosa, 1992 WL302295 at 7 (Del. Super.)

2

$\delta - 121$

*Appellant Reply to State's Answer:*

In order to have this Appeal effectively heard, considered, and decided fairly, it is Imperative that this Court Remand to the Court Below. The State's Answering Brief contradicts the soundness, fairness, integrity, and reliability of the Superior Court's Order of Opinion and trial Counsel's Affidavit.

*In Superior Court's Decision page 8. The Court held:*

A. "Corporal Mark Spence testified that after Defendant had been taken to the Wilmington Police Station . . . , he voluntarily stated to talk about the incidents, and Corporal Spence read him his Miranda Rights even though he was not being interrogated. "As Defendant continued to talk," he referred to having been "released from the Plummer Center." The testimony included no further reference to this topic, and no questions were asked or objections entered.

*In State's Answer Page 9, The State held:*

B. "Random, spontaneous statements he made at the Wilmington Police Stations were videotaped in the normal course, but the tape was regarded as lacking in evidentiary value and was reused."

*In Trial Counsel's Affidavit, Counsel held:*

C. Page 2-- "Pursuant to my review of the file I communicated with the assigned prosecutor Sean Lugg."

D. Page 4—"On initial review of file, Counsel did note that a blank tape has been provided to the State for purposes of making a copy of Defendant's videotaped statement. Counsel communicated with the prosecutor concerning same on the day after his initial review of the file on February 22, 2001. Counsel was informed by the prosecutor that he believed that no such statement had been made and that he had confirmed that belief with the police."

3

$\int - 122$

*Appellant Asserts:*

E. Trial Counsel's recollection reviewing the "issue" of videotape is inconsistent with the State's Answer to the Court.

F. The Superior Court held in Decision page 11:

    1. This claim has no factual basis and does not provide grounds for post-conviction relief.

The Suppression by the Prosecution of evidence favorable to the Defendant when requested violates Due Process, where the evidence is material either to guilt or punishment irrespective of the good faith or bad faith of the Prosecution, Brady v. Maryland, 375 US 83 (1963). Code of Professional Responsibility DR 7-103 provides for timely disclosure to Counsel for the Defendant, or to the Defendant himself if he has no Counsel, of the existence of evidence known to the Prosecutor that tends to negate the guilt of the accused, mitigate the degree of the offense or reduce the punishment.

It is Unprofessional Conduct for the Prosecutor, intentionally to misrepresent matters of fact or law to the Court. The Code of Professional Responsibility DR 1-102 provides that a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation or engage in conduct that is prejudicial to the Administration of Justice. Code of Professional Responsibility Canon 9 provides that a lawyer should avoid even the appearance of professional impropriety.

Failure to provide the videotape also allowed testifying detective to bring in evidence the Defendant was just released from prison house Plummer Center evidence that under DRE 401 through 404 et. seq. is not relevant, and is highly prejudicial. A detective made other claims that were highly prejudicial to Defendant including escape after conviction from Plummer Center; Defendant hadn't slept in three days, and he believed he would do 25 years. Specifically, the

4

$\text{\b{A}} - 123$

unreliability of detective's testimony is at issue considering the complete lack of any handwritten notes, and there were no other police witnesses that witnessed these alleged statements made by Defendant.

When a discovery violation prejudices substantial rights of a Defendant, his conviction must be reversed. Had the Defendant been provided the videotape he would have access to the "best evidence" of his statement and made appropriate pretrial suppressions and exclusions IN LIMINE of the evidence of prior bad acts, and the jury would be able to properly weight and balance Defendant's statement in a fair light. This is favorable evidence under Bradv v. Marvland.

**Ground Six** concerns a Due Process issue, "A Mistaken Waiver" caused by Counsel's failure to develop facts at trial, and raise this issue on Direct Appeal, as Bradv material, among others. Rule 61(i)(5) provides for post-conviction issues which have not been previously litigated, where procedural default was not caused by ineffective assistance of Counsel.[7]

1.    Counsel's performance was professionally deficient in failing to request a Dewberry instruction concerning the loss of favorable evidence to defense.

