## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

DEVEARL L. BACON, :
         :
   Petitioner,  :
         :
  v.      :  Civ. Act. No. 06-519-JJF
         :
THOMAS CARROLL, Warden :
and JOSEPH R. BIDEN, III, Attorney :
General for the State of Delaware, :
         :
   Respondents.[1]  :

## ANSWER

Pursuant to Rule 5 of the Rules Governing Section 2254 Actions, 28 U.S.C. foll. § 2254, respondents state the following in response to the petition for a writ of habeas corpus:

On June 23, 2000, the petitioner, Devearl Bacon, was arrested for multiple charges of first degree robbery and related offenses. *See* Del. Super. Ct. Crim. Dkt. Items 1 & 4 in Case No. 0006017660. In June 2001, a Delaware Superior Court jury convicted Bacon of fourteen offenses: five counts of first degree robbery; two counts of possession of a firearm during the commission of a felony; first degree carjacking; possession of a deadly weapon by a person prohibited; two counts of aggravated menacing; and two counts of wearing a disguise during the commission of a felony. *See State v. Bacon*, 2005 WL 2303810, *1 (Del. Super. Ct. Aug. 29, 2005). Bacon was sentenced in July 2001 to thirty-four years of imprisonment followed by twelve years of probation. *See id.* Bacon's convictions and sentence were affirmed on appeal. *Bacon v. State*, 2002 WL 1472287 (Del. July 1, 2002).

---

[1] *See* Fed.R.Civ.P. 25(d)(1). Attorney General Joseph R. Biden, III, assumed office on January 2, 2007, replacing former Attorney General Carl C. Danberg, an original party to this case.

In September 2004, Bacon moved for postconviction relief under Superior Court Criminal Rule 61. *See* Del. Super. Ct. Crim. Dkt. Item 47. After receiving an affidavit from defense counsel, Bacon's response to the affidavit, the State's answer to the motion, and Bacon's reply, Superior Court, in August 2005, denied the motion. *Bacon*, 2005 WL 2303810. The Delaware Supreme Court affirmed that decision in June 2006. *Bacon v. State*, 2006 WL 1725589 (Del. June 21, 2006). Bacon's federal habeas petition is dated August 17, 2006. D.I. 2.

<u>Facts</u>

As recited by the Delaware Superior Court judge in her decision on Bacon's postconviction motion, 2005 WL 2303810 at *1-2, the relevant facts adduced at trial were as follows:

> At trial, the evidence showed the following facts. On June 21, 2000, a man wearing a dark, hooded sweatshirt and a bandana over his face and carrying a gun entered the Star Liquor Store on New Castle Avenue. He told everyone in the store to get down onto the floor and when they did not, he fired two shots. Everyone got down. The man then held the gun to the clerk's head and demanded money. The clerk gave him the cash, and, as he turned to leave the store, he also took a customer's car keys. He drove away in the stolen car.
>
> When the police officers arrived to investigate, they found two shell casings and bullet fragments in the store. The victim of the car-jacking described his car as a silver or gray 1997 Ford Escort with Delaware tag number 999159. Witnesses described the robber as a somewhat short black man with a slight build.
>
> Another robbery was attempted at the Star Liquor Store on the next day, June 22, 2000. A man in a hooded coat entered the store and with gun in hand demanded money from the clerk (a different individual than the clerk who had been threatened in the prior robbery). The clerk picked up a Polaroid camera to take the man's picture. She refused to give him any money and told him his best bet was to leave. He took her advice and left the store, got into a grayish-colored car and drove away. The clerk did not get his picture on the Polaroid, but she described the man to the police as being 5'6" or 5'8" tall, approximately 165 or 175 pounds, with facial hair and dark clothes. The police recovered no physical evidence from this incident.
>
> Later that night, a man with a hood and bandana covering his face entered the Seven-Eleven Store on North Du Pont Highway. The store's surveillance camera captured images of the man pointing his gun at the two clerks and taking money from them.

2

The robber fled the store and drove away in a small silver car with Delaware registration number 999159. The clerks' description of the robber as a black man with a slight build was confirmed by the surveillance video.

On June 23, 2000, probation officers saw three men working on a gray Ford Escort parked near 17th and Spruce Streets in Wilmington. The car had a Delaware license plate with the number 999159. The men were detained and the police were called. Two of the men were six feet or more. The third man, who was later arrested for the robberies, was 5'7" tall and weighed approximately 140 pounds.

In side the Ford Escort, police found a hooded jacket, money, and a .22 caliber handgun. A comparison of the handgun and the ballistics evidence from the Star Liquor Store robbery showed that the shots fired during that robbery were fired from the gun found in the Escort.

Discussion

In his federal habeas petition (D.I. 2) and memorandum in support (D.I. 3), Bacon presents the following claims: (1) the trial court erred by permitting the joinder of three counts of possession of a deadly weapon by a person prohibited, and defense counsel was ineffective for failing to move for severance, to object at trial or to raise the issue on direct appeal; (2) the trial court erred by allowing charges relating to four separate locations to be tried together, and defense counsel was ineffective for failing to move for severance of the charges, to object at trial or to raise the issue on direct appeal; (3) defense counsel was ineffective for failing to object to the admission of prior bad acts evidence; (4) the in-court identification of Bacon by Dawn Smith violated Bacon's right to a fair trial because there was no independent origin for the identification, and defense counsel was ineffective for failing to raise the issue on direct appeal; (5) ineffective assistance of counsel for failing to object to an amendment to the indictment before trial; and (6) prosecutorial misconduct for failing to disclose the videotape of Bacon's statement to police, and defense counsel was ineffective

3

in failing to raise this issue at trial or on direct appeal. D.I. 2, 3. Bacon's claims, however, are unavailing.

*Untimely claims*

Bacon is not entitled to relief because the claims presented in his petition are untimely under 28 U.S.C. § 2244(d). Because Bacon's petition was filed in August 2006, it is subject to the Antiterrorism and Effective Death Penalty Act ("AEDPA") signed into law by the President on April 24, 1996. *See generally Lindh v. Murphy*, 521 U.S. 320, 336 (1997) (holding the AEDPA applies to "such cases as were filed after the statute's enactment."); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 433 n.1 (D. Del. 1998); *Dawson v. Snyder*, 988 F. Supp. 783, 802-03 (D. Del. 1997). By the terms of § 2244(d)(1), a federal habeas petitioner must file the petition within one year of the date on which the state court judgment became final upon the conclusion of direct review. *See* 28 U.S.C. § 2244(d)(1)(A); *Calderon v. Ashmus*, 523 U.S. 740, 742-43 (1998).[2] Thus, the one-year period of limitations began to run when Bacon's conviction became final under § 2244(d)(1)(A). *See, e.g., Gibbs v. Carroll*, 2004 WL 1376588, *2 (D. Del.).

The Delaware Supreme Court affirmed Bacon's conviction and sentence on July 1, 2002. *Bacon*, 2002 WL 1472287. Although Bacon did not seek review by the United States Supreme Court, the ninety-day period in which he could have filed a petition for a writ of certiorari expired on September 30, 2002.[3] *See Kapral v. United States*, 166 F.3d 565, 576 (3d Cir. 1999) (holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for

---

[2] Bacon does not allege, nor can respondents discern, any reason to believe that the terms of 28 U.S.C. § 2244(d)(1)(B)-(D) are applicable.

[3] Because the ninety-day period expired on Sunday, September 29, 2002, Bacon had until Monday, September 30, 2002 to file his petition for a writ of certiorari. *See* U.S. SUP. CT. R. 30.1.

4

seeking review in the United States Supreme Court). Bacon thus had until September 30, 2003 to file his federal habeas petition without running afoul of § 2244(d). *See, e.g., Samuel v. Carroll*, 2004 WL 1368845 (D. Del.); *Morales v. Carroll*, 2004 WL 1043723 (D. Del.). Bacon's petition, dated August 17, 2006, [4] is obviously filed past the September 2003 deadline. The petition is thus untimely and must be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton*, 195 F.3d 153, 158 (3d Cir. 1999).

In turn, the tolling mechanism of § 2244(d)(1) does not save Bacon's petition from the running of the limitations period. *See* 28 U.S.C. § 2244(d)(2). When applicable, § 2244(d)(2) tolls the one-year period of § 2244(d)(1) during the time that a properly filed state postconviction action is pending in the state courts. If the one year period has already expired, a postconviction motion filed after that point does not revive the one year period. *See Smith v. McGinnis*, 208 F.3d 13 (2d Cir. 2000); *Samuel*, 2004 WL 1368845, *3. But all of Bacon's litigation occurred after the statute of limitations had run. The limitations period began to run on October 1, 2002, and the period expired on October 1, 2003. A state postconviction action was not filed by Bacon until September 17, 2004, almost a year after the limitations period of § 2244(d)(1) had expired. Thus, the state postconviction action has no effect on the statutory tolling provision. *See Lawrence v. Carroll*, 2003 WL 21402509, *2 (D. Del. June 10, 2003). Because the one year period was not tolled under § 2244(d)(2), Bacon's petition is untimely under § 2244(d). Thus, the statute of limitations expired on Bacon's claims prior to August 17, 2006, i.e., the date indicated on the petition, and the petition is therefore barred by §

---

[4] *See Longenette v. Krusing*, 322 F.3d 758, 761 (3d Cir. 2003) (a prisoner's petition is considered filed on the date he delivers it to prison officials for mailing); *Burns v. Morton*, 134 F.3d 109, 111 (3d Cir. 1998) (same); *Woods v. Kearney*, 215 F. Supp.2d 458, 460 (D. Del. 2002) (date on petition is presumptive date of mailing and, thus, of filing).

2244(d). *See, e.g., Samuel*, 2004 WL 1368845, *3; *Benson v. Carroll*, 2004 WL 1151547, *4 (D. Del. May 18, 2004).

As the Court has repeatedly noted, however, the limitation period may be subject to equitable tolling. *See, e.g., Thomas v. Snyder*, 2001 WL 1555239, at *3-4 (D. Del.) (describing rule). Equitable tolling, however, applies only where the petitioner "has in some extraordinary way been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 618 (3d Cir. 1998). Here, Bacon alleges that his difficulty in obtaining trial transcripts prevented him from filing his state postconviction petition in a timely manner. The record reveals, however, that Superior Court sent Bacon copies of trial transcripts in March 2003. *See* Del. Super. Ct. Crim. Dkt. at Item 46; D.I. 3 at 13 ("The Trial transcripts w[]ere received by petitioner on April 5, 2003."). Nevertheless, Bacon did not file his postconviction motion until more than a year later. Bacon cannot credibly allege that the legal arguments or facts were unavailable to him during the limitation period. "To the extent that petitioner's failure to timely file his petition was the result of a mistake, a mistake does not constitute an extraordinary circumstance." *Wilmer v. Carroll*, 2003 WL 21146750, *5 (D. Del.); *see Simpson v. Snyder*, 2002 WL 1000094, order at *3 (D. Del.) (rejecting such an argument made by petitioner). In short, Bacon's claims are untimely under § 2244(d), and there is no basis upon which any relevant time should be excluded by virtue of the equitable tolling doctrine.

*Bacon's claims*

Alternatively, Bacon's claims are without merit. In essence, Bacon's claims are all claims of ineffective assistance of counsel either at trial or on appeal.[5] Bacon presented his ineffectiveness

---

[5] If Bacon's claims were treated as substantive claims, the claims (except for claim 5) would be

claims to the Delaware Supreme Court on appeal from the denial of his postconviction motion, thus exhausting his claims. *See Smith v. Digmon*, 434 U.S. 332, 333-34 (1978); *Swanger v. Zimmerman*, 750 F.2d 291, 295 (3d Cir. 1984). Under 28 U.S.C. § 2254(d), however, a habeas petitioner is not entitled to relief unless he can establish that the decision of the state court was contrary to, or involved an objectively unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. *See Gattis v. Snyder*, 278 F.3d 222, 228 (3d Cir. 2002); *Matteo v. Superintendent, SCI Albion*, 171 F.3d 877, 885 (3d Cir. 1999) (*en banc*); *Lawrie v. Snyder*, 9 F. Supp.2d 428, 434 (D. Del. 1998). The clearly established federal law which governs ineffective assistance of counsel claims is the two-pronged standard enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984), and its progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). In this case, the Delaware state courts correctly identified the two-prong *Strickland* standard to Bacon's ineffectiveness claims. *See Bacon*, 2005 WL 2303810 at *3. Thus the state supreme court's denial of the claim was not contrary to clearly established federal law. *See Williams v. Taylor*, 529 U.S. 362, 406 (2000).

Moreover, the state courts reasonably applied the rule to the specific facts of Bacon's case. *See* 28 U.S.C. § 2254(d)(1). To prevail on a claim of ineffective assistance of counsel, a petitioner must first demonstrate that counsel's performance at trial or on appeal fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. In evaluating whether counsel performed reasonably, a court "must be highly deferential." *Id*. at 689. Therefore, a petitioner "must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial

procedurally defaulted for failure to have raised the claims on direct appeal. *See* Del. Super. Ct. Crim. R. 61 (i)(3).

7

strategy." *Id.* (quotation omitted). Second, a petitioner must illustrate that counsel's ineffective performance caused prejudice. *See Strickland*, 466 U.S. at 687. The Third Circuit has stated that prejudice occurs where "there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different." *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Strickland*, 466 U.S. at 668); *see also Hill v. Lockhart*, 474 U.S. 52, 58 (1985).

In his first allegation of deficient representation, Bacon complains that defense counsel should have moved to sever the person prohibited charges6 from the remaining counts of the indictment, and counsel should have raised the issue on direct appeal. Defense counsel, in his affidavit, noted that he protected Bacon from the danger of unfair prejudice by stipulating Bacon's status as a person prohibited, thus preventing the jury from learning the details of his criminal history. Appendix to State's Answering Brief at B11, Del. Supr. Ct. No. 453, 2005 (hereinafter "Affidavit at __"). Moreover, because the Delaware Supreme Court had previously found that joinder of person prohibited charges with other charges to be proper, defense counsel's decision to enter into the stipulation rather than attempt to sever the charges was professionally reasonable. *See Sexton v. State*, 397 A.2d 540, 545 (Del. 1979). Counsel's decision to forego a motion that would have likely been denied, while still protecting his client's interest in not having the jury learn about his prior crimes, was a reasonable trial strategy.

Moreover, Bacon cannot establish prejudice. In his state court proceedings, Bacon contended, as he does here, that had the jury not learned that he was prohibited from possessing a

---

6  The offense, codified at Del. Code Ann. tit. 11, § 1448, prohibits possession of a deadly weapon or ammunition for a firearm by a felon.

weapon, the outcome of the trial would have been different. The jury, however, acquitted Bacon of several charges, thus demonstrating that the jury did not convict Bacon simply because he was not permitted to possess a weapon. The jury did not learn why Bacon could not possess a weapon, only that he was prohibited from doing so. As noted by Bacon, the prosecutor informed the jury that there are various reasons why some people are prohibited from possessing a firearm. D.I. 3 at 53. Further, "whether the charges were properly joined under Delaware law is a matter of state law, and 'it is not the province of a federal habeas court to reexamine state court determinations on state law issues.'" *Zuppo v. Carroll*, ___ F. Supp. 2d ___, 2006 WL 3025107 (D. Del. Oct. 23, 2006) (quoting *Estelle v. McGuire*, 502 U.S. 62 (1991)). By affirming the Superior Court's decision to deny this claim as substantively meritless, the Delaware Supreme court implicitly adopted the Superior Court's finding that all of the charges tried at trial were properly joined. An attorney does not provide ineffective assistance by failing to raise meritless arguments; therefore Bacon cannot establish prejudice under *Strickland*. *See Zuppo*, 2006 WL 3025107. Based on the record, the state court was manifestly correct in finding that Bacon failed to satisfy either prong of the *Strickland* test as to this claim.

In his next claim, Bacon complains that defense counsel should have objected to the inclusion of charges from all four incidents (three robberies and one attempted robbery) in the indictment and at a single trial. In his affidavit, defense counsel stated that "Based on review of case law in the area of severance of offense counsel made a professional judgement [*sic*] that there was insufficient merit in such a motion to make a good faith argument to the Court on the issue." Affidavit at 3. That conclusion was confirmed by the trial court. *See Bacon*, 2005 WL 2303810 at *4. Under Delaware Superior Court Criminal Rule 8, multiple counts may be joined if they are of a similar nature and occurred over a brief time span. *See Coffield v. State*, 794 A.2d 588, 590-91 (Del. 2002) (approving

9

similar joinder); *Skinner v. State*, 575 A.2d 1108, 1117-19 (Del. 1990); *Younger v. State*, 496 A.2d 546, 549-50 (Del. 1985). In this case, the three robberies and the attempted robbery were all committed within two days, and a man of similar description, wearing a disguise and holding a gun was the perpetrator. *Bacon*, 2005 WL 2303810 at *4. Because any defense motion to sever the offenses would have been denied, counsel was not professionally unreasonable in deciding not to pursue a frivolous motion. *See Zuppo*, 2006 WL 3025107. Thus, the state courts reasonably applied the *Strickland* standards to find that Bacon had not demonstrated either deficient performance or resulting prejudice.

In his third claim of ineffective assistance of counsel, Bacon asserts that his counsel should have objected to the admission of prior bad acts evidence. Specifically, Bacon complains about a police officer's testimony that Bacon had said that he had been released from the Plummer Center, that he had not slept in three days, and that he might do twenty-five years. Defense counsel did not immediately object to this testimony, but requested a mistrial at a subsequent sidebar. *See Bacon*, 2005 WL 2303810 at *4. Counsel explained that he did not want to highlight Bacon's detention at the Plummer Center to the jury. *Id.* The trial judge noted that there was no reason to assume that the jury was aware that the Plummer Center is a correctional facility, and the reference was unsolicited, vague and brief. *Id.* at *4-5. Consequently, the court found that Bacon could not establish prejudice from the admission of the statement regarding the Plummer Center. *Id.* at *5. Given the fleeting reference, counsel's determination that an objection might lead to greater prejudice by highlighting the offending testimony was professionally reasonable. As to Bacon's contention that the officer's other remarks regarding Bacon's statements about lack of sleep and possibly doing time, those are not references to prior bad acts and there was no basis for an objection. Moreover, the officer's

description of Bacon's demeanor while making these statements was also admissible testimony. Because the only potentially objectionable testimony was the single reference to the Plummer Center, Bacon cannot establish that he was prejudiced under *Strickland*. *Cf. United States v. Villabona-Garnica,* 63 F.3d 1051, 1058 (11th Cir.1995) ("the mere utterance of the word [jail, prison, or arrest] does not, without regard to context or circumstances, constitute reversible error *per se*.") (quoting *United States v. Barcenas,* 498 F.2d 1110, 1113 (5th Cir.1974)). Thus, the state court's finding that Bacon failed to establish either prong of the *Strickland* test was a reasonable application of Supreme Court precedent.

Next, Bacon argues that his counsel was ineffective for failing to object to Dawn Smith's in-court identification of Bacon as the man who held a gun to her head and robbed the Star Liquor Store. In his affidavit, defense counsel states that this allegation is "not supported by the facts as Counsel recalls them and in any case [is] not supported by the law." Affidavit at 3. The trial judge also found no basis for an objection to Smith's in-court identification. The judge noted that the witness had "provided numerous details about the robber's appearance on the night of the robbery." *Bacon*, 2005 WL 2303810 at *5. Further, Smith testified that when she saw Bacon again later in the evening, she recognized him as the robber. *Id.* Bacon, however, complains that Smith's in-court identification had no independent origin. An independent origin analysis is required when an unnecessarily suggestive out-of-court identification potentially taints an in-court identification. *See Manson v. Braithwaite*, 432 U.S. 98, 116 (1977). Here, there were no out-of-court identification procedures, suggestive or otherwise. *See Bacon*, 2005 WL 2303810 at *5. Thus, the court properly determined that defense counsel's performance was not deficient under *Strickland*.

11

Bacon's fifth claim is that defense counsel failed to object prior to trial to the prosecutor's motion to amend the indictment. In his affidavit, defense counsel notes that the motion to amend was not made until the day of trial and that the Superior Court granted the motion over defense counsel's objection. Affidavit at 3. Defense counsel appealed the ruling to the Delaware Supreme court on direct appeal. *See Bacon*, 2002 WL 1472287 at *1. Counsel could not have objected any earlier, and because counsel objected at the time the prosecutor made the motion, the state supreme court reviewed the issue on the merits. *Id.* There is simply no basis for this allegation of ineffective assistance of counsel.