2.    Counsel's performance was deficient with the Second Cir. Terms a "Rogario" claim for State's disclose the videotape.   See Mavo v. Henderson 13 A.2d 528 (2nd Cir. 1994).

Appellant asserts, that a Detailed Factual Record is required at the Evidentiary Stage, particularly when a Summary Judgement may result. This case should be reversed pursuant to Supreme Court Rule 19(c).

## ARGUMENT I

Prejudicial Joinder of PDWPP (Prior Crime Evidence) Offenses Violated Due Process, and Caused Irreparable Damage Prejudicing Defendant's Right to a Fair Trial.

[7] State v. Rosa, 1992 WL302295 at 7 (Del. Super.)

$\delta-/24$

## STANDARD AND SCOPE OF REVIEW

Whether Superior Court abused it's discretion in it's denial of Appellant's Argument I, the Court stated "Defense Counsel asserts in his Affidavit that the stipulation protected Defendant by preventing the jury from learning the details of his prior criminal convictions." This assertion is correct.

*Appellant's Reply to State's Answer:* This reversible error was committed by Trial Court and Defense Counsel for not objecting when the Trial Court permitted the joinder of the three (3) counts Possession of Deadly Weapon by a Person Prohibited (PDWPP) to the other 15 counts. These charges require the disclosure of a Defendant's prior convictions as a necessary element of the offense. Charges that require disclosure of a Defendant's prior criminal record such as PDWPP or escape after convictions require separate trials because of "inherent prejudice." Consideration of judicial economy does not offset prejudicial effect. This was a prejudicial joinder and it is well-established procedure to have separate trials regarding these offenses. This is a clear violation of Defendant's Due Process Rights as guaranteed under the 6th and 14th Amendments of the U.S. Constitution.

A.    None of these three charges has a direct relationship to the other offenses and can be proven without reference to the remaining offenses.

B.    Defendant was unaware that Trial Counsel entered into a "Stipulated Agreement" for Him with the State regarding Defendant's prior criminal "status" to be brought in front of his jury.

C.    The introduction of the Stipulation was an unreasonable decision made by Counsel. It was deficient performance that introduced evidence that had absolutely no strategic or tactical value unless Defendant is taking the stand.

6

$\int - /25$

The Defendant has claimed that Counsel's "failure to identify" issues in Ground One

"Pre-trial, during Trial and Failure to Raise on Direct Appeal Effectively states "mistaken

waiver," three of them, on those issues. This was a close case to begin with. The evidence of

these crimes probably heavily influenced the jurors to imply a general criminal disposition of the

Defendant, and probably had been a determining factor finding guilt on "most" of the other

charges, based also on the "Cumulative Effect." This was a Reversible Error.

## ARGUMENT II

Prejudicial Joinder of Charges Committed at Four Separate and Distinct Time
and Locations Severely Prejudiced Defendant's Right to a Fair Trial.

## STANDARD AND SCOPE OF REVIEW

Whether Superior Court Abused it's discretion in it's denial of Appellant's Argument II,

the Court stated "Thus even if Defense Counsel had moved to sever, the Motion would no doubt

have been denied. (Decision pg. 7)

*Appellant's Reply to State's Answer:* A Reversible Error was committed by Trial Court and

Defense Counsel for not objecting in allowing the State to present a joint trial containing

eighteen counts stemming from four separate locations. This permitted the jury to cumulate the

evidence, and was free to infer a general criminal disposition of the Defendant. As a result, the

Defendant was convicted. The cumulations of the separate incidents of Star Liquors, (two

incidents) the 7-Eleven Store and at a vehicle in Wilmington in which the PDWPP charge

stemmed violated Defendant's 6th and 14th Amendments of the U.S. Constitution. Trial Counsel

was ineffective for failure to move for severance of these charges, failing to object at trial,

failure to identify and raise these claims on direct appeal.