Finally, Bacon argues that defense counsel was ineffective for failing to litigate the issue of whether the prosecution failed to turn over a videotape of a statement Bacon allegedly made to police. In his affidavit, defense counsel asserts that his file notes indicate that he asked the prosecutor about whether there were any taped statements made by Bacon and that the prosecutor confirmed with police that Bacon had not given a videotaped statement. Affidavit at *4. The state court found that there was" nothing in the record to support Defendant's assertion that a statement was videotaped or that the prosecution failed to provide such a tape to the defense." *Bacon*, 2005 WL 2303810 at *6; *see* 28 U.S.C. § 2254(e)(1) ("a determination of a factual issue made by a State court shall be presumed to be correct"). Because there was no factual basis for this claim, the state courts could reasonably reject Bacon's contention. Bacon's claims of ineffective assistance of counsel should be dismissed.

## Conclusion

Based upon the Superior Court docket sheet, it appears that the transcripts of Bacon's trial, (June 19-22, 2001), and sentencing (July 20, 2001) have been prepared. In the event that the Court

12

directs the production of any transcript, respondents cannot state with specificity when such transcript would be available. However, respondents reasonably anticipate that such production would take 90 days from the issuance of any such order by the Court. Defense counsel's affidavit in response to Bacon's allegations of ineffective assistance of counsel can be found in the Appendix to State's Answering Brief at B10-14, *Bacon v. State,* Del. Supr. Ct. No. 453, 2005.

For the foregoing reasons, the petition for a writ of habeas corpus should be dismissed without further proceedings.

/s/ Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us

Date: January 5, 2007

13

## CERTIFICATE OF SERVICE

I hereby certify that on January 5, 2007, I electronically filed an answer to a habeas petition with the Clerk of Court using CM/ECF. I also hereby certify that on January 5, 2007, I have mailed by United States Service, two copies of the same document to the following non-registered participant:

Devearl L. Bacon
SBI No. 221242
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

/s/Elizabeth R. McFarlan
Deputy Attorney General
Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 577-8500
Del. Bar. ID No. 3759
elizabeth.mcfarlan@state.de.us

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2004 WL 1376588
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2004 WL 1376588
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Otto GIBBS, Petitioner,

v.

Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. Civ.A.03-634-JJF.**

June 17, 2004.

Otto Gibbs, Petitioner, pro se.
Thomas E. Brown , Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware, for
Respondents.

*MEMORANDUM OPINION*

FARNAN, J.

## I. INTRODUCTION

**\*1** Petitioner Otto Gibbs is a Delaware inmate in custody at
the Delaware Correctional Center in Smyrna, Delaware.
Currently before the Court is Petitioner's Petition For A
Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and his
supporting Memorandum. (D.I. 2; D.I. 3) For the reasons
that follow, the Court concludes that Petitioner's Petition is
time-barred by the one-year period of limitations prescribed
in 28 U.S.C. § 2244(d)(1).

## II. BACKGROUND

On September 8, 1997, Petitioner was convicted by a
Delaware Superior Court jury of second degree unlawful
sexual intercourse. He was sentenced to 20 years in prison,
suspended after 15 years for probation. The Delaware
Supreme Court affirmed Petitioner's conviction and
sentence on direct appeal. *Gibbs v. State,* 723 A.2d 396
(Del.1998).

On September 24, 1999, Petitioner filed an application for
state post-conviction relief pursuant to Superior Court
Criminal Rule 61. The Delaware Superior Court denied

post-conviction relief on January 7, 2002, and the Superior
Court's denial was affirmed on appeal. *Gibbs v. State,* 804
A.2d 1066 (Del.2002).

## III. DISCUSSION

Petitioner's *pro se* Petition for federal habeas relief and his
supporting Memorandum assert the following nine
ineffective assistance of counsel claims: (1) trial counsel did
not investigate and review all relevant discoverable
documents and failed to inform Petitioner about the legality
of the State's DNA evidence; (2) trial counsel failed to
conduct an independent DNA analysis and failed to hire an
expert to review the victim's medical record; (3) trial
counsel failed to research the law in support of an
affirmative defense of consensual intercourse; (4) trial
counsel improperly relied on an instruction of "voluntary
social companion" status of the alleged victim to support an
affirmative defense of consensual intercourse; (5) trial
counsel misinterpreted Delaware's Rape Shield Laws, and as
a result, he failed to investigate the victim's background of
prior sexual history before trial; (6) trial counsel failed to
object to the State's introduction and reliance on
inadmissible photographic blood evidence through improper
testimony of police officer; (7) trial counsel failed to
cross-examine the police officer about the authenticity of
photographic blood evidence; (8) trial counsel failed to
object to the State's introduction of hearsay testimony from
police party who testified in third party narrative; and (9)
trial counsel failed to impeach any state witness' credibility
on cross-examination. (D.I. 2; D.I. 3.) Petitioner also asserts
that the Superior Court unreasonably summarily denied his
Rule 61 motion without an evidentiary hearing. (D.I. 3 at
J,K.)

On December 18, 2003, Petitioner filed a "Motion to
Amend Habeas [Petition]," asking this Court to apply the
"[a]ctual innocence, or miscarriage of justice, exception to
any and all barred claims" in his Petition. (D.I.18.) The
Court granted this amendment. (D.I.27.)

**\*2** In their Answer, Respondents contend that the entire
petition is time-barred and ask the Court to dismiss the
petition as untimely. (D.I.16.) Petitioner filed a Reply,
asking the Court to view his trial counsel's alleged

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1376588
(Cite as: Not Reported in F.Supp.2d)

ineffective assistance as "good cause" to excuse his late filing. (D.I.23.) Petitioner's habeas petition is now ripe for review.

### A. One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B), (C), or (D). As such, the one-year period of limitations began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), when a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the [90-day] time [period] for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999) ; *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed Petitioner's conviction and sentence on November 19, 1998. Consequently, Petitioner's conviction became final on February 17, 1999.

Thus, pursuant to AEDPA's one-year limitations period, Petitioner needed to file his § 2254 Petition no later than February 17, 2000.

Petitioner's § 2254 Petition is dated July 8, 2003, and it was received by the Court on July 10, 2003. A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. Therefore, the Court adopts July 8, 2003 as the filing date. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003) (the date on which a prisoner transmitted documents to prison authorities is to be considered the actual filing date); *Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

*3 Even with July 8, 2003 as the filing date, Petitioner filed his Petition more than 3 years too late. As such, his habeas Petition is time-barred and should be dismissed, unless the limitations period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). The Court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). However, a properly filed state post-conviction motion will only toll the federal habeas limitations period if the post-conviction motion itself is filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at *2 (D.Del. Sept. 23, 2002).

Here, when Petitioner filed his state post-conviction motion, 217 days of AEDPA's limitations period had already expired. Petitioner's Rule 61 motion tolled AEDPA's limitations period until August 28, 2002, the date on which

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



the Delaware Supreme Court affirmed the Superior Court's denial of the Rule 61 motion. *See Swartz v. Meyers,* 204 F.3d 417, 421-22 & n. 5 (3d Cir.2000). When AEDPA's limitations period began to run again on August 29, 2002, only 148 days were left in the one-year filing period. Consequently, Petitioner had to file his federal habeas Petition by January 24, 2003 to be timely. Petitioner, however, did not file his Petition until July 8, 2003. As such, the doctrine of statutory tolling does not render the Petition timely.

### C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998) (internal citations omitted). In general, federal courts invoke the doctrine of equitable tolling "only sparingly." *See United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998). The Third Circuit permits equitable tolling for habeas petitions in only four narrow circumstances:

    (1) where the defendant actively misled the plaintiff;

    (2) where the plaintiff was in some extraordinary way prevented from asserting his rights;

    (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or

    (4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

**\*4** *Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999).

Generally, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Id.* (quoting *Midgley,* 142 F.3d at 179). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims"; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted).

Petitioner asserts his trial counsel's allegedly ineffective assistance as a reason to equitably toll the one-year

limitations period. (D.I.23.) Specifically, Petitioner argues that trial counsel informed him that he had "3 years to file a Rule 61 motion, then file Habeas among other options." *Id.*

As an initial matter, Petitioner's trial counsel correctly informed Petitioner that he had 3 years to file a state post-conviction motion under the state criminal procedural rules. *See* Del.Super. Ct.Crim. R. 61(i)(1). Even if trial counsel erroneously told Petitioner that AEDPA's statute of limitations would not begin until after the 3 year limitations period for Rule 61 motions had expired, this mistake does not warrant equitably tolling. It is well-settled that inadequate research, attorney error, miscalculation, or other mistakes do not qualify as "extraordinary circumstances" sufficient to trigger equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). Additionally, if Petitioner misinterpreted trial counsel's statement, his failure to independently investigate AEDPA's limitations period constitutes excusable neglect insufficient to warrant equitable tolling.

Finally, Petitioner appears to assert his actual innocence as a reason for equitably tolling the one-year limitations period. (D.I.18.) However, neither the Third Circuit Court of Appeals, nor the United States Supreme Court, has addressed whether a petitioner's "actual innocence" qualifies as an exception to AEDPA's statute of limitations. *Morales v. Carroll,* 2004 WL 1043723, at \*3 (D.Del. Apr. 28, 2004) ; *Devine v. Diguglielmo,* 2004 WL 945156, at \*3 & n .4 (E.D.Pa. Apr. 30, 2004) (collecting cases). Even if, arguendo, such an exception did exist, Petitioner's short conclusory request that he "would like the court to apply the actual innocence ... exception to all barred claims" does not persuade the Court that he is actually innocent. *See Morales,* 2004 WL 1043723, at \*3 (discussing how a petitioner proves actual innocence). Accordingly, the Court concludes that the doctrine of equitable tolling is not available to Petitioner on the facts he has presented. Petitioner's § 2254 Petition will be dismissed as untimely.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                        Page 4
Not Reported in F.Supp.2d, 2004 WL 1376588
**(Cite as: Not Reported in F.Supp.2d)**

a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2) ; *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

**\*5** When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The Court concludes that Petitioner's habeas Petition must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the Court declines to issue a certificate of appealability.

VI. CONCLUSION

For the reasons stated, Petitioner's Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is denied. An appropriate Order shall issue.

ORDER

At Wilmington, this 17th day of June, 2004, consistent with the Memorandum Opinion issued this same day;

IT IS HEREBY ORDERED that:

1. Petitioner Otto Gibbs' Petition For A Writ Of Habeas Corpus Pursuant To 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED. (D.I. 2; D.I. 3.)

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Gibbs v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1376588

Briefs and Other Related Documents (Back to top)

• 1:03CV00634 (Docket) (Jul. 10, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 1368845
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2004 WL 1368845
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Harry L. SAMUEL, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. Civ.A.03-487-SLR.**

June 9, 2004.

Harry L. Samuel, petitioner, pro se.
Loren C. Meyers , Chief of Appeals Division, Delaware
Department of Justice, Wilmington, Delaware, for
respondents.

MEMORANDUM OPINION

ROBINSON, Chief J.

I. INTRODUCTION

**\*1** Petitioner Harry L. Samuel is a Delaware inmate in
custody at the Delaware Correctional Center in Smyrna,
Delaware. Currently before the court is petitioner's
application for a writ of habeas corpus pursuant to 28
U.S.C. § 2254. (D.I.2) For the reasons that follow, the court
concludes that his application is time-barred by the one-year
period of limitations prescribed in 28 U.S.C. § 2244(d)(1).
Accordingly, the court will dismiss the application as
untimely.

II. FACTUAL AND PROCEDURAL BACKGROUND

Petitioner attacked two counselors at the Plummer House
Work Release Center in Wilmington, Delaware. A grand
jury indictment charged him with attempted murder, second
degree assault, two counts of assault in a detention facility,
and four counts of possession of a deadly weapon during the
commission of a felony. Thereafter, in October 1994, a
Delaware Superior Court jury found petitioner not guilty of
attempted murder, but guilty of the lesser included offense
of first degree assault. The jury also convicted him of the
remaining charges. *See Samuel v. State,* 676 A.2d 906, * *1

(Del.1996).

On direct appeal, the Delaware Supreme Court ordered the
two assault convictions to be merged with the two counts of
assault in a detention facility and remanded the case for
re-sentencing. *Id.* Petitioner was re-sentenced on May 31,
1996 to a total of 98 years incarceration. *See Samuel v.
State,* 694 A.2d 48 (Del.1997). These sentences were
affirmed on appeal. *Id.* at * *2.

On November 19, 2001, petitioner applied to the Delaware
Superior Court for a copy of the trial transcript. This request
was denied, and petitioner's ensuing appeal was dismissed
for lack of jurisdiction. *Samuel v. State,* 788 A.2d 132
(Del.2001)

On April 28, 2003, the United States Supreme Court denied
petitioner's application for a writ of certiorari seeking
review of his sentences. *Samuel v. Delaware,* 538 U.S. 1004
(2003). Thereafter, on August 11, 2003, petitioner moved
for a reduction of sentence in the Delaware Superior Court.
The Superior Court denied the motion on September 11,
2003, and petitioner did not appeal. (D.I. 13, at ¶ 2)

III. DISCUSSION

Presently before the court is petitioner's *pro se* application
for federal habeas relief. (D.I.2) He asserts three habeas
claims: (1) the 1996 re-sentencing court erred in denying his
request for a continuance to obtain a psychiatric evaluation;
(2) the judge who re-sentenced him had a closed mind and
relied on impermissible factors in imposing the sentences;
and (3) the weapons offenses related to the assault
convictions should have been vacated because the assault
convictions were merged with the assault in a detention
facility convictions. (D.I.2)

Respondents contend that the entire petition is time-barred
and ask the court to dismiss the petition as untimely.
(D.I.13) Petitioner's habeas petition is now ready for review.

A. One-Year Statute of Limitations

**\*2** The Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA") prescribes a one-year period of limitations
for the filing of habeas petitions by state prisoners. 28

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1368845
**(Cite as: Not Reported in F.Supp.2d)**

U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). As such, the one-year period of limitations began to run when petitioner's conviction became final under § 2244(d)(1)(A).

Pursuant to § 2244(d)(1)(A), when a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the [90-day time-period] for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575 (3d Cir.1999) ; *Jones v. Morton,* 195 F.3d 153, 157 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed petitioner's conviction on April 16, 1997. *Samuel v. State,* 694 A.2d 48 (Del.1997). Consequently, petitioner's conviction became final for the purposes of § 2244(d)(1) on July 15, 1997. Thus, to timely seek habeas relief with this court, petitioner needed to file his § 2254 habeas application no later than July 15, 1998

A *pro se* prisoner's habeas application is deemed filed on the date he delivers it to prison officials for mailing to the district court. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003). Petitioner's habeas application is dated May 17, 2003. Therefore, the court adopts May 17, 2003 as the

presumptive filing date. *See Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

With May 17, 2003 as the filing date, petitioner filed his application almost five years too late. As such, his habeas application is time-barred and should be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones,* 195 F.3d at 158. The court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:

**\*3** The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). However, even if a state post-conviction motion is properly filed under state procedural rules, it will not toll or revive the federal habeas limitations period if the post-conviction motion itself is not filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at \*2 (D.Del. Sept. 23, 2002).

Here, when petitioner filed his motion for sentence reduction on August 11, 2003, the one-year federal habeas limitations period had already expired on July 15, 1998. As such, this motion does not toll, or revive, the federal habeas limitations period.[FN1] *See Lawrence v. Carroll,* 2003 WL 21402509, at \*2 (D. Del. June 10, 2003). Thus, petitioner's habeas application is time-barred unless the one-year time period is equitably tolled.

> FN1. Moreover, the Delaware Superior Court denied the motion for sentence reduction as untimely. Consequently, it was not "properly filed" for purposes of § 2244(d)(2) and could not trigger the statutory tolling doctrine. *See, e.g., Wilmer v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2004 WL 1368845
**(Cite as: Not Reported in F.Supp.2d)**

*Carroll,* 2003 WL 21146750, at *3-4 (D.Del. May 16, 2003).

### C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998) (internal citations omitted). Federal courts invoke the doctrine of equitable tolling "only sparingly," *see United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998), and the Third Circuit permits equitable tolling for habeas applications in only four narrow circumstances:

(1) where the defendant actively misled the plaintiff;

(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;

(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or

(4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

*Jones,* 195 F.3d at 159.

In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims"; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted). Basically, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones,* 195 F.3d at 159.

Petitioner has not alleged, and the court cannot discern, any "extraordinary circumstances" that warrant equitably tolling the one-year limitations period. To the extent petitioner made a mistake or miscalculation regarding the one-year filing period, such mistakes do not justify equitable tolling. *See Simpson v. Snyder,* 2002 WL 1000094, at *3 (D.Del. May 14, 2002). Accordingly, the court concludes that the doctrine of equitable tolling is not available to petitioner on the facts he has presented and, therefore, his § 2254 application will be dismissed as untimely.

### IV. CERTIFICATE OF APPEALABILITY

**\*4** Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2) ; *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

When a federal court denies a habeas application on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the application states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The court concludes that petitioner's habeas application must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the court declines to issue a certificate of appealability.

### V. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

D.Del.,2004.
Samuel v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1368845

Briefs and Other Related Documents (Back to top)

• 1:03CV00487 (Docket) (May. 20, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 1
Not Reported in F.Supp.2d, 2004 WL 1043723
(Cite as: Not Reported in F.Supp.2d)

Not Reported in F.Supp.2d, 2004 WL 1043723
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Luis MORALES, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. 03-220-JJF.**

April 28, 2004.

Luis Morales, Petitioner, pro se.
Thomas E. Brown , Deputy Attorney General of the State of
Delaware Department of Justice, Wilmington, Delaware, for
Respondents.

*MEMORANDUM OPINION*

FARNAN, J.

**\*1** Presently before the Court is a Petition Under 28 U.S.C.
§ 2254 for Writ of Habeas Corpus by a Person in State
Custody (D.I.1) filed by Petitioner, Luis Morales. For the
reasons set forth below, the Court will dismiss the Petition
as time-barred by the one-year period of limitation
prescribed in 28 U.S.C. § 2244(d)(1).

BACKGROUND

In January 1996, Petitioner was convicted by a jury in the
Delaware Superior Court of delivery of heroin, possession
with intent to deliver heroin, maintaining a dwelling,
possession of a hypodermic needle and syringe, and
conspiracy. The Delaware Superior Court concluded that
Petitioner was a habitual offender and sentenced him to life
in prison. On direct appeal, the Delaware Supreme Court
affirmed the conviction, but reversed the superior court's
determination that Petitioner was a habitual offender.
*Morales v. State,* 696 A.2d 390 (Del.1997) (*"Morales I"* ).

Petitioner was resentenced on October 3, 1997. Petitioner
did not appeal his new sentence. On October 10, 2000,
Petitioner filed a motion for state post-conviction relief,
which the Delaware Superior Court denied as time-barred
under the three-year limitations period set forth in Delaware

Criminal Rule 61(i)(1). *State v. Morales,* 2001 WL 1486169
(Del.Super.Oct. 31, 2001) (*"Morales II"* ). On appeal, the
Delaware Supreme Court affirmed the decision of the
Delaware Superior Court. *Morales v. State,* 2002 WL
272307 (Del. Feb. 22, 2002) (*"Morales III"* ).

By his federal habeas Petition, Petitioner raises three claims
for relief: (1) counsel provided ineffective assistance by
failing to obtain an interpreter for Petitioner during trial; (2)
the police conducted an illegal search; and (3) Petitioner's
due process rights were violated because he was precluded
from presenting a mistaken identity defense. In their
Answer Brief, Respondents contend that the Petition is
time-barred under 28 U.S.C. § 2244(d), or in the alternative,
Petitioner's claims are procedurally barred.

DISCUSSION

I. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), Congress amended the federal habeas
statute by prescribing a one-year period of limitation for the
filing of habeas petitions by state prisoners. *Stokes v.
District Attorney of County of Philadelphia,* 247 F.3d 539,
541 (3d Cir.), *cert. denied,* 122 S.Ct. 364 (2001). In
pertinent part, the AEDPA provides:

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of -

(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time
for seeking such review ...

28 U.S.C. § 2244(d)(1).

Petitioner was resentenced on October 3, 1997. Petitioner
did not file a direct appeal of his newly imposed sentence.
Thus, the limitation period began to run upon the expiration
of the time for filing such an appeal. *See Nara v. Frank,* 264
F.3d 310, 314 (3d Cir.2001) (stating that where petitioner
did not file a direct appeal, his conviction became final
when the time for filing a direct appeal expired); *Kapral v.
United States,* 166 F.3d 565, 576 (3d Cir.1999) (stating that
the limitation period begins to run at the expiration of the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2004 WL 1043723
**(Cite as: Not Reported in F.Supp.2d)**

time for filing a direct appeal if none is filed). Pursuant to 10 Del. C. § 147, Petitioner had thirty days in which to file his direct appeal or until November 2, 1997. *See also* Del.Supr. Ct. R. 6(a)(ii). Applying the one-year limitation period to this date, Petitioner was required to file his federal habeas petition on or before November 2, 1998.