All eighteen counts levied against Defendant were joined in a joint trial. Defendant was

7

$-126$

inevitably prejudiced and this prevented him from receiving a fair trial. The danger arising from the cumulative effect of the evidence of the other charges on the minds of the jurors was too great to tolerate a not guilty finding on all these charges. In fact, the State offered car jacking evidence at the Star Liquors, to prove existence of that (car jacking) crime by using the 7-Eleven store evidence. This was error because it presupposes that the same perpetrator kept the proceeds of that crime, the car, and used it in an unrelated crime a day later. This is cumulative evidence.

This is reversible error. Ground Two consists of the same three mistaken waivers, on that set of issues.

## ARGUMENT III

Ineffective Counsel for Failure to Object to Introduction of Prior Bad Acts, or Request a Hearing (404) under DeShields v. State, Del. Supr. 706 A.2d 502-

### STANDARD AND SCOPE OF REVIEW

Whether Superior Court abused it's discretion in it's denial of Appellant's Argument III, the Court stated "Even if any juror knew that the Plummer Center is a detention facility, no prejudice could result because all jurors were informed that Defendant is a convicted felon via the stipulation." (Decision page 9)

*Appellant's Reply to State's Answer:* Defense Counsel was ineffective when he failed to object to State's introduction of evidence of prior bad acts in violation of DER 401 through 404(A) and (b). This evidence was introduced without DeShields[3] analysis to determine relevant, to balance the prejudicial effects, and/or any instruction to the jury as to how to use this evidence, and "which case" to use it in. This evidence caused irreparable injury and prejudiced Defendant's case particularly when Defendant purposely choose not to take the witness stand to keep any

[3]DeShields v. State, Del. Supr. 706 A.2d 502 (1998)

$\cancel{}$ - /27

prior bad acts, crimes or prior incarceration from the jury. This <u>violated Defendant's due process right</u> guaranteed under the 6th and the 14th Amendment of the U.S. Constitution.

This evidence was introduced without any memorial, no other witnesses other than one detective, and the failure to provide defense with the videotape, legally the best evidence of this interrogation. Because of the closeness of this case, a shadow is cast over the reliability of this evidence. Especially when, if provided to defense, these prior bad acts and crimes could have been kept from the jury pursuant to lawful court procedure rules, and kept the integrity of this evidence intact.

**Ground Three** explains "a mistaken waiver" caused by Counsel's failure to object to introduction of Prior Bad Acts, and his failure to request a hearing to determine "<u>even if</u>" they were permitted that a "<u>limiting instruction</u>" regarding the relevance of those bad acts be given to the jury.[9] This is <u>Reversible Error</u>.

## ARGUMENT IV

In-Court Identification of Defendant by State Witness Dawn Smith Violated Defendant's Right to a Fair Trial When There Was NO "Independent Origin for This" In-Court Identification. Defense Counsel <u>Was Ineffective</u> for His Failure to Raise This Issue on Direct Appeal.

## STANDARD AND SCOPE OF REVIEW

Whether Superior Court abused its discretion in its denial of Appellant's Argument IV, the Court stated "Defense Counsel had no reason to object to the identification". . . (Decision Page 10)

*Appellant Reply's to State's Answer:* State's witness, Dawn Smith's "in-court identification" of Defendant violated Defendant's Due Process Rights under the 14th Amendment of the U.S. Constitution. Failure of trial Counsel to raise this on appeal is ineffective assistance of Counsel,

---

[9] <u>DRE</u> 103. 105; 401. 402. 403. 404(b). See issue <u>See</u> Plain Error <u>DRE</u> 103(d)

9

$\int - /28$

in violation of the 6th Amendment of the U.S. Constitution.