**\*2** A petition is deemed filed on the date it is delivered to prison officials for mailing to the court. *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). Petitioner does not indicate the date on which the Petition was delivered to prison authorities for mailing. However, absent proof of mailing, this Court has held that the date of the signatures within the petition is the date on which the petition is deemed filed. *See Johnson v. Brewington-Carr,* Civ. Act. No. 99-181-JJF, mem. op. at 4 (D.Del. Feb. 22, 2000).

In this case, the Petition is dated February 5, 2003, which is well past the November 1998 filing deadline. Accordingly, the Court concludes that the Petition is time-barred under Section 2244(d), unless the limitation period has been statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### II. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

In this case, Petitioner filed a motion for post-conviction relief in the Delaware Superior Court on October 10, 2000, nearly two years after the filing deadline for his federal habeas petition. Because the federal limitation period had already expired, it could not be tolled by the filing of Petitioner's post-conviction motion. *Downs v. Carroll,* 2003 WL 716597, \*1 (D.Del. Feb. 25, 2003) (collecting cases); *Whalen v. Kearney,* Civ. Act. No. 99-654-JJF, mem. op. at 5-6 (D.Del. Sept. 29, 2000). Accordingly, the Court concludes that the statutory tolling provision cannot render

the Petition timely filed.

### III. Equitable Tolling

Additionally, the one-year period of limitation may be equitably tolled. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001) ; *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). Equitable tolling applies:

> only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

**\*3** In the instant case, Petitioner fails to allege any extraordinary circumstances giving rise to equitable tolling. Petitioner suggests that he has difficulty communicating in English and received poor advice from "jail-house lawyers," and therefore, his Petition should be tolled. However, courts have recognized that the lack of proficiency in English and the lack of sound advice from others in prison are insufficient reasons to equitably toll the one-year limitation period. *See e.g. Tan v. Bennett,* 2001 WL 823869, \*2 (S.D.N.Y. July 20, 2001) (collecting cases); *Chan v. United States,* 2000 WL 1843290, \*2 (E.D.N.Y. Oct. 25, 2000) ; *Martinez v. Kuhlman,* 1999 WL 1565177, \*2,5 (S.D.N.Y. Dec. 3, 1999) ; *Nguyen v. Mervau,* 1998 WL 556628, \*2 (N.D.Cal. Aug. 24, 1998).

In addition, Petitioner alleges in a Reply To State's Answer that he is actually innocent of the crimes for which he was convicted. It appears to the Court that neither the United States Supreme Court nor Third Circuit have ruled on the question of whether actual innocence can equitably toll the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1043723
(Cite as: Not Reported in F.Supp.2d)

Page 3

one-year limitation period. However, even assuming actual innocence can toll the limitation period, the Court would conclude that Petitioner has not established a sufficient basis to support his claim of actual innocence. To succeed on a claim of actual innocence, the petitioner must demonstrate, in light of all the evidence, that it is more likely than not that no reasonable juror would have convicted him. *Schlup v. Delo,* 513 U.S. 298, 327-328 (1995). Petitioner contends that because of his problems speaking English, his lawyer did not understand his contention that he was the victim of mistaken identity. Petitioner contends that he and his brother resemble each other, and that his brother was actually responsible for the crimes for which Petitioner was convicted. Petitioner's claim, however, is untenable in light of the evidence adduced at trial. The drug transaction forming the basis of Petitioner's convictions involved the purchase of drugs by an undercover officer. (Petitioner's Appendix in *Morales III,* No. 233, 1996 (Del.1997) ( "Petitioner's App.") at A-5-9). The officer purchased three bags of heroin for forty dollars, and the money used by the officer was marked. Shortly after the transaction, the officer observed Petitioner leaving the residence from where the drugs were purchased. Petitioner was stopped by a patrol car, and one of the marked bills was found in Petitioner's possession. (Petitioner's App. at A-12-24). Petitioner was identified by the officer involved in the purchase transaction as the individual from whom the officer purchased the drugs, and evidence was also presented that Petitioner admitted to using drugs and selling to support his habit. (State's Appendix in *Morales III,* No. 233, 1996 at B-1). In these circumstances, the Court cannot conclude that the alleged resemblance between Petitioner and his brother would have made it more likely than not that no reasonable juror would have found Petitioner guilty beyond a reasonable doubt. Accordingly, Petitioner has failed to demonstrate that equitable tolling is warranted, and therefore, the Court will dismiss the Petition as time-barred.

### IV. Certificate of Appealability

**\*4** The Court must next determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The Court may issue a certificate of appealability only if Petitioner "has made a substantial

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that reasonable jurists would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, the Court has concluded that the Petition is barred by the one-year period of limitation. The Court is convinced that reasonable jurists would not debate otherwise. Because the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right, the Court declines to issue a certificate of appealability.

### CONCLUSION

For the reasons discussed, the Court will dismiss the Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody filed by Petitioner, Luis Morales, and deny the Writ of Habeas Corpus sought by Petitioner. In addition, the Court will not issue a certificate of appealability.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 28 day of April 2004, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1. The Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (D.I.1) filed by Petitioner, Luis Morales, is DISMISSED and the Writ Of Habeas Corpus is DENIED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                          Page 4
Not Reported in F.Supp.2d, 2004 WL 1043723
**(Cite as: Not Reported in F.Supp.2d)**

2. The Court declines to issue a certificate of appealability for failure to satisfy the standard under 28 U.S.C. § 2253(c)(2).

D.Del.,2004.
Morales v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1043723

Briefs and Other Related Documents (Back to top)

• 1:03CV00220 (Docket) (Feb. 24, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21402509 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Derick LAWRENCE, Petitioner,
v.
Thomas L. CARROLL, Warden, and M. Jane Brady,
Attorney General, Respondents.
**No. Civ.A. 03-064-JJF.**

June 10, 2003.

Derick Lawrence, Petitioner, pro se.
Loren C. Meyers, Chief of Appeals Division of the
Delaware Department of Justice, Wilmington, Delaware, for
Respondent.

MEMORANDUM OPINION

FARNAN, J.
*1 Pending before the Court is Derick Lawrence's Petition
Under 28 U . S.C. § 2254 for a Writ of Habeas Corpus by a
Person in State Custody (D.I.2). [FN1] For the reasons set
forth below, the Petition will be denied.

> FN1. Also pending before the Court is Derick
> Lawrence's Motion for Appointment of Counsel
> (D.I.4), which will be denied as moot based on the
> denial of Mr. Lawrence's Petition.

I. BACKGROUND

In February 1998, a Delaware Superior Court jury convicted
Derick Lawrence of first degree robbery. The Delaware
Supreme Court affirmed Mr. Lawrence's conviction on
direct appeal. *Lawrence v. State,* No. 204, 1998 (Del. May
21, 1999). In February 2001, Mr. Lawrence moved for
post-conviction relief under Superior Court Criminal Rule
61. The Delaware Superior Court denied the Rule 61 motion
in August 2001, and the Delaware Supreme Court affirmed
that decision in January 2002. *Lawrence v. State,* No. 440,
2001 (Del. Jan. 18, 2002). Mr. Lawrence filed the instant
petition for federal habeas relief on January 15, 2003,
making the same claims he made in his Rule 61 motion.

II. DISCUSSION

A. *One-Year Period of Limitation*

28 U.S.C. § 2244(d) provides:
(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of-(A) the date on
which the judgment became final by the conclusion of direct
review or the expiration of the time for seeking such
review....

28 U.S.C. § 2244(d). Mr. Lawrence's conviction became
final when the 90 day period in which he could have applied
for a writ of certiorari from the United States Supreme
Court expired. *Kapral v. United States,* 166 F.3d 565, 575
(3d Cir.1999) ("a state court criminal judgment is 'final'
(for purposes of collateral attack) at the conclusion of
review in the United States Supreme Court or when the time
for seeking certiorari review expires."). Mr. Lawrence had
90 days from May 21, 1999, the date on which the Delaware
Supreme Court affirmed his conviction on direct appeal, to
apply for a writ of certiorari from the United States Supreme
Court. U.S.Supr. Ct. R. 13.1. That 90 day period ended on
August 19, 1999. Thus, under Section 2244(d), Mr.
Lawrence had until August 19, 2000, to file his federal
habeas petition.

A pro se prisoner's habeas petition is deemed filed on the
date he delivers it to prison officials for mailing to the
district court. Mr. Lawrence's Petition is dated January 15,
2003 (D.I. 2 at 7), and in the absence of proof respecting the
date of delivery, that date is the presumptive date the
Petition was delivered to prison officials for mailing. *Woods
v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002). Thus, the
Court finds that Mr. Lawrence's Petition was filed on
January 15, 2003.

Because Mr. Lawrence's Petition was not filed until January
15, 2003, and because, under Section 2244(d), Mr.
Lawrence's petition had to be filed by August 19, 2000, the
Court concludes that Mr. Lawrence's Petition is untimely.

B. *Statutory Tolling*

The one-year period of limitation may be statutorily tolled

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21402509 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

as follows: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2).

**\*2** Mr. Lawrence filed a motion for post-conviction relief in February 2001; however, the one year period of limitation had been expired for nearly six months at that point. Consequently, the Court concludes that Mr. Lawrence's motion for post-conviction relief did not toll the one year period of limitation under Section 2244(d)(2). *Fisher v. Gibson,* 262 F.3d 1135, 1142-43 (10th Cir.2001) (holding that application for post-conviction relief filed after the expiration of the one-year period has no tolling effect).

### C. *Equitable Tolling*

The one-year period of limitation may also be equitably tolled. *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). Equitable tolling applies:
only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing the claims. Mere excusable neglect is not sufficient.

*Id.* at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

Mr. Lawrence contends that the Court should equitably toll the one-year period of limitation because (1) he did not learn that his direct appeal was denied until July 2000, (2) he had limited access to the law library from June 1998 until January 2001, and (3) despite his limited legal knowledge, he was diligent in preparing and filing his Rule 61 motion. (D.I. 17 at 2-3). In response, the Respondents contend that none of the reasons advanced by Mr. Lawrence rise to the

level necessary to invoke the equitable tolling doctrine. Specifically, the Respondents contend that any mistake or miscalculation by Mr. Lawrence does not warrant equitable tolling.

"In non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). In this case, Mr. Lawrence's reasons for not timely filing his Petition are attributable, in the Court's view, to neglect, mistake, or inadequate legal knowledge. After reviewing the entire record, the Court concludes that there are no extraordinary circumstances in this case that merit application of the equitable tolling doctrine.

Because Mr. Lawrence's Petition is untimely under Section 2244(d) and because the one-year period of limitation is not subject to statutory or equitable tolling, the Court will deny the Petition.

### IV. *Certificate of Appealability*

**\*3** The court may issue a certificate of appealability ("COA") only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).
When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

*Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further ." *Id.*

In the instant case, the Court has concluded that Mr. Lawrence's Petition is barred by the one-year period of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 3
Not Reported in F.Supp.2d, 2003 WL 21402509 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

limitation and that the period should not be statutorily or
equitably tolled. The Court is convinced that reasonable
jurists would not find otherwise. Therefore, Mr. Lawrence
has not made a substantial showing of the denial of a
constitutional right, and a certificate of appealability will
not be issued.

### III. CONCLUSION

For the reasons discussed, Derick Lawrence's Petition Under
28 U.S.C. § 2254 for a Writ of Habeas Corpus by a Person
in State Custody (D.I.2) will be denied.

An appropriate Order will be entered.

### ORDER

At Wilmington, this 10th day of June 2003, for the reasons
set forth in the Memorandum Opinion issued this date,

IT IS HEREBY ORDERED that:
1. Derick Lawrence's Petition Under 28 U.S.C. § 2254 for a
Writ of Habeas Corpus by a Person in State Custody (D.I.2)
is *DENIED;*
2. Because the Court finds that Petitioner has not made a
substantial showing of the denial of a constitutional right
under 28 U.S.C. § 2253(c)(2), a certificate of appealability
is *DENIED;*
3. Derick Lawrence's Motion for Appointment of Counsel
(D.I.4) is *DENIED* as moot.

D.Del.,2003.
Lawrence v. Carroll
Not Reported in F.Supp.2d, 2003 WL 21402509 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00064 (Docket) (Jan. 16, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d                                                                 Page 1
Not Reported in F.Supp.2d, 2004 WL 1151547 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Michael A. BENSON, Petitioner,
v.
Thomas CARROLL, Warden, and M. Jane Brady, Attorney
General of the State of Delaware, Respondents.
**No. Civ.A. 03-065-SLR.**

May 18, 2004.

Michael A. Benson, petitioner, pro se.
Elizabeth McFarlan, Deputy Attorney General, Delaware
Department of Justice, Wilmington, Delaware, for
respondents.

### MEMORANDUM OPINION

ROBINSON, Chief J.

### I. INTRODUCTION

**\*1** Petitioner Michael A. Benson is a Delaware inmate in
custody at the Delaware Correctional Center in Smyrna,
Delaware. Currently before the court is petitioner's
application for a writ of habeas corpus pursuant to 28
U.S.C. § 2254. (D.I.1) For the reasons that follow, the court
concludes that petitioner's application is time-barred by the
one-year period of limitations prescribed in 28 U .S.C. §
2244(d)(1). Accordingly, the court will dismiss the petition
as untimely.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In August 1998, petitioner was convicted by a Delaware
Superior Court jury of three counts of delivery of cocaine
(16 DEL. C. § 4751); two counts of possession with intent
to deliver cocaine (16 DEL. C. § 4755(a)(5)); trafficking in
cocaine (16 DEL. C. § 4753(a)(2)(a)); and possession of
drug paraphernalia (16 DEL. C. § 4771). On December 4,
1998, the Superior Court sentenced petitioner to a total of
seventy-eight (78) years imprisonment, seventy-five (75) of
which were mandatory at Level V. *See State v. Benson,*
2002 WL 537590 (Del.Super.Ct. Apr. 10, 2002).

Petitioner, represented by counsel, filed a timely notice of
appeal. Thereafter, petitioner's counsel filed a motion to
withdraw pursuant to Delaware Supreme Court Rule 26(c),
stating that he found no meritorious issues for appeal.
Although counsel informed petitioner by letter that he could
supplement his attorney's brief, petitioner failed to raise any
issues on appeal. The Delaware Supreme Court
subsequently affirmed petitioner's convictions on June 29,
1998. *See Benson v. State,* No. 521, 1998 (Del. June 29,
1998).

In April 2001, petitioner filed a motion for state
post-conviction relief pursuant to Superior Court Criminal
Rule 61 in the Delaware Superior Court. His Rule 61
motion alleged four claims: (1) ineffective assistance of
counsel; (2) the trial court never heard his motion to
suppress evidence; (3) there was insufficient evidence to
support his conviction; and (4) illegal sentencing. *State v.
Benson,* 2002 WL 537590 (Del.Super.Ct. Apr. 10, 2002).
The Superior Court denied the Rule 61 motion as
procedurally barred by Rule 61(i)(3) for failure to prove
cause and prejudice. *Id.* Petitioner filed a timely notice of
post-conviction appeal. However, the Delaware Supreme
Court dismissed the post-conviction appeal on July 11, 2002
because petitioner never filed an opening brief and
appendix. *Benson v. State,* 803 A.2d 427 (Del.2002).

### III. DISCUSSION

Presently before the court is petitioner's *pro se* application
for federal habeas relief. (D.I.1) Petitioner asserts six habeas
claims: (1) after petitioner filed his Rule 61 motion, the
Superior Court did not require his trial attorney to
personally respond to his ineffective assistance of counsel
claim and did not hold an evidentiary hearing, thereby
denying him due process; (2) the Superior Court, in
dismissing his Rule 61 motion, erroneously found that
petitioner had not established cause for his failure to raise
the suppression of evidence claim on direct appeal; (3) the
evidence at trial was insufficient to support his conviction
due to his trial counsel's ineffectiveness; (4) he was denied
effective assistance of counsel at trial and on appeal; (5) his
conviction was based on an insufficient indictment, thereby
violating due process and double jeopardy; and (6) the
Superior Court's denial of his ineffective assistance of

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1151547 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

counsel claim raised in his Rule 61 motion was contrary to *Strickland v. Washington,* 466 U.S. 668 (1988). (D.I.1)

**\*2** Respondent contends that the entire petition is time-barred and asks the court to dismiss the petition as untimely.[FN1] (D.I. 8 at 3-5) Petitioner's habeas petition is now ripe for review.

> FN1. In the alternative, respondent also asks the court to dismiss the petition because petitioner procedurally defaulted his claims by failing to prosecute his appeal. (D.I. 8 at 5, citing *Gibbs v. Redman,* Civ. Act. No. 89-351-LON, Order at 4 (D.Del. Oct. 11, 1991)) The court, however, finds that petitioner's failure to comply with the one-year limitations period justifies dismissal of this petition.

### A. One-Year Statute of Limitation

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitations for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The one-year limitations period begins to run from the latest of:
(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

Petitioner does not allege, nor can the court discern, any facts triggering the application of § 2244(d)(1)(B),(C), or (D). As such, the one-year period of limitations began to run

when petitioner's conviction became final under § 2244(d)(1)(A).

When a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999); *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). In the present case, the Delaware Supreme Court affirmed petitioner's conviction on June 29, 1999. *Benson v. State,* 734 A .2d 640 (Del.1999). Consequently, petitioner's conviction became final for the purposes of § 2244(d)(1) on September 29, 1999. Thus, to timely file a habeas petition with this court, petitioner needed to file his § 2254 petition no later than September 29, 2000.

Petitioner's habeas petition is dated January 7, 2003. A *pro se* prisoner's habeas petition is deemed filed on the date he delivers it to prison officials for mailing to the district court. Therefore, the court adopts January 7, 2003 as the presumptive filing date. *See Longenette v. Krusing,* 322 F.3d 758, 761 (3d Cir.2003) (the date on which a prisoner transmitted documents to prison authorities is to be considered the actual filing date); *Woods v. Kearney,* 215 F.Supp.2d 458, 460 (D.Del.2002).

With January 7, 2003 as the filing date, petitioner filed his petition approximately two and one-half years too late. As such, his habeas petition is time-barred and should be dismissed, unless the time period can be statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). The court will discuss each doctrine in turn.

### B. Statutory Tolling

**\*3** Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitations:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1151547 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

Page 3

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for state post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998). However, even if a state post-conviction motion is properly filed under state procedural rules, it will not toll or revive the federal habeas limitations period if the post-conviction motion itself is not filed within the federal one-year filing period. *See Price v. Taylor,* 2002 WL 31107363, at *2 (D.Del. Sept. 23, 2002).

Here, when petitioner filed his motion for state post-conviction relief in April 2001, the one-year federal habeas limitations period had already expired on September 29, 2000. As such, the Rule 61 motion did not toll the federal habeas limitations period. Thus, petitioner's habeas petition is time-barred unless the one-year time period is equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### C. Equitable Tolling

A court, in its discretion, may equitably toll the one-year filing period when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998)(internal citations omitted). In general, federal courts invoke the doctrine of equitable tolling "only sparingly." *See United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998). The Third Circuit permits equitable tolling for habeas petitions in only four narrow circumstances:

(1) where the defendant actively misled the plaintiff;
(2) where the plaintiff was in some extraordinary way prevented from asserting his rights;
(3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or
(4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

*Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999). Generally, "a statute of limitations should be tolled only in

the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Id.* (quoting *Midgley,* 142 F.3d at 179).

In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims"; mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted). For example, in non-capital cases, inadequate research, attorney error, miscalculation, or other mistakes do not qualify as "extraordinary circumstances" sufficient to trigger equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001).

**\*4** Petitioner has not alleged, and the court cannot discern, any "extraordinary circumstances" that warrant equitably tolling the one-year limitations period. To the extent petitioner made a mistake or miscalculation regarding the one-year filing period, such mistakes do not justify equitable tolling. *See Simpson v. Snyder,* Civ. Act. No. 00-737-GMS, 2002 WL 1000094, at *3 (D.Del. May 14, 2002). Accordingly, the court concludes that the doctrine of equitable tolling is not available to petitioner on the facts he has presented and, therefore, petitioner's § 2254 petition will be dismissed as untimely.

### IV. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel,* 529 U.S. 473, 484 (2000).

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability unless the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Id.* "Where a plain procedural bar is present and the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2004 WL 1151547 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

The court concludes that petitioner's habeas petition must be dismissed as untimely. Reasonable jurists would not find this conclusion to be unreasonable. Consequently, the court declines to issue a certificate of appealability.

V. CONCLUSION

For the reasons stated, petitioner's application for habeas relief pursuant to 28 U.S.C. § 2254 is denied. An appropriate order shall issue.