The State's star witness, Dawn Smith's in-court identification irreparably prejudiced Defendant under all the circumstances. There "was no independent origin" for an in-court identification because: (a) This witness had never seen the Defendant before the incident; (b) this witness had no opportunity for an accurate identification because the perpetrator was wearing "a mask" the entire time of her observation; (c) the witness "failed to identify the Defendant" in a photo array right after the incident in an array of photos that included the Defendant; (d) no other witnesses made a positive accurate identification of Defendant; (e) there were no finger prints found at any of the robbery scenes; (f) each witness at the Star Liquors scene gave "different" descriptions of the perpetrator; (g) this case was a close case and depended on an accurate identification of the perpetrator. Reliability is the linchpin in determining the admissibility of identification testimony, the witness receiving descriptions from the investigating detectives are not reliable because it is not and "independent origin."

**Ground Four** explains "a mistaken waiver" caused by Defendant's Counsel in his failure to raise this issue on Direct Appeal, concerning confrontation. This is Reversible Error.

## ARGUMENT V

Ineffective Assistance of Counsel for Failure to Raise the Amendment to Defendant's Indictment Counsel Argues Prior to Trial. Defendant is Prejudiced Because He Would Have Had More Favorable Review on Direct Appeal.

## STANDARD AND SCOPE OF REVIEW

Whether Superior Court abused its discretion in its denial of Appellant's Argument V,

the Court stated "Defendant cannot show any prejudice resulting from Counsel's conduct."

(Decision Page 5)

*Appellant's Reply to State's Answer:* The Amendment of Defendant's Indictment of Robbery of

10

$\delta$-129

"car keys and car" to an (undetermined amount) of "U.S. Currency" effectively altered the substance of one element of the offense, because the Defendant was not "fully informed" of the nature of the charges as guaranteed by Article 1 Section 7 of Del. Constitution and the 6th Amendment of the U.S. Constitution. Defense Counsel was ineffective for failure to raise this issue on direct appeal.

Superior Court Criminal Rules 7(c) requires that the offense charged shall be "precise" and "definite, certain and unambiguous." The nature and description of an instrument taken is an essential element of Robbery I. The prejudice results here because U.S. currency was taken from three separate businesses and nine individuals over a period of a couple days. Defendant was charged with an "open" or "general" indictment. The jury was left with the opportunity to convict Defendant whether he had "one cent" or "one thousand dollars." There was not even a description of denominations. This is reversible error, because any amount of U.S. currency found on Defendant could be found a fruit of the accusation, even if the Defendant had his own pocket change. This would also allow Defendant to be convicted of the proceeds of another robbery in the other remaining counts, and/or Defendant's very own pocket change.

**Regarding Ground Five,** consisting of Counsel's ineffectiveness at trial and on direct appeal, while the above standard covers this claim, it also falls under Rule 61(i)(4) the "interest of justice" exception in 1990, Flamer v. State,[10] held it to be very narrowly construed to only that where subsequent legal developments have revealed that the Trial Court lacked authority to convict or punish him. (Emphasis added for clarity) In the year 2000, distinguishing Flamer, the Delaware Supreme Court expanded Rule 61(i)(4) in Weeden v. State[11] to also include subsequent factual developments. (Emphasis original in opinion) While the Court did observe that Rule

[10]Flamer v. State, 585 A.2d 736, 746 (Del. 1990)
[11]Weeden v. State, 750 A.2d 521, 527-528 (Del. 2000)

11

$\lambda - /30$

61(i)(4) was based on "law of the case doctrine," and went on to point out the expanded scope of

the Rule.

> [I]n determining the scope of the 'interest of justice' exception Rule 61(i)(4)
> we recognize two exceptions to the law of the case doctrine. First, the doctrine
> does not apply when the previous ruling was clearly in error or there has been '
> an important change in circumstances, in particular, the factual basis for the '
> issues previously posed . . . . Second, the equitable concern of preventing injustice may
> trump the law of the case doctrine. (Emphasis supplied)

Relitigation on the Amended Indictment issue in this case is appropriate under the above

noted exceptions to Rule 61(i)(4) as well, because the Defendant the "important change in

circumstances in particular, the factual basis for the issue previously posed," is that of fact, that

Counsel never argued the fact of the "generality" of the amendment, thus NOT "fully informed"

of the charges against him. This is a Reversible Error.