D.Del.,2004.
Benson v. Carroll
Not Reported in F.Supp.2d, 2004 WL 1151547 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:03CV00065 (Docket) (Jan. 16, 2003)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                  Page 1
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Only the Westlaw citation is currently available.
United States District Court, D. Delaware.
Kevin A. THOMAS, Petitioner,
v.
Robert W. SNYDER, Warden, and Attorney General of the
State of Delaware, Respondents.
**No. CIV.A. 98-597-GMS.**

Nov. 28, 2001.

MEMORANDUM AND ORDER

SLEET, District J.

**\*1** Kevin A. Thomas was convicted of first degree murder
and possession of a deadly weapon during the commission
of a felony. He is presently incarcerated in the Delaware
Correctional Center in Smyrna, Delaware, where he is
serving a sentence of life imprisonment. Thomas has filed
with this court a petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254. As explained below, the court
will dismiss Thomas' petition as time barred by the one-year
period of limitation prescribed in 28 U.S.C. § 2244(d).

I. BACKGROUND

On June 28, 1993, following a jury trial in the Delaware
Superior Court, Kevin A. Thomas was convicted of first
degree murder and possession of a deadly weapon during
the commission of a felony. The evidence at trial
demonstrated that on September 13, 1992, Thomas shot
David Turner in the face and killed him. Thomas was
seventeen years old at the time. He was sentenced to life in
prison without parole on the murder conviction and to a
consecutive sentence of five years in prison on the weapons
conviction. The Delaware Supreme Court affirmed Thomas'
conviction and sentence on September 21, 1994.

On December 18, 1996, Thomas filed in state court a
motion for post-conviction relief pursuant to Rule 61 of the
Delaware Superior Court Criminal Rules. The trial court
summarily dismissed Thomas' Rule 61 motion on December
23, 1996. Thomas appealed to the Delaware Supreme Court.
His subsequent motion to withdraw the appeal was granted
on March 11, 1997. Thomas filed a second Rule 61 motion
for post-conviction relief on March 27, 1997, which was

summarily dismissed on May 9, 1997. Again, Thomas
appealed to the Delaware Supreme Court. The Court
affirmed the order of dismissal on November 24, 1997.

Thomas has now filed with this court the current petition for
a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his
petition Thomas articulates four separate grounds for relief:
(1) The searches of his residence and car were in violation
of the Fourth Amendment, and all evidence seized from
these searches should have been suppressed; (2) The trial
court erred in admitting identification testimony that was the
result of an impermissibly suggestive photographic
identification procedure; (3) The trial court violated his
constitutional right to due process by giving a supplemental
jury instruction pursuant to *Allen v. United States,* 164 U.S.
492 (1896); and (4) His constitutional rights were violated
when police questioned him without a parent or legal
guardian present. The respondents argue that the petition is
subject to a one-year period of limitation that expired before
Thomas filed it. Thus, they request that the court dismiss the
petition as time barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), Congress amended the federal habeas
statute by prescribing a one-year period of limitation for the
filing of § 2254 habeas petitions by state prisoners. *Stokes v.
District Attorney of the County of Philadelphia,* 247 F.3d
539, 541 (3d Cir.2001). Effective April 24, 1996, the
AEDPA provides:

**\*2** (1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of -
(A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review....

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible
retroactive application of the one-year period of limitation,
state prisoners whose convictions became final prior to the
enactment of the AEDPA were allowed to file their § 2254

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                           Page 2
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

petitions no later than April 23, 1997. *See Burns v. Morton,* 134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of petitions filed on or before April 23, 1997, as untimely under § 2244(d)(1)(A)).

Thomas' conviction became final prior to the enactment of the AEDPA. He was convicted on June 28, 1993. The Delaware Supreme Court affirmed the judgment of conviction on September 21, 1994. Thomas was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13. Although Thomas did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Thomas' conviction became final on December 20, 1994, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

Ascertaining the precise date Thomas filed his habeas petition with the court is somewhat problematic. The court's docket reflects that the petition was filed on October 21, 1998, the date the clerk's office received his petition and filing fee. A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court receives it. *Id.* at 113. Thomas has provided the court with no documentation establishing the date he delivered his petition to prison officials for mailing. The petition itself, however, is dated August 10, 1998. The respondents maintain that the filing date is October 8, 1998, but they provide no documentation to support this conclusion. Under these circumstances, the court will extend Thomas every benefit of the doubt and will consider his habeas petition filed on August 10, 1998, the earliest possible date he could

have delivered it to prison officials for mailing.

**\*3** Obviously Thomas' habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d)'s period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation:

The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

Thomas filed in state court a Rule 61 motion for post-conviction relief on December 18, 1996, which the Superior Court summarily dismissed on December 23, 1996. As previously noted, Thomas appealed from the order of dismissal. His subsequent motion to withdraw the appeal was granted on March 11, 1997. The respondents concede, and correctly so, that the filing of this motion for post-conviction relief tolled the period of limitation. Thus, the period of time from December 18, 1996, through March 11, 1997, does not count toward the one-year period of limitation. [FN1]

> FN1. The court notes that the one-year period is tolled during the time between the Superior Court's dismissal of Thomas' Rule 61 motion and his timely appeal to the Delaware Supreme Court. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000).

Thomas filed a second Rule 61 motion for post-conviction relief in state court on March 27, 1997, which was summarily dismissed on May 9, 1997. The Delaware Supreme Court affirmed the dismissal on November 24, 1997. Again, the respondents concede that the filing of the second Rule 61 motion tolled the period of limitation. [FN2] Thus, the period of time from March 27, 1997, through November 24, 1997, is excluded from the one-year limitation period. [FN3]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                        Page 3
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

FN2. Only a "properly filed application" for post-conviction review tolls the one-year period under § 2244(d)(2). Whether Thomas' second Rule 61 motion constitutes a "properly filed application" is subject to debate. Under Rule 61, "[a]ny ground for relief that was not asserted in a prior postconviction proceeding ... is thereafter barred." Super. Ct. R.Crim. P., Rule 61(i)(2). This procedural bar, however, is inapplicable where a motion raises "a colorable claim that there was a miscarriage of justice because of a constitutional violation that undermined the fundamental legality, reliability, integrity or fairness of the proceedings leading to the judgment of conviction." *Id.,* Rule 61(i)(5). The court need not, and does not, address whether Thomas' second Rule 61 motion was a "properly filed application" because the respondents concede that the one-year period was tolled while the second Rule 61 motion was pending. Regardless, as discussed herein, Thomas' habeas petition is untimely.

FN3. Thomas could have filed, but did not file, a petition for a writ of certiorari with the United States Supreme Court within ninety days of the Delaware Supreme Court's order. *See* Supreme Court Rule 13. As explained above, on direct review that ninety-day period is excluded from the one-year period of limitation. *See Kapral,* 166 F.3d at 576. In post-conviction proceedings, however, the time during which a state prisoner may file a petition in the United States Supreme Court does *not* toll the one-year period, and the ninety-day period is counted. *Stokes,* 247 F.3d at 543.

Nonetheless, since the date of the enactment of AEDPA, more than one year has passed during which statutory tolling does not apply. First, from April 24, 1996, through December 17, 1996, a period of 238 days, no post-conviction proceedings were pending, and those 238 days are included as part of the one-year period. In addition, from March 12, 1997, through March 26, 1997, no post-conviction relief proceedings were pending, and those fourteen days must be counted. Finally, from November 25,

1997, through August 9, 1998, a period of 258 days, no motion for post-conviction relief was pending, and those 258 days must be counted.

In sum, following the enactment of the AEDPA, 510 days lapsed during which Thomas had no post-conviction proceedings pending for purposes of § 2244(d)(2). This period of time, well in excess of one year, must be counted. The court thus concludes that while the statutory tolling provision applies to certain portions of time since the enactment of the AEDPA, it does not render Thomas' habeas petition timely filed.

### C. Equitable Tolling

Additionally, the one-year period of limitation prescribed in § 2244(d) may be subject to equitable tolling. *Fahy v. Horn,* 240 F .3d 239, 244 (3d Cir.2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corrections,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:

*4 only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159, *quoting United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

In the instant case, Thomas argues that the AEDPA's one-year period of limitation is at odds with the three-year period allowed for filing a Rule 61 motion for post-conviction relief. He contends that because Delaware allows three years in which to file a Rule 61 motion, and petitioners are required to exhaust state remedies before filing habeas petitions in federal court, it is unfair to apply

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

the AEDPA's one-year period of limitation, rather than Delaware's three-year period.

Although Thomas is correct that Delaware generally allows three years in which to file a Rule 61 motion, *see* Super. Ct. R.Crim. P., Rule 61(i)(1), the court is unimpressed by his equitable tolling argument. As explained above, the court has applied § 2244(d)(2)'s tolling provision to exclude the periods of time during which his two post-conviction proceedings were pending before the state courts. These periods of time do not count against Thomas. There is nothing unfair or inequitable in applying the AEDPA's one-year period of limitation to petitioners who wait more than a year before filing a habeas petition in federal court, even if the Delaware rule permits a longer period of time in which to file Rule 61 motions.

More important, Thomas has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. Indeed, he has failed to offer *any* explanation for the delay. He has not provided the court with any reason why, after the AEDPA was enacted, he waited until December 18, 1996, to file his first Rule 61 motion. He has not explained why, after his second Rule 61 proceedings were completed on November 24, 1997, he waited until August 10, 1998, to file his habeas petition with this court.

In short, the court cannot discern any extraordinary circumstances that warrant applying the doctrine of equitable tolling. Thomas' habeas petition will be dismissed as untimely.

### D. Motion for Appointment of Counsel

In a letter to the court dated April 16, 2000, Thomas inquired respecting appointment of counsel in this matter. The court construes this letter as a motion for appointment of counsel. The Sixth Amendment right to counsel does not extend to habeas proceedings. *See Pennsylvania v. Finley,* 481 U.S. 551, 555 (1987); *United States v. Roberson,* 194 F.3d 408, 415 n. 5 (3d Cir.1999). Additionally, the court has determined that Thomas' habeas petition will be dismissed as untimely. Accordingly, Thomas' letter dated April 16, 2000, construed as a motion for appointment of counsel,

will be denied as moot.

### III. CERTIFICATE OF APPEALABILITY

**\*5** Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Thomas' habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled to render the petition timely. The court is convinced that reasonable jurists would not debate otherwise. Thomas therefore cannot make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not issue.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:
1. Thomas' petition for a writ of habeas corpus pursuant to 28 U .S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.
2. Thomas' letter dated April 16, 2000, requesting appointment of counsel, is construed as a motion for appointment of counsel, and so construed, is DENIED as moot.
3. The court declines to issue a certificate of appealability

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                    Page 5
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

for failure to satisfy the standard set forth in 28 U.S.C. §
2253(c)(2).

IT IS SO ORDERED.

D.Del.,2001.
Thomas v. Snyder
Not Reported in F.Supp.2d, 2001 WL 1555239 (D.Del.)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                     Page 1
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

Not Reported in F.Supp.2d, 2003 WL 21146750
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,D. Delaware.
Ronnie D. WILMER, Petitioner,
v.
Thomas L. CARROLL, Warden, and M. Jane Brady,
Attorney General of the State of Delaware, Respondents.
**No. Civ.A. 02-1587-SLR.**

May 16, 2003.

MEMORANDUM ORDER

ROBINSON, J.

### I. INTRODUCTION

**\*1** Petitioner Ronnie D. Wilmer is a Delaware inmate in custody at the Delaware Correctional Center in Smyrna, Delaware. Currently before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.2) For the reasons that follow, the court concludes that petitioner's application is time-barred by the one-year period of limitations prescribed in 28 U .S.C. § 2244(d)(1). Accordingly, the court will dismiss the petition as untimely.

### II. BACKGROUND

Petitioner was indicted in July 1994 for three drug offenses. (D.I.11) He pled guilty in October 1994 to trafficking in cocaine and maintaining a vehicle for distributing controlled substances. The Delaware Superior Court sentenced petitioner to a total of eight years imprisonment, which it suspended after five years for three years probation. (*Id.*)

In February 2000, petitioner was arrested for several motor vehicle offenses. (*Id.*) During the execution of a search warrant at the home of petitioner's mother, the Delaware State Police found over 50 grams of crack cocaine. Petitioner subsequently admitted that the drugs belonged to him. In addition, probation officers charged petitioner with violating his curfew. As a result, in March 2000, state probation officers charged petitioner with violating the

terms of his probation and, in April 2000, petitioner was indicted on various drug charges. In August 2000, Petitioner pled guilty to possession of cocaine and maintaining a dwelling for keeping controlled substances, and the Delaware Superior Court found that petitioner had violated his probation stemming from the 1994 conviction. The Superior Court revoked his probation and petitioner was sentenced to two years imprisonment ("VOP sentence"). In connection with another 1994 conviction for which he had also been on probation, the Superior Court sentenced him to two years imprisonment. (*Id.*)

Petitioner did not appeal his conviction or the revocation of his probation. (*Id.*) Rather, on November 3, 2000, petitioner moved to modify his sentence under Rule 35(b) of the Superior Court Rules of Criminal Procedure. The Superior Court denied this motion on November 21, 2000, and petitioner did not appeal that decision. Subsequently, on July 23, 2001, petitioner filed a motion to correct his sentence under Rule 35(a) of the Superior Court Rules of Criminal Procedure, which the Superior Court denied on July 31, 2001. Petitioner appealed and, on February 13, 2002, the Delaware Supreme Court affirmed the Superior Court's decision. Forty-three days later, petitioner moved for post-conviction relief under Rule 61 of the Superior Court Rules of Criminal Procedure. On June 19, 2002, the Delaware Superior Court denied that motion, and the Delaware Supreme Court affirmed this denial on September 27, 2002. (*Id.*)

On October 29, 2002, petitioner filed with this court his application for federal habeas relief, along with a request to proceed *in forma pauperis.* (D.I.2) In his habeas petition, petitioner alleges that his counsel provided ineffective assistance by:[FN1]

> FN1. Petitioner did not write out the grounds for the petition but, rather, he attached a copy of the Delaware Supreme Court's Order affirming the Superior Court's judgment.

**\*2** (1) failing to inform him about the basis for the State's case, investigate the facts, or meet or communicate with him about the case;
(2) re-scheduling the VOP hearing repeatedly; and

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                        Page 2
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

(3) waiving his constitutional right to a preliminary hearing.

(D.I. 2, *Wilmer v. State,* No. 359, 2002, at 2 (Sept. 27, 2002)).

This court granted petitioner's request to proceed *in forma pauperis. (Id.)* On November 19, 2002, petitioner simultaneously filed a motion for release pending review (D.I.7) and a motion for the production of documents. (D.I.8) The motion for the production of documents requests copies of "all police reports, probable cause, and physical material evidence leading to the arrest of the petitioner ... [and a] copy of the executed search warrant." *(Id.)*

As to petitioner's application for federal habeas relief, respondents assert that the petition is untimely because petitioner filed it after the expiration of the one-year period of limitation, and they ask the court to dismiss it as time-barred. (D.I.11) They assert that the motion for release pending review should be denied because: (1) the entire petition is time-barred; and (2) petitioner has not satisfied the required standards justifying such action. (D.I.15) Respondents also assert that the motion for the production of documents should be denied because: (1) the entire petition is time-barred; and (2) petitioner has not established "good cause" for discovery. (D.I.14)

On February 10, 2003, petitioner filed a "reply in opposition of respondent's answer to motion for the production of documents" and a reply brief. (D.I.16, 17) Petitioner's reply regarding the motion for the production of documents asserts that the court needs to review the entire state record to determine the validity of his ineffective assistance of counsel claim, and that this mixed question of law and fact is not entitled to the "presumption of correctness" prescribed by § 2254(e)(1). (D.I. 16 at 2-3) Petitioner's reply brief provides additional explanations for his ineffective assistance of counsel claim. (D.I.17) In addition, petitioner requests an evidentiary hearing because facts are in dispute, and he asserts his right to counsel during such evidentiary hearing. *(Id.* at 6)

### III. DISCUSSION

#### A. One-Year Period of Limitation

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") prescribes a one-year period of limitation for the filing of habeas petitions by state prisoners. 28 U.S.C. § 2244(d)(1). The AEDPA states, in pertinent part:

(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of -

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review....

28 U.S.C. § 2244(d)(1). If a state prisoner appeals a state court judgment, the state court criminal judgment becomes "final," and the statute of limitations begins to run, "at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires." *See Kapral v. United States,* 166 F.3d 565, 575, 578 (3d Cir.1999) ; *Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). If a petitioner does not appeal a state court judgment, then the conviction becomes final on the "date on which the time for filing such an appeal expired." *See Kapral,* 166 F.3d at 577.

**\*3** In the present case, the Delaware Superior Court sentenced petitioner on August 3, 2000. Because petitioner did not appeal his sentence, the one-year period of limitation began to run on the expiration of the time for filing an appeal. Pursuant to Delaware law, a notice of appeal in a direct criminal appeal must be filed within thirty days after a sentence is imposed. *See* 10 Del.Code Ann. § 147; Del.Supr.Ct.R. 6(a)(ii). Consequently, petitioner's conviction became final for the purposes of § 2244(d)(1) on September 5, 2000. [FN2] Thus, to timely file a habeas petition with this court, petitioner needed to file his § 2254 petition no later than September 5, 2001.

> FN2. The thirtieth day was actually September 2, a Saturday. Because Monday, September 4, was Labor Day, the appeal period expired on September 5, 2000. Del.Supr.Ct.R.11(a).

The court's docket indicates that petitioner filed his pending habeas petition on October 29, 2002, one year and fifty four days too late. However, a *pro se* prisoner's habeas petition is considered filed on the date the petition is delivered to

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 3
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

prison officials for mailing, not on the court's docket date. *Burns v. Morton,* 134 F.3d 109, 113 (3d Cir.1998). The pending petition was actually signed and dated October 9, 2002, and stamped as "received" by the District Court Clerk's Office on October 10, 2002. Thus, the court will assume that petitioner mailed the petition on October 9, 2002 and, therefore, will treat October 9, 2002 as the date of filing.

Even if the date of filing is October 9, 2002, the petitioner filed his habeas petition one year and thirty four days after his conviction became final. Nonetheless, if either the doctrine of statutory tolling or equitable tolling applies, then the petition will not be time-barred. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999). The court will discuss each doctrine in turn.

### B. Statutory Tolling

Section 2244(d)(2) of the AEDPA specifically permits the statutory tolling of the one-year period of limitation:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending should not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2). The Third Circuit views a properly filed application for State post-conviction review as "one submitted according to the state's procedural requirements, such as the rules governing the time and place of filing." *Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998).

Although the petitioner did not appeal his VOP sentence, he did file three post-conviction motions for review: (1) Rule 35(b) motion to modify sentence, filed November 3, 2000 and denied on November 21, 2000; (2) Rule 35(a) motion to correct sentence, filed July 23, 2001, denied on July 31, 2001, and affirmed by the Delaware Supreme Court on appeal on February 13, 2002; and (3) Rule 61 motion for post-conviction relief, filed on March 28, 2002, denied on June 19, 2002, and affirmed by the Delaware Supreme Court on appeal on September 27, 2002. The respondents assert that the Rule 35(b) motion to modify sentence does not toll the limitations period because it is "little more than a plea to the sentencing judge for leniency." (D.I. 11, citing

*Walkowiak v. Haines,* 272 F.3d 234 (4th Cir.2001); *see Bland v. Hall,* 2002 WL 989532 (D.Mass. May 14, 2002)). While the court agrees that petitioner's 35(b) motion does not toll the one-year period, it disagrees with the respondents' reasoning.

*4 Generally, a Rule 35(b) motion does toll the one-year time period because it "qualifies as an application for postconviction or other collateral review under § 2244(d)(2)." *McNeil v. Snyder,* 2002 WL 202100, at *3 (D. Del. Feb 8, 2002). However, even though a Rule 35(b) motion can toll the one-year period, it can only do so if it was timely filed in the right location. *See Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998) ; 28 U.S.C. § 2244(d)(2). In this instance, the Delaware Superior Court denied the Rule 35(b) motion because it was "filed more than 90 days after imposition of sentence and is therefore timebarred." FN3 (D.I. 13, State's August 16, 2002 App. B2) Because petitioner's motion did not conform to the state's procedural requirements, the motion was not properly filed and, thus, it does not trigger 28 U.S.C. § 2244(d)(2)'s tolling provision.