## CONCLUSION

To sum up the Procedural Standards, Defendant has presented this Court with "cause" to

overcome the procedural bars relating to Rule 61(i)(1)(2)(3)(4) and (5). More importantly,

Defendant requests that this Court take note of "the distinct" ineffective assistance of Counsel

claims regarding all the issues, and also apply the less demanding Rule 61(i)(4) review in the

"interest of justice," in which the Court is to give a presumably more favorable review than the

Rule 61(i)(3) Prejudice prong standard or review. This Court understanding that the Defendant

should not have to bear the weight of a higher and stricter standard of review concerning

something he had absolutely no control over. To borrow from our civil doctrine, the Defendant

had "clean hands." Defendant did not have the benefit of a fair trial.

WHEREFORE, FOR THE REASONS SET FORTH ABOVE IN GROUNDS ONE

THROUGH SIX, considered each issue first individually, then each ground as a whole and then,

12

$\lambda - 131$

all grounds together Defendant respectfully asserts he has met the standards, and respectfully requests that this Court consider the named standards of review cited herein as the true and correct standards for relief such as de nova review in certain issues, and planetary review as to others and only uses the higher threshold of <u>Strickland-Fretwell</u> review where absolutely necessary.

Defendant prays that this Honorable Court grants his Rule 61 Post-Conviction Petition and Reverse this case and make a determination as to where to proceed from there.

Respectfully submitted

Devearl L. Bacon
SBI #221242
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

Dated: April 6, 2006

13

$-132

## CERTIFICATE OF SERVICE

I Devearl L. Bacon hereby certify that on **April** _____ *6* _____, **2006**,

one copy of APPELLANT'S REPLY BRIEF for Post-Conviction Relief Under Rule 61

was served

by First Class mail to the following.

Timothy J. Donovan, Jr.
Deputy Attorney General
820 N. French Street
Wilmington, DE 19801

Devearl L. Bacon
SBI #221242
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

14

$\mathbb{A} - /33$

EXHIBIT /
19

D-134

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| DEVEARL BACON, | § |
| | § |
| Defendant Below- | § No. 453, 2005 |
| Appellant, | § |
| | § |
| v. | § Court Below—Superior Court |
| | § of the State of Delaware, |
| STATE OF DELAWARE, | § in and for New Castle County |
| | § Cr. ID 0006017660 |
| Plaintiff Below- | § |
| Appellee. | § |

Submitted: April 21, 2006
Decided: June 21, 2006

Before **STEELE**, Chief Justice, **HOLLAND**, and **BERGER**, Justices.

## ORDER

This 21st day of June 2006, after careful consideration of the parties' briefs and the record below, we find it manifest that the judgment of the Superior Court should be affirmed on the basis of the Superior Court's well-reasoned opinion dated August 29, 2005. The Superior Court did not err in concluding that appellant's motion for postconviction relief, which included six claims of ineffective assistance of counsel, lacked substantive merit.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

_____
Justice

§ - /35

## Certificate of Service

I, *DEVEARL L. BACON*, hereby certify that I have served a true and correct cop(ies) of the attached: *APPENDIX TO WRIT OF CERTIORARI* upon the following

parties/person (s):

TO: *CLERK OF COURT*
*SUPREME COURT*
*55 THE GREEN*
*DOVER, DEL.*
*19977*

TO: *ATTORNEY GENERAL*
*820 N. FRENCH ST.*
*Wilmington, DEl.*
*19801*

TO: *CLERK OF COURT*
*SUPERIOR COURT*
*500 N. KING ST., SUITE 500*
*Wilmington, DEl.*
*19801*

TO: _____

**BY PLACING SAME IN A SEALED ENVELOPE** and depositing same in the United States Mail at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, DE 19977.

On this _____ day of _____, 2006

_____

$\delta - 136$