> FN3. Del.Super. Ct. R. 35(b) requires a motion to reduce a sentence to be "made within 90 days after the sentence is imposed." The Superior Court Criminal Docket indicates that the sentence was imposed on August 3, 2000, but was not signed and filed until August 15, 2000. (D.I. 13, State's Aug. 16, 2002 App. B2) Thus, the 90-day filing period for a Crim R. 35(b) motion commenced on August 3, 2000, the date of sentencing. Petitioner filed his 35(b) motion on November 3, 2000, ninety-two days after sentencing.

The respondents correctly acknowledge that the one-year period was tolled by petitioner's other post-conviction motions. Petitioner filed his 35(a) motion to correct his sentence on July 23, 2001, tolling the time period until the Delaware Supreme Court affirmed the denial of post-conviction relief on February 13, 2002. By the time petitioner filed the Rule 35(a) motion, 321 days of the one-year period had lapsed. The one-year period began to run again on February 13, 2002, but was tolled 43 days later on March 28, 2002 when petitioner filed a motion for post-conviction relief under Rule 61 of the Superior Court



Rules of Criminal Procedure. The time period was tolled until September 27, 2002, when the Delaware Supreme Court affirmed the denial of post-conviction relief. However, at this point in time, there was only one day left in the limitations period. Thus, to be timely, petitioner had to file his habeas petition by September 28, 2002. Accordingly, because the petition was not filed until October 9, 2002, it is time-barred. The court concludes that the doctrine of statutory tolling does not render the petition timely.

### C. Equitable Tolling

A petitioner may be able to avoid the AEDPA one-year time period by demonstrating that the doctrine of equitable tolling applies to the habeas motion. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001) ; *Miller v. New Jersey State Dep't of Corrs.,* 145 F.3d 616 (3d Cir.1998). Equitable tolling is proper when "the petitioner has in some extraordinary way ... been prevented from asserting his or her rights." *Id.* at 618 (internal citations omitted). However, the Third Circuit permits equitable tolling for habeas petitions in only four narrow circumstances:

> (1) where the defendant actively misled the plaintiff;
>
> (2) where the plaintiff was in some extraordinary way prevented from asserting his rights;
>
> (3) where the plaintiff timely asserted his rights mistakenly in the wrong forum; or
>
> (4) where [in a Title VII action] the claimant received inadequate notice of his right to file suit, a motion for appointment of counsel is pending, or the court misled the plaintiff into believing that he had done everything required of him.

*\*5 Jones v. Morton,* 195 F.3d 153, 159 (3d Cir.1999). Federal courts invoke the doctrine of equitable tolling "only sparingly." *See United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998). In order to trigger equitable tolling, the petitioner must demonstrate that he "exercised reasonable diligence in investigating and bringing [the] claims;" mere excusable neglect is insufficient. *Miller,* 145 F.3d at 618-19 (citations omitted). For example, in non-capital cases, inadequate research, attorney error, miscalculation, or other mistakes do not qualify as "extraordinary circumstances"

sufficient to trigger equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.2001). Generally, "a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice." *Jones,* 195 F.3d at 159 (quoting *United States v. Midgley,* 142 F.3d 174, 179 (3d Cir.1998).

The respondents' answer clearly asserts that the petition is time-barred and must be dismissed, and that the time period is neither statutorily nor equitably tolled. (D.I.11) Despite this explicit argument, petitioner's reply brief does not address the timeliness issue. (D.I.17) Rather, petitioner focuses on the issue of exhaustion of state remedies.[FN4] (*Id.*) Nevertheless, the court broadly construes petitioner's statement that "the respondents breach[ed] ... this court's procedural rules of habeas corpus proceedings, pursuant to 28 U.S.C. § 2249 associated with its obligation to submit to this court all state records of the defendant ... [c]learly it [is] conceivable that this is the respondents' attempt to sabotage the petitioner's efforts to make his claim of ineffective assistance of counsel argument" as a potential equitable tolling argument. (*Id.* at 4) Basically, petitioner appears to argue that the State's failure to respond to his prior requests for copies of the search warrant and police report illustrate that he "was in some extraordinary way prevented from asserting his rights."

> FN4. In fact, the respondents explicitly acknowledge that the petitioner "obviously exhausted state remedies." (D.I. 11 at 2)

The court is not persuaded by this argument. Even if, arguendo, the State were attempting to "sabotage the petitioner's effort to make his claim of ineffective assistance of counsel argument," the failure to produce the requested items did not prevent petitioner from timely filing his habeas petition. To the extent that petitioner's failure to timely file his petition was the result of a mistake, a mistake does not constitute an extraordinary circumstance. Equitable tolling is not triggered by a *pro se* prisoner's mistake or miscalculation of the time period. *See Simpson v. Snyder,* 2002 WL 1000094, at \*3 (D.Del. May 14, 2002). In short, the court concludes that the petitioner has not presented any extraordinary circumstances to warrant applying the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                              Page 5
Not Reported in F.Supp.2d, 2003 WL 21146750
**(Cite as: Not Reported in F.Supp.2d)**

doctrine of equitable tolling. Accordingly, petitioner's § 2254 habeas petition will be dismissed as untimely.

### D. Motion for an Evidentiary Hearing

**\*6** Petitioner asserts that he is entitled to an evidentiary hearing "on his ineffective assistance of counsel claims as a matter of right where the facts are disputed." (D.I. 17 at 6) Although a federal court has discretion to grant evidentiary hearings, the AEDPA permits such hearings only in limited circumstances. *See* 28 U.S.C. § 2254(e) ; *Campbell v. Vaughn,* 209 F.3d 280, 286-87 (3d. Cir.2000), *cert. denied,* 531 U.S. 1084 (2001). For example, if a habeas petitioner "has diligently sought to develop the factual basis of a claim for habeas relief, but has been denied the opportunity to do so by the state court, § 2254(e)(2) will not preclude an evidentiary hearing in federal court." *Id.* at 287 (quoting *Cardwell v. Greene,* 152 F.3d 331, 337 (4th Cir.1998). When deciding whether to grant an evidentiary hearing, courts "focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Id.* A petitioner needs to explain how the evidentiary hearing will advance the habeas claim, or " 'forecast any evidence beyond that already contained in the record' that [will] help his cause." *Id.* (quoting *Cardwell,* 152 F.3d at 338).

In the present case, petitioner's habeas petition is time barred. The alleged "facts in dispute" to which petitioner refers involve the search warrant and police reports for the 2000 conviction. (D.I. 17 at 4,6) Any information contained in these requested documents would not alter the court's decision that the petition is time barred. [FN5] Accordingly, the court will deny petitioner's request for an evidentiary hearing.

> FN5. The court notes that this request was included in petitioner's reply brief. As such, he was aware of the respondents' assertion that the petition is time-barred and, therefore, he could have identified what evidence, if any, could be produced to challenge the time-bar issue.

### E. Motions for the Production of Documents and for Release

Petitioner asks the court for leave to conduct discovery, seeking to obtain copies of the police reports related to the 2000 offenses and a copy of the search warrant executed by state police. (D.I.8) Petitioner also requests that the court order his release pending disposition of his habeas petition. (D.I.7) Because the court will dismiss his habeas petition as untimely, petitioner's requests for discovery and release are now moot.

Even if petitioner's requests were not moot, he has failed to satisfy the standards justifying the granting of the two motions. First, a federal court may grant leave to conduct discovery only if the party establishes "good cause" for such discovery. Rule 6(a) of the Rules Governing Section 2254 Actions. In order to establish "good cause," the applicant must state the "point to specific evidence that might be discovered that would support a constitutional claim." *Marshall v. Hendricks,* 103 F.Supp.2d 749, 760 (D.N.J.2000), *rev'd in part on other grounds,* 307 F.3d 36 (3d Cir.2002) (citing *Deputy v. Taylor,* 19 F.3d 1485, 1493 (3d Cir.1994)).

Although petitioner specifically identifies the documents requested for discovery, he does not articulate the information he expects to uncover in the reports or how the reports would support his constitutional claim. His unsupported conclusory allegation that "had this evidence been disclosed in state court proceedings, the results would have been different" fails to provide "good cause." As such, even if not moot, the request for the production of the police reports and the search warrant would be denied.

**\*7** Second, with regard to his motion for release pending disposition of his habeas petition, petitioner erroneously asserts Rule 23(c) of the Federal Rules of Appellate Procedure as authorizing such release. (D.I.7) This rule governs requests for bail pending review by an appellate court of an order of the district court granting a writ of habeas corpus, not this situation where petitioner requests bail pending the district court's review of an application for habeas relief. *See Landano v. Rafferty,* 970 F.2d 1230, 1239 (3d Cir.1992). In order for a district court to grant bail pending review of the habeas petition of a state prisoner, the court must find "extraordinary circumstances." *Id.* (citing *Lucas v. Hadden,* 790 f.2d 365, 367 (3d Cir.1986).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                    Page 6
Not Reported in F.Supp.2d, 2003 WL 21146750
(Cite as: Not Reported in F.Supp.2d)

Accordingly, even if not moot, the court would deny the motion because petitioner has failed to articulate any extraordinary circumstances that would allow the court to order his release from state custody.

### IV. CERTIFICATE OF APPEALABILITY

When a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the court is not required to issue a certificate of appealability because the petitioner "has [not] made a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A court will grant a certificate of appealability in such a case only if the petitioner demonstrates that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons stated above, the court concludes that petitioner's habeas petition is barred by the one-year period of limitation. Neither the statutory tolling provision nor the doctrine of equitable tolling applies. Moreover, the court is convinced that reasonable jurists would not find these conclusions unreasonable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. Petitioner Ronnie D. Wilmer's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 (D.I.2) is DISMISSED, and the relief requested therein is DENIED.
2. Petitioner's motion for release pending review and decision (D.I.7) is DENIED.
3. Petitioner's motion for the production of documents (D.I.8) is DENIED.
4. Petitioner's request for an evidentiary hearing and the

appointment of counsel (D.I. 17 at 6) is DENIED.
*8 5. The court declines to issue a certificate of appealability for failure to satisfy the standard set forth in 28 U.S.C. § 2253(c)(2).

D.Del.,2003.
Wilmer v. Carroll
Not Reported in F.Supp.2d, 2003 WL 21146750

Briefs and Other Related Documents (Back to top)

• 1:02CV01587 (Docket) (Oct. 29, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                        Page 1
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Briefs and Other Related Documents

Only the Westlaw citation is currently available.

United States District Court, D. Delaware.

Charles W. SIMPSON, Petitioner,

v.

Robert W. SNYDER, Warden, and Attorney General of the
State of Delaware, Respondents.

**No. CIV.A. 00-737-GMS.**

May 14, 2002.

MEMORANDUM AND ORDER

SLEET, District J.

**\*1** Following a jury trial in the Delaware Superior Court,
Charles W. Simpson was convicted of rape, attempted rape,
and unlawful sexual contact. He was sentenced to three
consecutive terms of life in prison plus seven years.
Simpson has now filed with the court a petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2254. As explained
below, the court will dismiss Simpson's petition as time
barred by the one-year period of limitation prescribed in 28
U.S.C. § 2244(d)(1).

I. BACKGROUND

On July 3, 1990, a jury in the Delaware Superior Court
found Charles W. Simpson guilty of two counts of first
degree rape, attempted first degree rape, and unlawful
sexual contact in the second degree. The victim was the
minor daughter of Simpson's girlfriend. On September 21,
1990, the Superior Court sentenced Simpson to three terms
of life in prison plus seven years. The Delaware Supreme
Court affirmed Simpson's conviction and sentence on
December 19, 1991. *Simpson v. State,* No. 340, 1990, 1991
WL 316959 (Del. Dec. 19, 1991).

On December 15, 1994, Simpson filed in the Superior Court
a motion for postconviction relief pursuant to Rule 61 of the
Superior Court Rules of Criminal Procedure. The Superior
Court found that some of Simpson's claims were
procedurally barred, and that the remaining claims were
without merit. *State v. Simpson,* Crim. A. No.
IN-89-03-1657-R1, 1995 WL 562163 (Del.Super.Ct. Sept.
8, 1995). The Delaware Supreme Court affirmed the

Superior Court's order denying Rule 61 relief. *Simpson v.
State,* No. 421, 1995, 1996 WL 554233 (Del. Sept. 20,
1996). Simpson filed a second Rule 61 motion on October
3, 1997, which the Superior Court denied on the ground that
each of his claims was procedurally barred. *State v.
Simpson,* Crim. A. No. IN89-031657R2, 1998 WL 735882
(Del.Super.Ct. Sept. 1, 1998). The Delaware Supreme Court
again affirmed. *Simpson v. State.* No. 429, 1998, 1999 WL
636630 (Del. July 30, 1999).

Simpson has now filed the current petition for federal
habeas corpus relief pursuant to 28 U.S.C. § 2254. In his
petition, Simpson raises six claims for relief. The
respondents argue that the petition is subject to a one-year
period of limitation that expired before Simpson filed it.
Thus, they ask the court to dismiss the petition as time
barred.

II. DISCUSSION

A. One-Year Period of Limitation

In the Antiterrorism and Effective Death Penalty Act of
1996 ("AEDPA"), Congress amended the federal habeas
statute by prescribing a one-year period of limitation for the
filing of habeas petitions by state prisoners. *Stokes v.
District Attorney of County of Philadelphia,* 247 F.3d 539,
541 (3d Cir.), *cert. denied,* 122 S.Ct. 364 (2001). Effective
April 24, 1996, the AEDPA provides:

(1) A 1-year period of limitation shall apply to an
application for a writ of habeas corpus by a person in
custody pursuant to the judgment of a State court. The
limitation period shall run from the latest of -

**\*2** (A) the date on which the judgment became final by the
conclusion of direct review or the expiration of the time for
seeking such review ...

28 U.S.C. § 2244(d)(1). In order to avoid any impermissible
retroactive application of the one-year period of limitation,
state prisoners whose convictions became final prior to the
enactment of the AEDPA were allowed to file their § 2254
petitions no later than April 23, 1997. *See Burns v. Morton,*
134 F.3d 109, 111 (3d Cir.1998)(prohibiting dismissal of
petitions filed on or before April 23, 1997, as untimely
under § 2244(d)(1)(A)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

Simpson's conviction became final prior to the enactment of the AEDPA. He was sentenced on September 21, 1990. The Delaware Supreme Court affirmed the judgment of conviction on December 19, 1991. Simpson was then allowed ninety days in which to file a petition for a writ of certiorari with the United States Supreme Court. *See* Supreme Court Rule 13.1. Although Simpson did not file a petition with the United States Supreme Court, the ninety-day period in which he could have filed such a petition is encompassed within the meaning of "the conclusion of direct review or the expiration of the time for seeking such review," as set forth in § 2244(d)(1)(A). *See Kapral v. United States,* 166 F.3d 565, 576 (3d Cir.1999)(holding that on direct review, the limitation period of § 2244(d)(1)(A) begins to run at the expiration of the time for seeking review in the United States Supreme Court). Therefore, Simpson's conviction became final on March 19, 1992, ninety days after the Delaware Supreme Court affirmed his conviction, and well before the enactment of the AEDPA on April 24, 1996. Thus, he could have filed a timely habeas petition with this court not later than April 23, 1997. *See Burns,* 134 F.3d at 111.

The court's docket reflects that Simpson's habeas petition was filed on August 10, 2000. (D.I.I.) A pro se prisoner's habeas petition, however, is considered filed on the date he delivers it to prison officials for mailing to the district court, not on the date the court dockets it. *Id.* at 113. Attached to Simpson's petition is a certificate of service certifying that he placed it in the prison mail on August 3, 2000. Thus, the court deems Simpson's petition filed on August 3, 2000.

Obviously Simpson's habeas petition was filed well beyond the April 23, 1997 deadline. That, however, does not end the inquiry because § 2244(d)'s period of limitation may be either statutorily or equitably tolled. *See Jones v. Morton,* 195 F.3d 153, 158 (3d Cir.1999).

### B. Statutory Tolling

The AEDPA provides for statutory tolling of the one-year period of limitation as follows:
The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted

toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2).

**\*3** As described above, Simpson filed in the Superior Court his first Rule 61 motion for postconviction relief on December 15, 1994, prior to the enactment of the AEDPA. His Rule 61 motion was pending until September 20, 1996, when the Delaware Supreme Court affirmed the denial of postconviction relief. Respondents acknowledge, and correctly so, that the one-year period was tolled while Simpson's first Rule 61 motion was pending until September 20, 1996.

More than one year later, on October 3, 1997, Simpson filed his second Rule 61 motion in the Superior Court. By that time, however, the one-year period had expired. Simpson's second Rule 61 motion, filed after the one-year period expired, has no effect on the timeliness inquiry in the current matter.

In short, the one-year period of limitation was tolled while Simpson's first Rule 61 motion was pending. Nonetheless, the one-year period expired before Simpson filed his federal habeas petition.

### C. Equitable Tolling

In addition to statutory tolling, the one-year period of limitation may be subject to equitable tolling. *Fahy v. Horn,* 240 F.3d 239, 244 (3d Cir.), *cert. denied,* 122 S.Ct. 323 (2001); *Jones,* 195 F.3d at 159; *Miller v. New Jersey State Dep't of Corr.,* 145 F.3d 616, 618 (3d Cir.1998). The doctrine of equitable tolling applies:
only when the principles of equity would make the rigid application of a limitation period unfair. Generally, this will occur when the petitioner has in some extraordinary way been prevented from asserting his or her rights. The petitioner must show that he or she exercised reasonable diligence in investigating and bringing [the] claims. Mere excusable neglect is not sufficient.

*Miller,* 145 F.3d at 618-19 (citations omitted). In other words, equitable tolling "may be appropriate if (1) the defendant has actively misled the plaintiff, (2) the plaintiff has 'in some extraordinary way' been prevented from

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                                          Page 3
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Jones,* 195 F.3d at 159 (quoting *United States v.. Midgley,* 142 F.3d 174, 179 (3d Cir.1998)).

Here, Simpson has failed to articulate any extraordinary circumstances that prevented him from filing his habeas petition with this court in a timely manner. He has not explained why he waited until October 3, 1997, to file his second Rule 61 motion. Nor has he explained why he waited until August 3, 2000, to file the current petition. His only explanation is that some unidentified individual at the prison assured him that he would have one year following the conclusion of his second Rule 61 proceedings in which to file a federal habeas petition. (D.I.18.)

Unfortunately for Simpson, his unfamiliarity with federal habeas filing requirements does not excuse his failure to comply with the one-year period of limitation. An incarcerated pro se petitioner's lack of legal knowledge does not constitute an extraordinary circumstance warranting equitable tolling of the one-year period of limitation. *See Delaney v. Matesanz,* 264 F.3d 7, 15 (1st Cir.2001); *Marsh v. Soares,* 223 F.3d 1217, 1220 (10th Cir.2000), *cert. denied,* 531 U.S. 1194 (2001); *United States v. Cicero,* 214 F.3d 199, 203 (D.C.Cir.2000); *Felder v. Johnson,* 204 F.3d 168, 171 (5th Cir.), *cert. denied,* 531 U.S. 1035 (2000). Likewise, "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes" are not extraordinary circumstances giving rise to equitable tolling. *Fahy,* 240 F.3d at 244. The purpose of the one-year period of limitation is to "considerably speed up the habeas process while retaining judicial discretion to equitably toll in extraordinary circumstances." *Miller,* 145 F.3d at 618. Applying the doctrine of equitable tolling simply because a pro se petitioner is unfamiliar with the intricacies of federal habeas procedures would seriously undermine this purpose.

**\*4** Moreover, even if someone at the prison erroneously assured Simpson that he could file a federal habeas petition within one year of the conclusion of his second Rule 61 proceedings, the court cannot conclude that his habeas petition was timely filed. Simpson's second Rule 61 motion was "pending" under § 2244(d)(2) until July 30, 1999, when the Delaware Supreme Court affirmed the Superior Court's

order denying it. *See Swartz v. Meyers,* 204 F.3d 417, 420 (3d Cir.2000). Simpson filed his habeas petition more than one year later on August 3, 2000.

In short, the court can discern no circumstances which would permit applying the doctrine of equitable tolling. Simpson's habeas petition will be dismissed as untimely.

### III. CERTIFICATE OF APPEALABILITY

Finally, the court must determine whether a certificate of appealability should issue. *See* Third Circuit Local Appellate Rule 22.2. The court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

When the court denies a habeas petition on procedural grounds without reaching the underlying constitutional claim, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack v. McDaniel,* 529 U.S. 473, 484 (2000). "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.*

For the reasons discussed above, Simpson's habeas petition is barred by the one-year period of limitation. The court cannot conclude that the period should be statutorily or equitably tolled. The court is convinced that reasonable jurists would not debate otherwise. Simpson has, therefore, failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

### IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED THAT:

1. Charles W. Simpson's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DISMISSED, and the relief requested therein is DENIED.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.2d                                                   Page 4
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

2. The court declines to issue a certificate of appealability
for failure to satisfy the standard set forth in 28 U.S.C. §
2253(c)(2).

IT IS SO ORDERED.

D.Del.,2002.
Simpson v. Snyder
Not Reported in F.Supp.2d, 2002 WL 1000094 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00CV00737 (Docket) (Aug. 10, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

Page 1

Briefs and Other Related Documents
Zuppo v. CarrollD.Del.,2006.Only the Westlaw
citation is currently available.
United States District Court,D. Delaware.
Anthony ZUPPO, Petitioner,
v.
Thomas CARROLL, Warden, and Carl C. Danberg,
Attorney General of the State of Delaware,
Respondents.
**No. CIV. 05-504-SLR.**

Oct. 23, 2006.

**Background:** Following affirmance on appeal of
defendant state convictions for first degree unlawful
imprisonment, second degree rape, third degree
assault, five counts of non-compliance with bond,
harassment, offensive touching, three counts of an
aggravated act of intimidation, and second degree
assault, 807 A.2d 545, defendant filed petition for
writ of habeas corpus.

**Holdings:** The District Court, Sue L. Robinson,
Chief Judge, held that:

(1) state appellate court's determination that
defendant's interest in proceeding pro se at trial failed
to outweigh state's interest in ensuring integrity and
efficiency of trial did not warrant habeas relief, and

(2) defense counsel's alleged failure to file multiple
motions was not ineffective assistance of counsel.

Petition denied.

**[1] Habeas Corpus 197 €━━363**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by
State Prisoners
            197I(D)4 Sufficiency of Presentation of
Issue or Utilization of State Remedy
                197k362    Particular    Remedies    or
Proceedings
                    197k363 k. Review by Highest State
Court. Most Cited Cases

**Habeas Corpus 197 €━━380.1**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by
State Prisoners
            197I(D)4 Sufficiency of Presentation of
Issue or Utilization of State Remedy
                197k380 Sufficiency of Presentation;
Fair Presentation
                    197k380.1 k. In General. Most Cited
Cases
A habeas petitioner satisfies the exhaustion
requirement by invoking one complete round of the
State's established appellate review process, which
involves fairly presenting the claim to the state's
highest court, either on direct appeal or in a post-
conviction proceeding. 28 U.S.C.A. § 2254(b).

**[2] Habeas Corpus 197 €━━484**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for
Detention in General
            197k482 Counsel
                197k484 k. Inquiry, Advice, Warnings,
and Assistance; Waiver. Most Cited Cases
State appellate court's determination that petitioner's
interest in proceeding pro se at trial failed to
outweigh state's interest in ensuring integrity and
efficiency of trial was not contrary to, or an
unreasonable application of, clearly established
federal law, as would warrant federal habeas relief;
the trial judge noted that petitioner's request was
untimely, made on the second day of trial, and
properly determined that petitioner's interest in
proceeding pro se failed to outweigh the State's
interest in ensuring the integrity and efficiency of the
trial. U.S.C.A. Const.Amend. 6; West's Del.C.Ann.
Const. Art. 1, § 7.; 28 U.S.C.A. § 2254(d)(1).

**[3] Criminal Law 110 €━━641.13(6)**

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in
General
            110k641 Counsel for Accused
                110k641.13 Adequacy of Representation

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

110k641.13(2) Particular Cases and Problems

110k641.13(6) k. Evidence; Procurement, Presentation and Objections. Most Cited Cases

## Searches and Seizures 349 ⬤➞33

349 Searches and Seizures
   349I In General
      349k31 Persons Subject to Limitations; Governmental Involvement
         349k33 k. Private Persons. Most Cited Cases

Trial counsel's alleged failure to file motion to suppress evidence given to police by defendant's wife was not deficient, given that the Fourth Amendment does not govern searches and seizures conducted by a private party. U.S.C.A. Const.Amend. 4.

Trial counsel's alleged failure to file motion to suppress evidence given to police by defendant's wife was not deficient, given that the Fourth Amendment does not govern searches and seizures conducted by a private party. U.S.C.A. Const.Amend. 4.

## [4] Habeas Corpus 197 ⬤➞478

197 Habeas Corpus
   197II Grounds for Relief; Illegality of Restraint
      197II(B) Particular Defects and Authority for Detention in General
         197k478 k. Joinder or Severance of Counts or Defendants. Most Cited Cases

Whether charges were properly joined under Delaware law is a matter of state law, and it is not the province of a federal habeas court to reexamine state court determinations on state law issues.

## [5] Criminal Law 110 ⬤➞641.13(6)

110 Criminal Law
   110XX Trial
      110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
               110k641.13(2) Particular Cases and Problems
               110k641.13(6) k. Evidence; Procurement, Presentation and Objections. Most Cited Cases

Trial counsel's alleged failure to call doctor of defendant's wife as a witness to testify about the side

effect she experienced while she was taking antidepressants was not prejudicial to defendant, as element of ineffective assistance of counsel claim; even if the doctor had testified to writing the note, his testimony would not have rebutted wife's admission that she never experienced the side effects she described to the physician.

## [6] Criminal Law 110 ⬤➞641.13(5)

110 Criminal Law
   110XX Trial
      110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
               110k641.13(2) Particular Cases and Problems
               110k641.13(5) k. Pretrial Proceedings; Sanity Hearing. Most Cited Cases

Trial counsel's failure to insist on an arraignment after a grand jury returned a final indictment, which included new offenses committed by defendant while out on bail, on double jeopardy grounds was not ineffective assistance of counsel; the state entered a nolle prosequi on the charges from the first two indictments well before jeopardy attached.

## [7] Criminal Law 110 ⬤➞641.13(6)

110 Criminal Law
   110XX Trial
      110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
               110k641.13(2) Particular Cases and Problems
               110k641.13(6) k. Evidence; Procurement, Presentation and Objections. Most Cited Cases

Trial counsel's alleged failure to file a pre-trial motion to dismiss his case because defendant's wife recanted her original statement to the police prior to his trial did not prejudice defendant, as element of ineffective assistance of counsel claim; wife's original statement implicating defendant was admissible regardless of her subsequent recantation, and the jury knew about wife's recantation and heard the conflicting stories told by wife and defendant and, yet, the jury decided to convict defendant on all but two of the charges. 11 West's Del.C. § 3507.

## [8] Criminal Law 110 ⬤➞641.13(6)

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
(Cite as: --- F.Supp.2d ----)

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
            110k641 Counsel for Accused
                110k641.13 Adequacy of Representation
                    110k641.13(2) Particular Cases and Problems
                        110k641.13(6)    k.    Evidence; Procurement, Presentation and Objections. Most Cited Cases

Trial counsel's alleged failure to investigate or subpoena the pastor that married defendant and his wife as a witness was not prejudicial to defendant, as element of ineffective assistance of counsel claim; the pastor's potential testimony regarding the absence of a black eye during their wedding would have constituted cumulative evidence because ample evidence relating to the nature of defendant's relationship with his wife was presented to the jury.

[9] Habeas Corpus 197 ⬅➝486(4)

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
        197II(B) Particular Defects and Authority for Detention in General
            197k482 Counsel
                197k486 Adequacy and Effectiveness of Counsel
                    197k486(4)    k.    Evidence; Procurement, Presentation, and Objection. Most Cited Cases

To succeed on a claim alleging a failure of counsel to investigate potential witnesses, a habeas petitioner must demonstrate how the witnesses' testimonies would have been favorable and material. 28 U.S.C.A. § 2254.

[10] Criminal Law 110 ⬅➝641.13(2.1)

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
            110k641 Counsel for Accused
                110k641.13 Adequacy of Representation
                    110k641.13(2) Particular Cases and Problems
                        110k641.13(2.1)  k.  In General. Most Cited Cases

Trial counsel's failure to request a lesser included offense instruction for reckless endangering on second degree assault charge was not prejudicial, as element of ineffective assistance of counsel claim; victim actually suffered a serious injury to her hand, thereby eliminating any rational basis for supporting an instruction on reckless endangering. 11 West's Del.C. § § 603(a)(1), 612(a)(1).

[11] Criminal Law 110 ⬅➝641.13(2.1)

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
            110k641 Counsel for Accused
                110k641.13 Adequacy of Representation
                    110k641.13(2) Particular Cases and Problems
                        110k641.13(2.1)  k.  In General. Most Cited Cases

Trial counsel's alleged failure to raise a self-protection defense was not prejudicial to defendant, as element of claim of ineffective assistance of counsel; defendant never stated that he actually feared his wife or that he felt he needed to protect himself against her, and, moreover, even though defendant testified that his wife told him she wanted to stab him during the struggle, the defendant admitted to initiating the physical contact with his wife and even escalating that struggle. 11 West's Del.C. § 464(a).

[12] Criminal Law 110 ⬅➝641.13(6)

110 Criminal Law
    110XX Trial
        110XX(B) Course and Conduct of Trial in General
            110k641 Counsel for Accused
                110k641.13 Adequacy of Representation
                    110k641.13(2) Particular Cases and Problems
                        110k641.13(6)    k.    Evidence; Procurement, Presentation and Objections. Most Cited Cases

Trial counsel's alleged failure to cross-examine defendant's wife about velcro restraints used on her during rape was not prejudicial to defendant, as element of ineffective assistance of counsel claim; counsel did elicit testimony that wife could have ripped the velcro restraints off with her teeth and wife testified that defendant tied her up with a rope and that she did not consent to any of the acts. 11 West's Del.C. § § 781, 782.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

**[13] Criminal Law 110 ☜641.5(.5)**

110 Criminal Law
    110XX Trial
       110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.5 Number of Counsel; Codefendants and Conflict of Interest
               110k641.5(.5) k. In General. Most Cited Cases
Defense counsel was not biased against defendant as the result of an alleged struggle between counsel and defendant at prison, and thus defendant was not prejudiced by his representation; defendant never provided any evidence to rebut counsel's denial that such an attack occurred and defendant actively defended defendant at the trial and succeeding having some serious felony charges dismissed or reduced.

**[14] Criminal Law 110 ☜641.13(2.1)**

110 Criminal Law
    110XX Trial
       110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
              110k641.13(2) Particular Cases and Problems
               110k641.13(2.1) k. In General. Most Cited Cases
Defense counsel's alleged failure to read the contents of suicide note of defendant's wife to the jury was not prejudicial, as element of ineffective assistance of counsel claim; even though counsel did not read the suicide note to the jury, counsel did question wife about her suicide attempt, and the jury knew about wife's recantation and the fact that wife had proclaimed defendant's innocence to various individuals in the past.

**[15] Criminal Law 110 ☜641.13(6)**

110 Criminal Law
    110XX Trial
       110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
              110k641.13(2) Particular Cases and Problems
               110k641.13(6) k. Evidence; Procurement, Presentation and Objections. Most

Cited Cases
Defense counsel's alleged failure to question defendant's wife about the length of rope allegedly used in sexual assault did not prejudice defendant, as element of ineffective assistance of counsel claim; such questions could have highlighted wife's testimony about having a rope around her neck and may have brought further attention to the details of the sexual assault.

**[16] Criminal Law 110 ☜641.13(6)**

110 Criminal Law
    110XX Trial
       110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
              110k641.13(2) Particular Cases and Problems
               110k641.13(6) k. Evidence; Procurement, Presentation and Objections. Most Cited Cases
Defense counsel's alleged failure to argue that there was insufficient evidence to sustain defendant's conviction was not ineffective assistance of counsel; defendant failed to produce any clear and convincing evidence to rebut the presumption that the jury's factual determination was correct.

**[17] Habeas Corpus 197 ☜493(2)**

197 Habeas Corpus
    197II Grounds for Relief; Illegality of Restraint
       197II(B) Particular Defects and Authority for Detention in General
         197k489 Evidence
           197k493 Weight and Sufficiency
             197k493(2) k. Federal Review of State Proceedings, in General. Most Cited Cases
On habeas review, the court must accept a jury's factual determinations as to credibility issues and resolutions of conflicts in the evidence.

**[18] Criminal Law 110 ☜641.13(2.1)**

110 Criminal Law
    110XX Trial
       110XX(B) Course and Conduct of Trial in General
         110k641 Counsel for Accused
            110k641.13 Adequacy of Representation
              110k641.13(2) Particular Cases and Problems

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
(Cite as: --- F.Supp.2d ----)

Page 5

110k641.13(2.1)  k.  In General.
Most Cited Cases
Defense counsel's alleged failure to request a jury instruction concerning prosecution's injection of the issue of race into the trial was not prejudicial to defendant, as element of ineffective assistance of counsel claim; trial excerpt clearly demonstrated that defendant rebutted any inference that his problem with the photograph was due to the race of the man pictured.

**[19] Habeas Corpus 197 ☞365**

197 Habeas Corpus
    197I In General
        197I(D) Federal Court Review of Petitions by State Prisoners
            197I(D)4 Sufficiency of Presentation of Issue or Utilization of State Remedy
                197k362 Particular Remedies or Proceedings
                    197k365 k.  Coram Nobis, Post-Conviction Motion, or Similar Collateral Proceedings. Most Cited Cases
Habeas petitioner's claim that trial counsel failed to file speedy trial motion was procedurally barred, where petitioner presented claim in postconviction petition but not in postconviction appeal. 28 U.S.C.A. § 2254; Del.Superior Court Criminal Rule 61(i)(2).

Anthony Zuppo, pro se.
Elizabeth R. McFarlan, Deputy Attorney General, Department of Justice, Wilmington, DE, Counsel for respondents.

**MEMORANDUM OPINION**
SUE L. ROBINSON, Chief Judge.

**I. INTRODUCTION**

**\*1** Petitioner Anthony Zuppo ("petitioner") is an inmate in custody at the Delaware Correctional Institution in Smyrna, Delaware. Before the court is petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (D.I.2) The State has filed its answer that habeas relief is not warranted. For the reasons that follow, petitioner's application will be denied.

**II. FACTUAL AND PROCEDURAL BACKGROUND**

The facts of petitioner's case are as follows:

In September 2000, Wendy Reynolds and [petitioner] began dating and they moved in together quickly thereafter. According to Reynolds' testimony at trial, [petitioner] became violent and controlling. [Petitioner] would not allow her to leave the house without him, and he often referred to her derogatorily. On one particular occasion, [petitioner] pinned her to the couch and beat her. Reynolds considered leaving after the beating but, instead, forgave [petitioner]. Shortly thereafter, according to Reynolds, [petitioner] raped her. [Petitioner] maintains that she consented.
Reynolds attempted to move out the evening following the alleged rape but claimed [petitioner] choked her and threatened to shoot her. Reynolds reported these incidents to the police. The police arrested [petitioner] for Terroristic Threatening and Offensive Touching. As a condition of [petitioner's] release on bond, a Justice of the Peace Court ordered [petitioner] to have no contact with Reynolds.
Despite the no contact stipulation, Reynolds testified at trial that [petitioner] tried contacting her at work a matter of days after his release. Reynolds also testified that [petitioner] made a harassing phone call to her place of residence. [Petitioner] denied making the harassing phone call. A Wilmington Police Officer testified that he traced the call from Reynolds' residence to a gas station near [petitioner's] residence. The day after the phone call to Reynolds' residence, Reynolds and [petitioner] attempted reconciliation. Reynolds again moved in with [petitioner]. The police, however, then arrested [petitioner] for violation of bail conditions. For reasons known only to her, Reynolds posted [petitioner's] bail and accompanied him to Pennsylvania for one week. In Reynolds' own words, however, "the abuse started right away." [citation omitted] Inexplicably, Reynolds, sporting a clearly visible black eye, married [petitioner] while in Pennsylvania.
The marriage failed to resurrect the relationship. One evening, shortly after arriving back in Delaware, [petitioner] and Reynolds engaged in an argument that culminated in [petitioner] attacking Reynolds. Reynolds claimed that she picked up a kitchen knife in self-defense. [Petitioner] remained undeterred. He pressed on, knocked her backwards and grabbed her wrist. [Petitioner] then tried to rip the knife from Reynolds and in the process he cut her hand to the bone. Finally, Reynolds called the police and told them about everything [petitioner] had done to her. She did so "[b]ecause [she] thought if [she] stayed much longer that he really would kill me." [citation omitted] At the time of trial, Reynolds' hand had been operated on twice, and she appeared to face a serious, long-term disability.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
(Cite as: --- F.Supp.2d ----)

Page 6

**\*2** *Zuppo v. State,* 807 A.2d 545, 546-47 (Del.2002).

In September 2001, a grand jury returned a final indictment charging petitioner with the following twenty two offenses: (1) second degree kidnaping occurring on or about January 5, 2001; (2) terroristic threatening occurring on or about January 5, 2001; (3) offensive touching occurring on or about January 5, 2001; (4) second degree kidnaping occurring on or about January 3, 2001; (5) attempted first degree rape occurring on or about January 3, 2001; (6) first degree rape occurring on or about January 3, 2001; (7) third degree assault on or about December 18, 2000; (8) non-compliance with bond conditions or no-contact provisions on or about January 7, 2001; (9) non-compliance with bond conditions on or about January 9, 2001; (10) harassment on or about January 9, 2001; (11) non-compliance with bond conditions or no-contact provisions on or about March 16, 2001; (12) aggravated act of intimidation on or about March 16, 2001; (13) non-compliance with bond conditions or no-contact provisions on or about March 16 2001; (14) non-compliance with bond conditions on or about April 2, 2001; (15) aggravated act of intimidation on or about April 10, 2001; (16) aggravated act of intimidation on April 10, 2001; (17) non-compliance with bond conditions or no-contact provisions on or about April 10, 2001; (18) non-compliance with bond conditions on or about July 1, 2001; (19) second degree assault on or about July 1, 2001; (20) possession of a deadly weapon during the commission of a felony on or about July 1, 2001; (21) possession of a deadly weapon and/or ammunition by a person prohibited on or about July 1, 2001; (22) non-compliance with bond conditions or no-contact provisions between August 7, 2001 and August 11, 2001. (D.I. 19, Indictment by the Grand Jury)

The Superior Court severed Count 21 (possession of a deadly weapon and/or ammunition by a person prohibited). On the morning of trial, the State entered a nolle prosequi for three charges of non-compliance with bond. *State v. Zuppo,* ID No. 0101004412, Cmm'r. Rep. and Rec., at 16 (Del.Super.Ct. Aug. 9, 2004). In February 2002, a Delaware Superior Court jury convicted petitioner of first degree unlawful imprisonment (lesser included offense of second degree kidnaping-Count 1), second degree rape, third degree assault, five counts of non-compliance with bond, harassment, offensive touching, three counts of an aggravated act of intimidation, and second degree assault. The jury found petitioner not guilty of terroristic threatening and possession of a deadly weapon during the commission of a felony, and the

Superior Court granted defense counsel's motion for judgment of acquittal for second degree kidnaping (Count 4). (D.I. 19, Del.Super. Ct.Crim. Dkt. Entry # 26) The Superior Court sentenced petitioner to an aggregate of twenty-six years, eleven months in prison, suspended after twenty years, five months for decreasing levels of supervision. The Delaware Supreme Court affirmed petitioner's convictions and sentences. *Id.*

**\*3** Petitioner filed a motion for post-conviction relief pursuant to Delaware Superior Court Rule 61 ("Rule 61 motion"). The Rule 61 motion was referred to a Superior Court Commissioner for findings and a recommendation. *See* Del.Code Ann. tit. 10, § 512(b). In a thirty-three page Report and Recommendation, the Commissioner concluded that petitioner's sixteen ineffective assistance of counsel claims were meritless and his claim alleging insufficient evidence was procedurally defaulted. *State v. Zuppo,* ID No. 0101004412, Cmm'r. Rep. and Rec. (Del.Super.Ct. Aug. 9, 2004). The Superior Court adopted the Commissioner's Report and Recommendation and denied petitioner's Rule 61 motion. *State v. Zuppo,* ID No. 0101004412, Order (Del.Super.Ct. Jan. 31, 2004). The Delaware Supreme Court affirmed the Superior Court's decision. *Zuppo v. State,* 2005 WL 1653622 (Del.2005).

## III. GOVERNING LEGAL PRINCIPLES

[1] Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Absent exceptional circumstances, a federal court cannot review a habeas petition unless the petitioner has exhausted all means of available relief for his claims under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel,* 526 U.S. 838, 842-44, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Picard v. Connor,* 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). A petitioner satisfies the exhaustion requirement by invoking "one complete round of the State's established appellate review process," which involves fairly presenting the claim to the state's highest court, either on direct appeal or in a post-conviction proceeding. *O'Sullivan v. Boerckel,* 526 U.S. 838, 844-45, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *See Lambert v. Blackwell,* 134 F.3d 506, 513 (3d Cir.1997).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

If the state's highest court adjudicated a federal habeas claim on the merits, then a federal court must review the claim under the deferential standard contained in 28 U.S.C. § 2254(d). A state court decision constitutes an adjudication on the merits for the purposes of § 2254(d) if the "decision finally resolv[es] the parties' claims, with res judicata effect, [and] is based on the substance of the claim advanced, rather than on a procedural, or other ground." *Rompilla v. Horn,* 355 F.3d 233, 247 (3d Cir.2004)(internal citations omitted), *rev'd on other grounds by Rompilla v. Beard,* 545 U.S. 374, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005). Pursuant to § 2254(d), federal habeas relief may only be granted when the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or the state court's decision was an unreasonable determination of the facts based on the evidence adduced in the trial. 28 U.S.C. § 2254(d)(1) & (2); *Williams v. Taylor,* 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Appel v. Horn,* 250 F.3d 203, 210 (3d Cir.2001).

**\*4** AEDPA also requires a federal court to presume that a state court's implicit and explicit determinations of factual issues are correct. 28 U.S.C. § 2254(e)(1); *Campbell v. Vaughn,* 209 F.3d 280, 286 (3d Cir.2000). A petitioner can only rebut this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell,* 537 U.S. 322, 341, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003)(stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues, whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions).

## IV. DISCUSSION

Petitioner asserts two grounds for relief in his § 2254 application: (1) the trial court denied petitioner's request to represent himself in violation of the Sixth Amendment; and (2) defense counsel provided ineffective assistance on seventeen occasions. (D.I. 2; D.I. 5)

### A. Self-representation claim

Petitioner presented his claim regarding the Superior Court's alleged violation of his right to self-representation to the Delaware Supreme Court on direct appeal. The Delaware Supreme Court denied the claim as meritless. Therefore, the court must review the claim under § 2254(d)(1) to determine if the Delaware Supreme Court's denial of this claim was contrary to, or an unreasonable application of, Supreme Court precedent.

The clearly established Supreme Court precedent applicable to claims involving the Sixth Amendment right to self-representation is *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975) and its progeny. In *Faretta,* the Supreme Court held that a defendant may competently and intelligently choose to represent himself even if he does not "have the skill and experience of a lawyer," provided that the defendant is "made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Id.* at 835, 95 S.Ct. 2525. The *Faretta* Court explained that the right to self-representation is not absolute, and also explained that the right to self-representation "is not a license to abuse the dignity of the courtroom." *Id.* at 834 n. 46, 95 S.Ct. 2525. In *Martinez v. Court of Appeal of California, Fourth Appellate District,* 528 U.S. 152, 162, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000), the Supreme Court held that, even when a defendant makes a clear and unequivocal request to proceed pro se at the trial level, the "government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer." For example, "most courts require [the defendant to make a request to proceed pro se] in a timely manner." *Id.* The *Martinez* Court also explained that, although the "right to defend oneself at trial is 'fundamental' in nature, it is clear that representation by counsel is the standard and not the exception." *Id.* at 161, 120 S.Ct. 684.

Here, petitioner asked the trial court to reassign counsel on the second day of his trial. When the trial court denied that request, petitioner asked to proceed pro se. The trial court informed petitioner about the risks of proceeding pro se, and then conducted an inquiry into petitioner's reasons for seeking self-representation. During that inquiry, the prosecutor conveyed his concern that petitioner's request was untimely-one witness had already been fully questioned and another witness was near the end of cross-examination-and that permitting petitioner to represent himself would prejudice the State. The trial judge recessed and, upon reconvening, denied petitioner's request to proceed pro se. The trial judge noted that petitioner did not know the Rules of Evidence and that petitioner had only asked to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

represent himself after the judge denied his request for new counsel. The prosecutor asked the judge to specifically address the untimeliness of petitioner's request and the detrimental impact that granting the request would have on the proceedings. The trial judge then stated that he was also denying petitioner's request for self-representation because it was untimely. (D.I. 19, App. to Appellant's Op. Br. in *Zuppo v. State,* No. 208, 2002, at A-59 through A-66)

**\*5** On direct appeal, petitioner argued that the Delaware Superior Court violated his right to self-representation because the "record does not reflect a clear balance by the trial court of the prejudice to the defendant versus the potential disruption of the trial." *Zuppo,* 807 A.2d at 548. The Delaware Supreme Court cited to *Faretta* and *Martinez* and rejected petitioner's argument, specifically noting that the "record suggests that the trial judge implicitly weighed the competing interests with care." *Zuppo,* 807 A.2d at 548-49.

[2] As an initial matter, the court finds that the Delaware Supreme Court's decision was not contrary to clearly established federal law because the state court correctly identified and applied *Faretta* and *Martinez* as the applicable Supreme Court precedent. *See Williams,* 529 U.S. at 406, 120 S.Ct. 1495 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court also concludes that the Delaware Supreme Court's decision did not involve an unreasonable application of *Faretta* and *Martinez.* First, although *Faretta* and *Martinez* require trial courts to determine that a defendant's waiver of representation is knowing and intelligent, these Supreme Court decisions do not require trial courts to explicitly detail the balancing of the government's interest in efficiency and integrity against the accused's right to self-representation when reviewing a request to proceed pro se made after the commencement of trial.[FN1] Second, the record supports the Delaware Supreme Court's conclusion that the trial judge implicitly balanced petitioner's right to represent himself against the prejudice that would result to the State if petitioner were permitted to represent himself. At trial, petitioner argued that he wanted to proceed pro se because his attorney had not subpoenaed all the witnesses petitioner thought he should, and also because he and defense counsel had experienced numerous conflicts. The prosecutor asked the court to deny the request, specifically stating "[t]he things I

would suggest the Court should look to in exercising its discretion, is one, whether or not his right to proceed pro se overcomes the obvious problems we will have in switching gears to do that and the disruption of the proceedings." (D.I. 19, Appendix to Appellant's Op. Br. in *Zuppo v. State,* No.208,2002 at A63) After hearing from both sides, the Superior Court judge stated "I frankly do not think that you are making a knowing and intelligent decision to represent yourself, and I'm inclined to deny your request." (D.I. 19, Appendix to Appellant's Op. Br. in *Zuppo v. State,* No.208,2002 at A65a) The judge then asked if anyone wanted to put anything on the record, and the State explicitly mentioned that the court had greater discretion over petitioner's request to proceed pro se given the fact that the request was made after the trial had commenced. *Id.* In response, the judge said that the court does have greater discretion to deny a request to proceed pro se when it occurs during the trial because it does have a tendency to disrupt proceedings. The judge specifically concluded that "in this case, I don't think you're prepared to examine witnesses, and I'm not inclined, under these circumstances on the second day of the trial, measured from when the evidence was introduced, I'm not inclined to grant your request.... I think it is untimely as well." *Id.* at A66.

**\*6** Based on the foregoing, the court concludes that the Delaware Supreme Court reasonably found that the record adequately reflected "a clear and logical basis for the trial judge's reasoning." *Zuppo,* 807 A.2d at 549. The trial judge noted that petitioner's request was untimely, and "properly determined that [petitioner's] interest in proceeding pro se failed to outweigh the State's interest in ensuring the integrity and efficiency of the trial." *Zuppo,* 807 A.2d at 549. Thus, petitioner's claim regarding the violation of his right to self-representation does not warrant federal habeas relief.

### B. Ineffective assistance of counsel claims that do not warrant relief under § 2254(d)(1)

Petitioner's habeas application asserts that counsel provided ineffective assistance. However, rather than explicitly explain his allegations, petitioner merely attaches copies of his Rule 61 motion and his post-conviction appellate brief to his application. Reading both of those documents together, the court concludes that petitioner's application presents a total of seventeen ineffective assistance of counsel claims. Specifically, petitioner contends that counsel failed to: (1) file a motion to suppress; (2) file a speedy trial

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

motion; (3) file a motion to sever the charges; (4) file a motion to compel discovery; (5) argue that the failure to arraign petitioner following the final indictment violated the Double Jeopardy Clause; (6) file a motion to dismiss based on Reynolds' recantation; (7) properly investigate the availability of witnesses or argue the admissibility of relevant evidence; (8) request a jury instruction on the lesser included offense of second degree reckless endangering on the second degree assault charge; (9) raise a self-protection defense; (10) argue that the State did not establish the elements of unlawful imprisonment; (11) effectively represent petitioner because of conflicts between petitioner and counsel; (12) properly examine or cross-examine various witnesses; (13) question Reynolds about her suicide note or introduce certain statements made by Reynolds to demonstrate discrepancies in her testimony; (14) object on fourteen separate occasions at trial; (15) argue that there was insufficient evidence to sustain his conviction; (16) ask for a curative instruction after the prosecutor injected racial issues into the trial; and (17) move for a mistrial after Reynolds spoke to the jury.

Petitioner asserted a total of seventeen claims to the Superior Court in his Rule 61 motion, but only sixteen of those claims alleged ineffective assistance of counsel; the remaining claim alleged that there was insufficient evidence to sustain his conviction. The Superior Court denied the sixteen ineffective assistance of counsel claims as meritless and the remaining substantive claim as procedurally defaulted. On post-conviction appeal, petitioner presented a total of sixteen claims to the Delaware Supreme Court; he deleted the claim alleging that counsel failed to file a speedy trial motion, but he re-casted the substantive insufficient evidence claim to allege that counsel's failure to argue insufficient evidence constituted ineffective assistance. The Delaware Supreme Court determined that petitioner's sixteen ineffective assistance of counsel claims were meritless and affirmed the Superior Court's decision. [FN2] Therefore, the court must review the sixteen exhausted and adjudicated claims under § 2254(d)(1) to determine if the Delaware Supreme Court's denials of these claims were contrary to, or an unreasonable application of, Supreme Court precedent. [FN3]

**\*7** The clearly established Supreme Court precedent governing ineffective assistance of counsel claims is the two-pronged standard enunciated by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and its progeny. *See Wiggins v. Smith,* 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d

471 (2003). Under the first *Strickland* prong, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland,* 466 U.S. at 688, 104 S.Ct. 2052. Under the second *Strickland* prong, a petitioner must demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96, 104 S.Ct. 2052. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688, 104 S.Ct. 2052. In order to sustain an ineffective assistance of counsel claim, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock,* 941 F.2d 253, 259-260 (3d Cir.1991); *Dooley v. Petsock,* 816 F.2d 885, 891-92 (3d Cir.1987). Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

Here, the Superior Court and the Delaware Supreme Court correctly identified *Strickland* as the proper standard and analyzed all sixteen claims within its framework. Therefore, the Delaware Supreme Court's denial of petitioner's ineffective assistance of counsel claims was not contrary to *Strickland. See Williams,* 529 U.S. at 406, 120 S.Ct. 1495 ("[A] run-of-the-mill state-court decision applying the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case [does] not fit comfortably within § 2254(d)(1)'s 'contrary to' clause").

The court must also determine whether the state courts' analysis of the claims constituted an unreasonable application of *Strickland.* The court will review each allegation in seriatim.

### 1. Motion to suppress

[3] When the police arrested petitioner, Reynolds gave the police a clothesline, blindfold, and Velcro restraints she took from under the bed in the master bedroom of Zuppo's residence. Petitioner contends that counsel performed deficiently because he did not file a motion to suppress that property.

In petitioner's post-conviction proceeding, the Superior Court Commissioner recommended denying the instant claim because a "search and seizure conducted by a private party does not implicate the

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

Fourth Amendment, and evidence discovered as a result of such a search is not subject to the exclusionary rule." *State v. Zuppo,* ID No. 0101004412, Commissioner's Rep. and Rec., at 14 (Del.Super.Ct. Aug. 9, 2004). The Superior Court adopted that recommendation, and the Delaware Supreme Court affirmed the Superior Court's denial of the claim.

**\*8** The United States Supreme Court has held that the Fourth Amendment protection only proscribes "governmental action [ ... and] is wholly inapplicable to a search or seizure, even an unreasonable one, effected by a private individual not acting as an agent of the Government or with the participation or knowledge of any governmental official." *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). Thus, because there was no basis for filing a motion to suppress the property supplied by Reynolds, counsel did not provide ineffective assistance. *See United States v. Sanders,* 165 F.3d 248, 253 (3d Cir.1999) (an attorney does not provide ineffective assistance by failing to present meritless arguments).

### 2. Severance motion

Petitioner contends that counsel performed ineffectively by failing to sever the charges. The Superior Court Commissioner concluded that counsel did not provide ineffective assistance because: (1) counsel did, in fact, request and obtain a severance of the charge of possession of a deadly weapon by a person prohibited; (2) the jury acquitted petitioner of some charges and convicted him on others, thereby demonstrating that the jury evaluated the evidence as to each charge separately; (3) petitioner did not specify which charges should have been included in a motion to sever; and (4) the State entered a nolle prosequi as to the three charges of non-compliance with bond. (D.I. 19, *State v. Zuppo,* ID No. 0101004412, Com'rs. Rep. and Rec. at 16-17) The Delaware Superior Court judge adopted the Commissioner's Report and Recommendation because "all of the charges which were tried at trial were properly joined and that there was no prejudice to the defendant from the joinder of those which were joined at trial." *State v. Zuppo,* ID No. 010100441, Order, Vaughn, Judge, at 3 (Del.Super.Ct. Jan. 31, 2004). The Delaware Supreme Court affirmed the Superior Court's decision, specifically noting that all of petitioner's claims were meritless.

As an initial matter, petitioner's application fails to

specify which charges should have been severed. Additionally, the record reveals that counsel did file a motion to sever Count 21 of the final indictment charging petitioner with possession of a deadly weapon and/or ammunition by a person prohibited, which the Superior Court granted. (D.I. 19, Del.Super. Ct. Dkt. at Entry 26) Therefore, the record belies petitioner's vague claim that counsel failed to object to the joinder of charges.

[4] Moreover, whether the charges were properly joined under Delaware law is a matter of state law, and "it is not the province of a federal habeas court to reexamine state court determinations on state law issues." *Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991); *see* Del.Super. Ct.Crim. R. 8(a). By affirming the Superior Court's decision to deny the instant claim as meritless, the Delaware Supreme Court implicitly adopted the Superior Court's finding that all of the charges tried at trial were properly joined. An attorney does not provide ineffective assistance by failing to raise meritless arguments, therefore, petitioner cannot establish the requisite prejudice under *Strickland.*

### 3. Failure to compel discovery

**\*9** Petitioner contends that counsel did not provide him with taped statements obtained during the discovery phase. As in his state post-conviction proceeding, petitioner fails to explain which statements were not provided or how his inability to listen to the tapes prejudiced him at trial. Thus, this vague claim does not warrant relief.

Petitioner also contends that counsel failed to call Reynolds' doctor as a witness to testify about the side effects Reynolds experienced while she was taking anti-depressants during January and February 2001. The Delaware state courts denied the claim after determining that petitioner did not substantiate prejudice under *Strickland.*

[5] During petitioner's trial, both petitioner and Reynolds testified that the physician only wrote the note at Reynold's request. (D.I. 19, Appendix to Appellant's Op. Br. in *Zuppo v. State,* No. 208,2002, at A-46) Reynolds further explained that she did not even experience the side effects she described to her physician, and that she only asked her physician to write the note because she feared petitioner. (D.I. 19, "Exhibits for Rule 61 motion," at AA-13 to AA-14.)

Hence, even if Reynolds' physician had testified to

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
(Cite as: --- F.Supp.2d ----)

writing the note, his testimony would not have rebutted Reynolds' admission that she never experienced the side effects she described to the physician. Accordingly, the court concludes that the Delaware courts reasonably applied *Strickland* in denying the instant claim.

#### 4. Failure to insist on arraignment violated the Double Jeopardy Clause

The record reveals that petitioner's first indictment was returned in March 2001, and then a re-indictment was returned in May 2001 to include new offenses. After his May 2001 arraignment, petitioner was released on bail. While out on bail, petitioner committed new offenses. Consequently, the grand jury returned a final indictment in September 2001 which included those new offenses.

[6] Petitioner contends that counsel failed to insist on an arraignment after September 2001 and that counsel should have objected to the September 2001 "re-indictment" as violating the Double Jeopardy Clause. Petitioner's argument is unavailing, however, because the State entered a nolle prosequi on the charges from the first two indictments well before jeopardy attached. *See generally* (D.I.19, Super.Ct.Dkt.); *see also Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975). Accordingly, the state courts did not unreasonably apply *Strickland* in determining that petitioner was not prejudiced by counsel's failure to raise a meritless argument.

#### 5. Failure to file pre-trial motion to dismiss

[7] Petitioner contends that counsel should have filed a motion to dismiss his case because Reynolds recanted her original statement to the police prior to his trial. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 8) This argument does not merit relief because petitioner cannot satisfy the prejudice prong of the *Strickland* test. First, recantation testimony is regarded with great suspicion and, pursuant to Delaware law, Reynolds' original statement implicating petitioner was admissible regardless of her subsequent recantation. *See Dobbert v. Wainwright,* 468 U.S. 1231, 1233, 105 S.Ct. 34, 82 L.Ed.2d 925 (1984); *Landano v. Rafferty,* 856 F.2d 569, 572 (3d Cir.1988); Del.Code Ann. tit. 11, § 3507. Therefore, even if counsel had filed a motion to dismiss based on Reynolds' recantation, that motion was unlikely to succeed.

*10 More significantly, however, is the fact that the jury knew about Reynolds's recantation and heard the conflicting stories told by Reynolds and petitioner and, yet, the jury decided to convict petitioner on all but two of the charges.[FN4] *See Bowen v. Snyder,* 1999 WL 1011972, at *7 (D.Del. Oct.22, 1999)(citing *Jackson v. Virginia,* 443 U.S. 307, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)(On habeas review, the court must defer to the jury's resolution of conflicts in the evidence)). Accordingly, the court concludes that the Delaware courts did not unreasonably apply *Strickland* in determining that petitioner was not prejudiced by counsel's action.

#### 6. Failure to investigate, interview, and subpoena witnesses

Petitioner contends that counsel did not investigate the witnesses who were available to testify about his relationship with Reynolds, and he also contends that the witnesses would have testified that they never saw any marks on Reynolds or signs of abuse. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 8-9) Petitioner included two letters with his application: one letter is from the pastor who actually married petitioner and Reynolds, and the other letter is from petitioner's employer. The pastor's letter is dated May 21, 2003, and states that Reynolds did not have a black eye during the ceremony and that it did not appear that Reynolds was being forced into the marriage. (D.I. 19, Appendix to Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at A-21) The letter from petitioner's employer is dated August 27, 2003, stating that he interacted with petitioner and Reynolds socially on several occasions and he never saw petitioner mistreat Reynolds. (D.I. 19, Exhibits to Rule 61 motion, at AA-57)

Petitioner raised the instant claim in his post-conviction proceeding, and the Superior Court denied it as meritless. Specifically, the Superior Court concluded that the prosecution's case centered on the fact that Reynolds had been abused and manipulated by petitioner, therefore, "presenting additional variations in Reynolds' statements and/or behavior would have been entirely consistent with the State's case and thus unlikely to have changed the portrayal of [petitioner] as manipulative and controlling." *State v. Zuppo,* ID No. 0101004412, Cmm'rs. Rec. and Rep. at 20.

[8] As an initial matter, the record reveals that petitioner's employer did testify during petitioner's

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
(Cite as: --- F.Supp.2d ----)

trial. Therefore, petitioner's allegation concerning counsel's failure to investigate or subpoena his employer as a witness is factually baseless.

[9] The court also concludes that the petitioner's claim regarding counsel's failure to investigate or subpoena the pastor as a witness does not warrant federal habeas relief. A petitioner has the burden of proving specific facts to support an allegation of ineffective assistance. *Sistrunk v. Vaughn,* 96 F.3d 666, 671 (3d Cir.1996); *Wells v. Petsock,* 941 F.2d 253, 259-260 (3d Cir.1991). Additionally, to succeed on a claim alleging a failure of counsel to investigate potential witnesses, a petitioner must demonstrate how the witnesses' testimonies would have been favorable and material. *See United States v. Gray,* 878 F.2d 702, 711 (3d Cir.1989). In petitioner's case, petitioner and Reynolds were married by the pastor in the State of Pennsylvania on June 20, 2001. However, because the final indictment did not charge petitioner with any offense that occurred in the month of June, the pastor's potential testimony regarding the absence of a black eye on June 20, 2001 only pertained to the nature of petitioner's relationship with Reynolds. The pastor's testimony would have constituted cumulative evidence because ample evidence relating to the nature of petitioner's relationship with Reynolds was presented to the jury. Therefore, the court concludes that the Delaware state courts reasonably applied *Strickland* in denying the instant claim.[FN5]

### 7. Failure to have jury instructed on lesser included offenses

**\*11** [10] Petitioner appears to contend that he was entitled to have a lesser included offense instruction for second degree reckless endangering on the second degree assault charge because he was found to be not guilty of possession of a deadly weapon during the commission of a felony (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 9) The Superior Court denied this claim because the facts did not provide a rational basis for such an instruction.

After reviewing the record, the court concludes that the instant claim does not warrant federal habeas relief. In Delaware, a second degree assault occurs when "[t]he person recklessly ... causes serious physical injury to another person ..." Del.Code Ann. tit. 11, § 612(a)(1). Second degree reckless endangering occurs when "[t]he person recklessly engages in conduct which creates a substantial risk of physical injury to anther person...." Del.Code Ann.

tit. 11, § 603(a)(1). The difference between the two charges stems from whether or not the victim was actually injured and the severity of the injury. In petitioner's case, Reynolds actually suffered a serious injury to her hand, thereby eliminating any rational basis for supporting an instruction on reckless endangering. Moreover, defense counsel did request a lesser-included instruction for third degree assault, which the trial court denied. *See Zuppo,* ID no. 0101004412, Comm. Rpt. & Rec. at 21 (Del.Super.Ct. Aug. 9, 2004). Thus, the court finds that the Delaware courts reasonably determined that petitioner failed to satisfy either prong of *Strickland.*[FN6]

### 8. Failure to raise a self-protection defense

[11] Petitioner contends that counsel should have argued that petitioner acted in self-defense for the December 2000 assault charge because Reynolds testified that she followed petitioner into the living room and continued to hit him after petitioner tried to get away from her. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 10) Petitioner also contends that counsel should have argued that petitioner acted in self-defense for the July 2001 assault charge because Reynolds testified that she wanted to stab petitioner. The Superior Court denied these claims after determining that petitioner could not have succeeded with a self-defense claim and, therefore, counsel's decision to forego a claim of self-defense was not unreasonable or prejudicial.

Pursuant to Delaware law, the essential element of a self-protection defense is whether the defendant subjectively believed the use of force was necessary for protection. Del.Code Ann. tit. 11, § 464(a); *Tice v. State,* 624 A.2d 399 (Del.1993). During his testimony describing the events that led to the charges for December 2000 and July 2001, petitioner never stated that he actually feared Reynolds or that he felt he needed to protect himself against Reynolds. Moreover, even though petitioner testified that Reynolds told him she wanted to stab him during the July 2001 struggle, petitioner admitted to initiating the physical contact with Reynolds and even escalating that struggle. Thus, the Delaware state courts reasonably applied *Strickland* in denying this claim because petitioner could not have established a self-protection defense.

### 9. Failure to show that elements of unlawful imprisonment were lacking and failure to request

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

### a jury instruction to that effect

**\*12** Count 1 of the final indictment charged petitioner with second degree kidnaping that occurred on January 5, 2001, and Count 4 charged petitioner with second degree kidnaping that occurred on January 3, 2001. At the close of the trial, the Superior Court granted defense counsel's motion for acquittal of Count 4. With respect to Count 1, the Superior Court instructed the jury on first and second degree unlawful imprisonment as lesser-included offenses for second degree kidnaping. The jury convicted petitioner of first degree unlawful imprisonment.

Petitioner contends that counsel should have requested a jury instruction on lesser included offenses. Based on the record, the court concludes this claim is factually baseless.

Petitioner also contends that counsel should have shown that the prosecution failed to establish the elements of first degree unlawful imprisonment for the events that occurred on January 5, 2001 (Count 1). Specifically, petitioner argues that counsel did not "properly" cross-examine Reynolds about the velcro restraints used on her during the rape to show that she could have escaped.

The Superior Court denied this claim as factually baseless, finding that counsel did elicit testimony that Reynolds could have ripped the velcro restraints off with her teeth. The Superior Court also noted that: counsel requested lesser included instructions for both kidnaping counts (Counts 1 and 4), the trial court instructed the jury as to the definition of "restraint" as defined by statute, and the trial court charged the jury on both first and second degree unlawful imprisonment for Count 1. *Zuppo,* ID No. 0101004412, at 24-25.

[12] Although the record provided to the court does not contain defense counsel's cross-examination of Reynold's on this issue, the court concludes that the instant claim does not warrant habeas relief. Pursuant to Delaware law, "[a] person is guilty of unlawful imprisonment in the first degree when the person knowingly and unlawfully restrains another person under circumstances which expose that person to the risk of serious physical injury," and a "person is guilty of unlawful imprisonment in the second degree when the person knowingly and unlawfully restrains another person." Del.Code Ann. tit. 11, § § 782, 781. The term " 'restrain' means to restrict another person's movements intentionally in such a manner as to interfere substantially with the person's liberty ...

by confining the person ... in the place where the restriction commences ... without consent." Del.Code Ann. tit. 11, § 786(a). During the trial, Reynolds testified that petitioner tied her up with a rope and that she did not consent to any of the acts. Reynolds testified that petitioner restrained her hands with the velcro restraints, and petitioner also admitted to restraining Reynolds with the velcro restraints. In fact, although petitioner stated that Reynolds consented to the entire act, petitioner explained that Reynolds' arms were restrained behind her back and she was laying on them.

**\*13** Viewing the total evidence presented in a light most favorable to the prosecution, even if counsel did not specifically question Reynolds about her ability to "bite off" the velcro restraints, the testimony given by both Reynolds and petitioner provided sufficient evidence for any rational trier of fact to find that the "restraint" element of first degree unlawful imprisonment was satisfied. Therefore, petitioner cannot demonstrate the requisite prejudice under *Strickland.*

### 10. Counsel was biased and conflicted

[13] According to petitioner, he physically assaulted defense counsel during a conference at Gander Hill prison. Petitioner contends that the struggle biased counsel against him and prevented counsel from effectively representing him during the trial.

The Superior Court denied the instant claim as factually baseless because the opening in the plexiglass partition located in Gander Hill's interview room is too small to permit the assault as described by petitioner. The Superior Court also denied the claim after determining that petitioner was not prejudiced by counsel's performance. More specifically, the Superior Court concluded that counsel actively defended petitioner at trial and succeeded in having some serious felony charges dismissed or reduced.

Petitioner has not provided any evidence to rebut counsel's denial that such an attack ever occurred. Moreover, given counsel's successful motion for judgment of acquittal for Count 4, counsel's successful motion to sever Count 21, and the fact that the jury convicted petitioner of the lesser included offense for Count 4, petitioner has failed to demonstrate prejudice. Accordingly, the court concludes that the Delaware courts did not unreasonably apply *Strickland* in denying the instant

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

Page 14

claim.

### 11. Failure to ask very important questions

Petitioner contends that counsel only asked an average total of twelve questions for each of the two main defense witnesses.[FN7] There is no rule requiring an attorney to pose a minimum number of questions to witnesses in order to provide effective assistance. Therefore, the court concludes that petitioner's unsupported claim does not warrant federal habeas relief.

[14] Petitioner also complains that counsel did not read the contents of Reynolds' suicide note to the jury.[FN8] In her suicide note, Reynolds declared her love for petitioner and stated that he was innocent. Petitioner contends that the result of his trial would have been different if counsel had read the suicide note to the jury.

Petitioner's speculative argument fails to overcome the strong presumption that counsel's representation was reasonable. Even though counsel did not read the suicide note to the jury, counsel did question Reynolds about her suicide attempt. Moreover, the jury knew about Reynolds' recantation and the fact that Reynolds had proclaimed petitioner's innocence to various individuals in the past. Therefore, the contents of Reynolds' suicide note constituted cumulative evidence, and petitioner cannot demonstrate prejudice stemming from counsel's failure to introduce that evidence. Accordingly, the court concludes that the Delaware Supreme Court's denial of this claim does not warrant habeas relief.

**\*14** [15] Petitioner also complains that counsel failed to question Reynolds about the length of the rope. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 12) The Superior Court denied this claim after determining that petitioner was not prejudiced by counsel's decision to not ask about the rope. The Superior Court explained that questions about the rope would not have "significantly assisted the defense regarding Reynolds' credibility"; in fact, such questions could have highlighted Reynolds' testimony about having a rope around her neck. The Superior Court also noted that determining the questions posed to witnesses is part of counsel's trial strategy. *Zuppo,* ID No. 0101004412, at 25-6.

After reviewing the record, the court agrees with the Superior Court's determination that questions about the rope may have brought further attention to the

details of petitioner's sexual assault on Reynolds. Additionally, the rope was admitted into evidence, and the jury was able to evaluate whether the rope could or could not have been used in the manner described by Reynolds. Moreover, petitioner's specious arguments do not rebut the strong presumption that counsel's decision was part of his trial strategy, nor do they demonstrate that petitioner was prejudiced by counsel's performance. Accordingly, the court concludes that the Delaware courts did not unreasonably apply *Strickland* in denying this claim.

### 12. Failure to submit evidence to impeach

Petitioner argues that counsel failed to submit the following impeachment evidence: two tapes of Reynolds taken in January and July 2001 that proved petitioner's innocence; evidence that the State paid Reynolds $25,000 to say what the prosecution wanted; and that the State threatened to incarcerate Reynolds for lying. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 12-13) Petitioner contends that this evidence would have demonstrated discrepancies in Reynolds' testimony.

Reynolds testified that the version of the story she was telling at the trial differed from the various stories she told the police, medical personnel at the hospital, and various defense attorneys. Based on that admission, the Superior Court determined that the impeachment evidence in question would have been cumulative and, therefore, petitioner could not demonstrate prejudice stemming from counsel's alleged failure to submit such evidence.

Here, petitioner's habeas application fails to assert concrete examples of prejudice stemming from counsel's failure to introduce the cumulative evidence. Accordingly, the court concludes that the instant claim does not warrant habeas relief.

### 13. Failure to timely object or request a jury instruction regarding prejudicial evidence, statements, etc.

Petitioner contends that his Rule 61 motion listed fourteen separate occasions during trial when counsel should have objected to the testimony. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 13-4) However, petitioner fails to provide concrete examples of prejudice. Thus, the court concludes that this claim does not satisfy § 2254(d)(1).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
(Cite as: --- F.Supp.2d ----)

### 14. Failure to argue that there was insufficient evidence to sustain petitioner's conviction

**\*15** [16][17] Petitioner appears to contend that, because there was no obvious evidence of physical abuse, counsel should have argued that there was insufficient evidence to sustain his conviction on all the charges but second degree assault. (D.I. 19, Appellant's Reply Br. in *Zuppo v. State,* No.87,2005, at 7) It is a well-settled principle that, on habeas review, the court must accept a jury's factual determinations as to credibility issues and resolutions of conflicts in the evidence. *See Jackson v. Virginia,* 443 U.S. 307, 319, 326, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). During petitioner's trial, both Reynolds and petitioner gave their own differing versions of the events that led up to the charges against petitioner. By convicting petitioner of all but two of the charges,[FN9] the jury demonstrated that they resolved any conflicts in the testimonies against petitioner. Petitioner has not produced any clear and convincing evidence to rebut the presumption that the jury's factual determination was correct. Therefore, the court concludes that the Delaware Supreme Court's denial of the this claim does not warrant federal habeas relief.

### 15. Failure to object to prosecutorial misconduct for introducing racial issues

The following exchange occurred when the prosecutor questioned petitioner about his reaction to a photograph of Reynolds with three other individuals:

*Petitioner:* She was sitting in a bathtub with another girl in a bathtub and there was a black man with boxer shorts, and you got a view of them and then the two looking at him.

*Prosecutor:* And that bothered you?

*Petitioner:* Wanted to know actually-like I said, we decided to be married, but yes, it bothered me.

*Prosecutor:* And it bothered you that you saw her like that with a black man?

*Petitioner:* No, it was the principle that she was in the bathtub with two girls and a guy standing in front of her.

(D.I. 5, at AA58). After this exchange, the Superior Court judge requested a sidebar conference, and warned the prosecutor against injecting the issue of race into the trial. The judge then asked defense counsel if he wanted an instruction to that effect, and

counsel replied no, "not at this point." *Id.*

[18] In his habeas application, petitioner appears to contend that counsel should have objected to the prosecutor's statement that petitioner was bothered by seeing Reynolds pictured with an African American male. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 14) The Superior Court denied this claim after determining that counsel's decision to forego an instruction was a reasonable strategic decision, and that the decision did not prejudice petitioner.

The trial excerpt clearly demonstrates that petitioner rebutted any inference that his problem with the photograph was due to the race of the man pictured. Therefore, petitioner cannot establish the requisite prejudice under *Strickland,* and the claim does not warrant habeas relief.

### 16. Failure to ask for mistrial

**\*16** At the end of her testimony, Reynolds displayed her injured hand to the jury and made a brief comment. Both the prosecutor and defense counsel informed the Superior Court that they overheard Reynolds' statement, but they both told the court that Reynolds' statement only referred to her hand injury. Consequently, the trial court determined that Reynolds' comment was harmless. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 15-17)

Petitioner contends that counsel should have moved for a mistrial as a result of Reynold's comment to the jury. (D.I. 5, Appellant's Op. Br. in *Zuppo v. State,* No.87,2005, at 15-17) However, petitioner has not provided clear and convincing evidence rebutting the two attorneys' statements that Reynolds' comment only involved her hand injury, nor has he demonstrated how Reynolds' comment prejudiced the result of his trial. Therefore, the instant claim does not warrant federal habeas relief.

### C. Claim that counsel failed to file speedy trial motion is procedurally barred

[19] Liberally construing the attachments to petitioner's habeas application, petitioner appears to contend that counsel performed deficiently by failing to file a speedy trial motion. Petitioner presented this claim to the Superior Court in his Rule 61 motion, but he did not include the claim in his post-conviction

appeal to the Delaware Supreme Court. Any attempt on petitioner's part to obtain further state court review of the claim would be barred by Delaware Superior Court Criminal Rule 61(i)(2). Thus, the claim is exhausted but procedurally defaulted, and the court cannot review its merits absent a showing of cause and prejudice, or a showing that a miscarriage of justice will occur without such review.

Petitioner's response to the State's answer fails to explain his failure to present this claim to the Delaware Supreme Court. In the absence of cause, the court does not need to address the issue of prejudice. Moreover, the miscarriage of justice exception does not excuse petitioner's procedural default because petitioner has not presented new reliable evidence of his actual innocence. Accordingly, the court will deny petitioner's allegation regarding counsel's failure to file a speedy trial motion as procedurally defaulted.

## V. CERTIFICATE OF APPEALABILITY

Finally, the court must decide whether to issue a certificate of appealabilty. *See* Third Circuit Local Appellate Rule 22.2. A certificate of appealability may only be issued when a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This showing is satisfied when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the denial of a constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000).

For the reasons stated above, the court concludes that petitioner is not entitled to federal habeas relief. Reasonable jurists would not find this conclusion debatable. Consequently, petitioner has failed to make a substantial showing of the denial of a constitutional right, and a certificate of appealability will not be issued.

## VI. CONCLUSION

*17 For the foregoing reasons, petitioner's application for habeas relief filed pursuant to 28 U.S.C. § 2254 will be denied.

An appropriate order will be entered.

### ORDER

For the reasons set forth in the memorandum opinion issued this date, IT IS HEREBY ORDERED that:

1. Petitioner Anthony Zuppo's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is DENIED. (D.I.2)

2. The court declines to issue a certificate of appealability.

> FN1. Even the Third Circuit Court of Appeals, which requires a "searching inquiry" to determine that the defendant's waiver of representation is knowingly and intelligently made, has not addressed the scope of the balancing inquiry a trial court must undertake to determine if the government's interests outweigh the defendant's interest when the defendant has requested to represent himself after the commencement of trial. *See, e.g., Buhl v. Cooksey,* 233 F.3d 783, 797 n. 16 (3d Cir.2000) (explaining that, "[a]fter a trial has commenced, the right of self-representation is curtailed, and the judge considering the motion must weigh the prejudice to the legitimate interests of the defendant against the potential disruption of proceedings already in progress"); *Gov't of Virgin Islands v. Charles,* 72 F.3d 401, 404 (3d Cir.1995).

> FN2. In affirming the Superior Court's judgment, the Delaware Supreme Court described the ineffective assistance of counsel claims as follows: (1) counsel failed to file the appropriate trial motions; (2) counsel failed to investigate, interview, and subpoena witnesses; (3) counsel failed to request jury instructions on lesser charges; (4) counsel failed to make the proper objections and raise the proper defenses; (5) counsel failed to properly cross examine the State's witnesses; (6) counsel failed to introduce impeachment evidence; (7) counsel had a conflict of interest with petitioner and demonstrated bias; and (8) counsel improperly permitted race to be interjected as an issue at trial. *Zuppo,* 2005 WL 1653622, at *1. A close reading of the Delaware Supreme Court indicates that the state supreme court condensed petitioner's sixteen claims into eight claims. For

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----
--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)
**(Cite as: --- F.Supp.2d ----)**

example, the claim characterized as "failing to file the appropriate trial motions" appears to include claims one, three, four, six, and seventeen presented in petitioner's habeas application; petitioner did not include claim two regarding counsel's failure to file a speedy trial motion in his post-conviction appellate brief. The claim characterized as "failing to make the proper objections and raise the proper defenses" appears to include claims five, nine, ten, fourteen, and fifteen presented in his habeas application. Thus, the court concludes that the Delaware Supreme Court adjudicated the merits of the sixteen claims presented by petitioner for federal habeas review.

If the court is mistaken, and the Delaware Supreme Court actually failed to adjudicate claims one, three through six, nine, ten, fourteen, fifteen, and seventeen, then the court must apply the pre-AEDPA standard and review the claims de novo. *Holloway v. Horn,* 355 F.3d 707, 718-19 (3d Cir.2004). Nevertheless, even reviewing the claims de novo, the court would deny the claims as meritless for the same reasons expressed in the text of the opinion.

FN3. However, as explained *infra* at 38-39, the speedy trial allegation is procedurally barred and can only be reviewed upon a showing of cause and prejudice, or if a miscarriage of justice will occur absent review.

FN4. The jury found petitioner not guilty of terroristic threatening (Count 2) and possession of a deadly weapon during the commission of a felony (Count 20). Additionally, for Count 1, the jury found petitioner guilty of first degree unlawful imprisonment, the lesser included offense for second degree kidnaping.

FN5. To the extent petitioner contends that counsel should have procured the testimony of witnesses other than the pastor or petitioner's employer who also would have testified as to the absence of physical signs of abuse, the court concludes that, given the prosecution's theory of petitioner's continued abuse and manipulation of Reynolds, the Delaware state courts reasonably determined that such testimony would have only provided additional variations in Reynolds'

stories and would not have changed the outcome of the trial. Therefore, once again, petitioner's claim fails to satisfy the prejudice prong of *Strickland.*

FN6. Petitioner also argues that counsel did not properly cross-examine Reynolds or object to "prejudicial" statements made by the prosecutor. Petitioner does not specify which prosecutorial statements were prejudicial, thus, the court concludes that this vague claim does not warrant federal habeas relief. As for petitioner's challenge to counsel's cross-examination of Reynolds, petitioner contends that counsel should have argued that Reynolds was the aggressor during the July 2001 incident because she admitted at trial that she wanted to stab petitioner. This claim is inter-related with petitioner's complaint that counsel did not raise the defense of self-protection, therefore, the court discusses the issue in claim eight of the text.

FN7. Petitioner does not identify the two main witnesses; however, reading this claim in conjunction with petitioner's Rule 61 motion, he appears to be referring to Robert Bovell and Milton Lockwood. *See State v. Zuppo,* ID No. 0101004412, at 26-7.

FN8. Although petitioner did not raise this issue in his original Rule 61 motion, he did raise the issue in his post-conviction appeal in an addendum dated March 25, 2005. The State argues that the claim is procedurally barred because the Delaware Supreme Court would have been barred from addressing this claim pursuant to Delaware Supreme Court Rule 8. However, the Delaware Supreme Court did not apply any procedural bar to petitioner's claims, and a close review of the Delaware Supreme Court's opinion indicates that the State Supreme Court viewed this claim as alleging counsel's failure to introduce impeachment evidence. Therefore, the court concludes that the Delaware Supreme Court denied the instant claim as meritless, and federal habeas review must be afforded under the deferential standard supplied by § 2254(d)(1). Alternatively, if the claim is procedurally barred, petitioner has demonstrated neither cause nor prejudice excusing his procedural default.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- F.Supp.2d ----

--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)

**(Cite as: --- F.Supp.2d ----)**

> FN9. Several charges were nolle prossed. However, the Superior Court granted the motion to acquit for Count 4 and the jury convicted petitioner of the lesser included offense charged in Count 1.

D.Del.,2006.

Zuppo v. Carroll

--- F.Supp.2d ----, 2006 WL 3025107 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:05cv00504 (Docket) (Jul. 18, 2005)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.